1  MILBERG LLP
   JEFF S. WESTERMAN (SBN 94559)
2  jwesterman@milberg.com
   DAVID E. AZAR (SBN 218319)
3  dazar@milberg.com
   CHRISTIAN KEENEY (SBN 269533)
4  ckeeney@milberg.com
   One California Plaza
5  300 South Grand Avenue, Suite 3900
   Los Angeles, California 90071
6  Telephone: (213) 617-1200
   Facsimile:  (213) 617-1975
7
   MILBERG LLP
8  ANDREI V. RADO
   arado@milberg.com
9  One Pennsylvania Plaza, 49th Floor
   New York, New York  10119
10 Telephone: (212) 594-5300
   Facsimile: (212) 868-1229
11
12 *Attorneys for Plaintiff Robert Briseno*

13 [Additional Counsel Listed on Signature Page]

14              UNITED STATES DISTRICT COURT

15            CENTRAL DISTRICT OF CALIFORNIA

16                  WESTERN DIVISION

17

18 *In re Conagra Foods, Inc.*            ) CASE NO. CV 11-05379-MMM (AGRx)
                                          )
19                                        ) CLASS ACTION
                                          )
20                                        ) PLAINTIFF'S OPPOSITION TO
                                          ) DEFENDANT'S MOTION TO DISMISS
21                                        )
                                          ) DATE:      November 7, 2011
22                                        ) TIME:      10:00 a.m.
                                          ) CTRM.:     780
23                                        ) JUDGE:     Hon. Margaret M. Morrow
                                          )
24                                        )
                                          )
25 ───────────────────────────────────── )

26

27

28

─────────────────────────────────────────────────────────
            PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
DOCS\574000v3

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................1

II.  BACKGROUND ................................................................................3

    A.  Genetically-Modified Oils Are Not "100% Natural" .........................3

    B.  ConAgra Markets Its Wesson Oils As "100% Natural"......................5

    C.  The FDA Recognizes the Need to Regulate "Natural" Claims in Food Marketing, But Cannot Do So ....................................................5

    D.  Plaintiff Sues ConAgra for Its False and Misleading Claim that Its Genetically-Modified Wesson Oils Are "100% Natural" ..............6

III.  ARGUMENT ....................................................................................6

    A.  Defendant Fails To Meet Its Burden To Dismiss This Case ...............6

    B.  Plaintiff's Claims Are Not Preempted ..............................................7

        1.  The NLEA Does Not Expressly Preempt Plaintiff's Claims ...........................................................................................8

        2.  Plaintiff's Claims Cannot Be Impliedly Preempted .................10

            a.  The NLEA Precludes Implied Preemption ...................10

            b.  The FDA's Hands-Off Policy Towards Genetically-Modified Foods Further Underscores Why Plaintiff's Claims Cannot Be Impliedly Preempted ........................................................................13

    C.  The "Primary Jurisdiction" Doctrine Is Inapplicable ........................15

    D.  Plaintiff's Claims Are Properly Pled ..............................................17

        1.  Plaintiff's Claims Are Sufficient Under Rule 8 .......................17

        2.  Plaintiff's Claims Satisfy Rule 9(b)'s "Specificity" Requirement...........................................................................20

        3.  Plaintiff's Claims Are "Plausible" Under *Twombly*................21

IV.  CONCLUSION ...............................................................................25

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

**FEDERAL CASES**

5

6   *Ashcroft v. Iqbal*,
       129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ........................................................ 17

7

8   *Astiana v. Ben & Jerry's Homemade, Inc.*,
       No. C 10-4387 PJH, 2011 WL 2111796 (N.D. Cal. May 26, 2011) .......... *passim*

9   *Bates v. Dow Agrosciences LLC*,
       544 U.S. 431, 125 S. Ct. 1788, 161 L. Ed. 2d 687 (2005) .................................. 7

10

11  *Bell Atlantic Corporation v. Twombly*,
       550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 979 (2007) .................. 2, 3, 17, 21

12

13  *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
       489 U.S. 141, 109 S. Ct. 971, 103 L. Ed. 2d 18 (1989) ...................................... 9

14

15  *Carrea v. Dreyer's Grand Ice Cream, Inc.*,
       No. C 10-01044 JSW, 2011 WL 159380 (N.D. Cal. Jan. 10, 2011) .................. 10

16

17  *Chacanaca v. The Quaker Oats Co.*,
       752 F. Supp. 2d 1111 (N.D. Cal. 2010) ......................................... 17, 20, 21, 22

18

19  *Chae v. SLM Corp.*,
       593 F.3d 936 (9th Cir. 2010) ............................................................................... 7

20

21  *Cipillone v. Liggett Grp., Inc.*,
       505 U.S. 504, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992) .................................. 7

22  *Clark v. Time Warner Cable*,
       523 F.3d 1110 (9th Cir. 2008) ........................................................................... 16

23

24  *Dvora v. Gen. Mills, Inc.*,
       No. CV 11-1074-GW(PLAx), 2011 WL 1897349 (C.D. Cal. May 16,
       2011) ............................................................................................................. 5, 23

25

26  *Hitt v. Ariz. Beverage Co., LLC*,
       No. 08cv809 WQH (POR), 2009 WL 449190 (S.D. Cal. Feb. 4, 2009) .......... 23

27

28

- ii -

*Holk v. Snapple Beverage Corp.*,
    575 F.3d 329 (3d Cir. 2009) ...................................................................*passim*

*In re Ferrero Litig.*,
    No. 11-CV-205 H (CAB), 2011 U.S. Dist. LEXIS 97488 (S.D. Cal. Aug.
    29, 2011) ................................................................................................ 18

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ............................................................... 18

*Lockwood v. Conagra Foods, Inc.*,
    597 F. Supp. 2d 1028 (N.D. Cal. 2009) (Breyer, J.) ..................................*passim*

*Marolda v. Symantec Corp.*,
    672 F. Supp. 2d 992 (N.D. Cal. 2009) ................................................... 18

*Peviani v. Hostess Brands, Inc.*,
    750 F. Supp. 2d 1111 (C.D. Cal. 2010) ................................................... 10

*Plumley v. Massachusetts*,
    155 U.S. 461, 15 S. Ct. 154, 39 L. Ed. 223 (1894) .............................. 7

*Red v. Kraft Foods, Inc.*,
    754 F. Supp. 2d 1137 (C.D. Cal. 2010) ................................................. 19

*Rice v. Santa Fe Elevator Corp.*,
    331 U.S. 218, 67 S. Ct. 1146, 91 L. Ed. 1447 (1947) ......................... 11

*Robertson v. Dean Witter Reynolds, Inc.*,
    749 F.2d 530 (9th Cir. 1984) ................................................................. 6

*Turek v. Gen. Mills, Inc.*,
    754 F. Supp. 2d 956 (N.D. Ill. 2010) ............................................. 7, 10

*Von Koenig v. Snapple Beverage Corp.*,
    713 F. Supp. 2d 1066 (E.D. Cal. 2010) ............................... 6, 12, 19, 21

*Williams v. Gerber Prods. Co.*,
    523 F.3d 934 (9th Cir. 2008) ................................................................. 23

