MILBERG LLP
JEFF S. WESTERMAN (SBN 94559)
jwesterman@milberg.com
DAVID E. AZAR (SBN 218319)
dazar@milberg.com
CHRISTIAN J. KEENEY (SBN 269533)
ckeeney@milberg.com
One California Plaza
300 South Grand Avenue, Suite 3900
Los Angeles, California 90071
Telephone:  (213) 617-1200
Facsimile:   (213) 617-1975

WOLF HALDENSTEIN ADLER
   FREEMAN & HERZ LLC
ADAM J. LEVITT (pro hac vice)
levitt@whafh.com
55 West Monroe Street, Suite 1111
Chicago, Illinois  60603
Telephone:  (312) 984-0000
Facsimile:   (312) 984-0001

Interim Class Counsel
Additional Counsel on Signature Page

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| IN RE CONAGRA FOODS, INC. | Case No. CV 11-05379-MMM (AGRx) |
| | MDL NO. 2291 |
| | CLASS ACTION |
| | CONSOLIDATED AMENDED CLASS ACTION COMPLAINT |
| | JURY TRIAL DEMANDED |

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

DOCS\583444v1

# TABLE OF CONTENTS

**Page**

NATURE OF THE ACTION ...................................................................1

JURISDICTION AND VENUE .............................................................2

PARTIES................................................................................................3

   I.  Plaintiffs .................................................................................3

      California Plaintiffs ...........................................................3

         Robert Briseño .........................................................3

         Christi Toomer .........................................................4

         Michele Andrade .....................................................5

         Lil Marie Birr ..........................................................5

      Colorado Plaintiff .............................................................6

         Jill Crouch ...............................................................6

      Florida Plaintiffs...............................................................7

         Julie Palmer .............................................................7

         Janeth Ruiz ..............................................................7

      Illinois Plaintiff.................................................................8

         Pauline Michael .......................................................8

      Indiana Plaintiff ...............................................................9

         Cheri Shafstall .........................................................9

      Massachusetts Plaintiff.....................................................9

         Bonnie McDonald ...................................................9

      Nebraska Plaintiff.............................................................10

         Dee Hopper-Kercheval ...........................................10

      New Jersey Plaintiffs .......................................................11

         Brenda Krein ...........................................................11

         Phyllis Scarpelli .....................................................11

      New York Plaintiffs..........................................................12

i

Kelly McFadden .................................................................12

Necla Musat .....................................................................13

Ohio Plaintiff ........................................................................13

Maureen Towey ...............................................................13

Oregon Plaintiff ...................................................................14

Erika Heins ......................................................................14

South Dakota Plaintiff .........................................................15

Rona Johnston .................................................................15

Texas Plaintiff ......................................................................15

Anita Willman ..................................................................15

Washington Plaintiff ............................................................16

Anne Cowan .....................................................................16

Wyoming Plaintiff ................................................................17

Patty Boyer ......................................................................17

II.  Defendant ........................................................................17

FACTUAL ALLEGATIONS ...........................................................18

ConAgra Advertises and Markets Wesson Oils as "100% Natural" .............18

Genetically-Modified Organisms Are Not Natural ................................20

Wesson Oils Are Made From GMO ...............................................22

ConAgra Deceptively Markets Wesson Oils as "100% Natural" to
Boost Sales ........................................................................23

CLASS ACTION ALLEGATIONS ..................................................25

CLAIMS FOR RELIEF ................................................................29

COUNT I ...........................................................................29

COUNT II ..........................................................................30

COUNT III .........................................................................32

COUNT IV .........................................................................34

COUNT V ..........................................................................37

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

COUNT VI ........................................................................39

COUNT VII ......................................................................41

REQUEST FOR RELIEF .................................................................42

JURY DEMAND .........................................................................43

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

DOCS\583444v1

This Consolidated Amended Class Action Complaint (the "Consolidated Complaint") against Defendant ConAgra Foods, Inc. ("ConAgra" or "Defendant") is brought by individual consumers residing in California, Nebraska (where ConAgra is headquartered), and 13 other states[1]—on behalf of themselves and a: (a) nationwide class (the "Class"), alleging claims under (1) the Magnusson-Moss Warranty Act, 15 U.S.C. § 2301, et seq., (2) the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1602, et seq., and (3) the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, et seq.; and subclasses based on the state laws of the states in which the named plaintiffs (collectively, the "Plaintiffs") reside consisting of (1) consumer protection state law subclasses, (2) breach of express warranty state law subclasses, (3) breach of implied warranty state law subclasses, and (4) unjust enrichment state law subclasses (collectively, the "State Law Subclasses"). The allegations in this Consolidated Complaint are based on the personal knowledge of each of the Plaintiffs as to themselves, and on information and belief as to all other matters.

## NATURE OF THE ACTION

1.  Plaintiffs allege that from at least June 27, 2007 through the present (the "Class Period"), ConAgra deceptively and misleadingly marketed its Wesson brand cooking oils, including Wesson Vegetable Oil, Wesson Canola Oil, Wesson Corn Oil, and Wesson Best Blend (collectively, "Wesson Oils"), as "100% Natural" when, in fact, Wesson Oils are made from unnatural, genetically-modified organisms ("GMO").

2.  Throughout the Class Period, ConAgra has systematically marketed and advertised Wesson Oils as "100% Natural" on the label of Wesson Oils bottles, on the Wesson Oils website, and in print and television advertisements

---

[1] The complete list of states included in the State Law Subclasses is: California, Colorado, Florida, Illinois, Indiana, Massachusetts, Nebraska, New Jersey, New York, Ohio, Oregon, South Dakota, Texas, Washington, and Wyoming.

such that any United States consumer who purchases Wesson Oils is exposed to ConAgra's "100% Natural" claim.

3.    This claim is deceptive and misleading because Wesson Oils are made with unnatural ingredients.  Specifically, Wesson Oils are made with GMO-plants whose genes have been altered by scientists in a lab for the express purpose of causing those plants to exhibit traits that are not naturally their own.  GMO are not natural by design.

4.    Accordingly, ConAgra misleads and deceives reasonable consumers, including the named Plaintiffs and the other members of the Class, by portraying a product made from unnatural ingredients as "100% Natural."

5.    ConAgra's conduct harms consumers by inducing them to purchase and consume a product with GMO on the false premise that the product (Wesson Oils) is "100% Natural."

6.    Plaintiffs bring this lawsuit against ConAgra individually and on behalf of both a nationwide class and the State Law Subclasses of all other similarly situated purchasers of Wesson Oils due to ConAgra's misleading and deceptive marketing of Wesson Oils as "100% Natural." Plaintiffs allege claims for violations of the Nebraska Consumer Protection Act, the Nebraska Unfair and Deceptive Trade Practices Act, Neb. Rev. Stat. § 59-1602, et seq., the Magnusson-Moss Warranty Act, 15 U.S.C. § 2301, et seq., and for untrue and misleading advertising, unfair competition, unfair and deceptive acts and practices, breach of express warranty, breach of implied warranty, and/or unjust enrichment under the statutory and common laws of the states in which the named Plaintiffs reside.

## JURISDICTION AND VENUE

7.    On October 13, 2011, the Judicial Panel on Multidistrict Litigation ("JPML") ordered all related actions filed outside this District to be transferred here for all pre-trial proceedings under 28 U.S.C. § 1407.

8.     This Court has subject matter jurisdiction over this consolidated action under the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(a) and 1332(d) because (1) there are over 100 members in the proposed class, (2) the amount in controversy exceeds $5 million exclusive of interest and costs, and (3) over two-thirds of the members of the proposed class and subclasses hold different state citizenship than ConAgra.

9.     This Court also has subject matter jurisdiction under 28 U.S.C. § 1331 over Plaintiffs' Magnusson-Moss Warranty Act claim because it arises under federal law.

10.     This Court also has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

11.     This Court has personal jurisdiction over ConAgra because a substantial portion of the wrongdoing alleged by Plaintiffs occurred in California, ConAgra has sufficient minimum contacts with and/or otherwise intentionally avails itself of the markets in California, and ConAgra has sufficient contacts with this District such that it is fair and just for ConAgra to adjudicate this dispute here.

12.     Venue is proper in this District because ConAgra is subject to personal jurisdiction here, a substantial portion of ConAgra's alleged wrongdoing occurred here, and many of the witnesses to ConAgra's alleged wrongdoing are believed to be located here. Additionally, venue is proper here because the parties are subject to the JPML order transferring this litigation here.

**PARTIES**

**I. Plaintiffs**

**California Plaintiffs**

**Robert Briseño**

13.     Plaintiff Robert Briseño is a consumer residing in California. During the Class Period, Mr. Briseño purchased Wesson Canola Oil about once every two months for his and his family's consumption, most recently in April 2011.

1   Throughout the Class Period, ConAgra labeled and advertised Wesson Canola Oil
2   as "100% Natural." During the Class Period, Mr. Briseño saw "100% Natural" in
3   ConAgra's advertisements approximately once a week on the label of Wesson
4   Canola Oil bottles in stores, several times per year in print and television
5   advertisements, and at least weekly on the packaging of Wesson Canola Oil in his
6   home. Mr. Briseño purchased Wesson Canola Oil because he believed and relied
7   on ConAgra's representations that Wesson Canola Oil was "100% Natural." Mr.
8   Briseño would not have purchased Wesson Canola Oil but for ConAgra's
9   misrepresentation that Wesson Canola Oil is "100% Natural." Mr. Briseño was
10  injured in fact and lost money as a result of ConAgra misrepresenting Wesson
11  Canola Oil as "100% Natural." Mr. Briseño paid for a "100% Natural" product,
12  but did not receive a product that was 100% natural. Instead, Mr. Briseño received
13  a product that was genetically engineered in a laboratory, and had its genetic code
14  artificially altered to exhibit not natural qualities.

15             **Christi Toomer**

16         14.   Christi Toomer is a consumer residing in California. During the Class
17  Period, Ms. Toomer purchased Wesson Canola Oil at Wal-Mart for her and her
18  family's personal consumption. Throughout the Class Period, ConAgra labeled
19  and advertised Wesson Canola Oil as "100% Natural." During the Class Period,
20  Ms. Toomer saw ConAgra claim Wesson Canola Oil is "100% Natural" in
21  ConAgra's advertisements several times annually in print media, including
22  coupons, and in television advertisements, approximately once a week on the
23  packaging of Wesson Canola Oil bottles in retail stores, and approximately daily
24  on the packaging of Wesson Canola Oil bottles in her home. Ms. Toomer
25  purchased Wesson Canola Oil because she believed and relied on ConAgra's
26  representations that Wesson Canola Oil is "100% Natural." Ms. Toomer would
27  not have purchased Wesson Canola Oil but for ConAgra's misrepresentation that
28  Wesson Canola Oil is "100% Natural." Ms. Toomer was injured in fact and lost

money as a result of ConAgra misrepresenting Wesson Canola Oil as "100% Natural." Ms. Toomer paid for a "100% Natural" product, but did not receive a product that was 100% natural. Instead, Ms. Toomer received a product that was genetically engineered in a laboratory, and had its genetic code artificially altered to exhibit not natural qualities.

### Michele Andrade

15.   Plaintiff Michele Andrade is a consumer residing in California. During the Class Period, Ms. Andrade purchased Wesson Canola Oil approximately one or two times per year for her and her family's consumption, most recently in June 2011. Throughout the Class Period, ConAgra labeled and advertised Wesson Canola Oil as "100% Natural." During the Class Period, Ms. Andrade saw ConAgra market Wesson Canola Oil as "100% Natural" at least once in a magazine advertisement, and repeatedly on Wesson Canola Oil labels she saw in stores and in her home. Ms. Andrade purchased Wesson Canola Oil because she believed and relied on ConAgra's representations that Wesson Canola Oil is "100% Natural." Ms. Andrade would not have purchased Wesson Canola Oil but for ConAgra's misrepresentation that Wesson Canola Oil is "100% Natural." Ms. Andrade was injured in fact and lost money as a result of ConAgra misrepresenting Wesson Canola Oil as "100% Natural." Ms. Andrade paid for a "100% Natural" product, but did not receive a product that was 100% natural. Instead, Ms. Andrade received a product that was genetically engineered in a laboratory, and had its genetic code artificially altered to exhibit not natural qualities.

### Lil Marie Birr

16.   Plaintiff Lil Marie Birr is a consumer and restaurant general manager residing in California. During the Class Period, Ms. Birr purchased Wesson Oils regularly for her own use and her restaurant's use. Throughout the Class Period, ConAgra labeled and advertised Wesson Oils as "100% Natural." During the Class Period, Ms. Birr saw ConAgra market Wesson Oils as "100% Natural"

5

DOCS\583444v1

several times in television advertisements, and repeatedly on Wesson Oil labels she saw in stores, in her home, and in the restaurant she manages. Ms. Birr purchased Wesson Oils because she believed and relied on ConAgra's representations that Wesson Oils are "100% Natural." Ms. Birr would not have purchased Wesson Oils but for ConAgra's misrepresentation that Wesson Oils are "100% Natural." Ms. Birr was injured in fact and lost money as a result of ConAgra misrepresenting Wesson Oils as "100% Natural." Ms. Birr paid for a "100% Natural" product, but did not receive a product that was 100% natural. Instead, Ms. Birr received a product that was genetically engineered in a laboratory, and had its genetic code artificially altered to exhibit not natural qualities.

### Colorado Plaintiff

#### Jill Crouch

17. Plaintiff Jill Crouch is a consumer residing in Colorado. During the Class Period, Ms. Crouch purchased Wesson Canola Oil approximately two times per year for her and her family's consumption, most recently around May or June 2011. Throughout the Class Period, ConAgra labeled and advertised Wesson Canola Oil as "100% Natural." During the Class Period, Ms. Crouch saw ConAgra market Wesson Canola Oil as "100% Natural" on Wesson Canola Oil product packaging a few times per month when she went shopping in retail stores, on approximately a weekly basis when she saw the "100% Natural" claim on the packaging of Wesson Canola Oil products in her home, and approximately one or two times annually in print or television advertisements. Ms. Crouch purchased Wesson Canola Oil because she believed and relied on ConAgra's representations that Wesson Canola Oil is "100% Natural." Ms. Crouch would not have purchased Wesson Canola Oil but for ConAgra's misrepresentation that Wesson Canola Oil is "100% Natural." Ms. Crouch was injured in fact and lost money as a result of ConAgra misrepresenting Wesson Canola Oil as "100% Natural." Ms. Crouch paid for a "100% Natural" product, but did not receive a product that was 100%

6

1   natural.  Instead, Ms. Crouch received a product that was genetically engineered in
2   a laboratory, and had its genetic code artificially altered to exhibit not natural
3   qualities.

4   **Florida Plaintiffs**

5   **Julie Palmer**

6   18.   Plaintiff Julie Palmer is a consumer residing in Florida.  During the
7   Class Period, Ms. Palmer purchased Wesson Canola Oil as her needs arose for her
8   and her family's consumption.  Throughout the Class Period, ConAgra labeled and
9   advertised Wesson Canola Oil as "100% Natural."  During the Class Period, Ms.
10  Palmer saw "100% Natural" in ConAgra's advertisements on Wesson Canola Oil
11  packaging in retail stores approximately on a weekly basis and in print
12  advertisements approximately four or five times per year.  Ms. Palmer purchased
13  Wesson Canola Oil because she believed and relied on ConAgra's representations
14  that Wesson Canola Oil is "100% Natural."  Ms. Palmer would not have purchased
15  Wesson Canola Oil, but for ConAgra's misrepresentation that it is "100% Natural."
16  Ms. Palmer was injured in fact and lost money as a result of ConAgra
17  misrepresenting Wesson Canola Oil as "100% Natural."  Ms. Palmer paid for a
18  "100% Natural" product, but did not receive a product that was 100% natural.
19  Instead, Ms. Palmer received a product that was genetically engineered in a
20  laboratory, and had its genetic code artificially altered to exhibit not natural
21  qualities.

22  **Janeth Ruiz**

23  19.   Plaintiff Janeth Ruiz is a consumer residing in Florida.  During the
24  Class Period, Ms. Ruiz purchased Wesson Oils approximately once per month for
25  her and her family's consumption.  Throughout the Class Period, ConAgra labeled
26  and advertised Wesson Oils as "100% Natural."  During the Class Period, Ms.
27  Ruiz saw ConAgra represent that Wesson Oils are "100% Natural" several times in
28  television advertisements, at least monthly on the packaging of Wesson Oil bottles

7

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

in retail stores, and approximately weekly on the packaging of Wesson Oil bottles in her home. Ms. Ruiz purchased Wesson Oils because she believed and relied on ConAgra's representations that Wesson Oils are "100% Natural." Ms. Ruiz would not have purchased Wesson Oils, but for ConAgra's misrepresentation that they are "100% Natural." Ms. Ruiz was injured in fact and lost money as a result of ConAgra misrepresenting Wesson Oils as "100% Natural." Ms. Ruiz paid for a "100% Natural" product, but did not receive a product that was 100% natural. Instead, Ms. Ruiz received a product that was genetically engineered in a laboratory, and had its genetic code artificially altered to exhibit not natural qualities.

### Illinois Plaintiff

#### Pauline Michael

20. Plaintiff Pauline Michael is a consumer residing in Illinois. During the Class Period, Ms. Michael purchased Wesson Vegetable Oil approximately twice per year for her and her family's consumption. Throughout the Class Period, ConAgra labeled and advertised Wesson Vegetable Oil as "100% Natural." During the Class Period, Ms. Michael saw Wesson Vegetable Oil marketed as "100% Natural" approximately daily on the packaging of Wesson Vegetable Oil bottles in her home, a couple times per year on the packaging of Wesson Vegetable Oil bottles in retail stores, and several times in coupon advertisements. Ms. Michael purchased Wesson Vegetable Oil because she believed and relied on ConAgra's representations that Wesson Vegetable Oil is "100% Natural." Ms. Michael would not have purchased Wesson Vegetable Oil, but for ConAgra's misrepresentation that it is "100% Natural." Ms. Michael was injured in fact and lost money as a result of ConAgra misrepresenting Wesson Vegetable Oil as "100% Natural." Ms. Michael paid for a "100% Natural" product, but did not receive a product that was 100% natural. Instead, Ms. Michael received a product

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

DOCS\583444v1

1    that was genetically engineered in a laboratory, and had its genetic code artificially

2    altered to exhibit not natural qualities.

3    **Indiana Plaintiff**

4        **Cheri Shafstall**

5        21.    Plaintiff Cheri Shafstall is a consumer residing in Indiana.  During the

6    Class Period, Ms. Shafstall purchased at least one bottle of Wesson Canola Oil for

7    her and her family's consumption.  Throughout the Class Period, ConAgra labeled

8    and advertised Wesson Canola Oil as "100% Natural."  During the Class Period,

9    Ms. Shafstall saw Wesson Canola Oil marketed as "100% Natural" in print

10   advertisements, including coupons, on the packaging of Wesson Canola Oil bottles

11   in retail stores approximately once a month, and repeatedly on the packaging of

12   Wesson Canola Oil in her home.  Ms. Shafstall purchased Wesson Canola Oil

13   because she believed and relied on ConAgra's representations that Wesson Canola

14   Oil is "100% Natural."  Ms. Shafstall would not have purchased Wesson Canola

15   Oil, but for ConAgra's misrepresentation that it is "100% Natural."  Ms. Shafstall

16   was injured in fact and lost money as a result of ConAgra misrepresenting Wesson

17   Canola Oil as "100% Natural."  Ms. Shafstall paid for a "100% Natural" product,

18   but did not receive a product that was 100% natural.   Instead, Ms. Shafstall

19   received a product that was genetically engineered in a laboratory, and had its

20   genetic code artificially altered to exhibit not natural qualities.

21   **Massachusetts Plaintiff**

22       **Bonnie McDonald**

23       22.    Plaintiff Bonnie McDonald is a consumer residing in Massachusetts.

24   During the Class Period, Ms. McDonald purchased Wesson Oils approximately

25   every few months for her and her family's consumption.  Throughout the Class

26   Period, ConAgra labeled and advertised Wesson Oils as "100% Natural."  During

27   the Class Period, Ms. McDonald saw Wesson Oils marketed as "100% Natural" in

28   television advertisements approximately a couple times per year, in print

9

DOCS\583444v1

advertisements every three to four months, on product packaging in retail stores every other month, and on product packaging of Wesson Oils in her home once a week.  Ms. McDonald purchased Wesson Oils because she believed and relied on ConAgra's representations that Wesson Oils are "100% Natural."  Ms. McDonald would not have purchased Wesson Oils, but for ConAgra's misrepresentation that they are "100% Natural."  McDonald was injured in fact and lost money as a result of ConAgra misrepresenting Wesson Oils as "100% Natural."  Ms. McDonald paid for a "100% Natural" product, but did not receive a product that was 100% natural.  Instead, Ms. McDonald received a product that was genetically engineered in a laboratory, and had its genetic code artificially altered to exhibit not natural qualities.

**Nebraska Plaintiff**

**Dee Hopper-Kercheval**

23.     Plaintiff Dee Hopper-Kercheval is a consumer residing in Nebraska. During the Class Period, Ms. Hopper-Kercheval purchased Wesson Canola Oil approximately once per month for her and her family's consumption.  Throughout the Class Period, ConAgra labeled and advertised Wesson Canola Oil as "100% Natural." During the Class Period, Ms. Hopper-Kercheval saw Wesson Canola Oil marketed as "100% Natural" on the product packaging of Wesson Canola Oil bottles she purchased and kept in her home.  Ms. Hopper-Kercheval purchased Wesson Canola Oil because she believed and relied on ConAgra's representations that Wesson Canola Oil is "100% Natural."  Ms. Hopper-Kercheval would not have purchased Wesson Canola Oil, but for ConAgra's misrepresentation that it is "100% Natural."  Ms. Hopper-Kercheval was injured in fact and lost money as a result of ConAgra misrepresenting Wesson Canola Oil as "100% Natural."  Ms. Hopper-Kercheval paid for a "100% Natural" product, but did not receive a product that was 100% natural.  Instead, Ms. Hopper-Kercheval received a product

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

DOCS\583444v1

that was genetically engineered in a laboratory, and had its genetic code artificially altered to exhibit not natural qualities.

### New Jersey Plaintiffs

#### Brenda Krein

24.     Plaintiff Brenda Krein is a consumer residing in New Jersey. During the Class Period, Ms. Krein purchased a bottle of Wesson Vegetable Oil at a retail store in New Jersey for her and her family's consumption. Throughout the Class Period, ConAgra labeled and advertised Wesson Vegetable Oil as "100% Natural." During the Class Period, Ms. Krein repeatedly saw Wesson Vegetable Oils marketed as "100% Natural" on the packaging of Wesson Vegetable Oil bottles. Ms. Krein purchased Wesson Vegetable Oils because she believed and relied on ConAgra's representations that Wesson Vegetable Oils are "100% Natural." Ms. Krein would not have purchased Wesson Vegetable Oils, but for ConAgra's misrepresentation that they are "100% Natural." Ms. Krein was injured in fact and lost money as a result of ConAgra misrepresenting Wesson Vegetable Oils as "100% Natural." Ms. Krein paid for a "100% Natural" product, but did not receive a product that was 100% natural. Instead, Ms. Krein received a product that was genetically engineered in a laboratory, and had its genetic code artificially altered to exhibit not natural qualities.

#### Phyllis Scarpelli

25.     Plaintiff Phyllis Scarpelli is a consumer residing in New Jersey. During the Class Period, Ms. Scarpelli purchased Wesson Corn Oil approximately once every two months at the ShopRite Supermarket in Carteret, New Jersey, for her and her family's consumption. Throughout the Class Period, ConAgra labeled and advertised Wesson Corn Oil as "100% Natural." During the Class Period, Ms. Scarpelli saw Wesson Corn Oil marketed as "100% Natural" around two times per week on the label of the Wesson Corn Oil bottle she owned, approximately once per week in ShopRite weekly circulars, and on the label when purchasing Wesson

11

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Corn Oil.  Ms. Scarpelli purchased Wesson Corn Oil because she believed and relied on ConAgra's representations that Wesson Corn Oil is "100% Natural."  Ms. Scarpelli would not have purchased Wesson Corn Oil, but for ConAgra's misrepresentation that it is "100% Natural."  Ms. Scarpelli was injured in fact and lost money as a result of ConAgra misrepresenting Wesson Corn Oils as "100% Natural."  Ms. Scarpelli paid for a "100% Natural" product, but did not receive a product that was 100% natural.  Instead, Ms. Scarpelli received a product that was genetically engineered in a laboratory, and had its genetic code artificially altered to exhibit not natural qualities.

**New York Plaintiffs**

**Kelly McFadden**

26.   Plaintiff Kelly McFadden is a consumer residing in New York. Throughout the Class Period, Ms. McFadden purchased Wesson Corn Oil approximately two or three times per month for her and her family's consumption. Throughout the Class Period, ConAgra labeled and advertised Wesson Corn Oil as "100% Natural."  During the Class Period, Ms. McFadden saw Wesson Corn Oils marketed as "100% Natural" on the Wesson Oil website and on Wesson Corn Oil labels. Ms. McFadden purchased Wesson Corn Oil because Ms. McFadden believed and relied on ConAgra's representations that Wesson Corn Oil is "100% Natural."  Ms. McFadden would not have purchased Wesson Corn Oil, but for ConAgra's misrepresentation that Wesson Corn Oil was "100% Natural."  Ms. McFadden was injured in fact and lost money as a result of ConAgra misrepresenting Wesson Corn Oil as "100% Natural." Ms. McFadden paid for a 100% natural product, but did not receive a product that was 100% natural. Instead, Ms. McFadden received a product that was genetically engineered in a laboratory, and had its genetic code artificially altered to exhibit not natural qualities.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

DOCS\583444v1

**Necla Musat**

27.    Plaintiff Necla Musat is a consumer residing in New York.  During
the Class Period, Ms. Musat purchased Wesson Vegetable Oil approximately three
times per year for her and her family's consumption.  Throughout the Class Period,
ConAgra labeled and advertised Wesson Vegetable Oil as "100% Natural."
During the Class Period, Ms. Musat saw Wesson Vegetable Oil marketed as
"100% Natural" once or twice on the Wesson Oils website, at least thirty times in
the last year in online advertisements, two or three times a year in coupons, at least
three times per year in television advertisements, and approximately daily on the
packaging of Wesson Vegetable Oil bottles in retail stores and/or in her home.  Ms.
Musat purchased Wesson Vegetable Oil because she believed and relied on
ConAgra's representations that Wesson Vegetable Oil is "100% Natural."  Ms.
Musat would not have purchased Wesson Vegetable Oil, but for ConAgra's
misrepresentation that they are "100% Natural."  Ms. Musat was injured in fact and
lost money as a result of ConAgra misrepresenting Wesson Vegetable Oil as
"100% Natural."  Ms. Musat paid for a "100% Natural" product, but did not
receive a product that was 100% natural.  Instead, Ms. Musat received a product
that was genetically engineered in a laboratory, and had its genetic code artificially
altered to exhibit not natural qualities.

**Ohio Plaintiff**

**Maureen Towey**

28.    Plaintiff Maureen Towey is a consumer residing in Ohio.  During the
Class Period, Ms. Towey purchased Wesson Canola Oil approximately one time
per year for her and her family's consumption.  Throughout the Class Period,
ConAgra labeled and advertised Wesson Canola Oil as "100% Natural."  During
the Class Period, Ms. Towey repeatedly saw Wesson Canola Oil marketed as
"100% Natural" on the packaging of Wesson Canola Oil bottles in retail stores and
in her home.  Ms. Towey purchased Wesson Canola Oil because she believed and

13

relied on ConAgra's representations that it is "100% Natural." Ms. Towey would not have purchased Wesson Canola Oil, but for ConAgra's misrepresentation that it is "100% Natural." Ms. Towey was injured in fact and lost money as a result of ConAgra misrepresenting Wesson Canola Oil as "100% Natural." Ms. Towey paid for a "100% Natural" product, but did not receive a product that was 100% natural. Instead, Ms. Towey received a product that was genetically engineered in a laboratory, and had its genetic code artificially altered to exhibit not natural qualities.

**Oregon Plaintiff**

**Erika Heins**

29.     Plaintiff Erika Heins is a consumer residing in Oregon.  During the Class Period, Ms. Heins purchased Wesson Canola Oil approximately twice per month for her consumption.  Throughout the Class Period, ConAgra labeled and advertised Wesson Canola Oil as "100% Natural."  During the Class Period, Ms. Heins saw Wesson Canola Oil marketed as "100% Natural" in online advertisements once or twice a year, in coupons approximately once a week, on the packaging of Wesson Canola Oil bottles every time she went shopping in retail stores, and on a near daily basis on the packaging of Wesson Canola Oil bottles in her home.  Ms. Heins purchased Wesson Canola Oil because she believed and relied on ConAgra's representations that Wesson Canola Oil is "100% Natural." Ms. Heins would not have purchased Wesson Canola Oil, but for ConAgra's misrepresentation that it is "100% Natural." Ms. Heins was injured in fact and lost money as a result of ConAgra misrepresenting Wesson Canola Oil as "100% Natural." Ms. Heins paid for a "100% Natural" product, but did not receive a product that was 100% natural.  Instead, Ms. Heins received a product that was genetically engineered in a laboratory, and had its genetic code artificially altered to exhibit not natural qualities.

14

DOCS\583444v1

**South Dakota Plaintiff**

**Rona Johnston**

30.     Plaintiff Rona Johnston is a consumer residing in South Dakota. During the Class Period, Ms. Johnston purchased one bottle each of Wesson Canola Oil and Wesson Corn Oil for her consumption.   Throughout the Class Period, ConAgra labeled and advertised Wesson Canola Oil and Wesson Corn Oil as "100% Natural."   During the Class Period, Ms. Johnston saw Wesson Canola Oils marketed as "100% Natural" in television advertisements approximately once or twice a month, on the packaging of Wesson Canola Oil and Wesson Corn Oil bottles in retail stores approximately once every six months, and on the packaging of Wesson Canola Oil and Wesson Corn Oil bottles in her home on a daily basis. Ms. Johnston purchased Wesson Canola Oil and Wesson Corn Oil because she believed and relied on ConAgra's representations that Wesson Canola Oil and Wesson Corn Oil are "100% Natural."   Ms. Johnston would not have purchased Wesson Canola Oil and Wesson Corn Oil, but for ConAgra's misrepresentation that they are "100% Natural."   Ms. Johnston was injured in fact and lost money as a result of ConAgra misrepresenting Wesson Canola Oil and Wesson Corn Oil as "100% Natural."   Ms. Johnston paid for a "100% Natural" product, but did not receive a product that was 100% natural.   Instead, Ms. Johnston received a product that was genetically engineered in a laboratory, and had its genetic code artificially altered to exhibit not natural qualities.

**Texas Plaintiff**

**Anita Willman**

31.     Plaintiff Anita Willman is a consumer residing in Texas.   During the Class Period, Ms. Willman purchased Wesson Canola Oil approximately once per week for her and her family's consumption.   Throughout the Class Period, ConAgra labeled and advertised Wesson Canola Oil as "100% Natural."   During the Class Period, Ms. Willman saw Wesson Canola Oil marketed as "100%

15

DOCS\583444v1

Natural" on the packaging of Wesson Canola Oil bottles in retail stores approximately once a week and on the packaging of Wesson Canola Oil bottles in her home.  Ms. Willman purchased Wesson Canola Oil because she believed and relied on ConAgra's representations that Wesson Canola Oil is "100% Natural." Ms. Willman would not have purchased Wesson Canola Oil, but for ConAgra's misrepresentation that it is "100% Natural."  Ms. Willman was injured in fact and lost money as a result of ConAgra misrepresenting Wesson Canola Oil as "100% Natural."  Ms. Willman paid for a "100% Natural" product, but did not receive a product that was 100% natural.  Instead, Ms. Willman received a product that was genetically engineered in a laboratory, and had its genetic code artificially altered to exhibit not natural qualities.

**Washington Plaintiff**

**Anne Cowan**

32.    Plaintiff Anne Cowan is a consumer residing in Washington.  During the Class Period, Ms. Cowan purchased Wesson Vegetable Oil approximately once every two months, and more recently once every couple of months, for her and her family's consumption.    Throughout the Class Period, ConAgra labeled and advertised Wesson Vegetable Oil as "100% Natural."  During the Class Period, Ms. Cowan saw Wesson Vegetable Oil marketed as "100% Natural" in print advertisements approximately two to three times per month, on the packaging of Wesson Vegetable Oil bottles in retail stores a couple times per month, and on the packaging of Wesson Vegetable Oil in her home approximately four times per month.  Ms. Cowan purchased Wesson Vegetable Oil because she believed and relied on ConAgra's representations that Wesson Vegetable Oil is "100% Natural." Ms. Cowan would not have purchased Wesson Vegetable Oil, but for ConAgra's misrepresentation that it is "100% Natural."  Ms. Cowan was injured in fact and lost money as a result of ConAgra misrepresenting Wesson Vegetable Oil as "100% Natural."  Ms. Cowan paid for a "100% Natural" product, but did not

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

DOCS\583444v1

1   receive a product that was 100% natural.  Instead, Ms. Cowan received a product
2   that was genetically engineered in a laboratory, and had its genetic code artificially
3   altered to exhibit not natural qualities.

4   **Wyoming Plaintiff**

5   **Patty Boyer**

6   33.   Plaintiff Patty Boyer is a consumer residing in Wyoming.  During the
7   Class Period, Ms. Boyer purchased Wesson Oils approximately once per year for
8   her and her family's consumption.  Throughout the Class Period, ConAgra labeled
9   and advertised Wesson Oils as "100% Natural."  During the Class Period, Ms.
10  Boyer saw Wesson Oils marketed as "100% Natural" on Wesson Oils packaging
11  on an approximately twice monthly basis when she went shopping in retail stores,
12  on approximately a weekly basis when she saw the "100% Natural" claim on the
13  packaging of Wesson Oil products in her home, and also saw the claim in printed
14  coupon advertisements, though she cannot recall how often.  Ms. Boyer purchased
15  Wesson Oils because she believed and relied on ConAgra's representations that
16  Wesson Oils are "100% Natural."  Ms. Boyer would not have purchased Wesson
17  Oils, but for ConAgra's misrepresentation that they are "100% Natural."  Ms.
18  Boyer was injured in fact and lost money as a result of ConAgra misrepresenting
19  Wesson Oils as "100% Natural."  Ms. Boyer paid for a "100% Natural" product,
20  but did not receive a product that was 100% natural.  Instead, Ms. Boyer received a
21  product that was genetically engineered in a laboratory, and had its genetic code
22  artificially altered to exhibit not natural qualities.

23  **II. Defendant**

24  34.   ConAgra is a Delaware corporation with its headquarters located in
25  Omaha, Nebraska.  Among other activities, ConAgra manufactures, markets,
26  distributes, and sells Wesson Oils.  The Wesson brand is part of ConAgra's
27  Consumer Foods segment.  ConAgra owns consumer foods manufacturing
28  facilities in thirty-nine states, including California, and is registered as an active

17

DOCS\583444v1

1   corporation with the California Secretary of State.   ConAgra claims that its
2   products are in 96 percent of American households and reported over $12 billion in
3   net sales for fiscal year 2010, with an operating profit of over $1.6 billion.

## FACTUAL ALLEGATIONS

**ConAgra Advertises and Markets Wesson Oils as "100% Natural"**

6   35.   Throughout the Class Period, ConAgra systematically marketed and
7   advertised Wesson Oils as "100% Natural" in product packaging, print
8   advertisements (e.g., coupons or magazine advertisements), both visually and
9   audibly in television commercials, and on the Wesson Oils website
10  (www.wessonoil.com).

11  36.   ConAgra labels every bottle of Wesson Oils as "100% Natural" in
12  large, bright green letters on the front of the bottle as illustrated in the
13  representative images of Wesson Oils product packaging reproduced below:

 

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

DOCS\583444v1

 

37.    In addition to "100% Natural" appearing in vibrant green on the label, "Wesson" is haloed by the image of the sun.  Wesson Canola Oil also features a picture of a green heart.  The imagery on the Wesson Oils labels reinforces ConAgra's "100% Natural" claim.

38.    ConAgra also prominently features its "100% Natural" claim in numerous locations throughout the Wesson Oils website, including stating:

(a)    "Wesson | Pure, 100% Natural Oils" in the title bar for of the Wesson Oils website;

(b)    "Pure Wesson 100% Natural Canola Oil is the most versatile type of vegetable oil and it provides the best nutritional balance of all popular cooking oils . . . Pure Wesson 100 percent Natural Canola Oil is good for your heart." at http://www.wessonoil.com/canola_oil.jsp;

(c)    "Pure Wesson 100% Natural Oil is the perfect all-purpose cooking and baking vegetable oil." at http://www.wessonoil.com/vegetable_oil.jsp;

(d)    "Pure Wesson 100% Natural Corn Oil is the best oil to ensure a crispy [sic] coating on your fried foods while retaining moistness on the inside." at http://www.wessonoil.com/corn_oil.jsp; and

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

(e)   "Pure Wesson 100% Natural Best Blend Oil is highly versatile." at http://www.wessonoil.com/best_blend.jsp.

39.   By consistently and systematically marketing and advertising Wesson Oils as "100% Natural" throughout the Class Period, ConAgra ensured that all consumers purchasing Wesson Oils would be exposed to ConAgra's "100% Natural" claim.

40.   A claim that a product is "natural" is material to a reasonable consumer.

41.   This is evidenced by ConAgra marketing Wesson Oils as "100% Natural" throughout the Class Period in nearly every media format, and on the front label of all bottles of Wesson Oils.

**Genetically-Modified Organisms Are Not Natural**

42.   Genetically-modified organisms ("GMO") are not natural, let alone "100% Natural."

43.   This is evidenced by the statements of the companies that make GMO, such as Monsanto.  Monsanto defines GMO as "Plants or animals that *have had their genetic makeup altered to exhibit traits that are not naturally theirs*.  In general, genes are taken (copied) from one organism that shows a desired trait and transferred into the genetic code of another organism."  Monsanto Glossary, http://www.monsanto.com/newsviews/Pages/glossary.aspx#g (last visited Jan. 9, 2012) (emphasis added).  As more fully alleged below, "unnatural" is a defining characteristic of genetically modified foods.

44.   Romer Labs, a company that provides diagnostic solutions to the agricultural industry, defines GMO as "[a]griculturally important plants [that] are often genetically modified by the insertion of DNA material from outside the organism into the plant's DNA sequence, allowing the plant to *express novel traits that normally would not appear in nature*, such as herbicide or insect resistance. Seed harvested from GMO plants will also contain these [sic] modification."

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Romer   Labs,   http://www.romerlabs.com/en/analytes/genetically-modified-organisms.html (last visited Jan. 9, 2012) (emphasis added).

45.     That GMO are not natural is further evidenced by the explanations of health and environmental organizations, such as The World Health Organization, which defines genetically-modified organisms as "organisms in which the genetic material (DNA) *has been altered in a way that does not occur naturally*. The technology is often called 'modern biotechnology' or 'gene technology', sometimes also 'recombinant DNA technology' or 'genetic engineering'. It allows selected individual genes to be transferred from one organism into another, also between non-related species.  Such methods are used to create GM plants – which are then used to grow GM food crops." World Health Organization, *20 Questions on Genetically Modified (GM) Foods* at http://www.who.int/foodsafety/publications/biotech/en/20questions_en.pdf (last visited Jan. 9, 2012).

46.     The Environmental Protection Agency has distinguished conventional breeding of plants "through natural methods, such as cross-pollination" from genetic engineering using modern scientific techniques.   See United States Environmental Protection Agency, Prevention, Pesticides and Toxic Substances, *Questions & Answers  Biotechnology: Final Plant-Pesticide/Plant Incorporated Protectants (PIPs) Rules* (Jul. 19, 2001) at http://www.epa.gov/scipoly/biotech/pubs/qanda.pdf ("***Conventional breeding*** is a method in which genes for pesticidal traits are introduced into a plant ***through natural methods***, such as cross-pollination. . . .  Genetically engineered plant-incorporated protectants are created through a process that utilizes several different modern scientific techniques to introduce a specific pesticide-producing gene into a plant's DNA genetic material.") (emphasis of "through natural methods" added; remaining emphasis in original).

47.     As indicated by the definitions above, which come from a wide array of sources, including industry, government, and health organizations, GMO are not

21

DOCS\583444v1

"100% Natural."  GMO are "created" artificially in a laboratory through genetic engineering.  Thus, by claiming Wesson Oils are "100% Natural,"  deceives and misleads reasonable consumers.

**Wesson Oils Are Made From GMO**

48.    Wesson Oils are made from GMO, including genetically modified rapeseed (canola oil), soybeans, and corn.

49.    In the following statement on "Biotechnology" from ConAgra's corporate website, ConAgra impliedly admits that it uses genetically-modified plants, referred to by ConAgra as "biotech foods," to make its food products. ConAgra states that its food products not made from genetically-modified plants are limited to ConAgra's "Lightlife" brand and ConAgra's food products specifically labeled "organic":

> **Biotechnology**
>
> In the past two decades, biotechnology has been used to improve yield, nutrition, resistance to drought and insects, and other desirable qualities of several common food crops, including corn and soy. As consumers grow more conscious about the types of foods they put in their bodies, some have asked about the role of biotechnology in food production and health.
>
> *As such, ConAgra Foods only purchases and uses ingredients that comply with the U.S. Department of Agriculture and Food and Drug Administration (FDA) regulations for food safety and nutrition. Both the U.S. Environmental Protection Agency and the FDA have concluded that biotech foods that are approved for human consumption are as safe and nutritious as other foods that are developed through more conventional methods.*
>
> However, we understand the field of food biotechnology is constantly shifting as advancements are made in the world of science, and will

22

continue to reevaluate our internal policies, relying heavily on evolving science, consumer and customer expectations, and regulatory decisions.

*Ultimately, consumers will decide what is acceptable in the marketplace based on the best science and public information available. We will continue to listen carefully to our customers and consumers on biotechnology and provide alternatives for those who demand products without biotechnology ingredients. Two choices are our Lightlife brand, which is manufactured using non-GMO soy seeds, and our organic foods, which also do not use biotech ingredients.*

http://company.conagrafoods.com/phoenix.zhtml?c=202310&p=biotechnology (emphasis added) (last visited Jan. 9, 2012).

50.    Although ConAgra says that "consumers will decide what is acceptable in the marketplace," ConAgra's Wesson Oils' labeling and advertising robs consumers of the ability to make an *informed* decision because they are told that Wesson Oils are "100% Natural." Further, reasonable consumers who observe ConAgra's claim that Wesson Oils are "100% Natural" have no reason to "demand products *without biotechnology ingredients*"—the "100% Natural" labeling and advertising represents to consumers that they are getting biotech-free food.

**ConAgra Deceptively Markets Wesson Oils as "100% Natural" to Boost Sales**

51.    ConAgra markets and advertises its Wesson Oils as "100% Natural" to bolster ConAgra's sales of Wesson Oils for its own substantial financial gain.

52.    ConAgra recognizes that consumers rely on "trusted seals, standards and symbols of higher quality" when making food product shopping decisions, and further recognizes that "Natural" is among the top eight trustmarks consumers look for when making purchases. For example, in a News Release dated May 8, 2006, ConAgra states as follows:

23

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

*To determine what they should consider "better food," many consumers are turning to trusted seals, standards and symbols of higher quality—indeed, more than nine in 10 Americans today consider trust marks to some degree when shopping.*

A new "What's In Store" survey of consumer shopping habits commissioned by ConAgra Foods confirms this trend:

- *Fully 95 percent of Americans say they would consider quality symbols, seals & trust marks when food shopping.*

- Four times as many survey respondents said they are more likely to consider buying foods based on trust marks today than they were a year ago, compared to only a quarter as many who said less likely.

- *While many symbols are present in the market today, the top eight trust marks consumers look for are*: WHOLE GRAINS, HEART-HEALTHY, ZERO GRAMS TRANS-FAT, LOW SODIUM, *NATURAL*, DIETARY GUIDELINES, ORGANIC & KOSHER.

ConAgra Foods, News Release, ConAgra Foods Survey – Seals & Standards of Quality Give Grocery Shoppers Confidence (May 8, 2006), http://investor.conagrafoods.com/phoenix.zhtml?c=202310&p=irol-newsArticle _pf&ID=1008637&highlight (emphasis added, footnotes omitted).

53.   ConAgra labels Wesson Oils as "100% Natural" to take advantage of consumers relying on trustmarks, and to boost its profits.

54.   As detailed in the allegations above, however, because Wesson Oils are made from genetically-modified plants, ConAgra's "100% Natural" representations are false, deceptive, misleading, and unfair to consumers who are injured in fact by purchasing a product that ConAgra claims is "100% Natural" when it is not.

24

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

**CLASS ACTION ALLEGATIONS**

55.     Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following nationwide Class, defined as:

> All persons who reside in the United States and who have purchased Wesson Oils from June 27, 2007 through the final disposition of this and any and all related actions (the "Class").

56.     Additionally, Plaintiffs bring this action on behalf of themselves and, pursuant to the Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3), the following State Subclasses,[2] which are defined as:

> <u>The Consumer Protection States Subclass</u>
>
> All persons who reside in the Consumer Protection States[3] and who have purchased Wesson Oils from June 27, 2007 through the final disposition of this and any and all related actions (the "Consumer Protection Subclass").
>
> <u>The Breach of Express Warranty States Subclass</u>
>
> All persons who reside in the Non-Privity Breach of Express Warranty States[4] and who have purchased Wesson Oils from June 27, 2007 through the final disposition of this and any and all related actions (the "Breach of Express Warranty Subclass").
>
> <u>The Breach of Implied Warranty States Subclass</u>

---

[2] Plaintiffs reserve the right to amend all Class and States Subclass definitions at class certification based on additional research and/or changes in state law.

[3] The Consumer Protection States are defined hereinafter to include the states of California, Colorado, Florida, Illinois, Massachusetts, New Jersey, New York, Ohio, Oregon, South Dakota, Texas, Washington, and Wyoming.

[4] The Non-Privity Breach of Express Warranty States are defined hereinafter to include the states of California, Colorado, Indiana, Massachusetts, Nebraska, New Jersey, New York, Oregon, South Dakota, Texas, Washington, and Wyoming.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

DOCS\583444v1

All persons who reside in the Non-Privity Breach of Implied Warranty States[5] and who have purchased Wesson Oils from June 27, 2007 through the final disposition of this and any and all related actions (the "Breach of Implied Warranty Subclass").

<u>The Unjust Enrichment States Subclass</u>

All persons who reside in the Unjust Enrichment States[6] and who have purchased Wesson Oils from June 27, 2007 through the final disposition of this and any and all related actions (the "Unjust Enrichment Subclass").

57.    Excluded from the Class and the State Subclasses are ConAgra and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judges to whom this case is assigned and any immediate family members thereof.   For ease of reference in this Consolidated Complaint, the Class and the State Subclasses are collectively referred to as the "Class," unless otherwise noted.

58.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

59.    **Numerosity—Federal Rule of Civil Procedure 23(a)(1).**   The members of the Class and each of the State Subclasses are so numerous that individual joinder of all Class and States Subclass members is impracticable.

---

[5] The Non-Privity Breach of Implied Warranty States are defined hereinafter to include the states of California, Colorado, Indiana, Massachusetts, Nebraska, New Jersey, New York, Ohio, Oregon, South Dakota, Texas, Washington, and Wyoming.

[6] The Unjust Enrichment States are defined hereinafter to include the states of California, Colorado, Florida, Illinois, Indiana, Massachusetts, Nebraska, New Jersey, New York, Ohio, Oregon, South Dakota, Texas, Washington, and Wyoming.

DOCS\583444v1

There are millions of individual purchasers of Wesson Oils.  The precise number of members of the Class and State Subclasses and their addresses are unknown to Plaintiffs, but may be ascertained from ConAgra's books and records.  Members of the Class and State Subclasses may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

60.   **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).**  This action involves common questions of law or fact, which predominate over any questions affecting individual members of the Class and State Subclasses.  All members of the Class and State Subclasses were exposed to ConAgra's deceptive and misleading advertising and marketing claim that Wesson Oils are "100% Natural" because that claim was on the label of every container of Wesson Oil sold.  Furthermore, common questions of law or fact include:

> (a)   whether ConAgra engaged in the conduct as alleged herein;

> (b)   whether ConAgra's practices violate applicable law;

> (c)   whether Plaintiffs and the other members of the Class and State Subclasses are entitled to actual, statutory, or other forms of damages, and other monetary relief; and

> (d)   whether Plaintiffs and the other members of the Class and State Subclasses are entitled to equitable relief, including but not limited to injunctive relief and restitution.

61.   ConAgra engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other members of the Class and State Subclasses.  Similar or identical statutory and common law violations, business practices, and injuries are involved.  Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

27

DOCS\583444v1

62.     **Typicality—Federal Rule of Civil Procedure 23(a)(3).**  Plaintiffs' claims are typical of the claims of the other members of the Class and State Subclasses because, among other things, all members of the Class and State Subclasses were comparably injured through the uniform misconduct described above, were subject to ConAgra's false, deceptive, misleading, and unfair advertising and marketing practices, including the false claim that Wesson Oils are "100% Natural," found on every container of Wesson Oil sold.  Further, there are no defenses available to ConAgra that are unique to Plaintiffs.

63.     **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).**  Plaintiffs are adequate representatives of the members of the Class and State Subclasses because their interests do not conflict with the interests of the other members of the Class and State Subclasses they seek to represent; they have retained counsel competent and experienced in complex class action litigation; and Plaintiffs will prosecute this action vigorously.  The Class' and State Subclasses' interests will be fairly and adequately protected by Plaintiffs and their counsel.

64.     **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).**  ConAgra has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class and State Subclasses, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Class and State Subclasses as a whole.

65.     **Superiority—Federal Rule of Civil Procedure 23(b)(3).**  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiffs and the other members of the Class and State Subclasses are relatively small compared to the burden and expense that would be required to individually litigate their claims against ConAgra, so it would

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

be impracticable for members of the Class and State Subclasses to individually seek redress for ConAgra's wrongful conduct. Even if the members of the Class and State Subclasses could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Given the similar nature of the members of the Class' and State Subclasses' claims and the absence of material differences in the statutes and common laws upon which the Class and State Subclasses members' claims are based when such claims are grouped as proposed above and below, the nationwide Class and the various State Subclasses will be easily managed by the Court and the parties.

## CLAIMS FOR RELIEF

### COUNT I
### Violation of the Magnusson-Moss Warranty Act, 15 U.S.C. § 2301, et seq.
### (Brought on Behalf of the Class)

66. Plaintiffs incorporate by reference paragraphs 1-65 of this Consolidated Complaint as though fully stated herein.

67. Plaintiffs bring this claim individually and on behalf of the other Class members.

68. The Magnusson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations established under the Magnusson-Moss Warranty Act.

69. Wesson Oils are consumer products within the meaning of the Magnusson-Moss Warranty Act, 15 U.S.C. § 2301(1).

70. Plaintiffs and the other Class members are "consumers" within the meaning of the Magnusson-Moss Warranty Act, 15 U.S.C. § 2301(3)

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

DOCS\583444v1

71.     ConAgra is both a "supplier" and "warrantor" within the meaning of the Magnusson-Moss Warranty Act, 15 U.S.C. § 2301(4) and (5).

72.     ConAgra's written statements that Wesson Oils are "100% Natural," as alleged herein, are made in connection with the sale of Wesson Oils that relate to the nature of Wesson Oils and affirm and promise that such Wesson Oils are defect free, and as such are "written warranties" within the meaning of the Magnusson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A).

73.     As alleged herein, ConAgra has breached this written warranty by selling consumers Wesson Oils that are not 100% Natural as warranted and thus do not conform to ConAgra's written warranty, violating the Magnusson-Moss Warranty Act, 15 U.S.C. § 2301, et seq., and causing Plaintiffs and the other Class members injury and damage in an amount to be proven at trial.

**COUNT II**
**Violation of the Nebraska Consumer Protection Act,**
**Neb. Rev. Stat. § 59-1602, et seq.**
**(Brought on Behalf of the Class)**

74.     Plaintiffs incorporate by reference paragraphs 1-65 of this Consolidated Complaint as though fully stated herein.

75.     Plaintiffs bring this claim individually and on behalf of the other Class members.

76.     The Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1602, et seq. ("NCPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

77.     ConAgra's public marketing and sale of Wesson Oils is the conduct of trade or commerce under the NCPA.

78.     Throughout the Class Period, ConAgra has engaged in a public marketing campaign in which it represented that Wesson Oils are "100% Natural,"—including through product labels, television commercials, print advertisements, in-store advertisements and/or Internet based advertisements, as

DOCS\583444v1

1  described herein—when, in fact, Wesson Oils are not natural, let alone "100%
2  Natural" because they are made from genetically modified ingredients.

3      79.    ConAgra made (and continues to make) these representations with the
4  intent of inducing consumers—including Plaintiffs and the other Class members—
5  to purchase Wesson Oils.

6      80.    By representing that Wesson Oils are "100% Natural," ConAgra has
7  engaged in unfair or deceptive acts that have an impact on the public interest
8  generally and that have caused damage to Plaintiffs and the other Class members in
9  an amount to be proven at trial.

10     81.    Because ConAgra is headquartered in Nebraska and a substantial
11 amount of the conduct giving rise to this action occurred in Nebraska, where
12 ConAgra either developed or approved of the deceptive and misleading "100%
13 Natural" representations as described herein, the NCPA should apply nationwide to
14 this claim against ConAgra, as these violations directly or indirectly affect the
15 people of Nebraska as well as other consumers nationwide.

16     82.    Any person who is injured in their business or property by a violation
17 of the NCPA may bring a civil action to enjoin further violations, to recover actual
18 damages sustained, together with costs of suit, including a reasonable attorney's
19 fee.

20     83.    Pursuant to the NCPA, Plaintiffs and the other Class members are
21 entitled to the relief set forth below, as appropriate, including, but not limited to,
22 compensatory damages, injunctive relief, attorneys' fees, and the costs of this
23 action, and any other increased damage award permissible under Neb. Rev. Stat. §
24 59-1609.

25
26
27
28

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

DOCS\583444v1

**COUNT III**
**Violation of the Nebraska Uniform Deceptive Trade Practices Act,**
**Neb. Rev. Stat. § 87-301, et seq.**
**(Brought on Behalf of the Class)**

84.    Plaintiffs incorporate by reference paragraphs 1 - 65 of this Consolidated Complaint as though fully stated herein.

85.    Plaintiffs bring this claim individually and on behalf of the other Class members.

86.    The Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, et seq. ("NUDTPA") prohibits deceptive trade practices and enumerates, in Neb. Rev. Stat. § 87-302(a), that a person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, he or she:

(a)    Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(b)    Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;

(c)    Represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(d)    Advertises goods or services with intent not to sell them as advertised or advertises the price in any manner calculated or tending to mislead or in any way deceive a person;

(e)    Uses any scheme or device to defraud by means of:

(i)    Obtaining money or property by knowingly false or fraudulent pretenses, representations, or promises; or

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

DOCS\583444v1

    (ii)  Selling, distributing, supplying, furnishing, or procuring any property for the purpose of furthering such scheme[.]

  87. Throughout the Class Period, as part of its business, ConAgra engaged in a public marketing campaign in which it represented that Wesson Oils are "100% Natural,"—including through product labels, television commercials, print advertisements, in-store advertisements and/or Internet based advertisements, as described herein – when, in fact, Wesson Oils are not natural, let alone "100% Natural" because they are made from genetically modified ingredients.

  88. ConAgra made (and continues to make) these representations with the intent of inducing consumers – including Plaintiffs and the other Class members – to purchase Wesson Oils.

  89. By representing that Wesson Oils are "100% Natural," ConAgra has engaged in the deceptive trade practices listed above.

  90. Because ConAgra is headquartered in Nebraska and a substantial amount of the conduct giving rise to this action occurred in Nebraska, where ConAgra either developed or approved of the deceptive and misleading "100% Natural" representations as described herein, the NUDTPA should apply nationwide to this claim against ConAgra, as ConAgra's deceptive trade practices were conducted in whole or in part within the State of Nebraska, and the NUDTPA "shall apply to deceptive trade practices conducted in whole or in part within the State of Nebraska against residents or nonresidents of this state." Neb. Rev. Stat. § 87-304(c).

  91. A person likely to be damaged by a deceptive trade practice of another may bring an action for, and the court may grant, an injunction under the principles of equity against the person committing the deceptive trade practice. The court may order such additional equitable relief as it deems necessary to protect the public from further violations, including temporary and permanent injunctive

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

1 relief. Proof of monetary damage, loss of profits, or intent to deceive is not

2 required.

3     92.    Costs shall be allowed to the prevailing party asserting an NUDTPA

4 claim, and the court in its discretion may award attorneys' fees to the prevailing

5 party if the party charged with a deceptive trade practice has willfully engaged in

6 the trade practice knowing it to be deceptive.

7     93.    ConAgra knew, or should have known, that its trade practice of

8 marketing Wesson Oils as "100% Natural" was deceptive.

9     94.    Pursuant to the NUDTPA, Plaintiffs and the other Class members are

10 entitled to the relief set forth below, as appropriate, including, but not limited to,

11 injunctive relief, attorneys' fees, and the costs of this action.

12                                **COUNT IV**
                 **Violation of State Consumer Protection Laws**

13       **(Brought on Behalf of the Consumer Protection States Subclass)**

14     95.    Plaintiffs in the Consumer Protection States Subclass incorporate by

15 reference paragraphs 1-65 of this Consolidated Complaint as though fully stated

16 herein.

17     96.    The Plaintiffs in the Consumer Protection States Subclass, in addition

18 to the claims alleged above on behalf of themselves and the other Class members,

19 bring this claim individually and on behalf of all others who purchased Wesson

20 Oils in and reside in the same states as those Plaintiffs.

21     97.    Each of the Plaintiffs and proposed Class members in the Consumer

22 Protection States Subclass is a consumer, purchaser, or other person entitled to the

23 protection of the consumer protection laws of the state in which they reside and

24 purchased Wesson Oils.

25     98.    The consumer protection laws of the state in which each of the

26 Plaintiffs and proposed Class members in the Consumer Protection States Subclass

27 resides and purchased Wesson Oils declares that unfair or deceptive acts or

28 practices in the conduct of trade or commerce are unlawful.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

99.   All of the Consumer Protection States have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices, and/or false advertising.  Those statutes further allow consumers to bring private and/or class actions.  These statutes are:

(a)   California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*; and Cal. Bus. & Prof. Code § 17500, *et seq.*;

(b)   Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*;

(c)   Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*;

(d)   Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.*;

(e)   Massachusetts Unfair and Deceptive Practices Act, Mass. Ann. Laws ch. 93A, *et seq.*;

(f)   Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq.*; and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87- 301, *et seq.*;

(g)   New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*;

(h)   New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, *et seq.*;

(i)   Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01, *et seq.*;

(j)   Oregon Unfair Trade Practices Act, Or. Rev. Stat § 646.605, *et seq.*;

(k)   South Dakota Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws § 37 24 1, *et seq.*;

35

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

(l)     Texas Deceptive Trade Practices - Consumer Protection Act, Tex. Bus. & Com. Code § 17.41, *et seq.*;

(m)    Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010, *et seq.*; and

(n)     Wyoming Consumer Protection Act, Wyo. Stat. § 40-12-101, *et seq.*

100.   Wesson Oils constitute products to which these consumer protection statutes apply.

101.   To the extent required, the Plaintiffs in the Consumer Protection States Subclass have provided ConAgra notice under each of the above listed statutes.

102.   In the conduct of trade or commerce regarding the marketing and sale of Wesson Oils, ConAgra engaged in unfair and deceptive acts or practices by representing that Wesson Oils are "100% Natural"—including through product labels, television commercials, print advertisements, in-store advertisements and/or Internet based advertisements, as described herein—when, in fact, Wesson Oils are not natural, let alone "100% Natural" because they are made from genetically modified ingredients.

103.   ConAgra's representations and advertisements of Wesson Oils as "100% Natural" were deceptive and likely to deceive consumers, including the Plaintiffs and members of the Consumer Protection States Subclass.

104.   ConAgra knew or should have known that its representations and advertisements of Wesson Oils as "100% Natural" were untrue or misleading.

105.   ConAgra used or employed such deceptive and unlawful acts or practices with the intent that the Plaintiffs and other members of the Consumer Protection States Subclass relied thereon or otherwise be deceived.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

106.   The Plaintiffs and other members of the Consumer Protection States Subclass relied   on ConAgra's "100% Natural" misrepresentation and/or were deceived or likely to be deceived.

107.   The Plaintiffs and other members of the Consumer Protection States Subclass would not have purchased the Wesson Oils at the prices they paid, or would not have purchased such products at all, had they known the truth and are thus entitled to a full or partial refund as allowed under each of the several state laws alleged herein.

108.   Further, as a result of ConAgra's misrepresentations, as alleged herein, the Plaintiffs and other members of the Consumer Protection States Subclass did not receive the benefit of their bargain in purchasing Wesson Oils. As a result of ConAgra's conduct, the Plaintiffs and other members of the Consumer Protection States Subclass were damaged in an amount to be proven at trial.

109.   The Plaintiffs and other members of the Consumer Protection States Subclass are entitled to actual compensatory and/or statutory damages, as well as attorneys' fees and legal expenses under the various state laws implicated by this Claim.

## COUNT V
### Breach of Express Warranty
### (Brought on Behalf of the Breach of Express Warranty States Subclass)

110.   Plaintiffs in the Breach of Express Warranty States Subclass incorporate by reference every other paragraph of this Consolidated Complaint as though fully stated herein.

111.   The Plaintiffs in the Breach of Express Warranty States Subclass bring this claim individually and on behalf of the other members of the Breach of Express Warranty States Subclass.

112.   The Plaintiffs and other members of the Breach of Express Warranty States Subclass, formed a contract with ConAgra at the time they purchased

37

Wesson Oils. The terms of that contract include the promises and affirmations of fact ConAgra makes on Wesson Oils' packaging and through marketing and advertising, including ConAgra's promise that Wesson Oils are "100% Natural," as described above. This marketing and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract between each of the Plaintiffs and other members of the Breach of Express Warranty States Subclass, and ConAgra.

113. In addition or in the alternative to the formation of an express contract, ConAgra made each of its above-described representations to induce the Plaintiffs and other members of the Breach of Express Warranty States Subclass, to rely on such representations, and they each did so rely (and should be presumed to have relied) on ConAgra's "100% Natural" representations as a material factor in their decision(s) to purchase Wesson Oils.

114. All conditions precedent to ConAgra's liability under this contract have been performed by the Plaintiffs and other members of the Breach of Express Warranty States Subclass, when they purchased Wesson Oils for their ordinary purposes.

115. At all times relevant to this action, ConAgra has breached its express warranties about Wesson Oils because Wesson Oils are not "100% Natural" but, rather, are derived from genetically-modified organisms or plants that are not 100 percent natural, in violation of state express warranty laws, including:

    (a)    Cal. Com. Code § 2313;

    (b)    Colo. Rev. Stat. § 4-2-313;

    (c)    Ind. Code § 26-1-2-313;

    (d)    Mass. Gen. Laws Ann. ch. 106 § 2-313;

    (e)    Neb. Rev. Stat. § 2-313;

    (f)    N.J. Stat. Ann. § 12A:2-313;

    (g)    N.Y. U.C.C. Law § 2-313;

DOCS\583444v1

1        (h)    Or. Rev. Stat. § 72.3130;

2        (i)    S.D. Codified Laws. § 57A-2-313;

3        (j)    Tex. Bus. & Com. Code Ann. § 2.313;

4        (k)    Wash. Rev. Code Ann. § 62A.2-313; and

5        (l)    Wyo. Stat. § 34.1-2-313.

6        116.   The above-listed states do not require privity of contract to recover for

7 breach of express warranty.

8        117.  As a result of ConAgra's breaches of its express warranty, the

9 Plaintiffs and other members of the Breach of Express Warranty States Subclass

10 were damaged in the amount of the purchase price they paid for Wesson Oils, in an

11 aggregate amount to be proven at trial.

12        118.  Within a reasonable time after they knew or should have known of

13 such breach, the Plaintiffs, on behalf of themselves and the other members of the

14 Breach of Express Warranty States Subclass, placed ConAgra on notice thereof.

15                  **COUNT VI**
**Plaintiffs in the Breach of Implied Warranty of Merchantability**

16 **(Brought on behalf of the Breach of Implied Warranty States Subclass)**

17        119.  nty States Subclass incorporate by reference every paragraph of this

18 Consolidated Complaint as though fully stated herein.

19        120.  The Plaintiffs in the Breach of Implied Warranty States Subclass bring

20 this claim on behalf of themselves and the other members of the Breach of Implied

21 Warranty States Subclass.

22        121.  The Plaintiffs and other members of the Breach of Implied Warranty

23 States Subclass purchased Wesson Oils for the ordinary purposes of cooking oils.

24        122.  By representing that Wesson Oils were "100% Natural" in marketing

25 and advertising as described herein, ConAgra impliedly warranted that such

26 products were of merchantable quality, such that the oils were of the same average

27 grade, quality, and value as similar goods sold under similar circumstances.

28

DOCS\583444v1

123.   The Plaintiffs and other members of the Breach of Implied Warranty States Subclass relied on ConAgra's representations that Wesson Oils were "100% Natural" when they purchased Wesson Oils.

124.   ConAgra breached the warranty implied at the time of sale in that the Plaintiffs and other members of the Breach of Implied Warranty States Subclass did not receive goods that were "100% Natural" as represented and thus, the goods were not merchantable as fit for the ordinary purposes for which those goods are used or as promoted, marketed, advertised, packaged, labeled, or sold.

125.   At all times relevant to this action, ConAgra has breached its implied warranties concerning Wesson Oils because Wesson Oils are not "100% Natural" but are made from GMO.  ConAgra's conduct violates the following state implied warranty laws:

     (a)    Cal. Com. Code § 2314;

     (b)    Colo. Rev. Stat. § 4-2-314 and § 4-2-315;

     (c)    Ind. Code § 26-1-2-314 and § 26-1-2-315;

     (d)    Mass. Gen. Laws Ann. ch. 106 § 2-314 and § 2-315;

     (e)    Neb. Rev. Stat. § 2-314 and § 2-315;

     (f)    N.J. Stat. Ann. § 12A:2-314 and § 12A:2-315;

     (g)    N.Y. U.C.C. Law § 2-314;

     (h)    Ohio Rev. Code § 1302.27;

     (i)    Or. Rev. Stat. § 72.8020;

     (j)    S.D. Cod. Laws. § 57A-2-314 and § 57A-2-315;

     (k)    Tex. Bus. & Com. Code Ann. § 2.314 and §2.315;

     (l)    Wash. Rev. Code Ann. § 62A.2-314; and

     (m)    Wyo. Stat. § 34.1-2-314 and § 34.1-2-315.

126.   The above states do not require privity of contract to recover for breach of implied warranty.

40

DOCS\583444v1

127.   As a result of the breach of implied warranties, the Plaintiffs and other members of the Breach of Implied Warranty States Subclass have been damaged in the amount of the price they paid for Wesson Oils.

128.   Within a reasonable time after they knew or should have known of such breach, the Plaintiffs, on behalf of themselves and the other members of the Breach of Implied Warranty States Subclass, placed ConAgra on notice thereof.

**COUNT VII**
**Unjust Enrichment**
**(Brought on Behalf of the Unjust Enrichment States Subclass)**

129.   Plaintiffs in the Unjust Enrichment States Subclass incorporate by reference Paragraphs 1 - 65 of this Consolidated Complaint as though fully stated herein.

130.   The Plaintiffs in the Unjust Enrichment States Subclass bring this claim individually and on behalf of the other members of the Unjust Enrichment States Subclass.

131.   As a result of ConAgra's deceptive, fraudulent, and misleading labeling, advertising, marketing and sales of Wesson Oils, ConAgra was enriched, at the expense of the Plaintiffs and other members of the Unjust Enrichment States Subclass, though the payment of the purchase price for ConAgra's Wesson Oils.

132.   Under the circumstances, it would be against equity and good conscience to permit ConAgra to retain the ill-gotten benefits that it received from the Plaintiffs and other members of the Unjust Enrichment States Subclass in light of the fact that the Wesson Oils purchased by the Plaintiffs and other members of the Unjust Enrichment States Subclass were not "100% Natural," as ConAgra purports them to be.  It would thus be unjust or inequitable for ConAgra to retain the benefit without restitution or disgorgement of monies paid to ConAgra for Wesson Oils, or such other appropriate equitable remedy as appropriate, to the Plaintiffs and other members of the Unjust Enrichment States Subclass.

DOCS\583444v1

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf other members of the Class and State Subclasses described in this Complaint, respectfully request that:

A.      the Court certify the Class and State Subclasses pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3), and adjudge Plaintiffs and their counsel to be adequate representatives thereof;

B.      the Court enter an Order requiring ConAgra to pay Plaintiffs' and the other Class and State Subclasses members' economic, monetary, actual damages (including multiple damages), consequential, compensatory or statutory damages, whichever is greater; and, if its conduct is proved willful, awarding Plaintiffs and the other Class and States Subclass members exemplary damages to the extent provided by law;

C.      the Court enter an Order awarding restitution and disgorgement of all monies ConAgra acquired by means of any act or practice declared by this Court to be wrongful, or any other appropriate remedy in equity, to Plaintiffs and the other members of the Class and State Subclasses;

D.      the Court enter an Order awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining ConAgra from continuing the unlawful practices set forth above; directing ConAgra to cease its deceptive and misleading marketing campaign in which it describes Wesson Oils as "100% Natural"; and directing ConAgra to disgorge all monies ConAgra acquired by means of any act or practice declared by this Court to be wrongful;

E.      the Court enter an Order awarding Plaintiffs, individually and on behalf of the other members of the Class and State Subclasses, their expenses and costs of suit, including reasonable attorneys' fees and reimbursement of reasonable expenses, to the extent provided by law;

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

DOCS\583444v1

1        F.    the Court enter an Order awarding to Plaintiffs individually and on

2  behalf of the other members of the Class and State Subclasses, pre- and post-

3  judgment interest, to the extent allowable; and

4        G.    for such other and further relief as may be just and proper.

5                           **JURY DEMAND**

6        Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial

7  by jury of all claims in this Complaint so triable.

8  DATED: January 12, 2012            Milberg LLP

9                                     JEFF S. WESTERMAN
                                      DAVID E. AZAR

10                                CHRISTIAN KEENEY

11                                CHRISTIAN KEENEY

12                                One California Plaza

13                                300 S. Grand Avenue, Suite 3900
                                    Los Angeles, California 90071

14                                Telephone: (213) 617-1200
                                    Facsimile: (213) 617-1975

15                                jwesterman@milberg.com
                                    dazar@milberg.com

16                                ckeeney@milberg.com

17                              **MILBERG LLP**
                                ANDREI V. RADO

18                                One Pennsylvania Plaza
                                New York, New York 10119

19                                Telephone: (212) 594-5300
                                Facsimile: (212) 868-1229

20                                arado@milberg.com

21                              **WOLF HALDENSTEIN ADLER**

22                               **FREEMAN & HERZ LLC**
                                ADAM J. LEVITT

23                                EDMUND S. ARONOWITZ
                                55 West Monroe Street, Suite 1111

24                                Chicago, Illinois 60603
                                Telephone: (312) 984-0000

25                                Facsimile: (312) 984-0001
                                levitt@whafh.com

26                                aronowitz@whafh.com

27

28

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

DOCS\583444v1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
FRANCIS M. GREGOREK
BETSY C. MANIFOLD
RACHELE R. RICKERT
PATRICK H. MORAN
750 B Street, Suite 2770
San Diego, California  92101
Telephone: (619) 239-4599
Facsimile:  (619) 234-4599
gregorek@whafh.com
manifold@whafh.com
rickert@whafh.com
moran@whafh.com

44

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

DOCS\583444v1

DECLARATION OF SERVICE BY CM/ECF AND/OR MAIL

I, the undersigned, declare:

1.      That declarant is and was, at all times herein mentioned, employed in the County of Los Angeles, over the age of 18 years, and not a party to or interest in the within action; that declarant's business address is One California Plaza, 300 South Grand Avenue, Suite 3900, Los Angeles, California 90071-3149.

2.      Declarant hereby certifies that on January 12, 2012, declarant served the CONSOLIDATED AMENDED CLASS ACTION COMPLAINT by electronically filing the foregoing document listed above by using the Case Management/ Electronic Case filing system.

3.      Declarant further certifies:

☒      All participants in the case are registered CM/ECF users and that service will be accomplished by the court's CM/ECF system

☐      Participants in the case who are registered CM/ECF users will be served by the court's CM/ECF system.   Participants in the case that are not registered CM/ECF users will be served by First-Class Mail, postage pre-paid or have dispatched to a third-party commercial carrier for delivery to the non-CM/ECF participants.

4.      That there is a regular communication by mail between the place of mailing and the places so addressed.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 12th day of January, 2012, at Los Angeles, California.

ELIZABETH VILLALOBOS-LOPEZ

45

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

DOCS\583444v1

# IN RE CONAGRA FOODS, INC.
## SERVICE LIST

| | |
|---|---|
| MILBERG LLP<br>JEFF S. WESTERMAN<br>DAVID E. AZAR<br>CHRISTIAN KEENEY<br>One California Plaza<br>300 South Grand Ave., Suite 3900<br>Los Angeles, CA 90071<br>Telephone: (213) 617-1200<br>Facsimile: (213) 617-1975<br>E-mail: jwesterman@milberg.com<br>dazar@milberg.com<br>ckeeney@milberg.com | Attorneys for Plaintiff Robert Briseño |
| MILBERG  LLP<br>ANDREI V. RADO<br>JESSICA SLEATER<br>One Pennsylvania Plaza<br>New York, NY 10119<br>Telephone: (212) 594-5300<br>Facsimile: (212) 868-1229<br>Email: arado@milberg.com<br>jsleater@milberg.com | |
| WOLF     HALDENSTEIN     ADLER<br>FREEMAN & HERZ LLP<br>ADAM J. LEVITT<br>55 West Monroe Street<br>Suite 1111<br>Chicago, IL 60603<br>Telephone: (312)984-0000<br>Facsimile: (312) 984-0001<br>E-mail: levitt@whafh.com | Attorneys for Plaintiff Christi Toomer |
| WOLF     HALDENSTEIN     ADLER<br>FREEMAN & HERZ LLP<br>FRANCIS M. GREGOREK<br>BETSY C. MANIFOLD<br>RACHELE R. RICKERT | |

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

DOCS\583444v1

| | |
|---|---|
| PATRICK H. MORAN<br>750 B Street, Suite 2770<br>San Diego, California 92101<br>Telephone: (619) 239-4599<br>Facsimile: (619) 234-4599<br>E-mail: grgorek@whafh.com<br>manifold@whafh.com<br>rickert@whafh.com<br>moran@whafh.com | |
| REESE RICHMAN LLP<br>MICHAEL R. REESE<br>KIM E. RICHMAN<br>875 Avenue of the Americas<br>Eighteenth Floor<br>New York, NY 10001<br>Telephone: (212) 579-4625<br>Facsimile: (212) 253-4272<br>E-mail: mreese@reeserichman.com<br>krichman@reeserichman.com | Attorneys for Plaintiff Kelly McFadden |
| THE LAW OFFICES OF WILLIAM C. WRIGHT<br>WILLIAM C. WRIGHT<br>301 Clematis Street<br>Suite 3000<br>West Palm Beach, FL 33401<br>Telephone: (561) 514-0904<br>Facsimile: (561) 514-0905<br>E-mail:<br>willwright@wrightlawoffice.com | Attorneys for Plaintiff Janeth Ruiz |
| SEEGER WEISS, LLP<br>CHRISTOPHER A. SEEGER<br>SCOTT ALAN GEORGE<br>550 Broad Street, Suite 920<br>Newark, NJ 07102<br>Telephone: (973) 639-0100<br>Facsimile: (973) 639-9393<br>E-mail: cseeger@seegerweiss.com<br>sgeorge@seegerweiss.com | Attorneys for Plaintiff Brenda Krein |

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

DOCS\583444v1

| | |
|---|---|
| FREED & WEISS, LLC<br>JULIE D. MILLER<br>111 West Washington Street, Suite 1331<br>Chicago, IL 60602<br>Telephone: (312) 220-0000<br>Facsimile: (312) 220-7777<br>E-mail: juliem@freedweiss.com | |
| LAW OFFICES OF JULIO J. RAMOS<br>JULIO J. RAMOS<br>35 Grove Street, Suite 107<br>San Francisco, California 94102<br>Telephone: (415) 948-3015<br>Facsimile: (415) 469-9787<br>E-mail: ramoslawgroup@vahoo.com | Attorney for Plaintiff Lil Marie Virr |
| BURSOR & FISHER, P.A.<br>SCOTT A. BURSOR<br>JOSEPH I. MARCHESE<br>369 Lexington Avenue, 10th Floor<br>New York, NY 10017-6535<br>Telephone: (646) 837-7150<br>E-mail: scott@bursor.com<br>jmarchese@bursor.com | Attorneys for Plaintiffs Phyllis Scarpelli, Alexis Justak and Leonora Ulitsky |
| FARUQI & FARUQI<br>NADEEM FARUQI<br>JUAN E. MONTEVERDE<br>ANTONIO VOZZOLO<br>CHRIS MARLBOROUGH<br>369 Lexington Avenue, 10th Floor<br>New York, NY 10017<br>Telephone: (212) 983-9330<br>Facsimile: (212) 983-9331<br>E-mail: nfaruqi@faruqilaw.com<br>jmonteverde@faruqilaw.com<br>avozzolo@faruqilaw.com<br>cmarlborough@faruqilaw.com | |
| CARELLA,     BYRNE,     CECCHI, | |

48
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

| | |
|---|---|
| OLSTEIN, BRODY & AGNELLO, P.C.<br>JAMES E. CECCHI<br>5 Becker Farm Road<br>Roseland, NJ 07068<br>Telephone: (973) 994-1700<br>Facsimile: (973) 994-1744<br>E-mail: jcecchi@carellabyrne.com | |
| HOGAN LOVELLS US LLP<br>ROBERT B. HAWK<br>525 University Avenue, 4th Floor<br>Palo Alto, CA 94301<br>Telephone: (650) 463-4000<br>Facsimile: (650) 463-4199<br>E-mail: robert.hawk@hoganlovells.com | Attorneys for Defendant ConAgra Foods, Inc. |
| HOGAN LOVELLS US LLP<br>DOUGLAS M. SCHWAB<br>BENJAMIN T. DIGGS<br>4 Embarcadero Center 22nd Floor<br>San Francisco, CA 9411<br>Telephone: (415) 374-2300<br>Facsimile: (415) 374-2499<br>E-mail:<br>doug.schwab@hoganlovells.com<br>benjamin.diggs@hoganlovells.com | |
| HOGAN LOVELLS US LLP<br>ROBIN WECHKIN<br>8426 316th Place SE<br>Issaquah, WA 98027<br>Telephone: (425) 222-6229<br>E-mail:<br>robin.wechkin@hoganlovells.com | |

49

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

DOCS\583444v1