1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

|  |  |  |
|---|---|---|
| *In re* ConAgra Foods Inc. | ) ) ) ) ) ) ) ) ) ) | CASE NO. CV 11-05379  MMM (AGRx)<br><br>ORDER GRANTING IN PART AND<br>DENYING IN PART DEFENDANT'S<br>MOTION TO DISMISS |

In November and December 2011, the court consolidated several cases filed against

defendant ConAgra Foods, Inc. under the above caption.[1]  Prior to the consolidation, the court

[1] Order Consolidating Cases, Docket No. 56 (Nov. 28, 2011); Order Re Stipulation to
Consolidate Related Actions, Docket No. 59 (Dec. 9, 2011); Amended Order Granting Stipulation
Re Amended Consolidated Complaint, Response to Amended Consolidated Complaint, and
Consolidation of Additional Action, Docket No. 61 (Dec. 9, 2011).   The consolidated cases are
*Robert Briseno v. Conagra Foods, Inc.*, CV 11-05379 MMM(AGRx); *Christi Toomer v. Conagra
Foods, Inc.*, CV 11-06127 MMM(AGRx); *Kelly McFadden v. Conagra Foods, Inc.*, CV
11-06402 MMM(AGRx); *Janeth Ruiz v. Conagra Foods, Inc.*, CV 11-06480 MMM(AGRx);
*Brenda Krein v. Conagra Foods, Inc.*, CV 11-07097 MMM(AGRx); *Phyllis Scarpelli, et al. v.
Conagra Foods, Inc.* , Case No. CV 11-05813 MMM (AGRx); *Michele Andrade v. ConAgra
Foods Inc.*, CV 11-09208 MMM (AGRx); *Lil Marie Virr v. Conagra Foods, Inc.*, CV 11-08421
MMM (AGRx).

dismissed the complaint in one case, *Robert Briseno v. Conagra Foods, Inc.*, on the basis that Briseno had failed to plead his claims with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.  The court granted Briseno leave to amend.[2]  On January 12, 2012, plaintiffs filed a consolidated putative class action complaint.[3]  ConAgra moved to dismiss the complaint on February 24, 2012.[4]  Plaintiffs oppose the motion.[5]

## I. BACKGROUND

Plaintiffs allege that from at least June 27, 2007 through the present, ConAgra deceptively and misleading marketed its Wesson brand cooking oils as "100% Natural," when in fact Wesson Oils are made from unnatural, genetically-modified organisms ("GMO").[6]  Specifically, plaintiffs contend that ConAgra's representations are deceptive because "Wesson Oils are made with GMO-plants whose genes have been altered by scientists in a lab for the express purpose of causing those plants to exhibit traits that are not naturally their own."[7]  ConAgra allegedly asserts that its products are "100% Natural" not only on the products labels, but in print and television advertising as well.[8]  Plaintiffs are individual consumers of Wesson Oils residing in Nebraska

---

[2]Order Granting Defendant's Motion to Dismiss ("Briseno Dismissal Order"), Docket No. 54 (Nov. 23, 2011).

[3]Consolidated Amended Class Action Complaint ("Complaint"), Docket No. 80 (Jan. 12, 2012).

[4]Motion to Dismiss Consolidated Amended Class Action Complaint ("Motion"), Docket No. 84 (Feb. 24, 2012); see also Reply of Defendant ConAgra Foods, Inc. in Support of Motion to Dismiss Consolidated Amended Class Action Complaint ("Reply"), Docket No. 96 (May 7, 2012).

[5]Plaintiffs' Opposition to Defendant's Motion to Dismiss ("Opposition"), Docket No. 95 (Apr. 25, 2012).

[6]Complaint, ¶ 1.

[7]*Id.*, ¶ 3.

[8]*Id.*, ¶ 2.

(where ConAgra is headquartered) and 14 other states,[9] who seek to represent a nationwide class alleging claims under (1) the Magnusson-Moss Warranty Act, 15 U.S.C. § 2301, et seq. ; (2) the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1602, et seq.; and (3) the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301; and various subclasses based on the laws of the states in which the named plaintiffs reside, i.e., (1) consumer protection state law subclasses; (2) breach of express warranty state law subclasses; (3) breach of implied warranty state law subclasses; and (4) unjust enrichment state law subclasses.[10]

Plaintiffs' complaint contains allegations concerning different plaintiffs' history of purchasing Wesson Oil. While there is some variation among plaintiffs, the complaint generally asserts that each plaintiff saw that Wesson Oils were marketed as "100% Natural," purchased the product because of the representation, and would not have purchased it but for the representation.[11] Each plaintiff was purportedly damaged by paying for a product that was 100% natural, and receiving a product "that was genetically engineered in a laboratory, and had its genetic code artificially altered to exhibit not natural qualities."[12]

## II. DISCUSSION

### A.    Legal Standard Governing Motions To Dismiss Under Rule 12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory," or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). The court must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences

---

[9]The states are California, Colorado, Florida, Illinois, Indiana, Massachusetts, New Jersey, New York, Ohio, Oregon, South Dakota, Texas, Washington, and Wyoming. (*Id.* at 1.)

[10]*Id.*

[11]*Id.*, ¶¶ 13-33.

[12]*Id.*

from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995).

The court need not, however, accept as true unreasonable inferences or legal conclusions cast in the form of factual allegations. See *Bell Atlantic Corp. v. Twombly*, 540 U.S. 544, 553–56 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). Thus, a plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); see also *Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" (citations omitted)); *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief," citing *Iqbal* and *Twombly*). The manner in which the court should assess the adequacy and plausibility of a plaintiff's allegations is described in *Telesaurus VPC, LLC v. Power*, 623 F.3d 998 (9th Cir. 2010). There, the court stated:

> "For purposes of our review, we begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. We disregard threadbare recitals of the elements of a cause of action, supported by mere conclusory statements. After eliminating such unsupported legal conclusions, we identify well-pleaded factual allegations, which we assume to be true, and then determine whether they plausibly give rise to an entitlement to relief." Id. at 1003 (citations and quotation marks omitted)).

## B.    Legal Standard Governing Rule 9(b) Pleading Requirements

Rule 9(b) requires that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED.R.CIV.PROC. 9(b); see also 5A Charles A. Wright & Arthur W. Miller, FEDERAL PRACTICE AND PROCEDURE § 1297 (2006) ("[Rule 9(b)] is a special pleading requirement [that is] contrary to the general approach of the 'short and plain,' simplified pleading adopted by the federal rules. . ."). "To avoid dismissal for inadequacy under Rule 9(b)," a "complaint [must] 'state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.'" *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (quoting *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1393 (9th Cir. 1989), and *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)); see also *In re GlenFed Securities Litigation*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc).  Conclusory allegations are insufficient, and the facts constituting the fraud must be alleged with specificity.  See *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) ("A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer to the allegations.  While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient" (citation omitted)); see also *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (to satisfy Rule 9(b), "the complaint [must] identif[y] the circumstances of the alleged fraud so that defendants can prepare an adequate answer" (internal quotation marks omitted)).

"It is well-settled that the Federal Rules of Civil Procedure apply in federal court, 'irrespective of the source of the subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal.'"  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003)).  Consequently, Rule 9(b) appliers to plaintiffs' state law misrepresentation claims, as well as their federal claim.  Plaintiffs do not dispute that Rule 9(b), rather than the more lenient requirements

of Rule 8, govern their claims.[13]

### C.    Whether the Complaint Satisfies the Particularity Requirement of Rule 9(b)

ConAgra argues that the consolidated complaint fails to meet the particularity requirement of Rule 9(b).  It notes that only two of the 21 plaintiffs allege the location at which they purchased Wesson Oil.[14]  Only a handful of plaintiffs provide a date or dates on which they purchased Wesson Oil during the class period;[15] most allege only the frequency with which they made purchases during the class period.[16]  ConAgra contends that while the complaint asserts each plaintiff "believed and relied on ConAgra's representations that Wesson Oils are '100% Natural,'"[17] it does not plead what meaning any plaintiff ascribed to this term, or how any plaintiff was misled by it.[18]

Plaintiffs counter that the consolidated complaint pleads sufficient information to put ConAgra on notice of its allegedly wrongful conduct, and that the additional detail ConAgra demands "would do nothing to enhance Defendant's ability to answer the allegations in the Amended Complaint, i.e., [fulfill] the purpose of Rule 9(b)'s heightened pleading requirements."[19] See *Von Koenig v. Snapple Bev. Corp.*, 713 F.Supp.2d 1066, 1077 (E.D. Cal. 2010) ("A central

---

[13]Opposition at 1-2.

[14]Motion at 4 (citing Complaint, ¶¶ 14, 25).

[15]While ConAgra asserts that the complaint alleges the date on which only one plaintiff, Robert Briseno, purchased Wesson Oil, this is inaccurate.  (*Id.*)  Briseno is alleged to have purchased Wesson Canola Oil about once every two months, most recently in April 2011.  (Complaint, ¶ 13).  The complaint also pleads that Michele Andrare "purchased Wesson Canola Oil approximately one or two times per year for her and her family's consumption, *most recently in June 2011*."  (*Id.*, ¶ 15 (emphasis added).)  Jill Crouch allegedly last purchased Wesson Canola Oil in May or June 2011.  (*Id.*, ¶ 17.)

[16]Complaint, ¶¶ 13-33.

[17]*Id.*

[18]Motion at 5.

[19]Opposition at 8.

purpose of Rule 9(b) is to ensure that defendants accused of the conduct specified have adequate notice of what they are alleged to have done, so that they may defend against the accusations").

As noted, to satisfy Rule 9(b), a complaint must plead "'the who, what, when, where, and how' of the misconduct charged," *Vess*, 317 F.3d at 1106 (quoting *Cooper*, 137 F.3d at 627), and further must "set forth what is false or misleading about a statement, and why it is false," *GlenFeld*, 42 F.3d at 1548. *Kearns* provides an illuminating example of what is required to comply with this pleading requirement. There, plaintiff asserted that Ford made false and misleading statements concerning the safety and reliability of its certified pre-owned vehicles. Specifically, he alleged that Ford misrepresented the quality of the vehicles' complete repair and accident-history report, the level of training that inspecting technicians received, and the rigor of the certification process. *Kearns*, 567 F.3d at 1123. Plaintiff contended that members of the putative class he sought to represent were exposed to Ford's representations through televised national marketing campaign, sales materials at the dealerships where they bought certified pre-owned vehicles, and the statements of sales personnel working at the dealership. *Id.* at 1125-26. The Ninth Circuit, reviewing the complaint *de novo*, held that the allegations were not pled with the particularity required by Rule 9(b). It stated:

> "Kearns fails to allege in any of his complaints the particular circumstances surrounding [the] representations. Nowhere in the [complaint] does Kearns specify what the television advertisements or other sales material specifically stated. Nor [does] Kearns specify when he was exposed to them or which ones he found material. Kearns also fail[s] to specify which sales material he relied upon in making his decision to buy a CPO vehicle. Kearns does allege that he was specifically told 'CPO vehicles were the best used vehicles available as they were individually hand-picked and rigorously inspected used vehicles with a Ford-backed extended warranty.' Kearns does not, however, specify who made this statement or when this statement was made. Kearns fail[s] to articulate the who, what, when, where, and how of the misconduct alleged. The pleading of . . . neutral facts fails to give Ford the opportunity to respond to the alleged misconduct. Accordingly,

these pleadings do not satisfy the requirement of Rule 9(b) that 'a party must state
with particularity the circumstances constituting fraud. . . .' Because Kearns failed
to plead his averments of fraud with particularity, we affirm the district court's
dismissal of his [complaint]." *Id.* at 1126.

Plaintiffs argue that they have satisfied the requirement of stating "where" ConAgra made
misrepresentations because the complaint alleges where the "100% Natural" claim appears on the
Wesson Oil packaging. They contend it is unnecessary for every plaintiff to state where he or she
purchased the product.[20] A number of courts have concluded that a plaintiff complies with Rule
9(b) if he or she asserts that allegedly misleading statements appealed on the label or packaging
of a consumer product. *Chacanaca v. Quaker Oats Co.*, 752 F.Supp.2d 1111, 1126 (N.D. Cal.
2010) (consumers of granola bars satisfied Rule 9(b) by identifying in their complaint "the
particular statements they allege are misleading, the basis for that contention, *where those
statements appear on the product packaging*, and the relevant time period in which the statements
were used " (emphasis added)); see also *Astiana v. Ben & Jerry's Homemade, Inc.*, Nos. C
10–4387 PJH, C 10–4937 PJH, 2011 WL 2111796, *6 (N.D. Cal. May 26, 2011) ("The 'where'
is on the ice cream package labels"); *Von Koenig*, 713 F.Supp.2d at 1077 (finding that the
particularity requirement was met where plaintiffs "submitted examples of the labels from a bottle
of Acai Blackberry juice drink, from a bottle of Peach iced tea and from a bottle of Raspberry iced
tea, all of which contain the term 'All Natural'"); *Pom Wonderful LLC v. Ocean Spray
Cranberries, Inc.*, 642 F.Supp.2d 1112, 1124 (C.D. Cal. 2009) (concluding that plaintiff had
adequately alleged where a fraud occurred by pleading the location of the purportedly misleading
title "Cranberry and Pomegranate," i.e., by stating that "the title was used on the label of
Defendant's product," and also appeared on the company's website); compare *Marolda v.
Symantec Corp.*, 672 F.Supp.2d 992, 1001 (N.D. Cal. 2009) (finding a complaint deficient
because "Marolda states she purchased Norton 360 on May 21, 2007, but she does not describe
where she saw the either/or offer or exactly what language was used: the representation may have

---

[20]Opposition at 9.

been online, on one of the many areas of Symantec's website, in an email message, or in an application bundled with Marolda's Symantec software").

The court agrees with plaintiffs that Rule 9(b) does not require that they allege the specific store in which they purchased Wesson Oils, particularly because they may not have observed and relied on the representation on the product's labeling at precisely that time.[21]   Plaintiffs plead detailed information concerning where the "100% Natural" representation appears on Wesson Oil labels; they include images of the bottles in the complaint.[22]   The complaint alleges that the representation appeared on product labels throughout the class period.[23]   Additionally, while not all plaintiffs provide information concerning the location at which they purchased Wesson Oils, they allege where they viewed the "100% Natural" label, typically stating that they viewed the label while using the product in their homes.[24]

Similarly, while ConAgra asserts that plaintiffs must plead the dates on which they *purchased* Wesson Oils, *Kearns* suggests that the relevant "when" is either when the allegedly misleading statement was made or when it was viewed or heard by the plaintiff, not when it resulted in a purchase.  *Kearns*, 567 F.3d at 1126 (stating that Kearns had failed to allege "when he was exposed to [the misleading advertisements]" or when an allegedly misleading statement about the vehicle's rigorous inspection "was made").

The complaint asserts that the "100% Natural" representation appeared on product labeling

---

[21]The court recognizes that this conclusion is somewhat in tension with its holding that the allegations in Briseno's original complaint were deficient.  In dismissing the complaint, however, the court did not state that Briseno was required to set forth the location at which he had purchased Wesson Oil, but only that he had to plead with more particularity "whether he relied on statements on canola oil labels, on ConAgra's website, in its advertisements, or all of the above."  (Briseno Dismissal Order at 19.)

[22]Complaint, ¶¶ 36–37.

[23]*Id.*, ¶ 35.

[24]*Id.*, ¶¶ 13–33.

9

and in marketing of the products throughout the class period.[25]  See, e.g., *Von Koenig*, 713 F.Supp.2d at 1077 (holding that Rule 9(b) was satisfied where plaintiff alleged that "between March 4, 2005 and March 4, 2009," defendant's product label contained alleged misrepresentations); *Pom Wonderful*, 642 F.Supp.2d at 1112 (holding that Rule 9(b) was satisfied because plaintiff alleged that a product label contained the same misrepresentation throughout the class period); see also *Astiana*, 2011 WL 2111796 at *6 ("The 'when' is alleged as 'since at least 2006,' and 'throughout the class period'").  Plaintiffs, moreover, provide at least some information about the frequency with which they viewed the allegedly misleading statements.[26]  Given this level of detail, the court does not believe that requiring that plaintiffs allege specific dates on which they saw the representations is necessary or realistic.

ConAgra argues finally that the complaint is not sufficiently specific because plaintiffs do not allege how they were misled.[27]  It asserts that, while the complaint alleges all plaintiffs purchased Wesson Oils because they believed and relied on ConAgra's representation that the products were "100% Natural,"[28] it does not plead what meaning any plaintiff ascribed to the term, nor that plaintiffs understood "100% Natural" to mean that the products did not contain bioengineered ingredients.[29]  The complaint alleges that "ConAgra misleads and deceives reasonable consumers, *including the named Plaintiffs and the other members of the Class*, by portraying a product made from unnatural ingredients as '100% Natural.'"[30]  It describes in detail

---

[25]*Id.*, ¶¶ 35-36.

[26]See, e.g., *id.*, ¶ 14 ("During the Class Period, Ms. Toomer saw ConAgra claim Wesson Canola Oil as "100% Natural" in ConAgra's advertisements several times annually in print media, including coupons, and in television advertisements, approximately once a week on the packaging of Wesson Canola Oil bottles in retail stores, and approximately daily on the packaging of Wesson Canola Oil bottles in her home").

[27]Motion at 5.

[28]Complaint, ¶¶ 13-34.

[29]Motion at 5.

[30]Complaint, ¶ 4.

plaintiffs' views as to why genetically modified products cannot be considered "natural."[31] Drawing all inferences in favor of plaintiffs, as it must, the court concludes that they have adequately alleged they understood that the phrase "100% Natural" meant that Wesson Oil was not made from genetically modified organisms, and that they purchased the product based on this false understanding.[32]  See *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, 754 F.Supp.2d 1145, 1172 n. 18 (C.D. Cal. 2010) ("Allegations of representations from product labels and statements that, had consumers not been deceived by the labels, they would not have purchased the product, are sufficient to plead under Rule 9(b)"); *Walter v. Hughes Communications, Inc.*, 682 F.Supp.2d 1031, 1045 (N.D. Cal. 2010) (finding adequate allegations that plaintiffs subscribed to defendant's services based on its representations, describing generally representations that predated plaintiffs' use of the services, and describing in more detail recent representations, giving rise to an inference that the representations were consistent over time).[33]

---

[31]*Id.*, ¶¶ 43-54.

[32]ConAgra's citation of *Heny v. Perdue Farms, Inc.*, Civil Action No. 11–888 (FLW), 2011 WL 6002463 (D.N.J. Nov. 30, 2011), is unavailing.  (Motion at 5-6.)  There, plaintiffs alleged that defendant's use of the term "humanely raised" on the label of chicken products was misleading.  Unlike in *Heny*, plaintiffs here have not merely "state[d] in conclusory fashion what consumers would expect."  *Heny*,  2011 WL 6002463 at *17.  They have provided a plausible explanation as to why consumers would not consider genetically modified foods "natural." (Complaint, *Id.*, ¶¶ 43-54.)

[33]Indeed, the allegations in this case are strikingly similar to those in *Von Koenig*, where the court explained:
 "Plaintiffs allege that between March 4, 2005 and March 4, 2009, defendant used terms such as 'All Natural' and other similar terms in labeling its drink products. Plaintiffs have submitted examples of the labels from a bottle of Acai Blackberry juice drink, from a bottle of Peach iced tea and from a bottle of Raspberry iced tea, all of which contain the term 'All Natural.'  Plaintiffs allege that this labeling deceived consumers because the drink products contained HFCS, which they assert is not a natural product.  Plaintiffs further allege that if they had not been deceived by the labels on the products, they would not have purchased defendant's product, but would have purchased alternative drink products." *Von Koenig*, 713 F.Supp.2d at 1077.

1    For the reasons stated, the court cannot conclude the complaint as a whole lacks the

2    particularity required by Rule 9(b).  It therefore turns to the deficiencies ConAgra contends exist

3    in individual causes of action.

4    **D.    Plaintiffs' First Cause of Action for Violation of the Magnuson-Moss Warranty**

5    **Act Claim**

6    In the face of ConAgra's arguments for dismissal, plaintiffs agree that their first cause of

7    action, alleging violation of the Magnusson-Moss Warranty Act, 15 U.S.C. § 2301, et seq.,

8    should be dismissed in its entirety.[34]  Plaintiffs request, however, that the court grant leave to

9    amend.[35]  Ordinarily a court should grant leave to amend unless it finds that amendment of the

10   claim would be futile.  See, e.g., *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir.

11   2008).  To determine if granting leave to amend is appropriate, the court analyzes whether the

12   defects in plaintiffs' first cause of action can be cured.

13   The Magnuson-Moss Warranty Act ("Magnuson-Moss Act"), codified at 15 U.S.C.

14   §§ 2301–2312, et seq., provides that a consumer may assert a civil cause of action to enforce the

15   terms of an implied or express warranty.  15 U.S.C. § 2310(d) provides that any "consumer who

16   is damaged by the failure of a supplier, warrantor, or service contractor to comply with any

17   obligation under this chapter, or under a written warranty, implied warranty, or service contract"

18   may sue for damages and other legal and equitable relief.

19   Plaintiffs allege that ConAgra violated a "written warranty."[36]  The term "written

20

---

21   The court found these allegations sufficient to survive a motion to dismiss. *Id.* at 1078.  The court
     recognizes, as ConAgra noted in its briefing and at the hearing on the motion, that plaintiffs could
22   have alleged expressly that they were deceived because a product made from genetically modified
23   organisms would not, in their minds, be considered natural.  But such a statement can be
     reasonably inferred from the detailed allegations presently in the the complaint.  Even under Rule
24   9(b), reasonable inferences such as this must be drawn in plaintiffs' favor. *Drobnak v. Andersen
     Corp.*, 561 F.3d 778, 781 (8th Cir. 2009).
25

26   [34]Opposition at 2.

27   [35]*Id.*

28   [36]Complaint, ¶¶ 72-73.

1 warranty" is defined under the statute as:

2       "(A) any written affirmation of fact or written promise made in connection with the

3       sale of a consumer product by a supplier to a buyer which relates to the nature of

4       the material or workmanship and affirms or *promises that such material or*

5       *workmanship is defect free or will meet a specified level of performance over a*

6       *specified period of time, or*

7       (B) any undertaking in writing in connection with the sale by a supplier of a

8       consumer product to refund, repair, replace, or take other remedial action with

9       respect to such product in the event that such product fails to meet the specifications

10       set forth in the undertaking, which written affirmation, promise, or undertaking

11       becomes part of the basis of the bargain between a supplier and a buyer for

12       purposes other than resale of such product." 15 U.S.C. § 2301(6) (emphasis

13       added).

14 The statement that Wesson Oil is "100% Natural" is not an assertion that the product is defect free

15 or that it will meet a specific level of performance over a specified period of time. Nor is it a

16 promise to take any remedial action. Courts have declined to extend the term "written warranty"

17 beyond its statutory definition. See *Semitekol v. Monaco Coach Corp.*, 582 F.Supp.2d 1009,

18 1027 (N.D. Ill. 2008) (a promise to install "patriot style" mirrors in a motor home is not a written

19 warranty); *Kelley v. Microsoft Corp.*, No. C07-0475MJP, 2007 WL 2600841, *3-5 (W.D. Wash.

20 Sept. 10, 2007) (a statement that a computer is "Windows Vista Capable" is not a written

21 warranty); *In re Sears, Roebuck & Co. Tools Mktg. and Sales Practices Litig.*, No. MDL-1703,

22 05 C 4742, 05 C 2623, 2006 WL 1443737, *4 (N.D. Ill. May 17, 2006) (the phrase "Made in

23 USA" does not constitute a written warranty). Consequently, plaintiffs' allegations are insufficient

24 to establish a violation of the written warranty provisions of the act.

25       The statutory definition of "implied warranty" is broader, however, and applies to "an

26 implied warranty arising under State law . . . in connection with the sale by a supplier of a

27 consumer product." 15 U.S.C. § 2301(7). As courts have concluded, the statute provides a

28 federal cause of action for state law implied warranty claims. *In re Sony Grand Wega*, 758

13

F.Supp.2d 1077, 1101 (S.D. Cal. 2010); see also *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004) (noting that Magnuson–Moss borrows state law causes of action).  While plaintiffs have not alleged that implied warranties that attached to Wesson Oils violated the act, the court cannot conclude that such a claim would be futile, particularly given plaintiffs' allegations concerning implied warranties elsewhere in the complaint.  Consequently, the court grants leave to amend.[37]

### E.    Plaintiffs' Second Cause of Action for Violation of the Nebraska Consumer Protection Act

ConAgra next seeks dismissal of plaintiffs' second cause of action for violation of Nebraska's Consumer Protection Act.  The act generally provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce shall be unlawful."  NEB. REV. STAT. § 59-1602.  ConAgra asserts the act does not apply to regulated industries, citing a provision of the statute, which states that "the Consumer Protection Act shall not apply to actions or transactions otherwise permitted, prohibited, or regulated under laws administered by the Director of Insurance, the Public Service Commission, the Federal Energy Regulatory Commission, or any other regulatory body or officer acting under statutory authority of this state or the United States."  NEB. REV. STAT. § 59-1617(a).

In analyzing the exemption set forth in § 59-1617(a), Nebraska courts have concluded that the relevant question is not whether the defendant is generally regulated, see *Kuntzelman v. Avco Financial Services of Nebraska, Inc.*, 206 Neb. 130, 133-35 (Neb. 1980) (noting the argument that a different construction "would render nugatory the Act, as virtually every phase of a person's life is regulated by one or more state bodies"), but whether the challenged practice is regulated, *Wrede v. Exchange Bank of Gibbon*, 247 Neb. 907, 915 (1995) ("The teaching of *Kuntzelman* is that while particular conduct is not immunized from the operation of the Consumer Protection Act

---

[37]ConAgra notes that no claim is cognizable under the statute "if the amount in controversy of any individual claim is less than the sum or value of $25."  15 U.S.C. § 2310(3)(A).  Plaintiffs do not allege the amount of damages suffered by individual plaintiffs.  Presumably they could, however, in an amended pleading.  Consequently, this omission does not warrant dismissal with prejudice.

merely because the actor comes within the jurisdiction of some regulatory body, immunity does arise if the conduct itself is also regulated"); see also *id.* at 916 (" Here, not only was the Bank of Gibbon heavily regulated by the state, but the form of certificate used was at least indirectly approved by virtue of the authority of the state, through the director of the Department of Banking and Finance, to constructively aid banks in maintaining proper banking standards and efficiency. Because issuance of the certificate was exempted from the purview of the Consumer Protection Act, the district court, if for no other reason, correctly determined that there had been no violation of the act" (citation omitted)); *Hydroflo Corp. v. First Nat. Bank of Omaha*, 217 Neb. 20, 33 (1984) ("Under the provisions of §§ 8-102 and 8-103 the Department of Banking and Finance is given broad authority over proper banking standards, and since the requirements for opening corporate accounts are governed by banking standards indirectly approved by the Department of Banking and Finance, the practice of opening accounts is excluded from the terms of the Consumer Protection Act, §§ 59-1601 et seq.  The dismissal of this cause of action was correct"); *McCaul v. American Sav. Co.*, 213 Neb. 841, 847 (Neb. 1983) ("The records in the cases now before us establish that each of the loans involved here was reported to and at least indirectly approved by the Department of Banking and Finance.  Under the provisions of § 59-1617 an installment loan by an industrial loan and investment company, regulated by the Nebraska Department of Banking and Finance, is exempt from the Consumer Protection Act, §§ 59-1601 et seq."); *Kuntzelman*, 206 Neb. at 135-36 ("This case involved a loan made by a licensed installment loan company.  Such companies are strictly regulated by the Department of Banking and Finance under the terms of the installment loan act.  Not only does the Department of Banking and Finance have the power and duty to inspect the business, records, and accounts of persons or entities lending money under the provision of the installment loan act, but the department also has the power to order any person or entity subject to the provisions of that act to desist from any practice which the department finds does not conform to the requirements set forth therein. Moreover, § 45-133 restricts advertising with reference to the rates, terms, or conditions, for the lending of money, credit, or goods by persons subject to the provisions of the act, and empowers the department to order any such person to cease and desist from any conduct found to be in

1   violation of such restrictions.  It appears to us that the very action complained of by Kuntzelman

2   in this matter was subject to regulation by the Department of Banking and Finance").

3        In this case, it is clear that the ConAgra's challenged labeling and advertising is already

4   regulated by a body acting under the authority of the United States: the Food and Drug

5   Administration.  In 1938, Congress passed the Food, Drug, and Cosmetics Act ("FDCA") as a

6   successor to the 1906 Pure Food and Drugs Act, which was the first comprehensive federal

7   legislation designed to protect consumers from fraud or misrepresentation in the sale of food and

8   drugs.  See James T. O'Reilly, FOOD AND DRUG ADMINISTRATION § 3:1-13 (3d ed. 2009).  The

9   FDCA expressly empowers the FDA (a) to protect the public health by ensuring that "foods are

10  safe, wholesome, sanitary, and properly labeled," 21 U.S.C. § 393(b)(2)(A).  The FDCA deems

11  a food "misbranded" if its labeling "is false or misleading in any particular." 21 U.S.C. § 343(a).

12  The FDA has promulgated extensive regulations about the proper labeling of food.  See, e.g., 21

13  C.F.R § 101.4 (designation of ingredients on food packaging); 21 C.F.R § 101.9 (labeling and

14  advertising of nutrition information); 21 C.F.R § 101.13 (limits on claims that can be made about

15  the nutritional content of food, such as labeling a product "low sodium"); 21 C.F.R § 101.14

16  (health claims).  Indeed, as ConAgra notes,[38] the FDA has regulated use of the term "natural."

17  21 C.F.R § 101.22.[39]

18       While, as explained in the court's order in *Briseno*,[40] these FDA regulations do not preempt

19  plaintiffs' claims, the exception to the Nebraska statute is broader than federal preemption, and

21  [38]Reply at 9.

22  [39]See *Warning Letter,* U.S. FOOD AND DRUG ADMINISTRATION (July 22, 2011),
23  http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2011/ucm265756.htm?utm_c
    ampaign=Google2&utm_source=fdaSearch&utm_medium=website&utm_term=bagels%20f
24  orever&utm_content=1 (warning a company that its branding of a bagel product as "All Natural"
    was misleading).  The court can take judicial notice of the letter as a report of an administrative
25  body. *United States v. 14.02 Acres of Land More or Less in Fresno County* , 547 F.3d 943, 955
26  (9th Cir. 2008) ("Judicial notice is appropriate for records and 'reports of administrative bodies,'"
    citing *Interstate Natural Gas Co. v. Southern California Gas Co.* , 209 F.2d 380, 385 (9th Cir.
27  1954)).

28  [40]See Briseno Dismissal at 7-14.

16

applies to all conduct regulated by federal agencies. NEB. REV. STAT. § 59-1617(a). It is clear that the labeling and advertising of food products like the Wesson Oils is extensively regulated by the FDA, and that Nebraska's Consumer Protection Act does not apply as a result. Consequently, plaintiffs' second cause of action must be dismissed with prejudice.

**F.    Plaintiffs' Third Cause of Action for Violation of the Nebraska Uniform Deceptive Trade Practices Act**

As with plaintiffs' first cause of action, plaintiffs acknowledge that their claim under the Nebraska Uniform Deceptive Trade Practices Act, NEB. REV. STAT. § 87-301, should be dismissed. Once again, however, they seek leave to amend.[41] The act applies only to individuals "likely to be damaged by a deceptive trade practice of another." NEB. REV. STAT. § 87-303(a). The Nebraska courts have held that the act "provides relief from future damage, not past damage." *Reinbrecht v. Walgreen Co.*, 16 Neb. App. 108, 113 (2007); see also *Triple 7, Inc. v. Intervet, Inc.*, 338 F.Supp.2d 1082, 1087 (D. Neb. 2004) (stating that the act does not provide a private right of action for damages). Plaintiffs do not allege that they will suffer future damage as a result of ConAgra's allegedly wrongful conduct. Moreover, as the *Reinbrecht* court noted, they cannot allege future harm, since they are now aware of the alleged misrepresentation. *Id.* at 114 ("Reinbrecht now knows the truth regarding the price of the postage stamps sold by Walgreens. Therefore, any deception or damage to Reinbrecht occurred in the past and Reinbrecht cannot suffer future damages as a result of Walgreens' alleged deceptive practices in regard to its sale of postage stamps"). As a result, amendment would be futile, and plaintiffs' third cause of action must be dismissed with prejudice.

**G.    Whether Plaintiffs Have Pled Impermissible Composite Causes of Action**

Each of plaintiffs' final four causes of action is, in reality, multiple claims. For example, plaintiffs' fourth cause of action – for violation of state consumer protection laws – asserts that ConAgra's conduct violated the consumer protection laws of 14 different states, which protect the

---

[41]Opposition at 2.

named plaintiffs and proposed class members from those states.[42]  Similarly, plaintiffs' beach of express warranty claim alleges violation of twelve state statutes;[43] their beach of implied warranty of merchantability claim alleges violation of thirteen state laws.[44]  Finally, their unjust enrichment cause of action alleges unjust enrichment claims on behalf of a "unjust enrichment states subclass."[45]

ConAgra argues that this manner of pleading is impermissible.[46]  The authority it cites does not support this proposition, however.  Contrary to ConAgra's suggestion, plaintiffs are not asking the court to apply an "Esperonto" form of the law, which merges the legal standards of a host of states.[47]  See *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1300 (7th Cir. 1995) (finding inappropriate the giving of a jury instruction that merged the negligence law of all fifty states and the District of Columbia).  Plaintiffs cite the specific state statutes at issue in each claim, and seek to apply California statutes to California plaintiffs, Massachusetts statutes to Massachusetts plaintiffs, etc.  While it is true that each claim must be based on a "cognizable legal theory" and plead "sufficient facts to support a cognizable legal theory," each of plaintiffs' causes of action alleges how ConAgra's conduct violates the various state laws,[48] and incorporates by reference the more detailed factual allegations found in preceding paragraphs of the complaint.[49] They thus provide information concerning the asserted grounds for the state law claim*s.  Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) ("Dismissal is proper when

[42]Complaint, ¶¶ 98-99.

[43]*Id.*, ¶ 115.

[44]*Id.*, ¶ 125.

[45]*Id.*, ¶ 125.

[46]Motion at 14-16.

[47]*Id.* at 14-15.

[48]Complaint, ¶¶ 102-108, 112-113, 122 130-131.

[49]*Id.*, ¶¶ 95, 110, 119, 129.

the complaint does not make out a cognizable legal theory or does not allege sufficient facts to support a cognizable legal theory"). To the extent the statutes are not uniform, ConAgra is free to raise individual deficiencies in specific state claims. Indeed, it has done so in its motion to dismiss.[50]

The court recognizes that it is burdensome for ConAgra to respond to dozens of separate statutory claims based on the law of a host of jurisdictions. ConAgra, however, has neither requested additional pages to brief its motion to dismiss nor additional time to analyze the sufficiency of plaintiffs' numerous claims. The court is aware of no limit on the number of causes of action a plaintiff can assert in a single complaint, and sees no value in requiring plaintiffs to split their causes of action into dozens of additional claims, each based on the same factual allegations. A complaint that was structured in this way would not lessen the burden on defendant. As a result, the court will not dismiss plaintiffs' causes of action because they impermissibly commingle claims. It addresses ConAgra's aruguments regarding various purported deficiencies in the claims below.

**H.    Plaintiffs' Fourth Cause of Action for Violation of State Consumer Protection Laws**

**1.    Ascertainable Loss**

ConAgra argues that plaintiffs' consumer protection law claims based on New Jersey and Oregon law are deficient, since the statutes in those states provide that plaintiffs can assert such a claim only if they can plead "ascertainable loss."[51] See N.J. STAT. ANN. 56:8-19 ("Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act or the act hereby amended and supplemented may bring an action or assert a counterclaim therefor in any court of competent jurisdiction"); OR. REV. STAT. 646.638(1) ("[A]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of willful use or

---

[50]Motion at 17-24.

[51]*Id.* at 16 (citing N.J. STAT. ANN. 56:8-19; OR. REV. STAT. 646.638(1)

employment by another person of a method, act or practice declared unlawful by ORS 646.608, may bring an individual action in an appropriate court to recover actual damages or statutory damages of $200, whichever is greater").

Plaintiffs argue that they have alleged that they would not have purchased Wesson Oils had ConAgra not misrepresented that the product was "100% Natural," and that this satisfies the statutory requirement.[52]  In fact, however, plaintiffs alleged that they "and other members of the Consumer Protection States Subclass would not have purchased the Wesson Oils at the prices they paid, or would not have purchased such products at all, had they known the truth. . . ."[53] Plaintiffs attempt to disclaim this allegation in their opposition, asserting that "[p]laintiffs' theory of loss does not depend on [p]laintiffs having paid a premium for Wesson Oils relative to the price for other cooking oil brands."[54]

As the court explained in *Hemy*, plaintiffs' allegation is not sufficient under New Jersey law.  The court there stated:

> "In the Amended Complaint, while Plaintiffs allege that they would not have purchased the chicken products if they had known that Perdue inhumanely raised and slaughtered its chickens, they do not set out the difference in value between the promised product (humanely treated chicken products) and the actual product received (inhumanely treated chicken products).  Nor have Plaintiffs alleged the price of competing chicken products, as a means of pleading the difference in value. They allege only that they paid a 'premium' for Perdue's products 'when, in fact, they were not and are not treated differently from Perdue's other chickens or differently in any material respects of other major producers.'   As I explained in my recent decision in *Lieberson*, 'the Court finds that absent any specific information concerning the price of the [p]roducts or the price of any comparable

---

[52]Opposition at 18.

[53]Complaint, ¶107.

[54]Opposition at 19.

products, Plaintiff's allegations concerning the ascertainable loss are nothing more than unsupported conclusory statements that are insufficient to withstand a motion to dismiss.' That was not done here. There are no facts supporting a claim for ascertainable loss – other than the use of the term 'premium' price. *Heny*, 2011 WL 6002463 at*18 (quoting *Lieberson v. Johnson & Johnson Consumer Companies, Inc.*, 865 F.Supp.2d 529, 2011 WL 4414214, *8 (D. N.J. Sept. 21, 2011).[55]

Plaintiffs have failed to quantify the difference between the value of the product they believed they were purchasing and the price of the product they purchased. They have similarly failed to quantify the difference between the price of the Wesson Oils and other products they might have purchased as substitutes. Absent such information, New Jersey courts have consistently held that a plaintiff has not adequately set forth an ascertainable loss. *Smajlaj v. Campbell Soup Co.*, 782 F.Supp.2d 84, 101 (D. N.J. 2011) ("Failure to quantify this difference in value results in the dismissal of a claim"); see also *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 282 (D. N.J. 2011) ("Green fails to allege how much he paid for his brewer and how much other comparable brewers manufactured by Defendants' competitors cost at the time of purchase"); *Solo v. Bed Bath & Beyond, Inc.*, Civil No. 06-1908 (SRC), 2007 WL 1237825, *3 (D. N.J. Apr. 26, 2007) ("Plaintiff is required to plead specific facts setting forth and defining the ascertainable loss suffered").

While there is little case law regarding "ascertainable loss" under Oregon's statute, the

---

[55]Plaintiffs' citation of *Lee v. Carter-Reed Co., L.L.C.*, 203 N.J. 496 (2010), does not compel a different result. (Opposition at 18.) There, the New Jersey Supreme Court stated that "the ascertainable loss here is the purchase price of a bottle of broken promises. Each purchase of Relacore – not refunded – is an out-of-pocket loss." *Id.* at 528. In *Lee*, however, plaintiff alleged that defendant falsely represented all of the essential characteristics of the nutritional supplement at issue, and that the product "offered none of the benefits claimed in Carter Reed's multi-media advertising campaign." *Id.* at 527. Since the product at issue was allegedly worthless, the ascertainable loss was the total value of the product. Here, by contrast, plaintiffs do not allege that the Wesson Oils had no value, or that they did not serve their fundamental purpose as cooking oils.

courts of that state have tended to require less rigorous pleading of ascertainable loss than the New Jersey courts.  See *Weigel v. Ron Tonkin Chevrolet Co.*, 298 Or. 127, 135 (1984) (losses under Oregon's consumer protection statute "should be viewed broadly").  In *Scott v. Western International Surplus Sales, Inc.*, 267 Or. 512 (1973), the state Supreme Court evaluated whether a plaintiff had adequately pled ascertainable loss.  The plaintiff had purchased a tent in a package indicating that it had a zippered flap and eaves, when it fact it lacked both features.  *Id.* at 514.  The court concluded that the complaint stated a cause of action because

> "[t]here was evidence of an 'ascertainable loss.'  The tent was purchased for $38.86.  The inference is that the tent, as represented, had that value.  The tent sold did not have some of those represented features.  The inference can be drawn that because the tent did not have a window with a closing flap or eaves it had a value of less than $38.86."  *Id.* at 515-16.

Similarly, plaintiffs here have alleged that the product was not, as represented, "100% Natural," and that they would not have paid the price they paid absent this representation.  Under Oregon law, these allegations are sufficient to survive a motion to dismiss.

### 2. Reliance

ConAgra next argues that reliance is a required element of a consumer protection claim under the laws of at least five of the states whose statutes plaintiffs invoke – California, Oregon, South Dakota, Texas, and Wyoming.[56]  It contends that plaintiffs' allegation that they would not have purchased the products at the prices they paid, or would not have purchased the products at all, had the misrepresentation not been made is insufficient, absent allegations by plaintiffs about "how they were deceived, what they believed the challenged statement meant or why it mattered

---

[56]Motion at 18 (citing *Durell v. Sharp Healthcare*, 183 Cal.App.4th 1350, 1363-64 (2010) (reliance required for a UCL action based on fraud); *Buckland v.Threshold Enterprises, Ltd.*, 155 Cal.App.4th 798, 811 (2007) (reliance required for a CLRA claim sounding in fraud); *Feitler v. Animation Celection, Inc.*, 170 Or. App. 702, 708 (2000) (reliance required when an affirmative misrepresentation is alleged); *Rainbow Play Sys., Inc. v. Backyard Adventure, Inc.*, No. CIV. 06–4166, 2009 WL 3150984, *7 (D.S.D. Sept. 28, 2009); *Daugherty v. Jacobs*, 187 S.W.3d 607, 615 (Tex. App. 2006); WYO. STAT. ANN. § 40-12-108(a).

to them."[57] As noted, the complaint alleges what plaintiffs believed the representation meant, and explains in detail why genetically modified organisms are not "natural."[58] Coupled with the plaintiffs' explicit allegation that they would not have purchased Wesson Oils for the price paid or at all absent ConAgra's representation that the product was "100% Natural," plaintiffs have adequately alleged reliance.[59]

### 3.    Notice to the Defendants

ConAgra asserts that the consumer protection statutes of California, Massachusetts, Texas and Wyoming require that plaintiffs give a defendant notice of their intent to sue before they commence an action.[60] While plaintiffs allege that they have given notice "[t]o the extent required,"[61] they allege no facts supporting this conclusion. Generally, such "bare assertion[s]" are not sufficient to satisfy pleading requirements. See *Iqbal*, 556 U.S. at 681.[62] As plaintiffs note, however, under Rule 9(c), "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed." ConAgra does not dispute that this rule applies, and plaintiffs have alleged generally that the notice requirement – a condition precedent to filing suit – has been satisfied. *Myers v. Central Florida Investments, Inc.*, 592 F.3d 1201, 1224 (11th Cir. 2010) ("In this case, the ninth paragraph of Myers' Second Amended Complaint addressed conditions precedent. It read: 'Plaintiff received her Notice of Right to Sue letter from the U.S. Equal Employment Opportunity Commission within 90 days before filing this action, and has otherwise fulfilled all conditions precedent to institution of this action.' This general statement from Myers was sufficient to discharge her duty under Rule 9 of the Federal

---

[57]Motion at 18.

[58]Complaint, ¶¶ 4, 43-54.

[59]*Id.*, ¶¶ 13-33.

[60]CAL. CIV. CODE § 1782(a)(1); MASS. GEN LAWS ch. 93A, § 9(3); TEX. BUS. & COM. CODE § 17.505; WYO. STAT. ANN. § 40-12-108, 40-12-102(a)(ix).

[61]Complaint, ¶ 101.

[62]Motion at 19.

1 Rules of Civil Procedure"); *U.S. E.E.O.C. v. Global Horizons, Inc.*, Cv. No. 11–00257

2 DAE-RLP, 2012 WL 928160, *4-5 (D. Haw. Mar. 16, 2012) ("In any event, even assuming that

3 conciliation is a 'condition precedent' to suit by the EEOC, the Court concludes that the

4 allegations in the SAC are sufficient to satisfy this requirement. The SAC states that 'efforts to

5 conciliate the charges failed,' and that 'all conditions precedent to the institution of this lawsuit

6 have been fulfilled.' The EEOC need not specifically plead that conciliation efforts have failed

7 when filing suit in a district court"); *Barber v. City of Chattanooga*, No. 1:08–cv–294, 2011 WL

8 1321392, *6 (E.D. Tenn. Apr. 1, 2011) (plaintiff satisfied the pleading requirements for alleging

9 compliance with EEOC procedures by alleging that he "bas duly complied with the requirements

10 of Title VII, and has requested a right to sue from the EEOC, which will be provided upon

11 receipt, and has otherwise performed all conditions precedent to the maintenance of this action");

12 *Hamilton v. Geithner*, 743 F.Supp.2d 1, 8 (D. D.C. 2010) (notwithstanding *Iqbal*, plaintiff may

13 assert in conclusory fashion that he "timely filed his formal charges of discrimination . . . with

14 [the] Equal Employment Opportunity [Commission]," and that "[t]he condition precedent to this

15 suit has been satisfied," since such allegations fall under Rule 9(c)).

16      Consequently, plaintiffs' motion to dismiss on this ground must be denied. The court

17 notes, however, ConAgra's assertion that it has attached "the sum total of notices it has received

18 [from] plaintiffs" to its motion.[63] The documents are letters to ConAgra providing notice of

19 potential claims by Briseno, Toomer, and Leonora Ulitsky, under California's consumer

20 protection statutes, and by Bonnie McDonald under Massachusetts' consumer protection statutes.[64]

21 Plaintiffs do not argue that they sent additional notices to ConAgra, but only that, "by virtue of

22 Plaintiffs' plain English request for nationwide relief in the Briseno complaint and the Amended

23 Complaint, Defendant has been on notice for nearly a year as to the basis for Plaintiffs' claims,

24

25

---

26     [63]*Id.*

27     [64]Request for Judicial Notice in Support of Motion to Dismiss Consolidated Amended Class

28 Action Complaint ("RJN"), Docket No. 85 (Feb. 24, 2012), Exhs. A-D.

and has had ample opportunity to resolve those claims through negotiation."[65]  The court is not
convinced that providing notice of California and Massachusetts state law claims is sufficient to
put ConAgra on notice of potential claims under the other consumer protection statutes asserted
by other plaintiffs.  While, as noted, plaintiffs' allegations are sufficient to survive a motion to
dismiss, plaintiffs are reminded that the liberal pleading standard of Rule 9(c) does not apply in
the context of a motion for summary judgment, and that they should carefully consider whether
they have complied with the notice requirements of all of the states whose statutes they invoke.

### 4.     Notice to the State Attorneys General

ConAgra next contends that the consumer protection statutes of New Jersey, Oregon, and
Washington require that a plaintiff provide notice to the state attorney general at the time he or
she files suit.[66]  The text of these states' consumer protection laws plainly mandate that such notice
be given.[67]  The statutes are equally clear, however, that notice need not be given before suit is
commenced.  ConAgra cites no authority for the proposition that the failure to notify the state
attorneys general warrants dismissal or bars plaintiffs from recovering.  As a result, the court
directs plaintiffs to provide notice, if they have not already done so.  It declines, however, to
dismiss their complaint on this ground.  See *Morgan v. Air Brook Limousine, Inc.*, 211 N.J.

---

[65]Opposition at 19.

[66]Motion at 19 (citing N.J. STAT. ANN. § 56:8-20; OR. REV. STAT. § 646.638(2); RCW
19.86.095).

[67]N.J. STAT. ANN. § 56:8-20 ("Any party to an action asserting a claim, counterclaim or
defense based upon violation of this act or the act hereby amended or supplemented *shall mail a
copy of the initial or responsive pleading containing the claim, counterclaim or defense to the
Attorney General* within 10 days after the filing of such pleading with the court"); OR. REV. STAT.
§ 646.638(2) ("Upon commencement of any action brought under subsection (1) of this section
the party bringing the action *shall mail a copy of the complaint or other initial pleading to the
Attorney General* and, upon entry of any judgment in the action, shall mail a copy of the judgment
to the Attorney General.  Failure to mail a copy of the complaint shall not be a jurisdictional
defect, but a court may not enter judgment for the plaintiff until proof of mailing is filed with the
court"); RCWA 19.86.095 ("In any proceeding in which there is a request for injunctive relief
under RCW 19.86.090, the attorney general shall be served with a copy of the initial pleading
alleging a violation of this chapter").

Super. 84, 87 (1986) ("Since plaintiff's attorney failed to notify the Attorney General of this action, in accordance with N.J.S.A. 56:8-20, the court directed the attorney to do so to determine if he wanted to intervene or appear"); OR. REV. STAT. § 646.638(2) (stating that the failure to serve is not a "jurisdictional defect," but that the court may not enter judgment before notification is provided); *Collard v. Reagan*, No. 26410-2-II, 2002 Wash. App. LEXIS 1451, *13 (Wash. App. June 21, 2002) ("a plaintiff's failure to serve the Attorney General a copy of the pleading does not necessarily eviscerate the plaintiff's statutory right to injunctive relief").

### 5.    Statutes of Limitations

ConAgra also contends that, while plaintiffs challenge the sale of Wesson Oils over a four-year period,[68] several states have shorter statutes of limitations on consumer protection claims.[69] Ohio's limitations period, for example, is two years, while the statute of limitations in New York is three years. OHIO REV. CODE 1345.10(C); McKinney's CPLR § 214. Because the allegations concerning the named plaintiffs who reside in New York and Ohio, read in the light most favorable to plaintiffs, indicate that they purchased Wesson Oils within these limitations periods, the statutes do not warrant dismissal of the claims. To the extent the court certifies the classes they seek to represent, however, the class definition may need to be modified to reflect the correct limitations period.[70]

### I.    Plaintiffs' Fifth Cause of Action for Violation of Express Warranty

#### 1.    Notice

ConAgra contends that plaintiffs' express warranty claims under Indiana, Oregon, South Dakota, Washington, and Wyoming law are defective, as plaintiffs have not complied with the prefiling notice requirements in those states.[71] As noted, plaintiffs' allegations concerning notice

---

[68]Complaint, ¶ 1 (alleging that the class period runs from June 27, 2007 to the present).

[69]Motion at 19.

[70]Complaint, ¶¶ 26-27.

[71]Motion at 22 (IND. CODE § 26-1-2-607; OR. REV. STAT. § 72.6070(3); S.D. COD. LAWS § 57A-2-607; RCW 62A.2-607; WYO. STAT. ANN. §34.1-2-607.)

1  are limited to the single statement that they have provided notices "[t]o the extent required."[72] As

2  noted, this conclusory allegation is sufficient under Rule 9(c) and the motion to dismiss on this

3  ground must be denied. Plaintiffs, however, would be advised to review whether they have

4  complied with applicable notice requirements and to abandon claims as to which they have not to

5  avoid sanctions under Rule 11.

6                    **2.    Reliance**

7        ConAgra argues that reliance is an element of express warranty claims in California,

8  Nebraska, Oregon, South Dakota, Texas, Washington, and Wyoming, and that plaintiffs have not

9  adequately alleged reliance.[73]  As noted, however, the court concludes that plaintiffs have

10  adequately alleged reliance.

11  **J.    Plaintiffs' Sixth Cause of Action for Implied Warranty of Merchantability**

12                    **1.    Privity**

13        ConAgra argues that at least four of the states under whose statutes plaintiffs bring implied

14  warranty claims – New York, Ohio, Oregon and Washington – require privity between plaintiff

15  and defendant.[74]  Plaintiffs agree to dismiss their claims for breach of implied warranty under

16  these state statutes.[75]  As they have conceded that the statutes are inapplicable, the claims will be

17  dismissed with prejudice.

18

19

20

21

22

---

23    [72]Complaint, ¶ 101.

24    [73]Motion at 22.

25    [74]Motion at 20 (*Jesmer v. Retail Magic, Inc.*, 863 N.Y.S.2d 737, 746-47 (App. Div. 2008);
26  *McKinney v. Bayer Corp.*, 744 F.Supp.2d 733, 758 (N.D. Ohio 2010); *Dravo Equip. Co. v.
27  German*, 73 Or.App. 165, 169 (1985); *Tex Enterprises, Inc. v. Brockway Standard, Inc.*, 149
   Wn.2d 204, 209-14 (2003)).

28    [75]Opposition at 21.

## 2. Merchantability

ConAgra also contends that plaintiffs' implied warranty claims are foreclosed under the law of New Jersey and Washington,[76] because the plaintiffs do not contend that Wesson Oils do not conform to their ordinary and intended use.[77] New Jersey's statute provides that, for goods to be merchantable, they must "conform to the promises or affirmations of fact made on the container or label if any." N.J. STAT. ANN. 12A:2-314(2)(f).[78] Texas' statute uses the same language.

---

[76]ConAgra makes a similar claim concerning the implied warranty laws of Ohio and Washington. (Motion at 21.) Because plaintiffs have agreed to dismiss their Ohio and Washington implied warranty claims, the court need not address this argument.

[77]Motion at 20-21.

[78]As support for its position concerning New Jersey law, ConAgra cites *Lieberson v. Johnson & Johnson Consumer Companies, Inc.*, 865 F.Supp.2d 529, 2011 WL 4414214 (D. N.J. Sept. 21, 2011). There, the court stated:

> "'Merchantability' requires that a product conform to its ordinary and intended use. In order for the implied warranty of merchantability to be breached, the product at issue must have been defective or not fit for the ordinary purpose for which it was intended. The implied warranty of merchantability does not impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality. Indeed, the warranty of merchantability simply means that the thing sold is reasonably fit for the general purpose for which it is manufactured and sold." *Id.* at *8 (citations and quotation marks omitted).

Plaintiff contended that the products at issue in that case – baby bath wash and moisture lotion – were not fit for their ordinary purpose since they did not help babies sleep as the labeling suggested. *Id.* at *10. The court rejected this argument, stating: "Plaintiff has cited no case law to support the idea that advertising alone, no matter how deceptive, may transform the clear and ordinary purpose of a product into an entirely different and unrelated purpose. Indeed, the Court notes that Plaintiff appears to be attempting to fit the square peg of a false advertising or consumer fraud type claim into the round hole of an entirely unrelated warranty claim." *Id.* As there were no allegations that the products were not fit for their ordinary purpose of cleaning and moisturizing babies' skin, the claim was must be dismissed. *Id.*

Neither the plaintiff nor the court in *Lieberson* addressed the language of New Jersey's implied warranty law regarding the labeling of products. To the extent the decision can be read to state that deceptive labeling can be misleading under § 12A:2-314(2)(f) only if the deception concerns the main purpose of the product, the statutory language does not support this conclusion. It clearly provides that goods are merchantable only if they are both "fit for the ordinary purposes for which such goods are used" and labeled accurately. N.J. STAT. ANN. 12A:2-314(2); *Nelson v. Xacta 3000 Inc.*, Civil Action No. 08-5426 (MLC), 2010 WL 1931251, *8 (D. N.J. May 12,

Tex. Bus. & Com.Code § 2.314(b)(6); see also *Polaris Industries, Inc. v. McDonald*, 119 S.W.3d 331, 336 (Tex. App. 2003) ("[A] product is considered unmerchantable if it does not conform to the promises or affirmations of fact which are on the product's container or label").[79]

Plaintiffs have alleged that Wesson Oils do not conform to the representation on their labels that they are "100% Natural." This allegation plainly falls within the ambit of the statutes, and plaintiffs' claims cannot be dismissed on this basis as a result.

### 3.    Statute of Limitations

ConAgra contends that plaintiffs' breach of implied warranty claim under Colorado law is is barred by that state' three-year statute of limitations on claims for breach of any contract for sale. Colo. Rev. Stat. § 4-2-725(2).[80] The complaint alleges that the single Colorado plaintiff "purchased Wesson Canola Oil approximately two times per year for her and her family's consumption, most recently around May or June 2011.[81] While not all of this plaintiff's purchases may fall within the limitations period, the allegation, taken as true, indicates that her claim is not barred. Thus, although the definition of any class certified may need to be modified to take the applicable statute of limitations into account, ConAgra's motion to dismiss on this ground cannot

---

2010) ("These factual allegations, while minimal, state a plausible claim that the Kinoki Pads do not work as advertised on the product packaging, by suggesting that the color change is due to the presence of moisture rather than the absorption of impurities through the feet during sleep"). Were ConAgra's reading correct, the subsection regarding labeling would be superfluous, because a product not fit for its ordinary purpose would be unmerchantable whether or not it was properly labeled.

[79]ConAgra cites *General Motors Corp. v. Brewer*, 966 S.W.2d 56 (Tex. 1998), in which the court stated that a seller warrants that goods "are fit for the ordinary purposes for which such goods are used," and that "[f]or goods to breach this warranty, they must be defective – that is, they must be 'unfit for the ordinary purposes for which they are used because of a lack of something necessary for adequacy.'" *Id.* at 57 (quoting *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 443–44 (Tex. 1989)). The *Brewer* court confined its analysis, however, to § 2.314(b)(3), and did not discuss § 2.314(b)(6). *Id.* It thus did not address the circumstances under which a mislabeled product could violate the implied warranty of merchantability.

[80]Motion at 21.

[81]Complaint, ¶ 17.

29

be granted.

**K.    Plaintiffs' Seventh Cause of Action for Unjust Enrichment**

**1.    Whether Unjust Enrichment is a Separate Cause of Action**

ConAgra asserts that unjust enrichment is not an independent cause of action under the law of California, Texas, and Illinois and that the unjust enrichment claims of those states' plaintiffs must be dismissed.[82]

**a.    California**

Under California law, the elements of unjust enrichment are: (1) receipt of a benefit; and (2) unjust retention of the benefit at the expense of another. *Lectrodryer v. SeoulBank*, 77 Cal.App.4th 723, 726 (2000). Some federal courts have noted that "California courts 'appear to be split on whether unjust enrichment can be an independent claim or merely an equitable remedy.'" *Baggett v. Hewlett-Packard Co.*, 582 F.Supp.2d 1261, 1270 (C.D. Cal. 2007) (quoting *Falk v. General Motors Corp.*, 496 F.Supp.2d 1088, 1099 (N.D. Cal. 2007)). See also *Ghirardo v. Antonioli*, 14 Cal.4th 39, 50, 54 (1996) (holding that a plaintiff was "entitled to seek relief under traditional equitable principles of unjust enrichment" where other remedies were unavailable and that a claim "'for payment of money' . . . rest[ed] on a theory of unjust enrichment"); *Melchior v. New Line Productions, Inc.*, 106 Cal.App.4th 779, 793 (2003) ("The phrase 'unjust enrichment' does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so," quoting *Lauriedale Assocs. Ltd. v. Wilson*, 7 Cal.App.4th 1439, 1448 (1992));

Most courts discussing the split in authority contrast *Melchior* and *Ghirardo*, conclude that they conflict, and resolve the conflict by limiting *Ghirardo* to its facts, i.e., to situations in which a party would be without a remedy if a cause of action for unjust enrichment were not recognized. The court does not believe that *Ghirardo* and *Melchior* are in conflict. In *Ghirardo*, a lender pled a common count "for payment of money" seeking to recover the amount still outstanding on a promissory note debt. *Ghirardo*, 14 Cal.4th at 54. The California Supreme Court held that the

---

[82]Motion at 23.

1    lender could pursue the common count, which "rest[ed] on a theory of unjust enrichment." *Id.*

2    *Ghirardo* thus holds that a plaintiff may obtain relief premised on a theory of unjust enrichment

3    by pleading a common count for the payment of money.  It does not address whether a plaintiff

4    may plead unjust enrichment as a distinct cause of action. See *Webster v. Allstate Insurance Co.*,

5    No. B211390, 2010 WL 60642, *7 (Cal. App. Jan. 11, 2010) ("The court . . . did not hold that

6    unjust enrichment was an independent cause of action, separate and apart from the common

7    count.")[83]  But see *Jogani v. Superior Court*, 165 Cal.App.4th 901, 911 (2008) (citing *Melchior*

8    for the proposition that "unjust enrichment is not a cause of action," but dismissing an unjust

9    enrichment claim because it was "duplicative" and "add[ed] nothing").   Consequently, the

10   intermediate appellate court decision in *Melchior*, which is not in conflict with *Ghirardo* and

11   which addresses the issue directly, controls.

12        Although they have reached the result by resolving what they perceive to be a conflict

13   between *Ghirardo* and *Melchior*, federal courts have consistently followed *Melchior* and held that

14   California law does not recognize a cause of action for unjust enrichment, so long as another cause

15   of action is available that permits restitutionary damages.  In *Falk*, 496 F.Supp.2d at 1099, Judge

16   William Alsup considered a case similar to this one.  The plaintiff had alleged claims for (1)

17   violation of the CLRA; (2) violation of the UCL; (3) fraud by omission; and (4) unjust

18   enrichment.  The court denied a motion to dismiss the first three claims.  Citing California's case

19   law regarding unjust enrichment, however, it dismissed plaintiff's fourth claim.  *Id.* at 1100.  The

20   court reasoned that the sole remedies available to plaintiff were those it was entitled to seek under

21   the first three causes of action.  *Id.* at 1099.  As a result, it stated, "there [was] no occasion for

22   resort to unjust enrichment."  *Id.*

23        Judge Andrew Guilford of this district reached a similar conclusion in *Baggett*, applying

24   ———————————

25   [83]"Although the court is not bound by unpublished decisions of intermediate state courts,
     unpublished opinions that are supported by reasoned analysis may be treated as persuasive

26   authority."  *Scottsdale Ins. Co. v. OU Interests, Inc.*, No. C 05-313 VRW, 2005 WL 2893865,
     *3 (N.D. Cal. Nov. 2, 2005) (citing *Employers Ins. of Wausau v. Granite State Ins. Co.*, 330

27   F.3d 1214, 1220 n. 8 (9th Cir. 2003) ("[W]e may consider unpublished state decisions, even
     though such opinions have no precedential value")).

28

*Melchior*, and finding that where claims remained that enabled a plaintiff to obtain restitutionary relief, "the unjust enrichment claim . . . add[ed] nothing. . . ." *Baggett* 582 F.Supp.2d at 1271. See also *Walker v. Equity 1 Lenders Group*, No. 09cv325 WQH (AJB), 2009 WL 1364430, *9 (S.D. Cal. May 14, 2009) ("There is no cause of action in California for unjust enrichment . . . . Unjust enrichment is typically sought in connection with a 'quasi-contractual' claim in order to avoid unjustly conferring a benefit upon a defendant where there is no valid contract"); *Swanson v. USProtect Corp.*, No. C 05-602 JF (HRL), 2007 WL 1394485, *5 (N.D. Cal. May 10, 2007) ("There is no cause of action in California for unjust enrichment. . . . Unjust enrichment is a general principle, underlying various legal doctrines and remedies, rather than a remedy itself").

The court agrees that under California law, a cause of action for unjust enrichment is not cognizable. Rather, unjust enrichment is a theory that permits recovery on other recognized causes of action, including plaintiffs' UCL and CLRA claims. The court therefore dismisses plaintiff's unjust enrichment claim under California law with prejudice. This conclusion does not preclude plaintiffs from seeking restitution under the consumer protection statutes on the ground that ConAgra was unjustly enriched, however.

### b. Texas

There is much the same split in authority among Texas courts as there is in California. A number of Texas courts have concluded that unjust enrichment is not an independent claim under state law. See *Show Services, LLC v. Amber Trading Co. LLC*, Civil Action No. 3:09-CV-2385-D, 2010 WL 4392544, *2 (N.D. Tex. Oct. 29, 2010) (citing, *inter alia*, *Redwood Resort Props., LLC v. Holmes Co.*, Civil Action No. 3:06-CV-1022-D, 2006 WL 3531422, *9 (N.D. Tex. Nov. 27, 2006)); *Celanese Corporation v. Coastal Water Authority*, 475 F.Supp.2d 623, 639 (S.D. Tex. 2007) (holding that "[r]estitution and unjust enrichment are remedies, not causes of action"); *Wood v. Gateway, Inc.*, 2003 WL 23109832, *12 (N.D. Tex. Dec. 12, 2003). Others have treated unjust enrichment as a cause of action. *Pepi Corp. v. Galliford*, 254 S.W.3d 457, 460 (Tex. App. 2007) (" "Unjust enrichment is an independent cause of action" ").

The Texas Supreme Court has not addressed the question directly, but has spoken of unjust enrichment as if it were an independent cause of action on two occasions. See *Fortune Production*

*Co. v. Conoco, Inc.*, 52 S.W.3d 671, 685 (Tex. 2000) ("A cause of action for unjust enrichment is not available to recover payments in addition to the contract price the parties agreed upon for the entire gas stream"); *HECI Exploration Company v. Neel*, 982 S.W.2d 881, 885 (Tex. 1998) (recognizing that a two-year statute of limitations governs "unjust enrichment" claims).

The dispute is largely academic, however, as plaintiffs can either plead unjust enrichment as a separate cause of action or cite it as grounds for seeking their requested relief on other claims. *Newington Ltd. v. Forrester*, Civil Action No. 3:08-CV-0864-G ECF, 2008 WL 4908200, *3-4 (N.D. Tex. Nov. 13, 2008) ("Texas courts may waffle about whether unjust enrichment is a theory of recovery or an independent cause of action, but either way, they have provided the plaintiff with relief when the defendant has been unjustly enriched"). Given the state supreme court's references to unjust enrichment as an independent cause of action, the court concludes that ConAgra's motion to dismiss the unjust enrichment claim under Texas law should be denied.

### c.    Illinois

As with California and Texas, Illinois courts appears divided as to whether unjust enrichment is an independent cause of action. Compare *Allstate Ins. Co. v. Morgan Guar. Trust Co. of New York*, No. 93 C 6527, 1994 WL 48585, *4 (N.D. Ill. Feb. 16, 1994) ("unjust enrichment is not a cognizable separate cause of action under Illinois law") with *Peddinghaus v. Peddinghaus*, 295 Ill.App.3d 943, 949 (1998) ("Defendants contend Illinois does not recognize an independent cause of action for unjust enrichment. We disagree. Our supreme court has expressly held that to 'state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience,'" quoting *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill.2d 145, 160 (1989)). Again, the practical effect of the distinction is minimal, and the court follows the suggestion of the Illinois Supreme Court that such a claim exists. It therefore denies ConAgra's motion to dismiss the Illinois unjust enrichment claims.

### 2.    Whether Plaintiffs' Allegations Support an Unjust Enrichment Claim

ConAgra advances a number of arguments in an attempt to demonstrate that, by its very

nature, an unjust enrichment claim is inconsistent with plaintiffs' factual allegations.[84]  In doing so, however, ConAgra does not cite any state's law regarding unjust enrichment, but makes blanket assertions about the law governing unjust enrichment nationwide.  As ConAgra itself notes, the court cannot merge the legal standards of a host of states.[85]  While the court recognizes that it is burdensome for ConAgra to attack unjust enrichment claims under the law of several states, the court cannot dismiss plaintiffs' claims based on ConAgra's generalized arguments.

### 3.    Privity

Finally, ConAgra asserts that privity is an element of an unjust enrichment claim under New Jersey and Ohio law, and that plaintiffs cannot plead privity.[86]  Plaintiffs agree that their New Jersey unjust enrichment claim should be dismissed, but dispute ConAgra's assessment of Ohio law.[87]

The Ohio Supreme Court has held that "an indirect purchaser cannot assert a common-law claim for restitution and unjust enrichment against a defendant without establishing that a benefit had been conferred upon that defendant by the purchaser." *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 286 (2005).  It concluded that a plaintiff, who had purchased a Gateway computer preinstalled with defendant Microsoft's operating system, failed to allege such a benefit.  *Id.*  "In order for a plaintiff to confer a benefit on a defendant, an economic transaction must exist between the parties." *Hoffer v. Cooper Wiring Devices, Inc.*, No. 1:06CV763, 2007 WL 1725317, *4 (N.D. Ohio June 13, 2007).

Ohio courts have found that plaintiffs conferred a benefit on defendants absent privity of contract in cases involving subcontractors, or sales to a customer whose identity defendant knew and from whom it specifically tailored the product.  *Id.* (citing cases).  This case falls into neither category.  Plaintiffs purchased Wesson Oils from retailers, and did not confer a direct economic

---

[84]Motion at 23-24.

[85]*Id.* at 14-15.

[86]Motion at

[87]Opposition at 25.

benefit on ConAgra.  See *id.* ("Ohio courts have not similarly held that purchase of products within a 'chain of sale' is sufficient to establish that a plaintiff has bestowed a benefit on a defendant").  Consequently, plaintiffs' Ohio unjust enrichment claim must be dismissed.

## III.  CONCLUSION

For the reasons stated, the court grants in part and denies in part defendant's motion to dismiss.  Plaintiffs' second and third causes of action are dismissed with prejudice, as are their implied warranty claims under New York, Ohio, Oregon, and Washington law, and their California, New Jersey, and Ohio unjust enrichment claims.   Plaintiffs' first cause of action is dismissed with leave to amend, as is their New Jersey consumer protection claim.  Plaintiffs may file an amended complaint within twenty (20) days of the entry of this order.

The court takes this opportunity to remind plaintiffs of their responsibilities under Rule 11 of the Federal Rules of Civil Procedure.  Under Rule 11, by presenting a pleading to the court, the party or attorney "represents that to the best of the person's knowledge, information, and belief, formed *after an inquiry reasonable under the circumstances* . . . [that] the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." FED.R.CIV.PROC. 11(b).  In filing any amended complaint, plaintiffs should take care to examine more carefully the nuances of the various statutes they cite, and to remember that it is they who bear the burden of convincing the court that resolving a multitude of state law claims asserted on behalf of a multitude of classes is the superior method of litigating the claims.  The parties are also cautioned that the court takes seriously their obligation to meet and confer under Local Rule 7-3.  While ConAgra's notice of motion recites that the required conference took place, at least some of the issues raised by this motion could have been resolved by stipulation, as there was no disagreement concerning the fact that the claims pled could not withstand scrutiny.

DATED: November 15, 2012

_____
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE