UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 11-05379-MMM (AGRx) | Date | December 29, 2014 |
|---|---|---|---|

| Title | *In re ConAgra Foods, Inc.* |
|---|---|

| Present: The Honorable | MARGARET M. MORROW | |
|---|---|---|
| ANEL HUERTA | | N/A |
| Deputy Clerk | | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** **Order Denying Defendant's *Ex Parte* Motion to Stay**[433]

## I. BACKGROUND

Plaintiffs are consumers residing in California and ten other states.[1] They allege that from at least June 27, 2007 to the present, defendant ConAgra Foods, Inc. ("ConAgra") deceptively and misleadingly marketed its Wesson brand cooking oils, which are made from genetically-modified organisms ("GMO"), as "100% Natural."[2]

On September 8, 2014, plaintiffs filed an amended motion for class certification.[3] ConAgra

---

[1]The other states in which plaintiffs reside are Colorado, Florida, Illinois, Indiana, Nebraska, New York, Ohio, Oregon, South Dakota, and Texas. (Amended Motion for Class Certification ("Motion"), Docket No. 371 (Sept. 8, 2014) at 2.)

[2]*Id.* at 2.

[3]*Id.*

opposed the motion on October 6, 2014,[4] and plaintiffs filed a reply on October 27, 2014.[5]  On November 24, 2014, the court held a hearing on plaintiffs' amended motion for class certification; at the end of the hearing, the court took the motion under submission.[6]

On November 12, 2014, plaintiffs filed an *ex parte* application for an order directing defendants to explain why certain documents purportedly relevant to the certification motion had not been produced until the day before plaintiffs' deadline to file a reply in support of their certification motion; plaintiffs also suggested that, depending on the nature of the explanation, the court should draw an adverse inference against ConAgra.[7]  ConAgra opposed the application,[8] which the court denied.  Following the hearing, plaintiffs filed a motion to compel production of documents, which is currently set for hearing before Magistrate Judge Alicia G. Rosenberg on December 30, 2014.[9]  On December 17, 2014, ConAgra filed an *ex parte* application to stay the case pending resolution of an appeal in a separate case against ConAgra and of anticipated appeals in several other cases as well.[10]  Plaintiffs oppose the application.[11]

---

[4]Memorandum in Opposition to Amended Motion to Certify Class, Docket No. 381 (Oct. 6, 2014).

[5]Reply in Further Support of Amended Motion to Certify Class, Docket No. 393 (Oct. 27, 2014).

[6]Minutes of Plaintiff's Motion to Amend Motion for Class Certification & Appointment of Class Counsel, Docket No. 424 (Nov. 24, 2014).

[7]*Ex Parte* Application for Order Regarding ConAgra's Late Production of Documents Material to Class Certification ("Application"), Docket No. 412 (Nov. 12, 2014).

[8]Opposition Re: *Ex Parte* Application for Order Regarding ConAgra's Late Production of Documents Material to Class Certification ("Opposition"), Docket No. 415 (Nov. 13, 2014).

[9]See Notice of Motion and Motion to Compel Document Production from Defendant ConAgra Foods, Inc. Relating to ConAgra's Late Production of Documents, Docket No. 426 (Dec. 9, 2014); see also Joint Stipulation to Motion to Compel Document Production from Defendant ConAgra Foods, Inc. Relating to ConAgra's Late Production of Documents, Docket No. 427 (Dec. 9, 2014).

[10]*Ex Parte* Application to Stay Case Pending Resolution of Related Cases and/or Appeals ("Application"), Docket No. 433 (Dec. 17, 2014).

[11]Opposition in Opposition to *Ex Parte* Application to Stay Case Pending Resolution of Related Cases and/or Appeals ("Opposition"), Docket No. 436 (Dec. 18, 2014).

## II.  DISCUSSION

### A.     Whether ConAgra Has Properly Sought *Ex Parte* Relief

#### 1.     Legal Standard Governing *Ex Parte* Applications

The "opportunities for legitimate *ex parte* applications are extremely limited." *In re Intermagnetics America, Inc.*, 101 B.R. 191, 193 (C.D. Cal. 1989). See also *Mission Power Engineering Co. v. Continental Casualty Co.*, 883 F.Supp. 488, 489 (C.D. Cal. 1995) (stating that to be proper, an *ex parte* application must demonstrate that there is good cause to allow the moving party to "go to head of the line in front of all other litigants and receive special treatment").  As the court in *Intermagnetics* stated:

> ". . . [E]x parte applications contravene the structure and spirit of the Federal Rules of Civil Procedure and the Local Rules of this court.  Both contemplate that noticed motions should be the rule and not the exception.  Timetables for the submission of responding papers and for the setting of hearings are intended to provide a framework for the fair, orderly, and efficient resolution of disputes.  Ex parte applications throw the system out of whack.  They impose an unnecessary administrative burden on the court and an unnecessary adversarial burden on opposing counsel who are required to make a hurried response under pressure, usually for no good reason.  They demand priority consideration, where such consideration is seldom deserved. In effect, they put the applicant 'ahead of the pack,' without cause or justification." *Intermagnetics*, 101 B.R. at 193 (footnote omitted).

The use of such a procedure should be limited to instances in which: (1) there is the threat of immediate or irreparable injury; (2) there is danger that notice to the other party may result in the destruction of evidence or the party's flight; or (3) the party seeks a routine procedural order that cannot be obtained through a regularly noticed motion (i.e, to "file an overlong brief or to shorten the time within which a motion may be brought"). *Id.*

#### 2.     Whether ConAgra Has Shown Good Cause for *Ex Parte* Relief

ConAgra asks that the court stay this action until the Ninth Circuit decides an appeal of a class certification decision in *Jones v. ConAgra Foods, Inc.*, No. C 12–01633 CRB, 2014 WL 2702726 (N.D. Cal. June 13, 2014). It asserts that the appeal in *Jones* involves "many of the same legal and factual issues before the [c]ourt related to [p]laintiffs' class claims, [p]laintiffs' damages, and the merits of [p]laintiffs' claims."[12]  As a basis for seeking a stay on an *ex parte* basis, ConAgra contends that it will suffer irreparable harm in the absence of such relief (1) "in the form of substantial expenditures for discovery, experts, and trial preparation, as well as the possibility of inconsistent resolutions of law and fact in light of the pending appeal in *Jones v. ConAgra*"; and (2) because, in the event that the court

---

[12]Application at 2.

certifies any of the putative classes, it intends to file a motion to decertify them, as well as a motion for summary judgment, and believes it will not be able to obtain a hearing date before the motion hearing cut-off date set by the court.[13] Plaintiffs counter that ConAgra has failed to show good cause warranting *ex parte* relief.[14]

The court agrees with plaintiffs. As an initial matter, ConAgra cites no authority supporting its argument that being required to comply with its discovery obligations in this case constitutes "irreparable harm" that justifies use of the *ex parte* procedure. Moreover, to the extent ConAgra may not be able to secure a timely hearing date for its anticipated motions, this provides no basis for seeking a stay of the action on an *ex parte* basis. If scheduling a hearing on anticipated motions is ConAgra's concern, it can seek an order setting its motions in compliance with the scheduling order.[15]

More fundamentally, even if the court were to accept ConAgra's premise that it will be harmed by being required to expend resources on discovery, experts, and trial preparation, harm alone is not sufficient to justify *ex parte* relief. Rather, as the *Mission Power* court explained, "it must [also] be established that the moving party is without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect." *Mission Power*, 883 F.Supp. at 492.

ConAgra does not attempt to explain why it is without fault in creating the crisis that purportedly requires *ex parte* relief, nor does it argue that the crisis is the result of excusable neglect. It appears, in fact, that ConAgra contributed to the alleged crisis that gives rise to its *ex parte* application. As ConAgra recognizes, Judge Breyer's decision regarding class certification in *Jones v. ConAgra Foods, Inc.*, was first appealed to the Ninth Circuit on July 15, 2014.[16] Despite ConAgra's awareness that the appeal in *Jones* would – as it now contends – purportedly involve many of the legal and factual issues presented by this case, it did not seek a stay for almost five months after the appeal was taken. Had ConAgra filed a motion for a stay when it first learned of the appeal, the issue could likely have been resolved on noticed motion. Under the circumstances, the court cannot conclude that ConAgra was "without fault in creating the crisis that requires *ex parte* relief," and could deny ConAgra's *ex parte* application on this basis alone. See, e.g., *Painter v. Atwood*, No. 2:12-CV-01215-JCM-NJK, 2014 WL 6871750, *1 (D. Nev. Nov. 25, 2014) ("The failure of the movant to show it was without fault in creating the emergency situation alone justifies denial of the emergency relief sought," citing *Pate v. Wells Fargo Bank Home Mortg., Inc.*, No. CV 11-4151 PSG (MANx), 2011 WL 2682646, *1 (C.D. Cal. July 7, 2011)); *Carroll v. Nationstar Mortg., LLC*, No. 2:13-CV-4490-ODW (PJWx), 2013 WL 3188725, *3 (C.D. Cal. June 21, 2013) ("[T]he emergency presented here is of Carroll's own doing.

---

[13]*Id.*

[14]Opposition at 5.

[15]Moreover, although this case has been on the court's docket for some time, it noted, in response to concerns about existing deadlines expressed by counsel at the hearing on plaintiffs' amended motion for class certification, that it was willing to consider a stipulation to modify the scheduling order.

[16]Application at 1.

A party seeking *ex parte* relief must establish that she 'is without fault in creating the crisis that requires *ex parte* relief or that the crisis occurred as a result of excusable neglect.' The Notice of Trustee's Sale was recorded on May 6, 2013, and Carroll received notice of it shortly thereafter. Yet Carroll did not act by filing a Complaint then. Instead, she waited until June 20, 2013 – two weeks after Nationstar's June 3, 2013 foreclosure on her property – to file her complaint" (citations omitted)); *Fernandez v. City of Los Angeles*, No. CV 08-05044 DDP (SHx), 2009 WL 2169482, *1 (C.D. Cal. July 16, 2009) ("*Ex parte* relief is generally disfavored when relief may be had through a regularly-noticed motion. They will only be granted upon an adequate showing of good cause or irreparable injury to the party seeking relief. The moving party must establish that it is without fault in creating the crisis requiring *ex parte* relief or that the crisis occurred as a result of excusable neglect. Plaintiff has not made any showing as to why *ex parte* relief is warranted here. . . . All defendants have represented to the Court that the individuals Plaintiff seeks to name in the First Amended Complaint were disclosed to Plaintiff months prior to the original May 1, 2009 deadline. In these circumstances, the Court cannot find that Plaintiff has shown good cause for *ex parte* relief").[17]

### B. Whether ConAgra is Entitled to a Stay

Although the court could deny ConAgra's *ex parte* application because it failed to show that it was without fault in creating the need for *ex parte* relief or that the need arises as a result of excusable neglect, the court nonetheless considers the merits of ConAgra's application and, for the reasons stated below, denies relief.

#### 1. Legal Standard Governing Entry of a Stay

"A district court has inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936); see also *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 878 n. 6 (1998) (quoting *Landis*); *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (same). For this reason, a district court has discretion to stay proceedings pending before it. See *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1077 (3d Cir. 1983) (stating that the authority to stay proceedings derives from the power of every court to manage the cases on its docket and ensure a fair and efficient adjudication of the matters at hand); *Mediterranean Enterprises v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983). In exercising such discretion, the court "must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254-55.

---

[17]See also *Jaffe v. Zamora*, No. SACV 14-01478-CJC (RNBx), 2014 WL 5786233, *1 (C.D. Cal. Oct. 29, 2014) (denying *ex parte* application because the movant "has not shown that he is 'without fault in creating the crisis that requires *ex parte* relief, ro that the crisis occurred as a result of excusable neglect'" (citations omitted)); *Santos v. JP Morgan Chase Bank, NA*, No. CV 10-9712 PSG (PJWx), 2010 WL 5313740, *2 (C.D. Cal. Dec. 17, 2010) (observing that "[p]laintiff does not explain th[e] delay [in seeking relief]," and denying an *ex parte* application because plaintiff "therefore failed to demonstrate the absence of fault in creating the crisis that supposedly warrants *ex parte* relief").

Courts consider a variety of factors in assessing whether a stay is appropriate: (1) the benefits to the court of a stay; (2) the prejudice to plaintiff if a stay is granted; and (3) the prejudice to defendant if a stay is not granted. See *Schwartz v. Upper Deck Co.*, 967 F.Supp. 405, 415 (S.D. Cal. 1997) (citing *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990)); see also *CMAX, Inc.*, 300 F.2d at 268 ("Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among these competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay" (citation omitted)).

### 2. Whether the Court Should Grant a Stay

#### a. The Benefit to the Court

"A district court has the discretionary power to control the disposition of the cases on its docket 'in a manner which will promote economy of time and effort for itself, for counsel, and for the litigants.'" *McConnell v. Lassen County, California*, No. CIV S-05-0909 FCD DAD, 2007 WL 4170622, *1 (E.D. Cal. Nov. 20, 2007) (quoting *CMAX, Inc.*, 300 F.2d at 268). Thus, this factor "weighs in favor of granting a stay when the orderly course of justice will be advanced through the simplifying of issues, proof, and questions of law." *Electronic Frontier Foundation v. Office of the Director of National Intelligence*, No. C 08-01023 JSW, 2009 WL 773340, *2 (N.D. Cal. Mar. 23, 2009) (citing *Landis*, 299 U.S. at 255). A court may "find it is efficient for its own docket and the fairest course for the parties to enter a stay . . . pending resolution of independent proceedings which bear upon the case." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1111 (9th Cir. 2005) (quoting *Levya v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979)); *Levya*, 593 F.2d at 863-64 ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule . . . does not require that the issues in such proceedings are necessarily controlling of the action before the court"); *FormFactor, Inc. v. Micronics Japan Co., Ltd.*, No. CV 06-07159 JSW, 2008 WL 361128, *3 (N.D. Cal. Feb. 11, 2008) (if prior "proceedings bear on the issues of this case, it would be the most efficient and fairest course of action to stay the remaining claims of this action"). See also *Mediterranean Enterprises*, 708 F.2d at 1465 (affirming the entry of a stay where the issues in a parallel proceeding overlapped factually and legally).

ConAgra argues that the interests of justice will be served by staying this action because the *Jones* appeal "presents a number of issues that have divided courts in this Circuit and within this District," and will "provide direct, binding guidance on issues material to this case."[18] Specifically, ConAgra contends *Jones* will control conclusions concerning ascertainability and the predominance

---

[18]Application at 7.

inquiry related to plaintiffs' proposed damages model under *Comcast*.[19]  The court is not persuaded, based on ConAgra's conclusory assertions, that *Jones* will directly affect this case or that a stay of the action will promote the orderly course of justice.

First, as respects ascertainability, Judge Breyer concluded in *Jones* that plaintiffs had not shown that the class they sought to certify was ascertainable because the class, as defined, was "overbroad" and there were no "objective and verifiable criteria for determining its members." *Jones*, 2014 WL 2702726 at *8.[20]  Specifically, Judge Breyer noted that the labeling of Hunt's products had changed throughout the class period; only some products sold during that period had the challenged label. *Id.* at *10-11. Reasoning that putative class members were unlikely to recall whether or not they purchased a product that had the label at issue, he concluded that "the variation in the Hunt's products and labels ma[de] self-identification . . . unfeasible," and necessitated a finding that the class was not ascertainable. *Id.* at *10-11 ("Even assuming that all proposed class members would be honest, it is hard to imagine that they would be able to remember which particular Hunt's products they purchased from 2008 to the present, and whether those products bore the challenged label statements. . . . Although this Court might be persuaded that a class of 'all people who bought Twinkies,' for example, during the class period, could be ascertained – one would at least have more confidence in class members' ability to accurately self-identify – the variation in Hunt's products and labels makes self-identification here unfeasible"). On appeal, Jones challenges Judge Breyer's imposition of an "ascertainability" requirement; he also challenges the finding that the class is not ascertainable because it includes purchasers of a "few obscure products" that did not have the challenged label.[21]

The court cannot conclude that resolution of either of these issues will directly affect this litigation. Any finding by the Ninth Circuit that there is no independent ascertainability requirement would not directly affect class certification because, as the court indicated in its order denying plaintiffs' first motion for class certification,[22] and at the hearing on plaintiffs' amended class certification motion, plaintiffs here have proposed ascertainable classes. Thus, even if the Ninth Circuit were to conclude that there is no separate ascertainability requirement, the court's imposition of such a requirement in this case would be harmless because it did not deny certification on this basis. With respect to Jones'

---

[19]*Id.*

[20]In the district court, *Jones* involved claims that three food products – Hunt's® tomatoes, PAM® cooking spray, and Swiss Miss® hot cocoa – were misleadingly and deceptively labeled. See *Jones*, 2014 WL 2702726 at *1-3. The appeal, however, concerns only plaintiff Jones' claims concerning Hunt's® products; plaintiff Christine Sturges voluntarily dismissed her appeal of the district court findings regarding the PAM® and Swiss Miss® classes. See *Jones v. ConAgra Foods, Inc.*, No. 14-16327 (9th Cir. 2014), Docket No. 19.

[21]See *Jones v. ConAgra Foods, Inc.*, No. 14-16327 (9th Cir. 2014), Docket No. 21 ("Opening Brief") at 10-13, 15-17.

[22]Order Denying Plaintiffs' Motion for Class Certification ("Order"), Docket No. 350 (Aug. 1, 2014) at 36-42.

challenge to Judge Breyer's conclusion that members of the class were not ascertainable because not all bought products with the challenged label, *Jones*, 2014 WL 2702726 at *10-11, the court once again is not convinced that the Ninth Circuit's resolution of the issue will affect class certification in this case. It is undisputed here that all members of the classes proposed by plaintiffs purchased products that were labeled 100% Natural. This case is therefore factually distinct from *Jones*, and it appears unlikely that the Ninth Circuit's decision regarding ascertainability will impact whether classes should be certified.

With respect it predominance, Judge Breyer concluded that plaintiffs' proposed damages methodologies failed under *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1433-34 (2013). *Jones*, 2014 WL 2702726 at *19-20. The *Jones* plaintiffs first proposed that putative class members receive restitution of the full price paid for each product; Judge Breyer rejected this, noting that class members were only entitled to "[t]he difference between what [they] paid and the value of what [they] received." *Id.* at *19 (citing *Ries v. Ariz. Beverages USA LLC*, No. 10-1139, 2013 WL 1287416, *7 (N.D. Cal. Mar. 28, 2013)). Judge Breyer also found two proposed methods of calculating the price premium attributable to the challenged label statement deficient. *Id.* at *20. He noted that plaintiffs' proposal that the price of comparable products be compared with the price of ConAgra's products was "deeply flawed" because plaintiffs' expert had identified only one comparator product – despite "the seven product lines and multiple varieties within each . . . product line" being challenged – and because the expert selected the comparator product in question without taking into account the fact that it was generic, rather than a "market leader" like Hunt's products. *Id.* He also rejected plaintiffs' proposed hedonic regression analysis because, *inter alia*, the expert did "not provide a clearly defined list of variables, [or] determine[ ] whether . . . data related to any or all of his proposed control variables exists." Nor did the expert determine which products he would use in conducting the analysis. *Id.* In his opening brief, Jones argues that Judge Breyer erred in treating "restitution" as "damages" under California law,[23] and in concluding that the damages methodologies proposed are not sufficient under *Comcast*.[24]

ConAgra appears to assert that the Ninth Circuit's holding in *Jones* will be controlling or instructive because plaintiffs propose to calculate the price premium associated with the 100% Natural label by using hedonic regression analysis.[25] As with ascertainability, ConAgra has not adequately shown that the *Jones* appeal will directly affect decisions concerning predominance and damages in this case. As Judge Breyer's examination of the damages methodologies proposed in *Jones* and the court's consideration of the models proposed by plaintiffs here make clear, evaluating any damages methodology is a fact-intensive endeavor. This suggests that the Ninth Circuit's holding in *Jones* will be narrowly tailored to the damages models proposed in that case; while those methodologies involve the same discipline, i.e., econometric analysis, being proposed for use in this case, the *Jones* expert's model is distinct from the model being proposed by Weir and Dr. Howlett here. More fundamentally,

---

[23]Opening Brief at 35-45.

[24]*Id.* at 45-49.

[25]Application at 7.

as plaintiffs observe in their opposition, "the primary basis of the *Jones* appeal is whether the district court improperly applied *Comcast* to 'rewrite the remedies available under [California] state [ ] law,'"[26] an issue ConAgra does not assert is implicated in this case. Thus, as with ascertainability, the court cannot find that staying this action will "promote the orderly course of justice" by simplifying or providing guidance regarding issues related to damages.[27]

For all of these reasons, the court concludes that the first factor weighs against entry of a stay.[28]

---

[26]Opposition at 10-11.

[27]Although not addressed by ConAgra in its application, Jones has also appealed Judge Breyer's finding that individual issues predominate (see Opening Brief at 21-31); that a class action is not superior to individual actions (see *id.* at 49-50); and that Jones lacks standing to represent a Rule 23(b)(2) injunctive relief class (see *id.* at 50-56). Although the court will have to address these questions in resolving plaintiffs' amended motion for class certification, it is not clear that the Ninth Circuit's decision respecting the issues will directly affect this case. Given Judge Breyer's fact-intensive analysis of each issue, see *Jones*, 2014 WL 2702726 at *12-13 (Rule 23(b)(2) standing), *16 (predominance), *24 (superiority), it is possible the Ninth Circuit's holding regarding each will be narrowly tailored to the facts in *Jones* and neither bind nor provide guidance in resolving plaintiffs' amended motion.

[28]To the extent ConAgra contends that staying the case will promote the orderly course of justice based on the issues likely to be addressed in appeals in *Brazil v. Dole Packaged Foods, LLC*, No. 5:12-CV-01831 LHK (N.D. Cal. 2014), and/or *Werdebaugh v. Blue Diamond Growers*, No. 5:12-CV-02724 LHK (N.D. Cal. 2014), the court declines to enter a stay. In its application, ConAgra offers only speculation that appeals will be taken in *Brazil* and *Werdebaugh* and that the Ninth Circuit will consolidate those appeals with *Jones*. (See Application at 1 ("These issues are now squarely before the Ninth Circuit in *Jones v. ConAgra Foods, Inc.*, which will likely soon be joined by appeals at the Ninth Circuit in *Brazil v. Dole* [and] *Werdebaugh v. Blue Diamond Growers*"); *id.* at 6 ("The *Brazil* and *Werdebaugh* cases will likely be appealed shortly, and the subject of actions to relate and/or consolidate the appeals therein with *Jones* as the lead case").) As of this date, no appeal has been filed in *Werdebaugh*; instead, a motion for reconsideration of the court's decertification order is currently pending before the district court. (See *Werdebaugh v. Blue Diamond Growers*, No. 5:12-CV-02724-LHK (N.D. Cal. 2014), Motion for Leave to File Motion for Reconsideration of Order Granting Motion to Decertify, Docket No. 195 (Dec. 27, 2014).) It is simply not appropriate to stay this action based on the possibility that an appeal will ultimately be filed in *Werdebaugh*.

The plaintiffs in *Brazil* did file a notice of appeal on December 17, 2014. (See *Brazil v. Dole Packaged Foods, LLC*, No. 5:12-CV-01831 LHK (N.D. Cal. 2014), Notice of Appeal to the Ninth Circuit Court of Appeals, Docket No. 244 (Dec. 17, 2014); *id.*, USCA Case Number 14-17480, Docket No. 245 (Dec. 19, 2014).; see also *Brazil v. Dole Packaged Foods, LLC*, No. 14-17480 (9th Cir. 2014), Docketed Cause and Entered Appearances of Counsel, Docket No. 1 (Dec. 18, 2014).) Although *Brazil* has been appealed, that appeal has not been consolidated with *Jones*, and there is no indication what issues plaintiff will raise, as the opening brief is not due until March 27, 2015. It is therefore impossible to determine whether the Ninth Circuit's opinion in that case will affect resolution of this case or

### b.     The Prejudice to Plaintiffs if a Stay is Granted

ConAgra maintains "there is no risk [p]laintiffs will be injured if the case is stayed" because there is no risk that they will be misled concerning the content of its products and because any monetary damages to which they may be entitled are small.[29] ConAgra is correct that it is unlikely plaintiffs will be injured if the injunctive and monetary relief they seek is delayed as the result of a stay. It is clear that plaintiffs now appreciate that Wesson Oils contain GMO ingredients notwithstanding the "100% Natural" claim on their label; they are thus not likely to be injured or misled again by the 100% Natural claim. Similarly, although a stay may delay plaintiffs' recovery of monetary damages, a "mere delay in monetary recovery is an insufficient basis to deny a stay." *Gustavson v. Mars, Inc.*, No. 13-CV-04537 LHK, 2014 WL 6986421, *3 (N.D. Cal. Dec. 10, 2014) (citing *Lockyer*, 398 F.3d at 1110).

Plaintiffs, in fact, do not contend they will be prejudiced if the relief they seek is delayed. Rather, they assert that granting a stay will prejudice them because it will bring the litigation "suddenly . . . to a halt" for an unknown period of time.[30] They argue that the unknown length of the stay could negatively impact discovery, and lead to a loss of evidence through, for example, fading memories. They also note that it would preclude Judge Rosenberg from resolving various discovery-related issues that are presently pending before her.[31] ConAgra counters that such problems are unlikely given the fact that "the *Jones* appeal will be fully briefed in February."[32]

"The potential length of a stay is a relevant consideration in determining whether to grant [an application seeking such relief]." *Cartmill v. Sea World, Inc.*, No. 10CV00361 DMS (POR), 2010 WL 4569922, *2 (S.D. Cal. Nov. 5, 2010) (citing *Keshishzadeh v. Arthur J. Gallagher Serv. Co.*, Nos. 09-cv-168 LAB (RBB), 09-cv-1273 LAB (RBB), 2010 WL 1904887, *2 (S.D. Cal. May 12, 2010)); see also *Richards v. Ernst & Young LLP*, No. C 08-4988 JF (HRL), 2010 WL 682314, *4 (N.D. Cal. Feb. 24, 2010) (considering, *inter alia*, the likely length of any stay when deciding whether to grant a motion to stay). Although ConAgra is correct that briefing in *Jones* is scheduled to be complete on February 4, 2015, this in and of itself is not sufficient to conclude that any stay will be of a relatively limited duration. Briefing could be extended on application of the parties. Additionally, no date for oral argument has been set, and it is reasonable to believe that some number of months will elapse before the appeal is argued. After oral argument, moreover, it is unclear how long it will take for the panel

---

simplify or provide guidance concerning the relevant issues. For this reason, the court cannot find that ConAgra has demonstrated a stay pending resolution of the *Brazil* appeal will promote the orderly course of justice.

[29] Application at 8.

[30] Opposition at 7-8.

[31] *Id.* at 8.

[32] Application at 9.

issue a decision. Nor is it clear whether there will be a request for en banc review. If ConAgra is correct that the *Brazil* and *Werdebaugh* actions will be appealed and those appeals will be consolidated with *Jones*, moreover, this will result in further delay.

The court therefore finds that there is a risk of prejudice to plaintiffs. Delay in resolving litigation always poses the risk of lost evidence and fading memories, a risk that is amplified by the unknown duration of the stay ConAgra seeks. See, e.g., *Cartmill*, 2010 WL 4569922 at *2 ("Plaintiffs also argue, particularly in light of the indefinite length of any stay to be granted in this case, there is a risk of evidence being lost or witnesses forgetting relevant facts or relocating outside of the Court's jurisdiction. They claim they will need additional discovery not conducted in relation to the *Kuba* action because the actions relate to two separate incidents which occurred more than two years apart and discovery from the City of San Diego, which was not a party to the *Kuba* action, will be necessary. Consideration of these factors goes against granting a stay of the instant action pending resolution of the *Kuba* action on appeal"). Further, as plaintiffs observe, a stay is likely to prevent resolution of outstanding discovery issues and extend an already attenuated discovery period further. This, too, weighs against entry of a stay, particularly when less drastic remedies are available such as amendment of the court's scheduling order or seeking an order that will permit motions to be heard by the motion hearing cut-off date. See *Washington v. Andrews*, No. 1:07-cv-00886-AWI-MJS (PC), 2013 WL 321882, *2 (E.D. Cal. Jan. 24, 2013) ("In considering a stay order, the Court should 'balance the length of any stay against the strength of the justification given for it.' *Young v. I.N.S.*, 208 F.3d 1116, 1119 (9th Cir. 2000). Plaintiff provides no real justification for a stay of proceedings and does not specify any length of time for the requested stay. Staying this action would create a risk of prejudice to the Defendants. See *Anderson v. Air West*, 542 F.2d 522, 524 (9th Cir. 1976) (a presumption of injury arises from delay in resolving an action) and disrupt the Court's schedules. Other less drastic remedies, including the continuation of upcoming events and deadlines in the case, as provided below, can alleviate prejudice to Plaintiff from the lack of access"); see also *Cartwill*, 2010 WL 4569922 at *2 ("The potential length of a stay is a relevant consideration in determining whether to grant it. Here, although the *Kuba* action on appeal is fully briefed, a date for oral argument has not been set and it is likely that such hearing will not occur for many months, and a decision not issue for many more months. Accordingly, the potential length of a stay in the present action creates the increased possibility of damage to Plaintiffs and weighs against its imposition"); *Richards*, 2010 WL 682314 at *4 ("If it had a reasonable expectation that the California Supreme Court would decide the issue within a matter of months, this Court likely would stay the instant action pending that decision. However, at the hearing counsel indicated that while *Brinker* has been fully briefed, oral argument has not been set. Under these circumstances, it may be quite some time before the issue is decided. Accordingly, this Court declines to stay the action").

### c. The Prejudice to ConAgra if a Stay is Denied

ConAgra argues that both parties will be prejudiced if the court does not enter a stay pending resolution of the appeal in *Jones* because they "will . . . expend considerable resources preparing [for] discovery and briefing," which may ultimately prove "inefficient and wasteful" if the Ninth Circuit's

decision in *Jones* conflicts with the court's resolution of class certification issues in this case.[33] Stated differently, ConAgra contends it will be prejudiced if there is no stay because "the Ninth Circuit's decision in *Jones* will frame the factual record the parties need to develop and the legal issues that will govern this litigation," which may require that they "re-depose key witnesses, revisit issues relating to what documents are collected and produced, and re-brief class certification."[34]

The court is not persuaded for three reasons. First, as noted, it is not clear that the Ninth Circuit's decision in *Jones* will have as substantial an effect on this action as ConAgra contends. It is distinctly possible, given the scope of Jones' appeal, that the Ninth Circuit's opinion will not be as broad as ConAgra anticipates, but rather will be dependent on the particular facts of *Jones*, which the court has observed, are distinct from the facts of this case.

Second, as a general matter, "the moving party 'must make out a clear case of hardship or inequity in being required to go forward,'" and merely being required to defend the suit does not constitute hardship. *In re American Apparel, Inc. Shareholder Derivative Litigation*, No. CV 10-06576 MMM (RCx), 2012 WL 9506072, *44 (C.D. Cal. July 31, 2012) (citing *Landis*, 299 U.S. at 255). Here, the crux of ConAgra's argument is that it will be prejudiced by being required to comply with its discovery obligations and mount a defense.[35] This does not justify entering a stay. See, e.g., *Lockyer*, 398 F.3d at 1112 ("[B]eing required to defend a suit, without more, does not constitute a 'clear cause of hardship or inequity' within the meaning of *Landis*"); *American Honda Motor Co., Inc. v. Coast Distribution System, Inc.*, No. C 06-04752 JSW, 2007 WL 672521, *3 (N.D. Cal. Feb. 26, 2007) ("Coast argues that it will suffer great hardship and inconvenience because of duplicative discovery requests from Honda in the ITC proceeding and in this lawsuit. Coast 'must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay . . . will work damage to someone else.' However, the hardship attendant with being forced to defend a lawsuit is irrelevant when considering whether to grant a stay. Because Coast offers no other facts showing hardship, Coast has not met its burden of showing a stay is warranted" (citations omitted)).

Finally, to the extent ConAgra asserts it will be harmed by being required to move forward with "merits discovery, [ ] dispositive motions, and any motion to decertify Plaintiffs' class," any such prejudice may well be limited, as ConAgra contends that either it or plaintiffs will ask that the Ninth Circuit permit an interlocutory appeal of any order certifying classes under Rule 23(f) of the Federal Rules of Civil Procedure. It states that the final certification order "will be the subject of at least one Rule 23(f) appeal application," and asserts that such an application provides additional grounds for staying the action now.[36] If ConAgra or plaintiffs seek leave to appeal the certification order under Rule 23(f) and the Ninth Circuit accepts the appeal, either party can seek a stay from this court or from the

---

[33]Application at 8.

[34]*Id.*

[35]*Id.*

[36]*Id.* at 6 n. 1.

Ninth Circuit at that juncture. See FED.R.CIV.PROC. 23(f) ("An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders"). It is unlikely that ConAgra will have expended "substantial resources" in the interim.

### d.     Weighing the Factors

Because ConAgra has failed to adduce evidence demonstrating that the issues on appeal in *Jones* will directly impact the court's resolution of plaintiffs' amended motion for class certification or require additional discovery and briefing related to class certification, ConAgra's contention that judicial economy "heavily favor[s]" entry of a stay is unpersuasive. Similarly, notwithstanding the fact that the *Jones* case may be fully briefed in February, the unknown duration of the stay ConAgra seeks weighs against granting its application. Finally, because it is unclear that the outcome of the *Jones* appeal will directly affect this case, ConAgra's contention that it will be required to expend resources in connection with discovery and defense does not demonstrate a "clear case of hardship or inequity" such as would support entry of a stay. Thus, the court concludes that each *Landis* factor weighs against entry of a stay at this point.

### III.  CONCLUSION

For the reasons stated, the court denies ConAgra's *ex parte* application to stay the action pending the Ninth Circuit's resolution of the appeal in *Jones v. ConAgra Foods, Inc.*[37]

---

[37]The court denies ConAgra's alternative request that it "stay all aspects of the case other than the [c]ourt's decision on class certification." (Application at 9.) ConAgra contends that the court should enter this type of partial stay because "it is likely that at least one party will seek to appeal, and it is equally likely that the issues presented will be addressed and discussed by the Ninth Circuit in *Jones*, *Brazil*, and/or *Werdebaugh* regardless." (*Id.*) This request is premature, as a final class certification order has not been issued and neither party has sought leave to appeal.