**MILBERG PHILLIPS GROSSMAN LLP**
DAVID E. AZAR (SBN 218319)
11766 Wilshire Boulevard, Suite 500
Los Angeles, California  90025
Telephone: (213) 617-1200
dazar@milberg.com

**TADLER LAW LLP**
ARIANA J. TADLER (*pro hac vice*)
HENRY J. KELSTON (*pro hac vice*)
One Pennsylvania Plaza
New York, New York  10119
Telephone: (212) 946-9453
atadler@tadlerlaw.com
hkelston@tadlerlaw.com

**DiCELLO LEVITT GUTZLER LLC**
ADAM J. LEVITT (*pro hac vice*)
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois  60602
Telephone: (312) 214-7900
alevitt@dicellolevitt.com

*Class Counsel*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| IN RE CONAGRA FOODS, INC. | Case No. CV 11-05379-CJC (AGRx) |
|---|---|
| | MDL No. 2291 |
| | **CLASS ACTION** |

**MEMORANDUM IN SUPPORT OF MOTION FOR**
**FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**
**AND CERTIFICATION OF SETTLEMENT CLASS**

**Dated:**  July 23, 2019

MEMORANDUM IN SUPPORT OF MOTION                                        CV 11-05379-CJC (AGRx)
FOR FINAL APPROVAL OF PROPOSED
CLASS ACTION SETTLEMENT AND
CERTIFICATION OF SETTLEMENT CLASS

# **TABLE OF CONTENTS**

I.   **INTRODUCTION** ............................................................................................... 1

II.  **BACKGROUND** ............................................................................................... 2

   **A.** Procedural History ........................................................................................ 2

   **B.** Key Settlement Terms .................................................................................. 3

III. **THE NOTICE PLAN AND RESPONSE THERETO** ..................................... 5

   **A.** Implementation of the Notice Plan ............................................................. 5

   **B.** Response to the Notice Plan ........................................................................ 7

   **C.** CAFA Response ........................................................................................... 7

IV.  **ARGUMENT** .................................................................................................... 8

   **A.** Certification of the Settlement Class is Appropriate .................................. 8

   **B.** Notice to the Classes was Adequate ........................................................... 9

   **C.** The Settlement is Fair, Reasonable, and Adequate and Merits Final Approval ................ 10

      1.   The Strength of Plaintiffs' Case ............................................................ 11

      2.   The Risk, Expense, Complexity, and Duration of Further Litigation ............................ 12

      3.   The Risk of Maintaining Class Action Status Through Trial ......................... 13

      4.   The Amount Offered in Settlement ........................................................ 14

        a.   The Value of Injunctive Relief ...................................................... 14

        b.   Monetary Compensation to Class Members .................................. 15

      5.   The Extent of Discovery Completed and the Stage of Proceedings .............................. 16

      6.   The Experience and View of Counsel .................................................... 17

      7.   The Presence of a Government Participant ............................................. 17

      8.   The Reaction of the Class Members to the Proposed Settlement ....................... 17

      9.   Lack of Collusion Among the Parties .................................................... 18

   **D.** The Rule 23(e)(2) Considerations Favor Final Approval ......................... 18

MEMORANDUM IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF PROPOSED
CLASS ACTION SETTLEMENT AND
CERTIFICATION OF SETTLEMENT CLASS

ii

CV 11-05379-CJC (AGRx)

1        1.    The Class Representatives and Class Counsel Have Adequately Represented the Class ............................................................................................................... 19

2.    The Settlement was Negotiated at Arm's Length ........................................ 19

3.    The Relief Provided for the Class, Including the Mediated Agreement for Attorneys' Fees, is Adequate ............................................................................................. 19

4.    The Proposal Treats Class Members Equitably ........................................... 20

V.       **CONCLUSION** .......................................................................................... 20

MEMORANDUM IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF PROPOSED
CLASS ACTION SETTLEMENT AND
CERTIFICATION OF SETTLEMENT CLASS

iii

CV 11-05379-CJC (AGRx)

1

## TABLE OF AUTHORITIES

2

**Cases**                                                                                    **Page(s)**

*In re Bluetooth Headset Prods. Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2011) ................................................................... 11

*Briseño v. ConAgra Foods, Inc.,*
    674 F. App'x 654 (9th Cir. 2017) ............................................................... 8

*Briseño v. ConAgra Foods, Inc.,*
    844 F.3d 1121 (9th Cir. 2017) ................................................................... 8

*Chambers v. Whirlpool Corp.,*
    214 F. Supp. 3d 877 (C.D. Cal. 2016) ...................................................... 9

*Churchill Vill., L.L.C. v. Gen. Elec.,*
    361 F.3d 566 (9th Cir. 2004) .............................................................. 9, 19

*In re Conagra Foods, Inc.,*
    90 F. Supp. 3d 919 (C.D. Cal. 2015) ...................................................... 11

*Dennis v. Kellogg Co.,*
    09-CV-1786-L, 2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) ............ 12, 17

*Destefano v. Zynga, Inc.,*
    No. 12-CV-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ......... 9

*G. F. v. Contra Costa Cty.,*
    2015 WL 4606078 (N.D. Cal. July 30, 2015) ........................................ 18

*Gribble v. Cool Trans Inc.,*
    No. CV 06-04863 GAF SHX, 2008 WL 5281665 (C.D. Cal. Dec. 15, 2008) .......... 17

*In re Heritage Bond Litig.,*
    2005 WL 1594403 (C.D. Cal. June 10, 2005) ......................................... 2

*In re Kind LLC "Healthy & All Natural" Litig.,*
    No. 1:16-cv-00959-WHP, 2019 WL 542834 (S.D.N.Y. Feb. 11, 2019) ......... 14, 15

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*
    221 F.R.D. 523 (C.D. Cal. 2004) ...................................................... 13, 17, 18

*In re Online DVD-Rental Antitrust Litig.,*
    779 F.3d 934 (9th Cir. 2015) ................................................................... 9

*Shaffer v. Cont'l Cas. Co.,*
    362 F. App'x 627 (9th Cir. 2010) ............................................................ 9

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) .................................................................. 2

*Wertz v. U.S. Bancorp*,
   No. 13-cv-3130-BAS(AGS), 2017 WL 1807633 (S.D. Cal. May 5, 2017)................................. 17

**Statutes**

Class Action Fairness Act, 28 U.S.C. §1715 ............................................ 5, 17

**Other Authorities**

Fed. R. Civ. P. 23(a) and 23 (b) ................................................................ 8

Fed. R. Civ. P. 23(c) .................................................................................. 8

Fed. R. Civ. P. 23(e)(2) ........................................................................ 2, 18

Rule 23 ....................................................................................................... 9

Rule 23(a) .................................................................................................. 8

Rule 23(b)(3) .......................................................................................... 8, 9

Rule 23(c)(2) .......................................................................................... 9, 10

Rule 23(c)(3) .............................................................................................. 9

Rule 23(e)(2)(C) ...................................................................................... 19

Rule 23(e)(3) ...................................................................................... 19, 20

MEMORANDUM IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF PROPOSED
CLASS ACTION SETTLEMENT AND
CERTIFICATION OF SETTLEMENT CLASS

v

CV 11-05379-CJC (AGRx)

# I.    INTRODUCTION

Plaintiffs and Defendant Conagra ("the Parties") seek final approval of the arm's-length settlement ("Settlement") that they reached after almost eight years of hard-fought litigation.[1]  Not only did Conagra remove the "100% Natural" representation from its Wesson brand cooking oils ("Wesson Oils") during the course of this litigation,[2] but this litigation also achieved Plaintiffs' goal of injunctive relief preventing Conagra's advertising the Wesson Oils as "natural," should Conagra reacquire the Wesson brand, and the Settlement also provides monetary and injunctive relief to purchasers of the Wesson Oils in 11 State Classes (collectively, the "Settlement Class") who submit valid claim forms.[3]

The Parties, with the substantial assistance of Magistrate Judge Douglas F. McCormick as mediator, agreed that the value of the injunctive relief was $27,000,000.  The Settlement also provides the following monetary benefits:  (a) $0.15 for each unit of Wesson Oils purchased by members of the 11 Classes who submit a Valid Claim form, up to 30 units per Household—a per-unit amount that *materially exceeds* the amount that Class members could obtain, on a per-unit basis, had Plaintiffs prevailed at trial; (b) an additional fund of $575,000 to be allocated to members of the New York and Oregon state classes who submit Valid Claim forms, as compensation for the statutory damages available under those states' statutory consumer protection regimes, which Plaintiffs contend apply; and (c) an additional fund of $10,000 to compensate those in all Classes who submit valid proof of purchase receipts for more than 30 purchases.  The combined result ensures that Class members obtain

---

[1] Despite their best efforts, as of the time of this filing, the parties were unable to complete their discussion concerning a small number of minor linguistic issues in the final approval and fee motions.  That discussion continues.  Should the parties resolve their aforementioned minor differences, Class Counsel will advise the Court of that fact.

[2] An achievement that Plaintiffs credit to this litigation, but with which Conagra disagrees (*see* footnote 12, below).

[3] A detailed description of the Settlement is set forth in the Memorandum in Support of Unopposed Motion for Order Directing Notice to Class Members ("Preliminary Approval Memorandum" (Doc. 651)).

1  recovery now, rather than wait years for trial, and provides additional injunctive relief.  Conagra will

2  pay valid claims, attorneys' fees and expenses (separate from and in addition to the benefits provided

3  to Class members), separate payment of administrative costs, and service awards to the Class

4  Representative Plaintiffs.  No monies will revert to Conagra.

5       When reviewing a proposed class action settlement, courts in this Circuit recognize that "[a]

6  presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations

7  between experienced capable counsel after meaningful discovery."  *In re Heritage Bond Litig.*, 2005

8  WL 1594403, at *9 (C.D. Cal. June 10, 2005) (internal quotation and citations omitted); *see also In*

9  *re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ("there is a strong judicial policy that

10  favors settlements, particularly where complex class action litigation is concerned").   As

11  demonstrated below, the proposed Settlement is "fair, reasonable and adequate" under Fed. R. Civ.

12  P. 23(e)(2) and thus merits final approval.  Moreover, the absence of any objections confirms that the

13  Settlement satisfies Rule 23(e)(2).  For those reasons, as well as for those set forth below, the Court

14  should grant final approval to the Settlement and final certification of the Settlement Class.

15  **II.      BACKGROUND**

16       **A.      Procedural History**

17       Plaintiffs in this action, residents of 11 different states, allege that Conagra's "natural" claim

18  on Wesson Oils was false and misleading because the products contain GMOs.  Plaintiffs further

19  allege that Wesson Oils commanded a premium price due to the presence of the "100% Natural"

20  claim on the label and that, consequently, every Class member was induced to pay more for Wesson

21  Oils because of that false and deceptive claim.  Accordingly, Plaintiffs brought this Action on behalf

22  of themselves and other similarly situated consumers seeking to end Conagra's use of the "natural"

23  claim and obtain monetary compensation for the Classes, *i.e.*, the price premium they allegedly paid

24  for Wesson Oils because of the presence of the "100% Natural" claim.  Conagra denies Plaintiffs'

25  allegations and believes that it has a variety of meritorious defenses.

26       The Kelston/Levitt Declaration (Doc. 652), submitted with the Preliminary Approval

27

28

1   Memorandum, provides a detailed description of the history of the litigation, including, among other

2   things, the nature of the claims asserted, creation of the MDL, early proceedings and discovery,

3   discovery class certification proceedings, appeals, and ancillary litigation.   In January 2018, the

4   Parties conducted a day-long mediation session with the Honorable Edward A. Infante (Ret.), under

5   the auspices of JAMS in San Francisco, but they were unable to forge a settlement.   From June through

6   mid-October 2018, the Parties mediated under the auspices of Magistrate Judge Douglas F.

7   McCormick (C.D. Cal.)—this Court's appointed settlement mediator for this litigation—including an

8   in-person settlement conference as well as through extensive telephonic and email communications.

9   With Magistrate Judge McCormick's continued involvement, the parties negotiated monetary

10  compensation to the Classes, the provision of the injunctive relief to Class members and its valuation,

11  the amount of attorneys' fees Class Counsel would seek from the Court without Conagra's objection,

12  and the selection of a Settlement Administrator.   On November 13, 2018, the parties accepted a

13  "mediator's proposal," recommending that aggregate attorneys' fees and expenses for Plaintiffs be

14  set at an amount not to exceed $6,850,000.   The Plaintiffs moved for preliminary approval of the

15  Settlement on March 12, 2019, and the Court issued its order granting preliminary approval on April

16  4, 2019 (Doc. 654).

17      **B.      Key Settlement Terms**

18          The Settlement requires Conagra to pay monetary benefits, including a per-unit amount that

19  is ***more*** than Class members could have obtained, on a per-unit basis, had Plaintiffs prevailed at trial[4]

20  and also certain injunctive relief that the Parties agree is valued at $27,000,000.[5]

---

22  [4] Plaintiffs' expert estimates that this monetary compensation is ***36% higher*** than the approximately
23  10.2 cents per unit that class members would obtain at trial.   Doc. 652 at ¶¶ 18-19.

    [5] Plaintiffs' expert estimates the aggregate value of the labeling and marketing changes to be
24  approximately $30,600,000 if just one additional year passes without the "natural" claims being
    restored to Wesson Oils' labels.   Conagra contends its decision to institute label and marketing
25  changes in July 2017 did not relate in any way to this litigation and therefore does not confirm or
    agree with Plaintiffs' valuation over and above the $27,000,000 agreed value of Injunctive Relief.

26

27

28  MEMORANDUM IN SUPPORT OF MOTION          3          CV 11-05379-CJC (AGRx)
    FOR FINAL APPROVAL OF PROPOSED
    CLASS ACTION SETTLEMENT AND
    CERTIFICATION OF SETTLEMENT CLASS

During the pendency of this litigation, Conagra removed the "natural" claim from the labels of Wesson Oil Products and stopped marketing, advertising, and selling Wesson Oil Products as "natural."  The Parties have agreed that, as part of the Final Approval Order, the Court will issue an injunction ordering that, should Conagra reacquire the Wesson Oil brand:

- Conagra will not advertise, market or sell Wesson Oil Products labeled as "natural" unless the FDA issues guidance or a regulation, or federal legislation is enacted, permitting use of a "natural" claim on a product containing processed oil derived from genetically engineered seed stock.

- Conagra will not advertise, market, or sell Wesson Oil Products as "non-GMO" unless the claim is certified by an independent third-party certification organization.

- The Settlement does not preclude Conagra from making other changes to the advertising and marketing of Wesson Oil Products, provided that those changes do not conflict with the provisions of the Settlement.

S.A., §§8.2.1 through 8.2.4.  Conagra consummated a sale of the Wesson brand to Richardson International, a Canadian company, on February 25, 2019.  As a result of that sale, the Parties have revised the terms of the injunctive relief to clarify that it will apply to Conagra in the event it reacquires the Wesson brand.[6]  Class members will release Conagra and related entities[7] from all claims that have been or could been brought in connection with Conagra's distribution, labeling, packaging, marketing, advertising, and/or sale of the Wesson Oil Products during the applicable Class Periods subject to the express exceptions listed in the Reservation of Claims and Rights (Settlement Agreement Section 7.2), specifically excluded from the release is any claim for bodily injury allegedly suffered in connection with the Wesson Oil Products.

---

[6] As discussed in the Declaration of Larry Kopald, attached hereto as Exhibit A, and as more fully explained below, pursuant to industry custom and related facts, Class Counsel asserts that it is virtually certain that Richardson will not restore the allegedly false "100% Natural" claim to the Wesson Oil packaging, thus confirming the ongoing material value of the label change and concomitant injunctive relief provided by this Settlement to Plaintiffs and the other Settlement Class members.

[7] For purposes of clarity, "related entities" does not include Richardson.

MEMORANDUM IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF PROPOSED
CLASS ACTION SETTLEMENT AND
CERTIFICATION OF SETTLEMENT CLASS

4

CV 11-05379-CJC (AGRx)

The Settlement represents an excellent recovery for the Settlement Class, as confirmed by the fact that to date *only one* Settlement Class member requested to opt-out of the Settlement Class, and *no* Settlement Class member has objected to the Settlement. *See* Declaration of Jennifer M. Keough Regarding Settlement Administration and Notice Plan, attached hereto as Exhibit B ("Keough Decl.") at ¶¶ 18-21.

## III. THE NOTICE PLAN AND RESPONSE THERETO

### A. Implementation of the Notice Plan

After the Court issued its order granting preliminary approval on April 4, 2019 (Doc. 654) and its order directing notice to Class members (Doc. 655), the Parties supervised the provision of notice to potential Settlement Class members by JND Legal Administration ("JND"), pursuant to the Court-approved Notice Plan. The Notice Plan provided for: (1) a settlement website, www.wessonoilsettlement.com, with links to the Claim Form, the Long-Form Notice, relevant pleadings and documents, and frequently-asked questions; (2) a heavy digital effort geographically focused on the Class States that includes the leading digital network (Google Display Network) and the top social platform (Facebook); (3) newspaper notice placements in the *Los Angeles Daily News*; (4) an internet search effort on a top search engine site (Google); (5) a press release distributed to media outlets nationwide; (6) national media through publication in the widely-read consumer magazine, *People*; and (7) a toll-free telephone helpline (833-291-1651) through which Settlement Class members were able to obtain additional information about the Settlement and request printed copies of the Long Form Notice and Claim Form. *See* Declaration of Jennifer M. Keough Regarding Proposed Notice Program (Doc. 652-1) at ¶¶ 12-25, and Preliminary Approval Memorandum (Doc. 651) at 6-7.

The Parties commenced implementation of the Notice Plan on April 12, 2019. On March 21, 2019, in compliance with the Class Action Fairness Act, 28 U.S.C. §1715 ("CAFA"), notice of the Settlement and related materials were sent to the Attorneys General of all U.S. states and territories,

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

5

CV 11-05379-CJC (AGRx)

1   as well as to the Attorney General of the United States.  *See* Keough Decl. at ¶¶ 4-5.[8]

2   JND established the Settlement Website on April 12, 2019.  In addition to the features outlined

3   above (allowing for the submission of online claims), the Settlement Website also contains a "Contact

4   Us" page, through which Class members can send an email with any additional questions to a

5   dedicated email address.  As of July 19, 2019, the Settlement website has tracked 117,216 unique

6   visitors who registered 553,793 page views.  *Id.* at ¶ 16.

7   JND also established the toll-free hotline devoted to this case to further apprise Class members

8   of the rights and options in the Settlement.  This hotline is accessible twenty-four hours a day, seven

9   days a week.  *Id.*  at ¶ 13.  As of July 19, 2019, the toll-free hotline had received 199 calls totaling

10  approximately 476.52 minutes.  *Id.* at ¶ 14.

11  From April 14, 2019 through July 6, 2019, JND caused the Court-approved digital notice

12  campaign to run in order to reach unknown Class members.  *Id.* at ¶ 9.  This campaign included banner

13  display ads in both English and Spanish that linked to the Settlement website, and promoted posts

14  appeared on Facebook and Google Display.  *Id.*  The digital campaign delivered 205,946,126

15  impressions, exceeding the campaign goal by more than 11,225,126 impressions.  *Id.*  JND also

16  caused paid digital ads to appear on the Google search engine results pages when keywords related

17  to the Settlement were searched.  *Id.* at ¶ 10.  Over 27,000 impressions were delivered from April 14,

18  2019 through July 6, 2019.  *Id.*  Additionally, news of the Settlement went "viral" on websites/blogs

19  related to class actions (*e.g.* Top Class Actions) and finances (*e.g.* Common Sense with Money,

20  Hustler Money Blog, The Penny Hoarder, Addicted to Savings), which resulted in at least 30 mentions

21  to date with a potential reach of over 16.7 million.  *Id.* at ¶ 12.  As a result of that coverage, the

22  Settlement received increased claim filing traffic.  *Id.*

23  JND also caused notice of the Settlement to be disseminated through print media.  JND caused

24  a copy of the Publication Notice to be published four times in the *Los Angeles Daily News* on April

25  _____

26  [8] While, to date, none of the CAFA-noticed entities have filed papers attempting to challenge this
27  strong settlement, should any of them ultimately elect to do so, the parties herein will respond as
    appropriate.

28  MEMORANDUM IN SUPPORT OF MOTION           6           CV 11-05379-CJC (AGRx)
    FOR FINAL APPROVAL OF PROPOSED
    CLASS ACTION SETTLEMENT AND
    CERTIFICATION OF SETTLEMENT CLASS

17, 2019, April 24, 2019, May 1, 2019, and May 8, 2019 and also published in the May 20, 2019 issue of *People* magazine that became available to readers on May 10, 2019. *Id.* at ¶ 8. The national edition of *People* magazine has a circulation of 3,425,166 and a readership of over 38 million. *Id.* To further boost awareness of the Settlement, gain online visibility, and gain media pickup, on April 16, 2019, JND caused a national press release to be issued, in English and Spanish, to approximately 11,000 English and 150 Spanish media outlets. *Id.* at ¶ 11. The press release allowed for additional notice exposure through 244 pickups with an estimated potential audience of over 59.8 million. *Id.*

There was no direct notice because Conagra did not have personal information about unnamed Settlement Class members; accordingly, the best notice practicable was achievable via the methods described above. *Id.* at ¶ 7.

**B.       Response to the Notice Plan**

The Notice Plan delivered an approximate 72% measurable reach with an average frequency of 2.5 views-per-person reached. *Id.* at ¶ 17. This 72% reach ***exceeds*** the 70% reach that the Notice Plan was originally projected to target, resulting in additional Notice of the Settlement being provided to Class members. *Id.* The 70.83% reach does not include additional coverage received from the paid press release, the earned media coverage, the Settlement Website, or the toll-free hotline. *Id.*

As of July 19, 2019, JND has received 70,745 claims for 1,937,091 units; only one request for exclusion from the Class; and no objections from any Class members.[9] *Id.* at ¶¶ 18-22. The deadline to submit a Claim Form is August 22, 2019, and the deadline to postmark exclusion requests or file an objection to the Settlement Agreement is August 6, 2019. *Id.* Of the Claim Forms received, 70,554 were submitted through the Settlement website and 191 were submitted by mail. *Id.* at ¶ 22.

**C.       CAFA Response**

As a result of the CAFA notice, representatives from the state Attorneys General offices in Indiana, Texas, and Arizona contacted Class Counsel regarding the Settlement. On July 15, 2019,

---

[9] These claims numbers are prior to de-duplication and other verification/fraud checks to be undertaken by JND.

1  Class Counsel, counsel for Conagra, and representatives from each of those three states' Attorneys

2  General's offices participated in a teleconference, during which counsel for the Parties explained and

3  answered questions about the Settlement.  As discussed above, to date, none of the CAFA-noticed

4  entities have filed papers attempting to challenge this strong settlement.

5  **IV.    ARGUMENT**

6       In deciding whether to grant final approval to a proposed class action settlement, courts first

7  determine whether to certify the settlement class definitively for purposes of settlement under Fed. R.

8  Civ. P. 23(a) and 23 (b), and then whether to approve the settlement under Fed. R. Civ. P. 23(c).

9       **A.    Certification of the Settlement Class is Appropriate**

10       The Court previously certified 11 state-wide litigation classes (California, Colorado, Florida,

11  Illinois, Indiana, Nebraska, New York, Ohio, Oregon, South Dakota, and Texas) to pursue certain

12  claims, finding that Plaintiffs satisfied the numerosity, commonality, typicality, and adequacy

13  requirements of Rule 23(a), as well as the predominance and superiority requirements of Rule

14  23(b)(3).  Doc. 545.  The Ninth Circuit affirmed.  *See Briseño v. ConAgra Foods, Inc.*, 844 F.3d 1121

15  (9th Cir. 2017); *Briseño v. ConAgra Foods, Inc.*, 674 F. App'x 654 (9th Cir. 2017).  And on October

16  10, 2017, the Supreme Court of the United States denied Conagra's petition for writ of *certiorari*.  As

17  part of its April 4, 2019 Order Directing Notice to Class Members (Doc. 655 at 4-5), the Court

18  acknowledged the 11 certified Classes and directed notice of the Settlement to the class members.

19       As discussed in the Court's class certification rulings in this litigation, the requirements of

20  fairness and adequacy have been met with respect to certification of the Settlement Class, because the

21  legal and remedial theories raised by the Plaintiffs are shared with the Settlement Class members,

22  Class Counsel satisfies the adequacy requirement, and no conflicts exist between Plaintiffs and

23  Settlement Class members.  *See* Preliminary Approval Memorandum. (Doc. 651) at 17-22.  Moreover,

24  the Ninth Circuit previously said in this litigation that "the benefits of the class mechanism are best

25  realized in cases like this, where the likely recovery is too small to incentivize individual lawsuits,

26  and the realistic alternative to class litigation will be no adjudication at all."  *Briseño*, 674 F. App'x

27

28  MEMORANDUM IN SUPPORT OF MOTION                    8                    CV 11-05379-CJC (AGRx)
    FOR FINAL APPROVAL OF PROPOSED
    CLASS ACTION SETTLEMENT AND
    CERTIFICATION OF SETTLEMENT CLASS

1   at 657.  The 11 Classes should remain certified for settlement purposes.  *Chambers v. Whirlpool*

2   *Corp.*, 214 F. Supp. 3d 877, 887 (C.D. Cal. 2016) (confirming certification of Rule

3   23(b)(3) class previously approved in an order granting preliminary approval "[b]ecause

4   circumstances have not changed[.]").

5           **B.      Notice to the Classes was Adequate**

6           In determining whether to grant final approval of a proposed settlement, the Court must find

7   that adequate notice was issued to all prospective class members, in accordance with due process

8   concerns and Rule 23.  Notice to class members must "generally describe[] the terms of the settlement

9   in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be

10  heard."  *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v.*

11  *Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)); *accord Shaffer v. Cont'l Cas. Co.*, 362

12  F. App'x 627, 631 (9th Cir. 2010).  Rule 23(c)(2) requires "the best notice that is practicable under

13  the circumstances" and that it inform class members of (i) the nature of the action; (ii) the definition

14  of the class certified; (iii) the class claims, issues or defenses; (iv) the fact that a class member may

15  enter an appearance through an attorney if the class member desires; (v) the fact that the court will

16  exclude from the class any class member who requests exclusion; (vi) the time and manner for

17  requesting exclusion; and (vii) the binding effect of a class judgment under Rule 23(c)(3).  *See* Fed.

18  R. Civ. P. 23(c)(2).  The Court has already determined that the form of the Notice was proper and

19  approved the Long Form Class Notice, the Publication Notice and the Notice Plan.  *See* Order

20  Directing Notice to Class Members (Doc. 655) at 8-9.

21          In determining whether a notice plan, as implemented, is fair, adequate, and appropriate, it is

22  not necessary that every Settlement Class member receive actual notice to meet due process

23  considerations, as long as the notice is "reasonably certain to inform the absent members of the

24  plaintiff class."  *Destefano v. Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946, at *6 (N.D. Cal.

25  Feb. 11, 2016) (quoting *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994)).  "The manner of notice

26  need not be perfect."  *Id.* at *7; *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir.

27

28  MEMORANDUM IN SUPPORT OF MOTION                    9                    CV 11-05379-CJC (AGRx)
    FOR FINAL APPROVAL OF PROPOSED
    CLASS ACTION SETTLEMENT AND
    CERTIFICATION OF SETTLEMENT CLASS

1   2015) ("The notice in this case was not perfect, but the court did not abuse its discretion in approving

2   the notice plan and ultimately approving the settlement.").

3        The Parties implemented the Notice Plan in accordance with the Court-approved terms.  As

4   set forth in Section III, above, the Notice Plan was robust and comprehensive.  Notice of the

5   Settlement was disseminated via, among other efforts, the leading digital network (Google Display

6   Network), the top social platform (Facebook), print media (*People* magazine), and a nationwide press

7   release.  *See* Keough Decl. at ¶¶ 7-11.  There is a case-specific Settlement website,

8   www.wessonoilsettlement.com, which includes links to relevant documents and pleadings, the Claim

9   Form, the Long-Form Class Notice, and frequently-asked questions (including information on how

10  to opt-out, object and appear at the fairness hearing), and a toll-free number that provided information

11  about the Settlement.  *Id.* at ¶¶ 13-15.  The Notice Plan yielded greater reach than that which was

12  projected in the Notice Plan submitted to the Court with the Preliminary Approval motion.  *Id.* at ¶

13  17.  The success of the Notice Plan is highlighted by the 70,745 claims submitted to date, totaling

14  1,937,091 units.[10]

15       As Rule 23(c)(2) requires, the Class Notice informed Class members of the claims alleged in

16  the action, the definition of the certified Settlement Class, the Settlement terms, the scope of the

17  release, and their rights as members of the Settlement Class to opt out of or otherwise object to the

18  Settlement, including Plaintiffs' request for attorney's fees, expenses, and service awards, and their

19  right to request exclusion from the Class.  The Notice Plan fairly apprised Class members of the

20  Settlement and their options in accordance with Rule 23(c)(2) and due process.  Therefore, the Court

21  should find that Notice was given to Settlement Class members by the best means "practicable under

22  the circumstances."  Fed. R. Civ. P. 23(c)(2).

23      **C.**    **The Settlement is Fair, Reasonable, and Adequate and Merits Final Approval**

24       The factors used in this Circuit to review proposed class action settlements are: (1) the strength

25

---

26  [10] Of those, New York Class members have made 8,852 claims for 250,621 units, and Oregon Class

27  members have made 1,620 claims for 43,978 units, which is pertinent to the separate $575,000 fund that the Settlement provides to compensate those Class members for their statutory damages.

28  MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

    10

CV 11-05379-CJC (AGRx)

1  of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3)

2  the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement;

3  (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views

4  of counsel; (7) the presence of a government participant; (8) the reaction of the class members to the

5  proposed settlement; and (9) whether the settlement is a product of collusion among the parties.  *In*

6  *re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill.*,

7  361 F.3d at 575).  Each of the factors weighs in favor of final approval of the settlement.

8          **1.**       **The Strength of Plaintiffs' Case**

9       Plaintiffs believe the merits of their case are strong.  Despite Conagra's denials, Plaintiffs

10  assert there is abundant evidence that the "100% Natural" claim, which appeared on every bottle of

11  Wesson Oil sold during the class period, was material to consumers, that consumers interpreted the

12  claim to mean that the products did not contain GMOs, and that every Class member paid a premium

13  price for Wesson Oils due to the presence of the "100% Natural" claim on the label.  Plaintiffs'

14  evidence is found in two general categories of documents: (i) objective third-party surveys that, as

15  Judge Morrow found, "tend to show that . . . consumers find the '100% Natural' claim material to

16  their purchasing decisions," and which support Plaintiffs' contention that a "natural" claim is

17  understood by consumers to mean that the product does not contain GMOs; and (ii) internal Conagra

18  documents obtained by Plaintiffs in discovery demonstrating that consumers exposed to a "100%

19  Natural" or "Natural" claim on Conagra product labels generally consider the representation a

20  significant factor in their purchasing decisions.[11]

21       Plaintiffs' primary objective in this litigation was achieved when—after this litigation

22  began—Conagra decided to remove the "100% Natural" claim from Wesson labels, and stopped its

23  decades-long practice of marketing Wesson Oils as "natural."  Plaintiffs contend that Conagra's

24  decision was due, at least in part, to this litigation, and is further evidence of the merits of Plaintiffs'

25  claims.  Conagra denies this litigation contributed in any way to its decision to drop the 'Natural'

26

27  [11] *See In re Conagra Foods, Inc.*, 90 F. Supp. 3d 919, 1018 (C.D. Cal. 2015) ("*Conagra II*").

28  MEMORANDUM IN SUPPORT OF MOTION       11        CV 11-05379-CJC (AGRx)
FOR FINAL APPROVAL OF PROPOSED
CLASS ACTION SETTLEMENT AND
CERTIFICATION OF SETTLEMENT CLASS

claim from Wesson Oils.  Due to the timing of Conagra's decision and the parties' agreement to enter mediation immediately after Conagra had exhausted its appeals of Judge Morrow's class certification ruling, Plaintiffs have not had an opportunity to conduct discovery regarding Conagra's decision to implement the label and marketing change, or to seek a ruling that this litigation was a "catalyst" in that decision.  Nonetheless, the injunctive relief agreed to as part of this settlement assures that, should Conagra reacquire the Wesson Oil brand (which it divested in February 2019), Conagra will not label or market Wesson Oils as "natural," unless legislation or regulation authorizing use of a "natural" claim on a product containing processed oil from genetically engineered seed stock is implemented.

Regardless of the parties' evaluations of the strength of Plaintiffs' case, this Settlement includes monetary relief for Class members that is approximately ***36% higher*** than they could have obtained at trial.  Doc. 652 at ¶¶ 18-19.

The Court previously found:

> Litigation had reached a stage where the parties had a clear view of the strengths and weaknesses of their positions to reach a fair and reasonable settlement.  In particular, Plaintiffs would have difficulty proving that all class members purchased Wesson Oils during the relevant time period and that they paid a premium because Wesson Oils were labeled and advertised as '100% Natural.'  Given these risks, the amount and terms of the settlement are reasonable.

Order Granting Preliminary Approval of Class Action Settlement (Doc. 654) at 5.  Based on the foregoing considerations, "it is plainly reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication."  *Dennis v. Kellogg Co.*, 09-CV-1786-L (WMc), 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013).

## 2.    The Risk, Expense, Complexity, and Duration of Further Litigation

While Plaintiffs believe their case is a strong one, the complexity and risk of further litigation are substantial, and it is unclear whether there would be any recovery at all for the Class members in the 11 certified state classes.  Should litigation continue, more expense and complexity would result, because fact discovery would need to be reopened for Plaintiffs to obtain relevant discovery regarding

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

12

CV 11-05379-CJC (AGRx)

1  Conagra's label and marketing change in 2017, for Conagra to update past document productions, and

2  for the parties to resolve issues surrounding Conagra's productions of documents just preceding the

3  close of fact discovery in 2015.  Had Plaintiffs proceeded to trial, Conagra would have mounted a

4  vigorous defense to Plaintiffs' claims that the challenged claims were misleading, likely would have

5  moved to decertify the state-wide classes, and would have continued to challenge Plaintiffs' price

6  premium damages methodology.

7  Additional risks of continuing this litigation include further motion practice and a possible

8  adverse outcome at trial.  Indeed, the Court previously found, "[t]he Settlement Agreement also

9  presents a fair compromise in light of the risks and expense of continued litigation," including the

10  risk of possible motions to decertify, possible *Daubert* motions, motions for summary judgment, and

11  potentially trial.  Order Granting Preliminary Approval of Class Action Settlement (Doc. 654) at 4-5.

12  The substantial relief obtained through this Settlement, balanced against the length, expense, and

13  uncertainty of further litigation, weighs in favor of approval.  *See Nat'l Rural Telecomms. Coop. v.*

14  *DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("unless the settlement is clearly inadequate,

15  its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.")

16  (quoting 3 Newberg on Class Actions § 11:50 (4th ed. 2012)).

17  **3.      The Risk of Maintaining Class Action Status Through Trial**

18  Although the Court has previously certified 11 separate state law classes, the Ninth Circuit

19  Court of Appeals affirmed that decision, and the United States Supreme Court declined to review the

20  Ninth Circuit's affirmance, Plaintiffs anticipate that Conagra would likely seek to decertify the

21  Classes based on changes in both the factual and legal landscapes.  Indeed, Conagra believes that its

22  legal position in this litigation would be strengthened, because although the National Bioengineered

23  Food Disclosure Law requires affirmative labeling of GMO foods, the FDA standard issued under

24  that law excludes highly refined oils.

25

26

27

28  MEMORANDUM IN SUPPORT OF MOTION                    13                    CV 11-05379-CJC (AGRx)
    FOR FINAL APPROVAL OF PROPOSED
    CLASS ACTION SETTLEMENT AND
    CERTIFICATION OF SETTLEMENT CLASS

4. **The Amount Offered in Settlement**

a. **The Value of Injunctive Relief**

Approximately six years after commencement of this litigation, Conagra removed the "100% Natural" claim from all Wesson labels, and stopped advertising and marketing Wesson Oils as "natural"; the changes were completed by July 2017.  The injunctive relief agreed to in this Settlement guarantees that, should Conagra reacquire the Wesson Oil brand it divested on February 25, 2019, it will not revert to labeling, advertising, or marketing Wesson Oils as "natural" unless the FDA issues guidance or a regulation, or federal legislation is enacted, permitting use of a "natural" claim on a product containing processed oil derived from genetically engineered seed stock.  There is no reason to believe that guidance, regulation, or legislation permitting the use of a "natural" claim on Wesson Oils is imminent.[12]

Plaintiffs' damages expert Colin Weir has calculated that Wesson purchasers in the 11 class states paid approximately $11,540,000 more *per year* for the products due to the presence of the "100% Natural" claim on the labels. *See* Declaration of Colin B. Weir (Doc. 652-4) at ¶ 24.  Thus, according to Plaintiffs' expert's calculations, the value of the labeling change from July 1, 2017 to February 25, 2019, when Conagra sold the Wesson brand, is approximately $19,080,000.  According to the Weir estimate, if just one additional year passes without "natural" claims being restored to Wesson Oils labels, the benefits to class members will reach $30,620,520.[13]  This Court has already

---

[12] In another case involving a claim that a product containing GMOs was deceptively marketed as "natural," a court recently observed that although the FDA has stated that it "plans to publicly communicate next steps regarding Agency policies related to 'natural.'" in 2019, "this hardly suggests that rulemaking is imminent," because "such agency action typically takes between two and five years to complete." *In re Kind LLC "Healthy & All Natural" Litig.*, No. 1:16-cv-00959-WHP, 2019 WL 542834, at *2 (S.D.N.Y. Feb. 11, 2019).  Conagra denies that this litigation contributed to its decision to drop the "natural" claim from Wesson Oil in 2017 and further disagrees with Mr. Weir's calculation of the value of this label change.

[13] This calculation diverges from the Parties' mediated agreement that the value of the forward-looking injunctive relief was $27,000,000.  And, to be clear, in light of the fact that almost half a year has elapsed since Richardson's acquisition of the Wesson Oil brand and no reversion to the allegedly false "100% Natural" representation has found its way back onto the Wesson Oil product packaging, it appears that Mr. Weir's minimum one year valuation of the label change will be readily met.

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

14

CV 11-05379-CJC (AGRx)

1   adopted this point, recognizing that "[t]he conservative estimate of the total value of the labeling and

2   marketing changes is $30,600,000."   Order Granting Preliminary Approval of Class Action

3   Settlement (Doc. 654) at 6, n.3.

4        Notably, in the absence of Conagra reacquiring the Wesson Oil brand, Plaintiffs contend it is

5   highly unlikely that Richardson International will resume labeling Wesson products as "natural."

6   Plaintiffs' marketing expert, Larry Kopald (President of Kopald/Stranger), has 25 years of first-hand,

7   front-line knowledge and experience in the field of consumer goods marketing a marketing

8   consultancy.   In his declaration, attached hereto as Exhibit A ("Kopald Decl."), he opines that (1)

9   barring significant reformulation of the Wesson Oils, Richardson will not consider reverting to the

10  use of a "100% Natural" claim on the products; and (2) the history of this litigation and the terms of

11  the settlement, including the injunction prohibiting Conagra's use of a "100% Natural" claim on

12  Wesson Oils in the event it reacquires the brand, and the  negative impact it would create on the brand

13  trust for the Wesson brand, are all factors that would strongly discourage Richardson (or any other

14  company) from resuming the use of  the "100%  Natural" claim on Wesson Oils.  Kopald Decl. at

15  Section V.   Moreover, Richardson is unlikely to resume labeling Wesson products as "natural"

16  without affirmative legislative or regulatory authorization in the United States.   Therefore, the

17  Settlement provides injunctive relief valued at tens of millions of dollars, guarantees that Conagra

18  will not revert to the challenged "natural" claims absent regulatory or legislative permission, and

19  makes it unlikely that Richardson will revert to using the challenged "natural" claims, thereby, in

20  Plaintiffs' view, preserving and perpetuating the value of the label change and the remainder of the

21  Settlement's injunctive relief well into the future.[14]

### b.    Monetary Compensation to Class Members

23       The Settlement provides that Class members can obtain compensation of $0.15 for each unit

24  of Wesson Oils they purchased during the relevant Class Period, up to a maximum of 30 units per

25

26  [14] The Court also previously recognized that "it is highly unlikely that Richardson International will
    resume labeling the products as 'natural' without affirmative legislative or regulatory authorization."
27  *Id*.

1   Household, with no proofs of purchase required.  There is no limit on the number of units for which

2   Class members can be compensated if they submit documentary proofs of purchase.

3   While $0.15 per unit is a modest amount when considered in isolation, *it is 36% more than*

4   *the best-case result at trial*, which would have yielded maximum damages of approximately 10.2

5   cents per unit.  Declaration of Colin B. Weir (Doc. 652-4) at ¶ 35.  This figure takes into account

6   Judge Morrow's ruling that the appropriate measure of damages in the case was not the price premium

7   paid by Class members due to the presence of the "100% Natural" claim, as Plaintiffs' claimed, but

8   only the portion of that premium attributable to consumers' belief that "100% Natural" meant that the

9   products were GMO-free.  Mr. Weir's conjoint survey indicated that approximately 27% of the value

10   of the "natural" claim on Wesson Oils was due to its non-GMO meaning.  *Id*. at ¶ 34.

11   In addition to the per-unit compensation available to all Class members, the Settlement

12   includes a $575,000 fund to be allocated solely among New York and Oregon Class members, which

13   is intended to compensate them for the statutory damages provided for in the consumer protection

14   laws of those states and sought by Plaintiffs.  After extended arm's-length negotiations mediated by

15   Magistrate Judge McCormick, the parties agreed that a fund of $575,000 is fair, reasonable, and

16   adequate to compensate New York and Oregon Class members for the statutory damages to which

17   Plaintiffs contend consumers in those states could be entitled if they were to prevail at trial.  When

18   granting preliminary approval, the Court said that the classes' monetary recovery "is a fair result" in

19   light of the significant hurdles to recovery if litigation were to continue and that the recovery is within

20   the range of reasonableness when compared to settlements in similar cases.   Order Granting

21   Preliminary Approval of Class Action Settlement (Doc. 654) at 5-6.  There is no reason for the Court

22   to change its previous conclusion.

23   **5.     The Extent of Discovery Completed and the Stage of Proceedings**

24   This factor favors final approval, because the discovery obtained and stage of proceedings

25   allowed counsel on both sides to make well-informed judgments about the merits of the case and the

26   risks of proceeding to trial.  Indeed, the Court already found as much.  *See id*. at 4-5 ("The parties,

27

28   MEMORANDUM IN SUPPORT OF MOTION          16          CV 11-05379-CJC (AGRx)
FOR FINAL APPROVAL OF PROPOSED
CLASS ACTION SETTLEMENT AND
CERTIFICATION OF SETTLEMENT CLASS

1   after substantial discovery, substantive briefing, and the assistance of two mediators, were able to

2   realistically value Defendants' liability and assess the risks of moving forward . . .").

3              **6.    The Experience and View of Counsel**

4        Counsel for both sides have extensive experience in class action litigation and are thoroughly

5   familiar with the factual and legal issues involved.  "Great weight is accorded to the recommendation

6   of counsel, who are most closely acquainted with the facts of the underlying litigation."  *See Gribble*

7   *v. Cool Trans Inc.*, No. CV 06-04863 GAF SHX, 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15, 2008)

8   (*Nat'l Rural Telecommc'ns Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)); *see also*

9   *Wertz v. U.S. Bancorp*, No. 13-cv-3130-BAS(AGS), 2017 WL 1807633, at *6 (S.D. Cal. May 5,

10  2017) ("Generally, the recommendations of plaintiffs' counsel should be given a presumption of

11  reasonableness.") (internal quotation omitted).  Class Counsel have evaluated the inherent risks and

12  expenses associated with continuing this litigation and believe that the provision of the injunctive and

13  monetary relief outlined above adequately compensates Class members for the harm they allegedly

14  suffered.

15             **7.    The Presence of a Government Participant**

16       The United States Attorney General and Attorneys General of each of the states were notified

17  pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, and given an opportunity to raise any

18  objections or concerns they may have.  As discussed above in Section III(C), Class Counsel and

19  counsel for Conagra have participated in a teleconference with representatives from the state

20  Attorneys General offices in Indiana, Texas, and Arizona in order to describe and answer questions

21  about the Settlement.  Again, and as also discussed above, to date, none of the CAFA-noticed entities

22  have filed papers attempting to challenge this strong settlement.  Should any of them ultimately elect

23  to do so, however, the parties herein will respond appropriately.

24             **8.    The Reaction of the Class Members to the Proposed Settlement**

25       As discussed above in Section III(A)-(B), Class members' response to the Settlement has been

26  overwhelmingly positive.  As of July 19, 2019, JND has received 70,745 claims submitted to date

27

28  MEMORANDUM IN SUPPORT OF MOTION          17          CV 11-05379-CJC (AGRx)
    FOR FINAL APPROVAL OF PROPOSED
    CLASS ACTION SETTLEMENT AND
    CERTIFICATION OF SETTLEMENT CLASS

(totaling 1,937,091 units), only one request for exclusion, and no objections from any Class members. This factor weighs in favor of final approval.  "[T]he absence of a large number of objections to a proposed class action settlement raises  a  strong  presumption  that  the  terms  of  a proposed class settlement action are favorable to the class members."  *Nat'l Rural Telecommc'ns*, 221 F.R.D. at 529.

### 9.    Lack of Collusion Among the Parties

Where a settlement is the product of arm's-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable.  *See* 4 William B. Rubenstein, Alba Conte & Herbert Newberg, Newberg on Class Actions § 13.45 (5th ed. 2014); *see also G. F. v. Contra Costa Cty.*, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive).

The Settlement here is the product of extensive arm's-length and adversarial settlement discussions, including two separate mediations.  The Parties did not commence discussion of attorneys' fees until agreement on all substantive portions of the class resolution had been reached. Agreement on the payment of attorneys' fees was resolved only by both parties accepting a "mediator's proposal" offered by Magistrate Judge McCormick.  The Court already found that "[t]here is no evidence of collusion during the parties' settlement negotiations."  Order Granting Preliminary Approval of Class Action Settlement (Doc. 654) at 4.

### D.    The Rule 23(e)(2) Considerations Favor Final Approval

Under the recently-amended Rule 23(e)(2), a court considering whether to grant approval of a class settlement must also consider whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposal treats class members equitably relative to each other.  These factors overlap substantially with the *Churchill* factors discussed above, and likewise support granting final approval of the Settlement.

### 1.    The Class Representatives and Class Counsel Have Adequately Represented the Class

Class counsel vigorously prosecuted this case for more than eight years, successfully obtaining certification of 11 state-wide classes, and successfully negotiating a settlement that provides both monetary and injunctive relief, including *more* monetary relief than could have been obtained at trial.  The Class Representatives each committed substantial time to this case, and each reviewed and approved of the proposed Settlement upon finding it was fair, reasonable, and adequate for the Classes.  The extensive efforts of Class Counsel and Class Representatives, the Court's recognition of their adequacy in granting class certification, together with the value of the Settlement achieved, evidence that they have and continue to adequately represent the interests of the Settlement Class.

### 2.    The Settlement was Negotiated at Arm's Length

The Settlement was reached after extensive mediation efforts before two neutrals.  The Court already found that "[t]here is no evidence of collusion during the parties' settlement negotiations." Order Granting Preliminary Approval of Class Action Settlement (Doc. 654) at 4.

### 3.    The Relief Provided for the Class, Including the Mediated Agreement for Attorneys' Fees, is Adequate

Rule 23(e)(2)(C) directs the Court to consider whether the relief provided for the class is adequate, taking into account:

> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3).

*See* Section IV(C)(2)-(4), above, for the costs, risks, and delay of trial and appeal.  *See* Section III(A)-(B), above, for discussion of the effectiveness of the proposed notice and claims process.  Apart from the Settlement Agreement, there are no agreements requiring disclosure under Rule 23(e)(3).

The mediated agreement provides that Conagra will pay attorneys' fees and costs—separate

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

19

CV 11-05379-CJC (AGRx)

1   from and in addition to the benefits provided to Class members—awarded by the Court in a total

2   amount not to exceed $6,850,000—which, as explained in Plaintiffs' contemporaneously filed Motion

3   for Award of Attorneys' Fees, Expenses, and Representative Plaintiffs' Service Awards, is actually

4   approximately 50% of the fees that Plaintiffs' counsel incurred in litigating this action to its

5   conclusion.  Conagra's agreement not to contest a request for an award of fees and expenses up to the

6   maximum amount was agreed to by the Parties after extensive negotiation and with the assistance of

7   Magistrate Judge McCormick as mediator and only after the Parties had reached agreement on all

8   substantive terms pertaining to class-wide relief.  The Court already found reasonable the request for

9   attorneys' fees and incentive awards.  Order Granting Preliminary Approval of Class Action

10  Settlement (Doc. 654) at 6-7.  Nonetheless, for the Court's consideration and approval, Plaintiffs are

11  filing concurrently herewith their Motion for Award of Attorneys' Fees, Expenses, and

12  Representative Plaintiffs' Service Awards.

13                    **4.       The Proposal Treats Class Members Equitably**

14          The Settlement does not grant preferential treatment to any segment of the Class. All Class

15  members may claim monetary benefits on a per-unit basis, and all Class members stand to benefit

16  from the injunctive relief.  The Settlement provides compensation to New York and Oregon Class

17  members due to the statutory damage provisions in their state consumer protection statutes that

18  Plaintiffs contend they may recover, in an amount agreed after extensive arm's length negotiations

19  and with the assistance of Magistrate Judge McCormick as mediator.  The service awards requested

20  for the Class Representatives are commonly awarded in class actions, are well-justified under the

21  circumstances here, and are appropriate in amount given precedent and the Class Representatives'

22  commitment and effort throughout the course of this litigation.

23  **V.      CONCLUSION**

24          For the foregoing reasons, the Parties respectfully request that the Court grant this Motion and

25  enter the Proposed Order (Doc. 652-1 at 97-111).

26

27

28  MEMORANDUM IN SUPPORT OF MOTION                    20               CV 11-05379-CJC (AGRx)
    FOR FINAL APPROVAL OF PROPOSED
    CLASS ACTION SETTLEMENT AND
    CERTIFICATION OF SETTLEMENT CLASS

1

2

3   Dated: July 23, 2019

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

*/s/ David E. Azar*
David E. Azar (SBN 218319)
dazar@milberg.com
**MILBERG PHILLIPS GROSSMAN LLP**
11766 Wilshire Boulevard, Suite 500
Los Angeles, California  90025
Telephone: (213) 617-1200

Ariana J. Tadler (*pro hac vice*)
atadler@tadlerlaw.com
Henry J. Kelston (*pro hac vice*)
hkelston@tadlerlaw.com
**TADLER LAW LLP**
One Pennsylvania Plaza
New York, New York  10119
Telephone: (212) 946-9453

Adam J. Levitt (*pro hac vice*)
alevitt@dicellolevitt.com
**DiCELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois  60602
Telephone: (312) 214-7900

*Class Counsel*

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on July 23, 2019, he caused this document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of filing to registered counsel of record for each party.

Dated:  July 23, 2019

                                        */s/ David E. Azar*
                                        David E. Azar (SBN 218319)

MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

22

CV 11-05379-CJC (AGRx)