# Exhibit A

***Briseño v. Conagra Foods, Inc.*,**
**No. CV 11-05379-CJC (AGRx) (C.D. Cal.)**

**Response and Opposition to Objector's Motion for Sanctions**

1       **UNITED STATES DISTRICT COURT**

2     **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

3       **HONORABLE CORMAC J. CARNEY, U.S. DISTRICT JUDGE**

4
ROBERT BRISENO,                          )
5                                          )
                        Plaintiff,        )  **Certified Transcript**
6                                          )
            vs.                            )  Case No.
7                                          )  2:11-cv-05379-CJC-AGR
CONAGRA FOODS, INC.,                      )
8                                          )
                        Defendant.        )
9  _____)

10

11

12

13            REPORTER'S TRANSCRIPT OF PROCEEDINGS
                        MOTION HEARING
                 MONDAY, OCTOBER 7, 2019
14                       1:42 P.M.
                 LOS ANGELES, CALIFORNIA
15

16

17

18

19

20

21

22  _____

23            **DEBBIE HINO-SPAAN, CSR 7953, CRR**
               FEDERAL OFFICIAL COURT REPORTER
24            350 WEST 1ST STREET, SUITE 4455
                LOS ANGELES, CA 90012-4565
25                 dhinospaan@yahoo.com

**UNITED STATES DISTRICT COURT**

```
 1                    APPEARANCES OF COUNSEL:

 2

 3    FOR THE PLAINTIFF:

 4            TADLER LAW LLP
              BY:  ARIANA J. TADLER, ATTORNEY AT LAW
 5            One Pennsylvania Plaza
              New York, New York 10119
 6            212-946-9300

 7            TADLER LAW LLP
              BY:  AJ DE BARTOLOMEO, ATTORNEY AT LAW
 8            PO Box 475847
              San Francisco, California 94123
 9            212-631-8689

10            DICELLO LEVITT GUTZLER LLC
              BY:  ADAM J. LEVITT, ESQ.
11                 AMY E. KELLER, ATTORNEY AT LAW
              10 North Dearborn Street
12            11th Floor
              Chicago, Illinois 60602
13            312-214-7900

14            MILBERG PHILLIPS GROSSMAN LLP
              BY:  DAVID E. AZAR, ESQ.
15            11766 Wilshire Boulevard
              Suite 500
16            Los Angeles, California 90025
              213-617-1200
17
      FOR THE DEFENDANT:
18
              ALSTON & BIRD LLP
19            BY:  ANGELA M. SPIVEY, ATTORNEY AT LAW
              1201 West Peachtree Street
20            Suite 4900
              Atlanta, Georgia 30309
21            404-881-7857

22    FOR THE OBJECTOR M. TODD HENDERSON:

23            HAMILTON LINCOLN LAW INSTITUTE
              BY:  THEODORE H. FRANK, ESQ.
24            1629 K Street NW Suite 300
              Washington, DC 20006
25            703-203-3848
```

**UNITED STATES DISTRICT COURT**

|      |                                                                  |
| ---- | ---------------------------------------------------------------- |
| 1    | **LOS ANGELES, CALIFORNIA; MONDAY, OCTOBER 7, 2019**             |
| 2    | **1:42 P.M.**                                                    |
| 3    | **-  -  -**                                                      |
| 4    | THE COURTROOM DEPUTY:  Calling Item Number 3,                    |
| 01:42PM 5 | CV 11-05379-CJC, *Robert Briseno vs. Conagra Foods, Inc.*   |
| 6    | Counsel, please state your appearances.                          |
| 7    | MS. TADLER:  Ariana Tadler of Tadler Law on behalf              |
| 8    | of the plaintiffs.                                               |
| 9    | THE COURT:  Hello, Ms. Tadler.                                   |
| 01:42PM 10 | MR. LEVITT:  Good afternoon, Your Honor.  Adam            |
| 11   | Levitt on plaintiffs' behalf.                                    |
| 12   | THE COURT:  Hello, Mr. Levitt.                                   |
| 13   | MS. KELLER:  Good afternoon, Your Honor.  Amy Keller           |
| 14   | also on behalf of plaintiffs.                                    |
| 01:42PM 15 | THE COURT:  Hello, ma'am.                                 |
| 16   | MR. AZAR:  Good afternoon.  David Azar on behalf of            |
| 17   | the plaintiffs.                                                  |
| 18   | THE COURT:  Hello, sir.                                          |
| 19   | MS. DE BARTOLOMEO:  Good afternoon, Your Honor.               |
| 01:42PM 20 | A.J. De Bartolomeo on behalf of the plaintiffs.          |
| 21   | THE COURT:  Hello, ma'am.                                        |
| 22   | MS. SPIVEY:  Angela Spivey with Alston & Bird on              |
| 23   | behalf of Conagra Brands.                                        |
| 24   | THE COURT:  Hello, ma'am.                                        |
| 01:43PM 25 | MS. SPIVEY:  Hello.                                       |

1           MR. FRANK:  Theodore Frank on behalf of the objector

2   Todd Henderson.

3           THE COURT:  Hello, Mr. Frank.

4           All right.  Well, I went through all the parties'

01:43PM 5   briefings, and hopefully you received the tentative order.  So

6   I don't know if there's anything the plaintiffs' counsel or the

7   defendant's counsel want to say before we turn it over to

8   Mr. Frank, because I assume he disagrees with the tentative.

9           MR. LEVITT:  Good afternoon, Your Honor.  Adam

01:43PM 10  Levitt, once again, on plaintiffs' behalf.  As we had this

11  conversation -- or last time here, the first time I was in

12  front of the Court -- I occasionally stutter when I speak.

13  It's not a problem for me; it shouldn't be for you.

14          THE COURT:  It is not.

01:43PM 15          MR. LEVITT:  If anything I say isn't entirely clear,

16  please let me know, and I'll go right back over it.

17          THE COURT:  I'll do that.

18          MR. LEVITT:  So having just received the tentative

19  and reviewed it, as I learned as a very young lawyer, when the

01:44PM 20  wind's at your back, I shouldn't say a whole lot.  So I won't

21  at this point.

22          I simply wanted to say, as Your Honor is aware --

23  and Your Honor came to this about 80 percent of the way in --

24  it's been a long road.  We filed this case back in 2011.  I was

01:44PM 25  saying to my colleagues last night, when we filed it, my son

1    was less than a year old, and now he's almost five feet tall,

2    which is crazy by itself.

3             But that being said, as Your Honor saw from our

4    papers and just a review of the record in this case, this was a

01:44PM  5    fight for eight years.  We changed the law on ascertainability

6    in the Ninth Circuit.  We fought on multiple rounds of motions

7    to dismiss four separate motions to preempt or otherwise stay

8    our case on primary jurisdiction grounds.  We prevailed over

9    all of them.

01:45PM 10             We went through two separate rounds of class cert.

11   And after everything -- and then after a court-appointed

12   mediator in -- with the expert help of Magistrate

13   Judge McCormick, we reached a settlement for the proposed

14   class -- or actually the certified classes that gave them 136

01:45PM 15   percent of what they could have gotten at trial for their

16   monetary damages.  We set up a separate fund for a couple of

17   states that had prospective statutory damage claims.  And for

18   all of that, after that, we ultimately -- once we got all the

19   relief we could get for the -- for our classes, a larger amount

01:45PM 20   than we could have gotten at trial, we ultimately accepted a

21   mediator's recommendation, after multiple rounds of hard-fought

22   mediation and separate conversations afterwards, of about 50

23   percent of our fees.

24             And unlike lots of other cases where some

01:46PM 25   plaintiffs' lawyers -- nobody here settles cases early

1    after -- without fighting.  And I'm sure we'll hear about that

2    in a little bit.  We fought this case every step of the way.

3    We got 11 statewide classes certified in a somewhat hostile

4    climate for these kinds of cases and class certificates.  So we

01:46PM 5    won at every stage of this case.

6              And then, after all that, the reward we get for that

7    is having to accept a fee of about half of what we actually put

8    into this case.  But the reason we did that is that, once we

9    got as much as we could ever get for the class members, at the

01:47PM 10   end of the day, there was nowhere else to go.  We had to accept

11   a fee because we were done.  We did our job.  There wasn't

12   anything more we could get.

13             So rather than put the interest of the class members

14   at risk and risk getting a lower amount at trial -- and as

01:47PM 15   Your Honor points out in the tentative, there are risks in

16   every case.  And as Your Honor pointed out a number of times,

17   there were lots of risks here -- rather than roll the dice on

18   that and put the interest of the class at risk, which we would

19   never do, it was time to call it a day, accept the mediator's

01:47PM 20   recommendation to settle this case.

21             So as a result of all of that, I'm going to reserve

22   any time that I have to respond to anything that Mr. Frank may

23   say about the settlement.

24             And one thing -- one question I had for you in the

01:48PM 25   tentative on page 6 and page 13 of the tentative, you referred

1    to a management problem.  I'm going to guess that you meant a

2    manageability problem under Rule 23, but I don't want to assume

3    anything.  So if I could ask Your Honor if that's what

4    Your Honor meant or if there's another sort of management

01:48PM 5    problem that Your Honor was thinking was happening in this

6    case.

7            THE COURT:  I will try to be as specific as I can.

8    And then if you want further clarification, please do so.

9            When I was listening to your argument -- obviously,

01:48PM 10   if you look at my order, I agree with everything you said.  But

11   I would highlight two factors about this settlement.  I thought

12   the plaintiffs' counsel did a great job.  And I say that

13   because I looked at this case -- although I view the principle

14   of advertising being accurate and marketing being accurate as

01:49PM 15   very important, I just looked at this case -- and I think much

16   differently than Judge Morrow did because I'm not so sure I

17   would have certified any class.  I think you had significant

18   problems with proving causation and damages.

19            Now, with respect to damages, as long as your

01:49PM 20   formula applies to everybody, that shouldn't be grounds to

21   decertify a class.  But it's really wrapped into causation.

22   How are you going to prove at this point people bought an item

23   based on a representation that was made years ago, you know, by

24   picking a product off a shelf?  I just think it's very, very

01:50PM 25   difficult.

1            To your point specifically, or your question,

2    "management" is exactly what is the Rule 23.  As a trial judge,

3    you know, I'm not a great constitutional scholar or academic.

4    That's not my approach.  I look at things, how am I going to

01:50PM  5    put this case on trial?  What makes sense?  And at the same

6    time, give due process to the defense.  Defense has to be able

7    to challenge causation that all these individuals actually

8    bought the product based on the representation that it was 100

9    percent natural.  They've got to do it consumer by consumer.

01:50PM 10            And I didn't -- although, again, I think you got to

11    have your advertising being accurate for the consumers -- and

12    that's where you expect your federal government and your state

13    governments to be zealous in protecting the consumers.

14            From a private civil litigation, I wouldn't have

01:51PM 15    taken on this case if I were you because it had so many

16    problems.  And then if you look at you had to litigate it for

17    eight years, and then the result is that the defendants

18    reasonably changed their advertising, and then that was in

19    connection with, I know, a corporate transaction -- I get that.

01:51PM 20    But you still achieved them taking that advertising down.  And

21    then you got people who are going to get some money.

22            Whereas, if I was handling this case, and I -- I

23    think most of you were here.  I said, "We're going to have to

24    tee this up for dispositive motions, and we're going to have to

01:51PM 25    tee it up for, maybe, decertification, or I'm going to start

off with a California class.  I'm not going to be litigating in
one trial 13 separate classes."

You know, that made sense for purposes of, I guess,
settlement, but it did not make sense for purposes of putting
on a trial.  And I just don't have the resources to have 13
separate trials.  I mean, you'd shut me down from all the other
important cases that I have.  So I'm trying to give you a
little more flavor to my comment about management.

Management, from my standpoint, I just -- I don't
see how so many classes were certified.  And then even with
respect to the California class, I think the plaintiffs had
significant problems on proving causation and damages.  And you
got -- part of the settlement, you got that, and you had to
fight tough for eight years.

MR. LEVITT:  A couple of things:  Number one, I
don't think I could have made a better argument in support of
our settlement than Your Honor just made.  Number two, with
respect -- just a couple of things and that's it.  With respect
to -- and since we're at the end of the road, there's no reason
to get into a back-and-forth on it.  But in terms of having to
go to each class member and ask them, that wasn't what our case
was about.  Our case was about a price premium as a result of
the false claim on each label.

So as a result of that, every class member overpaid.
Whether or not they relied on it, they overpaid as a result.

1   That would have ultimately been something that we would have

2   ultimately put to a jury at trial had we gotten there.  But

3   it's a moot point now.  I just wanted to clarify that it was

4   not going to be a person by person "Did you rely on this."

01:54PM   5   THE COURT:  Oh, I know that's not -- that wasn't

6   your intent.  But I got to believe the defense were going to

7   say there's a big causation problem here.  If this went to

8   trial on the California class, there's a big causation that --

9   what I guess I'm -- the issue of reliance is did any of these

01:54PM 10   people truly rely on this representation when they purchased

11   this product?  I can tell you, I purchase this product all the

12   time, and I remember seeing the "100 percent natural oil."  I

13   used it to make waffles with the Bisquick bake, and I used it

14   for other things.  I won't bore you.  I used it all the time.

01:54PM 15   But how are you going to prove that that

16   representation was material and then that people did it?  And

17   it sounds like you have in your mind the pitch you were going

18   to make to me, but I'm here to tell you, as the trial judge, it

19   was going to be an uphill climb is what I'm saying.  And my

01:55PM 20   recollection is both plaintiffs and the defense said, "Let's

21   see if we can settle this case before you start to gut our

22   case."  That's my words, not your words.  But I encouraged you

23   to settle this because, you know, we're going to be doing a lot

24   of work.  And at the end of the day, I'm not sure you're going

01:55PM 25   to get anything.

1      MR. LEVITT:  I understand.  And as a result of

2  everything that we had accomplished in the case and with

3  Your Honor's assignment of Magistrate McCormick as our

4  mediator, we worked as hard on our settlement as we did for the

01:55PM 5  eight years of our case.  And we got it resolved in a way that

6  makes every class member who put in a claim more than whole.

7  So we think it's a strong settlement.  We think it's a positive

8  settlement.

9      We think that Your Honor's tentative frames out some

01:56PM 10  of the risks, frames out some of the efforts we went through in

11  this case.  And so as a result of that, we appreciate the

12  tentative.  And we hope that, ultimately, when we walk out of

13  here or shortly thereafter, the tentative becomes a final and

14  we all go on our way.

01:56PM 15      THE COURT:  Good enough.

16      MR. LEVITT:  So thank you.

17      THE COURT:  Is there anything else any of the other

18  plaintiffs' counsel want to say before I hear from defense

19  counsel?

01:56PM 20      MS. TADLER:  No, Your Honor.  Thank you.

21      THE COURT:  All right.

22      MS. SPIVEY:  Your Honor, on behalf of Conagra Foods,

23  I do have a couple points with the tentative, if I could

24  address --

01:56PM 25      THE COURT:  Please do.

**UNITED STATES DISTRICT COURT**

1      MS. SPIVEY:  Page 3 and page 8, the Court goes

2  through to the recovery of the class.  On page 3(c), there's an

3  additional fund of $10,000 to compensate those in the classes

4  that submit valid proof of purchase receipts for more than 30.

01:57PM 5  That was actually not capped.  The class recovery is not

6  capped.  It's just Conagra's contribution that is capped at

7  $10,000.

8      If you look at the settlement agreement,

9  Section 2.20 and Section 3.1.1.4, both of which make clear that

01:57PM 10  Conagra's contribution's capped, but the recovery of the class

11  is not capped, which is consistent with all the pleadings that

12  the plaintiffs and Conagra have filed for the settlement in

13  this case.

14      THE COURT:  I appreciate that clarification.  And

01:57PM 15  this is a question:  Do you think I need to change the wording

16  of that?  And if so, how would you like it changed?

17      MS. SPIVEY:  I would make it consistent with the

18  settlement agreement language.  Section 2.20 and

19  Section 3.1.1.4 are both consistent with one another.

01:57PM 20      Currently, there's been 247 claimants that have

21  submitted proof of purchase for more than 30 products which

22  represent 349,000 units.  That would be a fund of $52,000

23  roughly.

24      THE COURT:  Okay.  So what is the language?  I don't

01:58PM 25  have the settlement agreement in front of me.

1        MS. SPIVEY:  I have it right here.  (Reading:)

2        "...an additional fund of 10,000 to

3    compensate all classes that submit valid proof of

4    purchase receipts for more than 30 at 15 cents for

01:58PM 5    each such purchase above 30.  Should 10,000 be

6    insufficient to cover such claims, class counsel

7    shall pay the nonfunded claims from fees awarded in

8    this case."

9        It goes on to say (Reading:)

01:58PM 10    "Should 10,000 capped fund not be exhausted,

11    the remaining funds will revert to payment of the

12    New York and Oregon state classes."

13        THE COURT:  Okay.  And that language -- I write

14    really slowly -- that language is in the settlement agreement?

01:58PM 15        MS. SPIVEY:  Yes, Your Honor.

16        THE COURT:  Okay.  And in a lot of these cases --

17    and I'm sorry, I just focused on the briefs that were

18    submitted -- they ask me to sign off on a judgment, and maybe

19    sometimes there's another order that's issued.

01:59PM 20        Have you proposed any such judgment or order in this

21    case that you want me to issue?

22        MS. SPIVEY:  We have not, Your Honor.  And I think

23    primarily because J&D has not -- all these numbers that you

24    have on the claims that have been made are pre-deduplication.

01:59PM 25    So the J&D has not taken out the duplications, and they have

```
 1    not run their fraud checks.  That would not be done until after

 2    final approval is granted.

 3              So the numbers could come down.  We don't know when

 4    the final numbers will be --

 5    MS. KELLER:  Your Honor, if I may?

 6              THE COURT:  Yes.

 7              MS. KELLER:  Class counsel will be happy to submit

 8    the order once everything's deduplicated and, also, once

 9    everything is verified as well.

10              THE COURT:  Okay.  So what -- and then you can put

11    in there what you feel is appropriate and we'll give,

12    obviously, anybody a chance to object to whatever you submit

13    before I sign off on it.  But I will make the change to this

14    order to have -- make sure that this language is consistent

15    with the settlement agreement language here on page 3.  And you

16    said it's on page 8 too.

17              MS. SPIVEY:  Yes, sir.  The paragraph starting with

18    "In addition to this award."

19              THE COURT:  Yeah.  Yeah.  So I'll modify that.

20              And then if you would be kind enough to meet and

21    confer and submit any other documents you want me to issue that

22    are consistent with this order -- such as the judgment or if

23    there's any other order that you want -- that would be great.

24    And then I'll give a few days for anybody to object.  And then

25    I will issue those as well.
```

1           Is that acceptable?

2           MS. SPIVEY:  Yes, Your Honor.

3           MR. LEVITT:  Yes, Your Honor.

4           MS. SPIVEY:  I do have one more point on page 3 as

02:01PM  5  well.  The tentative order says "After the parties reached the

6  settlement agreement, Conagra sold the Wesson brand to

7  Richardsons [as spoken] International."  That actually occurred

8  three months before the settlement agreement.

9           THE COURT:  Okay.

02:01PM 10          MS. SPIVEY:  The sale to Richardsons was formalized

11 in December of 2018; settlement agreement is March of 2019.

12          THE COURT:  I see.  So you reached an agreement

13 before, but it wasn't finalized until after?

14          MS. SPIVEY:  Correct, Your Honor.

02:01PM 15          THE COURT:  Okay.  So was it a tentative settlement?

16          MS. SPIVEY:  There was nothing in writing.  Yes, I

17 believe that plaintiffs would agree with me that it was a

18 tentative settlement that we discussed and were negotiating out

19 with Judge McCormick.  The settlement agreement had not been

02:01PM 20 signed.  It wasn't signed.  It was dated March of 2019.  The

21 settlement to Richardson was closed in a done deal as of

22 mid-December 2018.

23          THE COURT:  All right.  So I'm trying to think how

24 can I make this simpler.  What modification do you want on

02:02PM 25 page 3 on that?

1          MS. TADLER:  Your Honor, this is Ariana Tadler for

2     plaintiffs.  I'm sure my colleague may have some specific words

3     that she would like included.  We actually disagree.  We

4     believed we had an agreement in principle at that point.

02:02PM 5          THE COURT:  Okay.

6          MS. SPIVEY:  Your Honor, I would say the tentative

7     order doesn't say "agreement in principle."  It references "The

8     Settlement Agreement" with caps.  That references the document

9     that was signed in March of 2019.

02:02PM 10          THE COURT:  Well, how about "Parties reached a

11     settlement in principle"?

12          MS. SPIVEY:  That would be fine with me, Your Honor.

13          MS. TADLER:  No objection, Your Honor.  Thank you.

14          THE COURT:  "After the parties reached a settlement

02:02PM 15     in principle, Conagra sold the Wesson brand."  Okay.

16          MS. SPIVEY:  Thank you, Your Honor.

17          THE COURT:  Anything else?

18          MS. SPIVEY:  Nothing further on behalf of Conagra.

19          THE COURT:  And do you have any comments to my

02:03PM 20     comments?  Because it is your record with respect to -- I

21     thought there were a lot of legal and procedural hurdles that

22     the plaintiffs would have to overcome.  Was I speaking out of

23     turn, or was I accurately depicting how you were going to

24     contest causation and damages pretty vigorously?

02:03PM 25          MS. SPIVEY:  We definitely agree with Your Honor's

1    assessment of that.  We had planned on filing a motion to

2    decertify the classes, the motion for summary judgment, and

3    then a motion to sever the different state classes and then to

4    transfer them back to their original state, which would have

02:03PM  5    required 11 different trials and 11 different jurisdictions if

6    we did not prevail on the motion for summary judgment, which we

7    feel like we had a good chance of prevailing at.

8            So we certainly agree with Your Honor's assessment

9    and with the issues with plaintiffs' case.

02:04PM 10           THE COURT:  I think there are several recent

11    decisions from the Circuit.  I know Judge Kleinfeld was the

12    *Mazza* decision, how a lot of these state subclasses, they

13    really should be tried in the states.

14           MS. SPIVEY:  Correct, Your Honor.  We also had the

02:04PM 15    label change in July of 2017.  After that label change, there's

16    no evidence that there was a drop in the price that people paid

17    for Conagra's product, the Wesson Oil product, and there was no

18    decrease in sales.  So it really belied all allegations of a

19    price premium.

02:04PM 20           THE COURT:  And that's helping me recall.  I had a

21    lot of issues that -- and I don't know whether Judge Morrow

22    shared those issues with you or not, but I had a lot of issues.

23    And like it or not, I was going to be the judge who was now

24    charged with resolving all of this.

02:04PM 25           MS. SPIVEY:  We certainly liked that.

1            THE COURT:  Okay.  Well, I appreciate it.  It sounds

2    like we're singing to the choir.

3            Mr. Frank, I think it's probably pretty clear to

4    you, sir.  I'm trying to be as respectful as I can, but you

02:05PM 5    have a pretty steep, uphill battle to convince me otherwise.

6            MR. FRANK:  Thank you, Your Honor.  It's -- what I'm

7    hearing from you is because the plaintiffs had a weak case, the

8    fact that the class is getting anything is what makes this

9    settlement fair.  And I would just simply disagree that that's

02:05PM 10   neither necessary nor sufficient.

11           If the parties came to you with an $8 million common

12   funds and the attorney said, "We want 87 percent of that," you,

13   I would hope, reject that.  And if you didn't, it would be

14   reversible error under *Dennis v. Kellogg*.  The parties have an

02:05PM 15   obligation, even if the defendant is settling for more than the

16   case is worth, to share that windfall proportionately with the

17   class.  And that's stated in *Bluetooth*, 654 F.3d 935.  The fact

18   that the plaintiffs worked very hard for the case is irrelevant

19   to the fairness of the settlement, and that's *HP Inkjet*, 716

02:06PM 20   F.3d 1173.

21           It was possible to get the class more money.  It's

22   not the case that the class got everything they could have

23   gotten because 99 percent of the class is getting nothing.  It

24   was possible to subpoena, say, Ralphs supermarket and get a

02:06PM 25   list of all the consumers who bought Conagra from 2010 to 2017

1    and distribute checks to them proportionately or otherwise.  It

2    was possible to take that $8 million that Conagra is willing to

3    pay and split it, 2 million to the attorneys and 6 million to

4    the actual class.  But they didn't do that.  Instead, they have

02:07PM  5    a claims process where there's no direct notice to the class.

6              There's no effort to identify individual class

7    members.  And remarkably they structured the settlement so that

8    there's an incentive for them not to tell the class.  Because

9    anything that exceeds that $10,000 fund comes out of the

02:07PM 10    plaintiff -- out of counsel's pockets.

11              They set up the settlement to create a conflict of

12    interest between themselves and their own clients.  Because

13    every additional dollar that's going to the class members that

14    exceed the $10,000 fund goes out of their own pockets.

02:07PM 15              Now, the way they get around this is they set up

16    separate funds.  They have one claims-made fund for the class

17    and then a separate attorney fee fund for themselves with clear

18    sailing.  Defendants agree not to challenge the fee request.

19    And then any reduction in the fee goes back to the defendants,

02:08PM 20    and that's called a kicker.  And that is what makes the

21    settlement unfair under *Bluetooth*, 654 F.3d 935.  That's all

22    three elements.  Red flags, the Ninth Circuit called them.

23              You had the disproportionality, which Your Honor

24    pointed out.  You have the clear sailing, which whereby the

02:08PM 25    plaintiffs negotiated for themselves an elimination of any

challenge to their fee request.  And then any fee request,

instead of going to the class, any reduction goes to the

defendant.  And because of that, 7 million is going to the

attorneys, give or take, and less than a million to the class.

02:08PM  That's the disproportionality forbidden by *Bluetooth*, forbidden

by *Pearson vs. NBTY*, 772 F.3d 778.

Now, they justify it with the injunction, and it's

remarkable.  The Court says, "Well, the injunction's hard to

value," and I would disagree with that.  I would say the

02:09PM  injunction is very easy to value.  It's worth zero because it

doesn't require Conagra to do anything.  Conagra couldn't

violate the injunction even if they wanted to because they

don't own Wesson Oil anymore, and it doesn't bind Richardson.

So it's the very definition of an illusory injunction, the sort

02:09PM  of thing courts routinely reject as a justification for a

settlement.  And that's Subway's footlong, that's Walgreens

shareholders -- many settlements where the parties try to

create the illusion of relief to justify a large attorney fee

so that they can get a case settled without the defendant

02:10PM  actually having to do anything.  And it's unfair to the class

to ascribe any value to that injunction and permit the

disproportion of relief that occurs here.

Now, I'm not saying that it's unfair for Conagra to

only surrender $8 million.  As the Court pointed out.  There

02:10PM  are a lot of problems with the settlement.  There are a lot.

1    There's no evidence that there is a price premium.  Because

2    after Conagra changed the label, the price didn't drop.  But

3    that's what they're basing the value of the injunction on, the

4    very same price premium that defendants dispute.  And they're

02:10PM 5    trying to have it both ways.  On the one hand, we stipulate

6    that the injunction has value, but on the other hand, we

7    dispute that there is any price premium or any effect from the

8    label change.

9         So we're not saying that the defendants had to

02:10PM 10   settle for 80 million or 15 million or even 8 million and

11   1 dollar instead of the 8 million they settled for.  But with

12   that $8 million pie, there is some obligation under Rule 23(e)

13   as a matter of law to distribute it proportionally between the

14   attorneys and the class.  And they have structured the

02:11PM 15   settlement with impermissible clauses to ensure that it would

16   be improperly divided between the attorneys and the class and

17   create the disproportion that Your Honor expressed the concern

18   about.

19        Now, a claims-made process, I think it's very

02:11PM 20   important to recognize, and the FTC while this case -- while

21   the objection was pending released a study that shows that it's

22   very easy to manipulate how many people make a claim.  If you

23   give them direct mail in an envelope, you get claims rates

24   close to 10 percent.  If you send them an e-mail, it's

02:11PM 25   3 percent.  And if as happened here, there's no notice of the

1    class, you get what actually happened here, which is a claims

2    rate of less than 1 percent.

3            And because of that, the parties, by structuring the

4    claims process, however long it is or however much proof you

02:12PM 5    have to put in or what notice goes to the class, you can

6    determine with actuarial certainty how many claims there will

7    be in advance.  And you know when you have a claims-made

8    settlement like this that less than 1 percent of the class is

9    going to make a claim, and that's what they agreed to.  And not

02:12PM 10    only did they know that, they were so confident of it, they

11    agreed to act as the insurers for Conagra.  If too many people

12    made claims, it would come out of their own pockets.

13            So for those reasons, that's the argument we would

14    end up making to the Ninth Circuit if the tentative ruling

02:12PM 15    became a final ruling.  The settlement's unfair under

16    Rule 23(e), it's unfair under *Bluetooth*.  And the conflict of

17    interest presented here by the settlement clause whereby if the

18    class counsel notifies too many class members, they have to pay

19    the additional claims out of their own pocket shows, I think,

02:13PM 20    firsthand the problems with the settlement and the confidence

21    that class counsel had that there wouldn't be that many claims

22    and that they were negotiating the settlement that would

23    benefit themselves at the expense of the class.

24            I'm happy to answer any questions you have, Your

02:13PM 25    Honor.

1        THE COURT:  No.  You've been thorough.  I'll give

2   you another chance to respond after I hear from defense

3   counsel, and then I'll give the plaintiffs' counsel --

4        MS. SPIVEY:  Your Honor, the objection, it goes back

02:13PM 5   to what we said in our brief and our submission, it is more

6   than fair to the class members.  And there's no evidence and

7   not even any argument that what the class members are receiving

8   is in any way unfair or unreasonable.  It's more than generous,

9   as the Court has pointed out.  And that's the burden that the

02:14PM 10   objector has to set aside the settlement, and they can't do it.

11   They're not even arguing it.  They're not even saying that what

12   the class members received is unfair or unreasonable.  He never

13   said that in his briefing or today in front of this Court.

14        And that is the burden he carries as the objector,

02:14PM 15   to set aside a very fair and reasonable settlement.  In fact,

16   this is a generous settlement to the class, as we've already

17   established here.  So he hasn't met the burden to set aside the

18   settlement.

19        THE COURT:  These are my words of what Mr. Frank

02:14PM 20   said, so he might disagree with this characterization.  But

21   listening to him, I felt he was saying, you know, you have to

22   analyze what's the proportionality between what the attorneys'

23   fees are and then what the class gets.  And here the attorneys'

24   fees is, you know, approximately -- what is it? --

02:15PM 25        MS. SPIVEY:  6.85.

1            THE COURT:  -- 6.85, $7 million, approximately,

2    whereas that's not what the class members are getting.  And

3    that the injunction is illusory, there's a lot of questions

4    with that.  But, you know, starting off is -- I didn't feel the

02:15PM 5    injunction was illusory.

6            I just have a recollection that this whole case was

7    impacting your client's business and your client's hope to sell

8    this division in the Conagra/Wesson brand and -- am I wrong

9    about that?  That this injunctive relief was a big issue to

02:15PM 10   your client?

11           MS. SPIVEY:  I'm unaware if this case or the

12   injunctive relief had any issue to do with the sale of the

13   brand.  Conagra had sold the brand to Smucker's before our

14   first mediation in this case ever happened.  And then the sale

02:16PM 15   did not go through because the government killed it.  And so

16   the brand remained on the auctioning block.

17           And as a matter of fact, in all of our federal SEC

18   filings K1s, K2s, I'm not an SEC attorney, so I may get the

19   number wrong, we had -- the Wesson Oil brand held as an asset

02:16PM 20   for sale.  So this was always on the auctioning block since the

21   Smucker's sale fell through because of the government.

22           I'm not the deal lawyer for Conagra, but I was

23   unaware of anything relating to this case or the injunction

24   that would have held up any sale.

02:16PM 25           THE COURT:  But did this litigation -- wasn't that a

carve-out from the deal?  In other words, wasn't your client
going to have to be responsible for whatever damages, if any,
the plaintiffs were able to recover?

MS. SPIVEY:  Correct.  Because the classes all end
in July of 2017 when Conagra took the "natural" claim off the
label.  Conagra would have generated all the revenue from the
sales at issue.  The class period would have ended years before
the sale was commenced.

So, yes, Conagra would have retained the liability
for the damage and did in this case and would be paying here.

THE COURT:  Do you agree with Mr. Frank's
characterization, that the injunction was really illusory?

MS. SPIVEY:  So we disagree with most everything
that plaintiffs' expert Mr. Weir has said.  We do believe that
a lot of his damage models are a house of cards, ready to fall.
We have briefed that and are currently briefing it in a couple
of cases that we have where Mr. Weir is the plaintiffs' expert.

We did not agree to any evaluation retroactively of
the injunctive relief because we don't believe injunctive
relief had any retroactive fact.  We only agreed to
forward-facing conjunctive relief and the evaluation of that.

THE COURT:  Okay.

MS. SPIVEY:  If I could, one more thing real quick.
The plaintiffs' lawyer -- sorry.  The objector had said a few
times -- it seems to me he was more concerned that we didn't do

1   direct consumer sales or notification of the class, that we

2   somehow manipulated the claims recovery rate because we didn't

3   send you, Your Honor, a letter saying "You should send this in"

4   or we should just send you a check.  We had no way of doing

02:18PM  5   that.  Conagra has no direct consumer sales.

6        So you and no one else in America can go to

7   Conagra's website and buy its products.  That's not the way

8   Conagra's business is done.  So we didn't have consumer.  We

9   didn't know you purchased the product.  And we would have had

02:18PM 10   no way of knowing that.  Because you might go to a grocery

11   store or order it online from Amazon.  We don't know who those

12   people are.  So we had no way of giving the plaintiffs a list

13   of all the consumers or potential class members so that they

14   could have sent consumers direct notification of the

02:18PM 15   settlement.

16        This was not a purpose manipulation on their part or

17   ours to manipulate the claims rate.  This is just the way our

18   business is run.  We don't have that information to provide.

19        THE COURT:  So not only did you not have the

02:18PM 20   information on who were the purchasers of the product, but then

21   you certainly didn't know why they bought it and whether it had

22   anything to do with the representation that it's 100 percent

23   natural.

24        MS. SPIVEY:  Exactly.

02:19PM 25        And, Your Honor, we actually pointed out to a survey

1    that we did -- that we commissioned as part of the litigation.

2    That's fully briefed in all of the class certification

3    documents that show that the "natural" claim was a motivating

4    factor for less than 3 percent of those surveyed.  So

02:19PM  5    97 percent of the people who bought Wesson Oil bought it

6    because their grandmother bought it or because it was a legacy

7    product they bought for decades or for other reasons other than

8    the "natural" claim on the product.

9        THE COURT:  Mr. Frank argued very eloquently with

02:19PM 10   citation to law that, you know, there has to be some

11   proportionality between what the class members get and what the

12   plaintiffs' attorneys get.  And I know plaintiffs' attorneys

13   are anxious to respond to that.

14       But I would be interested in your response to that

02:20PM 15   because this settlement agreement was agreed to by you.  So

16   tell me if Mr. Frank is correct about that.  And if not, tell

17   me why not.

18       MS. SPIVEY:  Your Honor, I'll leave it to the

19   plaintiffs' lawyer to tell you what the case law says in this

02:20PM 20   area because, quite frankly, I didn't look into the case law

21   all that much in this area.  Is there a discrepancy between

22   what the class is getting and what the plaintiffs' lawyers are

23   getting?  Yes.  Is it justified?  That's for the Court to

24   decide.

02:20PM 25       I don't really know the case law, so I can't stand

```
 1   up here, like Mr. Frank, and cite off the top of my head all
 2   the cites that would support that.
 3           THE COURT:  Okay.  You've answered my questions.
 4           MS. SPIVEY:  I would say one more thing that we
 5   would point out.  Conagra, in negotiating this settlement, was
 6   very concerned about -- we called them buckets -- what each
 7   bucket of settlement was and how much money went to each
 8   bucket.  Conagra never said, "Here's $8 million.  You guys
 9   figure out how you want to divvy it up."
10           That's just not the way this happened, and that
11   would not be anything Conagra would ever entertain here.  We
12   don't want to incentivize plaintiffs to file what we believe to
13   be frivolous lawsuits against us.  And if we gave them ten
14   times the purchase price of any product, we're setting a
15   precedent that would be very detrimental in incentivizing
16   frivolous labeling claims.
17           So this was not a situation where we said, "Here's
18   $8 million.  Go figure out what you want to do with it."  This
19   was negotiated painstakingly for each bucket, I would say, as
20   we called it, during the settlement negotiation process.
21           THE COURT:  And I have my own understanding of why,
22   and I know this was a recommendation by Judge McCormick, who I
23   have great respect for.  But tell me why you did this.  Why did
24   you agree to this settlement where you would have these
25   individual buckets, and then you have approximately $7 million
```

```
 1    going to the attorneys?

 2               MS. SPIVEY:  Your Honor, I'm not at liberty to

 3    disclose Conagra's motivation for wanting to enter into a

 4    settlement here.  That's protected by the attorney-client

 5    privilege.

 6               I think the obvious reasoning is we didn't own the

 7    brand anymore.  We don't own the brand.  We have no intention

 8    of buying the brand back.  So we're fighting over something

 9    that just doesn't impact us anymore.  And at some point, that

10    just didn't make much sense.

11               THE COURT:  And I assume -- and I respect that.  I

12    apologize if, in any way, I was trying to invade the

13    attorney-client privilege.  That was the last thing I was

14    trying to do.  I was just trying to understand it for the

15    record to defend approving this.

16               The litigation cost must have been enormous on your

17    client's behalf, especially if you were talking about then

18    decertifying these classes and sending them back to state

19    court.

20               MS. SPIVEY:  We were facing a lot of litigation

21    costs.  Why -- I think we would have and could have prevailed

22    on a motion to sever and then a motion to transfer.  That would

23    have been a huge victory for us.  It also came at a cost for us

24    because that also throws us trying 11 different state classes

25    in 11 different states.  It causes us to argue motions for
```

1    summary judgment in 11 different states under 11 different

2    state laws.  So while I think we could have and would have

3    prevailed on the merits, it was with a cost.  I'm not free.  So

4    Conagra was definitely paying legal fees.

02:23PM  5        THE COURT:  It is a question, it is not an order,

6    and you'll probably shut me down, but can you give me any

7    general estimate on how much your client spent on this

8    litigation?

9        MS. SPIVEY:  Substantially less than the plaintiffs

02:23PM 10   have claimed that they spent.  That could be a reflection of me

11   sitting by myself and the plaintiffs' lawyers having five

12   attorneys sitting at the table.  And that's generally the MO

13   that we've been handling this case under.  So our fees and

14   costs are substantially less.

02:23PM 15        THE COURT:  But was it over a million dollars that

16   you litigated this over eight years?

17        MS. SPIVEY:  So I really -- we are on different

18   types of alternative fee arrangements with Conagra, so I

19   couldn't quantify that for you.

02:24PM 20        THE COURT:  Okay.  Thank you.

21        MR. LEVITT:  In terms of what the other side spends,

22   that's always a red herring, for a couple of reasons.

23   Number one, there were three different firms involved for

24   Conagra over eight years.  So we -- so to the first firm, the

02:24PM 25   Hogan Lovells firm, whether they got fired, removed,

1    substituted, I don't know, they spent a lot of time.  So I

2    don't know whether that's included.

3            Second of all, you never know.  And we have this

4    conversation in every case, every mediation, a company like

02:24PM 5    Conagra can cut a flat rate deal with their counsel, can cut a

6    discounted rate.  Every defense firm wants Conagra's business.

7    So to compare apples to oranges here, it doesn't really move

8    the needle, I don't think, in any real way.

9            THE COURT:  I'm gathering that.  So then why did I

02:25PM 10   ask it?  Well, I just know in many litigations, but not in this

11   type of litigation, when a plaintiff obtains a recovery -- for

12   example, on a civil rights case, the federal law allows for

13   awards of attorneys' fees.  And then I hear defense counsel

14   saying, "How in the world can you give them 1.5 million,

02:25PM 15   $2 million in attorneys' fees?  This is crazy."

16           But then one of the first questions you ask, "Well,

17   how much have you spent litigating this very important civil

18   rights case?"  And it's usually more than what the attorneys'

19   fees award is.  And I realize that that analogy doesn't work in

02:25PM 20   this case for a lot of different reasons, but I just -- from

21   the record that I have, the number of Complaints, the going to

22   the Circuit on certification -- my God, you must have spent

23   hours just reading Judge Morrow's -- I really --

24           MR. LEVITT:  There wasn't a staple large enough in

02:26PM 25   the courthouse.  It was a paper fastener that I've never seen

1    before.

2              THE COURT:  I've never seen a district court

3    decision that long.  And I'm not trying to criticize her, I'm

4    just saying this was a very hard-fought litigation is the point

02:26PM  5    I was trying to make, and that's very expensive to the parties.

6    So I'm just trying to get -- trying to flesh out defense

7    counsel to quantify that expense and burden.  Because I know it

8    was one.

9              MR. LEVITT:  Right.  And all I'm saying is while it

02:26PM 10    was clearly really expensive for them, it's hard to make an

11    apples-to-apples comparison compared to what we do versus what

12    they do for all sorts of reasons, the fee negotiations with

13    their clients, et cetera.

14              THE COURT:  I agree.

02:27PM 15              MR. LEVITT:  A few things, I'm going to start with a

16    case that Mr. Frank cited, the *Dennis* case, because it's

17    important.  In that case the Court said when assessing the

18    merits of an objection to a class-action settlement, courts

19    consider the background and intent of objectors and their

02:27PM 20    counsel, particularly when indicative of a motive other than

21    putting the interest of class members first.

22              And I'm going to couple that with the tweet that

23    Mr. Frank put up on July 24th, 2019, which I will say he put up

24    before he blocked my partner, Amy Keller, from accessing his

02:27PM 25    tweets where he states:

1        "This kind of settlement is illegal" -- he

2     says incorrectly in the Seventh Circuit thanks to

3     his organization -- "Will the ND Cal or

4     Ninth Circuit stand for it?  Hard to know unless a

02:28PM 5     class member is willing to object against this sort

6     of abuse.  But if court did approve, it would be an

7     interesting circuit split."

8        So for Mr. Frank and what he does in his

9  organization -- when you're a hammer, everything looks like a

02:28PM 10  nail.  And every argument he makes comes down to the same

11  thing: plaintiff lawyers should make less money.  The

12  settlement's unfair.  We should make less money.  It should

13  have been a different notice program.  We should have made less

14  money.  It all boils down to making what we do for whatever

02:28PM 15  reason as cost-effective as possible for us.  And that's a

16  fact.

17        So where we are here -- first of all, the

18  idealogical piece needs to be considered, where the objector is

19  coming from on this.  Because it's not from a place in class

02:29PM 20  members' interest here certainly.  Because as we pointed out --

21  and he doesn't make any other actual alternative proposal -- we

22  got more for each claiming class member than they could have

23  gotten at trial.  Especially as Your Honor pointed out in

24  Your Honor's courtroom, we wouldn't have even gotten to trial,

02:29PM 25  as Your Honor is saying.

|   | | |
|---|---|---|
| | 1 | So that being said, there isn't a better |
| | 2 | alternative.  We did better than 100 percent.  That's number |
| | 3 | one.  Number two, Mr. Frank doesn't have standing to challenge |
| | 4 | the fees here because the fees are not coming out of a fund. |
| 02:29PM | 5 | And that's from the Ninth Circuit.  It's 645 F.3d, 1084, 1088 |
| | 6 | in *Glasser* against *Volkswagen* where it says, in pertinent part: |
| | 7 | "If modifying the fee award would not |
| | 8 | 'actually benefit the objecting class member,' the |
| | 9 | class member lacks standing because his challenge |
| 02:30PM | 10 | to the fee award cannot result in redressing any |
| | 11 | injury." |
| | 12 | So Mr. Frank doesn't have standing to make the |
| | 13 | arguments he's actually making here. |
| | 14 | And, furthermore, this whole question on |
| 02:30PM | 15 | proportionality, which Mr. Frank tweets as a bright, shiny |
| | 16 | object, it only matters if it affects the relief to the class, |
| | 17 | and it does not.  There was -- if you gave us zero in fees, the |
| | 18 | class would not get anything more. |
| | 19 | As Conagra's counsel was really clear, they aren't |
| 02:30PM | 20 | interested in windfalls.  That was a hotly negotiated point. |
| | 21 | And so we got them an amount over 100 percent that Conagra |
| | 22 | would fully approve.  We also put ourselves on the line for |
| | 23 | anything over 10,000 in the 30-plus claim category that it was |
| | 24 | going to come out of our pocket. |
| 02:31PM | 25 | The other thing, also, if every class member claimed |

1    this was an uncapped -- this was an unkept claims-made

2    situation, Conagra could have been on the hook for tens of

3    millions of dollars more.  So for Mr. Frank to even argue that

4    it's this 87 percent number, it was based upon a retrospective

02:31PM 5    evaluation rather than actually looking at what was available

6    to the class members, which is over 100 percent than what they

7    could have gotten at trial.

8            Then he goes into the issue of class notice.  We

9    could have done something else, he said.  But interestingly,

02:32PM 10   Your Honor, in his papers, and he filed a lot of them, he did

11   not object to class notice.  So for him to come in now and

12   argue about class notice is absolutely improper.

13           Second of all, our class notice program, which was

14   actually fully vetted and approved by Magistrate

02:32PM 15   Judge McCormick.  He vetted competing proposals, and he picked

16   the one that he felt was the most robust and most meaningful

17   with a leading settlement administrator who did a

18   state-of-the-art program.

19           So even if Mr. Frank had the ability to argue the

02:32PM 20   notice issues this afternoon, which he does not, the notice

21   program -- which this Court approved and was actually chosen,

22   after a vetting process by a federal magistrate judge -- was a

23   fully acceptable program.  The fact that there was a small

24   claims rate, it happens.  It happens in lots of these kinds of

02:33PM 25   cases.  It doesn't mean that it was an ineffective notice

1    program.

2            And with respect to Mr. Frank's proposed notice in

3    terms of a subpoena to all grocery stores, it would eclipse the

4    amount of settlement relief altogether.  Instead, we worked

02:33PM 5    with our notice provider, the J&D company, to target the class

6    members in ways that had been found to be acceptable in every

7    court.

8            So moving on from there, and I stated this

9    earlier -- but let me go back to it, and it's in our papers as

02:34PM 10   well -- anytime there's a decoupling of the attorneys' fees in

11   class relief, which happened here, the Lodestar method, as Your

12   Honor points out, is entirely appropriate.

13           And as I said, also, paying us less won't give this

14   class anything more.  So we're talking about two entirely

02:34PM 15   different things.  You could pay us nothing.  You could pay us

16   $100 million.  The class isn't getting a penny more.  It's just

17   the way it is.  So to say that the settlement has a defect of

18   some sort because an objector whose sole goal is to make us

19   earn less is saying we should earn less, it is of no moment to

02:34PM 20   a single class member.  It is entirely an agenda, an

21   idealogically driven crusade that won't have a positive effect

22   here.  All it does -- I know what he wants, Your Honor, to

23   actually do is throw out the settlement.

24           So this whole settlement that was after eight years

02:35PM 25   of hard work on all sides of getting it done, changing the

 1  laws, getting over 100 percent, he wants you to throw it out.

 2  And he wants you to throw it out by putting -- put the class

 3  members' interest at risk.

 4          And why that's interesting is that in the Southwest

02:35PM 5  Airlines case where I was actually named plaintiff, so I'll

 6  front that issue, Your Honor.

 7          At the Seventh Circuit, Mr. Frank argued that

 8  because my lawyer failed to disclose to the Court that he and I

 9  work on other cases together, I should have been -- he should

02:35PM 10 have been disqualified.  And he was saying that because, he

 11 argues, because we were putting the class members' interest at

 12 risk -- or we had the class members' interest in our hands.

 13 There's a duty of candor that he said by failing to disclose,

 14 that required a disqualification.

02:36PM 15         Now the shoe's on the other foot.  Mr. Frank, the

 16 only objector he could find from his ongoing Twitter storm was

 17 an expert he works with and pays for.  So someone who he has

 18 worked with, and he has an ongoing financial relationship with,

 19 is his only objector in this case, and the only objector in

02:36PM 20 this case.

 21         So I would simply -- I suggest in the midst of all

 22 of this and after Your Honor has approved the settlement on its

 23 merits for all of the positive things we got in light of all of

 24 the serious risks as Your Honor has pointed out, based on

02:36PM 25 Mr. Frank's own arguments on the record in the Seventh Circuit,

                    there are grounds for Your Honor to disqualify Mr. Frank and

                    Professor Henderson as an objector -- an objector's counsel in

                    this case, which they failed to advise Your Honor that what was

                    really going on here, they're willing to put the interest of

02:37PM     the class members at risk without -- without advising

                    Your Honor of their -- their own financial and business

                    dealings.

                             "So don't trust me, trust him."  That's the argument

                    he made.  So we made this qualification argument in our papers.

02:37PM     So we would actually reraise it right now, Your Honor, that to

                    the extent that Your Honor would consider Mr. Frank's and

                    Professor Henderson's conduct consonant with what happened in

                    Southwest Airlines, and just going with Mr. Frank's argument in

                    Southwest Airlines, he and Professor Henderson should be

02:37PM     disqualified.

                             So with respect to the next point on the injunction,

                    the label change alone, as Mr. Weir pointed out, and also while

                    I appreciate Conagra's counsel's gratuitous attack on Mr. Weir,

                    Mr. Weir -- Mr. Weir's expert opinion had been sustained around

02:38PM     the country including by Judge Morrow in this case.  So the

                    fact that counsel is saying that he believes -- she believes

                    his opinions are based on a house of cards, lots of judges

                    including judges who used to be in this court and the

                    Ninth Circuit have actually certified classes, have approved

02:38PM     settlements on Mr. Weir's own work and findings.

1      So that being said, Mr. Weir found the value of the

2 label change.  And I know that Conagra's counsel says that the

3 change had nothing to do with our case.  But if we ultimately

4 went to trial on this, we would put our catalyst argument in

02:39PM 5 front of a jury here and explain that.  The facts alone, we

6 filed a case, we litigated the case, classes were certified,

7 they changed the label.

8      So Conagra can say they changed it for other

9 reasons, and a jury would ultimately figure that out.  But to

02:39PM 10 say that it didn't have any value, we disagree.  So we do

11 believe that a claim that the injunction is an illusory

12 injunction is simply wrong.

13      Moreover, as our other expert put forth in his

14 report, the fact is that under normal corporate practice, once

02:39PM 15 a company changes its label, even a successor company, the odds

16 of them changing it back are infinitesimally small.  So there

17 was a benefit of that as well.  And I think Your Honor

18 recognized there was a value.  Maybe not the value we put it

19 all the way, but that Your Honor said there was a value to the

02:40PM 20 injunctive relief.

21      So I guess, Your Honor, in sum, there is nothing

22 wrong with our settlement, as Your Honor points out in your

23 tentative.  In fact, it's a great settlement that resulted from

24 more than eight years of hard lawyering.  Great results:  A

02:40PM 25 change in the Ninth Circuit's law on ascertainability; 136

**UNITED STATES DISTRICT COURT**

1    percent result for claim and class members; and real change, in

2    the course of this litigation, in Conagra's conduct.

3            There was nothing to object to here.  Mr. Frank and

4    Professor Henderson are being obstacles to justice rather than

02:41PM 5    facilitators of justice.  They're grasping at illusory straws

6    to advance an agenda that has nothing to do with this case or

7    our settlement here.  And they've withheld vital information

8    about their own relationship from this court and were less than

9    candid with the Court in doing so.

02:41PM 10           So as a result of all that, we respectfully say that

11   Your Honor should enter the tentative and, as I stated,

12   disqualify Mr. Frank and Professor Henderson as well thereby

13   both overruling the objection and mooting it in light of the

14   fact that there won't be an objector anymore, because he

02:41PM 15   doesn't belong here.  Thank you.

16           THE COURT:  Thank you.

17           MR. AZAR:  Your Honor, may I supplement one point,

18   which Adam had covered it but went over it quickly on the

19   $10,000 limit.

02:42PM 20           So the 10,000 limit was only for people who

21   submitted receipts for 30 units or over.  That, in part, was

22   meant to address your question about causation.  So class

23   members were allowed to submit a plain declaration without

24   support if they purchased up to 30 units.  And when you think

02:42PM 25   about this as a consumer, you may think about how many bottles

of oil do you purchase per year.  So in that respect, there was

no incentive, no conflict for anybody who wanted to submit

claims for up to 30 units to just submit because there was no

comp for the class members.  It doesn't affect any dollar

amounts.

          In contrast, only at 30 units and above -- if people

kept their receipts and they wanted to prove causation that

they were actually impacted by buying more than 30 units, only

they have to submit for the overage over 30 units.

          If you want to say, "I bought 31 units, and I want

that one extra one that they don't have to provide proof for,"

then you have to provide the receipts.  And that's the

difference.  And that's why that separate $10,000 was put off

to the side by Conagra just for those people who kept receipts

for all of these years who purchased over 30 units who wanted

to prove that from a causation perspective.

          THE COURT:  All right.

          MS. SPIVEY:  Your Honor, if I could jump in for one

second to address it, we disagree that proof of purchase

equates to causation.  Causation has to do with what your

purchasing motivation was for buying the product, and the proof

of purchase does not reflect that.

          So we would disagree with the class counsel's point

that somehow receipt or proof of purchase equates to causation.

          THE COURT:  All right.

MR. FRANK:  In my previous discussion, I cited

*Dennis v. Kellogg*, which is at 697 F.3d 858, and I cited it for

the proposition that an 87 percent share of the common funds

was, per se, unreasonable because in that case it was a

38 percent, and that's what the Court said was unreasonable.

The language that Mr. Levitt purports to cite from

the opinion I cited appears nowhere in that opinion.  And you

can look that up and you can judge the rest of the credibility

of his arguments which, as we noted in our other filings, are

remarkably frivolous.  He misrepresents Southwest.  He

misrepresents our arguments.  He misrepresents what I stated.

And we document all this in the declarations, Mr. Henderson's

declarations, and Docket Number 685.

I won't repeat it here unless the Court has

questions about it, but it's all in writing.  He doesn't say

anything new.  It's everything that previously violated Rule 11

and he has the gall to personally attack me and my client here

when we have done nothing wrong.

THE COURT:  Well, the last thing I'm trying to do is

get people more upset and get more contentious.  But the cases

you cited me, isn't it significant that those were common fund

cases as opposed to this case where the attorneys' fees is paid

separately from what's given to the plaintiffs?

MR. FRANK:  No, Your Honor.  In fact, the issue in

all of these cases was that it was a separate fund.  In

1    *Bluetooth* it was a separate fund, and that was called a red

2    flag, 654 F.3d 935.  *Inkjet,* separate fund.  *Pearson vs. NBTY,*

3    separate fund.  *Redman vs. RadioShack*, 768 F.3d 822, separate

4    fund.

02:45PM  5         The fact that every dollar you reduce the fees of

6    the attorneys does nothing for the class is what makes the

7    settlement unfair under Rule 23(e) because it's the attorneys

8    negotiating a selfish gimmick provision for themselves to

9    prevent a challenge to the fees.  And that's why we're not here

02:45PM 10   challenging the fees under Rule 23(h), we're here challenging

11   the settlements under Rule 23(e) because of that provision,

12   because of the disproportionality.

13         And I don't understand how he says we provided no

14   alternative resolution when, just now, I provided an

02:46PM 15   alternative resolution.  If the attorneys want multi-million

16   dollars in attorneys' fees instead of doing the bare

17   constitutional and legal minimum for notice, they could have

18   had additional notice to ensure money gets to the class.

19         And it's not true that that would outstrip the cost

02:46PM 20   of everything.  Because when we won *Pearson vs. NBTY*, it got

21   remanded.  And that's what they did because the Seventh Circuit

22   said the attorneys don't get paid unless the class gets paid.

23         And what do you know?  Suddenly the attorneys who

24   said it's too hard to pay the class magically found a way to

02:46PM 25   pay the class.  And they did it exactly the way we suggested,

1   which is you go to the third-party vendors -- you go to Amazon,

2   you go to Ralphs, you go to all these supermarkets that have

3   records of what their consumers buy -- and you either give them

4   notice or you make direct distributions.

02:47PM  5        You can actuarially throttle the number of claims

6   one way or the other, and they chose to throttle it to reduce

7   the number of claims to get Conagra to settle and to maximize

8   the amount that they could -- of the settlement fees that they

9   could get for themselves.  And what's going to get delayed here

02:47PM 10   is if there's an appeal and the Ninth Circuit reverses it in

11   two years and says, "You should have considered the *Bluetooth*

12   factors.  You should have considered the disproportionality."

13        And once the settlement gets thrown out, they'll

14   negotiate the same settlement, except the class will get

02:47PM 15   6 million.  They'll find a way to get $6 million to the class

16   to 99 percent of the class that didn't get anything under the

17   current claims process, and the attorneys will get 2 million.

18   And the reason they'll do that is because the same reason

19   Conagra settled now, it's going to cost them more than

02:48PM 20   $8 million to defend the litigation.  And so they're happy to

21   pay that $8 million, and they don't care how it's split up.

22   And that's *Staten* [sic], that's *GM Trucks*, that's *Pampers*,

23   that's *Pearson*.  Courts recognize this.  There's no collusion

24   necessary.  It's just two parties acting in their

02:48PM 25   self-interest.

1          And the self-interest of the defendant is to get out

2    as cheaply as possible.  And the self-interest of the

3    plaintiffs' lawyers is to create as much illusory relief as

4    possible to justify as large a fee as possible at the expense

02:48PM 5    of the class.  And that inherent conflict of interest is what

6    the Court is here to judge.  And it's not the objector's

7    burden, it's the parties' burden to prove the settlement is

8    fair, reasonable, and adequate, and that the disproportion is

9    justified.

02:48PM 10          We already heard from Conagra that they're not going

11   to buy Wesson Oil again.  So we know the injunction is

12   worthless because it doesn't require them to do anything.  The

13   injunction is worth zero.  So that doesn't justify the

14   settlement.

02:49PM 15          I'm happy to answer any other questions Your Honor

16   has.

17          THE COURT:  I appreciate it.

18          What I'm going to do is take this under submission,

19   and I'll get a decision out tomorrow.

02:49PM 20          MR. FRANK:  Thank you, Your Honor.

21          MS. SPIVEY:  Your Honor, can I clarify on the record

22   that I have not represented what Conagra will or will not buy.

23   I am not in-house counsel at Conagra, and so I don't make

24   representations about what brands my client will or will not

02:49PM 25   buy.

1          THE COURT:  All right.

2          MR. FRANK:  The transcript will speak for itself,

3  Your Honor.

4          MR. LEVITT:  An important clarification, Your Honor,

02:49PM  5  as Mr. Frank came roaring up here saying that I miscited the

6  case.  He actually failed to look at the Westlaw cite in *Dennis*

7  against *Kellogg*, which I can hand up in Footnote Number 2 of

8  that cite, which is 2013 Westlaw 605- -- my eyes are bad.  I'm

9  getting old -- 6055326.  In Footnote Number 2, it actually says

02:50PM 10  as a corollary:

11          "When assessing the merits of an objection to

12          a class-action settlement, courts consider the

13          background and intent of objectors and their

14          counsel particularly when indicative of a motive

02:50PM 15          other than putting the interest of the class

16          members first."

17          So as Mr. Frank wanted to say that my argument would

18  somehow -- or the impropriety -- or the improper side of my

19  argument should underscore my other points, I would say it's

02:50PM 20  exactly the opposite.  It is actually dead-solid perfect out of

21  an opinion.  The fact that, for some reason, he read some other

22  opinion isn't our problem.

23          So the exact quote is 2013 6055326.  If I'm

24  incorrect, I would welcome Your Honor to ask Mr. Frank to come

02:50PM 25  up here and say that I'm wrong again, which would make him 0

1    for 2.

2             THE COURT:  I think -- I'm just not comfortable.  I

3    think I've heard enough.

4             MR. LEVITT:  Okay.  Thank you, Your Honor.

02:51PM  5             THE COURT:  Okay.

6             THE COURTROOM DEPUTY:  All rise.

7             **(Proceedings concluded at 2:56 p.m.)**

8                         **--oOo--**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          *CERTIFICATE OF OFFICIAL REPORTER*

2

3    COUNTY OF LOS ANGELES   )
                             )
4    STATE OF CALIFORNIA     )

5                I, DEBBIE HINO-SPAAN, FEDERAL OFFICIAL REALTIME

6    COURT REPORTER, in and for the United States District Court for

7    the Central District of California, do hereby certify that

8    pursuant to Section 753, Title 28, United States Code that the

9    foregoing is a true and correct transcript of the

10   stenographically reported proceedings held in the

11   above-entitled matter and that the transcript page format is in

12   conformance with the regulations of the Judicial Conference of

13   the United States.

14

15   *Date:  November 12, 2019*

16

17

18

19                              */S/ DEBBIE HINO-SPAAN*
                                _____

20                              *Debbie Hino-Spaan, CSR No. 7953*
                                *Federal Official Court Reporter*
21

22

23

24

25

**UNITED STATES DISTRICT COURT**

## $

**$10,000** [6] - 12:3, 12:7, 19:9, 19:14, 40:19, 41:13
**$100** [1] - 36:16
**$52,000** [1] - 12:22

## '

**'actually** [1] - 34:8

## /

**/S** [1] - 48:19

## 0

**0** [1] - 46:25

## 1

**1** [3] - 21:11, 22:2, 22:8
**1.5** [1] - 31:14
**10** [2] - 2:11, 21:24
**10,000** [5] - 13:2, 13:5, 13:10, 34:23, 40:20
**100** [7] - 8:8, 10:12, 26:22, 34:2, 34:21, 35:6, 37:1
**10119** [1] - 2:5
**1084** [1] - 34:5
**1088** [1] - 34:5
**11** [8] - 6:3, 17:5, 29:24, 29:25, 30:1, 42:16
**11-05379-CJC** [1] - 3:5
**1173** [1] - 18:20
**11766** [1] - 2:15
**11th** [1] - 2:12
**12** [1] - 48:15
**1201** [1] - 2:19
**13** [3] - 6:25, 9:2, 9:5
**136** [2] - 5:14, 39:25
**15** [2] - 13:4, 21:10
**1629** [1] - 2:24
**1:42** [2] - 1:14, 3:2
**1ST** [1] - 1:24

## 2

**2** [6] - 19:3, 31:15, 44:17, 46:7, 46:9, 47:1
**2.20** [2] - 12:9, 12:18
**20006** [1] - 2:24
**2010** [1] - 18:25
**2011** [1] - 4:24
**2013** [2] - 46:8, 46:23

**2017** [3] - 17:15, 18:25, 25:5
**2018** [2] - 15:11, 15:22
**2019** [7] - 1:13, 3:1, 15:11, 15:20, 16:9, 32:23, 48:15
**212-631-8689** [1] - 2:9
**212-946-9300** [1] - 2:6
**213-617-1200** [1] - 2:16
**23** [2] - 7:2, 8:2
**23(e** [4] - 21:12, 22:16, 43:7, 43:11
**23(h** [1] - 43:10
**247** [1] - 12:20
**24th** [1] - 32:23
**28** [1] - 48:8
**2:11-cv-05379-CJC-AGR** [1] - 1:7
**2:56** [1] - 47:7

## 3

**3** [7] - 3:4, 12:1, 14:15, 15:4, 15:25, 21:25, 27:4
**3(c** [1] - 12:2
**3.1.1.4** [2] - 12:9, 12:19
**30** [11] - 12:4, 12:21, 13:4, 13:5, 40:21, 40:24, 41:3, 41:6, 41:8, 41:9, 41:15
**30-plus** [1] - 34:23
**300** [1] - 2:24
**30309** [1] - 2:20
**31** [1] - 41:10
**312-214-7900** [1] - 2:13
**349,000** [1] - 12:22
**350** [1] - 1:24
**38** [1] - 42:5

## 4

**404-881-7857** [1] - 2:21
**4455** [1] - 1:24
**475847** [1] - 2:8
**4900** [1] - 2:20

## 5

**50** [1] - 5:22
**500** [1] - 2:15

## 6

**6** [4] - 6:25, 19:3, 44:15

**6.85** [2] - 23:25, 24:1
**605** [1] - 46:8
**6055326** [2] - 46:9, 46:23
**60602** [1] - 2:12
**645** [1] - 34:5
**654** [3] - 18:17, 19:21, 43:2
**685** [1] - 42:13
**697** [1] - 42:2

## 7

**7** [5] - 1:13, 3:1, 20:3, 24:1, 28:25
**703-203-3848** [1] - 2:25
**716** [1] - 18:19
**753** [1] - 48:8
**768** [1] - 43:3
**772** [1] - 20:6
**778** [1] - 20:6
**7953** [2] - 1:23, 48:20

## 8

**8** [12] - 12:1, 14:16, 18:11, 19:2, 20:24, 21:10, 21:11, 21:12, 28:8, 28:18, 44:20, 44:21
**80** [2] - 4:23, 21:10
**822** [1] - 43:3
**858** [1] - 42:2
**87** [3] - 18:12, 35:4, 42:3

## 9

**90012-4565** [1] - 1:24
**90025** [1] - 2:16
**935** [3] - 18:17, 19:21, 43:2
**94123** [1] - 2:8
**97** [1] - 27:5
**99** [2] - 43:24, 44:16

## A

**A.J** [1] - 3:20
**ability** [1] - 35:19
**able** [2] - 8:6, 25:3
**above-entitled** [1] - 48:11
**absolutely** [1] - 35:12
**abuse** [1] - 33:6
**academic** [1] - 8:3
**accept** [3] - 6:7, 6:10, 6:19
**acceptable** [2] - 15:1,

35:23, 36:6
**accepted** [1] - 5:20
**accessing** [1] - 32:24
**accomplished** [1] - 11:2
**accurate** [3] - 7:14, 8:11
**accurately** [1] - 16:23
**achieved** [1] - 8:20
**act** [1] - 22:11
**acting** [1] - 44:24
**action** [2] - 32:18, 46:12
**actual** [2] - 19:4, 33:21
**actuarial** [1] - 22:6
**actuarially** [1] - 44:5
**ADAM** [1] - 2:10
**Adam** [3] - 3:10, 4:9, 40:18
**addition** [1] - 14:18
**additional** [5] - 12:3, 13:2, 19:13, 22:19, 43:18
**address** [3] - 11:24, 40:22, 41:19
**adequate** [1] - 45:8
**administrator** [1] - 35:17
**advance** [2] - 22:7, 40:6
**advertising** [4] - 7:14, 8:11, 8:18, 8:20
**advise** [1] - 38:3
**advising** [1] - 38:5
**affect** [1] - 41:4
**affects** [1] - 34:16
**afternoon** [6] - 3:10, 3:13, 3:16, 3:19, 4:9, 35:20
**afterwards** [1] - 5:22
**agenda** [2] - 36:20, 40:6
**ago** [1] - 7:23
**agree** [9] - 7:10, 15:17, 16:25, 17:8, 19:18, 25:11, 25:18, 28:24, 32:14
**agreed** [4] - 22:9, 22:11, 25:20, 27:15
**Agreement** [1] - 16:8
**agreement** [13] - 12:8, 12:18, 12:25, 13:14, 14:15, 15:6, 15:8, 15:11, 15:12, 15:19, 16:4, 16:7, 27:15
**Airlines** [3] - 37:5, 38:13, 38:14
**AJ** [1] - 2:7
**allegations** [1] - 17:18
**allowed** [1] - 40:23

**allows** [1] - 31:12
**almost** [1] - 5:1
**alone** [2] - 38:17, 39:5
**ALSTON** [1] - 2:18
**Alston** [1] - 3:22
**alternative** [5] - 30:18, 33:21, 34:2, 43:14, 43:15
**altogether** [1] - 36:4
**Amazon** [2] - 26:11, 44:1
**America** [1] - 26:6
**amount** [5] - 5:19, 6:14, 34:21, 36:4, 44:8
**amounts** [1] - 41:5
**Amy** [2] - 3:13, 32:24
**AMY** [1] - 2:11
**analogy** [1] - 31:19
**analyze** [1] - 23:22
**Angela** [1] - 3:22
**ANGELA** [1] - 2:19
**ANGELES** [4] - 1:14, 1:24, 3:1, 48:3
**Angeles** [1] - 2:16
**answer** [2] - 22:24, 45:15
**answered** [1] - 28:3
**anxious** [1] - 27:13
**anytime** [1] - 36:10
**apologize** [1] - 29:12
**appeal** [1] - 44:10
**APPEARANCES** [1] - 2:1
**appearances** [1] - 3:6
**apples** [1] - 31:7, 32:11
**apples-to-apples** [1] - 32:11
**applies** [1] - 7:20
**appointed** [1] - 5:11
**appreciate** [5] - 11:11, 12:14, 18:1, 38:18, 45:17
**approach** [1] - 8:4
**appropriate** [2] - 14:11, 36:12
**approval** [1] - 14:2
**approve** [2] - 33:6, 34:22
**approved** [4] - 35:14, 35:21, 37:22, 38:24
**approving** [1] - 29:15
**area** [2] - 27:20, 27:21
**argue** [4] - 29:25, 35:3, 35:12, 35:19
**argued** [2] - 27:9, 37:7
**argues** [1] - 37:11
**arguing** [1] - 23:11

argument [11] - 7:9, 9:16, 22:13, 23:7, 33:10, 38:8, 38:9, 38:13, 39:4, 46:17, 46:19
arguments [4] - 34:13, 37:25, 42:9, 42:11
ARIANA [1] - 2:4
Ariana [2] - 3:7, 16:1
arrangements [1] - 30:18
art [1] - 35:18
ascertainability [2] - 5:5, 39:25
ascribe [1] - 20:21
aside [3] - 23:10, 23:15, 23:17
assessing [2] - 32:17, 46:11
assessment [2] - 17:1, 17:8
asset [1] - 24:19
assignment [1] - 11:3
assume [3] - 4:8, 7:2, 29:11
AT [4] - 2:4, 2:7, 2:11, 2:19
Atlanta [1] - 2:20
attack [2] - 38:18, 42:17
attorney [6] - 18:12, 19:17, 20:18, 24:18, 29:4, 29:13
ATTORNEY [4] - 2:4, 2:7, 2:11, 2:19
attorney-client [2] - 29:4, 29:13
attorneys [14] - 19:3, 20:4, 21:14, 21:16, 27:12, 29:1, 30:12, 43:6, 43:7, 43:15, 43:22, 43:23, 44:17
attorneys' [8] - 23:22, 23:23, 31:13, 31:15, 31:18, 36:10, 42:22, 43:16
auctioning [2] - 24:16, 24:20
available [1] - 35:5
award [4] - 14:18, 31:19, 34:7, 34:10
awarded [1] - 13:7
awards [1] - 31:13
aware [1] - 4:22
Azar [1] - 3:16
AZAR [3] - 2:14, 3:16, 40:17

**B**

back-and-forth [1] - 9:20
background [2] - 32:19, 46:13
bad [1] - 46:8
bake [1] - 10:13
bare [1] - 43:16
Bartolomeo [1] - 3:20
BARTOLOMEO [2] - 2:7, 3:19
based [5] - 7:23, 8:8, 35:4, 37:24, 38:22
basing [1] - 21:3
battle [1] - 18:5
became [1] - 22:15
becomes [1] - 11:13
behalf [11] - 3:7, 3:11, 3:14, 3:16, 3:20, 3:23, 4:1, 4:10, 11:22, 16:18, 29:17
belied [1] - 17:18
believes [2] - 38:21
belong [1] - 40:15
benefit [3] - 22:23, 34:8, 39:17
better [3] - 9:16, 34:1, 34:2
between [6] - 19:12, 21:13, 21:16, 23:22, 27:11, 27:21
big [3] - 10:7, 10:8, 24:9
bind [1] - 20:13
BIRD [1] - 2:18
Bird [1] - 3:22
Bisquick [1] - 10:13
bit [1] - 6:2
block [2] - 24:16, 24:20
blocked [1] - 32:24
Bluetooth [6] - 18:17, 19:21, 20:5, 22:16, 43:1, 44:11
boils [1] - 33:14
bore [1] - 10:14
bottles [1] - 40:25
bought [9] - 7:22, 8:8, 18:25, 26:21, 27:5, 27:6, 27:7, 41:10
Boulevard [1] - 2:15
Box [1] - 2:8
brand [10] - 15:6, 16:15, 24:8, 24:13, 24:16, 24:19, 29:7, 29:8
brands [1] - 45:24
Brands [1] - 3:23

brief [1] - 23:5
briefed [2] - 25:16, 27:2
briefing [2] - 23:13, 25:16
briefings [1] - 4:5
briefs [1] - 13:17
bright [1] - 34:15
Briseno [1] - 3:5
BRISENO [1] - 1:4
bucket [2] - 28:7, 28:8, 28:19
buckets [2] - 28:6, 28:25
burden [6] - 23:9, 23:14, 23:17, 32:7, 45:7
business [5] - 24:7, 26:8, 26:18, 31:6, 38:6
buy [5] - 26:7, 44:3, 45:11, 45:22, 45:25
buying [3] - 29:8, 41:8, 41:21
BY [3] - 2:4, 2:10, 2:14

**C**

CA [1] - 1:24
Cal [1] - 33:3
California [2] - 2:8, 2:16, 9:1, 9:11, 10:8, 48:7
CALIFORNIA [4] - 1:2, 1:14, 3:1, 48:4
candid [1] - 40:9
candor [1] - 37:13
cannot [1] - 34:10
capped [6] - 12:5, 12:6, 12:10, 12:11, 12:13
caps [1] - 16:8
cards [2] - 25:15, 38:22
care [1] - 44:21
CARNEY [1] - 1:3
carries [1] - 23:14
carve [1] - 25:1
carve-out [1] - 25:1
case [59] - 4:24, 5:4, 5:8, 6:2, 6:5, 6:8, 6:16, 6:20, 7:6, 7:13, 7:15, 8:5, 8:15, 8:22, 9:21, 9:22, 10:21, 10:22, 11:2, 11:5, 11:11, 12:13, 13:8, 13:21, 17:9, 18:7, 18:16, 18:18, 18:22, 20:19, 21:20, 24:6, 24:11, 24:14, 24:23,

25:10, 27:19, 27:20, 27:25, 30:13, 31:4, 31:12, 31:18, 31:20, 32:16, 32:17, 37:5, 37:19, 37:20, 38:3, 38:20, 39:3, 39:6, 40:6, 42:4, 42:22, 46:6
Case [1] - 1:6
cases [11] - 5:24, 5:25, 6:4, 9:7, 13:16, 25:17, 35:25, 37:9, 42:20, 42:22, 42:25
catalyst [1] - 39:4
category [1] - 34:23
causation [3] - 7:18, 7:21, 8:7, 9:12, 10:7, 10:8, 16:24, 40:22, 41:7, 41:16, 41:20, 41:24
causes [1] - 29:25
Central [1] - 48:7
CENTRAL [1] - 1:2
cents [1] - 13:4
cert [1] - 5:10
certainly [4] - 17:8, 17:25, 26:21, 33:20
certainty [1] - 22:6
CERTIFICATE [1] - 48:1
certificates [1] - 6:4
certification [2] - 27:2, 31:22
certified [4] - 5:14, 6:3, 7:17, 9:10, 38:24, 39:6
Certified [1] - 1:5
certify [1] - 48:7
cetera [1] - 32:13
challenge [6] - 8:7, 19:18, 20:1, 34:3, 34:9, 43:9
challenging [2] - 43:10
chance [3] - 14:12, 17:7, 23:2
change [10] - 12:15, 14:13, 17:15, 21:8, 38:17, 39:2, 39:3, 39:25, 40:1
changed [6] - 5:5, 8:18, 12:16, 21:2, 39:7, 39:8
changes [1] - 39:15
changing [2] - 36:25, 39:16
characterization [2] - 23:20, 25:12
charged [1] - 17:24
cheaply [1] - 45:2

check [1] - 26:4
checks [2] - 14:1, 19:1
Chicago [1] - 2:12
choir [1] - 18:2
chose [1] - 44:6
chosen [1] - 35:21
Circuit [5] - 5:6, 17:11, 19:22, 22:14, 31:22, 33:2, 33:4, 34:5, 37:7, 37:25, 38:24, 43:21, 44:10
circuit [1] - 33:7
Circuit's [1] - 39:25
citation [1] - 27:10
cite [4] - 28:1, 42:6, 46:6, 46:8
cited [5] - 32:16, 42:1, 42:2, 42:7, 42:21
cites [1] - 28:2
civil [3] - 8:14, 31:12, 31:17
claim [10] - 9:23, 11:6, 21:22, 22:9, 25:5, 27:3, 27:8, 34:23, 39:11, 40:1
claimants [1] - 12:20
claimed [2] - 30:10, 34:25
claiming [1] - 33:22
claims [24] - 5:17, 13:6, 13:7, 13:24, 19:5, 19:16, 21:19, 21:23, 22:1, 22:4, 22:6, 22:7, 22:12, 22:19, 22:21, 26:2, 26:17, 28:16, 35:1, 35:24, 41:3, 44:5, 44:7, 44:17
claims-made [4] - 19:16, 21:19, 22:7, 35:1
clarification [3] - 7:8, 12:14, 46:4
clarify [1] - 10:3, 45:21
class [93] - 5:10, 5:14, 6:4, 6:9, 6:13, 6:18, 7:17, 7:21, 9:1, 9:11, 9:21, 9:24, 10:8, 11:6, 12:2, 12:5, 12:10, 13:6, 14:7, 18:8, 18:17, 18:21, 18:22, 18:23, 19:4, 19:5, 19:6, 19:8, 19:13, 19:16, 20:2, 20:4, 20:20, 21:14, 21:16, 22:1, 22:5, 22:8, 22:18, 22:21, 22:23, 23:6, 23:7, 23:12, 23:16, 23:23, 24:2, 25:7, 26:1,

26:13, 27:2, 27:11, 27:22, 32:18, 32:21, 33:5, 33:19, 33:22, 34:8, 34:9, 34:16, 34:18, 34:25, 35:6, 35:8, 35:11, 35:12, 35:13, 36:5, 36:11, 36:14, 36:16, 36:20, 37:2, 37:11, 37:12, 38:5, 40:1, 40:22, 41:4, 41:23, 43:6, 43:18, 43:22, 43:24, 43:25, 44:14, 44:15, 44:16, 45:5, 46:12, 46:15

**class-action** [2] - 32:18, 46:12

**classes** [15] - 5:14, 5:19, 6:3, 9:2, 9:10, 12:3, 13:3, 13:12, 17:2, 17:3, 25:4, 29:18, 29:24, 38:24, 39:6

**clause** [1] - 22:17

**clauses** [1] - 21:15

**clear** [6] - 4:15, 12:9, 18:3, 19:17, 19:24, 34:19

**clearly** [1] - 32:10

**client** [7] - 24:10, 25:1, 29:4, 29:13, 30:7, 42:17, 45:24

**client's** [3] - 24:7, 29:17

**clients** [2] - 19:12, 32:13

**climate** [1] - 6:4

**climb** [1] - 10:19

**close** [1] - 21:24

**closed** [1] - 15:21

**Code** [1] - 48:8

**colleague** [1] - 16:2

**colleagues** [1] - 4:25

**collusion** [1] - 44:23

**comfortable** [1] - 47:2

**coming** [2] - 33:19, 34:4

**commenced** [1] - 25:8

**comment** [1] - 9:8

**comments** [2] - 16:19, 16:20

**commissioned** [1] - 27:1

**common** [3] - 18:11, 42:3, 42:21

**comp** [1] - 41:4

**company** [4] - 31:4, 36:5, 39:15

**compare** [1] - 31:7

**compared** [1] - 32:11

**comparison** [1] - 32:11

**compensate** [2] - 12:3, 13:3

**competing** [1] - 35:15

**Complaints** [1] - 31:21

**CONAGRA** [1] - 1:7

**Conagra** [36] - 3:5, 3:23, 11:22, 12:12, 15:6, 16:15, 16:18, 18:25, 19:2, 20:11, 20:23, 21:2, 22:11, 24:13, 24:22, 25:5, 25:6, 25:9, 26:5, 28:5, 28:8, 28:11, 30:4, 30:18, 30:24, 31:5, 34:21, 35:2, 39:8, 41:14, 44:7, 44:19, 45:10, 45:22, 45:23

**Conagra's** [11] - 12:6, 12:10, 17:17, 26:7, 26:8, 29:3, 31:6, 34:19, 38:18, 39:2, 40:2

**Conagra/Wesson** [1] - 24:8

**concern** [1] - 21:17

**concerned** [2] - 25:25, 28:6

**concluded** [1] - 47:7

**conduct** [2] - 38:12, 40:2

**confer** [1] - 14:21

**Conference** [1] - 48:12

**confidence** [1] - 22:20

**confident** [1] - 22:10

**conflict** [4] - 19:11, 22:16, 41:2, 45:5

**conformance** [1] - 48:12

**conjunctive** [1] - 25:21

**connection** [1] - 8:19

**consider** [3] - 32:19, 38:11, 46:12

**considered** [3] - 33:18, 44:11, 44:12

**consistent** [5] - 12:11, 12:17, 12:19, 14:14, 14:22

**consonant** [1] - 38:12

**constitutional** [2] - 8:3, 43:17

**consumer** [6] - 8:9, 26:1, 26:5, 26:8, 40:25

**consumers** [6] - 8:11,

8:13, 18:25, 26:13, 26:14, 44:3

**contentious** [1] - 42:20

**contest** [1] - 16:24

**contrast** [1] - 41:6

**contribution** [1] - 12:6

**contribution's** [1] - 12:10

**conversation** [2] - 4:11, 31:4

**conversations** [1] - 5:22

**convince** - 18:5

**CORMAC** [1] - 1:3

**corollary** [1] - 46:10

**corporate** [2] - 8:19, 39:14

**correct** [5] - 15:14, 17:14, 25:4, 27:16, 48:9

**cost** [6] - 29:16, 29:23, 30:3, 33:15, 43:19, 44:19

**cost-effective** [1] - 33:15

**costs** [2] - 29:21, 30:14

**COUNSEL** [1] - 2:1

**counsel** [22] - 3:6, 4:6, 4:7, 7:12, 11:18, 11:19, 13:6, 14:7, 22:18, 22:21, 23:3, 31:5, 31:13, 32:7, 32:20, 34:19, 38:2, 38:21, 39:2, 45:23, 46:14

**counsel's** [3] - 19:10, 38:18, 41:23

**country** [1] - 38:20

**COUNTY** [1] - 48:3

**couple** [7] - 5:16, 9:15, 9:18, 11:23, 25:16, 30:22, 32:22

**course** [1] - 40:2

**Court** [16] - 4:12, 12:1, 20:8, 20:24, 23:9, 23:13, 27:23, 32:17, 35:21, 37:8, 40:9, 42:5, 42:14, 45:6, 48:6, 48:20

**COURT** [62] - 1:1, 1:23, 3:9, 3:12, 3:15, 3:18, 3:21, 3:24, 4:3, 4:14, 4:17, 7:7, 10:5, 11:15, 11:17, 11:21, 11:25, 12:14, 12:24, 13:13, 13:16, 14:6, 14:10, 14:19, 15:9, 15:12, 15:15, 15:23,

16:5, 16:10, 16:14, 16:17, 16:19, 17:10, 17:20, 18:1, 23:1, 23:19, 24:1, 24:25, 25:11, 25:22, 26:19, 27:9, 28:3, 28:21, 29:11, 30:5, 30:15, 30:20, 31:9, 32:2, 32:14, 40:16, 41:17, 41:25, 42:19, 45:17, 46:1, 47:2, 47:5, 48:6

**court** [7] - 5:11, 29:19, 32:2, 33:6, 36:7, 38:23, 40:8

**court-appointed** [1] - 5:11

**courthouse** [1] - 31:25

**courtroom** [1] - 33:24

**COURTROOM** [2] - 3:4, 47:6

**courts** [4] - 20:15, 32:18, 44:23, 46:12

**cover** [1] - 13:6

**covered** [1] - 40:18

**crazy** [2] - 5:2, 31:15

**create** [4] - 19:11, 20:18, 21:17, 45:3

**credibility** [1] - 42:8

**criticize** [1] - 32:3

**CRR** [1] - 1:23

**crusade** [1] - 34:4

**CSR** [2] - 1:23, 48:20

**current** [1] - 44:17

**cut** [2] - 31:5

**CV** [1] - 3:5

## D

**damage** [3] - 5:17, 25:10, 25:15

**damages** [6] - 5:16, 7:18, 7:19, 9:12, 16:24, 25:2

**Date** [1] - 48:15

**dated** [1] - 15:20

**DAVID** [1] - 2:14

**David** [1] - 3:16

**days** [1] - 14:24

**DC** [1] - 2:24

**DE** [2] - 2:7, 3:19

**De** [1] - 3:20

**dead** [1] - 46:20

**dead-solid** [1] - 46:20

**deal** [4] - 15:21, 24:22, 25:1, 31:5

**dealings** [1] - 38:7

**Dearborn** [1] - 2:11

**Debbie** [1] - 48:20

**DEBBIE** [3] - 1:23, 48:5, 48:19

**decades** [1] - 27:7

**December** [2] - 15:11, 15:22

**decertification** [1] - 8:25

**decertify** [2] - 7:21, 17:2

**decertifying** [1] - 29:18

**decide** [1] - 27:24

**decision** [3] - 17:12, 32:3, 45:19

**decisions** [1] - 17:11

**declaration** [1] - 40:23

**declarations** [2] - 42:12, 42:13

**decoupling** [1] - 36:10

**decrease** [1] - 17:18

**deduplicated** [1] - 14:8

**deduplication** [1] - 13:24

**defect** [1] - 36:17

**defend** [2] - 29:15, 44:20

**Defendant** [1] - 1:8

**DEFENDANT** [1] - 2:17

**defendant** [4] - 18:15, 20:3, 20:19, 45:1

**defendant's** [1] - 4:7

**defendants** [5] - 8:17, 19:18, 19:19, 21:4, 21:9

**defense** [9] - 8:6, 10:6, 10:20, 11:18, 23:2, 31:6, 31:13, 32:6

**definitely** [2] - 16:25, 30:4

**definition** [1] - 20:14

**delayed** [1] - 44:9

**Dennis** [4] - 18:14, 32:16, 42:2, 46:6

**depicting** [1] - 16:23

**DEPUTY** [2] - 3:4, 47:6

**determine** [1] - 22:6

**detrimental** [1] - 28:15

**dhinospaan@yahoo. com** [1] - 1:25

**dice** [1] - 6:17

**DICELLO** [1] - 2:10

**difference** [1] - 41:13

**different** [12] - 17:3, 17:5, 29:24, 29:25, 30:1, 30:17, 30:23, 31:20, 33:13, 36:15

**differently** [1] - 7:16

**difficult** [1] - 7:25
**direct** [6] - 19:5, 21:23, 26:1, 26:5, 26:14, 44:4
**disagree** [8] - 16:3, 18:9, 20:9, 23:20, 25:13, 39:10, 41:19, 41:23
**disagrees** [1] - 4:8
**disclose** [3] - 29:3, 37:8, 37:13
**discounted** [1] - 31:6
**discrepancy** [1] - 27:21
**discussed** [1] - 15:18
**discussion** [1] - 42:1
**dismiss** [1] - 5:7
**dispositive** [1] - 8:24
**disproportion** [3] - 20:22, 21:17, 45:8
**disproportionality** [4] - 19:23, 20:5, 43:12, 44:12
**dispute** [2] - 21:4, 21:7
**disqualification** [1] - 37:14
**disqualified** [2] - 37:10, 38:15
**disqualify** [2] - 38:1, 40:12
**distribute** [2] - 19:1, 21:13
**distributions** [1] - 44:4
**District** [2] - 48:6, 48:7
**district** [1] - 32:2
**DISTRICT** [3] - 1:1, 1:2, 1:3
**divided** [1] - 21:16
**division** [1] - 24:8
**DIVISION** [1] - 1:2
**divvy** [1] - 28:9
**Docket** [1] - 42:13
**document** [2] - 16:8, 42:12
**documents** [2] - 14:21, 27:3
**dollar** [4] - 19:13, 21:11, 41:4, 43:5
**dollars** [3] - 30:15, 35:3, 43:16
**done** [7] - 6:11, 14:1, 15:21, 26:8, 35:9, 36:25, 42:18
**down** [6] - 8:20, 9:6, 14:3, 30:6, 33:10, 33:14
**driven** [1] - 36:21
**drop** [2] - 17:16, 21:2

**due** [1] - 8:6
**duplications** [1] - 13:25
**during** [1] - 28:20
**duty** [1] - 37:13

### E

**e-mail** [1] - 21:24
**early** [1] - 5:25
**earn** [2] - 36:19
**easy** [2] - 20:10, 21:22
**eclipse** [1] - 36:3
**effect** [2] - 21:7, 36:21
**effective** [1] - 33:15
**effort** [1] - 19:6
**efforts** [1] - 11:10
**eight** [8] - 5:8, 8:17, 9:14, 11:5, 30:16, 30:24, 36:24, 39:24
**either** [1] - 44:3
**elements** [1] - 19:22
**elimination** [1] - 19:25
**eloquently** [1] - 27:9
**encouraged** [1] - 10:22
**end** [5] - 6:10, 9:19, 10:24, 22:14, 25:4
**ended** [1] - 25:7
**enormous** [1] - 29:16
**ensure** [2] - 21:15, 43:18
**enter** [2] - 29:3, 40:11
**entertain** [1] - 28:11
**entirely** [4] - 4:15, 36:12, 36:14, 36:20
**entitled** [1] - 48:11
**envelope** [1] - 21:23
**equates** [2] - 41:20, 41:24
**error** [1] - 18:14
**especially** [2] - 29:17, 33:23
**ESQ** [3] - 2:10, 2:14, 2:23
**established** [1] - 23:17
**estimate** [1] - 30:7
**et** [1] - 32:13
**evaluation** [2] - 25:18, 25:21, 35:5
**evidence** [3] - 17:16, 21:1, 23:6
**exact** [1] - 46:23
**exactly** [4] - 8:2, 26:24, 43:25, 46:20
**example** [1] - 31:12
**exceed** [1] - 19:14
**exceeds** [1] - 19:9
**except** [1] - 44:14

**exhausted** [1] - 13:10
**expect** [1] - 8:12
**expense** [3] - 22:23, 32:7, 45:4
**expensive** [2] - 32:5, 32:10
**expert** [6] - 5:12, 25:14, 25:17, 37:17, 38:19, 39:13
**explain** [1] - 39:5
**expressed** [1] - 21:17
**extent** [1] - 38:11
**extra** [1] - 41:11
**eyes** [1] - 46:8

### F

**F.3d** [8] - 18:17, 18:20, 19:21, 20:6, 34:5, 42:2, 43:2, 43:3
**facilitators** [1] - 40:5
**facing** [2] - 25:21, 29:20
**fact** [14] - 18:8, 18:17, 23:15, 24:17, 25:20, 33:16, 35:23, 38:21, 39:14, 39:23, 40:14, 42:24, 43:5, 46:21
**factor** [1] - 27:4
**factors** [2] - 7:11, 44:12
**facts** [1] - 39:5
**failed** [3] - 37:8, 38:3, 46:6
**failing** [1] - 37:13
**fair** [4] - 18:9, 23:6, 23:15, 45:8
**fairness** [1] - 18:19
**fall** [1] - 25:15
**false** [1] - 9:23
**fastener** [1] - 31:25
**Federal** [1] - 48:20
**federal** [4] - 8:12, 24:17, 31:12, 35:22
**FEDERAL** [2] - 1:23, 48:5
**fee** [13] - 6:7, 6:11, 19:17, 19:18, 19:19, 20:1, 20:18, 30:18, 32:12, 34:7, 34:10, 45:4
**fees** [19] - 5:23, 13:7, 23:23, 23:24, 30:4, 30:13, 31:13, 31:15, 31:19, 34:4, 34:17, 36:10, 42:22, 43:5, 43:9, 43:10, 43:16, 44:8
**feet** [1] - 5:1
**fell** [1] - 24:21

**felt** [2] - 23:21, 35:16
**few** [3] - 14:24, 25:24, 32:15
**fight** [2] - 5:5, 9:14
**fighting** [2] - 6:1, 29:8
**figure** [2] - 28:9, 28:18, 39:9
**file** [1] - 28:12
**filed** [5] - 4:24, 4:25, 12:12, 35:10, 39:6
**filing** [1] - 17:1
**filings** [2] - 24:18, 42:9
**final** [4] - 11:13, 14:2, 14:4, 22:15
**finalized** [1] - 15:13
**financial** [2] - 37:18, 38:6
**findings** [1] - 38:25
**fine** [1] - 16:12
**fired** [1] - 30:25
**firm** [3] - 30:24, 30:25, 31:6
**firms** [1] - 30:23
**first** [7] - 4:11, 24:14, 30:24, 31:16, 32:21, 33:17, 46:16
**firsthand** [1] - 22:20
**five** [2] - 5:1, 30:11
**flag** [1] - 43:2
**flags** [1] - 19:22
**flat** [1] - 31:5
**flavor** [1] - 9:8
**flesh** [1] - 32:6
**Floor** [1] - 2:12
**focused** [1] - 13:17
**Foods** [2] - 3:5, 11:22
**FOODS** [1] - 1:7
**foot** [1] - 37:15
**footlong** [1] - 20:16
**Footnote** [2] - 46:7, 46:9
**FOR** [3] - 2:3, 2:17, 2:22
**forbidden** [1] - 20:5
**foregoing** [1] - 48:9
**formalized** [1] - 15:10
**format** [1] - 48:11
**formula** [1] - 7:20
**forth** [2] - 9:20, 39:13
**forward** [1] - 25:21
**forward-facing** [1] - 25:21
**fought** [4] - 5:6, 5:21, 6:2, 32:4
**four** [1] - 5:7
**frames** [2] - 11:9, 11:10
**Francisco** [1] - 2:8

**FRANK** [7] - 2:23, 4:1, 18:6, 42:1, 42:24, 45:20, 46:2
**frank** [24] - 4:3, 4:8, 6:22, 18:3, 23:19, 27:9, 27:16, 28:1, 32:16, 32:23, 33:8, 34:3, 34:12, 34:15, 35:3, 35:19, 37:7, 37:15, 38:1, 40:3, 40:12, 46:5, 46:17, 46:24
**Frank** [1] - 4:1
**frank's** [5] - 25:11, 36:2, 37:25, 38:11, 38:13
**frankly** [1] - 27:20
**fraud** [1] - 5:1
**free** [1] - 30:3
**frivolous** [3] - 28:13, 28:16, 42:10
**front** [5] - 4:12, 12:25, 23:13, 37:6, 39:5
**FTC** [1] - 21:20
**fully** [4] - 27:2, 34:22, 35:14, 35:23
**fund** [16] - 5:16, 12:3, 12:22, 13:2, 13:10, 19:9, 19:14, 19:16, 19:17, 34:4, 42:21, 42:25, 43:1, 43:2, 43:3, 43:4
**funds** [4] - 13:11, 18:12, 19:16, 42:3
**furthermore** [1] - 34:14

### G

**gall** [1] - 42:17
**gathering** [1] - 31:9
**general** [1] - 30:7
**generally** [1] - 30:12
**generated** [1] - 25:6
**generous** [2] - 23:8, 23:16
**Georgia** [1] - 2:20
**gimmick** [1] - 43:8
**given** [1] - 42:23
**Glasser** [1] - 34:6
**GM** [1] - 44:22
**goal** [1] - 36:18
**God** [1] - 31:22
**government** [3] - 8:12, 24:15, 24:21
**governments** [1] - 8:13
**grandmother** [1] - 27:6
**granted** [1] - 14:2

**grasping** [1] - 40:5
**gratuitous** [1] - 38:18
**great** [6] - 7:12, 8:3, 14:23, 28:23, 39:23, 39:24
**grocery** [2] - 26:10, 36:3
**GROSSMAN** [1] - 2:14
**grounds** [3] - 5:8, 7:20, 38:1
**guess** [4] - 7:1, 9:3, 10:9, 39:21
**gut** [1] - 10:21
**GUTZLER** [1] - 2:10
**guys** [1] - 28:8

## H

**half** [1] - 6:7
**HAMILTON** [1] - 2:23
**hammer** [1] - 33:9
**hand** [3] - 21:5, 21:6, 46:7
**handling** [2] - 8:22, 30:13
**hands** [1] - 37:12
**happy** [4] - 14:7, 22:24, 44:20, 45:15
**hard** [10] - 5:21, 11:4, 18:18, 20:8, 32:4, 32:10, 33:4, 36:25, 39:24, 43:24
**hard-fought** [2] - 5:21, 32:4
**head** [1] - 28:1
**hear** [4] - 6:1, 11:18, 23:2, 31:13
**heard** [2] - 45:10, 47:3
**HEARING** [1] - 1:13
**hearing** [1] - 18:7
**held** [3] - 24:19, 24:24, 48:10
**hello** [7] - 3:9, 3:12, 3:15, 3:18, 3:24, 3:25, 4:3
**Hello** [1] - 3:21
**help** [1] - 5:12
**helping** [1] - 17:20
**Henderson** [5] - 4:2, 38:2, 38:14, 40:4, 40:12
**HENDERSON** [1] - 2:22
**Henderson's** [2] - 38:12, 42:12
**hereby** [1] - 48:7
**herring** [1] - 30:22
**highlight** [1] - 7:11
**HINO** [3] - 1:23, 48:5, 48:19

**Hino** [1] - 48:20
**HINO-SPAAN** [3] - 1:23, 48:5, 48:19
**Hino-Spaan** [1] - 48:20
**Hogan** [1] - 30:25
**Honor** [64] - 3:10, 3:13, 3:19, 4:9, 4:22, 4:23, 5:3, 6:15, 6:16, 7:3, 7:4, 7:5, 9:17, 11:20, 11:22, 13:15, 13:22, 14:5, 15:2, 15:3, 15:14, 16:1, 16:6, 16:12, 16:13, 16:16, 17:14, 18:6, 19:23, 21:17, 22:25, 23:4, 26:3, 26:25, 27:18, 29:2, 33:23, 33:25, 35:10, 36:12, 36:22, 37:6, 37:22, 37:24, 38:1, 38:3, 38:6, 38:10, 38:11, 39:17, 39:19, 39:21, 39:22, 40:11, 40:17, 41:18, 42:24, 45:15, 45:20, 45:21, 46:3, 46:4, 46:24, 47:4
**Honor's** [5] - 11:3, 11:9, 16:25, 17:8, 33:24
**HONORABLE** [1] - 1:3
**hook** [1] - 35:2
**hope** [3] - 11:12, 18:13, 24:7
**hopefully** [1] - 4:5
**hostile** [1] - 6:3
**hotly** [1] - 34:20
**hours** [1] - 31:23
**house** [3] - 25:15, 38:22, 45:23
**HP** [1] - 18:19
**huge** [1] - 29:23
**hurdles** [1] - 16:21

## I

**idealogical** [1] - 33:18
**idealogically** [1] - 36:21
**identify** [1] - 19:6
**illegal** [1] - 33:1
**Illinois** [1] - 2:12
**illusion** [1] - 20:18
**illusory** [7] - 20:14, 24:3, 24:5, 25:12, 39:11, 40:5, 45:3
**impact** [1] - 29:9
**impacted** [1] - 41:8
**impacting** [1] - 24:7
**impermissible** [1] -

21:15
**important** [6] - 7:15, 9:7, 21:20, 31:17, 32:17, 46:4
**improper** [2] - 35:12, 46:18
**improperly** [1] - 21:16
**impropriety** [1] - 46:18
**in-house** [1] - 45:23
**INC** [1] - 1:7
**Inc** [1] - 3:5
**incentive** [2] - 19:8, 41:2
**incentivize** [1] - 28:12
**incentivizing** [1] - 28:15
**included** [2] - 16:3, 31:2
**including** [2] - 38:20, 38:23
**incorrect** [1] - 46:24
**incorrectly** [1] - 33:2
**indicative** [2] - 32:20, 46:14
**individual** [2] - 19:6, 28:25
**individuals** [1] - 8:7
**ineffective** [1] - 35:25
**infinitesimally** [1] - 39:16
**information** [3] - 26:18, 26:20, 40:7
**inherent** [1] - 45:5
**injunction** [16] - 20:7, 20:10, 20:12, 20:14, 20:21, 21:3, 21:6, 24:3, 24:5, 24:23, 25:12, 38:16, 39:11, 39:12, 45:11, 45:13
**injunction's** [1] - 20:8
**injunctive** [5] - 24:9, 24:12, 25:19, 39:20
**injury** [1] - 34:11
**inkjet** [1] - 43:2
**Inkjet** [1] - 18:19
**instead** [5] - 19:4, 20:2, 21:11, 36:4, 43:16
**INSTITUTE** [1] - 2:23
**insufficient** [1] - 13:6
**insurers** [1] - 22:11
**intent** [3] - 10:6, 32:19, 46:13
**intention** [1] - 29:7
**interest** [15] - 6:13, 6:18, 19:12, 22:17, 32:21, 33:20, 37:3, 37:11, 37:12, 38:4, 44:25, 45:1, 45:2,

45:5, 46:15
**interested** [2] - 27:14, 34:20
**interesting** [2] - 33:7, 37:4
**interestingly** [1] - 35:9
**International** [1] - 15:7
**invade** [1] - 29:12
**involved** [1] - 30:23
**irrelevant** [1] - 18:18
**issue** [10] - 10:9, 13:21, 14:21, 14:25, 24:9, 24:12, 25:7, 35:8, 37:6, 42:24
**issued** [1] - 13:19
**issues** [5] - 17:9, 17:21, 17:22, 35:20
**Item** [1] - 3:4
**item** [1] - 7:22
**itself** [2] - 5:2, 46:2

## J

**J&D** [3] - 13:23, 13:25, 36:5
**job** [2] - 6:11, 7:12
**judge** [6] - 8:2, 10:18, 17:23, 35:22, 42:8, 45:6
**JUDGE** [1] - 1:3
**Judge** [9] - 5:13, 7:16, 15:19, 17:11, 17:21, 28:22, 31:23, 35:15, 38:20
**judges** [2] - 38:22, 38:23
**judgment** [6] - 13:18, 13:20, 14:22, 17:2, 17:6, 30:1
**Judicial** [1] - 48:12
**July** [3] - 17:15, 25:5, 32:23
**jump** [1] - 41:18
**jurisdiction** [1] - 5:8
**jurisdictions** [1] - 17:5
**jury** [3] - 10:2, 39:5, 39:9
**justice** [2] - 40:4, 40:5
**justification** [1] - 20:15
**justified** [2] - 27:23, 45:9
**justify** [4] - 20:7, 20:18, 45:4, 45:13

## K

**K1s** [1] - 24:18
**K2s** [1] - 24:18

**Keller** [2] - 3:13, 32:24
**KELLER** [4] - 2:11, 3:13, 14:5, 14:7
**Kellogg** [3] - 18:14, 42:2, 46:7
**kept** [2] - 41:7, 41:14
**kicker** [1] - 19:20
**killed** [1] - 24:15
**kind** [2] - 14:20, 33:1
**kinds** [2] - 6:4, 35:24
**Kleinfeld** [1] - 17:11
**knowing** [1] - 26:10

## L

**label** [10] - 9:23, 17:15, 21:2, 21:8, 25:6, 38:17, 39:2, 39:7, 39:15
**labeling** [1] - 28:16
**lacks** [1] - 34:9
**language** [7] - 12:18, 12:24, 13:13, 13:14, 14:14, 14:15, 42:6
**large** [3] - 20:18, 31:24, 45:4
**larger** [1] - 5:19
**last** [4] - 4:11, 4:25, 29:13, 42:19
**LAW** [7] - 2:4, 2:4, 2:7, 2:7, 2:11, 2:19, 2:23
**law** [8] - 5:5, 21:13, 27:10, 27:19, 27:20, 27:25, 31:12, 39:25
**Law** [1] - 3:7
**laws** [2] - 30:2, 37:1
**lawsuits** [1] - 28:13
**lawyer** [5] - 4:19, 24:22, 25:24, 27:19, 37:8
**lawyering** [1] - 39:24
**lawyers** [5] - 5:25, 27:22, 30:11, 33:11, 45:3
**leading** [1] - 35:17
**learned** [1] - 4:19
**leave** [1] - 27:18
**legacy** [1] - 27:6
**legal** [3] - 16:21, 30:4, 43:17
**less** [14] - 5:1, 20:4, 22:2, 22:8, 27:4, 30:9, 30:14, 33:11, 33:12, 33:13, 36:13, 36:19, 40:8
**letter** [1] - 26:3
**LEVITT** [16] - 2:10, 2:10, 3:10, 4:9, 4:15, 4:18, 9:15, 11:1, 11:16, 15:3, 30:21,

31:24, 32:9, 32:15, 46:4, 47:4
**Levitt** [4] - 3:11, 3:12, 4:10, 42:6
**liability** [1] - 25:9
**liberty** [1] - 29:2
**light** [2] - 37:23, 40:13
**limit** [2] - 40:19, 40:20
**LINCOLN** [1] - 2:23
**line** [1] - 34:22
**list** [2] - 18:25, 26:12
**listening** [2] - 7:9, 23:21
**litigate** [1] - 8:16
**litigated** [2] - 30:16, 39:6
**litigating** [2] - 9:1, 31:17
**litigation** [10] - 8:14, 24:25, 27:1, 29:16, 29:20, 30:8, 31:11, 32:4, 40:2, 44:20
**litigations** [1] - 31:10
**LLC** [1] - 2:10
**LLP** [4] - 2:4, 2:7, 2:14, 2:18
**Lodestar** [1] - 36:11
**look** [7] - 7:10, 8:4, 8:16, 12:8, 27:20, 42:8, 46:6
**looked** [2] - 7:13, 7:15
**looking** [1] - 35:5
**looks** [1] - 33:9
**LOS** [4] - 1:14, 1:24, 3:1, 48:3
**Los** [1] - 2:16
**Lovells** [1] - 30:25
**lower** [1] - 6:14

## M

**ma'am** [3] - 3:15, 3:21, 3:24
**magically** [1] - 43:24
**Magistrate** [3] - 5:12, 11:3, 35:14
**magistrate** [1] - 35:22
**mail** [2] - 21:23, 21:24
**manageability** [1] - 7:2
**management** [5] - 7:1, 7:4, 8:2, 9:8, 9:9
**manipulate** [2] - 21:22, 26:17
**manipulated** [1] - 26:2
**manipulation** [1] - 26:16
**March** [3] - 15:11, 15:20, 16:9
**marketing** [1] - 7:14

**material** [1] - 10:16
**matter** [3] - 21:13, 24:17, 48:11
**matters** [1] - 34:16
**maximize** [1] - 44:7
**Mazza** [1] - 17:12
**McCormick** [5] - 5:13, 11:3, 15:19, 28:22, 35:15
**mean** [2] - 9:6, 35:25
**meaningful** [1] - 29:8
**meant** [3] - 7:1, 7:4, 40:22
**mediation** [3] - 5:22, 24:14, 31:4
**mediator** [2] - 5:12, 11:4
**mediator's** [2] - 5:21, 6:19
**meet** [1] - 14:20
**member** [9] - 9:21, 9:24, 11:6, 33:5, 33:22, 34:8, 34:9, 34:25, 36:20
**members** [19] - 6:9, 6:13, 19:7, 19:13, 22:18, 23:6, 23:7, 23:12, 24:2, 26:13, 27:11, 32:21, 35:6, 36:6, 38:5, 40:1, 40:23, 41:4, 46:16
**members'** [4] - 33:20, 37:3, 37:11, 37:12
**merits** [4] - 30:3, 32:18, 37:23, 46:11
**met** [1] - 23:17
**method** [1] - 36:11
**mid** [1] - 15:22
**mid-December** [1] - 15:22
**midst** [1] - 37:21
**might** [2] - 23:20, 26:10
**MILBERG** [1] - 2:14
**million** [26] - 18:11, 19:2, 19:3, 20:3, 20:4, 20:24, 21:10, 21:11, 21:12, 24:1, 28:8, 28:18, 28:25, 30:15, 31:14, 31:15, 36:16, 43:15, 44:15, 44:17, 44:20, 44:21
**millions** [1] - 35:3
**mind** [1] - 10:17
**minimum** [1] - 43:17
**miscited** [1] - 46:5
**misrepresents** [3] - 42:10, 42:11
**MO** [1] - 30:12
**models** [1] - 25:15

**modification** [1] - 15:24
**modify** [1] - 14:19
**modifying** [1] - 34:7
**moment** [1] - 36:19
**MONDAY** [1] - 1:13, 3:1
**monetary** [1] - 5:16
**money** [7] - 8:21, 18:21, 28:7, 33:11, 33:12, 33:14, 43:18
**months** [1] - 15:8
**moot** [1] - 10:3
**mooting** [1] - 40:13
**moreover** [1] - 39:13
**Morrow** [3] - 7:16, 17:21, 38:20
**Morrow's** [1] - 31:23
**most** [4] - 8:23, 25:13, 35:16
**motion** [6] - 17:1, 17:2, 17:3, 17:6, 29:22
**MOTION** [1] - 1:13
**motions** [4] - 5:6, 5:7, 8:24, 29:25
**motivating** [1] - 27:3
**motivation** [2] - 29:3, 41:21
**motive** [2] - 32:20, 46:14
**move** [1] - 31:7
**moving** [1] - 36:8
**MR** [22] - 3:10, 3:16, 4:1, 4:9, 4:15, 4:18, 9:15, 11:1, 11:16, 15:3, 18:6, 30:21, 31:24, 32:9, 32:15, 40:17, 42:1, 42:24, 45:20, 46:2, 46:4, 47:4
**MS** [44] - 3:7, 3:13, 3:19, 3:22, 3:25, 11:20, 11:22, 12:1, 12:17, 13:1, 13:15, 13:22, 14:5, 14:7, 14:17, 15:2, 15:4, 15:10, 15:14, 15:16, 16:1, 16:6, 16:12, 16:13, 16:16, 16:18, 16:25, 17:14, 17:25, 23:4, 23:25, 24:11, 25:4, 25:13, 25:23, 26:24, 27:18, 28:4, 29:2, 29:20, 30:9, 30:17, 41:18, 45:21
**multi** [1] - 43:15
**multi-million** [1] - 43:15
**multiple** [2] - 5:6, 5:21

**must** [2] - 29:16, 31:22

## N

**nail** [1] - 33:10
**named** [1] - 37:5
**natural** [6] - 8:9, 10:12, 25:5, 26:23, 27:3, 27:8
**NBTY** [3] - 20:6, 43:2, 43:20
**ND** [1] - 33:3
**necessary** [2] - 18:10, 44:24
**need** [1] - 12:15
**needle** [1] - 31:8
**needs** [1] - 33:18
**negotiate** [1] - 44:14
**negotiated** [3] - 19:25, 28:19, 34:20
**negotiating** [4] - 15:18, 22:22, 28:5, 43:8
**negotiation** [1] - 28:20
**negotiations** [1] - 32:12
**never** [6] - 6:19, 23:12, 28:8, 31:3, 31:25, 32:2
**new** [1] - 42:16
**New** [3] - 2:5, 13:12
**next** [1] - 38:16
**night** [1] - 4:25
**Ninth** [8] - 5:6, 19:22, 22:14, 33:4, 34:5, 38:24, 39:25, 44:10
**nobody** [1] - 5:25
**nonfunded** [1] - 13:7
**normal** [1] - 39:14
**North** [1] - 2:11
**noted** [1] - 42:9
**nothing** [10] - 15:16, 16:18, 18:23, 36:15, 39:3, 39:21, 40:3, 40:6, 42:18, 43:6
**notice** [16] - 19:5, 21:25, 22:5, 33:13, 35:8, 35:11, 35:12, 35:13, 35:20, 35:25, 36:2, 36:5, 43:17, 43:18, 44:4
**notification** [2] - 26:1, 26:14
**notifies** [1] - 22:18
**November** [1] - 48:15
**nowhere** [2] - 6:10, 42:7
**Number** [4] - 3:4, 42:13, 46:7, 46:9

**number** [11] - 6:16, 9:15, 9:17, 24:19, 30:23, 31:21, 34:2, 34:3, 34:4, 44:5, 44:7
**numbers** [3] - 13:23, 14:3, 14:4
**NW** [1] - 2:24

## O

**object** [6] - 14:12, 14:24, 33:5, 34:16, 35:11, 40:3
**objecting** [1] - 34:8
**objection** [6] - 16:13, 21:21, 23:4, 32:18, 40:13, 46:11
**objector** [11] - 4:1, 23:10, 23:14, 25:24, 33:18, 36:18, 37:16, 37:19, 38:2, 40:14
**OBJECTOR** [1] - 2:22
**objector's** [2] - 38:2, 45:6
**objectors** [2] - 32:19, 46:13
**obligation** [2] - 18:15, 21:12
**obstacles** [1] - 40:4
**obtains** [1] - 31:11
**obvious** [1] - 29:6
**obviously** [2] - 7:9, 14:12
**occasionally** [1] - 4:12
**occurred** [1] - 15:7
**occurs** [1] - 20:22
**OCTOBER** [2] - 1:13, 3:1
**odds** [1] - 39:15
**OF** [6] - 1:2, 1:12, 2:1, 48:1, 48:3, 48:4
**Official** [1] - 48:20
**OFFICIAL** [3] - 1:23, 48:1, 48:5
**oil** [2] - 10:12, 41:1
**Oil** [5] - 17:17, 20:13, 24:19, 27:5, 45:11
**old** [2] - 5:1, 46:9
**once** [7] - 4:10, 5:18, 6:8, 14:8, 39:14, 44:13
**one** [21] - 6:24, 9:2, 9:15, 12:19, 15:4, 19:16, 21:5, 25:23, 26:6, 28:4, 30:23, 31:16, 32:8, 34:3, 35:16, 40:17, 41:11, 41:18, 44:6
**One** [1] - 2:5

ongoing [2] - 37:16, 37:18
online [1] - 26:11
oOo [1] - 47:8
opinion [5] - 38:19, 42:7, 46:21, 46:22
opinions [1] - 38:22
opposed [1] - 42:22
opposite [1] - 46:20
oranges [1] - 31:7
order [12] - 4:5, 7:10, 13:19, 13:20, 14:8, 14:14, 14:22, 14:23, 15:5, 16:7, 26:11, 30:5
Oregon [1] - 13:12
organization [2] - 33:3, 33:9
original [1] - 17:4
otherwise [3] - 5:7, 18:5, 19:1
ourselves [1] - 34:22
outstrip [1] - 43:19
overage [1] - 41:9
overcome [1] - 16:22
overpaid [2] - 9:24, 9:25
overruling [1] - 40:13
own [12] - 19:12, 19:14, 20:13, 22:12, 22:19, 28:21, 29:6, 29:7, 37:25, 38:6, 38:25, 40:8

## P

P.M [2] - 1:14, 3:2
p.m [1] - 47:7
page [10] - 6:25, 12:1, 12:2, 14:15, 14:16, 15:4, 15:25, 48:11
paid [4] - 17:16, 42:22, 43:22
painstakingly [1] - 28:19
Pampers [1] - 44:22
paper [1] - 31:25
papers [4] - 5:4, 35:10, 36:9, 38:9
paragraph [1] - 14:17
part [5] - 9:13, 26:16, 27:1, 34:6, 40:21
particularly [2] - 32:20, 46:14
parties [8] - 15:5, 16:14, 18:11, 18:14, 20:17, 22:3, 32:5, 44:24
Parties [1] - 16:10
parties' [2] - 4:4, 45:7

partner [1] - 32:24
party [1] - 44:1
pay [8] - 13:7, 19:3, 22:18, 36:15, 43:24, 43:25, 44:21
paying [3] - 25:10, 30:4, 36:13
payment [1] - 13:11
pays [1] - 37:17
Peachtree [1] - 2:19
Pearson [1] - 20:6, 43:2, 43:20, 44:23
pending [1] - 21:21
Pennsylvania [1] - 2:5
penny [1] - 36:16
people [13] - 7:22, 8:21, 10:10, 10:16, 17:16, 21:22, 22:11, 26:12, 27:5, 40:20, 41:6, 41:14, 42:20
per [2] - 41:1, 42:4
percent [23] - 4:23, 5:15, 5:23, 8:9, 10:12, 18:12, 18:23, 21:24, 21:25, 22:2, 22:8, 26:22, 27:4, 27:5, 34:2, 34:21, 35:4, 35:6, 37:1, 40:1, 42:3, 42:5, 44:16
perfect [1] - 46:20
period [1] - 25:7
permit [1] - 20:21
person [2] - 10:4
personally [1] - 42:17
perspective [1] - 41:16
pertinent [1] - 34:6
PHILLIPS [1] - 2:14
picked [1] - 35:15
picking [1] - 7:24
pie [1] - 21:12
piece [1] - 33:18
pitch [1] - 10:17
place [1] - 33:19
plain [1] - 40:23
plaintiff [4] - 19:10, 31:11, 33:11, 37:5
Plaintiff [1] - 1:5
PLAINTIFF [1] - 2:3
plaintiffs [18] - 3:8, 3:14, 3:17, 3:20, 9:11, 10:20, 12:12, 15:17, 16:2, 16:22, 18:7, 18:18, 19:25, 25:3, 26:12, 28:12, 30:9, 42:23
plaintiffs' [17] - 3:11, 4:6, 4:10, 5:25, 7:12, 11:18, 17:9, 23:3,

25:14, 25:17, 25:24, 27:12, 27:19, 27:22, 30:11, 45:3
planned [1] - 17:1
Plaza [1] - 2:5
pleadings [1] - 12:11
PO [1] - 2:8
pocket [2] - 22:19, 34:24
pockets [3] - 19:10, 19:14, 22:12
point [13] - 4:21, 7:22, 8:1, 10:3, 15:4, 16:4, 28:5, 29:9, 32:4, 34:20, 38:16, 40:17, 41:23
pointed [9] - 6:16, 19:24, 20:24, 23:9, 26:25, 33:20, 33:23, 37:24, 38:17
points [5] - 6:15, 11:23, 36:12, 39:22, 46:19
positive [3] - 11:7, 36:21, 37:23
possible [7] - 18:21, 18:24, 19:2, 33:15, 45:2, 45:4
potential [1] - 26:13
practice [1] - 39:14
pre [1] - 13:24
pre-deduplication [1] - 13:24
precedent [1] - 28:15
preempt [1] - 5:7
premium [5] - 9:22, 17:19, 21:1, 21:4, 21:7
presented [1] - 22:17
pretty [3] - 16:24, 18:3, 18:5
prevail [1] - 17:6
prevailed [3] - 5:8, 29:21, 30:3
prevailing [1] - 17:7
prevent [1] - 43:9
previous [1] - 42:1
previously [1] - 42:16
price [8] - 9:22, 17:16, 17:19, 21:1, 21:2, 21:4, 21:7, 28:14
primarily [1] - 13:23
primary [1] - 5:8
principle [5] - 7:13, 16:4, 16:7, 16:11, 16:15
private [1] - 8:14
privilege [2] - 29:5, 29:13
problem [6] - 4:13,

7:1, 7:2, 7:5, 10:7, 46:22
problems [5] - 7:18, 8:16, 9:12, 20:25, 22:20
procedural [1] - 16:21
PROCEEDINGS [1] - 1:12
Proceedings [1] - 47:7
proceedings [1] - 48:10
process [7] - 8:6, 19:5, 21:19, 22:4, 28:20, 35:22, 44:17
product [12] - 7:24, 8:8, 10:11, 17:17, 26:9, 26:20, 27:7, 27:8, 28:14, 41:21
products [2] - 12:21, 26:7
Professor [5] - 38:2, 38:12, 38:14, 40:4, 40:12
program [6] - 33:13, 35:13, 35:18, 35:21, 35:23, 36:1
proof [6] - 12:4, 12:21, 13:3, 22:4, 41:11, 41:19, 41:21, 41:24
proportionality [3] - 23:22, 27:11, 34:15
proportionally [1] - 21:13
proportionately [2] - 18:16, 19:1
proposal [1] - 33:21
proposals [1] - 35:15
proposed [3] - 5:13, 13:20, 36:2
proposition [1] - 42:3
prospective [1] - 5:17
protected [1] - 29:4
protecting [1] - 8:13
prove [5] - 7:22, 10:15, 41:7, 41:16, 45:7
provide [3] - 26:18, 41:11, 41:12
provided [2] - 43:13, 43:14
provider [1] - 36:5
proving [2] - 7:18, 9:12
provision [2] - 43:8, 43:11
purchase [10] - 10:11, 12:4, 12:21, 13:4, 13:5, 28:14, 41:1, 41:19, 41:22, 41:24

purchased [4] - 10:10, 26:9, 40:24, 41:15
purchasers [1] - 26:20
purchasing [1] - 41:21
purports [1] - 42:6
purpose [1] - 26:16
purposes [2] - 9:3, 9:4
pursuant [1] - 48:8
put [17] - 6:7, 6:13, 6:18, 8:5, 10:2, 11:6, 14:10, 22:5, 32:23, 34:22, 37:2, 38:4, 39:4, 39:13, 39:18, 41:13
putting [5] - 9:4, 32:21, 37:2, 37:11, 46:15

## Q

qualification [1] - 38:9
quantify [2] - 30:19, 32:7
questions [6] - 22:24, 24:3, 28:3, 31:16, 42:15, 45:15
quick [1] - 25:23
quickly [1] - 40:18
quite [1] - 27:20
quote [1] - 46:23

## R

RadioShack [1] - 43:3
Ralphs [2] - 18:24, 44:2
rate [6] - 22:2, 26:2, 26:17, 31:5, 31:6, 35:24
rates [1] - 21:23
rather [4] - 6:13, 6:17, 35:5, 40:4
reached [5] - 5:13, 15:5, 15:12, 16:10, 16:14
read [1] - 46:21
Reading [2] - 13:1, 13:9
reading [1] - 31:23
ready [1] - 25:15
real [3] - 25:23, 31:8, 40:1
realize [1] - 31:19
really [12] - 7:21, 13:14, 17:13, 17:18, 25:12, 27:25, 30:17, 31:7, 31:23, 32:10, 34:19, 38:4
REALTIME [1] - 48:5
reason [6] - 6:8, 9:19,

33:15, 44:18, 46:21
**reasonable** [2] - 23:15, 45:8
**reasonably** [1] - 8:18
**reasoning** [1] - 29:6
**reasons** [6] - 22:13, 27:7, 30:22, 31:20, 32:12, 39:9
**receipt** [1] - 41:24
**receipts** [6] - 12:4, 13:4, 40:21, 41:7, 41:12, 41:14
**received** [3] - 4:5, 4:18, 23:12
**receiving** [1] - 23:7
**recent** [1] - 17:10
**recognize** [2] - 21:20, 44:23
**recognized** [1] - 39:18
**recollection** [2] - 10:20, 24:6
**recommendation** [3] - 5:21, 6:20, 28:22
**record** [6] - 5:4, 16:20, 29:15, 31:21, 37:25, 45:21
**records** [1] - 44:3
**recover** [1] - 25:3
**recovery** [5] - 12:2, 12:5, 12:10, 26:2, 31:11
**red** [3] - 19:22, 30:22, 43:1
**Redman** [1] - 43:3
**redressing** [1] - 34:10
**reduce** [2] - 43:5, 44:6
**reduction** [2] - 19:19, 20:2
**references** [2] - 16:7, 16:8
**referred** [1] - 6:25
**reflect** [1] - 41:22
**reflection** [1] - 30:10
**regulations** [1] - 48:12
**reject** [2] - 18:13, 20:15
**relating** [1] - 24:23
**relationship** [2] - 37:18, 40:8
**released** [1] - 21:21
**reliance** [1] - 10:9
**relied** [1] - 9:25
**relief** [5] - 5:19, 20:18, 20:22, 24:9, 24:12, 25:19, 25:20, 25:21, 34:16, 36:4, 36:11, 39:20, 45:3
**rely** [2] - 10:4, 10:10
**remained** [1] - 24:16
**remaining** [1] - 13:11

**remanded** [1] - 43:21
**remarkable** [1] - 20:8
**remarkably** [2] - 19:7, 42:10
**remember** [1] - 10:12
**removed** [1] - 30:25
**repeat** [1] - 42:14
**report** [1] - 39:14
**reported** [1] - 48:10
**REPORTER** [3] - 1:23, 48:1, 48:6
**Reporter** [1] - 48:20
**REPORTER'S** [1] - 1:12
**represent** [1] - 12:22
**representation** [5] - 7:23, 8:8, 10:10, 10:16, 26:22
**representations** [1] - 45:24
**represented** [1] - 45:22
**request** [3] - 19:18, 20:1
**require** [2] - 20:11, 45:12
**required** [2] - 17:5, 37:14
**reraise** [1] - 38:10
**reserve** [1] - 6:21
**resolution** [2] - 43:14, 43:15
**resolved** [1] - 11:5
**resolving** [1] - 17:24
**resources** [1] - 9:5
**respect** [7] - 7:19, 9:11, 9:18, 16:20, 28:23, 29:11, 36:2, 38:16, 41:1
**respectful** [1] - 18:4
**respectfully** [1] - 40:10
**respond** [3] - 6:22, 23:2, 27:13
**response** [1] - 27:14
**responsible** [1] - 25:2
**rest** [1] - 42:8
**result** [10] - 6:21, 8:17, 9:22, 9:24, 9:25, 11:1, 11:11, 34:10, 40:1, 40:10
**resulted** [1] - 39:23
**results** [1] - 39:24
**retained** [1] - 25:9
**retroactive** [1] - 25:20
**retroactively** [1] - 25:18
**retrospective** [1] - 35:4
**revenue** [1] - 25:6

**reverses** [1] - 44:10
**reversible** [1] - 18:14
**revert** [1] - 13:11
**review** [1] - 5:4
**reviewed** [1] - 4:19
**reward** [1] - 6:6
**Richardson** [2] - 15:21, 20:13
**Richardsons** [2] - 15:7, 15:10
**rights** [2] - 31:12, 31:18
**rise** [1] - 47:6
**risk** [6] - 6:14, 6:18, 37:3, 37:12, 38:5
**risks** [4] - 6:15, 6:17, 11:10, 37:24
**road** [2] - 4:24, 9:19
**roaring** [1] - 46:5
**ROBERT** [1] - 1:4
**Robert** [1] - 3:5
**robust** [1] - 35:16
**roll** [1] - 6:17
**roughly** [1] - 12:23
**rounds** [3] - 5:6, 5:10, 5:21
**routinely** [1] - 20:15
**Rule** [8] - 7:2, 8:2, 21:12, 22:16, 42:16, 43:7, 43:10, 43:11
**ruling** [2] - 22:14, 22:15
**run** [2] - 14:1, 26:18

## S

**sailing** [2] - 19:18, 19:24
**sale** [7] - 15:10, 24:12, 24:14, 24:20, 24:21, 24:24, 25:8
**sales** [4] - 17:18, 25:7, 26:1, 26:5
**San** [1] - 2:8
**saw** [1] - 5:3
**scholar** [1] - 8:3
**se** [1] - 42:4
**SEC** [2] - 24:17, 24:18
**second** [3] - 31:3, 35:13, 41:19
**Section** [2] - 12:9, 12:19, 48:8
**section** [1] - 12:18
**see** [3] - 9:10, 10:21, 15:12
**seeing** [1] - 10:12
**self** [3] - 44:25, 45:1, 45:2
**self-interest** [3] - 44:25, 45:1, 45:2

**selfish** [1] - 43:8
**sell** [1] - 24:7
**send** [4] - 21:24, 26:3, 26:4
**sending** [1] - 29:18
**sense** [4] - 8:5, 9:3, 9:4, 29:10
**sent** [1] - 26:14
**separate** [14] - 5:7, 5:10, 5:16, 5:22, 9:2, 9:6, 19:16, 19:17, 41:13, 42:25, 43:1, 43:2, 43:3
**separately** [1] - 42:23
**serious** [1] - 37:24
**set** [6] - 5:16, 19:11, 19:15, 23:10, 23:15, 23:17
**setting** [1] - 28:14
**settle** [5] - 6:20, 10:21, 10:23, 21:10, 44:7
**settled** [3] - 20:19, 21:11, 44:19
**Settlement** [1] - 16:8
**settlement** [65] - 5:13, 6:23, 7:11, 9:4, 9:13, 9:17, 11:4, 11:7, 11:8, 12:8, 12:12, 12:18, 12:25, 13:14, 14:15, 15:6, 15:8, 15:11, 15:15, 15:18, 15:19, 15:21, 16:11, 16:14, 18:9, 18:19, 19:7, 19:11, 19:21, 20:16, 20:25, 21:15, 22:8, 22:17, 22:20, 22:22, 23:10, 23:15, 23:16, 23:18, 26:15, 27:15, 28:5, 28:7, 28:20, 28:24, 29:4, 32:18, 33:1, 35:17, 36:4, 36:17, 36:23, 36:24, 37:22, 39:22, 39:23, 40:7, 43:7, 44:8, 44:13, 44:14, 45:7, 45:14, 46:12
**settlement's** [2] - 22:15, 33:12
**settlements** [3] - 20:17, 38:25, 43:13
**settles** [1] - 5:25
**settling** [1] - 18:15
**Seventh** [4] - 33:2, 37:7, 37:25, 43:21
**sever** [2] - 17:3, 29:22
**several** [1] - 17:10
**shall** [1] - 13:7
**share** [2] - 18:16, 42:3
**shared** [1] - 17:22
**shareholders** [1] -

20:17
**shelf** [1] - 7:24
**shiny** [1] - 34:15
**shoe's** [1] - 37:15
**shortly** [1] - 11:13
**show** [1] - 27:3
**shows** [2] - 21:21, 22:19
**shut** [2] - 9:6, 30:6
**sic** [1] - 44:22
**side** [3] - 30:21, 41:14, 46:18
**sides** [1] - 36:25
**sign** [2] - 13:18, 14:13
**signed** [3] - 15:20, 16:9
**significant** [3] - 7:17, 9:12, 42:21
**simpler** [1] - 15:24
**simply** [4] - 4:22, 18:9, 37:21, 39:12
**singing** [1] - 18:2
**single** [1] - 36:20
**sitting** [2] - 30:11, 30:12
**situation** [2] - 28:17, 35:2
**slowly** [1] - 13:14
**small** [2] - 35:23, 39:16
**Smucker's** [2] - 24:13, 24:21
**sold** [3] - 15:6, 16:15, 24:13
**sole** [1] - 36:18
**solid** [1] - 46:20
**someone** [1] - 37:17
**sometimes** [1] - 13:19
**somewhat** [1] - 6:3
**son** [1] - 4:25
**sorry** [2] - 13:17, 25:24
**sort** [4] - 7:4, 20:14, 33:5, 36:18
**sorts** [1] - 32:12
**sounds** [2] - 10:17, 18:1
**Southwest** [1] - 37:4, 38:13, 38:14, 42:10
**SPAAN** [3] - 1:23, 48:5, 48:19
**Spaan** [1] - 48:20
**speaking** [1] - 16:22
**specific** [2] - 7:7, 16:2
**specifically** [1] - 8:1
**spends** [1] - 30:21
**spent** [5] - 30:7, 30:10, 31:1, 31:17, 31:22

**Spivey** [1] - 3:22
**SPIVEY** [37] - 2:19, 3:22, 3:25, 11:22, 12:1, 12:17, 13:1, 13:15, 13:22, 14:17, 15:2, 15:4, 15:10, 15:14, 15:16, 16:6, 16:12, 16:16, 16:18, 16:25, 17:14, 17:25, 23:4, 23:25, 24:11, 25:4, 25:13, 25:23, 26:24, 27:18, 28:4, 29:2, 29:20, 30:9, 30:17, 41:18, 45:21
**split** [3] - 19:3, 33:7, 44:21
**spoken** [1] - 15:7
**stage** [1] - 6:5
**stand** [2] - 27:25, 33:4
**standing** [3] - 34:3, 34:9, 34:12
**standpoint** [1] - 9:9
**staple** [1] - 31:24
**start** [3] - 8:25, 10:21, 32:15
**starting** [2] - 14:17, 24:4
**STATE** [1] - 48:4
**state** [10] - 3:6, 8:12, 13:12, 17:3, 17:4, 17:12, 29:18, 29:24, 30:2, 35:18
**state-of-the-art** [1] - 35:18
**Staten** [1] - 44:22
**states** [5] - 5:17, 17:13, 29:25, 30:1, 32:25
**STATES** [1] - 1:1
**States** [3] - 48:6, 48:8, 48:13
**statewide** [1] - 6:3
**statutory** [1] - 5:17
**stay** [1] - 5:7
**steep** [1] - 18:5
**stenographically** [1] - 48:10
**step** [1] - 6:2
**still** [1] - 8:20
**stipulate** [1] - 21:5
**store** [1] - 26:11
**stores** [1] - 36:3
**storm** [1] - 37:16
**straws** [1] - 40:5
**Street** [3] - 2:11, 2:19, 2:24
**STREET** [1] - 1:24
**strong** [1] - 11:7
**structured** [2] - 19:7, 21:14

**structuring** [1] - 22:3
**study** [1] - 21:21
**stutter** [1] - 4:12
**subclasses** [1] - 17:12
**submission** [2] - 23:5, 45:18
**submit** [9] - 12:4, 13:3, 14:7, 14:12, 14:21, 40:23, 41:2, 41:3, 41:9
**submitted** [3] - 12:21, 13:18, 40:21
**subpoena** [2] - 18:24, 36:3
**substantially** [2] - 30:9, 30:14
**substituted** [1] - 31:1
**Subway's** [1] - 20:16
**successor** [1] - 39:15
**suddenly** [1] - 43:23
**sufficient** [1] - 18:10
**suggest** [1] - 37:21
**suggested** [1] - 43:25
**Suite** [3] - 2:15, 2:20, 2:24
**SUITE** [1] - 1:24
**sum** [1] - 39:21
**summary** [3] - 17:2, 17:6, 30:1
**supermarket** [1] - 18:24
**supermarkets** [1] - 44:2
**supplement** [1] - 40:17
**support** [3] - 9:16, 28:2, 40:24
**surrender** [1] - 20:24
**survey** [1] - 26:25
**surveyed** [1] - 27:4
**sustained** [1] - 38:19

**T**

**table** [1] - 30:12
**Tadler** [4] - 3:7, 3:9, 16:1
**TADLER** [7] - 2:4, 2:4, 2:7, 3:7, 11:20, 16:1, 16:13
**tall** [1] - 5:1
**target** [1] - 36:5
**tee** [2] - 8:24, 8:25
**ten** [1] - 28:13
**tens** [1] - 35:2
**tentative** [17] - 4:5, 4:8, 4:18, 6:15, 6:25, 11:9, 11:12, 11:13, 11:23, 15:5, 15:15, 15:18, 16:6, 22:14,

39:23, 40:11
**terms** [3] - 9:20, 30:21, 36:3
**THE** [64] - 2:3, 2:17, 2:22, 3:4, 3:9, 3:12, 3:15, 3:18, 3:21, 3:24, 4:3, 4:14, 4:17, 7:7, 10:5, 11:15, 11:17, 11:21, 11:25, 12:14, 12:24, 13:13, 13:16, 14:6, 14:10, 14:19, 15:9, 15:12, 15:15, 15:23, 16:5, 16:10, 16:14, 16:17, 16:19, 17:10, 17:20, 18:1, 23:1, 23:19, 24:1, 24:25, 25:11, 25:22, 26:19, 27:9, 28:3, 28:21, 29:11, 30:5, 30:15, 30:20, 31:9, 32:2, 32:14, 40:16, 41:17, 41:25, 42:19, 45:17, 46:1, 47:2, 47:5, 47:6
**themselves** [6] - 19:12, 19:17, 19:25, 22:23, 43:8, 44:9
**THEODORE** [1] - 2:23
**Theodore** [1] - 4:1
**thereafter** [1] - 11:13
**thereby** [1] - 40:12
**they've** [2] - 8:9, 40:7
**thinking** [1] - 7:5
**third** [1] - 44:1
**third-party** [1] - 23:1
**thorough** [1] - 23:1
**three** [3] - 15:8, 19:22, 30:23
**throttle** [2] - 44:5, 44:6
**throw** [3] - 36:23, 37:1, 37:2
**thrown** [1] - 44:13
**throws** [1] - 29:24
**Title** [1] - 48:8
**today** [1] - 23:13
**TODD** [1] - 2:22
**Todd** [1] - 4:2
**together** [1] - 37:9
**tomorrow** [1] - 45:19
**took** [1] - 25:5
**top** [1] - 28:1
**tough** [1] - 9:14
**transaction** [1] - 8:19
**Transcript** [1] - 1:5
**transcript** [2] - 46:2, 48:9, 48:11
**TRANSCRIPT** [1] - 1:12
**transfer** [2] - 17:4, 29:22

**trial** [14] - 5:15, 5:20, 6:14, 8:2, 8:5, 9:2, 9:5, 10:2, 10:8, 10:18, 33:23, 33:24, 35:7, 39:4
**trials** [2] - 9:6, 17:5
**tried** [1] - 17:13
**Trucks** [1] - 44:22
**true** [2] - 43:19, 48:9
**truly** [1] - 10:10
**trust** [2] - 38:8
**try** [2] - 7:7, 20:17
**trying** [13] - 9:7, 15:23, 18:4, 21:5, 29:12, 29:14, 29:24, 32:3, 32:5, 32:6, 42:19
**turn** [2] - 4:7, 16:23
**tweet** [1] - 32:22
**tweets** [2] - 32:25, 34:15
**Twitter** [1] - 37:16
**two** [7] - 5:10, 7:11, 9:17, 34:3, 36:14, 44:11, 44:24
**type** [1] - 31:11
**types** [1] - 30:18

**U**

**U.S** [1] - 1:3
**ultimately** [7] - 5:18, 5:20, 10:1, 10:2, 11:12, 39:3, 39:9
**unaware** [2] - 24:11, 24:23
**uncapped** [1] - 35:1
**under** [14] - 7:2, 18:14, 19:21, 21:12, 22:15, 22:16, 30:1, 30:13, 39:14, 43:7, 43:10, 43:11, 44:16, 45:18
**underscore** [1] - 46:19
**unfair** [9] - 19:21, 20:20, 20:23, 22:15, 22:16, 23:8, 23:12, 33:12, 43:7
**United** [3] - 48:6, 48:8, 48:13
**UNITED** [1] - 1:1
**units** [9] - 12:22, 40:21, 40:24, 41:3, 41:6, 41:8, 41:9, 41:10, 41:15
**unkept** [1] - 35:1
**unless** [3] - 33:4, 42:14, 43:22
**unlike** [1] - 5:24
**unreasonable** [4] - 23:8, 23:12, 42:4, 42:5

**up** [18] - 5:16, 8:24, 8:25, 19:11, 19:15, 22:14, 24:24, 28:1, 28:9, 32:23, 40:24, 41:3, 42:8, 44:21, 46:5, 46:7, 46:25
**uphill** [2] - 10:19, 18:5
**upset** [1] - 42:20

**V**

**valid** [2] - 12:4, 13:3
**value** [10] - 20:9, 20:10, 20:21, 21:3, 21:6, 39:1, 39:10, 39:18, 39:19
**vendors** [1] - 44:1
**verified** [1] - 14:9
**versus** [1] - 32:11
**vetted** [2] - 35:14, 35:15
**vetting** [1] - 35:22
**victory** [1] - 29:23
**view** [1] - 7:13
**vigorously** [1] - 16:24
**violate** [1] - 20:12
**violated** [2] - 42:16
**vital** [1] - 40:7
**Volkswagen** [1] - 34:6
**vs** [6] - 1:6, 3:5, 20:6, 43:2, 43:3, 43:20

**W**

**waffles** [1] - 10:13
**Walgreens** [1] - 20:16
**walk** [1] - 11:12
**wants** [4] - 31:6, 36:22, 37:1, 37:2
**Washington** [1] - 2:24
**ways** [2] - 21:5, 36:6
**weak** [1] - 18:7
**website** [1] - 26:7
**Weir** [6] - 25:14, 25:17, 38:17, 38:18, 38:19, 39:1
**Weir's** [2] - 38:19, 38:25
**welcome** [1] - 46:24
**Wesson** [7] - 15:6, 16:15, 17:17, 20:13, 24:19, 27:5, 45:11
**WEST** [1] - 1:24
**West** [1] - 2:19
**WESTERN** [1] - 1:2
**Westlaw** [2] - 46:6, 46:8
**whereas** [2] - 8:22, 24:2
**whereby** [1] - 19:24,

22:17
**whole** [5] - 4:20, 11:6, 24:6, 34:14, 36:24
**willing** [3] - 19:2, 33:5, 38:4
**Wilshire** [1] - 2:15
**wind's** [1] - 4:20
**windfall** [1] - 18:16
**windfalls** [1] - 34:20
**withheld** [1] - 40:7
**won** [2] - 6:5, 43:20
**wording** [1] - 12:15
**words** [5] - 10:22, 16:2, 23:19, 25:1
**works** [1] - 37:17
**world** [1] - 31:14
**worth** [3] - 18:16, 20:10, 45:13
**worthless** [1] - 45:12
**wrapped** [1] - 7:21
**write** [1] - 13:13
**writing** [2] - 15:16, 42:15

## Y

**year** [2] - 5:1, 41:1
**years** [12] - 5:5, 7:23, 8:17, 9:14, 11:5, 25:7, 30:16, 30:24, 36:24, 39:24, 41:15, 44:11
**York** [3] - 2:5, 13:12
**young** [1] - 4:19

## Z

**zealous** [1] - 8:13
**zero** [3] - 20:10, 34:17, 45:13