**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
DAVID E. AZAR (SBN 218319)
280 S. Beverly Drive, Suite PH
Beverly Hills, California  90212
Telephone: (213) 617-1200
dazar@milberg.com

**TADLER LAW LLP**
ARIANA J. TADLER (*pro hac vice*)
22 Bayview Avenue
Manhasset, New York 11030
Telephone: (212) 946-9300
atadler@tadlerlaw.com

**DICELLO LEVITT GUTZLER LLC**
ADAM J. LEVITT (*pro hac vice*)
Ten North Dearborn Street,
    Sixth Floor
Chicago, Illinois  60602
Telephone: (312) 214-7900
alevitt@dicellolevitt.com

*Appointed Class Counsel*

*Additional Counsel on Signature Page*

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

|  |  |
|---|---|
| IN RE CONAGRA FOODS, INC. | ) Case No. CV 11-05379-CJC (AGRx)<br>)<br>) MDL No. 2291<br>)<br>) **CLASS ACTION**<br>)<br>) **RENEWED MOTION AND**<br>) **MEMORANDUM IN SUPPORT FOR FINAL**<br>) **APPROVAL OF THE SETTLEMENT AND**<br>) **AWARD OF ATTORNEYS' FEES,**<br>) **EXPENSES, AND SERVICE AWARDS**<br>)<br>)<br>/ |

RENEWED MOTION AND MEMORANDUM
IN SUPPORT FOR FINAL APPROVAL OF
THE SETTLEMENT AND AWARD OF
ATTORNEYS' FEES, EXPENSES AND
SERVICE AWARDS

CV 11-05379-CJC (AGRx)

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................ 4

      A.    Procedural History ................................................................................ 4

      B.    Key Settlement Terms .......................................................................... 5

III.  ARGUMENT ..................................................................................................... 6

      A.    The Bluetooth Factors and Rule 23(e)(2)(C)(iii) Issues Identified for Remand .......... 9

            1.    Rule 23(e)(2)(C)(iii): The relief provided for the class is adequate, taking into account the terms of any proposed award of attorney's fees, including timing of payment. ................................................... 9

                  a.    The Ninth Circuit was clear: the appearance of Bluetooth factors does not make a settlement per se unreasonable because there is no rule on absolute proportionality .............................................................. 10

                  b.    Creating a per se proportionality rule would threaten the purpose of fee-shifting statutes. ..................................... 11

                  c.    Bluetooth necessarily requires courts to examine whether collusion—explicit or subtle—has actually occurred .................................................................... 14

                  d.    The "clear sailing" and "kicker" clauses do not render the settlement invalid. ................................................. 15

                  e.    Magisgate Judge McCormick's fee proposal was not reached by collusion, and is not an effort to "sell out" the class ........................ 16

      B.    Factors Not Identified for Scrutiny on Remand ................................. 18

            1.    Rule 23(e)(2)(A): The class representatives and class counsel have adequately represented the class. ................................ 18

            2.    Rule 23(e)(2)(B): The settlement was negotiated at arm's length. ............... 20

            3.    Rule 23(e)(2)(C)(i): The relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and appeal. ............... 20

4.      Rule 23(e)(2)(C)(ii): The relief provided for the class is adequate,
        taking into account the effectiveness of any proposed method of
        distributing relief to the class, including the method of processing
        class-member claims. .................................................................................. 22

5.      The proposal treats class members equitably ................................................. 25

6.      Plaintiffs' service awards were not disturbed by the Ninth Circuit. .............. 25

IV.     CONCLUSION ........................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**                                                                                  **Page(s)**

*1940 Carmen, LLC v. City of Los Angeles,*
   Nos. 20-cv-06772 and 20-cv-08130, 2021 WL 340648
   (C.D. Cal. Aug. 4, 2021) ........................................................................ 25

*In re Bluetooth Headset Products Liability Litigation,*
   654 F.3d 935 (9th Cir. 2011) ........................................................ 11, 14, 17

*Briseño v. ConAgra Foods, Inc.,*
   674 F. App'x 654 (9th Cir. 2017) ...................................................... 5, 19

*Briseño v. ConAgra Foods, Inc.,*
   844 F.3d 1121 (9th Cir. 2017) .................................................................. 19

*Briseño v. ConAgra Foods, Inc.,*
   844. F.3d 1121 (9th Cir. 2017), *cert. denied* 138 S. Ct. 313 (2017) ............. 19

*Briseño v. Henderson,*
   998 F.3d 1014 (9th Cir. 2021) .......................................................... *passim*

*California v. Azar,*
   911 F.3d 558 (9th Cir. 2018) .................................................................... 25

*Campbell v. Facebook, Inc.,*
   951 F.3d 1106 (9th Cir. 2020) .......................................................... 11, 17

*Conagra Brands, Inc. v. Briseño,*
   138 S. Ct. 313 (2017) ................................................................................ 20

*In re Conagra Foods, Inc.,*
   90 F. Supp. 3d 919 (C.D. Cal. 2015) ............................................ 5, 19, 20

*Corzine v. Whirlpool Corp.,*
   No. 15-cv-05764, 2019 WL 7372275 (N.D. Cal. Dec. 31, 2019)............... 18

*Dennis v. Kellogg Co.,*
   09-CV-1786-L, 2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) ................... 22

*Destefano v. Zynga, Inc.,*
   No. 12-CV-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ......... 23

RENEWED MOTION AND MEMORANDUM
IN SUPPORT FOR FINAL APPROVAL OF
THE SETTLEMENT AND AWARD OF
ATTORNEYS' FEES, EXPENSES AND
SERVICE AWARDS

iv

CV 11-05379-CJC (AGRx)

*In re Dry Max Pampers Litig.* ("*Pampers*"),
     724 F.3d 713, 718 (6th Cir. 2013 ..................................................................... 15

*Edwards v. First American Corp.*,
     No. CV 07-03796, 2016 WL 8943464 (C.D. Cal. June 20, 2016),
     2016 WL 8999934 (C.D. Cal. Oct. 4, 2016) ..................................................... 18

*Evon v. Law Offices of Sidney Mickell*,
     688 F.3d 1015 (9th Cir. 2012) .......................................................................... 14

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
     55 F.3d 768 (3d Cir. 1995) ............................................................................... 12

*Hayward v. Ventura Volvo*,
     108 Cal. App. 4th 509 (2003) ........................................................................... 12

*Mendez-Gutierrez v. Gonzales*,
     444 F.3d 1168 (9th Cir. 2006) ............................................................................ 8

*Millea v. Metro-North R.R.*,
     658 F.3d 154 (2d Cir. 2011) .............................................................................. 14

*Mirchandani v. United States*,
     836 F.2d 1223 (9th Cir. 1988) ............................................................................ 8

*In re Online DVD-Rental Antitrust Litig.*,
     779 F.3d 934 (9th Cir. 2015) ............................................................................ 23

*Patel v. Trans Union, LLC*,
     No. 14-cv-00522-LB, 2018 WL 1258194 (N.D. Cal. Mar. 11, 2018) ................ 14

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
     944 F.3d 1035 (9th Cir. 2019) ..................................................................... 11, 17

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
     904 F.2d 1301 (9th Cir. 1990) .......................................................................... 17

*Vizcaino v. Microsoft Corp.*,
     290 F.3d 1043 (9th Cir. 2002) .......................................................................... 17

*Williams v. MGM-Pathe Commc'ns Co.*,
     129 F.3d 1026 (9th Cir. 1997) .......................................................................... 14

RENEWED MOTION AND MEMORANDUM
IN SUPPORT FOR FINAL APPROVAL OF
THE SETTLEMENT AND AWARD OF
ATTORNEYS' FEES, EXPENSES AND
SERVICE AWARDS
                                                    v                              CV 11-05379-CJC (AGRx)

**Statutes**

California Consumer Legal Remedies Act § 1780(e)...................................................................... 13, 19

Colorado Revised Statutes Title 6. Consumer and
    Commercial Affairs § 6-1-1113....................................................................................... 13, 19

Florida Deceptive and Unfair Trade Practices Act §521.2105 ................................................... 13, 19

Illinois Consumer Fraud and Deceptive Business
    Practices Act, 815 ILCS 505/10a(c) ........................................................................... 13, 19

New York Gen. Bus. Law § 349(h) ............................................................................................. 13, 19

Ohio Consumer Sales Practices § 1345.09 ................................................................................. 13, 19

Oregon Rev. Stat. § 646.638(3) .................................................................................................. 13, 19

Tex. Bus. & Comm. Code § 17.50(d)......................................................................................... 13, 19

**Rules**

Fed. R. Civ. P. 23(c) .......................................................................................................................... 25

Fed. R. Civ. P. 23(e). ................................................................................................................. 7, 8, 26

**Other Authorities**

William D. Henderson, *Clear Sailing Agreements: A Special Form of Collusion in Class
Action Settlements*, 77 Tul. L. Rev. 813, 814 (2003) .................................................................. 16

RENEWED MOTION AND MEMORANDUM
IN SUPPORT FOR FINAL APPROVAL OF
THE SETTLEMENT AND AWARD OF
ATTORNEYS' FEES, EXPENSES AND
SERVICE AWARDS

vi

CV 11-05379-CJC (AGRx)

## I.   INTRODUCTION

After multiple rounds of private negotiations and with the assistance of two separate mediators—one of whom is a sitting federal magistrate judge appointed by this Court to mediate this case—the Parties (Plaintiffs and Defendant Conagra) ultimately reached a settlement with the assistance of Magistrate Judge Douglas F. McCormick after what was then eight, hard-fought years of litigation. Although the per-unit settlement relief for the certified classes (and the sole Objector), was more than they (and he) could have achieved had Plaintiffs been successful at trial, class counsel's proposed attorneys' fees (which only amounted to half of their lodestar) were greater than the total dollar amount of claims filed.  The Objector appealed, arguing that this "misallocation" violated Rule 23(e). While the Ninth Circuit did not find that such settlements should be *per se* rejected, it reversed the Court's order approving the settlement, remanding the case after providing clarity that "district courts must apply the *Bluetooth* factors to scrutinize fee arrangements—even in post-class certification settlements—to determine if collusion may have led to class members being shortchanged."  *Briseño v. Henderson*, 998 F.3d 1014, 1026 (9th Cir. 2021) (citing *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 941 (9th Cir. 2011)). In making this determination, the Panel pointed to "three red flags" that the district court needed to examine upon remand in this case:

> Disproportionate fee awards, clear sailing agreements, and kicker clauses all may be elements of a good deal. But, as we explained in *Bluetooth*, they may also signal a collusive settlement, and district courts must scrutinize them where they appear. . . . The district court thus should give a hard look at the settlement agreement to ensure that the parties have not colluded at the class members' expense.

*Id.* at 1027.

Unfortunately, it appeared as though the Ninth Circuit based its opinion on an incomplete understanding of the facts before this Court and the historical record of this hard-fought litigation. Accordingly, on remand, Magistrate Judge McCormick was asked by this Court to provide a declaration explaining how the settlement was negotiated, explaining salient facts that would impact this Court's analysis of possible "collusion" based upon the Ninth Circuit's instructions on remand.

*See* Exhibit A (July 19, 2021 Hrg. Tr. at 6:5-24). Magistrate Judge McCormick submitted his declaration on September 8, 2021, noting, among other important facts, that:

- He spent five months and approximately 100 hours helping the parties to reach a settlement, noting "significant" "differences" between the parties' positions. ECF No. 739 ¶¶1-5.

- The value of potential injunctive relief was a major area of disagreement between the parties, because Plaintiffs believed their lawsuit was the "catalyst" for a label change by Conagra, and Conagra was trying to divest itself of the Wesson Oil brand. *Id.* ¶8. Ultimately, Magistrate Judge McCormick proposed that injunctive relief would be valued at $27 million. *Id.* at ¶14.

- Given the potentially-skeptical view that jurors and the Court would give to Plaintiffs' labeling claims, a claims-made settlement of 15 cents per each unit of Wesson-branded products purchased would be a "significant recovery for members of the class." *Id.* at ¶10.a.

- Attorneys' fees "would be a significant hurdle" for the case, considering the "lengthy docket containing well over 600 entries," as well as the thousands of hours class counsel spent on the case. *Id.* at ¶¶12-13. Accordingly, after the material terms of the settlement were negotiated, Magistrate Judge McCormick made a mediator's proposal that "Plaintiffs' counsel would agree to seek and [Conagra] would agree not to oppose attorney's fees and expenses of $6,850,000." *Id.* ¶14.

- Magistrate Judge McCormick would review proposals from the parties' proposed claims administrators, and *he* would select the notice and claims administrator. *Id.*

Importantly, Magistrate Judge McCormick was sensitive about the Ninth Circuit's comments regarding collusion, and offered additional insight into the settlement process in this case:

> I am sensitive to the fact that the parties should not be permitted to use the involvement of a sitting judicial officer to insulate a settlement that is collusive to the detriment of class members. In light of the Ninth Circuit's opinion, I have thought about these negotiations and my own role in them. I saw nothing in the parties' conduct before me to indicate that they were colluding at the class

RENEWED MOTION AND MEMORANDUM IN SUPPORT FOR FINAL APPROVAL OF THE SETTLEMENT AND AWARD OF ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS

2

CV 11-05379-CJC (AGRx)

1    members' expense. As outlined above, the settlement agreement resolved several

2    issues on which the outcome was uncertain and on which additional litigation

3    would be expensive. Although the parties negotiated their differences on those

4    issues respectfully, they also did so vigorously. Nearly every settlement term

5    discussed in this declaration was the result of several rounds of proposals and

6    counter-proposals. And several of the final terms, including attorney's fees, were

7    resolved only after I made a proposal. I do believe that the court proposal, made

8    after spending many hours listening to each side's concerns, was important to

9    reaching an agreement.

10  ECF No. 739 ¶20.

11       Plaintiffs believe that Magistrate Judge McCormick's declaration directly addressed the Ninth

12  Circuit's opinion, putting to bed the specter of purported "collusion" that has clouded this case since

13  the Objector's first filing over two years ago. Unfortunately, Objector's counsel still maintains that

14  the settlement violates Rule 23(e) because of "objective manifestations of impermissible misallocation

15  that the Ninth Circuit calls 'collusion[.]'" *See* Exhibit F (Email exchange between T. Frank and class

16  counsel). But the Objector's reading of the Ninth Circuit's ruling—that the settlement constitutes an

17  "impermissible allocation" and should thus be outright rejected—is incorrect, and the Ninth Circuit

18  did not create a new rule that a material difference between ultimate class recovery based on a low

19  claims rate and a mediator's proposed amount for fees and expenses (which the Objector calls a

20  "misallocation") is automatically "impermissible."   In fact, the Ninth Circuit expressly rejected

21  Objector's request to create such a rule when the Objector sought "clarification" of the opinion. App.

22  ECF No. 70.[1]   The Ninth Circuit was clear about what the Court should review on remand, and

23  Plaintiffs believe that Magistrate McCormick's declaration, combined with the record before the Court

24  (including the Joint Declaration of Class Counsel, "Joint Decl.," which provides extensive details

25

---

26  [1] "App. ECF" refer to the record on appeal in *Briseño v. Henderson*, No. 19-56297 (9th Cir.).

27

28  RENEWED MOTION AND MEMORANDUM         3         CV 11-05379-CJC (AGRx)
    IN SUPPORT OF FINAL APPROVAL OF
    THE SETTLEMENT AND AWARD OF
    ATTORNEYS' FEES, EXPENSES AND
    SERVICE AWARDS

1    about the history of this litigation), provides more than sufficient grounds to grant final approval of

2    the settlement of this long-pending case.

3    **II.**      **BACKGROUND**

4        **A.**       **Procedural History**

5          Plaintiffs in this action, residents of eleven different states, allege that Conagra's "natural"

6    claim on Wesson Oil packaging was false and misleading because the products contain genetically-

7    modified organisms (known commonly as "GMOs"). Plaintiffs further allege that Wesson Oils

8    commanded a premium price due to the presence of the "100% Natural" claim on the label and that,

9    consequently, every class member was induced to pay more for Wesson Oils because of that false

10    and deceptive claim. Accordingly, Plaintiffs brought this Action on behalf of themselves and other,

11    similarly-situated consumers seeking to end Conagra's use of the "natural" claim and obtain monetary

12    compensation for the classes, *i.e.*, the price premium they allegedly paid for Wesson Oils because of

13    the presence of the "100% Natural" claim. Conagra denies Plaintiffs' allegations and believes that it

14    has a variety of meritorious defenses.

15          After some fits and starts, and strategic moves by Conagra (*see* Joint Decl. at ¶¶13, 44, 179),

16    in January 2018, the parties conducted a day-long mediation session with the Honorable Edward A.

17    Infante (Ret.), under the auspices of JAMS in San Francisco; at that time, they were unable to forge

18    a settlement. Ongoing efforts by Judge Infante and negotiations among the parties followed, still

19    without resolution. *Id.* ¶¶182-185. On June 8, 2018, this Court appointed Magistrate Judge Douglas

20    F. McCormick (C.D. Cal.) to explore whether he might facilitate a resolution—if not, the case would

21    head towards trial. Joint Decl. ¶186. From June through mid-October 2018, the Parties mediated

22    under the auspices of Judge McCormick, including an in-person settlement conference as well as

23    through extensive telephonic and email communications. *Id.* ¶187. With Magistrate Judge

24    McCormick's continued involvement, the parties negotiated monetary compensation to the classes,

25    the provision of the injunctive relief to class members and its valuation, the amount of attorneys' fees

26    class counsel would seek from the Court without Conagra's objection, and the selection of a

27

28

RENEWED MOTION AND MEMORANDUM
IN SUPPORT FOR FINAL APPROVAL OF
THE SETTLEMENT AND AWARD OF
ATTORNEYS' FEES, EXPENSES AND
SERVICE AWARDS
        4         CV 11-05379-CJC (AGRx)

1    settlement administrator based on competing proposals with detailed notice plans. Judge McCormick

2    ultimately selected the settlement administrator. After the class relief was negotiated, on November

3    13, 2018, the parties accepted a "mediator's proposal," recommending that aggregate attorneys' fees

4    and expenses for Plaintiffs be set at an amount not to exceed $6,850,000. ECF No. 739 ¶¶ 14-16.  The

5    Plaintiffs moved for preliminary approval of the settlement on March 12, 2019, and the Court issued

6    its order granting preliminary approval on April 4, 2019. *See* ECF Nos. 650, 654.  On October 7,

7    2019, the Court heard oral argument, during which Plaintiffs, Conagra, and the sole Objector were

8    heard.  ECF No. 694; Exhibit E (Oct. 7, 2019 Hrg. Tr.).  The Court granted final approval on October

9    8, 2019, and the Objector appealed. ECF Nos. 695, 697.  The case is now before this Court on specific

10   remand instructions.

11           **B.       Key Settlement Terms**

12           As the Court knows, the settlement requires Conagra to pay monetary benefits, including a

13   per-unit amount that is *36% more* than class members could have obtained had Plaintiffs prevailed at

14   trial,[2] in addition to a statutory damages fund for certain claimants, and a fund for individuals who

15   _____

16   [2] The Court previously rejected Plaintiffs' damages methodology that calculated a price premium
     attributable entirely to Conagra's use of the term "100% Natural," rather than the portion of that
17   premium attributable to Plaintiffs' theory of liability—that is, that Conagra's "100% Natural" label
     on Wesson Oils caused putative class members to believe the products contained no genetically
18   modified organisms or GMO ingredients. *In re Conagra Foods, Inc.*, 90 F. Supp. 3d 919, 1023 (C.D.
     Cal. 2015). The Court determined that an acceptable damages model in this case would involve taking
19   the total price premium calculated by Plaintiffs' expert Colin Weir and multiplying it by the
     percentage derived from a conjoint analysis to produce a damages figure "attributable *solely to*
20   *ConAgra's alleged misconduct—i.e.*, misleading consumers to believe that Wesson Oils contain no
     GMOs by placing a '100% Natural' label on the products." *Id.* at 1025. This methodology was upheld
21   on appeal, *Briseño v. ConAgra Foods, Inc.*, 674 Fed. App'x 654, 657 (9th Cir. 2017), and is thus law
     of the case. Plaintiffs' expert performed that analysis, determining that 27.20% of the value of the
22   "natural" premium on the price of Wesson Oils was attributable to the GMO-free meaning of
     "natural" in the minds of Wesson Oil purchasers, which would be approximately $0.102 per unit
23   purchased. *See* ECF No. 652-4 ¶¶29-35. The Ninth Circuit only criticized Mr. Weir's testimony as it
     pertained to the valuation of the settlement's proposed injunctive relief, *Briseño v. Henderson*, 998
24   F.3d at 1029, *not* his calculation of individual class member damages. Accordingly, Plaintiffs' prior
     assertion that the settlement's $0.15 per-unit compensation is 36% higher than class members could
25   have obtained at trial, ECF No. 652 ¶¶19, remains accurate.

26

27

1  file claims for more than 30 Wesson Oil units. *See* Settlement Agreement, ECF No. 652-1 ("S.A."),

2  §§3.1, 3.3.

3      During the pendency of this litigation, Conagra removed the "natural" claim from the labels

4  of Wesson Oil Products and stopped marketing, advertising, and selling Wesson Oil Products as

5  "natural."  The Parties agreed to injunctive relief as part of their settlement, S.A.§§8.2.1 through 8.2.4,

6  and although Magistrate Judge McCormick proposed that such injunctive relief would be valued at

7  $27 million (ECF No. 739 ¶14), Plaintiffs are not asking the Court to ascribe *any* value to the proposed

8  injunctive relief.[3]

9      The settlement represents an excellent recovery for the settlement class, as confirmed by the

10  fact that only one settlement class member requested to opt-out of the settlement class, and only one

11  settlement class member—who previously served as an expert witness for Objector's counsel—

12  objected to the settlement.[4]

13  **III.    ARGUMENT**

14      "Rule 23(e) imposes on district courts an independent obligation to ensure that any class

15  settlement is 'fair, reasonable, and adequate,' accounting for the interests of absent class members."

16  *Briseño v. Henderson*, 998 F.3d at 1022 (quoting Fed. R. Civ. P. 23(e)(2)). "Likewise, [courts]

17

18  [3]  Conagra consummated its sale of the Wesson brand to Richardson International, a Canadian
19  company, on February 25, 2019—after the parties had agreed to settle the case. ECF No. 739 ¶18. As
   a result of that sale, the Parties revised the terms of the injunctive relief to clarify that it will apply to
20  Conagra in the event it reacquires the Wesson brand.  Class counsel previously submitted the
   Declaration of Larry Kopald to the Court, supporting their assertion that it was likely Richardson
21  would not restore the allegedly false "100% Natural" claim to the Wesson Oil packaging, thus
   confirming the ongoing material value of the label change and concomitant injunctive relief provided
22  by this settlement to Plaintiffs and the other settlement class members.  Lest there be any doubt:
   although Magistrate Judge McCormick proposed that the injunctive relief be valued at $27 million
23  based upon his analysis and the analysis of Plaintiffs' expert, and in order to avoid briefing related to
   Plaintiffs' "catalyst theory" of damages, Plaintiffs do not seek to proscribe any value to the injunctive
24  relief.

25  [4] *See* ECF No. 672 at 3-8 (Mr. Henderson filed a claim and his objection on August 6, 2019—the last
   day for filing objections, and previously served as a paid expert for Mr. Frank); ECF No. 661-2 ¶¶
26  18-21, pp. 95-96.

27
   RENEWED MOTION AND MEMORANDUM                6                CV 11-05379-CJC (AGRx)
28  IN SUPPORT FOR FINAL APPROVAL OF
   THE SETTLEMENT AND AWARD OF
   ATTORNEYS' FEES, EXPENSES AND
   SERVICE AWARDS

1    recognize 'an independent obligation to ensure that [any attorneys' fee] award, like the settlement

2    itself, is reasonable, even if the parties have already agreed to an amount.'" *Id.* (quoting *In re*

3    *Bluetooth*, 654 F.3d at 941, and *Staton v. Boeing Co.*, 327 F.3d 938, 960-64 (9th Cir. 2003)).

4         In December 2018, Congress and the Supreme Court amended Rule 23(e) to set forth specific

5    factors to consider in determining whether a settlement is "fair, reasonable, and adequate," including:

6              23(e)(2)(C): [Considering whether] the relief provided for the class is adequate, taking

7         into account:

8                   (i) the costs, risks, and delay of trial and appeal;

9                   (ii) the effectiveness of any proposed method of distributing relief to the class,

10             including the method of processing class-member claims;

11                  (iii) the terms of any proposed award of attorney's fees, including timing of

12             payment; and

13                  (iv) any agreement required to be identified under Rule 23(e)(3).[5]

14             23(e)(2)(D): the proposal treats class members equitably relative to each other.

15   Fed. R. Civ. P 23(e)(2)(C)-(D). The Ninth Circuit, in examining the 2018 Amendments, determined

16   that the new Rule 23 language requires courts to "scrutinize[e] [a settlement's] fee arrangement for

17   potential collusion or unfairness to the class" and that, in order to do so, "district courts must apply

18   the *Bluetooth* factors to scrutinize fee arrangements—even in post-certification settlements—to

19   determine if collusion may have led to class members being shortchanged." *Briseño v. Henderson*,

20   998 F.3d at 1026. Under *Bluetooth*, the Ninth Circuit identified three "subtle signs that class counsel

21   have allowed pursuit of their own self-interests. . . to infect the negotiations." *Id.* at  Those "signs"

22   or "factors" are: "(1) when class counsel receives a disproportionate distribution of the settlement;

23   (2) when the parties negotiate a 'clear sailing agreement' under which the defendant agrees not to

24   challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a 'kicker'

25   _____

26   [5] Plaintiffs have not included a discussion of "any agreement required to be identified," because they
     are unaware of and have not made any side agreements not part of the Settlement Agreement.

27   RENEWED MOTION AND MEMORANDUM                     7              CV 11-05379-CJC (AGRx)
     IN SUPPORT FOR FINAL APPROVAL OF
28   THE SETTLEMENT AND AWARD OF
     ATTORNEYS' FEES, EXPENSES AND
     SERVICE AWARDS

1   or 'reverter' clause that returns unawarded fees to the defendant, rather than the class." *Id.* (cleaned

2   up).

3       Although the Ninth Circuit noted that this settlement raised "red flags" implicating each of

4   the three *Bluetooth* factors, *it also held that those red flags, standing alone, did not constitute a basis*

5   *for reversal*:

6          We stress that nothing in this opinion suggests that courts should unnecessarily

7          meddle in class settlements negotiated by the parties or that courts have a duty to

8          maximize the settlement fund for class members. Far from it. We instead follow

9          the rules of our involvement in the class action process as set by Congress. Under

10         those rules, the parties can agree on any "fair, reasonable, and adequate" settlement

11         amount. Fed. R. Civ. P. 23(e). *Nor do we seek to make any of the identified signs of*

12         *collusion an independent basis for withholding settlement approval.*

13         *Disproportionate fee awards, clear sailing agreements, and kicker clauses all may*

14         *be elements of a good deal.* But, as we explained in Bluetooth, they may also signal

15         a collusive settlement, and district courts must scrutinize them where they appear.

16         . . . The district court thus should give a hard look at the settlement agreement to

17         ensure that the parties have not colluded at class members' expense.

18   *Briseño v. Henderson*, 998 F.3d at 1027-28.

19       The Ninth Circuit's directive to this Court on remand is narrow[6]: ensure that the Parties did

20   not collude with one another at the class members' expense, taking into account the "red flag"

21   *Bluetooth* factors, as well as the 2018 Amendments to Rule 23. Accordingly, this brief addresses the

22   Rule 23(e)(2)(C)(iii) and *Bluetooth* factors and then, for the avoidance of any doubt, the remaining

23

24   [6] "[T]he district court[] has no power to expand [a] remand beyond the boundary ordered by [the] court. This is consistent with the orderly administration of justice." *Mendez-Gutierrez v. Gonzales*,

25   444 F.3d 1168, 1173 (9th Cir. 2006); *Mirchandani v. United States*, 836 F.2d 1223, 1226 (9th Cir. 1988) (holding district court bound by scope of remand where "there is some threatened disruption

26   of the judicial system's orderly operation").

27

28   RENEWED MOTION AND MEMORANDUM      8      CV 11-05379-CJC (AGRx)
IN SUPPORT FOR FINAL APPROVAL OF
THE SETTLEMENT AND AWARD OF
ATTORNEYS' FEES, EXPENSES AND
SERVICE AWARDS

1  Rule 23(e)(2) factors courts consider when granting final approval as well as awarding fees, costs,
2  and service awards.

3      **A.      The *Bluetooth* Factors and Rule 23(e)(2)(C)(iii) Issues Identified for Remand**

4          **1.      Rule 23(e)(2)(C)(iii): The relief provided for the class is adequate, taking**
5                  **into account the terms of any proposed award of attorney's fees,**
6                  **including timing of payment.**

7          Magistrate Judge McCormick's proposal, which the Parties accepted after extensive
8  negotiations and notwithstanding the substantial reduction of Plaintiffs' counsel's total accrued
9  lodestar and expenses after eight years of contentious litigation (*see* Joint Decl. ¶¶252-254)*,* provides
10 that Conagra will pay attorneys' fees and costs—*separate from and in addition to* the benefits
11 provided by the settlement to class members—awarded by the Court in a total amount not to exceed
12 $6,850,000. *See* ECF No. 739 ¶14. The settlement provides for recovery by claimants that *exceeds*
13 potential recovery at trial in an uncapped, claims-made settlement.  *See* Exhibit A (July 19, 2021 Hrg.
14 Tr. at 27:4-16 (describing the uncapped settlement with a robust notice program)). Meanwhile, the
15 proposed fee and expense award—which was the result of Judge McCormick's mediation skills and
16 efforts—equated to approximately 50% of the accrued lodestar and expenses of plaintiffs' counsel.
17 Although it is true that ultimately the mediator's fee proposal exceeded the payments to class
18 members based upon the number of claims that were eventually filed, that fact was neither known nor
19 should it have been imputed.  *Id.* ("We had no idea how high claims were going to go.  We didn't
20 have a cap on that.  It ended up being less than a million.  It could have been 7-, 10 million.  We had
21 no idea what to expect on that, particularly given that the magistrate judge selected their claims
22 adjuster, who had a very robust claims program and notice program").  Moreover, the record
23 demonstrates that the "red flags" identified by the Ninth Circuit pursuant to *Bluetooth* and Rule
24 23(e)(2)(C) do not *per se* invalidate the settlement.

25
26
27
28

**a.** **The Ninth Circuit was clear: the appearance of *Bluetooth* factors does not make a settlement *per se* unreasonable because there is no rule on absolute proportionality.**

The Ninth Circuit acknowledged in its opinion that "[d]isproportionate fee awards, clear sailing agreements, and kicker clauses all *may be elements of a good deal*," but that the Court needed to "scrutinize them" upon remand pursuant to the Ninth Circuit's *Bluetooth* opinion. *Briseño v. Henderson*, 998 F. 3d at 1027 (emphasis added). Importantly, and contrary to the Objector's assertions, the Ninth Circuit *did not* say that the appearance of *Bluetooth* factors renders those settlements *per se* unreasonable (otherwise it would have simply remanded with instructions to invalidate the settlement). *Compare Briseño v. Henderson*, 998 F.3d at 1019 (noting issues "begging for further review"), 1023 n.1 ("the district court on remand should review the settlement structure to determine whether to apply common fund principles to its Rule 23(e) inquiry"), 1027-28 ("[t]he district court thus should give a hard look at the settlement agreement to ensure that the parties have not colluded at the class members' expense"); *with* ECF No. 666 at 2 (Objector argued that "the insulated, disproportionate fee request renders the settlement unfair"), 10 (Objector argued that "disproportionate fees render the entire Settlement unfair"). In fact, following the remand order, the Objector sought "clarification" from the Ninth Circuit, arguing that Panel should revise its opinion to preclude this Court from further analyzing the settlement or accepting additional information to do so, and instead state that the "settlement is unacceptable and should be rejected on remand." *See* ECF No. 725-2. More specifically, the Objector requested that the Ninth Circuit issue an opinion defining "collusion" as "requir[ing] courts to reject [] settlements unless the settling parties could show that it was impossible to provide a less disproportionate allocation to the class." *Id.* at 6. The Panel *rejected* the Objector's attempt to rewrite the remand order, and summarily denied the Objector's motion several days later without briefing from the Plaintiffs. See ECF No. 725-3.

That is because there is no rule requiring proportionality—especially in a case, like this one, where further litigation would almost certainly not result in a better outcome for the class. *See, e.g.,*

RENEWED MOTION AND MEMORANDUM
IN SUPPORT FOR FINAL APPROVAL OF
THE SETTLEMENT AND AWARD OF
ATTORNEYS' FEES, EXPENSES AND
SERVICE AWARDS

10

CV 11-05379-CJC (AGRx)

1   *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1126 (9th Cir. 2020) (finding that class counsel had not

2   "bargained away" better relief, because the district court had already limited the amount of relief

3   available).  The amount of per-unit damages to which class members would be entitled is already the

4   law of the case—*see* fn. 3—and the Court has already cast doubts as to the future viability of this

5   litigation given the changing legal landscape. *See* Exhibit A (July 19, 2021 Hrg. Tr. 28:16-20 (calling

6   the settlement a "great result for the Class" considering the significant litigation challenges Conagra

7   would bring had the case not resolved)).

8         The remand order is clear: the Court must scrutinize the fee arrangement for potential

9   collusion or unfairness under Rule 23(e)(2)(C)(iii). The remand order does *not* transform the three-

10  part test established in *Bluetooth* into an ironclad rule demanding absolute proportionality in

11  contravention of already-established fee-shifting statutes. *See In re Bluetooth*, 654 F.3d at 945 ("we

12  *cannot say* the disproportion between the fee award and the benefit obtained for the class *was per

13  se unreasonable*") (emphasis added); *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1060 (9th Cir.

14  2019) ("disproportionate attorneys' fee does not mean the settlement cannot still be fair, reasonable,

15  or adequate").

16                    b.      **Creating a *per se* proportionality rule would threaten the purpose**

17                            **of fee-shifting statutes.**

18        The Ninth Circuit's refusal to adopt a rule requiring absolute proportionality is significant

19  because it ensures that fee-shifting statutes continue to have the same effect as legislatures intended.

20  As this Court recently observed:

21              What also struck me at the time is Congress has said, under these

22              advertising/marketing laws, that you can bring class actions, but there are certain

23              areas where I feel you're going to have a situation where the attorneys' fees are

24              going to be more than what the class gets, and this is one of them. . . . But how am

25              I going to have a trial on that? And how are plaintiffs' attorneys ever going to want

26

27

28

RENEWED MOTION AND MEMORANDUM
IN SUPPORT FOR FINAL APPROVAL OF
THE SETTLEMENT AND AWARD OF
ATTORNEYS' FEES, EXPENSES AND
SERVICE AWARDS

11

CV 11-05379-CJC (AGRx)

1  to take these cases if they just get a few cents on the dollar for all the attorneys'
2  fees and the time and effort that they incurred in this area.
3  Exhibit A (July 19, 2021 Hrg. Tr. at 13:14-15:17). Especially in a long-pending case such as this one,
4  where the parties agree that the case "has been one of the most aggressively. . . prosecuted [and]
5  defended case[s]" in which they have been involved, *id.* at 8:21-23, fee-shifting statutes contemplate
6  that attorneys' fees may very well be larger than individual recoveries. *See In re GMC Pick-Up Truck*
7  *Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995) ("in statutory fee shifting cases . . . the
8  lodestar assures counsel undertaking socially beneficial litigation (as legislatively identified by the
9  statutory shifting provision) an adequate fee irrespective of the monetary value of the final relief
10  achieved for the class"); *Hayward v. Ventura Volvo*, 108 Cal. App. 4th 509, 512 (2003) (noting in a
11  consumer statutory fee-shifting case that "[t]o limit the fee award to an amount less than that
12  reasonably incurred in prosecuting such a case, would impede the legislative purpose underlying [the
13  statute]").

14  This does not mean that an attorney must go to trial to recover those fees; settlements are
15  possible—they just need to be scrutinized in accordance with *Bluetooth. See Briseño v. Henderson*,
16  998 F.3d at 1026 ("disparity in distribution of funds between class members and their class counsel
17  raises an urgent red flag demanding more attention and scrutiny").

18  Class counsel pursued several claims based upon fee-shifting statutes,[7] and it would be
19  appropriate to consider that, in certain circumstances such as this case—when the parties extensively
20  litigated every procedural stage, inclusive of substantive motions and appeals, as well as intense and
21  complex fact and expert discovery, over the course of eight years—the fees may be larger than class
22  recovery. Here, every class member (about 15 million in total) who submitted a claim was entitled—

23

24  [7] *E.g.,* California Consumer Legal Remedies Act § 1780(e); Colorado Revised Statutes Title 6.
25  Consumer and Commercial Affairs § 6-1-1113; Florida Deceptive and Unfair Trade Practices Act §521.2105; Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/10a(c);
26  New York Gen. Bus. Law § 349(h); Ohio Consumer Sales Practices § 1345.09; Oregon Rev. Stat. § 646.638(3); Tex. Bus. & Comm. Code § 17.50(d).

27
28  RENEWED MOTION AND MEMORANDUM IN SUPPORT FOR FINAL APPROVAL OF THE SETTLEMENT AND AWARD OF ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS

CV 11-05379-CJC (AGRx)

1  *without proof of purchase* but merely by submitting a claim—to $0.15 for each unit of Wesson Oil

2  purchased, up to 30 units. *See* S.A.§3.1. Thus, under the settlement, *Conagra committed itself to pay*

3  *up to approximately $67.5 million under the settlement without requiring any proof of purchase* (it

4  also agreed to pay up to an additional $585,000 for claims based upon certain state statutes for which

5  statutory damages may have been awarded at trial, *see id.* 3.1.2).  Because the Court had severely

6  limited the damages that the class could recover at trial—allowing instead only a narrow premium

7  price basis for recovery (*see supra* fn.3)—the per-unit amounts that class members could recover

8  under the settlement were greater than what they could have recovered at trial. The fact that only a

9  fraction of the class ultimately submitted claims—despite the robust notice program to reach

10  consumers for a small household product relating to purchases from more than a decade ago and a

11  simple claims procedure—does not *retroactively* make this a limited fund settlement. Indeed, the low

12  claims rate is precisely why the fee-shifting cases hold that lodestar fees exceeding actual recoveries

13  are necessary to encourage counsel to vigorously prosecute small claims cases. *See, e.g., Evon v. Law*

14  *Offices of Sidney Mickell*, 688 F.3d 1015, 1033-34 (9th Cir. 2012) ("[W]here the monetary recovery

15  is generally small, requiring direct proportionality for attorney's fees would discourage vigorous

16  enforcement of the consumer protection statutes."); *Millea v. Metro-North R.R.*, 658 F.3d 154, 169

17  (2d Cir. 2011) ("The whole purpose of fee-shifting statutes is to generate attorneys' fees that

18  are *disproportionate* to the plaintiff's recovery.") (emphasis in original). Under controlling law, the

19  Objector cannot simply ignore the more than $68 million in settlement funds that Conagra made

20  available to the class and instead focus solely, and only with the benefit of hindsight, on the amount

21  actually claimed.[8] Moreover, there is no reason to believe that *more* class members in this case would

22

23  [8] *See, e.g., Patel v. Trans Union, LLC*, No. 14-cv-00522-LB, 2018 WL 1258194, *6 (N.D. Cal. Mar.
    11, 2018) ("Ninth Circuit precedent requires courts to award class counsel fees based on the total

24  benefits being made available to class members rather than the actual amount that is ultimately
    claimed."); *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) ("[T]he

25  district court abused its discretion in basing the fee on the class members' claims . . . rather than on a
    percentage of the entire fund or the lodestar.").

26

27  RENEWED MOTION AND MEMORANDUM          13          CV 11-05379-CJC (AGRx)
    IN SUPPORT FOR FINAL APPROVAL OF
28  THE SETTLEMENT AND AWARD OF
    ATTORNEYS' FEES, EXPENSES AND
    SERVICE AWARDS

1   have submitted a claim after a trial verdict, especially given that a trial verdict's claims process almost

2   certainly would have required proof of purchase.

3               c.      ***Bluetooth* necessarily requires courts to examine whether**

4                       **collusion—explicit or subtle—has actually occurred.**

5       The Ninth Circuit's *Bluetooth* opinion establishes that "explicit collusion" is not the only

6   criteria under which courts should examine fee arrangements; "more subtle signs"[9] infecting

7   negotiations may also be appropriate for heightened scrutiny. *Bluetooth*, 654 F.3d at 947.

8       For example, *In re Dry Max Pampers Litig.* ("*Pampers*"), makes clear that when faced with

9   such disproportionality, "courts must carefully scrutinize whether [] fiduciary obligations have been

10  met" because "if the fees are unreasonably high, the likelihood is that the *defendant obtained an*

11  *economically beneficial concession with regard to the merits provisions, in the form of lower*

12  *monetary payments to class members* or less injunctive relief for the class than could otherwise have

13  [been] obtained." *Pampers*, 724 F.3d 713, 718 (6th Cir. 2013) (emphasis added) (internal citations

14  omitted). The exchange contemplated with criticism by *Pampers* is where counsel negotiate a higher

15  fee *in exchange for* keeping payments to class members low. This is what the Ninth Circuit feared in

16  the instant case. But nothing could be further from the truth: class counsel litigated this case for nearly

17  a decade with strenuous opposition from Conagra at every turn. Magistrate Judge McCormick's

18  declaration makes clear that *he* selected the notice and claims administrator, and that *he* proposed the

19  attorneys' fee award. ECF No. 739 ¶¶11-16. Class counsel did not bargain for a higher fee in exchange

20  for a lower payout—they accepted a mediator's proposal for half of their requested lodestar (which

21  is now worth even less given the lapse of an additional two years and intense appellate motion

22  practice) and the mediator determined what notice plan would be used. It is no surprise that Magistrate

23

---

24  [9] Any allegation of "self-interest" is not supported by the record.  Class counsel accepted the
    mediator's proposal for half of their lodestar to get a better result for the class.  Had class counsel had
25  to litigate these issues, counsel fees and expenses would have continued to rise substantially.  And,
    had Plaintiffs been successful, class counsel would have been well positioned to seek even more than
26  the substantially discounted amount that Magistrate Judge McCormick proposed.

27

28  RENEWED MOTION AND MEMORANDUM          14          CV 11-05379-CJC (AGRx)
    IN SUPPORT FOR FINAL APPROVAL OF
    THE SETTLEMENT AND AWARD OF
    ATTORNEYS' FEES, EXPENSES AND
    SERVICE AWARDS

1   Judge McCormick, who was appointed by this Court to mediate this case, confirmed that the Parties

2   did not collude. *Id.* ¶ 20.

3                    **d.      The "clear sailing" and "kicker" clauses do not render the**

4                            **settlement invalid.**

5          The Objector previously argued that class counsel had negotiated a "clear sailing" clause to

6   "insulate[] its negotiated fee." ECF No. 666 at 5.  Combined with a "kicker" agreement, which he

7   argued would revert any fees not awarded by the Court "to the defendant. . . rather than the class'

8   recovery," *id.* at 12, the Objector argued that the negotiated terms "have the self-serving effect of

9   protecting class counsel by deterring scrutiny of the fee award.  The combination ensures that the only

10  beneficiary of a fee reduction (the defendant, due to the kicker) cannot argue for reduced fees—

11  leaving *no one* with the both the [sic] incentive and ability to make those arguments." *Id.* (emphasis

12  original).   The problem with Objector's argument is that it is made based upon an unfounded

13  accusation:  that the Parties allegedly negotiated this term to protect class counsel's fees.   As

14  Magistrate Judge McCormick made perfectly clear, the Objector's assertion is false.  "[M]y proposal.

15  . . [was] Plaintiffs' counsel would agree to seek and ConAgra would agree not to oppose attorney's

16  fees and expenses of $6,850,000." ECF No. 739 ¶14.  He also made clear that this proposal was only

17  made after the Parties had negotiated the material "buckets" of available settlement relief. *Id.* ¶¶10-

18  14.

19          "One of the main criticisms of clear sailing provisions is that they represent prima facie

20  evidence of simultaneous negotiations of merit relief and fees, which is a practice fraught with serious

21  ethical concerns for lawyers representing the class."   William D. Henderson, *Clear Sailing*

22  *Agreements: A Special Form of Collusion in Class Action Settlements*, 77 Tul. L. Rev. 813, 814

23  (2003).  Perhaps that is why the Objector also argued that "[t]his Settlement demonstrates that

24  defendant is willing to pay at least $8 million to make this case go away," and that it did not matter

25  to Conagra whether the money went to class counsel or the settlement fund. ECF No. 666 at 13.  This

26  is also demonstrably incorrect.  Conagra's counsel stated—numerous times—that it would not agree

27

28  RENEWED MOTION AND MEMORANDUM                    15                    CV 11-05379-CJC (AGRx)
    IN SUPPORT FOR FINAL APPROVAL OF
    THE SETTLEMENT AND AWARD OF
    ATTORNEYS' FEES, EXPENSES AND
    SERVICE AWARDS

1    to give the class a "windfall" much larger than the calculated damages.  *See, e.g.,* Exhibit E (Oct. 7,

2    2019 Hrg. Tr. 28:4-16 ("Conagra, in negotiating the settlement, was very concerned about—we called

3    them buckets—what each bucket of the settlement was and how much money went to each bucket.

4    Conagra never said, 'Here's $8 million.  You guys figure out how you want to divvy it up.'  That's

5    just not the way this happened, and that would not be anything Conagra would ever entertain here."));

6    Exhibit A (July 19, 2021 Hrg. Tr. 32:10-33:6 (stating that Conagra cares about the allocation of

7    settlement funds)).  There is absolutely no evidence in the record that the class would have gotten

8    more had Conagra violated the mediator's proposal and opposed class counsel's requested fee.  *Cf.*

9    *Campbell*, 951 F.3d at 1127 ("We conclude that the evidence is insufficient to prove that the class

10   would have gotten meaningfully more injunctive or declaratory relief if Facebook had merely been

11   permitted to oppose class counsel's fee application, which Facebook already knew would be

12   requesting substantially less than what class counsel represented would fully compensate them.").

13          When "clear sailing" and "kicker" provisions are included as part of a settlement, the Court is

14   required to "examine the negotiation process with even greater scrutiny than is ordinarily demanded"

15   to ensure the class's interests are protected.  *Roes*, 944 F.3d at 1056.  Here, the Court has a declaration

16   directly from the mediator as to the timeline of the negotiations, as well as statements that the Parties

17   *did not negotiate these terms* but that they were mediator proposals because the Parties could not

18   agree on fees.  ECF No. 739 ¶¶13-14.  The record supports neither collusion nor the promotion of

19   self-interest; the "clear sailing" and "kicker" provisions do not violate *Bluetooth* or Rule

20   23(e)(2)(C)(iii).

21                     **e.      Magistrate Judge McCormick's fee proposal was not reached by**

22                              **collusion, and is not an effort to "sell out" the class.**

23          Class counsel previously sought payment of the mediator's recommendation of approximately

24   half of their lodestar based upon the factors outlined in *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,

25   1047-1050 (9th Cir. 2002); and *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301,

26   1311 (9th Cir. 1990).  As outlined in Joint Declaration and explained herein, (1) the results achieved;

27
28   RENEWED MOTION AND MEMORANDUM          16          CV 11-05379-CJC (AGRx)
     IN SUPPORT FOR FINAL APPROVAL OF
     THE SETTLEMENT AND AWARD OF
     ATTORNEYS' FEES, EXPENSES AND
     SERVICE AWARDS

1  (2) the duration and historical record of the case; (3) the complexity of the case; (4) the risk of

2  litigation; (5) the skill required and the quality of work; (6) the contingent nature of the fee; and (7)

3  awards made in similar cases support payment of class counsel's requested fee.  *See also* ECF Nos.

4  662, 663.

5          Because Plaintiffs pursued claims under statutes with fee-shifting provisions, the Court may

6  apply the lodestar method, instead of the common fund doctrine, to calculate and evaluate attorneys'

7  fees.  *See In re Bluetooth*, 654 F.3d at 941 ("The 'lodestar method' is appropriate in class actions

8  brought under fee-shifting statutes"); *Corzine v. Whirlpool Corp.*, No. 15-cv-05764, 2019 WL

9  7372275, at **10-12 (N.D. Cal. Dec. 31, 2019) (finding lodestar approach appropriate for calculation

10  of attorneys' fees in fee-shifting cases); *Edwards v. First American Corp.*, No. CV 07-03796, 2016

11  WL 8943464, at *14 (C.D. Cal. June 20, 2016) (finding lodestar method based upon fee-shifting

12  statute appropriate, finding a fee request of 90% of attorneys' lodestar "reasonable under the

13  circumstances" given the "decade-long history of this case, which has involved significant discovery

14  and motions practice"), 2016 WL 8999934 (C.D. Cal. Oct. 4, 2016) (making further analysis on final

15  approval).

16          Over two years ago, class counsel's fee request was approximately 50% of their lodestar.  ECF

17  No. 662 at 4.  That percentage is lower, now, given the substantial amount of briefing generated as a

18  result of Objectors' arguments—including a motion for sanctions before this Court (which was

19  denied, later appealed, and then voluntarily dismissed on the day the Objector's merits brief was due,

20  ECF Nos. 711, 713; Joint Decl. ¶¶213-218, 247, 249) as well as a motion for sanctions before the

21  appellate court (which was also denied).  *See Briseño v. Henderson*, 998 F.3d at 1031, n.6; Joint Decl.

22  ¶¶221, 235.  Class counsel dedicated more than 20,319.65 hours (as of July 20219), for a total lodestar

23  of $11,498,806.80 (based upon then-current rates), with expenses of $978,671.10.  Joint Decl. ¶¶244,

24  248-250.  Each firm that worked on this case submitted an affidavit, detailing the time, hourly rates,

25  and expenses for those firms.  *Id.* ¶¶237-243.  The hourly rates, to which no one has previously

26  objected, are consistent with other rates that have been approved by Courts in this Circuit.  *See*

27

28  RENEWED MOTION AND MEMORANDUM              17              CV 11-05379-CJC (AGRx)
    IN SUPPORT FOR FINAL APPROVAL OF
    THE SETTLEMENT AND AWARD OF
    ATTORNEYS' FEES, EXPENSES AND
    SERVICE AWARDS

1   *Corzine*, 2019 WL 7372275, at **11-12 (collecting cases). Importantly, regardless of the attorneys'

2   hourly rates, *the lodestar has already been reduced by half*.

3       The amount of time spent on the case was reasonable and necessary; class counsel did not "frit[]

4   away hours on pointless motions or unnecessary discovery," nor did they "achieve[] very little for the

5   class," *Briseño v. Henderson*, 998 F.3d at 1026.  As Conagra's counsel observed, the case was

6   aggressively prosecuted *and* defended. Exhibit A (July 19, 2021 Hrg. Tr. at 8:21-25).  And Plaintiffs'

7   aggressive litigation strategy was necessary.  As the Joint Declaration details, Conagra attempted to

8   stay the case on numerous occasions, and Plaintiffs won each time (¶¶12-21, 44-46, 139); the parties

9   engaged in extensive written and oral discovery (¶¶47-164), requiring briefing on multiple motions

10  to compel (on which Plaintiffs had a fair amount of success ¶¶ 98-105, 145, 150, 160); and Plaintiffs

11  were able to certify eleven statewide classes, successfully defending against Conagra's appeal

12  (wherein it sought to create an "ascertainability" standard in the Ninth Circuit), and successfully

13  defending that decision in briefing before the United States Supreme Court, resulting in a denial of

14  Conagra's petition for writ of *certiorari*.  *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919 (C.D. Cal.

15  2015); *Briseño v. ConAgra Foods, Inc.*, 674 Fed. Appx. 654 (9th Cir. 2017); *Briseño v. ConAgra*

16  *Foods, Inc.*, 844. F3d 1121 (9th Cir. 2017), *cert. denied* 138 S. Ct. 313 (2017).  Given the "great result

17  for the class" that class counsel was able to achieve, Exhibit A (July 19, 2021 Hrg. Tr. at 28:16-20),

18  the fee request is more than reasonable.

19      **B.      Factors Not Identified for Scrutiny on Remand**

20          **1.      Rule 23(e)(2)(A): The class representatives and class counsel have**

21                  **adequately represented the class.**

22      Plaintiffs sought relief under various common law and statutory claims, including claims

23  brought under fee-shifting statutes such as the California Consumer Legal Remedies Act § 1780(e);

24  Colorado Revised Statutes Title 6. Consumer and Commercial Affairs § 6-1-1113; Florida Deceptive

25  and Unfair Trade Practices Act §521.2105; Illinois Consumer Fraud and Deceptive Business Practices

26  Act, 815 ILCS 505/10a(c); New York Gen. Bus. Law § 349(h); Ohio Consumer Sales Practices §

27
28  RENEWED MOTION AND MEMORANDUM              18              CV 11-05379-CJC (AGRx)
    IN SUPPORT FOR FINAL APPROVAL OF
    THE SETTLEMENT AND AWARD OF
    ATTORNEYS' FEES, EXPENSES AND
    SERVICE AWARDS

1  1345.09; Oregon Rev. Stat. § 646.638(3); and Tex. Bus. & Comm. Code § 17.50(d). The Court

2  certified eleven state-wide litigation classes (California, Colorado, Florida, Illinois, Indiana,

3  Nebraska, New York, Ohio, Oregon, South Dakota, and Texas), finding that Plaintiffs satisfied the

4  numerosity, commonality, typicality, and adequacy requirements of Rule 23(a), as well as the

5  predominance and superiority requirements of Rule 23(b)(3). ECF No. 545. The Ninth Circuit

6  affirmed. *See Briseño v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017); *Briseño v. ConAgra*

7  *Foods, Inc.*, 674 F. App'x 654 (9th Cir. 2017). And on October 10, 2017, the Supreme Court of the

8  United States denied Conagra's petition for writ of *certiorari*. *Conagra Brands, Inc. v. Briseño*, 138

9  S. Ct. 313 (2017).

10      The Joint Declaration further supplements the record and makes clear that class counsel

11  dedicated significant time and resources to the litigation—which involved briefing regarding

12  preemption, numerous *ex parte* applications by Conagra to stay the case (including but not limited to

13  pending referral to the Food and Drug Administration), rounds and rounds of briefing related to

14  discovery (including motions to compel filed by Plaintiffs), two full rounds of class certification

15  briefing, and Plaintiffs' success on Conagra's attempts to reverse the district court's decision granting

16  class certification—at both the Ninth Circuit and Supreme Court. *See* Joint Decl. ¶6. Plaintiffs'

17  primary objective in this litigation was achieved when—after this litigation began—Conagra decided

18  to remove the "100% Natural" claim from Wesson labels, and stopped its decades-long practice of

19  marketing Wesson Oils as "natural." *Id.* ¶10 n.1.[10]  The parties were on the eve of trial when this

20  settlement was negotiated, *see* ECF Nos. 640, 641, with Plaintiffs and class counsel having achieved

21  a significant number of material victories in the litigation. The Court previously found that class

22

---

23  [10] Plaintiffs contend that Conagra's decision was due, at least in part, to this litigation, and is further
    evidence of the merits of Plaintiffs' claims. Conagra denies this litigation contributed in any way to
24  its decision to drop the 'Natural' claim from Wesson Oils. Due to the timing of Conagra's decision
    and the parties' agreement to enter mediation immediately after Conagra had exhausted its appeals of
25  Judge Morrow's class certification ruling, Plaintiffs did not had an opportunity to seek a ruling that
    this litigation was a "catalyst" in that decision.

26

27  RENEWED MOTION AND MEMORANDUM            19            CV 11-05379-CJC (AGRx)
    IN SUPPORT FOR FINAL APPROVAL OF
28  THE SETTLEMENT AND AWARD OF
    ATTORNEYS' FEES, EXPENSES AND
    SERVICE AWARDS

1  counsel and the Plaintiffs fulfilled Rule 23(a)(4) adequacy's requirement. *In re ConAgra Foods, Inc.*,

2  90 F. Supp. 3d at 975-76.  Notably, this issue was not flagged by the Ninth Circuit for remand, and

3  there is no reason now to disturb the Court's prior ruling—which was previously upheld on appeal.

4  **2.      Rule 23(e)(2)(B): The settlement was negotiated at arm's length.**

5  The settlement here is the product of extensive arm's-length and adversarial settlement

6  discussions, including two separate, extended rounds of mediation before two neutrals—each of

7  which spanned over months. As the declaration of Magistrate Judge McCormick made clear:  "I saw

8  nothing in the parties' conduct before me to indicate that they were colluding at the class members'

9  expense. . . . Nearly every settlement term discussed in this declaration was the result of several

10  rounds of proposals and counter-proposals. And several of the final terms, including attorney's fees,

11  were resolved only after I made a proposal."  ECF No. 739 ¶20. The Parties did not commence

12  discussion of attorneys' fees until agreement on all substantive portions of the class resolution had

13  been reached. And when they could not reach an agreement on attorneys' fees, the Parties accepted a

14  "mediator's proposal" offered by Magistrate Judge McCormick. *Id.* ¶¶12-14.

15  Both Conagra's counsel and class counsel explained to the Court that it would have been

16  impossible for them to collude, because the parties vigorously fought throughout the pendency of the

17  litigation and could agree on little. *See* Exhibit A (July 19, 2021 Hrg. Tr. at 8:16-25 (noting the Parties'

18  extensive disagreements)). There can be no doubt from the record in this case, and the Court should

19  reaffirm its conclusion, that the settlement was negotiated at arm's length.

20  **3.      Rule 23(e)(2)(C)(i): The relief provided for the class is adequate, taking**

21  **into account the costs, risks, and delay of trial and appeal.**

22  Plaintiffs assert there is abundant evidence that the "100% Natural" claim, which appeared on

23  every bottle of Wesson Oil sold during the applicable class periods, was material to consumers, that

24  consumers interpreted the claim to mean that the products did not contain GMOs, and that every class

25  member paid a premium price for Wesson Oils due to the presence of the "100% Natural" claim on

26  the label. While Plaintiffs believe that there is sufficient evidence for their claims, the risks of

27

28  RENEWED MOTION AND MEMORANDUM
IN SUPPORT FOR FINAL APPROVAL OF
THE SETTLEMENT AND AWARD OF
ATTORNEYS' FEES, EXPENSES AND
SERVICE AWARDS

20

CV 11-05379-CJC (AGRx)

1    proceeding forward, especially considering the strength of the proposed settlement recovery, supports

2    Plaintiffs' renewed request for final approval.

3           Regardless of the parties' evaluations of the strength of Plaintiffs' case, this settlement

4    includes monetary relief for class members that is approximately *36% higher* than they could have

5    obtained at trial. *See supra* n.2; ECF No. 652 at ¶¶18-19. Indeed, the Court has since cast doubt on

6    the likelihood of success on Plaintiffs' claims, especially considering the recent, changing legal

7    landscape, which seemed to be favoring Conagra.  *See* Exhibit A (July 19, 2021 Hrg. Tr. at 14:18-

8    22). Based on the foregoing considerations, "it is plainly reasonable for the parties at this stage to

9    agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue

10   potentially more favorable results through full adjudication." *Dennis v. Kellogg Co.*, 09-CV-1786-L

11   (WMc), 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013).

12          While Plaintiffs believe their case is a strong one, the complexity and risk of further litigation

13   are substantial, and it is unclear whether there would be any recovery at all for the class members in

14   the eleven certified state classes. Should litigation continue, more expense and complexity could

15   result, because Plaintiffs would request information regarding Conagra's label and marketing change

16   in 2017, for Conagra to update past document productions, and for the parties to resolve issues

17   surrounding Conagra's productions of documents just preceding the close of fact discovery in 2015.

18   Joint Decl. ¶191. With the case at the eve of trial, as with all other phases in this litigation, Conagra

19   would have mounted a vigorous defense to Plaintiffs' claims, likely would have moved to decertify

20   the state-wide classes, and would have continued to challenge Plaintiffs' price premium damages

21   methodology. *See* Exhibit E (Oct. 7, 2019 Hrg. Tr. at 16:25-17:7 (Conagra's counsel explaining that,

22   had litigation continued, Conagra would have filed a motion to decertify the classes, a motion for

23   summary judgment, and then a motion to sever the different state classes and transferring them to

24   their original states, requiring separate trials)).  Additional risks of continuing this litigation include

25   further motion practice and a possible adverse outcome at trial. The relief obtained through this

26   settlement, balanced against the length, expense, and uncertainty of further litigation, weighs in favor

27

28   RENEWED MOTION AND MEMORANDUM                    21                    CV 11-05379-CJC (AGRx)
     IN SUPPORT FOR FINAL APPROVAL OF
     THE SETTLEMENT AND AWARD OF
     ATTORNEYS' FEES, EXPENSES AND
     SERVICE AWARDS

1  of approval. *See Briseño v. Henderson*, 998 F.3d at 1031 (noting the "strong judicial policy favor[ing]

2  settlements, particularly where complex class action litigation is concerned") (quotations omitted).

3        **4.      Rule 23(e)(2)(C)(ii): The relief provided for the class is adequate, taking**

4              **into account the effectiveness of any proposed method of distributing**

5              **relief to the class, including the method of processing class-member**

6              **claims.**

7        As Magistrate Judge McCormick detailed in his declaration to the Court, he selected the

8  settlement's notice plan and claims administrator (ECF No. 739 ¶14), which ended up being "the

9  Plaintiffs' proposal, t*he more robust claims notice program*." Exhibit A (July 19, 2021 Tr. at 24:9-

10 15)(emphasis added). Although the Ninth Circuit did not direct the Court to scrutinize this issue on

11 remand, such that it should not be up for review, Plaintiffs detail for the Court both the Notice Plan

12 and claims administration process selected by Magistrate Judge McCormick as part of their renewed

13 motion.

14       The Court already determined that the form of the notice was proper and approved the Long

15 Form Class Notice, the Publication Notice, and the Notice Plan. *See* ECF No. 655 at 8-9.  In

16 determining whether a notice plan, as implemented, is fair, adequate, and appropriate, it is not

17 necessary that every settlement class member receive actual notice to meet due process

18 considerations, as long as the notice is "reasonably certain to inform the absent members of the

19 plaintiff class." *Destefano v. Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946, at *6 (N.D. Cal.

20 Feb. 11, 2016) (quoting *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994)). "The manner of notice

21 need not be perfect." *Id*. at *7; *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir.

22 2015) ("The notice in this case was not perfect, but the court did not abuse its discretion in approving

23 the notice plan and ultimately approving the settlement.").

24       The Parties implemented notice in accordance with the Court-approved terms. Notice was

25 robust and comprehensive, and created to target Conagra's customers, specifically, based upon data

26 used to analyze demographic and media usage for households in the eleven, certified statewide classes

27
28     RENEWED MOTION AND MEMORANDUM              22           CV 11-05379-CJC (AGRx)
       IN SUPPORT FOR FINAL APPROVAL OF
       THE SETTLEMENT AND AWARD OF
       ATTORNEYS' FEES, EXPENSES AND
       SERVICE AWARDS

1   that purchased Wesson Oil. *Id.* ¶15.  Notice of the settlement was disseminated via, among other

2   efforts, the leading digital network (Google Display Network), the top social platform (Facebook),

3   print media (*People* magazine), and a nationwide press release. *See* ECF No. 652-1 at ¶¶7-11. The

4   settlement website, www.WessonOilSettlement.com, includes links to relevant documents and

5   pleadings, the Claim Form, the Long-Form Class Notice, and frequently-asked questions (including

6   information on how to opt-out, object and appear at the fairness hearing), and a toll-free number that

7   provided information about the settlement. *Id.* at ¶¶13-15. Using demographic data specific to the

8   settlement class,[11] the claims administrator anticipated reaching at least 70% of the class on average

9   of at least 2.6 times each. ECF No. 652-1 at 94.

10          Indeed, the notice's effectiveness was supported by a declaration by Jennifer Keough, the

11   Chief Executive Officer of JND Legal Administration LLC. *Id.*[12]  Ms. Keough based her declaration

12   upon twenty years of legal experience creating a supervising notice and claims administration

13   programs, having personally overseen well over 500 matters. *Id.* ¶2. JND has overseen many,

14   different matters in the Ninth Circuit, as described in Ms. Keough's declaration. *Id.* ¶8. Ms. Keough,

15   herself, has been recognized by courts across the country via affidavits attesting to JND's role in the

16   creation and launch of various media programs, which have been regularly approved by courts

17   throughout the United States. *Id.* ¶11.

18   _____

19   [11]  JND used GfK Mediamark Research & Intelligence, LLC ("MRI") data to analyze this
     demographic information. MRI is a nationally-accredited research firm that provides consumer
20   demographics, product and brand usage, and audience/exposure in all forms of advertising media. *Id.*
     ¶15, n.2. Based on a yearly face-to-face interview of 26,000 consumers in their homes, MRI's Survey
21   of the American Consumer™ is the primary source of audience data for the U.S. consumer magazine
     industry and the most comprehensive and reliable source of multi-media audience data available. *Id.*

22   [12]  The Objector did not challenge Ms. Keough's declaration in connection with his objection.
23   *Compare* ECF Nos. 666 at 1, 7, 9-10 (criticizing declaration of Colin B. Weir), and 18 n.12 (criticizing
     declaration of Larry Kopald); 684 (moving to strike the expert testimony of Mr. Weir); 693 (reply in
24   support of Objector's motion to strike expert testimony of Mr. Weir); 685 at 8 (noting, erroneously,
     that Plaintiffs' expert's damages calculation was manufactured for "rhetorical convenience" for the
25   settlement). Accordingly, that argument is waived and is not a remand issue.

26

27   RENEWED MOTION AND MEMORANDUM                        23                  CV 11-05379-CJC (AGRx)
     IN SUPPORT FOR FINAL APPROVAL OF
28   THE SETTLEMENT AND AWARD OF
     ATTORNEYS' FEES, EXPENSES AND
     SERVICE AWARDS

1    As Rule 23(c)(2) requires, the notice informed class members of the claims alleged in the

2  action, the definition of the certified settlement class, the settlement terms, the scope of the release,

3  and their rights as members of the settlement class to opt out of or otherwise object to the settlement,

4  including Plaintiffs' request for attorney's fees, expenses, and service awards, and their right to

5  request exclusion from the class. The notice fairly apprised class members of the settlement and their

6  options in accordance with Rule 23(c)(2) and due process. Using demographic information, JND

7  relied heavily on digital notice,[13] with some print notice to target individuals who no longer resided

8  in the eleven certified classes. *Id.* ¶17. Ms. Keough's declaration stated that the Notice Plan was the

9  best notice practicable under the circumstances, was consistent with the requirements of Rule 23 and

10 all applicable court rules, and was consistent with other similar court-approved notice programs. *Id.*

11 ¶29. Therefore, the Court should again find that notice was given to settlement class members by the

12 best means "practicable under the circumstances." Fed. R. Civ. P. 23(c)(2).[14]

13    JND also serves as the claims administrator and is responsible for distributing settlement

14 proceeds to class members. The distribution, however, is made based upon a claims-made process,

15 so payments will be made directly to claimants based upon information provided in the Claim Form.

16

17 [13] *Briseño v. Henderson*, 998 F.3d at 1026 n. 3 ("We, however, do not hold that parties must provide direct notice, especially for low-cost items bought by millions of consumers. A contrary ruling would

18 likely not be cost-effective, with administrative and notice costs devouring most of the settlement fund.").

19

20 [14] Aside from passing references to the lack of direct notice (*see* ECF Nos. 666 at 13 n.10) or claiming, without evidence, that "modest third-party discovery" could identify class members who purchased

21 Wesson Oil *more than thirteen years before his objection was filed* in a reply brief (ECF No. 685 at 8), the Objector did not take issue with the mediator's selected Notice Plan. *See Briseño v. Henderson*,

22 998 F.3d at 1026, n.3 (noting that the Objector did not object to the lack of direct notice). The Objector claimed, without citation, that third-party discovery was used to increase claims in a separate

23 settlement, but does not explain how such third-party discovery in *this* case would better incentivize class members to file claims in *this* case for a different amount of recovery. To the extent the Objector

24 now shifts his argument to focus on notice, he has waived these previously-undeveloped arguments. *See, e.g., California v. Azar*, 911 F.3d 558, 573 n.1 (9th Cir. 2018) (finding single-sentence arguments

25 unsupported by citations waived); *1940 Carmen, LLC v. City of Los Angeles*, Nos. 20-cv-06772 and 20-cv-08130, 2021 WL 340648, at *4 (C.D. Cal. Aug. 4, 2021) ("Perfunctory, undeveloped

26 arguments without discussion or citation to pertinent legal authority are waived.") (quoting *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009)).

27

28

RENEWED MOTION AND MEMORANDUM IN SUPPORT FOR FINAL APPROVAL OF THE SETTLEMENT AND AWARD OF ATTORNEYS' FEES, EXPENSES AND SERVICE AWARDS

24

1  *See* ECF No. 652-1 at 74-76. Within twenty days after the Final Effective Date, Conagra shall fund

2  the Gross Settlement Proceeds used to pay valid claims, as set forth in the Settlement Agreement

3  (§§2.18, 2.20), and no Gross Settlement Proceeds will revert to Conagra (§3.2).

4        **5.**      **The proposal treats class members equitably.**

5        The settlement does not grant preferential treatment to any segment of the class. All class

6  members may claim monetary benefits on a per-unit basis, and all class members stand to benefit

7  from the injunctive relief. The settlement provides compensation to New York and Oregon class

8  members due to the statutory damage provisions in their state consumer protection statutes that

9  Plaintiffs contend they may recover, in an amount agreed after extensive arm's length negotiations

10  and with the assistance of Magistrate Judge McCormick as mediator. The Ninth Circuit did not take

11  issue with the treatment of class members relative to one another.  Fed. R. Civ. P. 23(e)(2)(D).

12        **6.**      **Plaintiffs' service awards were not disturbed by the Ninth Circuit.**

13        The Ninth Circuit did not disturb the Plaintiffs' service awards of $3,000 for each of the six

14  Plaintiffs who were deposed, and $1,000 for each of the seven Plaintiffs who were not deposed, for a

15  total aggregate service award amount of $25,000. All of the Plaintiffs have been supportive and

16  involved in this lengthy litigation, including reviewing pleadings, responding to discovery requests,

17  preparing for and testifying at depositions, communicating with counsel, and approving the terms of

18  the settlement agreement. *See* ECF No. 663 ¶¶23-25; Joint Decl. ¶¶256-258. This Court already found

19  that the requested service awards "are within the range of incentive awards typically approved by

20  district courts" and that "the request for incentive awards is reasonable." *See* ECF No. 654 at 7.

21  Plaintiffs respectfully request that the Court enter an order reaffirming the service awards.

22  **IV.**    **CONCLUSION**

23        For the foregoing reasons, the Parties respectfully request that the Court grant this Motion and

24  enter an order finally approving the settlement, and granting Plaintiffs' request for fees, expenses, and

25  service awards.

26

27

28

Respectfully submitted,

Dated: September 23, 2021

*/s/ David E. Azar*

David E. Azar (SBN 218319)
dazar@milberg.com
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
280 S. Beverly Drive, Suite PH
Beverly Hills, California  90212
Telephone: (213) 617-1200

Ariana J. Tadler (*pro hac vice*)
atadler@tadlerlaw.com
A.J. de Bartolomeo (*pro hac vice*)
ajd@tadlerlaw.com
**TADLER LAW LLP**
22 Bayview Avenue, Suite 200
Manhasset, New York 11030
Telephone: (212) 946-9453

Adam J. Levitt (*pro hac vice*)
alevitt@dicellolevitt.com
Amy E. Keller (*pro hac vice*)
akeller@dicellolevitt.com
**DiCELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois  60602
Telephone: (312) 214-7900

***Class Counsel***

RENEWED MOTION AND MEMORANDUM
IN SUPPORT FOR FINAL APPROVAL OF
THE SETTLEMENT AND AWARD OF
ATTORNEYS' FEES, EXPENSES AND
SERVICE AWARDS

26

CV 11-05379-CJC (AGRx)

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on September 23, 2021, he caused this document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of filing to registered counsel of record for each party.

Dated:  September 23, 2021

_/s/ David E. Azar_
David E. Azar (SBN 218319)