ALSTON & BIRD LLP
ANGELA SPIVEY (*pro hac vice*)
One Atlantic Center
1201 West Peachtree Street, Suite 4900
Atlanta, Georgia 30309
Telephone: (404) 881-7000
angela.spivey@alston.com

*Counsel for Defendant Conagra Brands, Inc.
formerly ConAgra Foods, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT BRISENO,<br><br>Plaintiff,<br><br>vs.<br><br>CONAGRA FOODS, INC.,<br><br>Defendant. | CASE NO. 2:11-cv-05379 MMM (AGR)<br><br>**DEFENDANT CONAGRA BRANDS, INC.'S REPLY TO OBJECTOR'S RENEWED OBJECTION TO PROPOSED SETTLEMENT AND TO FEE REQUEST** |

Defendant Conagra Brands, Inc. (formerly, ConAgra Foods, Inc.,) files this Reply to Objector M. Todd Henderson's Renewed Objection to Proposed Settlement and Fee Request (Dkt. 759). In response thereto, Conagra states as follows:

**I.    The Proposed Settlement Provides Full Recovery to Class Members.**

As Objector M. Todd Henderson ("Henderson" or "Objector") admits, the existence of "*Bluetooth* red flags does not forbid approval of a good deal" for class members. Dkt. 759 at 15 (citing *Briseño*, 998 F.3d at 1027). The proposed settlement is indisputably a "good deal" for class members because it offers all members of the certified classes *more* than they could have received had class counsel successfully litigated their claims to verdict. Indeed, while Conagra maintains the challenged label was not misleading, that class members are uninjured, there are no damages, and that

it would have prevailed on the merits at summary judgment or trial, the class members' own expert estimated damages of approximately $0.102 per unit purchased. *See* ECF No. 652-4 ¶¶29-35. The proposed settlement's $0.15 per-unit compensation thus represents a 36% premium over what Plaintiffs' own expert alleges could have been obtained at trial. *See* ECF No. 652 ¶¶19. The proposed settlement, therefore, represents complete relief—and a good deal—to class members and claimants.

Grasping at straws, Objector cites a single Seventh Circuit case for the proposition that the *Bluetooth* factors may only be disregarded where the class receives "essentially complete relief." *In re Southwest Air. Voucher Litig.*, 799 F.3d 701, 704 (7th Cir. 2015) ("*Southwest*"). Seizing on the phrase "complete relief," Objector implies that the proposed settlement is not a "good deal" for the class members because it will not result in essentially a 100% claims rate. However, *Southwest* established no such test—and actually approved a settlement containing multiple *Bluetooth* red flags despite acknowledging that many class members may not see *any* benefit from the settlement.

In *Southwest*, airline customers who purchased "Business Select" fares received drink vouchers for in-flight alcoholic beverages. *Id.* Although the vouchers did not include expiration dates, the airline changed its policy of honoring older vouchers, announcing that each voucher was good only on the flight covered by the accompanying ticket. *Id.* Plaintiffs sued on behalf of themselves and other holders of unredeemed (and now worthless) drink vouchers. *Id.* at 704-5. The parties entered into a settlement in which the airline agreed to replace the unredeemed vouchers. *Id.* at 705. The settlement agreement also contained "clear-sailing" and "kicker" clauses stating Southwest agreed not to contest a fee request not exceeding $3 million (clear-sailing), and any reduction from the requested fee inured to the benefit Southwest rather than the class (the kicker). *Id.* The district court awarded a reduced fee of approximately $1.65 million and approved the settlement. *Id.* On appeal, objectors

LEGAL02/41256494v1

challenged the settlement alleging the fee award was disproportionate to the class recovery and because the settlement agreement contained "clear-sailing" and "kicker" provisions. *Id.* at 711.

The Seventh Circuit rejected the objectors' arguments,[1] finding that the settlement—which replaced unredeemable vouchers with vouchers valid for one year—made the "class whole" and provided class members with "essentially everything they could have hoped for." *Id.* at 712. Critically, however, the *Southwest* Court did not focus on whether, or what percentage of, class members would ever redeem their vouchers—which would require a class member to purchase (relatively expensive) airfare within a one-year time period to receive the (relatively modest) benefit of a complimentary cocktail. *Id.* at 711-12. Indeed, the court acknowledged that "some replacement coupons might never be used." *Id.* at 711. However, the settlement still made the class "whole" because the vouchers were made available to each class member. *Id.* at 711-12. While the court acknowledged that "free sailing" and "kicker" provisions triggered greater scrutiny, it nonetheless affirmed the trial court's approval of the settlement because "this settlement makes the class whole, and the district court carefully scrutinized—and significantly reduced—the fee request." *Id.* at 713-13. Moreover, the court found, "[e]ven if the court had rejected the settlement, it is hard to imagine the class receiving any better result after further negotiations or a trial." *Id.*

The same analysis applies here. Conagra maintains that each purchaser of Wesson Oil received exactly what they paid for and suffered no injury or damages. Nonetheless, even under class counsel's view of the case, the proposed settlement's $0.15 per-unit compensation is 36% higher than class members could have obtained if they prevailed at trial. ECF No. 742 at 5 n. 2. Moreover, while claimants in

---

[1] The Seventh Circuit did strike a $15,000 incentive award to one class representative with an alleged conflict of interest, but that aspect of the opinion is not at issue here.

*Southwest* had to spend hundreds of dollars on airfare to redeem their complimentary drink vouchers, class members here can claim their portion of the uncapped settlement merely by submitting a free, online claim form (even without a proof of purchase). Conagra acknowledges that because airline business practices and security procedures require the identification of every passenger, class notice was far simpler in *Southwest* than here, but that does not mean class members did not have a reasonable *opportunity* to make a claim—and receive more than they would have been entitled to if successful at trial. Here, as in *Southwest* "no class members have legitimate or even plausible claims to more than they will receive under the settlement." *Id.* The settlement should, therefore, be approved.

## II.  Direct Notice to Class Members was Neither Practicable Nor Reasonably Plausible Under the Circumstances.

Henderson argues class counsel could have "subpoenaed third-party retailers" and "improved the effectiveness of distribution with either direct notice or, better, direct payments to known class members." Dkt. 759 at 35. Tellingly, Henderson cites no evidence or authority for this proposition. Moreover, the Ninth Circuit expressly declined to "hold that parties must provide direct notice, especially for low-cost items bought by millions of consumers. A contrary ruling would likely not be cost-effective, with administrative and notice costs devouring most of the settlement fund." *Briseño v. Henderson*, 998 F.3d 1014, 1026 n. 3 (9th Cir. 2021).

This is certainly such a case where direct notice would be highly impractical, inefficient, and almost certainly impossible. Conagra is not a retailer and did not sell Wesson oil products directly to consumers. Conagra is also at a loss as to how discovery directed at third-party retailers would be an effective method of identifying class members who purchased Wesson Oil *four to fifteen years ago* (the applicable class period, 2006 to July 2017). The proposed settlement encompasses eleven state-wide classes (California, Colorado, Florida, Illinois, Indiana, Nebraska, New York,

Ohio, Oregon, South Dakota, and Texas) of purchasers of a low cost, widely available, grocery product. Dkt. 742 at 19. Over the class period, those states were likely home to thousands of retailers who would have to be identified, their records subpoenaed, and, assuming any retailer maintains records of decade-old purchases, would have to be reviewed, rendering third-party discovery impractical and inefficient. Moreover, because grocers and retailers do not routinely maintain records of their customers' identities (much less the products they purchased four to fourteen years earlier) any such discovery would almost certainly be fruitless. In sum, meaningful direct notice was simply not feasible in this lawsuit—it would have been impractical, unduly burdensome to both the parties and third-party retailers, and ultimately fruitless. Robust and comprehensive notice by publication was appropriate under the circumstances. Dkt. 742 at 23-25 (detailing comprehensive notice program).

### III. The Proposed Settlement Is Fair to Class Members Because Continued Litigation Would Likely Result in Decertification of the Classes and Summary Judgement in Favor of Conagra

The proposed settlement is also fair to class members because the alternative is likely decertification and/or defeat at summary judgment. As this Court noted at the October 7, 2019 hearing in this matter, class plaintiffs face significant hurdles in maintaining certification and prevailing on the merits—including challenges to causation, materiality, and damages. ECF 742, Exhibit E (Oct. 7, 2019 Hrg. Tr. pp. 8-10, 17, 27). Indeed, after Conagra removed the challenged "natural" claim from Wesson Oil in 2017, neither sales price nor demand were negatively impacted—essentially gutting Plaintiffs' theory that there was ***any*** price premium attributable to the challenged claim (much less attributable to consumers' understanding of the challenged claim as it relates to bioengineered materials). *Id.* at p. 17.

Moreover, recent regulatory and legal developments related to bioengineered labeling have strengthened Conagra's defenses. Notably, the National Bioengineered

Food Disclosure Standard (enacted after this settlement was reached) defines "bioengineered food" as food "that contains genetic material that has been modified through in vitro" DNA techniques. 7 U.S.C. 1639(1). The USDA explicitly acknowledged that refined products, such as Wesson oil, do not "contain genetic material that has been modified through in vitro" DNA techniques because "the refining process rendered genetic material undetectable." *See* 83 FR 65814 at 65816. The USDA considered whether the scope of the definition of "bioengineering" and "bioengineered foods" should include refined products – such as oils – and explicitly adopted the position that *refined foods are not "bioengineered food"* because they do not "contain genetic material that has been modified." *Id*. The well-reasoned reality that Wesson oils are *not* bioengineered food, because they are void of any genetically modified DNA, further belies Plaintiffs' claims on the merits.

As Conagra has made clear throughout these settlement proceedings, Conagra strongly believes that—in the absence of an approved settlement—it will be successful in securing decertification of the certified classes and/or prevailing at summary judgment. *Id*. at 16:25-17:7 (explaining that, had litigation continued, Conagra would have filed a motion to decertify the classes and a motion for summary judgment). Accordingly, the proposed settlement represents a windfall for class members who would have received nothing if Conagra prevailed on decertification or the merits.

### IV.   Any Fee Award Remains in The Sole Discretion of The Court

As this Court is aware, Conagra has agreed not to object to class counsel's petition for fees and expenses seeking up to $6,850,000 (ECF No. 739 ¶14). Conagra continues to take <u>no position, however</u>, as to what amount (up to $6,850,000) is appropriate and fair to the class and class counsel. Whether the fee award sought is fair and reasonable, and whether courts should consider the proportionality of the fee

as compared to the benefit inuring to the class members, are matters to be determined by this Court in accordance with Rule 23 and Ninth Circuit jurisprudence.

### V. Objector Is Incorrect That Conagra Conceded Any Class Member Suffered Injury or Damages.

Objector improperly and incorrectly categorizes Section 8.2.4 of the settlement agreement (regarding injunctive relief) as a "stipulate[ion]" by Conagra as to damages. Dkt. 759 at 18. As a threshold matter, the proposed settlement was a negotiated agreement reached in an effort to resolve vigorously disputed claims. It contained no admission of liability, much less damages, and may not be used as evidence of liability under Federal Rule of Evidence 408. More specifically, with regard to Plaintiffs' expert's purported valuation of the injunctive relief, Conagra has stated that it "disagreed with most everything that Plaintiffs' expert Mr. Weir has said" and characterized his damages model as "a house of cards, ready to fall." ECF 742, Exhibit E (Oct. 7, 2019 Hrg. Tr. p. 25). Accordingly, any suggestion by objector that Conagra has stipulated to, adopted, or agrees with Plaintiffs' expert's damages opinions or valuation of injunctive relief is flatly wrong.

To be clear, Conagra has denied, and continues to deny, that the challenged product labeling was inaccurate, misleading, or actionable in any regard; that any consumer was injured, harmed or suffered damages related to the challenged labeling; or that the challenged labeling was material or misleading to any individual consumer or reasonable consumers. Indeed, the evidence indicates there was no price premium attributable to the challenged claim. As counsel for Conagra explained at the October 7, 2019 hearing, after the July 2017 label change removing 'natural,' there

LEGAL02/41256494v1

was no evidence of a reduction in the price consumers paid for the product nor a reduction in demand, thus belying any allegations of a price premium. *Id.* at 17.

## CONCLUSION

For the forgoing reasons, the proposed settlement is fair to the class and the Court should grant approval.

This 10th day of December, 2021.

>/s/ *Angela M. Spivey*
>Angela M. Spivey (admitted *pro hac vice*)
>Georgia Bar No. 672522
>Alston & Bird LLP
>1201 West Peachtree Street
>Suite 4900
>Atlanta, Georgia  30309
>(404) 881-7857 (Telephone)
>(404) 881-7777 (Facsimile)
>aspivey@mcguirewoods.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2021, I served the foregoing **DEFENDANT CONAGRA BRANDS, INC.'S REPLY TO OBJECTOR'S RENEWED OBJECTION TO PROPOSED SETTLEMENT AND TO FEE REQUEST** on all counsel of record via electronic mail.

>/s/ *Angela M. Spivey*
>Angela M. Spivey

LEGAL02/41256494v1