UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CONAGRA FOODS, INC.<br><br>ROBERT BRISEÑO, *et al.*, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CONAGRA FOODS, INC.,<br><br>Defendant. | Case No.: CV 11-05379-CJC (AGRx)<br><br>MDL No. 2291<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DENYING PLAINTIFFS' RENEWED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT [Dkt. 742]** |

## I. INTRODUCTION

In this decade-old class-action lawsuit, Plaintiffs challenge Defendant ConAgra Foods, Inc.'s ("ConAgra") allegedly deceptive marketing of Wesson Oil products as "100% Natural." After years of investigation and litigation—including extensive

discovery and motion practice, a Ninth Circuit appeal regarding the district court's order certifying eleven statewide consumer damages classes, and diligent mediation efforts with two separate judges—the parties reached a settlement by accepting a court proposal from Magistrate Judge Douglas F. McCormick.

The Court granted final approval of the parties' settlement, relying on, among other factors, the Court's concerns about the strength of Plaintiffs' case, the risks of further litigation, the enormous problems of managing the eleven certified classes, the efforts and judgment of Magistrate Judge McCormick, the prior extensive litigation, and the fact that Plaintiffs' attorneys were seeking less than half of their lodestar. (Dkt. 695.) The Ninth Circuit reversed, concluding that courts must now scrutinize even post-class certification settlements for potentially unfair collusion in the distribution of funds between the class and their counsel. *Briseño v. Henderson*, 998 F.3d 1014, 1019 (9th Cir. 2021). The Circuit remanded to this Court to take a closer look at terms in the settlement that could indicate that the interests of class counsel and ConAgra were placed above the class' interests. *Id.*

Plaintiffs then renewed their motion for final approval of the same settlement agreement and the requested attorney fees, costs, and incentive awards. (Dkt. 742.) The Court denied the motion after analyzing the substantial additional information it received regarding the settlement agreement, concluding "that the Settlement Agreement includes too many indicators that class counsel's and ConAgra's self-interest unduly influenced the outcome of the negotiations." (Dkt. 779 [Order Denying Plaintiffs' Motion for Final Approval of Class Action Settlement, hereinafter "Order"] at 12.) In support of its conclusion, the Court cited the significant disproportion between the amount the class recovered and the amount of fees class counsel recovered, the parties' knowledge that the claims rate under the settlement would be low, the fact that class counsel previously rejected a settlement offer with equal payments to the class and class counsel, the clear

sailing provision, the reverter clause, and the fact that multiple concerning provisions were proposed by Magistrate Judge McCormick, who expressly stated that he did not consider what was fair or right in proposing the terms, but rather only considered what terms "ha[d] the best chance of being accepted by both sides." (*Id.* at 12–13.)

Now before the Court is Plaintiffs' motion for reconsideration of the Court's order denying Plaintiff's renewed motion for final approval. (Dkt. 784.) Plaintiffs ask that, rather than reject the entire settlement agreement, the Court instead approve the settlement agreement with a reduction in class counsel's attorney fees. (*See id.* at 1–2.) For the following reasons, Plaintiffs' motion for reconsideration is **DENIED**.[1]

## II. BACKGROUND

The Court provided a detailed description of the factual and procedural background of this case in its order denying final approval of the settlement agreement. (Order at 3–10.) The Court repeats only necessary facts here.

### A. The Settlement Agreement

The Settlement Agreement before the Court was reached after Magistrate Judge McCormick spent approximately 100 hours helping the parties reach an agreement, including a court proposal from Magistrate Judge McCormick on several key aspects of the agreement. The agreement provided that ConAgra would not label, advertise, or market Wesson Oils as "natural," absent future legislation or regulation. (Dkt. 652, Ex. 1

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for February 28, 2022 at 1:30 p.m. is hereby vacated and off calendar.

[Settlement Agreement and Release, hereinafter "Settlement Agreement"] ¶ 3.3.)  It also provided class members the following monetary benefits:

> (a) $0.15 for each unit of Wesson Oils purchased to households submitting valid claim forms (to a maximum of 30 units without proof of purchase, and unlimited units with proof of purchase), with no cap,
> (b) an additional fund of $575,000 to be allocated to New York and Oregon class members submitting valid claim forms, as compensation for statutory damages under those states' consumer protection laws, and
> (c) an additional fund of $10,000 to compensate those in all classes submitting valid proof of purchase receipts for more than thirty purchases, at $0.15 for each such purchase above 30, with class counsel paying any non-funded claims (i.e. claims above the $10,000 ConAgra provided) from any attorney fees awarded in this case.

(*Id.* ¶ 3.1.)

The agreement further provided that "Class Counsel shall make a Fee and Expense Application to the Court for an award of $6,850,000, to be paid by Conagra."  (*Id.* ¶ 8.1.1.1.)  ConAgra agreed to "take no position" with respect to the application, "consistent with its agreement negotiated with the assistance of Magistrate Judge McCormick as mediator."  (*Id.* ¶ 8.1.1.2.)  If the amount of attorney fees awarded was less than $6,850,000, the parties agreed that "the relevant amount of the overpayment of attorneys' fees and costs paid by Conagra shall be returned to Conagra."  (*Id.* ¶ 8.1.1.3.)

**B.   The Ninth Circuit's Assessment of the Settlement Agreement**

The Court granted final approval of the settlement, but the Ninth Circuit reversed.  *Briseño v. Henderson*, 998 F.3d 1014 (9th Cir. 2021).  It "h[e]ld that under the newly revised Rule 23(e)(2) standard, courts must scrutinize settlement agreements—including post-class certification settlements—for potentially unfair collusion in the distribution of funds between the class and their counsel."  *Id.* at 1019.  More specifically, the Circuit

expressed concern that the Settlement Agreement provides a "disproportionate distribution" to counsel and contains a "clear sailing" agreement and a "reverter." *Id.* at 1026–27. Accordingly, the Circuit stated that this Court "should give a hard look at the settlement agreement to ensure that the parties have not colluded at class members' expense." *Id.* at 1027–28.

### C.  Discovery on Remand

After the Ninth Circuit's reversal, Magistrate Judge McCormick filed a declaration describing the settlement negotiations in this case, including how the parties reached their settlement after accepting his court proposal. (McCormick Decl.) From that declaration, it became clear that the Court was mistaken in its belief that Magistrate Judge McCormick had considered the interests of the class and what outcome was fair or right in making his court proposal. As Magistrate Judge McCormick put it, the court proposals he makes to resolve cases "do not represent [his] evaluation of what is the 'right' outcome," and instead "represent [his] evaluation of the terms that have the best chance of being accepted by both sides." (McCormick Decl. ¶ 14.)

After Magistrate Judge McCormick's declaration was filed, Plaintiffs renewed their request that the Court grant final approval of the same Settlement Agreement. ConAgra filed a response supporting approval of the settlement. To address the Ninth Circuit's concerns and to develop the record for appeal, the Court allowed Objector M. Todd Henderson to conduct limited discovery into discussions between Plaintiffs and ConAgra, and information or material shared with Magistrate Judge McCormick. (Dkt. 750 at 4.)

The discovery revealed, among other things, that the parties knew—when reaching an agreement tying the amount ConAgra would pay to compensate class members to the

number of claims made—that the claims rate was likely to be only around 2 or 3%, and shared that information with Magistrate Judge McCormick. (*See* Dkts. 758-12, 758-13, 758-15.) The discovery further revealed that class counsel rejected a settlement offer that would have given $4 million to the class and $4 million to class counsel. (Dkt. 758-6.) In other words, class counsel rejected an $8 million settlement distributed evenly between the class and its counsel, but accepted a similarly-sized settlement with $7 million to class counsel, and terms that class counsel knew would likely not result in much money to the class (and ended up being less than $1 million).

## III. DISCUSSION

Although there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998), a settlement of class claims requires court approval. Fed. R. Civ. P. 23(e). This is because "[i]ncentives inhere in class-action settlement negotiations that can, unless checked through careful district court review of the resulting settlement, result in a decree in which the rights of class members, including the named plaintiffs, may not be given due regard by the negotiating parties." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (cleaned up).

A proposed class action settlement must be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "Rule 23(e)(2) assumes that a class action settlement is invalid" until a court concludes that it is fair, reasonable, and adequate. *Briseño*, 998 F.3d at 1030. In assessing whether settlement agreements are fair, reasonable, and adequate, courts must be "vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011); *see Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1060 (9th Cir.

2019) (acknowledging "risk that self-interest, even if not purposeful collusion, will seep its way into the settlement terms"). Withholding settlement approval "is warranted when the settlement terms contain convincing indications that the class representative and class counsel's self-interest won out over the class's interest." *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021). After reviewing the Settlement Agreement as a whole, and in light of the parties' and Magistrate Judge McCormick's statements and actions, the Court concluded that there were too many signs that self-interest infected the negotiations of the Settlement Agreement. The Court therefore denied Plaintiffs' motion for final approval.

Plaintiffs now ask that the Court reconsider its order denying final approval of the Settlement Agreement, and instead grant final approval of the Settlement Agreement with an appropriate reduction to class counsel's attorney fees. But reducing class counsel's attorney fees would address only one of numerous aspects of the Settlement Agreement that caused the Court to question whether excessive self-interest infected the negotiations leading to it. The Court did not reason that the disproportion between class recovery and attorney fees alone doomed the Settlement Agreement. Rather, it repeatedly explained that this disproportion *taken together* with other factors, including the clear sailing provision, the reverter provision, Judge McCormick's explanation that he considered only what the parties would be likely to accept and not what was fair or just, the likely low claims rate, class counsel's incentive to make sure claims did not get too high, and the worthless injunction—plus the evidence that the parties actually knew the claims rate would be extremely low and class counsel's rejection of a more proportional settlement offer—indicated that self-interest infected the negotiations. (Order at 12–14; 16; 18–19.) Even with a reduction in class counsel's attorney fees, the other troubling aspects of the settlement remain.[2]

---

[2] It is also worth noting that Plaintiffs fail to show that a motion for reconsideration is proper here. A motion for reconsideration may be made on grounds of: (1) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the order was entered, (2) the emergence of new material

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for reconsideration of the Court's order denying final approval of the Settlement Agreement is **DENIED**.

DATED:   February 22, 2021

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE

---

facts or a change of law occurring after the order was entered, or (3) a manifest showing of a failure to consider material facts presented to the Court before the order was entered. C.D. Cal. L.R. 7-18. In other words, a "motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (quotations omitted); *Olander Enters., Inc. v. Spencer Gifts*, 2011 WL 13225062, at *2 (C.D. Cal. Oct. 21, 2011) (denying L.R. 7-18 motion where "[plaintiff] does not cite any intervening controlling law decided after the Court issued" the relevant order); *see also Rivera v. UHS of Del., Inc.*, 2018 WL 6177235, at *3 (C.D. Cal. Mar. 14, 2018) ("[S]everal courts in the Central District of California have reasonably construed 'change in law' in Local Rule 7-18 to require a change in controlling law.") (collecting cases). None of these circumstances are present here.