1
2
3
4

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
DAVID E. AZAR (SBN 218319)
280 S. Beverly Drive, Suite PH
Beverly Hills, California  90212
Telephone:  (213) 617-1200
dazar@milberg.com

5
6
7
8

**TADLER LAW LLP**
ARIANA J. TADLER (*pro hac vice*)
22 Bayview Avenue, Suite 200
Manhasset, New York  11030
Telephone:  (212) 946-9300
atadler@tadlerlaw.com

9
10
11
12

**DiCELLO LEVITT LLC**
ADAM J. LEVITT (*pro hac vice*)
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois  60602
Telephone:  (312) 214-7900
alevitt@dicellolevitt.com

13
14

*Appointed Class Counsel*

15

**CENTRAL DISTRICT OF CALIFORNIA**

16

**WESTERN DIVISION**

17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| IN RE CONAGRA FOODS, INC. | ) Case No. CV 11-05379-CJC (AGRx)<br>)<br>) MDL No. 2291<br>)<br>) **CLASS ACTION**<br>)<br>) **MEMORANDUM OF LAW IN SUPPORT**<br>) **OF PLAINTIFFS' MOTION FOR**<br>) **PRELIMINARY APPROVAL OF THE**<br>) **SETTLEMENT, APPROVAL OF FORM**<br>) **AND MANNER OF NOTICE, APPROVAL**<br>) **TO NOTICE THE CLASSES, AND**<br>) **SETTING FINAL SETTLEMENT**<br>) **SCHEDULE AND DATE FOR FINAL**<br>/ **APPROVAL HEARING PURSUANT TO**<br> **FED. R. CIV. P. 23(e)(1)** |

# TABLE OF CONTENTS

Page(s)

I.     INTRODUCTION ...................................................................................1

II.    BACKGROUND ......................................................................................2

    A.    Plaintiff's Allegations ....................................................................2

    B.    Procedural History .........................................................................3

        1.    Case Origins ........................................................................3

        2.    Class Certification and Subsequent Appeals...........................4

        3.    Mediation and Settlement Efforts in Connection with the Original Settlement .........................................................6

    C.    New [Proposed] Settlement.............................................................8

III.    ARGUMENT ..........................................................................................10

    A.    The proposed New Settlement easily meets the standard for preliminary approval. ..................................................................10

        1.    The Class representatives and Class Counsel have adequately represented the Classes under Rule 23(e)(2)(A). .........................................................................12

        2.    The proposed New Settlement was the result of serious, arm's-length negotiations under Rule 23(e)(2)(B). .........................................................................13

        3.    The proposed New Settlement has no obvious deficiencies..........................................................................15

        4.    The proposed New Settlement treats all Class Members fairly and equitably under Rule 23(e)(2)(D). ........................16

        5.    The $3 million non-reversionary common fund secures an excellent result for the Classes under Rule 23(e)(2)(c) and is well within the range of possible approval.............................................................................17

    B.    The relief provided for the Classes is adequate, taking into account the effectiveness of any proposed method of distributing relief to the Classes, including the method of processing class-member claims. ...................................................19

    C.    The proposed form and manner of notice will fairly and efficiently inform Class Members of the terms of the settlement and their options. .........................................................20

- i -

1

**TABLE OF CONTENTS**
(continued)

2

Page

3

D.   The Court should appoint JND Legal Administration to serve as the settlement administrator...........................................................22

4

E.   The Presence of a Government Participant......................................22

5

F.   The proposed final settlement schedule is appropriate, comports with due process, and satisfies the requirements of the Class Action Fairness Act. ..........................................................22

6

7

IV.   CONCLUSION.............................................................................................23

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

<u>Page</u>

**Cases**

*Acosta v. Frito-Lay, Inc.*,
   No. 15-cv-02128, 2018 WL 646691 (N.D. Cal. Jan 31, 2018) ........................................ 13, 17

*In re Apple Inc. Device Performance Litig.*,
   No. 21-15758, 2022 WL 4492078 (9th Cir. Sept. 28, 2022) ................................................ 17

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ......................................................................................... 12, 16

*Briseño v. ConAgra Foods, Inc.*,
   674 F. App'x 654 (9th Cir. 2017) ..................................................................................... 6, 12

*Briseño v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017) ............................................................................................ *passim*

*Briseño v. Henderson*,
   998 F.3d 1014 (9th Cir. 2021) ............................................................................................ *passim*

*Class Plaintiffs v. Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ................................................................................................ 10

*Conagra Brands, Inc. v. Briseño*,
   138 S. Ct. 313 (2017) ............................................................................................................. 12

*In re Conagra Foods, Inc.*,
   90 F. Supp. 3d 919 (C.D. Cal. 2015) ................................................................................... 6, 13

*Cuzick v. Zodiak U.S. Seat Shells, LLC*,
   No. 16-cv-03793-HSG, 2017 WL 4536255 (N.D. Cal. Oct. 11, 2017) ........................... 13, 16

*Edenborough v. ADT, LLC*,
   No. 16-cv-02233, 2017 WL 4641988 (N.D. Cal. Oct. 16, 2017) ........................................... 11

*In re Fairlife Milk Prods. Mktg. and Sales Practices Litig.*,
   No. 19-cv-03924, ECF No. 180 (N.D. Ill. Sept. 28, 2022) ....................................................... 1

*Fritsch v. Swift Transp. Co. of Arizona, LLC*,
   No. 517CV02226VAPKKX, 2021 WL 6881863 (C.D. Cal. Oct. 5, 2021) ..................... 11, 18

*Haralson v. U.S. Aviation Servs. Corp.*,
   383 F. Supp. 3d 959 (N.D. Cal. 2019) ............................................................................... 10, 11

- iii -

**TABLE OF AUTHORITIES**
(continued)

Page

*Kendall v. Odonate Therapeutics, Inc.*,
  No. 3:20-CV-01828-H-LL, 2022 WL 188364 (S.D. Cal. Jan. 18, 2022) .............................. 11

*Toolajian v. Air Methods Corp.*,
  No. 18-CV-06722-AGT, 2020 WL 8674094 (N.D. Cal. Apr. 24, 2020)........................ 11, 20

*Torres v. Pick-A-Part Auto Wrecking*,
  No. 16-cv-01915, 2018 WL 306287 (E.D. Cal. Jan. 5, 2018) ................................................ 15

*Uschold v. NSMG Shared Servs., LLC*,
  333 F.R.D. 157 (N.D. Cal. 2019) .................................................................................... 13, 18

*Zepeda v. PayPal, Inc.*,
  Nos. C 10-2500, C 10-1668, 2014 WL 718509 (N.D. Cal. Feb. 24, 2014) ........................... 11

**Other Authorities**

Fed. R. App. P. 41(d)(2)(A) ............................................................................................................ 6

Fed. R. Civ. P. 23(c)(2)(B) ....................................................................................................... 20, 21

Fed. R. Civ. P. 23(e) ........................................................................................................... *passim*

Fed. R. Civ. P. 23(f) ...................................................................................................................... 5

## I.     INTRODUCTION

Plaintiffs allege in this action that from at least June 27, 2007, until July 1, 2017, Conagra deceptively and misleadingly marketed its Wesson-brand cooking oils, made from genetically modified organisms (commonly known as "GMOs"), as "100% Natural."  After nearly 11 years of hard-fought litigation, including extensive discovery, motion practice, certification of 11 classes, and multiple appeals, including of a prior proposed settlement, which this Court ultimately declined to approve post-remand from the Ninth Circuit, Plaintiffs and Conagra have negotiated at arms-length over the last 6 months to reach a *new* settlement agreement to resolve this action on a class-wide basis.  They do so based upon the previous guidance from the Ninth Circuit, in recognition of and to avoid the risks, burden, and cost of ongoing litigation, and to afford the Classes with relief in connection with the allegations contained herein.  The settlement, which must be approved by the Court, provides monetary damages to all Class members *through the establishment of a qualified non-reversionary settlement fund* to be funded by Conagra within thirty-nine days of the entry of a Preliminary Approval Order, from which the cost of notice to the classes, expenses, and service awards to the class representatives will be paid (the "New Settlement").[1]

The New Settlement includes a notice program similar to a recent settlement in the Northern District of Illinois, which received final approval absent objection.[2]  Plaintiffs seek this Court's Preliminary Approval of the Settlement and approval to notice the classes of the New Settlement pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Under Rule 23(e)(1), to approve giving notice to the classes, the Court must determine that the prospect of class certification—*for the purposes of settlement*—and approval of the proposed settlement justifies giving such notice—*i.e.*, the Court must grant Preliminary Approval of the Settlement and find that it will likely approve the

---

[1] In July 2017, six years into this litigation, Conagra removed the "100% Natural" claim from all Wesson labels and stopped advertising the products as "natural."  Plaintiffs contend that this litigation was a significant factor leading to Conagra's decision to institute labeling and marketing changes. Conagra contends its decision did not relate in any way to this litigation.  The New Settlement does not seek to account for any additional injunctive relief.

[2] *See In re Fairlife Milk Prods. Mktg. and Sales Practices Litig.*, No. 19-cv-03924, ECF No. 180 (N.D. Ill. Sept. 28, 2022) (attached to the accompanying declaration of Class Counsel as Exhibit 5). Amy Keller, a partner at DiCello Levitt, served as Class Counsel in that action.

CASE NO. CV 11-05379-CJC (AGRX)
MEM. OF LAW ISO PLS' MOT FOR PRELIM. APPROVAL OF SETTLEMENT

New Settlement under Rule 23(3)(2) as fair, reasonable, and adequate, and certify the classes for purposes of judgment on the New Settlement.[3]  Worthy of note is the negotiated provision in the New Settlement Agreement that Class members who filed claims under the prior settlement will be permitted to participate in the New Settlement based on their prior claim forms (*i.e.*, they need not submit a new claim form and thus they need not do anything more to participate); or, if they prefer not to participate, they may opt out of the New Settlement.

In this motion, Plaintiffs summarize the facts leading up to and the specific details of the New Settlement and address the applicable Rule 23 factors to support this Court's approval of disseminating notice to the classes.  Accompanying Plaintiffs' motion is a comprehensive Joint Declaration of Class Counsel ("Joint Decl."), which sets forth the historic details of this 11+ year old litigation and the context of the New Settlement.  Plaintiffs seek this Court's approval of the appointment of class representatives and class counsel as Settlement Class Representatives and Settlement Class Counsel, of which those appointments will be identified in notice to the classes.

Upon this Court's granting Preliminary Approval of the Settlement and directing notice to the Classes, notice of the New Settlement will be disseminated to class members.  Plaintiffs subsequently will return to the Court with a motion for final approval of (and to effectuate) the New Settlement as fair, reasonable, and adequate under Rule 23(e)(2); to affirm its appointment of class representatives and class counsel as Settlement Class Representatives and Settlement Class Counsel for the Settlement; to award any expenses; and to approve service awards to the Settlement Class Representatives.

## II.    BACKGROUND

### A.    Plaintiff's Allegations

From at least June 27, 2007, until July 1, 2017, every bottle of Wesson Oil carried a front label stating that the product was "100% Natural."  Plaintiffs in this action, residents of eleven different states, allege that the "natural" claim on Wesson Oil was false and misleading as the products contained GMOs.  During the course of this litigation, Conagra removed the "100%

---

[3] Eleven state classes were previously certified pursuant to Rule 23(b)(2) and 23(b)(3). ECF No. 545.

- 2 -

Natural" claim from all Wesson labels, and stopped advertising the products as "natural," as of July 1, 2017.

Plaintiffs further allege that Wesson Oils commanded a premium price due to the presence of the "100% Natural" claim on the label and that, consequently, every Class Member was induced to pay more for Wesson Oils due to that false and deceptive claim. Accordingly, Plaintiffs brought this Action on behalf of themselves and other similarly-situated consumers seeking to end Conagra's use of the "100% Natural" claim and obtain monetary compensation for the Classes, *i.e.*, the price premium they allegedly paid for Wesson Oils due to the presence of the "100% Natural" claim. Conagra denies Plaintiffs' allegations and believes that it has a variety of meritorious defenses.

### B.     Procedural History

#### 1.     Case Origins

Beginning on June 28, 2011, several complaints were filed against Conagra, alleging that from at least June 27, 2007 until July 1, 2017, Conagra deceptively and misleadingly marketed its Wesson brand cooking oils, although they were made from GMOs, as "100% Natural." ECF No. 8. Each of the cases alleged in part that due to the presence of the "100% Natural" claim on the label, Wesson Oils commanded a premium price and consequently induced every Class Member to pay more for Wesson Oils due to that false and deceptive claim. On August 4, 2011, plaintiffs moved the Judicial Panel for Multidistrict Litigation ("JPML") to transfer six additional cases then pending in four different districts to the Central District. ECF Nos. 8-11. On August 24, 2011, Conagra moved to dismiss the initial complaint in the Briseño case and alternatively moved for its first motion to stay. ECF Nos. 24-25. On October 13, 2011, the JPML issued a Transfer Order centralizing the pending actions in the Central District of California before Judge Morrow. On November 23, 2011, Judge Morrow granted Conagra's motion to dismiss with leave to replead. ECF No. 54. On December 9, 2011, Judge Morrow consolidated all pending related actions and ordered the filing of a Consolidated Amended Complaint. ECF No. 59.

On January 12, 2012, Plaintiffs filed their Consolidated Amended Class Action Complaint that alleged claims in 15 states. ECF No. 80. On February 24, 2012, ConAgra filed its motion to dismiss said Consolidated Amended Complaint for lack of specificity, or failure to plead state

- 3 -

consumer protection, warranty, or unjust enrichment claims.  ECF No. 84.  On July 24, 2012, the Court held a hearing and granted Plaintiffs' motion for a protective order related to the obligations of document preservation demands by Conagra.  ECF No. 110.  On November 15, 2012, the Court granted in part and denied in part Conagra's motion to dismiss the Consolidated Amended Complaint.  ECF No. 138.  On December 19, 2012, Plaintiffs filed their Second Consolidated Amended Complaint, again alleging claims for 15 states.  ECF No. 143.  On January 16, 2013, Conagra answered the Second Consolidated Amended Complaint.  ECF No. 145.  Meanwhile, the parties attempted and failed over a period spanning five months to negotiate a stipulated protective order to govern confidentiality designations.[4]   On June 25, 2013, Magistrate Judge Alicia G. Rosenberg held a hearing, and the Court granted in part and denied in part Plaintiffs' Motion for Resolution of Issues on Proposed Protective Order and entered a protective order to govern confidentiality designations. ECF Nos. 162-63.

On August 6, 2013, Conagra made its second attempt to halt and delay this litigation with an *ex parte* application to stay the case pending the outcome of a referral to the Food and Drug Administration ("FDA").  ECF No. 171.  On August 12, 2013, the Court denied Conagra's *ex parte* application.  ECF No. 173.  Following the Court's denial of Conagra's motion, Plaintiffs and Conagra engaged in substantial discovery practice over the course of four years (specifically, from 2012 through 2015), where the parties exchanged significant written discovery and document productions, initiated, and completed third-party and expert discovery, and took and defended 19 fact depositions.  Joint Decl. ¶¶ 70-111.

### 2.    Class Certification and Subsequent Appeals

On February 13, 2014, the Court *sua sponte* issued an Order as to the forthcoming class certification motion and remaining case management dates.  ECF No. 183.  On May 5, 2014, Plaintiffs filed a motion for class certification, seeking to certify classes in twelve (12) states.  ECF Nos. 241-247.  On June 2, 2014, Conagra filed its opposition to class certification.  ECF No. 265. On June 30, 2014, Plaintiffs filed their reply in support of class certification, now seeking to certify

---

[4] This was prior to the time the Central District developed its model protective orders.

- 4 -

classes in only eleven (11) states.  ECF Nos. 284-91.  After the hearing on Plaintiffs' motion for class certification, the Court issued an order on July 14, 2014 denying Plaintiffs' class certification motion without prejudice to its renewal.  ECF No. 307.  The order also directed the parties to meet and confer, and submit a joint report by July 21, 2014, as to the proposed schedule for the filing and briefing of an amended motion for class certification. *Id*.  On July 18, 2014, pursuant to the Court's July 14, 2014, order, the parties submitted a joint report.  ECF No. 334.  On August 1, 2014, the Court issued its order denying Plaintiffs' first motion for class certification, granting in part and denying in part Conagra's motion to strike, and directing the Plaintiffs to refile their motion for class certification within 30 days should they be able to cure certain deficiencies noted by the Court.  ECF No. 350.

On September 8, 2014, Plaintiffs filed their amended motion for class certification and motion to seal portions of the filing, including the declarations of Colin B. Weir, Dr. Elizabeth Howlett, Charles M. Benbrook, Ph.D., and Class Counsel.  ECF Nos. 363-65, 367-72.  On October 6, 2014, Conagra filed its opposition to the amended motion for class certification, requests for judicial notice, and motion to strike Plaintiffs' expert testimony of Dr. Howlett and Weir.  ECF Nos. 383-90.  On November 24, 2014, the parties appeared before the Court to argue Plaintiffs' class certification motion.  On December 16, 2014, Conagra filed a notice of decision from the United States District Court, Northern District of California as to summary judgment and an order granting a motion to decertify the damages class issued on December 15, 2014.  ECF No. 430.  On December 17, 2014, Conagra filed an *ex parte* application in its third attempt to stay this case pending resolution of related cases and appeals.  ECF No. 433.  On December 18, 2014, Plaintiffs filed an opposition to the *ex parte* application to stay the case and an opposition to Conagra's notice of decision. ECF Nos. 435-36, 438.  On December 29, 2014, Judge Morrow denied Conagra's third attempt to stay the case with its *ex parte* application.  ECF No. 440.  From December 2014 through early 2015, Plaintiffs continued to engage in various discovery motion practice with Conagra.  Joint Decl. ¶¶ 150, 153, 156, 160-68.

On March 13, 2015, Conagra made its fourth attempt to delay the litigation when it filed another motion to stay the case pending a Rule 23(f) petition and appeal.  ECF No. 546.  On May

- 5 -

13, 2015, the Ninth Circuit issued an order granting Conagra's petition for permission to appeal the district court's February 23, 2015 order granting class certification.  ECF No. 580.  At this point, the parties stipulated to staying the case in light of the pending appeal and advised the Court accordingly.  Joint Decl. ¶ 182.  On May 15, 2015, the Court issued an order granting the parties' joint stipulation to stay the case pending appeal.  ECF No. 584.  On September 21, 2015, Appellant-Defendant filed its opening brief.  *Briseno v. Conagra Foods, Inc.*, No. 15-55727 (9th Cir.), ECF No. 13.  On December 18, 2015, Plaintiffs-Appellees filed their answering brief.  *Id.* at ECF No. 24.  On March 2, 2016, Defendant-Appellant filed its reply brief.  *Id.* at ECF No. 34.  On January 3, 2017, *nearly two years after Plaintiffs successfully achieved class certification*, the Ninth Circuit issued its opinion and memorandum *affirming* Judge Morrow's class certification ruling in all respects, including on the heavily contested issue of "ascertainability" in class actions.  *Id.* at ECF Nos. 52, 53.  The District Court entered the Ninth Circuit opinion and memorandum on its docket on January 3, 2017.  ECF Nos. 595-96.

Following the Ninth Circuit's unanimous decision to *deny* Conagra's motion for rehearing *en banc*, *Briseno v. Conagra Foods, Inc.*, No. 15-55727 (9th Cir.), ECF No. 56, it granted Conagra's new motion to stay issuance of the mandate pending application for writ of *certiorari* pursuant to Fed. R. App. P. 41(d)(2)(A) on March 2, 2017.  *Id.* at ECF No. 58.  Conagra subsequently filed a petition for *certiorari* to the United States Supreme Court on April 10, 2017, seeking review of the Ninth Circuit's decision to uphold class certification, specifically as to its ruling on Conagra's arguments in connection with "ascertainability."  *Conagra Brands, Inc., F/K/A Conagra Foods, Inc. v. Briseno, et al.*, No. 16-1221.  On October 10, 2017, the Supreme Court *denied* Conagra's petition. *See In re Conagra Foods, Inc.,* 90 F. Supp. 3d 919, 1035-36 (C.D. Cal. 2015), *aff'd sub nom. Briseño v. Conagra Foods, Inc*., 844 F.3d 1121 (9th Cir. 2017), and *aff'd sub nom. Briseño v. Conagra Foods, Inc*., 674 F. App'x 654 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 313 (2017).

### 3.    Mediation and Settlement Efforts in Connection with the Original Settlement

After remand, the parties sought to continue the stay entered in May 2015 to permit mediation, which was granted by the District Court on November 17, 2017.  ECF Nos. 600-01.

- 6 -

1   Days before the submission deadline for the mediation statement, Conagra made its fifth attempt to

2   halt the case by strategically filing a request with the JPML to move this action from the Central

3   District of California to the Northern District of Illinois, using Judge Morrow's retirement and the

4   move of its corporate office as reasons to escape the Ninth Circuit.  Joint Decl. ¶ 197. Plaintiffs

5   strongly opposed, and on April 9, 2018, the JPML denied Conagra's request to transfer.  ECF No.

6   610.

7          Between January 2018 and March 2019, and with the assistance of two mediators, the parties

8   intensely negotiated at arm's-length the original settlement, which was presented to the Court for

9   approval to issue notice to the classes.  Joint Decl. ¶¶ 200-08, 212-15.  On April 4, 2019, the Court

10  entered its order granting preliminary approval of the settlement.  ECF No. 654; Joint Decl. ¶ 216.

11  On October 7, 2019, the Court heard oral argument at the final approval hearing, during which

12  Plaintiffs, Conagra, and a single Objector appeared.  ECF No. 694; Joint Decl. ¶¶ 227-28.  On

13  October 8, 2019, the Court granted final approval of the settlement, and on November 7, 2019, the

14  Objector appealed.  ECF Nos. 695, 697; Joint Decl. ¶¶ 229-30.  On June 1, 2021, the Ninth Circuit

15  issued an order reversing the Court's final approval ruling and remanded the case to this Court to

16  review the terms of the settlement.  *Briseno, et al. v. Conagra Foods, Inc.*, No. 19-56297 (9th Cir.),

17  ECF No. 67; Joint Decl. ¶ 249.

18          On September 23, 2021, Plaintiffs filed a renewed motion in support of final approval of the

19  settlement.  ECF No. 742; Joint Decl. ¶ 254.  Instead of filing an opposition brief in response thereto,

20  the objector moved the Court for additional discovery related to settlement negotiations between

21  Class Counsel and Conagra—the Court granted that motion, in part, on October 6, 2021.  ECF No.

22  750; Joint Decl. ¶¶ 256, 259.  Following the conclusion of certain discovery and briefing on

23  Plaintiffs' motion, this Court denied Plaintiffs' motion for final approval of the prior settlement on

24  December 22, 2021.  ECF No. 779. Joint Decl. ¶¶ 260-77.  On January 5, 2022, Plaintiffs filed a

25  motion for reconsideration of the Court's order denying Plaintiffs' renewed motion for final

26  approval.  ECF No. 784; Joint Decl. ¶ 278.  On February 22, 2022, this Court denied Plaintiffs'

27  motion for reconsideration.  ECF No. 795; Joint Decl. ¶ 281.

28          Recognizing that the Court's ruling rejecting the prior settlement would inevitably lead to

- 7 -

1   an onslaught of litigation tactics by both sides (particularly in light of the Court's comments that it

2   would be inclined to now decertify the classes that were previously certified), and that the risks,

3   burdens, and costs would be vast for both sides, Plaintiffs and Conagra initiated discussions to

4   explore whether the parties could negotiate a new settlement agreement that would cure the

5   deficiencies in the former agreement, as previously noted by this Court and the Ninth Circuit, satisfy

6   the parties, and provide relief to the Classes who have awaited payout for over a decade.  Joint Decl.

7   ¶¶ 282-83. After roughly six months of additional negotiations, the parties reached agreement on a

8   New Settlement ("New Settlement Agreement").  Joint Decl. ¶ 283.  A true and correct copy of the

9   New Settlement Agreement is attached to the Joint Declaration as Exhibit 1.

10         **C.    New [Proposed] Settlement**

11         The New Settlement provides for the establishment of a qualified settlement fund to be

12   established by the Settlement Administrator and funded by Conagra in the amount of $3,000,000,

13   *in the form of a non-reversionary common fund*.  New Settlement Agreement § 2.32.[5]  Conagra will

14   fund the $3,000,000 into the qualified Settlement Fund established by the Settlement Administrator

15   within twenty-five (25) days after notice to the classes commences.  *Id.* § 3.3.  Payment of settlement

16   compensation to Class Members shall be made by the Settlement Administrator based upon claims

17   submitted[6] and from the Settlement Fund on the basis of a Valid Claims Form. *Id.* § 4.1.

18         Class Members who timely submit a Valid Claims Form may receive settlement

19   compensation of Fifteen Cents ($0.15) per unit of Wesson Oil Products purchased during the

20   applicable Class Period.  *Id.* § 4.1.2.  Under the Settlement, a portion of the Settlement Fund,

21   specifically $575,000, will be allocated only to members of the New York and Oregon Classes who

22   submit Valid Claim Forms or are identified for direct distribution, in proportion to the number of

23   units purchased.  *Id.* § 4.2.1.  The Settlement also provides for *pro rata* adjustment of the Settlement

24
25   [5] The previous settlement did not include a non-reversionary common fund.  The Parties believe that this added feature serves to allay certain concerns articulated by the Ninth Circuit and by this Court on subsequent remand.

26   [6] This includes valid claims previously filed by members of the Class with respect to the prior
27   settlement following the Court's decision to preliminarily approve the former settlement agreement and to disseminate notice to the Class.  This does not include, however, members of the Class who
28   previously filed claims but choose now to opt-out of participating in the New Settlement.

- 8 -

Compensation in the event that the value of the Valid Claims Forms exceeds or falls short of the funds available for distribution to class members (after deducting the portion of Settlement Funds designated for New York and Oregon Class Members).[7] *Id.* § 4.1.4.  In addition, the amount of additional recovery for New York and Oregon class members will be adjusted *pro rata* according to the number of Valid Claim Forms for these classes.  *Id.* § 4.2.2.  Recovery under the New Settlement by Class Members is limited to one claim per household.  *Id.* § 4.1.3.

The New Settlement includes specific releases to Conagra, including (i) forever releasing and discharging Conagra from any liability for all claims of any nature that have or could have been brought in connection with the subject of this Litigation and all claims that could be brought based on subsequently discovered information following the Final Effective Date, with the exception of claims arising from bodily injury allegedly suffered in connection with the Wesson Oil Products; (ii) expressly waiving and releasing any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code or of any comparable statute, law, or principle of common law; and (iii) expressly waiving and releasing Conagra from any liability for claims arising under §§ 17200, *et seq.*, of the California Business and Professional Code.  *Id.* §§ 8.1, 8.3, 8.4.

The Settlement Fund will be used to meet the monetary obligations to Class Members under the Settlement, pay out all Settlement Payments, Expense Awards, Administrative Costs, service awards, and any other costs or expenses related to the Settlement.  *Id.* § 3.1.  Under the New Settlement Agreement, Conagra is not obligated to pay any further costs or amounts associated with the Settlement.  *Id.*  During the course of this litigation, Class Representatives were the subject of extensive discovery, including document production and, in some cases, depositions.  Plaintiffs intend to seek service awards in the amounts of $3,000 for those plaintiffs who sat for depositions, and $1,000 for those that did not sit for their depositions, but otherwise were the targets of discovery. Service awards are subject to Court approval; subject to such Court approval, service awards may be paid 30 days after the Final Effective Date.  *Id.* §§ 9.5, 9.6.

Plaintiffs also intend to seek reimbursement of reasonable expenses incurred, deferred,

---

[7] The *pro rata* adjustment was not in the previously-proposed settlement.

CASE NO. CV 11-05379-CJC (AGRX)
MEM. OF LAW ISO PLS' MOT FOR PRELIM. APPROVAL OF SETTLEMENT

1   and/or advanced by their counsel throughout the history of this litigation, as submitted by Class

2   Counsel.  The details of those expenses are set forth in paragraphs 300-04 of the Joint Declaration.

3   When Plaintiffs' counsel negotiated the prior settlement, their lodestar was already $11.499

4   million.  ECF No. 662 at 3.  Notwithstanding their hard-fought efforts lasting more than a decade

5   of litigation in this matter, during which time they took extensive risk and advanced costs of

6   litigation, Class Counsel will likely seek no attorneys' fees for Plaintiffs' Counsel from the

7   Settlement Fund.

8   With the exception of Administrative Costs, no distributions from the Settlement Fund for

9   any other purpose, including but not limited to distribution of claims to Class Members; Service

10   Awards to Class Representatives; or reimbursement of expenses, shall be made until 30 days after

11   the Final Effective Date.  New Settlement Agreement §§ 3.5, 4.3, 9.2, 9.6.

12   **III.   ARGUMENT**

13   **A.      The proposed New Settlement easily meets the standard for preliminary**

14   **approval.**

15   While courts "must be particularly vigilant" for signs of collusion or self-interest, "[t]he

16   Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class actions."

17   *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 966 (N.D. Cal. 2019) (quoting *In re*

18   *Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)); *Class Plaintiffs v. Seattle*,

19   955 F.2d 1268, 1276 (9th Cir. 1992).  Pursuant to Federal Rule of Civil Procedure 23(e), "[t]he

20   claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."

21   Under Rule 23(e)(2), district courts have an "independent obligation to ensure that any class

22   settlement is 'fair, reasonable, and adequate,' accounting for the interests of absent class members."

23   *Briseno v. Henderson*, 998 F.3d 1014, 1022 (9th Cir. 2021) (quoting Fed. R. Civ. P. 23(e)(2)).  The

24   Ninth Circuit went onto "recognize 'an independent obligation to ensure that [any attorneys' fee]

25   award, like the settlement itself, is reasonable, even if the parties have already agreed to an

26   amount.'" *Briseno*, 998 F.3d at 1022 (quoting *Bluetooth*, 654 F.3d at 941 and *Staton v. Boeing Co.*,

27   327 F.3d 938, 960-64 (9th Cir. 2003)).

28   The Court must engage in a two-step process to approve a settlement.  *Haralson*, 383 F.

- 10 -

Supp. 3d at 966. The first step requires the Court to "make a preliminary determination that the settlement is 'fair, reasonable, and adequate' when considering the factors set out in Rule 23(e)(2)." *Id.*; *see also Edenborough v. ADT, LLC*, No. 16-cv-02233, 2017 WL 4641988, at *5-6 (N.D. Cal. Oct. 16, 2017); *Manual for Complex Litigation (Fourth)* § 21.632 (2015) ("*Manual*"). The second step directs the court to hold a final approval hearing pursuant to Rule 23(e)(2). *Haralson*, 383 F. Supp. 3d at 966. For purposes of preliminary approval, "a full fairness analysis is unnecessary." *Zepeda v. PayPal, Inc*., Nos. C 10-2500, C 10-1668, 2014 WL 718509, at *4 (N.D. Cal. Feb. 24, 2014) (quoting *Alberto v. GMRI, Inc*., 252 F.R.D. 652, 665 (E.D. Cal. 2008)); *Fritsch v. Swift Transp. Co. of Arizona, LLC*, No. 517CV02226VAPKKX, 2021 WL 6881863, at *6 (C.D. Cal. Oct. 5, 2021) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. Apr. 12, 2007)); *Kendall v. Odonate Therapeutics, Inc.*, No. 3:20-CV-01828-H-LL, 2022 WL 188364, at *6 (S.D. Cal. Jan. 18, 2022).

Rather, at the preliminary approval stage, the Court must make an "'initial evaluation of the fairness of the proposed settlement . . . on the basis of written submissions and informal presentation from the settling parties.'" *Toolajian v. Air Methods Corp.*, No. 18-CV-06722-AGT, 2020 WL 8674094, at *7 (N.D. Cal. Apr. 24, 2020) (quoting *In re High-Tech Employee Antitrust Litig.*, No. 11-CV-2509-LHK, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013)). At this point:

> Preliminary approval of a settlement and notice to the class is appropriate if "(1) the proposed settlement appears to be the product of serious, informed, and noncollusive negotiations, (2) has no obvious deficiencies, (3) does not improperly grant preferential treatment to class representatives or segments of the class, and (4) falls within the range of possible approval."

*Kendall v. Odonate Therapeutics, Inc.*, 2022 WL 188364, at *6 (quoting *Tableware*, 484 F. Supp. 2d at 1079). Furthermore, pursuant to the Rule 23(e)(2) amendments, which largely overlap with the above factors, a Court must also consider whether (a) the class representatives and class counsel have adequately represented the class; (b) the proposal was negotiated at arm's length; (c) the relief provided for the class is adequate; and (d) the proposal treats class members equitably relative to each other. The Court should grant preliminary approval of this proposed settlement because the settlement satisfies the above standards and equally satisfies the guidance previously set forth by

- 11 -

1    the Ninth Circuit in this litigation, as discussed below.[8]

2           **1.**      **The Class representatives and Class Counsel have adequately**

3               **represented the Classes under Rule 23(e)(2)(A).**

4        Plaintiffs sought relief under numerous common law and statutory claims, including claims

5    brought under fee-shifting statutes such as the California Consumer Legal Remedies Act § 1780(e);

6    Colorado Revised Statutes Title 6. Consumer and Commercial Affairs § 6-1-1113; Florida

7    Deceptive and Unfair Trade Practices Act §521.2105; Illinois Consumer Fraud and Deceptive

8    Business Practices Act, 815 ILCS 505/10a(c); New York Gen. Bus. Law § 349(h); Ohio Consumer

9    Sales Practices § 1345.09; Oregon Rev. Stat. § 646.638(3); and Tex. Bus. & Comm. Code §

10    17.50(d).  This Court certified eleven state-wide litigation classes (California, Colorado, Florida,

11    Illinois, Indiana, Nebraska, New York, Ohio, Oregon, South Dakota, and Texas), finding that

12    Plaintiffs satisfied the numerosity, commonality, typicality, and adequacy requirements of Rule

13    23(a), as well as the predominance and superiority requirements of Rule 23(b)(3).  ECF No. 545.

14    The Ninth Circuit affirmed. *See Briseño v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017);

15    *Briseño v. ConAgra Foods, Inc.*, 674 F. App'x 654 (9th Cir. 2017).  And on October 10, 2017, the

16    Supreme Court of the United States denied Conagra's petition for writ of *certiorari. Conagra*

17    *Brands, Inc. v. Briseño*, 138 S. Ct. 313 (2017).

18        Class Counsel dedicated significant time and resources to the litigation—which involved

19    briefing regarding preemption, numerous *ex parte* applications by Conagra to stay the case

20    (including but not limited to pending referral to the Food and Drug Administration), numerous

21    rounds of briefing related to discovery (including motions to compel filed by Plaintiffs), two full

22    rounds of class certification briefing, and Plaintiffs' success on Conagra's attempts to reverse the

23    district court's decision granting class certification—at both the Ninth Circuit and Supreme Court.

24

---

25    [8] The Ninth Circuit stated that under the revised Rule 23(e)(2), courts should apply the *Bluetooth*
factors for post-class certification settlements, which requires a district court to scrutinize whether

26    "[d]isproportionate fee awards, clear sailing agreements, and kicker clauses" exist because even
though they "all may be elements of a good deal . . . they also may signal a collusive settlement . . .

27    ." *Briseno*, 998 F.3d at 1027.

28

                           - 12 -

*See* Joint Decl. ¶ 29.  Class Counsel also negotiated a prior settlement, which was presented to the Court, litigated on appeal before the Ninth Circuit, and resubmitted to the Court for approval on remand.  Although this Court ultimately rejected the prior settlement, Class Counsel remained stalwart in their efforts to reach resolution for the classes.  *Class Counsel have now achieved a New Settlement with a $3,000,000 non-reversionary common fund for the classes, under which they seek no fee for their over eleven years of work.*   Most significantly, Plaintiffs' main objective in this litigation was achieved when—after this litigation began—Conagra decided to remove the "100% Natural" claim from Wesson labels.  Named Plaintiffs have similarly remained devoted representatives on behalf of members of the Classes throughout the course of this decade-long litigation.  Joint Decl. ¶ 306.  Their efforts were critical to the progression of the case, and they support the New Settlement now before the Court. Joint Decl. ¶ 306. As demonstrated, the Class representatives and Class Counsel have adequately represented the Classes under Rule 23(e)(2)(A).[9]

### 2.      The proposed New Settlement was the result of serious, arm's-length negotiations under Rule 23(e)(2)(B).

To grant preliminary approval of a proposed settlement, "a court must be satisfied that the parties 'have engaged in sufficient investigation of the facts to enable to court to intelligently make . . . an appraisal of the settlement.'"  *Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 169 (N.D. Cal. 2019); *see also Acosta v. Frito-Lay, Inc.,* No. 15-cv-02128, 2018 WL 646691, at *22 (N.D. Cal. Jan 31, 2018) ("For the parties 'to have brokered a fair settlement, they must have been armed with sufficient information about the case to have been able to reasonably assess its strengths and value.'") (quoting *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007)).  There is also "an initial presumption of fairness" afforded to settlements "recommended by class counsel after arm's-length bargaining."  *Cuzick v. Zodiak U.S. Seat Shells, LLC*, No. 16-cv-03793-HSG, 2017 WL 4536255, at *5 (N.D. Cal. Oct. 11, 2017) (quoting *Harris v. Vector Mktg. Corp.*, No. 08-

---

[9] This Court previously found that Class Counsel and the Plaintiffs fulfilled Rule 23(a)(4) adequacy's requirement.  *In re ConAgra Foods, Inc*., 90 F. Supp. 3d at 975-76.  This finding was also previously upheld on appeal by the Ninth Circuit when the Ninth Circuit did not flag the adequacy requirement for remand.  *Briseño*, 998 F.3d 1014.

CASE NO. CV 11-05379-CJC (AGRX)
MEM. OF LAW ISO PLS' MOT FOR PRELIM. APPROVAL OF SETTLEMENT

1    cv-5198, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011)).

2         The proposed New Settlement was reached following extensive arm's-length and adversarial

3    settlement discussions. Joint Decl. ¶ 283. Throughout the pending litigation, the Parties vigorously

4    fought and were unable to reach agreements regarding attorneys' fees and other issues. Joint Decl.

5    ¶¶ 206-07. Previously, and in support of the prior settlement, the parties engaged in two separate,

6    extended rounds of mediations before two neutrals, each of which spanned over the course of many

7    months. Joint Decl. ¶¶ 200-08. On June 1, 2021, following the Ninth Circuit's decision to reverse

8    the Court's final approval decision and remand the case to this Court to further review the terms of

9    the settlement (ECF No. 718), Plaintiffs filed on September 23, 2021 a renewed motion in support

10   of final approval of the prior settlement to address the concerns outlined by the Ninth Circuit on

11   appeal. ECF No. 742; Joint Decl. ¶¶ 249-54. On December 22, 2021, this Court denied Plaintiffs'

12   renewed motion (ECF No. 779), and also denied Plaintiffs' subsequent motion for reconsideration

13   on February 22, 2022. ECF No. 795.

14        Realizing that the Court's rejection of the previous settlement would inevitably lead to an

15   onslaught of litigation tactics by both sides, and that the risks, burdens, and costs would be great for

16   both sides and this Court, Plaintiffs and Conagra initiated discussions to explore and negotiate a

17   new settlement that would satisfy both parties and the Court. Joint Decl. ¶¶ 282-84. After six

18   additional months of hard-fought negotiations, the parties finally agreed to the terms of the New

19   Settlement, which was then documented in the New Settlement Agreement.[10] Joint. Decl. ¶ 283.

20   Based on the history of this litigation, and the stalwart efforts of the parties, as well evidenced by

21   the record in this litigation, there should be no doubt that this proposed New Settlement now before

22   this Court was negotiated at arm's length,[11] and was not the result of any collusion between the

23    

24   [10] The New Settlement does not contain *any* of the signals of a potentially collusive settlement agreement, as cautioned by the Ninth Circuit in *Briseño*, 998 F.3d 1014. Specifically, (i) Class

25   Counsel are *not seeking a disproportionate fee award* as they are prepared to seek no fee for their 11+ years of work; (ii) there is *no clear sailing agreement*, as the New Settlement provides that

26   Conagra may object or oppose Class Counsel's application for fees and expenses (New Settlement Agreement at § 9.1); and (iii) there is *no kicker* clause as any unused settlement funds will *not* revert

27   back to Conagra. *Id.* § 3.1.

28   [11] It is also worth noting that the Court recognized, in its order denying Plaintiffs' renewed motion for final approval, that the prior settlement was negotiated at arm's length by the parties and further

- 14 -

parties.

### 3.      The proposed New Settlement has no obvious deficiencies.

There are no clear omissions or deficiencies in the proposed settlement.  To the contrary, the settlement fund created by the proposed New Settlement provides members of the Classes with a cash recovery from *a $3,000,000 non-reversionary common fund*; provides that while Class Counsel will seek reimbursement of expenses and litigation costs, they will seek no fee for their work spanning well over a decade; and the release granted to Conagra is narrowly tailored to the allegations at issue in the litigation.  *See, e.g., Torres v. Pick-A-Part Auto Wrecking*, No. 16-cv-01915, 2018 WL 306287, at *9-10 (E.D. Cal. Jan. 5, 2018) (finding no obvious deficiencies in proposed agreement providing for non-reversionary cash fund to be divided among class members who submit valid claims and release of liability narrowly tailored to the claims).  The proposed New Settlement contemplates release of claims for all class members.  New Settlement Agreement §§ 8.1-8.5.

The proposed New Settlement *does not allow for a reversion of any settlement funds to Conagra.  See id.* § 3.1.  If the total value of all Valid Claims Forms and amounts identified for direct distribution exceeds or falls short of the funds available for distribution to Class Members (after deducting the portion of Settlement Funds designated for New York and Oregon Class Members), the amounts of the cash payments will be reduced or increased *pro rata*, as necessary, to use all of the remaining funds available for distribution to Class Members.[12]

Furthermore, given this Court's (and the Ninth Circuit's articulated concerns about the originally sought award for attorneys' fees by Plaintiffs' counsel), Class Counsel will be seeking no attorneys' fees for their work exceeding eleven years in order to achieve resolution for the classes

---

emphasized that this factor was not in dispute.   *See* ECF No. 779 at 11, n.1 ("Indeed, the Court concludes . . . that the proposal was negotiated at arm's length").

[12] As any remaining funds will be distributed to Class Members on a pro rata basis rather than winding up back with the defendant, there is no reversion clause which may constitute a "warning sign" as discussed by the Ninth Circuit.  *Briseño*, 998 F.3d at 1027.

- 15 -

under this proposed New Settlement with a $3,000,000 non-reversionary common fund.[13]

**4.      The proposed New Settlement treats all Class Members fairly and equitably under Rule 23(e)(2)(D).**

When considering whether the proposed New Settlement provides preferential treatment to any Class Member, the Ninth Circuit requires the courts to be "'particularly vigilant' for signs that counsel have allowed the 'self interests' of 'certain class members to infect negotiations.'" *Cuzick*, 2017 WL 4536255, at *5 (quoting *Bluetooth*, 654 F.3d at 947). As a result, courts in this district routinely deem preliminary approval inappropriate "where the proposed agreement 'improperly grants preferential treatment to class representatives.'" *Id.* (quoting *Tableware*, 484 F. Supp. 2d at 1079).

The proposed New Settlement does not grant preferential treatment to any class members. All of the class members may claim monetary benefits on a per-unit basis. The monetary benefits available to the Classes are subject to proportional *pro rata* adjustments to exhaust the Settlement Fund as necessary, and to be calculated prior to distribution of any funds to the Classes (*i.e.*, they will be made in a single distribution). New Settlement Agreement § 4.1.4. The additional compensation available to Class Members from New York and Oregon derives from the statutory damage provisions available only in their respective state consumer protection statutes that Plaintiffs contend they may recover, in an amount agreed after extensive arm's length negotiations. *Id.* § 4.2; Joint Decl. ¶ 283.[14]

Class Counsel will also request service awards of (a) up to $3,000 for each of the six Class Representatives who were deposed (Robert Briseño, Michele Andrade, Jill Crouch, Pauline Michael, Necla Musat, and Maureen Towey) and (b) up to $1,000 for each of the seven Class Representatives who were not deposed (Julie Palmer, Cheri Shafstall, Dee Hooper-Kercheval,

---

[13] Once again, as Class Counsel will be seeking no attorneys' fees, this proposed New Settlement does not run afoul of the two *Bluetooth* factors regarding possible disproportionate fee awards and clear sailing agreements. *See Briseño*, 998 F.3d at 1027.

[14] This Court has also noted, based on the *same* monetary benefits available to the Class in the prior settlement agreement, that this factor is not in dispute. *See* ECF No. 779 at 11 n.1 ("the Court concludes . . . that the proposal treats class members equitably relative to each other.").

- 16 -

KellyMcFadden, Erika Heins, Rona Johnston, and Anita Willman), for a total aggregate service award amount of $25,000, to compensate them for their commitment and time on behalf of the Classes in this litigation. *See* New Settlement Agreement § 9.5; Joint Decl. ¶ 305. These plaintiffs have been supportive and involved in this litigation for more than ten years, and have participated in reviewing pleadings, responding to discovery requests, preparing for and testifying at depositions, communicating with counsel, and approving the terms of the New Settlement Agreement. Joint Decl. ¶ 306. Any payments awarded by the Court to the Class Representatives will be paid by the Settlement Administrator from the Settlement Fund directly to the Class Representatives. *See* New Settlement Agreement § 9.6. This Court previously found that the requested amount of the service awards "are within the range of incentive awards typically approved by district courts" and that "the request for incentive awards is reasonable."[15] *See* ECF No. 654 at 7. *See also In re Apple Inc. Device Performance Litig.*, No. 21-15758, 2022 WL 4492078, at *11 (9th Cir. Sept. 28, 2022) (noting that the Ninth Circuit has "repeatedly held" that reasonable service awards are permitted).

## 5. The $3 million non-reversionary common fund secures an excellent result for the Classes under Rule 23(e)(2)(c) and is well within the range of possible approval.

Plaintiffs assert there is abundant evidence that the "100% Natural" claim, which appeared on every bottle of Wesson Oil sold during the applicable class periods, was material to consumers, that consumers interpreted the claim to mean that the products did not contain GMOs, and that every class member paid a premium price for Wesson Oils due to the presence of the "100% Natural" claim on the label. Plaintiffs believe that there is sufficient evidence for their claims; however, the risks of continued litigation supports Plaintiffs' request for preliminary approval of the proposed New Settlement.

To determine whether a Settlement Agreement is within the range of possible approval, courts focus on substantive fairness and adequacy such as "'plaintiff's expected recovery balanced against the value of the settlement offer.'" *Acosta*, 2018 WL 646691, at *9 (quoting *Harris*, 2011

---

[15] This finding by this Court was not flagged by the Ninth Circuit for remand. *See Briseño*, 998 F.3d 1014.

WL 1627973, at *9); *Fritsch*, 2021 WL 6881863, at *7 (citing *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. Nov. 17, 2009). Courts have found that "'[i]t is well-settled law that a proposed settlement may be acceptable even though it amounts only to a fraction of the potential recovery that might be available to class members at trial.'" *Uschold*, 333 F.R.D. at 171 (quoting *Nat'l Rural Telecommc'ns Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004)).

Here, the Class's recovery compares favorably to their potential recovery at trial. This proposed settlement includes monetary relief for class members that is approximately *36% higher* than they could have obtained at trial. ECF No. 652 ¶¶ 18-19. Specifically, the New Settlement provides that Class Members can obtain compensation of $0.15 for each unit of Wesson Oils they purchased during the relevant Class Period from a non-reversionary common fund. While $0.15 per unit is a modest amount when considered in isolation, it far exceeds the best-case result at trial— *i.e.*, maximum damages of approximately $0.102 (10.2 cents) per unit. Decl. of Colin B. Weir, ECF No. 652-4 ¶ 35. This figure takes into account Judge Morrow's class certification ruling, where she certified 11 classes and found that the appropriate measure of damages in the case was not based on the price premium paid by Class Members due to the presence of the "100% Natural" claim, as Plaintiffs had originally sought, but that damages related only to the portion of that premium attributable to consumers' belief that "100% Natural" meant that the products were GMO free. ECF No. 545. Judge Morrow's decision on damages reduced the maximum per-unit compensation Class Members could seek at trial by 73%, to approximately $0.102 per unit. Thus, the $0.15 per-unit compensation available to Class Members in the Settlement is a far better result than the maximum they could have obtained at trial.

In addition to the per-unit compensation available to all Class Members, the Settlement includes $575,000 to be allocated solely among New York and Oregon Class Members who submit valid claim forms, in proportion to the number of units they purchased at retail during the relevant time period. New Settlement Agreement § 4.2.1; Joint Decl. at Ex. 1. This provision is intended to compensate New York and Oregon Class Members for the statutory damages provided by the consumer protections laws of those states and sought by Plaintiffs. Joint Decl. ¶ 16. Under N.Y.

- 18 -

Gen. Bus. Law § 349(h), individuals may recover actual damages or statutory damages of $50 per purchase for "unlawful actions or practices in the conduct of business, trade, or commerce." Under Or. Rev. Stat. § 646.638(8), plaintiffs who sustained a loss as a result of a "reckless or knowing practice" declared unlawful by Or. Rev. Stat. § 646.608 "may recover actual damages, or statutory damages of $200, whichever is greater, along with punitive damages and equitable relief." Plaintiffs contend, and Conagra contests, that the "reckless or knowing" standard would be met in this case.

Furthermore, the Court has since cast doubt on the likelihood of success on Plaintiffs' claims in light of the recent changing legal landscape, which appears to favor Conagra. *See* ECF No. 743-1 (July 19, 2021 Hrg. Tr. at 14:18-22). While Plaintiffs believe their case is a strong one, the complexity and risk of further litigation are substantial—and, indeed, in this case, obvious given the protracted history of this litigation. Consequently, it is unclear whether there would be any recovery at all for the Classes in the eleven certified state classes. Moreover, additional expense and complexity would likely result with continued litigation, because, *inter alia*, Plaintiffs would (i) seek information regarding Conagra's label and marketing change in 2017, (ii) request Conagra to update past document productions, and (iii) demand the parties resolve issues surrounding Conagra's productions of documents just preceding the close of fact discovery in 2015. Joint Decl. ¶ 209. These risks are compounded by the likely pursuit of additional discovery, inevitable motion practice, and a possible adverse outcome at trial. The relief obtained through this New Settlement, balanced against the length, expense, and uncertainty of further litigation, weighs in favor of approval. *See Briseño v. Henderson*, 998 F.3d at 1031 (noting the "strong judicial policy favor[ing] settlements, particularly where complex class action litigation is concerned") (quotations omitted).

**B.     The relief provided for the Classes is adequate, taking into account the effectiveness of any proposed method of distributing relief to the Classes, including the method of processing class-member claims.**

As discussed herein, the proposed New Settlement Agreement provides that Class Members can obtain compensation of $0.15 for each unit of Wesson Oils they purchased during the relevant Class Period. The claims administrator is responsible for distributing settlement proceeds to class members. The distribution, however, is made based upon a claims-made process, so payments will

- 19 -

be made directly to claimants based upon information provided in the Claim Form. New Settlement Agreement at 4.1.

If the total value of all Valid Claims Forms and amounts identified for direct distribution exceeds or falls short of the funds available for distribution to Class Members (after deducting the portion of Settlement Funds designated for New York and Oregon Class Members), then the amounts of the cash payments will be reduced or increased *pro rata*, as necessary, to use all of the remaining funds available for distribution to Class Members. Any such *pro rata* adjustment will be calculated prior to distribution of funds to the Classes (*i.e.*, will be made in a single distribution). New Settlement Agreement at 4.1.4.

**C.      The proposed form and manner of notice will fairly and efficiently inform Class Members of the terms of the settlement and their options.**

Prior to final approval, Rule 23 requires the "court [to] direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).  For any classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  The content of the notice must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).   "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Toolajian*, 2020 WL 8674094, at *11 (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

Rule 23(c)(2) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2). Class notice may take the form of "United States mail, electronic means, or other

- 20 -

appropriate means." Fed. R. Civ. P. 23(c)(2)(B). The Advisory Committee Notes to the 2018 Amendments to Rule 23 "recognize contemporary methods of giving notice to class members" and that "technological change" has "introduced other means of communication that may sometimes provide a reliable additional or alternative means of giving notice" other than first class mail. Advisory Committee Notes to 2018 Amendments to Rule 23(c)(2). The proposed Notice here far exceeds the minimum due process requirements under Rule 23(c)(2)(B) and the Constitution. Specifically, Plaintiffs and JND Legal Administration ("JND") designed the proposed Notice that uses digital and Internet campaigns with consumer print publication and social media using best practices to enhance reach to the Settlement Class Members.  Declaration of Gina M. Intrepido-Bowden Regarding Proposed Settlement Notice Program ("Intrepido-Bowden Decl.") ¶¶ 12-13. The Notice is similar to that which recently received final approval absent objection in the Northern District of Illinois.  *See* Ex. 5 to Joint Decl..

In totality, the proposed Notice Plan provides all the information necessary for Class Members to make informed decisions with respect to filing a claim, opting out, or objecting to the proposed Settlement.  Intrepido-Bowden Decl. ¶¶ 28-29.  The Notice Plan has been developed by a provider with significant experience in designing notice plans in large and national class actions similar to this one.  Intrepido-Bowden Decl. ¶¶ 3-8.  Accordingly, the content and method of dissemination of the proposed Notice fully comports with the requirements of due process and applicable case law.

Furthermore, Class Members filed Valid Claim Forms under the previously proposed settlement in this case.  Joint Decl. ¶ 17.  Unless Class Members who previously submitted Valid Claim Forms opt out of this New Settlement, or submit a new Claim Form, the Settlement Administrator will treat all previously submitted Valid Claim Forms as valid claims.[16]  New Settlement Agreement § 4.4.

---

[16] For the avoidance of doubt, the rationale behind this step is that any Class Member who does not opt out is bound by this New Settlement Agreement (if the Court approves it), and their previous valid claim form establishes them as a Class Member and provides all of the information required for a settlement payment.

**D.     The Court should appoint JND Legal Administration to serve as the settlement administrator.**

In connection with implementing the Notice Plan and administering the settlement benefits, Plaintiffs move the Court to appoint JND to serve as the Settlement Administrator for the New Settlement.  JND was previously selected by Magistrate Judge McCormick based on competing submissions by the Parties in conjunction with the Settlement mediation process and JND has vast experience in many complex class action lawsuits.  Intrepido-Bowden Decl. ¶¶ 3-7.  JND also already has extensive familiarity with this pending litigation.  Intrepido-Bowden Decl. ¶ 8.  This Court's appointment of JND will facilitate cost management and capitalization of information discerned by JND from the prior settlement.  *Id.*

**E.     The Presence of a Government Participant**

Plaintiffs here pursued their claims independently.  Should preliminary approval be granted, the United States Attorney General and Attorneys General of each of the states will be notified pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, and given an opportunity to raise any objections or concerns they may have.[17]

**F.     The proposed final settlement schedule is appropriate, comports with due process, and satisfies the requirements of the Class Action Fairness Act.**

As set forth in the Proposed Order, Plaintiffs propose the schedule below for completion of the final settlement approval process.

| ACTION | DEADLINE FOR COMPLIANCE |
|---|---|
| CAFA Notice Deadline | Within 10 days from filing for Preliminary Approval |
| Opposition to Preliminary Approval | Within 14 days from filing for Preliminary Approval |
| Reply to Preliminary Approval | Within 7 days after Deadline for Opposition to Preliminary Approval |
| Preliminary Approval Hearing | November 21, 2022 at 1:30 p.m. |

---

[17] In connection with the prior settlement, thirteen state attorneys general, for the State of Arizona, Alabama, Alaska, Arkansas, Idaho, Indiana, Kentucky, Louisiana, Missouri, Ohio, Oklahoma, South Carolina, and Texas, submitted an amicus brief arguing that the injunctive remedy was deficient.  No. 19-56297, 9th Cir., ECF No. 18.

- 22 -

| Case Website and IVR Update | Within 10 days after Court's entry of Preliminary Approval Order |
|---|---|
| Class Notice Commence | Within 14 days after Court's entry of Preliminary Approval Order |
| Motion for Final Approval and Expense Deadline | Within 95 days after Class Notice Commence |
| Opt Out/Objection Deadline | Within 114 days from Class Notice Commence |
| Deadline for Submitting Claim Forms | Within 175 days from Class Notice Commence |
| Supplemental Filing in Support of Final Approval Deadline | Within 205 days from Class Notice Commence |
| Final Approval Hearing | Set Date after Claims Deadline |

## IV.  CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that the Court grant this Motion and enter the Proposed Order.

Respectfully submitted,

Dated: September 30, 2022

*/s/ David E. Azar*
David E. Azar (SBN 218319)
dazar@milberg.com
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
280 S. Beverly Drive, Suite PH
Beverly Hills, California  90212
Telephone:  (213) 617-1200

Ariana J. Tadler (*pro hac vice*)
atadler@tadlerlaw.com
A.J. de Bartolomeo
(CA Bar No.136502)
ajd@tadlerlaw.com
**TADLER LAW LLP**
22 Bayview Avenue, Suite 200
Manhasset, New York  11030
Telephone:  (212) 946-9453

Adam J. Levitt (*pro hac vice*)
alevitt@dicellolevitt.com
Amy E. Keller (*pro hac vice*)
akeller@dicellolevitt.com
**DICELLO LEVITT LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois  60602
Telephone:  (312) 214-7900

***Class Counsel***

- 23 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

The undersigned certifies that, on September 30, 2022, he caused this document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of filing to registered counsel of record for each party.

Dated:  September 30, 2022

*/s/ David E. Azar*
David E. Azar (SBN 218319)

CASE NO. CV 11-05379-CJC (AGRX)
MEM. OF LAW ISO PLS' MOT FOR PRELIM. APPROVAL OF SETTLEMENT