*Wright v. Gen. Mills, Inc.*,
    No. 08cv1532, 2009 WL 3247148 (S.D. Cal. Sept. 30, 2009) ...................*passim*

*Wyeth v. Levine*,
    555 U.S. 555, 129 S. Ct. 1187, 173 L. Ed. 2d 51 (2009) ............................ 9, 13

*Yumul v. Smart Balance, Inc.*,
    No. CV 10-00927 MMM(AJWx), 2011 WL 1045555 (C.D. Cal. Mar. 14,
    2011) ..................................................................................................... 10

STATE CASES

*Brackey v. Moore*,
    107 Cal. App. 4th 86 (2003) ................................................................ 24

*In re Farm Raised Salmon Cases*,
    175 P.3d 1170 (Cal. 2008) ..................................................................... 8

*In re Tobacco II Cases*,
    207 P.3d 20 (Cal. 2009) ........................................................................ 18

*Park v. Cytodyne Technologies, Inc.*,
    No. GIC 76834, 2003 WL 21283814 (Cal. Super. May 30, 2003) ................... 24

FEDERAL STATUTES

21 U.S.C. § 343-1 .......................................................................... 8, 11

STATE STATUTES

California Business & Professions Code § 17200 .................................... 24

California Business & Professions Code § 17500 .................................... 24

Nutrition Labeling and Education Act of 1990, Pub. L. No. 101-535,
    § 6(c)(1) (1990) .................................................................................. 11

RULES

Federal Rule of Civil Procedure 8 ..................................................... 2, 17

Federal Rule of Civil Procedure 9 .................................................. 2, 20, 21

Federal Rule of Civil Procedure Rule 12(b)(6) ...................................... 22

REGULATIONS

57 Fed. Reg. 22984 .................................................................. 4, 14, 15

57 Fed. Reg. 27984 ........................................................................... 15

58 Fed. Reg. 2302 ................................................................... 2, 6, 12

58 Fed. Reg. 25837 ............................................................... 3, 4, 24

**OTHER AUTHORITIES**

136 Cong. Rec. S16607 (Oct. 24, 1990) (Nutrition Labeling and Education
    Act of 1990, statement of Sen. Mitchell) ........................................ 13

## I.  __INTRODUCTION__

This case is about Defendant ConAgra Foods, Inc.'s ("ConAgra") unlawfully misleading consumers by marketing cooking oils made with genetically-modified ingredients as being "100% Natural."

The phrase "100% Natural" means something to consumers or ConAgra wouldn't use it.  The reasonable consumer believes that a product that is represented as being "100% Natural" is from nature, and is neither synthetic nor artificial.  Correspondingly, a reasonable consumer would not believe that a product represented as being "100% Natural" was made with ingredients concocted in a science lab through genetic engineering.  As alleged in the Class Action Complaint ("Complaint" or "Compl."), even companies promoting genetically-engineered foods define those foods as not "natural."  Compl. ¶¶ 4, 20, 22.  By marketing its Wesson cooking oils ("Wesson Oils") made with genetically-modified ingredients as "100% Natural," ConAgra misrepresents these oils in a way that is likely to deceive consumers contrary to California law.

ConAgra's motion to dismiss ignores Plaintiff's allegations. It constructs a "straw man" premise, contending that Plaintiff alleges that ConAgra ***must disclose*** that its Wesson Oils are made from genetically-modified ingredients. Def.'s Br. at 1 ("[P]laintiff's claim is that ConAgra violated California's consumer protection statutes because the labels on Wesson Oil products do not reflect the fact that the oils are made from plants developed through bioengineering.")  But that is not what Plaintiff alleges.  Rather, Plaintiff seeks to hold ConAgra responsible for the misleading information it chose independently to put on the label (*i.e.*, "100% Natural"), not information that is missing.

ConAgra devotes the bulk of its brief not to the sufficiency of Plaintiff's allegations (which it only addresses in the last page and a half), but to legal and procedural technicalities that are inapplicable because they address only Defendant's straw man premise.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

First, contrary to Defendant's assertion that federal labeling regulations established by the Food & Drug Administration (the "FDA") preempt California law, the FDA has expressly declined to regulate the term "natural" because of "resource limitations and other agency priorities," even though the FDA recognizes it is used to make misleading claims.  FDA, *Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definitions of Terms; Definitions of Nutrient Content Claims for the Fat, Fatty Acid, and Cholesterol Content of Food*, 58 Fed. Reg. 2302, 2407 (Jan. 6, 1993) ("FDA Food Labeling Guide").  The FDA's decision not to regulate the term "natural" dispenses with Defendant's preemption argument, and reinforces the role of state law in protecting consumers from companies like ConAgra that may otherwise try to mislead them by claiming unnatural products are "100% Natural."  Courts within, and outside of, the Ninth Circuit routinely reject preemption arguments against allegations that a product is deceptively labeled as "natural."  Indeed, ConAgra lost the ***identical*** arguments it raises here in *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028 (N.D. Cal. 2009), where the plaintiff alleged that ConAgra's "all natural" designation on pasta sauces was misleading because ConAgra made those sauces with high fructose corn syrup, which is a chemically-processed sugar.

Second, Defendant contends that even if Plaintiff's claims are not preempted, the Court should defer to the FDA under the "primary jurisdiction" doctrine.  But deferring to a federal agency under the doctrine of primary jurisdiction is only appropriate if the issue either requires technical expertise to resolve or is an issue of first impression that Congress intended the agency to address.  Neither circumstance applies here.  Whether a claim is misleading under California law does not require technical expertise to resolve, nor is the FDA better suited to decide the issue than a California court.  And this is not an issue of first impression as the FDA has already declined to regulate the term "natural."  FDA Food Labeling Guide at 2407.

1    Finally, Defendant argues that Plaintiff's claims are not properly pled under

2    Rules 8 and 9(b) and are not "plausible" under *Bell Atlantic Corporation v.*

3    *Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 979 (2007).  Rule 8 merely

4    requires a plaintiff to show why he or she is entitled to relief, while Rule 9(b)

5    requires a plaintiff whose claims "sound in fraud" to state the "who, what, when,

6    where, and how" of the fraud.  Similarly, *Twombly* requires a plaintiff to state

7    "enough facts to state a claim to relief that is plausible on its face."  550 U.S. at

8    556.  Plaintiff's claims easily meet, and indeed surpass, these basic pleading

9    standards by alleging facts that this and other courts have repeatedly held to be

10   sufficient.

11   Accordingly, the Court should deny Defendant's motion to dismiss.

12   **II.   BACKGROUND**

13   **A.   Genetically-Modified Oils Are Not "100% Natural"**

14   Contrary to Defendant's assertion that there is no "meaningful" difference

15   between genetically-modified and non-genetically-modified ingredients,

16   genetically-modified ingredients are meaningfully different – by design.   To

17   manufacture a genetically-modified organism (such as the crops ConAgra uses in

18   its Wesson Oil products), scientists introduce one or more new traits into the

19   organism that do not occur naturally within that organism.  Scientists do this by

20   altering segments of the organism's genetic material or DNA and replacing it with

21   segments of DNA from a foreign species, thus making it something new and

22   different – something that a scientist created because nature could not.  Compl.

23   ¶¶ 3, 4, 23.   It is precisely because nature could not create these genetic

24   combinations that food companies pay teams of scientists to do so.

25   Defendant contends that the FDA "has conducted exhaustive scientific

26   research" supporting Defendant's contention that there is no "meaningful"

27   difference between genetically-modified and non-genetically-modified foods.

28   Def.'s Br. at 1.  As an initial matter, the FDA's conclusions about genetically-

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

modified foods are not exculpatory, or even relevant.  To the extent the FDA has evaluated genetically-modified ingredients, it has done so only for the limited purpose of determining whether those ingredients must be disclosed on the label. 58 Fed. Reg. 25837-38.  In determining that genetically-modified ingredients need not be disclosed on the label, the FDA explained that it only had authority to require disclosures where a modification changed a food's "organoleptic properties" – taste, touch, and smell.  *Id.*  This limited review has no bearing on Plaintiff's allegations, which are not about whether oils with genetically-modified ingredients look or taste different than oils without those ingredients.

Additionally, the FDA states that genetic modification methods enable "modifications that would not be possible with traditional plant breeding methods" and that "[g]enetic modifications of plants can have ***unintended or unexpected effects*** . . . such as an alteration in the concentration of important nutrients, increases in the level of natural toxicants, or the transfer of allergens from one species to another [that] may not be readily detected without specific test procedures."   FDA, *Statement of Policy: Foods Derived From New Plant Varieties*, 57 Fed. Reg. 22984, 22984-86 (May 29, 1992).  These unexpected effects may include "changes in bioavailability of a nutrient due to changes in form of the nutrient or the presence of increased levels of other constituents that affect absorption or metabolism," the introduction of nutrients that "differ[] significantly in structure or function . . . from such substances currently found in food," the introduction of new allergens, and antibiotic resistance.  *Id*. at 29986-88.

Further, major genetically-modified food manufacturers and health organizations agree that genetically-modified foods are not "natural."  Compl. ¶¶ 20-23.  For instance, the Monsanto Company – the largest and most successful genetically-modified seed manufacturer in the world – describes genetically-modified seeds as having "their genetic makeup altered to exhibit traits that are not naturally theirs."  *See id.* at ¶ 20 (citing Monsanto, http://www.monsanto.com/

newsviews/Pages/glossary.aspx#g (last visited Sept. 18, 2011)).   Similarly, the World Health Organization ("WHO") describes genetically-modified seeds as "organisms in which the genetic material (DNA) has been altered in a way that does not occur naturally."   *See Id*. at ¶ 21 (*citing* WHO, http://www.who.int/ foodsafety/publications/biotech/20questions/en/ (last visited Sept. 18, 2011)).

In any event, whether there is or is not a "meaningful difference" is, in the first instance, a factual issue that cannot be resolved on a motion to dismiss, and in the second instance, is not the standard for evaluating Plaintiff's claims under California law, which is whether a representation is "likely to deceive a reasonable consumer."   *Dvora v. Gen. Mills, Inc.*, No. CV 11-1074-GW(PLAx), 2011 WL 1897349, at *6 (C.D. Cal. May 16, 2011).   Plaintiff's allegations meet this standard.

## B.   ConAgra Markets Its Wesson Oils As "100% Natural"

Despite making its Wesson Oils with genetically-modified ingredients, ConAgra markets Wesson Oils as being "100% Natural."   Compl. ¶ 13.   This phrase is written in big, bright green type on the front of the label.   *Id.* ¶ 15.   It is prefaced by the word "Pure" and surrounded by images of a green heart, the sun, and a plate of vegetables.   *See* Exhibit A attached.   ConAgra uses its Wesson label to create the appearance of a 100% natural product where one does not exist.   *Id.*

## C.   The FDA Recognizes the Need to Regulate "Natural" Claims in Food Marketing, But Cannot Do So

The FDA is authorized to regulate food and nutrition labeling under the Food Drug and Cosmetic Act (the "FDCA") and its 1990 amendment, the Nutrition Labeling and Education Act (the "NLEA").   Although the FDA adopted regulations concerning nutrient content (*e.g.*, the amount of fat or cholesterol in a food), it has taken a decidedly hands-off approach for regulating the use of "natural" in food marketing.

In its policy statement on the use of the word "natural" in food marketing, the FDA acknowledged that "the ambiguity surrounding [the] use of this term . . . *results in misleading claims*," but because of "resource limitations and other agency priorities," the FDA could not regulate the term.  58 Fed. Reg. at 2407 (emphasis added).

### D.   Plaintiff Sues ConAgra for Its False and Misleading Claim that Its Genetically-Modified Wesson Oils Are "100% Natural"

Based on ConAgra's representation that its Wesson Oil is "100% Natural," Plaintiff purchased that oil for himself and his family during the relevant time period.  Compl. ¶ 11.  Had Plaintiff known that ConAgra's Wesson Oil contained genetically-modified ingredients, he would not have purchased it.  *Id.*   Thus, Plaintiff and others who purchased Wesson Oils – all of which ConAgra falsely claims are "100% Natural" even though they contain genetically-modified ingredients – were, and continue to be, injured by ConAgra's misrepresentations. *Id.*

## III.   ARGUMENT

### A.   Defendant Fails To Meet Its Burden To Dismiss This Case

Dismissal is only appropriate where a defendant shows that "the complaint lacks a cognizable legal theory or where the complaint presents a cognizable legal theory yet fails to plead essential facts under that theory."  *Wright v. Gen. Mills, Inc.*, No. 08cv1532, 2009 WL 3247148, at *4 (S.D. Cal. Sept. 30, 2009) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984)).  In evaluating a motion to dismiss, the "factual allegations of the complaint must be accepted as true."  *Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1072 (E.D. Cal. 2010).

Defendant moves to dismiss Plaintiff's claims on three grounds, each of which fails as a matter of law, fact, or both.  First, Plaintiff's claims are not preempted by federal law.  Second, this Court should not defer to the FDA under

- 6 -

the primary jurisdiction doctrine because that doctrine is inapplicable here.   Third, Plaintiff adequately pled his claims.   Accordingly, Defendant's motion to dismiss should be denied.

### B.     Plaintiff's Claims Are Not Preempted

Defendant argues that Plaintiff's claims are preempted by federal law. Def.'s Br. at 18.   Federal law preempts state law if: (1) Congress enacts a law expressly preempting state regulation in a given area; (2) federal regulation in a particular field is so pervasive that there is no room for state regulation in that field; or (3) it is impossible to comply with both the state and federal law.  *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010), *cert. denied*, 131 S. Ct. 458, 178 L. Ed. 2d 287 (2010).  None of these apply here, and Defendant does not contend that California law is preempted because it is impossible to comply with both California and federal law.   Thus, Plaintiff addresses only whether federal law expressly or impliedly preempts California law.

Courts apply a presumption against preemption.  *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 334 (3d Cir. 2009) ("we must begin our analysis by applying a presumption against preemption") (citing *Cipillone v. Liggett Grp., Inc.*, 505 U.S. 504, 449, 516, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992)); *see also Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449, 125 S. Ct. 1788, 161 L. Ed. 2d 687 (2005) (explaining that where there are two plausible interpretations of a statute, courts "have a duty to accept the reading that disfavors pre-emption").   This is particularly so in areas of traditional state regulation, such as food labeling.  *Turek v. Gen. Mills, Inc.*, 754 F. Supp. 2d 956, 958 (N.D. Ill. 2010) ("food labeling has been an area historically governed by state law"); *accord Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387 PJH, 2011 WL 2111796, at *8 (N.D. Cal. May 26, 2011) (citing *Plumley v. Massachusetts*, 155 U.S. 461, 472, 15 S. Ct. 154, 39 L. Ed. 223 (1894) ("If there be any subject over which it would seem the States ought

to have plenary control . . . it is the protection of the people against fraud and deception in the sale of food products.")).

### 1.    The NLEA Does Not Expressly Preempt Plaintiff's Claims

Defendant asserts that Plaintiff's claims are expressly preempted by the NLEA's express preemption clause, which preempts state law claims that impose disclosure requirements inconsistent with those required by the NLEA or FDCA. The NLEA's express preemption clause states that no state "may directly or indirectly establish . . . any requirement for the labeling of the food of the type required by section . . . 403(i)(1) . . . that is not identical to the requirement of such section."  21 U.S.C. § 343-1(a).  Section 403(i)(1) in turn merely requires that foods be called by their "common or usual name."  In other words, corn should be called "corn" and canola oil should be called "canola oil."  But this has nothing to do with Plaintiff's claims.

Plaintiff claims that Defendant marketed an artificially-created product as being "100% Natural."  Courts have repeatedly held that such claims cannot be expressly preempted under the NLEA because state law claims concerning false and misleading labeling are not included in the discrete list of claims the NLEA expressly preempts.  *See Holk*, 575 F.3d at 338 ("These provisions [expressly preempting some state law claims] demonstrate that Congress was cognizant of the operation of state law and state regulation in the food and beverage field, and it therefore enacted limited exceptions in NLEA."); *Lockwood*, 597 F. Supp. 2d at 1031 (holding the NLEA's express preemption provision inapplicable to a plaintiff's claim that ConAgra misled consumers by calling its pasta sauce "all natural" when it contained high-fructose corn syrup);  *Wright*, 2009 WL 3247148, at *2 (explaining that state laws concerning false or misleading food labeling "do not fall within the FDCA's express preemption provisions"); *In re Farm Raised Salmon Cases*, 175 P.3d 1170, 1179 (Cal. 2008) ("Congress made clear that the

preemptive scope of [the NLEA] was to sweep no further than the plain language of the statute itself."), *cert. denied*, *Albertson's v. Kanter*, 555 U.S. 1097, 129 S. Ct. 896, 173 L. Ed. 2d 106 (2009); *see also Wyeth v. Levine*, 555 U.S. 555, 129 S. Ct. 1187, 1200, 173 L. Ed. 2d 51 (2009) ("The case for federal preemption is particularly weak where Congress has indicated its awareness of the operation of state law in a field of federal interest, and has nonetheless decided to stand by both concepts and to tolerate whatever tension there [is] between them.") (quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 166-67, 109 S. Ct. 971, 103 L. Ed. 2d 18 (1989) (internal quotation marks omitted)). As these cases show, Plaintiff's claims are not expressly preempted.

To avoid this result, Defendant attempts to recast Plaintiff's claims as faulting Defendant for failing to disclose certain information on its labels rather than holding it accountable for misleading information it affirmatively chose to print on to its labels. *See*, *e.g.*, Def.'s Br. at 1 ("In essence, Plaintiff's claim is that ConAgra violated California's consumer protection statutes because the labels on Wesson Oil products do not reflect the fact that the oils are made from plants developed through bioengineering, rather than from plants developed through other methods of selective breeding."); Def.'s Br. at 15 ("there is no requirement that food producers specify that plants used to make an oil were developed through bioengineering – the information Plaintiff complains is missing here"). This is not what Plaintiff says in the Complaint, either in fact or "in essence." The Complaint very clearly alleges that ConAgra violated the law by affirmatively misrepresenting that Wesson Oils are "100% Natural," and it very clearly does not allege that ConAgra is liable because ConAgra failed to disclose that the oils are made from genetically-modified plants.

The NLEA is a "disclosure requirement," regulating what a company must put on its label. *Holk*, 575 F.3d at 336, n.3. By attempting to transform Plaintiff's claims from ones seeking to *remove* and hold ConAgra accountable for misleading

- 9 -

information already on its labels ("100% Natural") into claims requiring ConAgra to *add* disclosures (*e.g.*, disclosing the presence of genetically-modified ingredients on the label), ConAgra hopes to convince the Court that the NLEA preempts Plaintiff's claims. *Id.* (FDCA's provisions regarding what companies must put on a label is "an important distinction" from claims about what a company cannot put on a label).

Additionally, the cases Defendant cites purportedly supporting preemption miss the mark. For instance, the *Turek* court held the plaintiff's claims were preempted because the plaintiff sought to force the defendant to disclose on the label that its product contained "non-natural" fiber. 754 F. Supp. 2d 956. Additionally, unlike here, *Yumul v. Smart Balance, Inc.*, No. CV 10-00927 MMM(AJWx), 2011 WL 1045555 (C.D. Cal. Mar. 14, 2011), involved (1) a nutrient content claim ("Cholesterol Free") governed by the NLEA, and (2) the parties agreed the product was, in fact, cholesterol free (although the plaintiff considered this misleading since the product contained trans fat, which may raise cholesterol). Likewise, *Peviani v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111 (C.D. Cal. 2010), and *Carrea v. Dreyer's Grand Ice Cream, Inc.*, No. C 10-01044 JSW, 2011 WL 159380 (N.D. Cal. Jan. 10, 2011), also involved a nutrient content claim expressly covered by the NLEA (the amount of a certain type of fat in the product). Because Plaintiff's claims are not about forcing Defendant to include additional information on its labels, let alone information about specific nutrients, Defendant's argument fails. *See Turek*, 754 F. Supp. 2d at 961 (explaining that since the NLEA is a disclosure requirement, "express preemption would fail" for claims that information already on a product label is misleading).

### 2. Plaintiff's Claims Cannot Be Impliedly Preempted

#### a. The NLEA Precludes Implied Preemption

Defendant seems to indirectly raise the possibility that Plaintiff's claims may be impliedly preempted. *See* Def.'s Br. at 10 ("In addition to the extensive

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1    regulatory apparatus governing bioengineered crops and the foods derived from
2    them, federal law imposes a detailed statutory and regulatory framework governing
3    numerous aspects of food labeling.").   To the extent Defendant argues that
4    Plaintiff's claims are impliedly preempted, the Court should reject that argument.

5        Implied preemption occurs where federal regulation in an area is so
6    comprehensive that there is "no room" for state regulation.   *Rice v. Santa Fe*
7    *Elevator Corp.*, 331 U.S. 218, 230, 67 S. Ct. 1146, 91 L. Ed. 1447 (1947).  In areas
8    of traditional state regulation, such as food labeling, courts "assume[] that a federal
9    law does not supplant state law unless Congress has made such an intention clear
10   and manifest." *Astiana*, 2011 WL 2111796, at *8.

11       But the NLEA precludes implied preemption.  By the NLEA's terms, it
12   "shall not be construed to preempt any provision of State law, unless such
13   provision is expressly preempted under [21 U.S.C. § 343-1] of the Federal Food,
14   Drug, and Cosmetic Act."  Nutrition Labeling and Education Act of 1990, Pub. L.
15   No. 101-535, § 6(c)(1) (1990).  As explained above, neither 21 U.S.C. § 343-1, nor
16   the FDA as authorized under 21 U.S.C. § 343-1, regulates the use of the word
17   "natural" in food marketing, let alone "100% Natural"—the phrase at issue here.
18   Since claims concerning the use of "100% Natural" are not expressly preempted,
19   the NLEA precludes them from being impliedly preempted.

20       Courts examining similar claims consistently reach the same conclusion.  In
21   *Holk*, the plaintiff claimed that Snapple misled consumers under state law by
22   claiming its teas were "all natural" even though they contained high-fructose corn
23   syrup.   575 F.3d at 333.   The defendant argued that the FDA's "exhaustive"
24   regulations supported finding plaintiff's claims foreclosed by implied preemption.
25   *Id.* at 337.  The court rejected that argument, explaining that the "NLEA declares
26   that courts may not find implied preemption based on any provision of NLEA."
27   *Id.* at 336; *see also Von Koenig*, 713 F. Supp. 2d at 1076 ("The court finds the
28   Third Circuit's conclusion [in *Holk*] that the FDA's policy did not amount to

1   federal law for purposes of preemption persuasive in analyzing whether federal law

2   bars plaintiff's claims.").

3       In *Astiana v. Ben & Jerry's Homemade, Inc.*, the plaintiff alleged that Ben &

4   Jerry's misled consumers by describing its ice cream as "all natural" even though it

5   contained an ingredient (alkalized cocoa) that plaintiff claimed to be unnatural.

6   2011 WL 2111796, at *1.  The defendant argued that plaintiff's claims should be

7   preempted by the "comprehensive federal scheme of food regulation."  *Id.* at *6.

8   Like *Holk*, the court in *Astiana* refused to find plaintiff's claims were impliedly

9   preempted.  As the court explained, the "purpose of the NLEA . . . is not to

10  preclude all state regulation of nutritional labeling, but to 'prevent State and local

11  governments from adopting inconsistent requirements with respect to the labeling

12  of nutrients. . . .  [T]here is no indication of any [FDA] regulation of the use of an

13  adjective such as 'natural' on a food label.'"  *Id.* at *8, 10 (quoting H.R. Rep. No.

14  101-538, at 10 (1990)); *accord* 58 Fed. Reg. 2302 (the FDA's Policy Statement)

15  (explaining that the FDA will not regulate the use of "natural" in food marketing).

16      In *Wright v. General Mills, Inc.*, the plaintiff alleged that Nature Valley

17  misled consumers by marketing its granola bars as "100% Natural" despite their

18  containing high-fructose corn syrup.  2009 WL 3247148, at *1.  The defendant

19  argued that the plaintiff's claims were impliedly preempted by the FDA's

20  "detailed, rigorous, and comprehensive system for labeling food products through

21  the FDCA . . . and related regulations."  *Id.* at *2.  In rejecting that argument, the

22  court explained that "[a]lthough the FDA has promulgated several food-labeling

23  requirements, Congress has specifically indicated that it does not intend to occupy

24  the field of food and beverage nutritional labeling."  *Id.*; *see also* 136 Cong. Rec.

25  S16607 (Oct. 24, 1990) (Nutrition Labeling and Education Act of 1990, statement

26  of Sen. Mitchell ("It is also important that this program, which requires national

27  uniform nutritional labeling, is sensitive to the regulatory roles played by the

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

States.  This bill has been refined to provide national uniformity where it is most necessary, while otherwise preserving State regulatory authority.").

Finally, in *Lockwood v. ConAgra Foods, Inc.*, the court determined that a consumer's claims that ConAgra misled consumers by advertising its pasta sauce as "all natural" when it contained high-fructose corn syrup were not impliedly preempted.  597 F. Supp. 2d at 1034.  In rejecting the defendant's preemption arguments, the court explained:

> The FDA's "policy" about the use of the word "natural" in a food label also suggests an intent ***not to occupy*** the field. . . .
>
> Although the FDA acknowledges that consumers are being misled by the use of the term "natural," it has declined to adopt any regulations governing this term.  ***This inaction is consistent with an intent not to occupy the field.***  This is especially so given that at the time the FDA declined to formally define 'natural' it was aware of and had reviewed state regulation of the use of the term, yet it made no mention of the need for uniformity or a preemptive federal regulation, instead it declined to take any action.

597 F. Supp. 2d at 1033-34 (emphasis added) (internal citations omitted); *see also Wyeth*, 129 S. Ct. at 1200 ("If Congress thought state-law suits posed an obstacle to its objectives, it surely would have enacted an express pre-emption provision at some point during the FDCA's 70-year history.").

As these cases and the NLEA's plain language show, Plaintiff's claims cannot be impliedly preempted.

### b. The FDA's Hands-Off Policy Towards Genetically-Modified Foods Further Underscores Why Plaintiff's Claims Cannot Be Impliedly Preempted

In addition to not regulating the use of the term "natural" on product labels, the FDA has adopted a hands-off policy towards regulating products with

- 13 -

genetically-modified ingredients.  Although Defendant claims that the FDA "has conducted extensive scientific research, and has concluded that bioengineered foods do not, as a class, differ in any meaningful way from foods made from plants developed through older methods of genetic selection[,]"  Def.'s Br. at 1, that is simply not true.

Defendant misrepresents the FDA's oversight of genetically-modified foods. Defendant quibbles with the relevant terminology to describe foods whose DNA is altered in a lab, saying in a footnote that the FDA uses "bioengineering" instead of "genetic modification" to describe the technology used to alter the DNA of different foods.  Def.'s Br. at 6, n.3. Defendant claims this is because the FDA purportedly recognizes that "modern methods of bioengineering are simply an extension of historical methods." *Id.*  But Defendant is wrong on both counts. For one thing, the FDA uses "genetic modification" throughout the very publication Defendant cites to describe the same technology Defendant insists should be called "bioengineering." *See* 57 Fed. Reg. 22984 (using "genetic modification" over twenty times and "bioengineering" zero times to describe the technology used to alter DNA in different foods).  And even if the FDA uses "bioengineering" in some of its publications, this is hardly dispositive of anything, nor does it imply that the FDA recognizes genetic modification or bioengineering to be the same as traditional agricultural methods.  For instance, in its Policy Statement, the FDA explains that "new methods of genetically modifying plants are being used to develop new varieties . . . including some modifications that would not be possible with traditional plant breeding methods." *Id.*  Finally, the food industry and ConAgra itself uses "genetic modification" in the same way that Plaintiff does. *See, e.g.*, Monsanto, http://www.monsanto.com/newsviews/Pages/glossary.aspx#g (last visited Sept. 26, 2011); ConAgra, http://company.conagrafoods.com/ phoenix.zhtml?c=202310&p=corp_consumers#FoodSafetyQuality (describing one

1    of its brands as being made from "non-GMO soy seeds") (last visited June 24,

2    2011).

3         Additionally, the FDA's role in evaluating genetically-modified foods is far

4    less involved than Defendant portrays.   Contrary to Defendant's assertion that the

5    "FDA monitors the introduction and labeling of new bioengineered foods," the

6    FDA explains in its Policy Statement that it does not "conduct, prior to marketing,

7    routine safety reviews of whole food derived from plants." Def.'s Br. at 7; 57 Fed.

8    Reg. 27984.  Instead, the FDA delegates that responsibility to manufacturers such

9    as ConAgra.  As the FDA explains in its Policy Statement, "It is the responsibility

10   of the producer of a new food to evaluate the safety of the food." *Id.* at 22990.

11        ConAgra also exaggerates the voluntary "consultation process" by which

12   manufacturers of genetically-modified ingredients meet with the FDA and

13   determine whether their products require additional disclosures on the label.  Def.'s

14   Br. at 8-9.  First, underscoring the lax nature of these consultations, ConAgra

15   admits it does not participate in them even though it is responsible for the labels at

16   issue here.  *Id.*  And even for manufacturers that choose to consult with the FDA,

17   the FDA's "evaluation" is based only on whatever limited and (potentially biased)

18   information the manufacturer chooses to provide.  In fact, a recent study of the

19   FDA's requests for additional information during the consultation process found

20   that food manufacturers often refused to provide the requested information.  *See*

21   Doug Gurian-Sherman, Ph.D., *Holes in the Biotech Safety Net: FDA Policy Does*

22   *Not Assure the Safety of Genetically Engineered Foods*, Center for Science in the

23   Public Interest, http://www.cspinet.org/new/pdf/fda_report__final.pdf (last visited

24   Sept. 30, 2011).  Yet, as even Defendant admits, "in each case, the agency has

25   accepted the developers' conclusions [about product safety]." Def.'s Br. at 9.

26        **C.**   **The "Primary Jurisdiction" Doctrine Is Inapplicable**

27        Defendant urges the Court to dismiss or stay this action under the primary

28   jurisdiction doctrine because Defendant claims "the FDA has decades of

- 15 -

experience and specialized resources not available to the Court."  Def.'s Br. at 18.
Defendant's request is baseless and should be denied.

The primary jurisdiction doctrine (which is rarely invoked) allows courts, at
their discretion, to stay or dismiss actions requiring technical expertise in deference
to the administrative agency with "special competence" in that area.  *See Clark v.
Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).

The doctrine is inapplicable here.  First, the FDA has expressly declined to
regulate the term "natural," so there is no reason for this Court to delay in
addressing the issues raised by Plaintiff.

Second, whether ConAgra's use of the phrase "100% Natural" is misleading
is not an issue that requires technical expertise or specialized knowledge to resolve.
Courts considering this issue have repeatedly held the same.  For instance, in
*Lockwood*, the court rejected ConAgra's request to stay or dismiss that case based
on primary jurisdiction where the plaintiff alleged defendant's use of "all natural"
in marketing its pasta sauces made with high-fructose corn syrup was misleading.
As the court explained, "this is not a technical area in which the FDA has greater
technical expertise than the courts – every day courts decide whether conduct is
misleading."  597 F. Supp. 2d at 1035.

Similarly, in *Wright v. General Mills, Inc.*, the plaintiff alleged that the
defendant misled consumers by claiming its granola bars were "100% Natural."
2009 WL 3247148.  There, the court also refused to apply the primary jurisdiction
doctrine.  As in *Lockwood*, the court reasoned that "state law claims based upon
the use of the term 'natural' is not an issue of first impression, does not require
technical expertise within the special competence of the FDA, and is not a
particularly complicated issue outside of the ability of the Court to consider and
decide."  *Id.* at *3; *accord Chacanaca v. The Quaker Oats Co.*, 752 F. Supp. 2d
1111, 1124 (N.D. Cal. 2010) ("whether or not the 'smart choices made easy' decal,
the photographs of oats, nuts, and children in soccer uniforms, or the term

- 16 -

1   'wholesome' are misleading – [does] not entail technical questions or require

2   agency expertise").

3        Finally, Plaintiff's claims are based on state law.  Thus, even if the FDA

4   chose to regulate use of the term "natural" in food marketing, this would not affect

5   Plaintiff's state law claims.  *See Lockwood*, 597 F. Supp. 2d at 1035 ("plaintiffs'

6   claims are based on state law and . . . even if the FDA were to formally define

7   'natural,' federal law would not dispose of plaintiffs' state law claims").

8        The primary jurisdiction doctrine is thus inapplicable here.

9        **D.   Plaintiff's Claims Are Properly Pled**

10       Defendant argues that Plaintiff's pleadings are insufficient because: (1)

11  Plaintiff fails to plead sufficient facts under Rules 8 and 9(b), and (2) Plaintiff's

12  claims are not "plausible" under *Twombly*, 550 U.S. at 555.  Defendant is wrong.

13       **1.   Plaintiff's Claims Are Sufficient Under Rule 8**

14       Defendant erroneously claims that Plaintiff's claims are insufficient under

15  Rule 8.  Rule 8 merely requires that a complaint contain "a short and plain

16  statement of the claim showing that the pleader is entitled to relief."  *Ashcroft v.*

17  *Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).  Plaintiff meets this

18  standard.

19       First, Defendant argues that Plaintiff should have included certain additional

20  details, but none of the examples cited by Defendant are required by Rule 8, nor

21  are they particularly important.  For instance, Defendant asserts that "[w]ith the

22  exception of one date, on which he presumably made a single purchase, Plaintiff

23  does not disclose when or where he purchased ConAgra's oils."  Def.'s Br. at 21.

24  Such details are irrelevant under Rule 8.  Plaintiff alleges in the Complaint that he

25  "regularly purchased" ConAgra's Wesson Canola Oil throughout the Class Period.

26  Compl. at 3.  Additionally, there is no requirement—and, indeed, Defendant cites

27  no authority to support the proposition—that a plaintiff is required to have

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

purchased a product multiple times or on multiple dates before he/she can plausibly claim that the labeling on the product is misleading.

Second, Defendant claims that Plaintiff "complains of ConAgra's 'representation that Wesson Canola Oil[] was 100% natural,' but does not state when or where he read this—on the label of the product he was buying, on ConAgra's web site, or somewhere else." Def.'s Br. at 21. Again, the allegations in the Complaint flatly contradict Defendant's assertion. *See* Compl. at 3-4 (Plaintiff describes the information on the label and its appearance). Moreover, Defendant's reliance on *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) and *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992 (N.D. Cal. 2009), is misplaced. Unlike here, *Kearns* involved no labeling and was instead about purported misrepresentations made during the sale of a car. 567 F.3d at 1126. *Marolda* is similarly inapposite as it dealt with purported omissions on a company website rather than affirmative misrepresentations as is the case here. 672 F. Supp. 2d at 998. In any event, ConAgra's admittedly ubiquitous marketing of its Wesson Oils as being "100% Natural" – including on the label itself – make it irrelevant which particular advertisement Plaintiff saw or in what format. *See In re Ferrero Litig.*, No. 11-CV-205 H (CAB), 2011 U.S. Dist. LEXIS 97488, at *5-6 (S.D. Cal. Aug. 29, 2011) ("'[W]here . . . a plaintiff alleges exposure to a long-term advertising campaign, the plaintiff is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements.'") (quoting *In re Tobacco II Cases*, 207 P.3d 20, 40 (2009)).

Third, Defendant takes issue with the fact that Plaintiff purportedly does not allege that he "bought a Wesson Oil other than canola, although he seeks to represent every person in the country who bought any one of four oils in the last four years." Def.'s Br. at 21. ConAgra does not deny that all of its Wesson Oils are marketed as "100% Natural," but are made with genetically-modified ingredients. Plaintiff bought one of the Wesson Oils based on ConAgra's

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

misrepresentation and was misled and is harmed in the same way as all purchasers of Wesson Oils were – regardless of whether the particular Wesson Oil was canola oil or one of the other three kinds at issue.   Defendant's contention is thus a distinction without a difference.   *See, e.g., Von Koening*, 713 F. Supp. 2d 1066 (upholding class claims related to a defendant's "drink products," which included different teas and juices, even though plaintiff never purported to purchase every flavor of those products).

Fourth, Defendant asserts that because Plaintiff "does not even allege ***that*** the Wesson Oil he bought was made" with genetically-modified ingredients that somehow this makes Plaintiff's claims deficient.   Def.'s Br. at 21 (emphasis in original).   But Plaintiff ***does*** allege that he purchased Wesson Oil made with genetically-modified ingredients.   As the Complaint says, "Plaintiff paid for a 100% natural product, but did not receive a product that was 100% natural. Plaintiff received a product that was genetically engineered in a laboratory, and had its genetic code artificially altered to exhibit not 'natural' qualities."   Compl. ¶ 11.   Defendant's argument is thus groundless.

Finally, Defendant argues that "[o]n similar facts, the Southern District of California [in *Wright v. General Mills*] dismissed claims challenging food labels under state consumer protection law."   Def.'s Br. at 21.   However, in a more recent case, the only court in this District to discuss *Wright* expressly disagreed with the *Wright* court's conclusion that the plaintiff's allegations there were insufficient. *See Red v. Kraft Foods, Inc.*, 754 F. Supp. 2d 1137, 1145 (C.D. Cal. 2010) (while finding plaintiff's allegations sufficient, the court dismissed the defendant's reliance on *Wright*, noting that "[In *Wright*,] the district court found the allegation that, as a result of defendant's conduct, plaintiffs . . . purchased more of, or paid more for defendants products to be insufficient to allege an injury under federal pleading standards.   ***It hardly needs to be said that many courts have found***

*similar allegations to be sufficient*.") (collecting authorities) (internal citation omitted).

### 2.     Plaintiff's Claims Satisfy Rule 9(b)'s "Specificity" Requirement

Defendant further asserts that Plaintiff's claims lack the requisite specificity under Rule 9(b).  *See* Def.'s Br. at 22.  Rule 9(b) requires a plaintiff whose claims "sound in fraud" to put forth allegations "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong."  *Chacanaca*, 752 F. Supp. 2d at 1126 (citation omitted).

Defendant claims that Plaintiff fails to meet this standard because Plaintiff purportedly "fails to provide facts establishing the 'who, what, when, where and how' of his purported reliance" on Defendant's misrepresentations.  Def.'s Br. at 22.

Defendant's position is wrong and is contradicted by several recent decisions involving similar disputes.  For instance, in *Chacanaca*, the court refused to dismiss under Rule 9(b) where the plaintiffs "identified the particular statements they allege are misleading, the basis for that contention, where those statements appear on the product packaging, and the relevant time period in which the statements were used."  752 F. Supp. 2d at 1126.  As the court there explained, such allegations "satisf[y] the requisite 'who, what, when, where, and how' of the misconduct charged."  *Id.*  Similarly, in *Astiana*, in refusing to dismiss the plaintiff's case about misleading claims concerning "natural" ice cream on Rule 9(b) grounds, the court explained:

> The "who" is Ben & Jerry's, Breyers, and Unilever.  The "what" is the statement that the ice cream containing alkalized cocoa is "all natural."  The "when" is alleged as "since at least 2006," and "throughout the class period."  The "where" is on the ice cream

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

package labels.  The "how the statements were misleading" is the allegation that defendants did not disclose that the alkalizing agent in the alkalized cocoa was potassium carbonate, which plaintiffs allege is a "synthetic."

2011 WL 2111796, at *6; *see also Von Koenig*, 713 F. Supp. 2d at 1077 (explaining that where the plaintiff alleged that defendant made misleading representations on its product labels during a particular time period and that these misrepresentations caused plaintiff to buy defendant's product, those allegations are sufficient under Rule 9(b)).

Like the plaintiffs in *Chacanaca*, *Astiana*, and *Von Koenig*, Plaintiff's allegations here satisfy the requirements of Rule 9(b).  Plaintiff alleges the "who" (ConAgra), the "what" (ConAgra's claim that its Wesson cooking oils containing genetically-modified ingredients are "100% Natural"), the "when" (since "June 27, 2007"), the "where" ("on the product label itself, the Wesson website, and all Wesson Oils' advertisements"), and the "how the statements were misleading" (claiming a product is "100% Natural" misleads a reasonable consumer to believe that it does not contain genetically-modified ingredients).  Thus, Plaintiff's allegations satisfy Rule 9(b)'s "particularity" requirement.

### 3.  Plaintiff's Claims Are "Plausible" Under *Twombly*

Defendant argues that Plaintiff's claims are not "plausible" under *Twombly*.  *See* Def.'s Br. at 20.  Under *Twombly*, a motion to dismiss must be denied unless a plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570.  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and 'that a recovery is very remote and unlikely.'" *Id.* at 556.  Plaintiff's claims far surpass this standard, and Defendant's arguments to the contrary are baseless.

As an initial matter, the gravamen of Defendant's argument – that Plaintiff could not plausibly have believed Wesson Oils were was made without

1   genetically-modified ingredients—is an issue of fact that, by its very nature, cannot

2   be resolved on a motion to dismiss.  *See, e.g., Astiana*, 2011 WL 2111796, at \*4

3   (explaining that the plausibility of plaintiff's claim that he was misled by

4   defendant's claim that its ice cream was "all natural" even though it contained

5   alkalized cocoa "involves questions of fact, and is therefore beyond the scope of

6   this Rule 12(b)(6) motion"); *Chacanaca*, 752 F. Supp. 2d at 1126 (determining that

7   whether a product was "wholesome" as its label claimed, could not be resolved on

8   a motion to dismiss).

9         Additionally, Defendant's assertion about the purported implausibility of

10  Plaintiff's belief is based on a false premise – that "[w]idely accessible public

11  information makes clear that 88-94% of the nation's crops of corn, soy and canola

12  is [*sic*] grown from seeds that are the product of bioengineering."  Def.'s Br. at 23.

13  Even if that were true, it is of no moment.  Whether most crops are grown from

14  genetically-modified seeds says nothing about whether Defendant's advertising

15  misled Plaintiff.  Moreover, Defendant's contention that "consumers who wish to

16  avoid bioengineered foods can buy products under [ConAgra's] Lightlife and

17  organic lines" is misleading for two reasons.  Def.'s Br. at 23-24.  First, the issue

18  here has nothing to do with Defendant's other product lines, but is instead about

19  Defendant's affirmative misrepresentation of its genetically-modified products as

20  being "100% Natural" when they, in fact, are not.  Second, due to Defendant's

21  affirmative misrepresentation of its Wesson Oil products as being "100% Natural,"

22  ConAgra intended to convey the absence of genetically-modified ingredients in its

23  Wesson Oils, thus giving consumers the false impression that they did not need to

24  buy alternative products in ConAgra's lineup in order to avoid genetically-

25  modified ingredients.

26        Also, accessibility of information is not a factor courts consider in

27  determining whether a plaintiff properly pleads a consumer protection claim.

28  Instead, courts look to whether a statement is likely to deceive a "reasonable

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

consumer." *See Dvora*, 2011 WL 1897349, at *6 ("To state a claim under the UCL and CLRA, Plaintiff must allege, *inter alia*, that General Mills made statements that are likely to deceive a reasonable consumer."). To Plaintiff's knowledge, there is not a single case where a court held that a "reasonable consumer" should be expected to divine the presence of ingredients not listed on a product's label (*e.g.*, genetically-modified ingredients) or maintain a working knowledge of which of the purported "88-94% of the nation's crops of corn, soy and canola" that are grown from genetically-modified seeds are included in which brands of cooking oils.

There is, however, ample authority supporting Plaintiff's position that where a product contains non-natural ingredients, but claims to be all or 100% "natural," such a claim is likely to deceive a reasonable consumer. *See*, *e.g.*, *Williams v. Gerber Prods. Co.*, 523 F.3d 934, 939 (9th Cir. 2008) (finding a food company's claim likely to mislead a reasonable consumer where its product was made with concentrate (*i.e.*, powder), but claimed to be made from "fruit juice and other all natural ingredients" despite the fruit juice being from concentrate); *Henderson v. Gruma Corp.*, CV 10-04173 AHM (AJWx), 2011 WL 1362188, at *11 (C.D. Cal. Apr. 11, 2011) (concluding that a reasonable consumer would be deceived by a guacamole product that claimed to be "all natural," but included partially hydrogenated oil); *Hitt v. Ariz. Beverage Co., LLC*, No. 08cv809 WQH (POR), 2009 WL 449190 (S.D. Cal. Feb. 4, 2009) (explaining that a reasonable consumer would be deceived by a drink claiming the drink was "All Natural" when the drink contained high-fructose corn syrup).

Defendant also contends that Plaintiff's allegations are implausible because he fails to rebut the FDA's purported determination that genetically-modified foods are "not materially different" from other foods. Def.'s Br. at 24. This half-description is entirely misleading because the FDA's use of "materially" is a term of art unique to a particular context not relevant to this lawsuit. The FDA "has

- 23 -

1    generally limited the scope of the materiality concept" to a food's "organoleptic

2    properties" – taste, touch, and smell.  FDA, *Food Labeling; Foods Derived from*

3    *New Plant Varieties*, 58 Fed. Reg. 25837, 25838 (Apr. 28, 1993).

4           Moreover, that limited definition is not shared by state law.  *See, e.g., Park*

5    *v. Cytodyne Technologies, Inc.*, No. GIC 76834, 2003 WL 21283814, at *5 (Cal.

6    Super. May 30, 2003) (a claim is "material" under California Business &

7    Professions Code § 17500 if "it is likely to influence the purchasing decision" of a

8    consumer); *Brackey v. Moore*, 107 Cal. App. 4th 86, 100 (2003) (a

9    misrepresentation is "material" under California Business & Professions Code

10   § 17200 if a consumer "could reasonably be deceived or confused" by it).

11          Finally, Defendant's conduct undermines its own argument, in particular: (1)

12   Defendant devotes at least two product lines to purportedly genetically-modified

13   ingredient free foods, Compl. ¶ 18; and (2) Defendant elected to market Wesson

14   Oils as being "100% Natural," obviously because it believed that doing so

15   conferred some benefit. Compl. ¶ 15.  Defendant also does not deny Plaintiff's

16   allegation that finding information about Defendant's use of genetically-modified

17   ingredients on Defendant's website is difficult to access.

18          For all these reasons, Plaintiff's claim that he was misled by Defendant

19   claiming its Wesson Oils were "100% Natural" even though they contained

20   genetically-modified ingredients, is plausible.

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss.

DATED:  October 10, 2011             **MILBERG LLP**
                                      JEFF S. WESTERMAN
                                      DAVID E. AZAR
                                      CHRISTIAN KEENEY


                                      _____
                                            */s/ Jeff S. Westerman*
                                      JEFF S. WESTERMAN

                                      One California Plaza
                                      300 S. Grand Avenue, Suite 3900
                                      Los Angeles, California  90071
                                      Telephone: (213) 617-1200
                                      Facsimile:  (213) 617-1975
                                      Email: jwesterman@milberg.com
                                      ckeeney@milberg.com

                                      **MILBERG  LLP**
                                      Andrei V. Rado
                                      One Pennsylvania Plaza
                                      New York, New York  10119
                                      Telephone: (212) 594-5300
                                      Facsimile: (212) 868-1229
                                      Emails: arado@milberg.com

                                      Attorneys for Plaintiff Robert Briseno

- 25 -

# EXHIBIT A



DECLARATION OF SERVICE BY CM/ECF AND/OR MAIL

I, the undersigned, declare:

1.      That declarant is and was, at all times herein mentioned, employed in the County of Los Angeles, over the age of 18 years, and not a party to or interest in the within action; that declarant's business address is One California Plaza, 300 South Grand Avenue, Suite 3900, Los Angeles, California 90071-3149.

2.      Declarant hereby certifies that on October 10, 2011, declarant served the PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS by electronically filing the foregoing document listed above by using the Case Management/ Electronic Case filing system.

3.      Declarant further certifies:

☒      All participants in the case are registered CM/ECF users and that service will be accomplished by the court's CM/ECF system

☐      Participants in the case who are registered CM/ECF users will be served by the court's CM/ECF system.  Participants in the case that are not registered CM/ECF users will be served by First-Class Mail, postage pre-paid or have dispatched to a third-party commercial carrier for delivery to the non-CM/ECF participants.

4.      That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 10th day of October, 2011, at Los Angeles, California.

_____
CECILLE CHAFFINS

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS