1  **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
   DAVID E. AZAR (SBN 218319)
2  280 South Beverly Drive, Suite PH
   Beverly Hills, California  90212
3  Telephone: (213) 617-1200
4  dazar@milberg.com

5  **TADLER LAW LLP**
   ARIANA J. TADLER (*pro hac vice*)
6  22 Bayview Avenue, Suite 200
   Manhasset, New York  11030
7  Telephone: (212) 946-9300
8  atadler@tadlerlaw.com

9  **DiCELLO LEVITT LLC**
   ADAM J. LEVITT (*pro hac vice*)
10 Ten North Dearborn Street, Sixth Floor
   Chicago, Illinois  60602
11 Telephone: (312) 214-7900
12 alevitt@dicellolevitt.com

13 *Appointed Class Counsel*

14

15                    **CENTRAL DISTRICT OF CALIFORNIA**

16                         **WESTERN DIVISION**

17                                          )  Case No. CV 11-05379-CJC (AGRx)
                                            )
18                                          )  MDL No. 2291
                                            )
19   IN RE CONAGRA FOODS, INC.              )  **CLASS ACTION**
                                            )
20                                          )  **JOINT DECLARATION OF ARIANA J.**
                                            )  **TADLER, ADAM LEVITT, AND DAVID**
21                                          )  **AZAR IN SUPPORT OF PLAINTIFFS'**
                                            )  **MOTION FOR PRELIMINARY APPROVAL**
22                                          )  **OF NEW SETTLEMENT, APPROVAL OF**
                                            )  **FORM AND MANNER OF NOTICE,**
23                                          )  **APPROVAL TO NOTICE THE CLASSES,**
                                            )  **AND SETTING FINAL SETTLEMENT**
24                                          )  **SCHEDULE AND DATE FOR FINAL**
   _____)  **APPROVAL HEARING**
25

26

27

28
                                        - 1 -

We, Interim Co-Lead Counsel ARIANA J. TADLER, ADAM J. LEVITT and DAVID AZAR, hereby jointly declare and state as follows pursuant to 28 U.S.C. §1746:

1. Ariana J. Tadler is an attorney duly-licensed to practice law in the states of New York and New Jersey and is admitted *pro hac vice* in this Court.  She is the Founding Partner of Tadler Law LLP and counsel of record for the Plaintiffs and the certified class in the above-captioned matter.  Ms. Tadler was formerly a partner at the law firms of Milberg Tadler Phillips Grossman LLP ("MTPG") and Milberg LLP ("Milberg").

2. Adam J. Levitt is an attorney duly-licensed to practice law in the state of Illinois and is admitted pro hac vice in this Court.  He is a partner of the law firm of DiCello Levitt LLC ("DiCello Levitt"), formerly known as DiCello Levitt Gutzler LLC, and counsel of record for the Plaintiff and the certified class in the above-captioned matter.  Mr. Levitt was formerly a partner at the law firms of Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") and at Grant & Eisenhofer P.A.

3. David Azar is an attorney duly-licensed to practice law in the state of California and is a partner of Milberg Coleman Bryson Phillips Grossman PLLC.  He is a former partner of Milberg Phillips Grossman LLP, MTPG, and Milberg and counsel of record for the Plaintiff and the certified class in the above-captioned matter.

4. Our firms are proposed Class Counsel ("Class Counsel") under a proposed new settlement with Conagra (the "New Settlement"), which is being submitted to the Court for (i) preliminary approval; (ii) approval of the proposed form and manner of notice to be disseminated to the classes, (iii) approval to disseminate notice to the Classes, and (iv) setting a schedule for final approval of the New Settlement, approval of payment of service awards to the plaintiffs, and reimbursement of litigation costs to Interim Co-Lead Counsel.

5. Early in this litigation, we were appointed "Interim Co-Lead Counsel" and led this litigation with the assistance of a small number of additional plaintiffs' counsel from other firms.  We, with the support of attorneys and staff at our respective firms, have been

CASE NO. CV 11-05379-CJC (AGRX)
JOINT DEC ISO PLS' MOT FOR PRELIM.
APPROVAL OF SETTLEMENT

1    actively involved in the prosecution of this litigation for eleven (11) years. We and
2    certain attorneys at our respective firms actively participated in negotiating the previous
3    settlement that was presented and ultimately rejected by the Court (the "Original
4    Settlement") (ECF No. 775) and the New Settlement of this litigation now before this
5    Court. We are familiar with the proceedings in this litigation and have personal
6    knowledge of the matters set forth herein based on our active participation and
7    supervision in all material aspects of the litigation and could testify competently as to
8    them if called upon to do so.

9    6.    We believe that the New Settlement, as required by Rule 23 of the Federal Rules of Civil
10   Procedure, is fair, reasonable, and adequate. The New Settlement includes *a non-*
11   *reversionary common fund*, *i.e.*, no leftover fund will revert back to. Nor is there a clear
12   sailing agreement. Class Counsel intend to seek reimbursement of litigation costs not to
13   exceed $978,671.10 and *will not be seeking any attorneys' fees for their over eleven years*
14   *of work*. As such, there is no proportionality calculation between the settlement recovery
15   to the classes and the amount of attorneys' fees. Class Counsel made this decision to
16   maximize recovery to claimants.

17   7.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, we jointly submit this
18   declaration in support of Plaintiffs' Motion for Preliminary Approval of New Settlement,
19   Approval of Form and Manner of Notice to the Classes and Setting Final Settlement
20   Schedule and Date for Final Hearing ("Joint Declaration").

21   **Exhibits to the Joint Declaration.**

22   8.    Attached as Exhibit 1 to this Joint Declaration is the Settlement Agreement entered into
23   in this Action, along with each of its exhibits ("New Settlement Agreement" or "New
24   Settlement").

25   9.    Attached as Exhibit 2 is a true and correct copy of Tadler Law LLP's firm resume, which
26   describes the firm's experience in class actions and other complex litigation, and the
27   biographies of attorneys in the firm who were involved in this Action.

28

- 3 -

10.     Attached as Exhibit 3 is a true and correct copy of DiCello Levitt's firm resume, which describes the firm's experience in class actions and other complex litigation, and the biographies of attorneys in the firm who were involved in this Action.

11.     Attached as Exhibit 4 is a true and correct copy of MCBPG's firm resume, which describes the firm's experience in class actions and other complex litigation.

12.     Attached as Exhibit 5 is a true and correct copy of Judge Robert M. Dow Jr.'s Order Granting Plaintiffs' Motion for Final Approval of Class Action Settlement and Judgment and Awarding Attorneys' Fees, Costs, and Service Awards, *In re Fairlife Milk Prods. Mktg. and Sales Pracs. Litig.*, No. 19-cv-03924, ECF No. 180 (N.D. Ill. Sept. 28, 2022).

**The New Settlement.**

13.     After the Ninth Circuit's remand of the Original Settlement (No. 19-56297, 9th Cir., ECF No. 67), the Parties filed a renewed request to approve the proposed settlement accompanied by a more detailed evidentiary record (ECF Nos. 742-43), which the Court subsequently rejected post remand.  (ECF Nos. 779, 795.)  We resumed negotiations with Defendant's counsel to reach a new settlement in this eleven-year-old litigation.  Counsel for the Parties did so at arms' length and independently, without the assistance of a mediator.

14.     Given the Ninth Circuit's remand opinion and this Court's opinion ultimately rejecting the Original Settlement, the Parties understood that for any new settlement to succeed and achieve this Court's approval as required under Rule 23 of the Federal Rules of Civil Procedure, it would necessarily have to be materially different from the Original Settlement to avoid certain red flags or "indicators that class counsel's and Con[a]gra's self-interest unduly influenced the outcome of the negotiations."  (ECF No. 795 (quoting ECF No. 799.))  More specifically, Class Counsel recognized that, insofar as those things that it could control, for a new settlement in this case to pass muster, there could not be (i) a significant disproportion between the amount the class recovered and the amount of fees class counsel recovered (notwithstanding the many successes achieved in this

litigation and the corresponding accrued lodestar for that time and effort); (ii) a clear sailing provision; or (iii) a reverter clause. (*See* ECF No. 795 (citing ECF No. 779.)) *None* of these "indicators" exist for the New Settlement.

15. The negotiations between the Parties ensued for approximately six (6) months, at which point an agreement in principle was reached. Thereafter, the Parties worked to document the New Settlement Agreement. *See* Ex. 1, New Settlement Agreement. Plaintiffs and JND Legal Administration ("JND") simultaneously collaborated to design the newly Proposed Notice Plan, attached to the Settlement Agreement as Exhibit A-4.

16. The New Settlement provides for the establishment of a qualified settlement fund to be established by the Settlement Administrator and funded by Conagra in the amount of $3,000,000, in the form of *a non-reversionary common fund*. Ex. 1, New Settlement Agreement §§ 2.32, 3.1.

17. A portion of the Settlement Fund, specifically $575,000, shall be allocated only to members of the New York and Oregon Classes who submit Valid Claim Forms or are identified for direct distribution, in proportion to the number of units purchased. Ex. 1, New Settlement Agreement § 4.2.1. This provision is intended to compensate New York and Oregon Class Members for the statutory damages provided by the consumer protection laws of those states and sought by Plaintiffs.

18. Class Members who timely submit a Valid Claim Form, or Class Members who timely submitted a Valid Claim Form under the prior settlement and do not opt-out of the new Settlement, may receive settlement compensation of Fifteen Cents ($0.15) per unit of Wesson Oil Products purchased during the applicable Class Period. Ex. 1, New Settlement Agreement §§ 4.1.2, 4.4.

19. Recovery is limited to one claim per Household, which is defined as all persons residing at the same physical address. Ex. 1, New Settlement Agreement § 4.1.3.

20. The New Settlement also provides for a *pro rata* adjustment of the Settlement Compensation in the event that the value of the Valid Claim Forms exceeds or falls short

CASE NO. CV 11-05379-CJC (AGRX)
JOINT DEC ISO PLS' MOT FOR PRELIM.
APPROVAL OF SETTLEMENT

of the funds available for distribution to Class Members (after deducting the portion of Settlement Funds designated for New York and Oregon Class Members). Ex. 1, New Settlement Agreement § 4.1.4. In addition, the amount of additional recovery for New York and Oregon class members will be adjusted *pro rata* according to the number of Valid Claim Forms for these classes. Ex. 1, New Settlement Agreement § 4.2.2.

21. Under the New Settlement, the Settlement Fund will be used to (i) meet the monetary obligations to Class Members under the Settlement, and (ii) pay out all Settlement Payments, Expense Awards, Administrative Costs, service awards, and any other costs or expenses related to the Settlement. Ex. 1, New Settlement Agreement § 3.1. Under the New Settlement Agreement, Conagra is not obligated to pay any further costs or amounts associated with the New Settlement. Ex. 1, New Settlement Agreement § 3.1.

22. The compensation of $0.15 per unit *is significantly more* than the best-case result at trial, which would have yielded maximum damages of approximately $0.102 (10.2 cents) per unit. This figure takes into account Judge Morrow's ruling that the appropriate measure of damages in the case was not the price premium paid by Class Members due to the presence of the "100% Natural" claim, as plaintiffs have claimed, but only the portion of that premium attributable to consumers' belief that "100% Natural" meant that the products were GMO-free.

23. To satisfy this requirement, Mr. Weir's firm supervised the conduct of a conjoint survey, the results of which indicated that approximately 27% of the value of the "natural" claim on Wesson Oils was due to its "non-GMO" meaning. Judge Morrow's ruling on damages thus reduced the maximum per-unit compensation Class Members could seek at trial by 73%, to approximately $0.102 per unit. Thus, the $0.15 per-unit compensation available to Class Members in the Settlement is approximately 36% higher than the maximum they could have obtained at trial (subject to *pro rata* adjustments depending on the number of claims submitted). In the event of a low claims rate, Class Members will receive more; and in the event of a high claims rate, Class members may receive less.

- 6 -

24.     In consideration of the benefits under the New Settlement Agreement, all Class Members (regardless of whether a Class Member submits a Claim Form) agree that, upon the Final Effective Date and by operation of the Final Approval Order, the Class Members shall release and forever discharge the Released Parties (defined in New Settlement Agreement § 2.30) from any liability for all claims that have been or could have been brought in connection with Conagra's distribution, labeling, packaging, marketing, advertising, and/or sale of the Wesson Oil Products as "Natural" during the applicable Class Period, subject only to the express exceptions listed in the Reservation of Claims and Rights Section in the New Settlement Agreement. Ex. 1, New Settlement Agreement § 8.1. Specifically excluded from the release is any claim for bodily injury allegedly suffered in connection with the Wesson Oil Products. *Id.* Conagra agrees to provide reciprocal and mutual releases to the Class Representatives and Class Members from any liability that was or could have been asserted arising out of or relating in any way to the institution, prosecution, or settlement of the Action. *Id.*

25.     The Plaintiffs and Class Counsel respectfully submit that the Settlement represents a favorable result for the Classes in light of the significant benefit achieved for the Classes, with a ***$3 million non-reversionary common fund***, and the risks of a lesser, or no, recovery after continued prosecution of the Action, which is undoubtedly an overarching risk in this litigation given its procedural history, including, in particular, the Ninth Circuit's assessment and remand of the Original Settlement and the ultimate rejection of the Original Settlement by this Court.

**Request for Reimbursement of Litigation Costs for Plaintiffs' Counsel,**

***But No Attorneys' Fees.***

26.     Class Counsel intend to seek reimbursement of reasonable litigation costs in an amount not to exceed $978,671.10.

27.     Class Counsel have determined that they will seek no attorneys' fees for their eleven years of work in this litigation during which they (i) completed fact and expert discovery,

- 7 -

(ii) achieved class certification of 11 state classes, (iii) succeeded in defeating defendant's appeal to the Ninth Circuit of that certification order and defendant's petition for *certiorari* to the United States Supreme Court, (iv) achieved precedential law as to the inapplicability of "ascertainability" for class certification; and (v) negotiated the proposed New Settlement.

**2011 – Present:     Summary of Procedural History.**

28.    The history of this litigation was recounted in the Joint Declaration of Class Counsel in Support of the *Renewed Motion* for Final Approval of the [Original] Settlement and Award of Attorneys' Fees, Expenses and Representative Plaintiffs' Service Awards. ECF No. 743.  For the Court's convenience, we repeat much of that here and supplement with additional information to account for the efforts expended by Class Counsel since September 2021.

29.    This case has had a long history with over a decade of contentious litigation from the very start.  Defendant Conagra and its counsel fought plaintiffs at every turn; and, on the eve of class certification motion practice, after endless rounds of discovery disputes and extensive motion practice, Conagra strategically terminated its counsel midstream and retained new counsel.  After extensive briefing and expert discovery throughout two full rounds of class certification briefing and argument, Class Counsel achieved class certification of 11 state-wide classes, which were successfully upheld on appeal.  This case has been before the Court of Appeals for the Ninth Circuit, not once but twice (first on Judge Morrow's order granting plaintiffs' motion for class certification – after a second round of briefing and an amended motion – and second on Objector Ted Frank's motion appealing this Court's order granting final approval of the settlement, awarding Class Counsel's requested attorneys' fees, expenses, and the representative plaintiffs' service awards), and then on petition for *certiorari* by Conagra to the United States Supreme Court of the Ninth Circuit's affirmance of class certification (Conagra's petition was denied).  Throughout this litigation, Class Counsel worked tirelessly to achieve

CASE NO. CV 11-05379-CJC (AGRX)
JOINT DEC ISO PLS' MOT FOR PRELIM.
APPROVAL OF SETTLEMENT

success for plaintiffs and the Classes, and their resolve to do so remained stalwart notwithstanding the ultimate denial of the Original Settlement first presented to the Court three years ago.

30.     We set out below in detail the work Class Counsel and our colleagues performed on behalf of the class in the case for the following litigation activities:

- Early case investigation into theories of the case
- Original complaints filed
- Coordination and consolidation in MDL
- First motion to dismiss
- First motion to stay on primary jurisdiction grounds (Food and Drug Administration) (filed in the alternative)
- Consolidated Amended Complaint
- Second motion to dismiss
- Motion for protective order as to obligations for preservation of documents
- Second Consolidated Amended Complaint
- Negotiations and motion for protective order to govern confidentiality designations
- Second motion to stay case on basis of primary jurisdiction (referral to FDA)
- Written discovery and document productions
- Third-party discovery
- Fact depositions
- Expert reports and discovery
- First class certification motion
- First motion to strike expert testimony
- More than 7 discovery motions and corresponding extensive meet and confer efforts, including pursuant to the Local Rule 37-1 process
- Amended class certification motion

- 9 -

- Second motion to strike expert testimony
- Third motion to stay case on the basis of appeal of related cases and/or potential appeals
- Fourth motion to stay case on the basis of Rule 23(f) petition and appeal
- Appeal from class certification order to Ninth Circuit Court
- *Petition for certiorari* to United States Supreme Court
- Fourth motion to stay by reassignment by JPML to Illinois before mediation
- First mediation (former Chief Magistrate Judge Hon. Edward A. Infante (Ret.), then with JAMS)
- Second mediation (Honorable Magistrate Judge Douglas F. McCormick)
- Preliminary approval and final approval
- Objection and motion for sanctions
- Appeal from settlement approval to Ninth Circuit Court
- Remand to the District Court
- Renewed Motion for approval of Original Settlement addressing factors identified by Ninth Circuit
- Discovery by Objector, with associated motion practice
- Motion for reconsideration of Court's ultimate rejection of Original Settlement
- Arms'-length negotiations with Defendant to achieve New Settlement
- Papering of New Settlement
- Motion for Preliminary Approval of New Settlement (*the motion to which this Joint Declaration corresponds*)

31. Class Counsel set forth below in detail the key legal issues, procedural history of court filings, service documents, motions, orders, and appellate proceedings in the litigation from early 2011 through the date of this filing, citing to the District Court and Court of Appeals records.  Throughout this litigation, Class Counsel worked on all cylinders, often with contemporaneous, competing procedural obligations (*e.g.*, fact and expert discovery

- 10 -

1    and class certification motion practice).  The Parties vigorously fought throughout the

2    pendency of the litigation and could agree on very little.  There can be no doubt from the

3    record in this case of the *absence of collusion*.

4    32.    Class Counsel address critical procedural aspects of the case for the Court—by

5    categorically addressing these aspects of this class action.  As such, certain details are not

6    in simple, sequential chronological order and, in fact, overlap with other procedural

7    aspects.

8    **2011:    Early Case Investigation and Legal Research into Theories of the Case; Original**

9    **Complaints Filed; First Motion to Dismiss; Coordination and Consolidation in**

10   **MDL.**

11   <u>**2011:**</u>    **Early Case Investigation / Theories of the Case.**

12   33.    Prior to and following the initiation of litigation, Class Counsel conducted an extensive

13   investigation of the facts relating to Wesson brand cooking oils ("Wesson Oils")

14   marketed as "100% Natural" and the facts supporting the Plaintiffs' claims.  Class

15   Counsel conducted substantial legal research regarding the applicable laws of numerous

16   States concerning the viability of Plaintiffs' claims, including California, Colorado,

17   Florida, Illinois, Indiana, Massachusetts, Nebraska, New Jersey, New York, Ohio,

18   Oregon, South Dakota, Texas, Washington, and Wyoming.

19   <u>**2011:**</u>    **Original Complaints Filed.**

20   34.    Starting on June 28, 2011, Robert Briseño and residents of several other states filed

21   complaints against Conagra, alleging that from at least June 27, 2007 until July 1, 2017,

22   Conagra deceptively and misleadingly marketing its Wesson brand cooking oils, made

23   from genetically-modified organisms ("GMO"), as "100% Natural."[1]  (ECF No. 8.)

24

25

---

26   [1]   During the course of this litigation, Conagra removed the "100% Natural" claim from all
27   Wesson labels, and stopped advertising the products as "natural," as of July 1, 2017.  (ECF No.
     48.)

28

- 11 -

35.   Each of the cases alleged in part that Wesson Oils commanded a premium price due to the presence of the "100% Natural" claim on the label and, consequently, every Class Member was induced to pay more for Wesson Oils due to that false and deceptive claim.

**2011:      Coordination and Consolidation in MDL, First Motion to Stay, and First Motion to Dismiss.**

36.   After five cases pending in the Central District of California were consolidated, on August 4, 2011, Conagra moved the Judicial Panel for Multidistrict Litigation ("JPML") to transfer six additional cases then pending in four different districts to the Central District.  (ECF Nos. 8-11.)

37.   On August 24, 2011, Conagra moved to dismiss the initial complaint in the Briseño case. Alternatively, Conagra moved for its first motion to stay under the doctrine of primary jurisdiction, so that the Food and Drug Administration ("FDA") might exercise its jurisdiction to resolve the issues.  (ECF Nos. 24-25.)

38.   On October 10, 2011, Plaintiffs filed their opposition to the motion to dismiss the Briseño class action complaint.  (ECF No. 34.)

39.   On October 13, 2011, the JPML issued a Transfer Order centralizing the pending actions before Judge Morrow in the Central District of California.

40.   On October 24, 2011, Conagra filed its reply in support of motion to dismiss.  (ECF No. 39.)

41.   On October 27, 2011, plaintiffs' counsel filed competing motions for appointment of interim class counsel, including Briseño's counsel.  (ECF Nos. 43-45.)

42.   On November 1, 2011, the Court appointed Milberg and Wolf Haldenstein as interim lead counsel.  (ECF No. 48.)

43.   On November 17, 2011, Conagra served its Rule 26(a)(1) disclosures.

44.   On November 23, 2011, Judge Morrow granted Conagra's motion to dismiss with leave to replead, stating: "Plaintiffs prayer for an order requiring Con[a]gra to adopt and enforce a policy that requires appropriate disclosure of genetically modified ingredients

- 12 -

1  is preempted.  Accordingly, that prayer may not be included in any amended complaint.

2  With that exception, Briseño may file an amended complaint within twenty (20) days of

3  the date of this order."  (ECF No. 54.)

4  45.  On December 9, 2011, Judge Morrow consolidated all pending related actions and

5  ordered the filing of a Consolidated Amended Complaint.  (ECF No. 59.)

6  **2012 – 2014:**      **Consolidated Complaint Filed; Second Motion to Dismiss; Second**

7  **Consolidated Complaint Filed; Answer; Rule 26(f) Disclosures; First**

8  **Motion to Stay Filed.**

9  **2012:**      **Consolidated Amended Complaint, Second Motion to Dismiss,**

10  **Discovery Begins, and Motion for Protective Order.**

11  46.  On January 12, 2012, plaintiffs filed their Consolidated Amended Class Action

12  Complaint (ECF No. 80) based on their early and ongoing legal research and factual

13  investigation that alleged the following claims in 15 states:

14  •  California: (1) California Consumer Legal Remedies Act, CAL. CIV. CODE §§ 1750,

15  *et seq*. and California Unfair Competition Law, CAL. BUS. & PROF. CODE §§

16  17200, *et seq*. and §§ 17500, *et seq*.; and (2) CAL. COM. CODE § 2313; CAL. COM.

17  CODE § 2314.

18  •  Colorado: (1) Colorado Consumer Protection Act, COLO. REV. STAT. §§ 6-1-101,

19  *et seq*.; (2) COLO. REV. STAT. § 4-2-313; (3) COLO. REV. STAT. § 4-2-314; and

20  (4) Unjust Enrichment.

21  •  Florida: (1) Florida Deceptive and Unfair Trade Practices Act, FLA. STAT. ANN.

22  §§ 501.201, *et seq*.; and (2) Unjust Enrichment.

23  •  Illinois: (1) Illinois Consumer Fraud and Deceptive Business Practices Act, 815

24  ILCS §§ 505/1, *et seq*.; and (2) Unjust Enrichment.

25  •  Indiana: (1) IND. CODE § 26-1-2-313; (2) IND. CODE § 26-1-2-314; and (3) Unjust

26  Enrichment.

27

28

- 13 -

- **Massachusetts**: (1) Unfair and Deceptive Practices Act, Mass. Ann. Laws ch. 93A, *et seq.*
- **Nebraska**: (1) Nebraska Consumer Protection Act, NEB. REV. STAT. §§ 59-1601, *et seq.*; (2) NEB. REV. STAT. § 2-313; (3) NEB. REV. STAT. § 2-314; and (4) Unjust Enrichment.
- **New Jersey**: (1) New Jersey Consumer Fraud Act, N.J. STAT. ANN. §§ 56:8-1, *et seq.*; (2) N.J. STAT. ANN. § 12A:2-313; and (3) N.J. STAT. ANN. § 12A:2-314.
- **New York**: (1) New York Consumer Protection Act, N.Y. GEN. BUS. LAW §§ 349, *et seq.*; (2) N.Y. U.C.C. Law § 2-313; and (3) Unjust Enrichment.
- **Ohio**: (1) Ohio Consumer Sales Practices Act, OHIO REV. CODE §§ 1345.01, *et seq.*; and (2) Unjust Enrichment.
- **Oregon**: (1) Oregon Unfair Trade Practices Act, OR. REV. STAT. §§ 646.605, *et seq.*; (2) OR. REV. STAT. § 72-3130; and (3) Unjust Enrichment.
- **South Dakota**: (1) South Dakota Deceptive Trade Practices and Consumer Protection Law, S.D. COD. LAWS §§ 37 24 1, *et seq.*; (2) S.D. COD. LAWS § 57A-2-313; (3) S.D. COD. LAWS § 57A-2-314; and (4) Unjust Enrichment.
- **Texas**: (1) Texas Deceptive Trade Practices - Consumer Protection Act, TEX. BUS. & COM. CODE §§ 17.41, *et seq.*; and (2) Unjust Enrichment.
- Washington: Washington Consumer Protection Act, Wash. Rev. Code §§ 19.86.010, *et seq.*
- Wyoming: Wyoming Consumer Protection Act, Wyo. Stat. §§ 40-12-101, *et seq.*

47.     On February 24, 2012, Conagra filed its motion to dismiss the Consolidated Amended Complaint on the grounds that the Plaintiffs' claims should be dismissed under Federal Rule 9(b) for lack of specificity, or fail to plead state consumer protection, warranty, or unjust enrichment claims (ECF No. 84), along with a request for judicial notice (ECF No. 85.)

CASE NO. CV 11-05379-CJC (AGRX)
JOINT DEC ISO PLS' MOT FOR PRELIM.
APPROVAL OF SETTLEMENT

48.     On April 25, 2012, Plaintiffs filed their opposition to the motion to dismiss.  (ECF No. 95.)

49.     On May 7, 2012, Conagra filed its reply brief.  (ECF No. 96.)

50.     On May 21, 2012, the parties appeared before the Court for oral argument on Conagra's motion to dismiss and after argument, the Court took the matter under submission.  (ECF No. 99.)

51.     On July 2, 2012, Plaintiffs filed a motion for protective order as to the preservation obligations of the individual plaintiffs (Conagra had sought to impose an unreasonable preservation burden on Plaintiffs).  (ECF Nos. 104-07.)

52.     On July 24, 2012, the Court held a hearing, considered the parties' positions and granted Plaintiffs' motion for a protective order related to the obligations of document preservation demands by Conagra.  (ECF. No. 110.)

53.     On July 27, 2012, Conagra served Plaintiffs with its first request for production.

54.     On August 8, 2012, Plaintiffs served Conagra with their first request for production.

55.     On October 1, 2012, Plaintiffs served their objections and responses to Conagra's first set of requests for production.

56.     On October 10, 2012, Plaintiff received Conagra's responses to Plaintiffs' first set of requests for production.

57.     On November 15, 2012, the Court granted in part and denied in part the motion to dismiss the Consolidated Amended Complaint.  (ECF No. 138.)

58.     On December 4, 2012, the parties conducted a meet and confer regarding discovery issues.  Throughout the discovery phase of this litigation, Class Counsel engaged in extensive meet and confers related to discovery.

**End of 2012 – Early 2013:**    **Second Consolidated Amended Complaint and Answer.**

59.     On December 19, 2012, plaintiffs filed their Second Consolidated Amended Complaint again alleging claims for 15 states.  (ECF No. 143.)

- 15 -

60.     On January 16, 2013, Conagra answered the Second Consolidated Amended Complaint. (ECF No. 145.)

**2013:       Rule 26(f) Disclosures.**

61.     On November 17, 2011, Conagra served its initial Rule 26(a)(1) Disclosures.

62.     On February 11, 2013, the parties filed their Rule 26(f) discovery plan, stating that "Since early January of this year, the Parties have been actively meeting and conferring regarding their respective initial requests for production and related issues, including timeframe(s) and scope of production, technical specifications for production, and a confidentiality order.  The Parties have also discussed setting of dates for briefing Plaintiffs' class certification motion and other pre-trial and trial deadlines but have not reached an agreement." (ECF No. 149.)

63.     On March 15, 2013, Plaintiffs served their Rule 26(a)(1) Disclosures.

64.     On December 31, 2014, Conagra supplemented its Rule 26(a)(1) Disclosures.

**2013:       Motion for Protective Order.**

65.     After the Second Consolidated Class Action Complaint was filed and answered in January 2013, the parties attempted and failed (over five months) to negotiate a stipulated protective order to govern confidentiality designations (this was before the Central District developed its model protective orders).  *Notwithstanding extensive good faith efforts to resolve issues without Court intervention, protracted disputes and negotiations were common in this litigation.*

66.     On June 14, 2013, Plaintiffs filed a motion for resolution of limited open issues regarding the proposed protective order to govern confidentiality designations.  (ECF No. 159.)

67.     On June 25, 2013, Magistrate Judge Alicia Rosenberg held a hearing and the Court granted in part and denied in part Plaintiffs' motion and entered a protective order to govern confidentiality designations.  (ECF No. 163.)

**2013:       Second Attempt to Stay Case Pending Referral to FDA.**

- 16 -

68.     On August 6, 2013, Conagra made its second attempt to stay the case when it filed an *ex parte* application to stay the case pending the outcome of a referral to the Federal FDA considering claims concerning the use of the term "natural" on foods that have ingredients made from bioengineered plants. (ECF No. 171.)

69.     On August 7, 2013, Plaintiffs opposed the *ex parte* application. (ECF No. 172.)

70.     On August 12, 2013, the Court denied Conagra's *ex parte* application. (ECF. No. 173.)

**2012 – 2015:   Written Discovery; 19 Fact Depositions; Expert Discovery on Agricultural, <u>Economic, and Marketing Issues Related to Class Certification Motions.</u>**

**<u>July 2012 – Feb. 2015:</u>   Written Discovery and Documents Produced, Third Party Discovery.**

71.     In 2013, Conagra made its first document production: 99 documents comprising 1,410 pages.  This was indicative of Conagra's tediously slow roll out of documents; Class Counsel persistently pursued production throughout discovery.

72.     Plaintiffs produced 3,594 pages from seventeen different plaintiffs (four of whom later withdrew from the case).

73.     On July 1, 2013, Conagra served two letters on Plaintiffs informally responding to Plaintiffs' request for production nos. 13 and 14.

74.     On July 19, 2013, Plaintiffs served a deficiency letter to Conagra regarding Conagra's responses to Plaintiffs' request for production nos. 13 and 14.

75.     On August 2, 2013, Conagra produced two spreadsheet documents containing sales and marketing spend data.

76.     On August 19, 2013, Conagra produced 120 documents comprised of labeling information.

77.     On October 1, 2012, Plaintiffs served their objections and responses to Conagra's first set of requests for production.

78.     By the end of 2012, Conagra served its responses to Plaintiffs' first set of requests for production.

79. On July 1, 2013, Conagra served two letters on Plaintiffs informally responding to Plaintiffs' request for production nos. 13 and 14.

80. On July 19, 2013, Plaintiffs issued a deficiency letter to Conagra regarding Conagra's responses to Plaintiffs' request for production nos. 13 and 14

81. On October 1, 2013, ConAgra produced 127 documents as to consumer insights library documents.

82. On December 6, 2013, ConAgra produced 85 documents comprised of emails and documents referencing GMOs.

83. On January 13, 2014, the parties conducted a meet-and-confer regarding ongoing discovery issues.

84. On February 20, 2014, Conagra produced 22 documents regarding television commercials.

85. On March 28, 2014, Conagra produced six documents as to purchase order, IRI, and Nielsen data.

86. On March 31, 2014, Conagra produced 149 documents as to consumer insights library documents.

87. On April 4, 2014, Conagra produced 31 additional documents as to consumer insights library documents.

88. On April 11, 2014, Conagra issued 13 sets of interrogatories, one to each of the then 13 plaintiffs: Rona Johnston, Phyllis Scarpelli, Patty Boyer, Lil Marie Virr, Kelly McFadden, Janeth Ruiz, Erica Heins, Dee Hopper-Kercheval, Christi Toomer, Cheri Shafstall, Bonnie McDonald, Anne Cowan, and Anita Willman.

89. On April 24 and 28, 2014, Conagra produced documents comprising hundreds more pages.

90. In May 2014 and thereafter, the named plaintiffs served their responses to Conagra's interrogatories.

91.   Plaintiffs also had issued third party subpoenas; the productions began in June 2014.  On June 3, 2014, third party Radius produced 75 documents totaling 193 pages.

92.   Between June 6 and June 24, 2014, third party ISEO produced 1,146 documents.

93.   On June 16, 2014, third party Health Focus produced 4,390 pages of studies.

94.   On July 10, 2014, third party Radius produced an additional 1,215 documents.

95.   On November 12, 2014, Plaintiffs served their second set of requests for production on Conagra.

96.   On December 15, 2014, Conagra served Plaintiff with its responses to second set of requests for production.

97.   On December 19, 2014, Plaintiffs issued a deficiency letter to Conagra regarding its responses to Plaintiffs' second set of requests for production.

98.   On December 23, 2014, the parties conducted a meet-and-confer regarding ongoing discovery disputes.

99.   On January 9, 2015, Conagra served its second set of requests for production, first set of requests for admissions, and first set of interrogatories to Plaintiff Pauline Michael.

100.  On or about January 13, 2015, Plaintiffs served a third set of requests for production on Conagra.

101.  On January 30, 2015, Plaintiff received Conagra's responses to Plaintiffs' third requests for production.

102.  On January 14, 2015, Plaintiff propounded their fourth set of requests for production, first set of interrogatories, and first set of requests for admission to Conagra.

103.  By early February 2015, Conagra responded to Plaintiffs' fourth set of requests for production.

104.  On February 6, 2015, Plaintiff propounded its fifth set of requests for production to Conagra.

105.  On February 20, 2015, Plaintiff Pauline Michael served her answers to Conagra's interrogatories previously propounded upon her.

- 19 -

106.   On February 23, 2015, Plaintiffs served their responses to Conagra's requests for admissions.

107.   On February 23, 2015, Conagra provided its responses to Plaintiffs' first set of interrogatories and requests for admissions.

108.   By May 1, 2015, Conagra had produced over 50,000 pages of documents.

**2013-2015:          Depositions.**

109.   The parties engaged in depositions of fact witnesses and expert witnesses who supported or opposed the two motions for class certification.  In addition, Plaintiffs engaged and submitted a report by an agricultural expert who opined that Conagra's products were not all natural, but that expert (Dr. Benbrook) ultimately was not deposed by Conagra.  The specific depositions that Class Counsel took or defended are set out below:

**Plaintiffs Deposed**

|     | Date     | Name              | Class Representative |
|-----|----------|-------------------|----------------------|
|     |          |                   |                      |
| 1.  | 7/17/13  | Briseño, Robert   | Yes                  |
| 2.  | 8/19/13  | Andrade, Michele  | Yes                  |
| 3.  | 8/20/13  | Crouch, Jill      | Yes                  |
| 4.  | 8/21/13  | Michael, Pauline  | Yes                  |
| 5.  | 3/12/14  | Musat, Necla      | Yes                  |
| 6.  | 3/13/14  | Towey, Maureen    | Yes                  |

**Defendants Deposed**

|     | Date     | Name              | Role in Conagra                              |
|-----|----------|-------------------|----------------------------------------------|
|     |          |                   |                                              |
| 1.  | 4/29/14  | Hunter, Raquelle  | 30(b)(6) Representative                       |
| 2.  | 9/9/14   | Chopra, Sach      | [Former] Management of the Wesson Oil brand  |
| 3.  | 10/22/14 | Oehler, Jane      | Labeling and regulatory specialist           |
| 4.  | 2/4/15   | Chaapel, Sydney   | Labeling, regulatory, and natural labeling claims issues |
| 5.  | 2/5/15   | Hermansky, Steve  | Issues related to genetically modified organisms |
| 6.  | 2/13/15  | Binbuga, Bulent   | Formulation of Wesson Oils                    |
| 7.  | 2/26/15  | Sears, Karl       | Vice President & General Manager             |
| 8.  | 4/17/15  | Holbert, Sue      | Director Regulatory Affairs                   |

- 20 -

| 9. | 4/21/15 | Erb, Roz | Labeling Specialist |
| 10. | 4/29/15 | Bartholemew, Catherine | Issues related to consumer rights |
| 11. | 5/8/15 | Rice, Russel | Senior Food Labeling Specialist |

**Experts Deposed**

| | Date | Name | Area of Opinion |
| --- | --- | --- | --- |
| | | | |
| 1. | 5/23/14 | Weir, Colin | Plaintiff's Economist (Damages) |
| 2. | 6/18/14 *and* 10/17/14 | Ugone, Keith R., Ph.D. | Conagra's Economist (Damages and econometrics) |
| 3. | 6/19/14 | Hanssens, Dominique, Ph.D. | Conagra's Marketing/Survey Expert |
| 4. | 10/3/14 | Howlett, Elizabeth | Plaintiffs' Marketing Expert |

110. Fact discovery closed on May 1, 2015, but as described below, Plaintiffs continued to prosecute pending discovery motions after that date.

111. Expert disclosures were to follow in May 2015, after the close of fact discovery. Plaintiffs' counsel spent significant time working with their experts in support of class certification *and* for the expert disclosures in anticipation of trial, which incorporated proposed methodologies.

112. On May 13, 2015, the parties filed a joint stipulation to stay the case pending Conagra's Rule 23(f) petition for permission to appeal the Court's February 23, 2015 order granting class certification.  (ECF No. 578.)  On May 15, 2015, the Court granted the joint stipulation to stay the case.  (ECF No. 584.)  This all occurred just as the expert disclosures were due.

1    **2014 – 2017:**     **First Class Certification Motion; 7 Discovery Motions Continue; Amended**

2        **Class Certification; 11 Statewide Classes Certified; Stay Motion; Appeal**

3        **of Certification Order; Ninth Circuit's Groundbreaking**

4        **"Ascertainability" Decision; *En Banc* Denied; *Certiorari* to U.S. Supreme**

5        **Court Denied.**

6        **2014:**     **Court Sets Schedule on Class Certification.**

7    113.     On February 13, 2014, the Court sua sponte issued an Order as to class certification

8    motion and remaining case management dates stating, "The court believes that sufficient

9    time has now elapsed that the document production and review and depositions necessary

10   to class certification referenced in the parties' Joint Rule 26(f) Report (Docket No. 149)

11   should have been completed."  The Order directed Plaintiffs to "file a motion for class

12   certification no later than Monday, March 31, 2014," and set various other pretrial dates

13   culminating in a March 24, 2015 trial date.  (ECF No. 183.)

14   114.     On February 14, 2014, Class Counsel sought an expedited status conference before the

15   Court to address the class certification briefing schedule due to open discovery issues

16   (ECF No. 185); as with most applications, Conagra opposed it.  (ECF No. 186.)

17   115.     On February 19, 2014, Magistrate Judge Rosenberg held a conference in chambers and

18   ordered a discovery conference for the next day as to the issues relevant to class

19   certification.  (ECF No. 189.)

20   116.     On February 20, 2014, Magistrate Judge Rosenberg held a discovery hearing and set a

21   schedule for discovery motions relating to class certification.  (ECF No. 192.)

22       **Mar. – May 2014:**     **Two Discovery Motions Re Class Certification and**

23       **Compliance with Orders Compelling Discovery.**

24   117.     On March 7, 2014, Plaintiffs filed a motion to compel documents against Conagra,

25   arguing, among other things, that as a result of Conagra's improper conduct: "(i)

26   Con[a]gra has produced a TOTAL of 550 documents in this litigation, 215 of which are

27   product labels or label approval forms; (ii) the search terms Con[a]gra used to locate

28

- 22 -

relevant emails did not include 'GE,' even though Con[a]gra documents specifically state that 'the term genetic engineering (GE) is the preferred term' for GMOs inside the company; and (iii) although 70 of the 78 custodians whose documents Con[a]gra claims to have searched produced NO documents according to the production metadata, Con[a]gra has not added any custodians and, despite Plaintiffs' repeated questioning, has described no follow-up procedure to determine why 90% of the named custodians produced no documents."  (ECF No. 196.)  Conagra filed its own motion to compel against Plaintiffs.  (ECF No. 196.)

118.   On March 7 and March 8, 2014, Plaintiffs and Conagra filed their joint stipulations in support of their respective motions to compel in accordance with the C.D. California's procedures.  (ECF Nos. 203-05.)

119.   On March 10, 2014, after a hearing, Magistrate Judge Rosenberg granted, in part, motions to compel production of documents filed by both parties, and expressly ordered Conagra to search its consumer insights library for documents containing the listed terms (which Conagra had been resisting).  (ECF No. 208.)

120.   On March 12, 2014, the Court entered an Order granting the application to seal portions of the joint stipulation on Plaintiffs' motion to compel concerning confidential internal information. (ECF No. 212.)  Magistrate Judge Rosenberg's March 12th discovery ruling prioritized Conagra's obligation to provide class certification discovery, with merits discovery to come in a second phase.

121.   On March 26, 2014, after further conflicts with Conagra about the ordered discovery, Class Counsel filed an *ex parte* application seeking an order compelling Conagra to comply with Judge Rosenberg's March 10, 2014 ruling just two weeks prior.  (ECF No. 225.)

122.   Conagra opposed Plaintiffs' ex *parte* application.  (ECF No. 227.)

123.   On March 28, 2014, Magistrate Judge Rosenberg granted in part Plaintiffs' ex *parte* application seeking an order compelling Conagra to comply with the court's March 10,

- 23 -

1    2014 ruling and ordered Conagra to run an electronic search of the consumer insights

2    library with the terms in paragraph 1 of the Court's March 10, 2014 order except for the

3    word natural.  (ECF No. 228.)

4    124.   Also on March 28, 2014, due to certain discovery disputes relating to issues Class

5    Counsel contended were necessary to class certification, the Court extended the date to

6    file class certification by five weeks.  (ECF No. 230.)

7    **May – Aug. 2014:**          **First Motion for Class Certification, Four Additional**

8                                  **Discovery Motions Related to Class Certification.**

9    125.   On May 5, 2014, Plaintiffs filed a motion for class certification seeking to certify classes

10   in 12 states.  (ECF Nos. 241-47.)

11   126.   On May 9, 2014, due to further discovery disputes, Plaintiffs filed an *ex parte* application

12   for clarification of Judge Rosenberg's March 10, 2014 ruling compelling the production

13   of documents as to its application to dismissed or withdrawn plaintiffs.  (ECF No. 248.)

14   127.   On May 12, 2014, Conagra opposed Plaintiffs' May 9, 2014 application.  (ECF No. 249.)

15   128.   On May 13, 2014, Plaintiffs sought leave to file a reply to its May 9, 2014 *ex parte*

16   application for clarification and the Court granted leave.  (ECF Nos. 250-51.)

17   129.   On June 2, 2014, Conagra filed its opposition to class certification (ECF No. 265) and

18   motion to strike the declarations of Plaintiffs' experts Colin B. Weir and Charles M.

19   Benbrook, Ph.D. filed in support of certification.  (ECF No. 262).

20   130.   On June 3, 2014, Plaintiffs filed a motion seeking the withdrawal and voluntary dismissal

21   of the individual claims of the plaintiff from New Jersey.  (ECF No. 273.)

22   131.   On June 6, 2014, Judge Morrow entered an order approving Conagra's request to

23   substitute the law firm of McGuireWoods LLP in place of the law firm of Hogan Lovells

24   US LLP.  (ECF No. 276.)   Conagra determined to change counsel at this juncture –

25   specifically – at the end of discovery and in the middle of class certification briefing.

26   132.   On June 26, 2014, Plaintiffs filed their opposition to the motion to strike declarations of

27   their experts.  (ECF No. 280.)

28

- 24 -

133.    On June 30, 2014, Plaintiffs filed their reply to class certification, seeking to certify classes in 11 states.  (ECF Nos. 284-92.)

134.    In July 2014, the parties briefed evidentiary objections filed by both parties and motions to seal portions of the class certification record.  (ECF Nos. 298-304, 337.)

135.    On July 11, 2014, the Court granted the application to seal and issued an order for permission to file portions of Plaintiffs' reply in support of class certification and certain of Conagra and third-party information under seal.  (ECF Nos. 301-33, 339.)

136.    On July 14, 2014, shortly after the hearing on Plaintiffs' motion for class certification, the Court issued an order denying Plaintiffs' class certification motion without prejudice to its renewal.  The Court granted Conagra's motion to strike the declaration of Colin Weir for purposes of the certification proceeding only and it granted in part and denied in part Conagra's motion to strike the declaration of Charles Benbrook for purposes of the certification proceeding only.  The order directed the parties to meet and confer and submit a joint report by July 21, 2014 as to the proposed schedule for the filing and briefing of an amended motion for class certification.  (ECF No. 307.)

137.    On July 18, 2014, pursuant to the Court's July 14, 2014 order, the parties submitted a joint report as to a schedule and page limits for the amended class certification motion.  (ECF No. 334.)

138.    On July 31, 2014, the Court granted Plaintiffs' motion for withdrawal and voluntary dismissal of individual claims of the plaintiffs from New Jersey.  (ECF No. 349.)

139.    On August 1, 2014, the Court issued its 66-page order denying Plaintiffs' first motion for class certification, granting in part and denying in part Conagra's motion to strike, and directing the Plaintiffs to refile class certification within 30 days if they can cure certain deficiencies.  (ECF No. 350.)

140.    The parties continued to brief certain issues pertaining to sealing the record for class certification into August 2014 after the Court denied the first motion for class certification, (e.g., ECF Nos. 353-54.)

CASE NO. CV 11-05379-CJC (AGRX)
JOINT DEC ISO PLS' MOT FOR PRELIM.
APPROVAL OF SETTLEMENT

**<u>Sept. 2014 – Feb. 2015</u>: Amended Motion for Class Certification, 3 Additional Discovery Motions Re Class Certification, Conagra's Third Attempt to Stay Case.**

141.   On September 8, 2014, Plaintiffs filed their amended motion for class certification and motion to seal portions of the filing, including the declarations of Colin B. Weir, Dr. Elizabeth Howlett, Charles M. Benbrook, Ph.D., and Class Counsel.  (ECF Nos. 363-372.)

142.   On September 26, 2014, Conagra filed an *ex parte* application to seal portions of Plaintiffs' evidentiary submission in support of class certification.  (ECF No. 380.)

143.   On September 29, 2014, Plaintiffs opposed the *ex parte* application.  (ECF No. 381.)

144.   On October 6, 2014, Conagra filed its opposition to the amended motion for class certification, requests for judicial notice and motion to strike Plaintiffs' expert testimony of Dr. Howlett and Weir.  (ECF No. 383-90.)

145.   Pursuant to the parties' stipulation, on October 22, 2014, the Court set briefing on Conagra's motion to strike evidence into November 2014 and set a hearing.  (ECF No. 392.)

146.   On October 27, 2014, Plaintiffs filed their reply briefing and declarations in support of the amended class certification, motion to seal, and oppositions to the evidentiary objections.  (ECF Nos. 393-403.)

147.   On November 12, 2014, Plaintiffs filed an *ex parte* application regarding Conagra's late production of documents material to class certification, seeking an order directing Conagra to explain why certain documents relevant to the certification motion had not been produced until the day before Plaintiffs' deadline to file a reply in support of their class certification motion; Plaintiffs also asked the court to draw an adverse inference against Conagra.  (ECF No. 412.)

CASE NO. CV 11-05379-CJC (AGRX)
JOINT DEC ISO PLS' MOT FOR PRELIM.
APPROVAL OF SETTLEMENT

148.   Also on November 12, 2014, Plaintiffs served Conagra with their second request for production of documents, seeking certain documents from three current or former employees of Conagra whose depositions Plaintiffs had noticed.

149.   On November 24, 2014, the parties appeared before the Court to argue Plaintiffs' class certification motion. The court took the matter under submission. (ECF No. 424.)

150.   In November and December 2014, additional briefs were filed relating to sealing of the record and to recent case law. (e.g., ECF Nos. 411-14, 416, 418, 425.)

151.   On December 9, 2014, Plaintiffs filed a motion to compel documents relating to Conagra's late production of documents, based on Conagra's failure to conduct a reasonable search for documents responsive to Plaintiffs' request for production of documents, which the Court found relevant when considering Plaintiffs' first motion for class certification; Plaintiffs also filed a motion to seal and supplement to motion to compel. (ECF Nos. 426, 431-32.)

152.   On December 15, 2014, Conagra served responses to Plaintiffs' second request for production of documents and produced 11 documents.

153.   On December 16, 2014, Conagra filed a notice of decision as to U.S. District Court, Northern District of California as to summary judgment (*Brazil v. Dole Packaged Foods, LLC,* Case No. 12-CV-01831-LHK) and an order granting a motion to decertify the damages class issued on December 15, 2014 (*Werdebaugh v. Blue Diamond Growers,* Case No. 12-CV-02724-LHK). Conagra's submission stated: "Both decisions were issued after Con[a]gra's Opposition brief was filed. Earlier class certification orders in both cases were cited and relied upon by Plaintiffs in their Amended Motion for Class Certification, and were addressed by the parties and this Court prior to the entry of the attached Orders. Con[a]gra respectfully submits these recent authorities in further support of its Opposition to Plaintiffs' Amended Motion for Class Certification in the instant action." (ECF No. 430.)

CASE NO. CV 11-05379-CJC (AGRX)
JOINT DEC ISO PLS' MOT FOR PRELIM.
APPROVAL OF SETTLEMENT

154. Also on December 16, 2014, Plaintiffs filed an application to seal portions of its filing and a supplement to their motion to compel documents from Conagra relating to its late production of documents.  (ECF No. 431-32.)

155. On December 17, 2014, Conagra made its third attempt to stay the case when it filed an *ex parte* application to stay this case pending resolution of related cases and appeals – this time based on other cases pending before the Ninth Circuit on claim related to the "100% Natural" labeling of certain of Hunt's tomato products. (*Jones v. ConAgra* – and two cases Conagra opined "are likely to be pending before the Ninth Circuit in short order" (reference to *supra,* ECF No. 430), (ECF No. 433.)

156. On December 18, 2014, Plaintiffs filed an opposition to the *ex parte* application to stay the case (ECF No. 436) and an opposition to Conagra's notice of decision.  (ECF No. 437.)

157. On December 23, 2014, Magistrate Judge Rosenberg vacated the December 30th hearing on Plaintiffs' motion to compel documents relating to Conagra's late production of documents, for which the parties had been preparing, and took the motion under submission.  (ECF No. 439.)

158. On December 29, 2014, Judge Morrow denied Conagra's *ex parte* application (and third attempt) to stay the action pending the Ninth Circuit's resolution of the appeal in *Jones v. ConAgra Foods, Inc.*  (ECF No. 440.)

159. Also on December 29, 2014, Judge Morrow denied the Plaintiffs' November 12th *ex parte* application seeking an order instructing Conagra to explain the circumstances for its late production and for an adverse inference.  (ECF No. 441).

160. And further on December 29, 2014, the Court granted in part and denied in part applications to file under seal.  (ECF No. 443.)

161. The Court set the December 9th motion to compel (ECF No. 426) for a hearing on January 13, 2015.  (ECF No. 447.)

- 28 -

162. On January 6, 2015, the parties filed additional documents under seal in support of the joint stipulation on Plaintiffs' motion to compel.  (ECF Nos. 448-55.)

163. On January 8, 2015, Plaintiffs filed an *ex parte* application for an expedited hearing on its motion to compel production of all non-privileged documents responsive to Plaintiffs' second document request.  (ECF No. 458.)

164. On January 13, 2015, the parties appeared before Magistrate Judge Rosenberg on Plaintiffs' December 9th motion to compel (ECF No. 426), and the Court granted the motion in part and denied in part.  The Court further directed the parties to file supplemental briefs on Plaintiffs' motion to compel further documents pursuant to the second request for production.  (ECF Nos. 507-08.)

165. The December 9th motion to compel documents were ordered under seal following additional briefing.  (ECF Nos. 524-27.)

166. On January 14, 2015, Plaintiffs filed a motion to compel production of all non-privileged documents that are responsive to Plaintiffs' November 12, 2014 second request for documents and filed a supplement to the motion on January 21, 2015, based on Conagra's pattern of obstructing discovery and refusing to meet and confer with Plaintiffs on appropriate search protocols before unilaterally implementing searches that were patently inadequate and inconsistent with the prior ruling of the Court.  (ECF Nos. 511-13, 516.)

167. On January 21, 2015, Plaintiffs filed a supplement to its January 14th motion to compel.  (ECF No. 516.)

168. Also on January 21, 2015, Conagra opposed the January 14th motion to compel and moved to seal portions of its response.  (ECF Nos. 517-18.)

169. On January 23, 2015, Magistrate Judge Rosenberg granted in part Plaintiffs' January 14th motion to compel.  (ECF No. 521.)

170. On February 9, 2015, the Court entered a stipulated order setting case management deadlines and a new trial date, setting the fact discovery cut-off at May 1, 2015 and the

- 29 -

1   motion hearing cut-off at July 13, 2015, and moving the trial from June 23, 2015 to

2   October 13, 2015.  (ECF No. 541.)

3   171.   On February 23, 2015, the Court granted in part and denied in part Plaintiffs' amended

4   motion for class certification, certifying eleven state classes.  (ECF No. 545.)

5   172.   In sum, Class Counsel engaged in two full rounds of hotly-contested class certification

6   motion practice from May 2014 through November 2014, including preparing, filing, and

7   arguing both rounds of this motion practice, six discovery motions related to class

8   certification data and documents, and then discovery motions to resume merits discovery

9   after the class certification hearing and before the Court issued its opinion, multiple

10   motions to seal, as well as working with experts and engaging in substantial expert

11   discovery in relation to both class certification motions.  Plaintiffs successfully achieved

12   class certification of eleven statewide classes in February 2015, which Conagra then

13   appealed.

14   173.   Trial had been set for October 13, 2015 at the time of the court's certification of the eleven

15   statewide classes.

16   **Mar. – May 2015**:      **Conagra's Fourth Attempt to Stay Case and Rule 23(f)**

17                     **Petition and Appeal, Discovery Motions Continue.**

18   174.   On March 16, 2015, Conagra filed another motion to stay the case (fourth to date) pending

19   a Rule 23(f) petition and appeal.  (ECF No. 546.)  The parties stipulated to expedited

20   briefing on Conagra's motion to stay on the same day.  (ECF No. 547.)

21   175.   Also on March 16, 2015, Plaintiffs filed a motion to compel documents and information

22   wrongfully withheld by Conagra.  (ECF No. 550.)

23   176.   Conagra opposed Plaintiffs' motion to compel on March 24, 2015 (ECF No. 553) and

24   Plaintiffs filed supplemental papers in support of its March 16th motion to compel.  (ECF

25   No. 555.)

26   177.   On March 27, 2015, Plaintiffs filed their opposition to Conagra's motion to stay the case

27   pending the Rule 23(f) petition and appeal.  (ECF No. 556.)

28

CASE NO. CV 11-05379-CJC (AGRX)
JOINT DEC ISO PLS' MOT FOR PRELIM.
APPROVAL OF SETTLEMENT

178.  On March 31, 2015, Conagra filed its reply in support of its motion to stay.  (ECF No. 557.)

179.  On April 27, 2015, Magistrate Judge Rosenberg granted in part and denied in part Plaintiffs' March 16th motion to compel, including ordering a deposition to proceed. (ECF No. 570.)

180.  On April 28, 2015, the Court held a hearing, issued a further order on Plaintiffs' January 14th motion to compel based on the parties' submissions in response to the Court's order granting in part Plaintiffs' motion.  The Court's order stated: "It appears to the court that Con[a]gra has since run broader search strings on the Relativity database such that the parties are no longer relying on the Xtender database server searches.  If that is correct, no further work appears necessary to correct Xtender s flaw(s).  If this assumption is incorrect, counsel for both parties shall contact, within 7 days after entry of this order, the Clerk … to request a telephonic discovery conference."  (ECF No. 571.)

181.  On May 13, 2015, the Ninth Circuit issued an order granting Conagra's petition for permission to appeal the district court's February 23, 2015 order granting class certification.  (ECF No. 580.)

182.  On May 14, 2015, to follow up the April 28, 2015 hearing, the Court held a telephonic hearing on the January 14th motion to compel and Magistrate Judge Rosenberg determined that no further action was required based on the record before it.  (ECF No. 579.)

183.  On May 15, 2015, the Court issued an order granting the parties' joint stipulation to stay the case pending appeal.  (ECF No. 584.)  Accordingly, the parties did not serve their expert disclosures which they had been preparing prior to the stay.

**2015 – 2017:** **Ninth Circuit Appeal of Class Certification:  Briefing, Argument and Decision Affirming Class Certification, Supreme Court Denies Conagra's Appeal.**

- 31 -

184.   On September 21, 2015, Appellant-Defendant filed its opening brief.  (No. 15-55727, 9th
Cir., ECF No. 13)

185.   On December 12, 2015, Plaintiffs-Appellees filed their answering brief.  (No. 15-55727,
9th Cir., ECF No. 24)

186.   On March 2, 2016, Defendant-Appellant filed its reply brief.  (No. 15-55727, 9th Cir.,
ECF No. 34)

187.   On January 3, 2017, nearly two years after Plaintiffs successfully achieved class
certification, the Ninth Circuit issued its opinion and memorandum affirming Judge
Morrow's class certification ruling in all respects.  (No. 15-55727, 9th Cir., ECF Nos. 52-
53.)  Class Counsel succeeded in obtaining a groundbreaking decision in the Ninth Circuit
on the hotly contested issue of "ascertainability" in class actions.

188.   The District Court entered the Ninth Circuit opinion and memorandum on its docket on
January 3, 2017.  (ECF Nos. 595-96.)

189.   On March 2, 2017, the Court granted Conagra's motion to stay issuance of the mandate
pending application for writ of *certiorari* pursuant to Fed. R. App. P. 41(d)(2)(A).  The
mandate was stayed for a period not to exceed 90 days pending the filing of the petition
for writ of *certiorari* in the Supreme Court.  (ECF No. 598.)

190.   Conagra filed a petition for *certiorari* to the United States Supreme Court, seeking review
of the Ninth Circuit's decision, specifically as to its ruling on Conagra's arguments as to
"ascertainability."

191.   On October 10, 2017, after the parties filed their submissions and without oral argument,
the Supreme Court denied Conagra's petition.  *See In re Conagra Foods, Inc.,* 90 F. Supp.
3d 919, 1035-36 (C.D. Cal. 2015), *aff' d sub nom. Briseño v. Conagra Foods, Inc.*, 844
F.3d 1121 (9th Cir. 2017), and *aff' d sub nom. Briseño v. Conagra Foods, Inc.*, 674 F.
App' x 654 (9th Cir. 2017), *cert. denied* 138 S. Ct. 313 (2017) (Conagra II) (certifying
eleven statewide classes for consumers in the states of California, Colorado, Florida,

Illinois, Indiana, Nebraska, New York, Ohio, Oregon, South Dakota, and Texas).  *See ConAgra Brands, Inc. v. Briseño*, 138 S. Ct. 313 (2017).

192.  Because of Conagra's vigorous defense of this litigation to the United States Supreme Court, the Plaintiffs have advanced *and established new law in the courts favoring consumers.*  Conagra's appeal of the District Court's class certification opinion resulted in the strongest and furthest-reaching federal appellate court ruling on the issue of "ascertainability" of absent class members.

193.  Class Counsel are particularly proud of their success before the Ninth Circuit not only insofar as the affirmance of class certification, but also the specific guidance from the Ninth Circuit *as to the application of* Rule 23.  More specifically, Conagra was intent on imposing an "administrative feasibility"/"ascertainability" standard within the confines of Rule 23.  The Ninth Circuit considered the issue carefully, and ultimately the Ninth Circuit stated, among other things:

> On appeal, Con[a]gra continues to present administrative feasibility as part of a threshold "ascertainability" prerequisite to certification.  Con[a]gra relies on a footnote in *Berger v. Home Depot USA, Inc.,* 741 F.3d 1061 (9th Cir. 2014), to argue that our court has recognized such a requirement.  But in that footnote we explicitly declined to decide whether the district court abused its discretion by denying certification based on a "threshold ascertainability test." *Id.* at 1071 n.3.  Con[a]gra cites no other precedent to support the notion that our court has adopted an "ascertainability" requirement.  This is not surprising because we have not.

*See Briseño v. ConAgra Foods, Inc.,* 844 F.3d 1121, 1124 n. 4 (9th Cir.)

194.  The 2017 Ninth Circuit precedential ruling has been cited in more than fifty cases since it was issued.  *See Briseño v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir.) ("the language of Rule 23 neither provides nor implies that demonstrating an administratively feasible way to identify class members is a prerequisite to class certification, and the

- 33 -

1    policy concerns that have motivated the Third Circuit to adopt a separately articulated

2    requirement are already addressed by the Rule.  We therefore join the Sixth, Seventh, and

3    Eighth Circuits in declining to adopt an administrative feasibility requirement.").  *See*

4    *also Meyer v. Bebe Stores, Inc.,* No.14-CV-00267-YGR, 2017 WL 558017, at *1 (N.D.

5    Cal. Feb. 10, 2017) (citing *Conagra Ninth Circuit case in denying motion to decertify);*

6    *In re Lidoderm Antitrust Litig.,* No. 14-MD-02521-WHO, 2017 WL 679367, at *11 (N.D.

7    Cal. Feb. 21, 2017) (citing *Conagra* Ninth Circuit case in granting motion for class

8    certification).

9    195.   On October 19, 2017, the Mandate of the Court of Appeals was filed.  (ECF No. 602.)

10   196.   After remand, the parties sought to continue the stay entered in May 2015 to permit

11   mediation.  (ECF No. 600.)

12   197.   On November 17, 2017, the District Court granted the parties' stipulation to continue the

13   stay of the case pending the outcome of mediation. (ECF No. 601.)

14   **2018:**      **ConAgra's Motion to Transfer Case to Illinois through Judicial Panel on**

15   **Multidistrict Litigation.**

16   198.   Just days before the submission deadline for the mediation statement before Magistrate

17   Judge Infante, Conagra strategically filed a request with the JPML to move this litigation

18   from the Central District of California to the Northern District of Illinois, using the

19   retirement of Judge Morrow and the move of its corporate office as the reason to escape

20   the Ninth Circuit.

21   199.   Plaintiffs strongly opposed the retransfer of the action in their opposition filed with the

22   JPML.

23   200.   On April 9, 2018, the JPML denied Conagra's request to transfer.  (ECF No. 610.)

24   **2018:**      **First Mediation Effort.**

25   (Honorable Magistrate Judge Edward A. Infante (Ret.))

26   201.   The parties scheduled, prepared for, and participated in a mediation with former Chief

27   Magistrate Judge Hon. Edward A. Infante (Ret.), then with JAMS.

28

- 34 -

202.    In preparing for the mediation, Plaintiffs' counsel communicated with their consulting experts regarding damages and claims administration, and prepared and submitted to Judge Infante a detailed 47-page confidential mediation brief and settlement proposal on January 22, 2018.

203.    The Parties then attended an all-day mediation on January 29, 2018, in San Francisco. The parties were unable to resolve the case during the formal mediation.

204.    Judge Infante continued his efforts to resolve the matter until Magistrate Judge McCormick was assigned on June 8, 2018.   Extensive weekly or biweekly communications with Judge Infante ensued, inclusive of modified demands and counteroffers from early February through early June 2018.

**2018:**        **Second Mediation Effort Which Extended over Months; Settlement Reached; <u>Settlement Agreement Entered.</u>**

(Honorable Magistrate Judge Douglas F. McCormick)

205.    On June 8, 2018, the parties appeared before the Court for a status conference, and the Court referred the parties to Magistrate Judge Douglas F. McCormick for further settlement discussions.  (ECF. No. 626.)

206.    From June 8, 2018 through November 2018, Class Counsel engaged in extensive, renewed settlement negotiations with Conagra's counsel and Magistrate Judge McCormick, including extensive correspondence, telephone conferences, and an in-person settlement conference on August 30, 2018, and multiple telephone conferences thereafter.

207.    It was not until *after* the Parties reached agreement in principle regarding monetary relief to Class Members and the provisions of injunctive relief that the parties began negotiations with Defendant and Magistrate Judge McCormick on attorneys' fees for Class Counsel, plaintiffs' service awards, and the costs of settlement notice and administration.

CASE NO. CV 11-05379-CJC (AGRX)
JOINT DEC ISO PLS' MOT FOR PRELIM.
APPROVAL OF SETTLEMENT

208.   Further negotiations followed regarding the language of various settlement documents, including but not limited to, the Settlement Agreement, the Motion for Order Directing Notice to Class Members, the Class Notices, press releases, and various documents used by the Settlement Notice and Claims Administrator.

209.   Class Counsel and other plaintiffs' counsel also maintained ongoing communications with Plaintiffs regarding the status of the litigation and the terms of the proposed settlement.

**Complexity and Risk of Continued Litigation.**

210.   The parties reached the Original Settlement of this litigation, recognizing the risks and costs associated with proceeding to trial.  Had litigation continued at that time, more litigation and trial expense and procedural and substantive complexity would inevitably result.  Plaintiffs would pursue additional substantive motion practice in anticipation of trial, as well as prepare for trial; and Plaintiffs would request supplementation of discovery, including, but not limited to, information regarding Conagra's label and marketing change in 2017, an update of Conagra's past document productions, and resolution by the parties and/or the Court of disputes pertaining to Conagra's productions of documents just preceding the close of fact discovery in 2015.  Conagra reported to the Court that but for settlement it would have pursued multiple measures, including but not limited to decertification of the classes, motions for summary judgment, and a motion to sever.

**2018:**   **Trial Setting Scheduling Order and Settlement In Principle.**

211.   On October 22, 2018, the Court held a status conference.  (ECF No. 639.)

212.   On October 23, 2018, the Court issued a scheduling order directing the parties to appear at a Pretrial Conference on October 7, 2019, and setting the jury trial for November 5, 2019 at 8:30 a.m.  (ECF No. 640.)

213.   On November 15, 2018, Judge Carney issued an order that after a series of discussions with the Court since the last settlement conference (which was on August 30, 2018), the

CASE NO. CV 11-05379-CJC (AGRX)
JOINT DEC ISO PLS' MOT FOR PRELIM.
APPROVAL OF SETTLEMENT

1    parties have reached a settlement in principle and would file a motion for settlement

2    approval within 90 days.  (ECF No. 645.)

3    214.   Negotiations followed to document the terms of the Original Settlement.   Those

4          negotiations were hard fought and extended over months.

5    215.   The schedule to file the motion for settlement was extended several times by the Court

6          due to the contentious nature of documenting the settlement terms.  (ECF Nos. 646-47

7          and 649.)

8    **2019 – 2022:       *ORIGINAL SETTLEMENT* – Preliminary Approval; Final Approval;**

9          **Sole Objector; Appeal; Renewed Motion for Final Approval; Motion for**

10         **<u>Reconsideration.</u>**

11         <u>**2019 – 2021:**</u>       **Preliminary Approval, Final Approval, Objection and Motion for**

12         **Sanctions Denied, Appeal of Settlement Approval and Sanction.**

13   216.   On March 12, 2019, Plaintiffs filed an unopposed motion for order directing notice of the

14         settlement to class members.  (ECF Nos. 650-52.)

15   217.   On April 4, 2019, the Court issued an order granting preliminary approval of the class

16         action settlement, directing notice to the classes, and appointing Milberg Tadler Phillips

17         Grossman LLP, and DiCello Levitt LLC as class counsel.   The Court set the final

18         approval hearing for October 7, 2019.  (ECF No. 654.)

19   218.   On July 23, 2019, Plaintiffs filed their motion for final approval of the settlement, an

20         award of attorneys' fees and reimbursement of expenses, and service awards for class

21         representatives.  (ECF Nos. 659-63.)

22   219.   On August 6, 2019, M. Todd Henderson filed an objection to the proposed settlement.

23         (ECF No. 666.)

24   220.   On August 20, 2019, the Plaintiffs and Conagra filed separate responses to the Henderson

25         objection.  (ECF Nos. 670, 672.)

26   221.   On September 3, 2019, Objector Henderson sought leave *ex parte* to file a reply in support

27         of his objection.  (ECF No. 677.)  Also on September 3, 2019, Objector Henderson filed

28

- 37 -

an *ex parte* application to reschedule the Rule 11(c)(2) waiting period for a Rule 11 motion.   On September 4, 2019, the Plaintiffs filed their opposition to the *ex parte* application to reschedule the Rule 11 (c)(2) waiting period.  (ECF No. 679.)  Also on September 4, 2019, Plaintiffs filed their opposition to the *ex parte* application for leave to file reply in support of objection.  (ECF Nos. 680-81.)

222.  On September 5, 2019, the Court granted Objector Henderson's *ex parte* application to file a reply and denied Objector Henderson's *ex parte* application to reschedule the Rule 11 waiting period.  (ECF No. 683.)

223.  On September 9, 2019, Objector Henderson filed a motion to strike the expert opinions of Colin Weir.  (ECF No. 684.)

224.  On September 10, 2019, Objector Henderson filed his opposition to the motion for final approval.  (ECF No. 685.)

225.  On September 23, 2019, Plaintiffs filed their opposition to Objector Henderson's motion to strike the expert opinion of Colin Weir.  (ECF No. 687.)

226.  On September 24. 2019, Plaintiffs filed their supplemental filing in support of final approval.  (ECF No. 688.)

227.  On September 30, 2019, Objector Henderson filed his reply to the motion to strike the expert opinion of Colin Weir.  (ECF No. 693.)

228.  On October 7, 2019, the parties appeared before the Court to present arguments for the final approval of the proposed settlement, the motion for attorneys' fees and costs, and the Objector's opposition to the settlement and the attorneys' fees and motion to strike expert testimony.  (ECF No. 694.)

229.  As reflected in the transcript from the October 7, 2019 hearing, the Court engaged in a robust discussion with counsel for all parties and the Objector.

230.  On October 8, 2019, the Court issued its order granting final approval of the settlement, denying the motion to strike expert testimony, and awarding attorneys' fees and reimbursable costs.  (ECF No. 695.)

CASE NO. CV 11-05379-CJC (AGRX)
JOINT DEC ISO PLS' MOT FOR PRELIM.
APPROVAL OF SETTLEMENT

231.   On November 7, 2019, Objector Henderson filed his notice of appeal of the Court's October 8th order.  (ECF No. 697.)

232.   On November 25, 2019, Objector Henderson filed a motion for sanctions against Class Counsel under Rule 11(b), 28 U.S.C. § 1927, and Local Rule 83-7.  (ECF Nos. 702-03.)

233.   On December 10, 2019, the Court entered the final judgment.  (ECF No. 708.)

234.   On December 12, 2019, Objector Henderson filed his first amended notice of appeal to the Ninth Circuit.  (ECF No. 709.)

235.   On December 16, 2019, Class Counsel filed their opposition to the motion for sanctions pursuant to Rule 11(b), 28 U.S.C. § 1927, and Local Rule 83-7.  (ECF No. 710.)

236.   On December 18, 2019, the Court denied Objector Henderson's motion for sanctions. (ECF No. 711.)

237.   On January 16, 2019, Objector Henderson filed a notice of appeal on the denial of the motion for sanctions under Rule 11(b), 28 U.S.C. § 1927, and Local Rule 83-7.  (ECF No. 713.)

**Apr. 2020 – Sept. 2021: Ninth Circuit Appeal of Final Approval of Settlement and Attorneys' Fees, Briefing, Argument and decision.**

238.   On January 21, 2020, the Ninth Circuit docketed and entered appearances of counsel regarding Objector-Appellant M. Todd Henderson's appeal for sanctions.  (No. 20-55068, 9th Cir., ECF No. 1.)

239.   On April 3, 2020, Objector-Appellant M. Todd Henderson filed his opening brief in support of his appeal to the Ninth Circuit.  (No. 19-56297, 9th Cir., ECF No. 14.)

240.   On April 27, 2020, on the day the Objector-Appellant's opening brief on the appeal for sanctions was due, Objector-Appellant M. Todd Henderson moved to voluntarily dismiss the sanctions appeal with no notice to or communication with Class Counsel.  (No. 20-55068, 9th Cir., ECF No. 6.)

241.   On May 1, 2020, the Ninth Circuit granted the Objector's motion for voluntary dismissal of the sanctions appeal.  (No. 20-55068, 9th Cir., ECF No. 7.)

- 39 -

242.    On May 15, 2020, Plaintiffs-Appellees filed their motion for summary affirmance and stay of the briefing schedule.  (No. 19-56297, 9th Cir., ECF No. 29.)

243.    On May 22, 2020, Objector-Appellant M. Todd Henderson filed (1) a response opposing summary affirmance and (2) a cross-motion for sanctions.  (No. 19-56297, 9th Cir., ECF No. 31.)

244.    On May 26, 2020, Plaintiffs-Appellees filed their reply in further support of summary affirmance.  (No. 19-56297, 9th Cir., ECF No. 32.)

245.    On June 2, 2020, Objector-Appellant M. Todd Henderson filed his reply in support of his cross-motion for sanctions.  (No. 19-56297, 9th Cir., ECF No. 33.)

246.    On July 2, 2020, Plaintiffs-Appellees filed their brief in opposition to M. Todd Henderson's appeal.  (No. 19-56297, 9th Cir., ECF No. 35)

247.    On July 24, 2020, the Ninth Circuit denied Plaintiffs-Appellees' motion for summary affirmance.  (No. 19-56297, 9th Cir., ECF No. 44.)

248.    On September 14, 2020, Objector-Appellant M. Todd Henderson filed his reply brief in support of his appeal.  (No. 19-56297, 9th Cir., ECF No. 52.)

249.    On December 7, 2020, counsel for the parties and the Objector appeared and presented oral argument for the appeal before the Ninth Circuit via video teleconference.  (No. 19-56297, 9th Cir., ECF No. 66.)

250.    On June 1, 2021, the Ninth Circuit issued its ruling reversing the district court's settlement and remanding for further proceedings.  (No. 19-56297, 9th Cir., ECF No. 67.)

251.    On July 19, 2021, the parties and Objector appeared before Judge Carney for a status conference.

252.    On July 21, 2021, the parties filed the Joint Amended Status Report.  (ECF No. 729.)

253.    On August 3, 2021, the parties and the Objector filed a Joint List of Important Issues for Magistrate Judge McCormick to Consider Addressing in his Declaration.  (ECF No. 731.)

254.    On September 8, 2021, Magistrate Judge McCormick filed his Declaration.  (ECF No. 739 (entered September 9, 2021).)

<u>**Sept. 2021 – Feb. 2022**</u>: **Renewed Motion for Final Approval of Original Settlement, Discovery, and Motion for Reconsideration.**

255.     On September 23, 2021, the Plaintiffs filed their Renewed Motion and Memorandum in Support for Final Approval of the Settlement and Award of Attorneys' Fees, Expenses, and Service Awards and supporting evidence.  (ECF Nos. 742-43.)

256.     On September 29, 2021, Conagra filed its Response to Renewed Motion for Final Approval of the Settlement and Award of Attorneys' Fees, Expenses and Service Awards. (ECF No. 745.)

257.     On October 4, 2021, the Objector filed its *Ex Parte* Application for Discovery and a Continuance of the Briefing Schedule and November 1 Hearing until after Discovery Is Completed.  (ECF No. 746.)

258.     On October 5, 2021, Conagra filed its Response in Opposition to Objector M. Todd Henderson's *Ex Parte* Application for Discovery and a Continuance of the Briefing Schedule and November 1 Hearing Until After Discovery Is Completed.  (ECF No. 748.)

259.     On October 5, 2021, Plaintiffs filed Class Counsel's Opposition to Objector's *Ex Parte* Application for Discovery and Continuance of Briefing Schedule and November 1, 2021 Hearing.  (ECF No. 749.)

260.     On October 6, 2021, the Court granted the Objector's *Ex Parte* Application for Discovery and ordered limited discovery "into discussion between Plaintiffs and Conagra, and information or material shared with Judge McCormick."  The Court's Order required that the discovery be completed by November 23, 2021, the Objector would respond to Plaintiffs' renewed motion for final approval by December 3, 2021, the Plaintiffs file their reply by December 10, 2021, and the final approval hearing will be continued to December 20, 2021 at 1:30 p.m.  (ECF No. 750.)

261.     On October 6, 2021, Class member Shiyang Huagng filed his Opposition to Renewed Motion for Settlement Approval (ECF No. 742) Without Re-Notice to the Class.  (ECF No. 751.)

CASE NO. CV 11-05379-CJC (AGRX)
JOINT DEC ISO PLS' MOT FOR PRELIM.
APPROVAL OF SETTLEMENT

262.    On October 20, 2021, Class member Shiyang Huagng filed his Notice of Supplemental Authority in Support of his opposition to the renewed motion for final approval.  (ECF No. 752.)

263.    On October 22, 2021, Objector Henderson sent correspondence and deposition notices directed to Conagra Brands Inc., Alston & Bird LLP, MCBPG, Tadler Law LLP, and DiCello Levitt.

264.    Class Counsel met and conferred with Objector Henderson's counsel about the discovery sought.

265.    On November 10 and 11, 2021, Class Counsel produced data and documents to Objector Henderson in accordance with the Court's order allowing limited discovery, all designated "Confidential" as by definition they constitute confidential settlement discussions.  (ECF No. 750.)

266.    On Saturday, November 13, 2021, Objector Henderson sent correspondence and deposition notices requesting the depositions of Conagra counsel Angela Spivey and Class Counsel Ariana Tadler and David Azar.

267.    On November 19, 2021, Objector Henderson deposed Class Counsel Adam Levitt by Zoom teleconference.  Separate counsel was retained for Class Counsel Adam Levitt.

268.    On December 3, 2021, Objector Henderson filed his Renewed Objection to Proposed Settlement and to Fee Request and his accompanying declaration filed under seal.  (ECF Nos. 758-59.)

269.    On December 10, 2021, the Defendant Conagra filed its Reply to Objector's Renewed Objection to Proposed Settlement and Fee Request. (ECF No. 767.)

270.    On December 10, 2021, Plaintiffs filed their Sealed Unredacted Reply In Support of Renewed Motion for Final Approval of Settlement, the Joint Reply Declaration of Class Counsel in Support of Plaintiffs' *Renewed Motion* For Final Approval of the Settlement and Award of Attorneys' Fees, Expenses and Representative Plaintiffs' Service Awards,

- 42 -

1    and the Joint Declaration of Class Counsel in Support of Plaintiffs' Application for Leave

2    to File Under Seal.  (ECF Nos. 768-70.)

3    271.    On December 11, 2021, Shiyang Huang filed his opposition to Class Counsel's

4    application to seal Reply brief.  (ECF No. 771.)

5    272.    On December 14, 2021, Defendant Conagra filed a declaration in support of Class

6    Counsel's application to seal Reply brief.  (ECF No. 772.)

7    273.    On December 15, 2021, Plaintiffs filed their Notice of Lodging of Proposed Redacted

8    Documents Regarding Application for Leave to File Under Seal (ECF No. 768) Pending

9    Approval of Court and their Notice of Filing in Public Record Exhibit Nos. 1-25, 27-29,

10   and 48-53 to Joint Reply Declaration of Class Counsel in Support of Plaintiffs' *Renewed*

11   *Motion* for Final Approval of the Settlement and Award of Attorneys' Fees, Expenses

12   and Representative Service Awards.  (ECF Nos. 773-74.)

13   274.    Also on December 15, 2021, Plaintiffs filed their Response to Class Member Shiyang

14   Huang Opposition (ECF No. 774.) to Class Counsel's Application to Seal Reply Brief

15   [Dkt. 771].  (ECF No. 775.)

16   275.    On December 16, 2021, Plaintiffs filed their Submission of Supplemental Authority in

17   support of the Renewed Motion.  (ECF No. 776.)

18   276.    On December 16, 2021, Shiyang Huang filed a supplemental statement.  (ECF No. 777.)

19   277.    On December 20, 2021, the Court held an in-person and videoconference hearing on the

20   Renewed Motion for Final Approval of the Proposed Settlement and Award of Attorneys'

21   Fees, Expenses and Service awards; the Court took the motion under submission.  (ECF

22   No. 778.)

23   278.    On December 22, 2021, the Court issued its order denying Plaintiffs' *Renewed Motion*

24   for Final Approval of the Proposed Settlement, and the Court issued an order granting in

25   substantial part Objector Henderson's and Plaintiffs' applications to filed documents

26   under seal. (ECF Nos. 779-80.)

27

28

CASE NO. CV 11-05379-CJC (AGRX)
JOINT DEC ISO PLS' MOT FOR PRELIM.
APPROVAL OF SETTLEMENT

279. On January 5, 2022, Plaintiffs filed their Motion for Reconsideration of the Court's Order Denying Plaintiffs' *Renewed Motion* for Final Approval of the Settlement and Award of Attorneys' Fees, Expenses and Service Awards.  (ECF No. 784.)

280. On January 6, 2022, Shiyang Huang filed his Opposition to Plaintiffs' Motion for Reconsideration.  (ECF No. 786.)

281. On February 7, 2022, Objector Henderson filed his Opposition to Plaintiffs' Motion to Reconsider.  (ECF No. 791.)

282. On February 22, 2022, the Court issued its Order Denying Plaintiffs' Motion for Reconsideration of the Court's Order Denying Plaintiffs' *Renewed Motion* for Final Approval of Class Action Settlement [Dkt. 742].  (ECF No. 795.)

**Mar. 2022 – Present:**  *NEW SETTLEMENT* **– Negotiation and Documentation of New Settlement, Preparation of Motion for Preliminary Approval and <u>Corresponding Documents.</u>**

283. With the Court's denial of Plaintiffs' motion for reconsideration as to final approval of the Original Settlement, Plaintiffs, who for the prior three years had thought this Action was coming to an end, were faced with the reality that without the Original Settlement, they would need to ramp up for litigation absent a new settlement.  Class Counsel understood that any new settlement would necessarily need to be substantially different from the Original Settlement to pass muster with this Court.

284. Class Counsel and counsel for Conagra collectively agreed that it was in the best interests of the Parties to try to negotiate a new settlement.  They spent the following six months negotiating the terms of the New Settlement at arm's length.  Once they had agreed on the terms of the New Settlement – which, among many other important features, maintains the price per unit allocation and now establishes a $3 million non-reversionary common fund and does ***not*** include a reverter or clear sailing provision – they spent the months that followed documenting the New Settlement, which is now set forth in the New Settlement Agreement.  *See* Ex. 1.

- 44 -

285.    Class Counsel also prepared the comprehensive papers that correspond to the present motion before the Court for preliminary approval of the New Settlement. Class Counsel deliberately included extensive detail more akin to that included in a motion for final approval of a settlement to ensure that the Court has any and all information it needs to assure itself that the New Settlement is fair, reasonable, and adequate and does not include any of the indicators that previously concerned the Ninth Circuit and this Court about the Original Settlement. Many hours have been expended by Class Counsel to prepare these papers—hours for which they are not seeking attorneys' fees or litigation costs.

286.    During this period, the Parties submitted Joint Status Reports, which advised the Court of the current status of their efforts to resolve the litigation and present the New Settlement. (ECF Nos. 803, 805.)

**2011 – 2019:       Class Counsel's Reported Hours and Lodestar Through July 23, 2019.**

(November 1, 2011- July 23, 2019)

287.    As reported to the Court on July 23, 2019, ***Class Counsel's combined efforts from late 2011 through July 2019*** (now more than three years ago) translated into approximately 20,319.65 reported working hours and a total combined then current lodestar of $11,498,806.80 (historical lodestar of approximately $11,486,838.80) and expenses of $978,671.10 by the law firms that worked on substantive aspects of this litigation during its pendency.

288.    The reported combined lodestar *only included time from November 1, 2011 (the appointment of co-lead counsel) through July 23, 2019*, and did not include the hours of additional time Class Counsel would ultimately expend in furtherance of final Settlement approval and administration of the Original Settlement (including the original motion for final approval and then later the renewed motion and motion for reconsideration post remand), which would necessarily increase the combined lodestar. (The lodestar also did not include the hours of additional time that Class Counsel expended in connection with

- 45 -

1   the Objector's appeal of the settlement, the discovery sought by the Objector, or his

2   sanctions motions to this Court and the Ninth Circuit.  Nor does it include the hours of

3   additional time that Class Counsel expended to negotiate the New Settlement.)

4   289.   On July 23, 2019, Class Counsel filed the Joint Declaration of Henry J. Kelston and Adam

5   J. Levitt In Support of Plaintiffs' Motion for Award of Attorneys' Fees, Expenses, and

6   Representative Plaintiffs' Service Awards.  (ECF No. 663.) ("2019 Joint Declaration").

7   **Milberg LLP, Milberg Tadler Phillips Grossman LLP, Tadler Law LLP**

8   290.   Attached to the 2019 Joint Declaration, ECF No. 663, as Exhibit A is the sworn affidavit

9   of Milberg LLP, Milberg Tadler Phillips Grossman LLP, and Tadler Law LLP (ECF No.

10   663-1), attesting to the time and expenses the law firm spent on this litigation from

11   November 1, 2011, through July 23, 2019.  The sworn affidavit includes a schedule with

12   the detailed summary indicating the amount of time spent by the partners, associates,

13   other attorneys, and professional support staff at the firm who were involved in the

14   litigation as well as a detailed summary of expenses incurred.

15   **Milberg Phillips Grossman**

16   291.   Attached to the 2019 Joint Declaration as Exhibit B is the sworn affidavit of Milberg

17   Phillips Grossman filed in July 2019 (ECF No. 663-2), attesting to the time and expenses

18   the law firm spent on this litigation from November 1, 2011, through July 23, 2019.  The

19   sworn affidavit includes a schedule with the detailed summary indicating the amount of

20   time spent by the partners, associates, other attorneys, and professional support staff at the

21   firm who were involved in the litigation as well as a detailed summary of expenses

22   incurred.

23   **DiCello Levitt LLC**

24   292.   Attached to the 2019 Joint Declaration as Exhibit C is the sworn affidavit of DiCello

25   Levitt Gutzler LLC, now known as DiCello Levitt LLC (ECF No. 663-3), attesting to the

26   time and expenses the law firm spent on this litigation from November 1, 2011, through

27   July 23, 2019.   The sworn affidavit includes a schedule with the detailed summary

28

- 46 -

indicating the amount of time spent by the partners, associates, other attorneys, and professional support staff at the firm who were involved in the litigation as well as a detailed summary of expenses incurred

**Grant & Eisenhofer P.A.**

293.  Attached to the 2019 Joint Declaration as Exhibit D is the sworn affidavit of Grant & Eisenhofer P.A. (ECF No. 663-4), attesting to the time and expenses the law firm spent on this litigation from November 1, 2011, through July 23, 2019.  The sworn affidavit includes a schedule with the detailed summary indicating the amount of time spent by the partners, associates, other attorneys, and professional support staff at the firm who were involved in the litigation as well as a detailed summary of expenses incurred.

**Wolf Haldenstein Adler Freeman & Herz LLP**

294.  Attached to the 2019 Joint Declaration as Exhibit E is the sworn affidavit of Wolf Haldenstein Adler Freeman & Herz LLP (ECF No. 663-5), attesting to the time and expenses the law firm spent on this litigation from November 1, 2011, through July 23, 2019.  The sworn affidavit includes a schedule with the detailed summary indicating the amount of time spent by the partners, associates, other attorneys, and professional support staff at the firm who were involved in the litigation as well as a detailed summary of expenses incurred.

**Steyer Lowenthal Boodrooks Alvarez & Smith LLP**

295.  Attached to the 2019 Joint Declaration as Exhibit F is the sworn affidavit of Steyer Lowenthal Boodrooks Alvarez & Smith LLP (ECF No. 663-6), attesting to the time and expenses the law firm spent on this litigation from November 1, 2011, through July 23, 2019.  The sworn affidavit includes a schedule with the detailed summary indicating the amount of time spent by the partners, associates, other attorneys, and professional support staff at the firm who were involved in the litigation as well as a detailed summary of expenses incurred.

CASE NO. CV 11-05379-CJC (AGRX)
JOINT DEC ISO PLS' MOT FOR PRELIM.
APPROVAL OF SETTLEMENT

1

**Reese LLP**

2   296.   Attached to the 2019 Joint Declaration as Exhibit G is the sworn affidavit of Reese LLP

3   (ECF No. 663-7), attesting to the time and expenses the law firm spent on this litigation

4   from November 1, 2011, through July 23, 2019.  The sworn affidavit includes a schedule

5   with the detailed summary indicating the amount of time spent by the partners, associates,

6   other attorneys, and professional support staff at the firm who were involved in the

7   litigation as well as a detailed summary of expenses incurred.

8   297.   The total hours and lodestar *from November 1, 2011 through July 23, 2019* as reported

9   by each affiant is summarized in the following chart:

| Firm | Hours | Lodestar |
|---|---|---|
| DiCello Levitt Gutzler LLC (n/k/a DiCello Levitt LLC) | 828.90 | $669,789.50 |
| Milberg LLP/Milberg Tadler Phillips Grossman LLP/Tadler Law LLP | 12,190.05 | $6,435,841.25 |
| Milberg Phillips Grossman LLP | 6.80 | $4,250.00 |
| Steyer Lowenthal Boodrookas Alvarez & Smith LLP | 808.20 | $487,688.50 |
| Grant & Eisenhofer P.A. | 5,381.60 | $3,284,462.00 |
| Wolf Haldenstein Adler Freeman & Herz LLP | 878.60 | $438,913.00 |
| Reese LLP | 225.50 | $177,862.50 |
| **TOTAL LODESTAR** | **20,319.65** | **$11,498,806.80** |

**2019 − 2022:   Hours and Lodestar After July 23, 2019 Have Not Been Presented to the Court.**

298.   Class Counsel have spent many additional hours working on this litigation since the July

23, 2019 Original Settlement final approval filing.

299.   The hours, lodestar and expenses for the work set forth in the preceding paragraphs, from

July 2019 to the present are not included in the totals previously presented to the Court.

At this point, Class Counsel are determined to focus on the relief to the classes and are

not seeking any of their attorneys' fees.  Further, Class Counsel are only seeking the

expenses they had previously presented to the Court in 2019.

- 48 -

300.     Extensive time, effort, and expenses were incurred in connection with oral argument in support of final approval of the Original Settlement, the Objector's ensuing appeal, discovery, and multiple motions for sanctions (one of which was denied and the other of which was abandoned by the Objector); the renewed motion for final approval of the Original Settlement and the motion for reconsideration.  Class Counsel has spent many additional hours working to negotiate the New Settlement and prepare the necessary papers to present the New Settlement to the Court for approval as outlined above and in preparation for these proceedings.  More time, effort, and expenses will be incurred by Class Counsel through the conclusion of this litigation.  Again, Class Counsel are not seeking attorneys' fees, but rather, only litigation costs and expenses from the New Settlement fund.

**2011 – 2019:**          <u>**Class Counsel's Total Costs and Expenses Through July 23, 2019.**</u>

301.     Through July 23, 2019, the date Class Counsel filed the original motion for final settlement approval and award of attorneys' fees and expenses, Class Counsel had incurred a total of $978,671.10 in unreimbursed costs and expenses in this litigation.  Class Counsel advanced these out-of-pocket costs and have yet to be reimbursed for them.

302.     These costs and expenses include money spent on the following: expert witness fees, external and internal reproduction of documents produced in the case, document hosting platform costs, travel expenses, court filing fees, computer research, telephone, postage, delivery costs, making court appearances, and paying for transcripts.  The sworn affidavits of counsel, which were previously filed with the Court on July 23, 2019 (ECF No. 663, and exhibits attached thereto) attest to the costs and expenses incurred while litigating this matter.  The total unreimbursed costs and expenses do ***not*** include additional costs and expenses Class Counsel incurred since July 23, 2019 through the present, including for travel to and from the Central District of California for the original final approval hearing for the Original Settlement, the appeal, discovery, and

- 49 -

1     (unsuccessful) sanction motions filed by Objector Henderson, the proceedings post-

2     reversal of the final approval order, the negotiation of the New Settlement, and expenses

3     associated with the presentment of the New Settlement for preliminary approval.  If the

4     Court preliminarily approves the New Settlement, additional costs will be incurred by

5     Class Counsel through and including a motion for final approval of the New Settlement.

6     None of these litigation costs or expenses are being sought by Class Counsel.

7   303.     The total costs and expenses reported by each affiant through July 23, 2019, is

8     summarized in the following chart:

| Firm | Expenses |
|---|---|
| DiCello Levitt Gutzler LLC (n/k/a DiCello Levitt LLC) | $34,086.86 |
| Milberg LLP/Milberg Tadler Phillips Grossman LLP/Tadler Law LLP | $605,432.70 |
| Steyer Lowenthal Boodrookas Alvarez & Smith LLP | $10,944.65 |
| Grant & Eisenhofer P.A. | $313,633.15 |
| Wolf Haldenstein Adler Freeman & Herz LLP | $12,074.99 |
| Reese LLP | $2,498.75 |
| **TOTAL EXPENSES** | **$978,671.10** |

18   304.     The costs and expenses that Class Counsel has incurred through July 23, 2019, in this

19     litigation were reasonable and appropriate for litigation of this size and duration.  Class

20     Counsel took steps to coordinate their work and to avoid duplicative costs.  All litigation

21     costs and expenses have yet to be reimbursed or paid.  Class Counsel (and the other firms)

22     advanced all costs and expenses except for the few categories of legal service provider

23     costs that were deferred.  Class Counsel do not seek any increase in these expenses to

24     account for the time, value of money, or inflation for the dollars that were advanced or

25     deferred over the eleven years of litigation in this case.  Rather, Class Counsel simply

26     seeks dollar-for-dollar the amounts that were advanced and deferred as through July 23,

27     2019. *See* ECF No. 663 at 6, 663-1 at 10-11, 663-3 at 7, 663-4 at 7, 663-5 at 7, 663-6 at

- 50 -

7, 663-7 at 7.   Importantly, these expenses include expert witness costs to develop theories which were upheld on appeal by the Ninth Circuit.  *See Briseño v. Conagra Foods, Inc.*, 674 Fed. Appx. 654 (9th Cir. 2017).  Reimbursement of the costs reasonably expended for

305.   Class Counsel is requesting that the Court award them litigation costs and expenses in the amount of $978,671.10.  Reimbursement of litigation costs and expenses is sought by Class Counsel from the New Settlement fund.

**Representative Plaintiffs' Service Awards**

306.   Class Counsel seek Representative Plaintiffs' Service Awards of $3,000 for each the six Plaintiffs who was deposed in this litigation and $1,000 for each of the seven Plaintiffs who served as representatives but were not deposed, for a total aggregate service award amount of $25,000.

307.   Each of the Representative Plaintiffs has been supportive and involved in this lengthy litigation, including reviewing pleadings, responding to discovery requests, preparing for and testifying at depositions, communicating with counsel, and approving the terms of the both Settlement Agreements.  *See* ECF No. 743-7 at 219-242.  They have been involved in every step of the litigation *for over a decade*—participating in discovery, reviewing settlement documents, communicating with counsel, and, in some cases, sitting for lengthy depositions—and the modest service awards that have been requested are reasonable in this case.

308.   The Service Awards will compensate the Representative Plaintiffs for their time and effort and for the risks they assumed in prosecuting this Action against Conagra for nearly eleven years through the submission of this motion for preliminary approval of the New Settlement.

Class Counsel Ariana J. Tadler, Adam J. Levitt, and David E. Azar, jointly declare under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

CASE NO. CV 11-05379-CJC (AGRX)
JOINT DEC ISO PLS' MOT FOR PRELIM.
APPROVAL OF SETTLEMENT

1

2

3    Dated: September 30, 2022                    Respectfully submitted,

4

5                                               **MILBERG COLEMAN BRYSON PHILLIPS**

6                                               **GROSSMAN PLLC**
                                                DAVID E. AZAR (SBN 218319)
7                                               280 South Beverly Drive, Suite PH
                                                Beverly Hills, California  90212
8                                               Telephone: (213) 617-1200
                                                dazar@milberg.com
9

10

11                                              **TADLER LAW LLP**
                                                ARIANA J. TADLER (*pro hac vice*)
12                                              22 Bayview Avenue, Suite 200
                                                Manhasset, New York  11030
13                                              Telephone: (212) 946-9300
                                                atadler@tadlerlaw.com
14

15

16                                              **DiCELLO LEVITT LLC**
                                                ADAM J. LEVITT (*pro hac vice*)
17                                              Ten North Dearborn Street, Sixth Floor
                                                Chicago, Illinois  60602
18                                              Telephone: (312) 214-7900
                                                alevitt@dicellolevitt.com
19

20                                              *Class Counsel*

21

22

23

24

25

26

27

28
                                                    - 52 -

**CERTIFICATE OF SERVICE**

I, David E. Azar, an attorney, hereby certify that on September 30, 2022,  I caused a true and correct copy of the foregoing **JOINT DECLARATION OF ARIANA J. TADLER, ADAM LEVITT, AND DAVID AZAR IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF NEW SETTLEMENT, APPROVAL OF FORM AND MANNER OF NOTICE, APPROVAL TO NOTICE THE CLASSES, AND SETTING FINAL SETTLEMENT SCHEDULE AND DATE FOR FINAL APPROVAL HEARING** to be filed and served electronically via the Court's CM/ECF system.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.


 */s/ David E. Azar*
 David E. Azar

CASE NO. CV 11-05379-CJC (AGRX)
JOINT DEC ISO PLS' MOT FOR PRELIM.
APPROVAL OF SETTLEMENT

# EXHIBIT 1

JOINT DECLARTION OF CLASS COUNSEL IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF THE
SETTLEMENT, APPROVAL OF FORM AND MANNER OF
NOTICE, APPROVAL TO NOTICE THE CLASSES, AND SETTING
FINAL SETTLEMENT SCHEDULE AND DATE FOR FINAL
APPROVAL HEARING PURSUANT TO FED. R. CIV. P. 23(e)(1)

*In re Conagra Foods, Inc.*, No. CV 11-05379-CJC (AGRx), MDL
No. 2291 (C.D. Cal.)

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
DAVID E. AZAR (SBN 218319)
280 S. Beverly Drive, Suite PH
Beverly Hills, California  90212
Telephone: (213) 617-1200
dazar@milberg.com

**TADLER LAW LLP**
ARIANA J. TADLER (*pro hac vice*)
22 Bayview Avenue
Suite 200
Manhasset, New York 11030
Telephone: (212) 946-9300
atadler@tadlerlaw.com

**DICELLO LEVITT LLC**
ADAM J. LEVITT (*pro hac vice*)
Ten North Dearborn Street,
   Sixth Floor
Chicago, Illinois  60602
Telephone: (312) 214-7900
alevitt@dicellolevitt.com

*Appointed Class Counsel*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| IN RE CONAGRA FOODS, INC. | Case No. CV 11-05379-CJC (AGRx) |
| | MDL No. 2291 |
| | <u>CLASS ACTION</u> |

**SETTLEMENT AGREEMENT AND RELEASE**

TABLE OF EXHIBITS

Exhibit A: Order Directing Notice to Class Members

Exhibit A-I : Claim Form

Exhibit A-2: Publication Notice

Exhibit A-3: Posted Notice

Exhibit A-4: Notice Plan

Exhibit B: Final Approval Order

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement ("Settlement" or "Agreement") is made and entered into as of the ___ day of September 2022 by and among the Class Representatives, individually and as representatives of all Class Members, by and through Class Counsel, and Conagra Brands, Inc. (formerly ConAgra Foods, Inc.) ("Conagra"), by and through counsel (collectively referred to as the "Parties"). The Parties intend this Agreement to resolve, discharge, and settle the Released Claims of Class Members fully, finally, and forever in accordance with the terms and conditions set forth below.

### WITNESSETH

WHEREAS, there is a multidistrict litigation pending in the United States District Court for the Central District of California, styled *In Re ConAgra Foods, Inc.* (MDL No. 2291), composed of actions seeking injunctive relief and damages relating to the marketing, advertising, and sale of Wesson Oil Products allegedly made from Genetically Modified Ingredients ("GMOs") as "Natural"[1];

WHEREAS, Conagra denies any and all claims asserted against it, and has asserted various defenses that it believes are meritorious;

WHEREAS, the Parties' agree that this Agreement shall not be deemed or construed as an admission or as evidence of any violation of any statute or law, or of any liability or wrongdoing by any of the Released Parties, or of the merit of any of the claims or allegations alleged in the Action, or otherwise, or the merit of any of the potential or asserted defenses to those allegations, or as a waiver of any such defense;

WHEREAS, the Parties previously engaged in extensive arm's-length and adversarial settlement discussions that included two separate mediations; the first before the Honorable

---

[1]    Capitalized terms shall have the meaning ascribed to them in the Definitions in Section I below.

Edward A. Infante (Ret.), former United States Magistrate Judge, in person on January 29, 2018, and thereafter by telephone through March 19, 2018, that failed to reach a settlement; followed by a successful mediation before the Honorable Douglas F. McCormick, United States Magistrate Judge, in person and by telephone from June 8, 2018 through November 12, 2018, which ultimately resulted in a settlement that was reversed by the Ninth Circuit. *See Briseño v. Henderson*, 998 F.3d 1014 (9th Cir. 2021). The parties have reviewed the Ninth Circuit's opinion thoroughly, as well as this Court's order concerning the previously-presented settlement, in order to address the concerns presented by those rulings.

WHEREAS, the Parties have conducted a thorough examination and investigation of the facts and the law relating to the asserted and potential claims and defenses concerning Conagra's marketing and sale of the Wesson Oil Products and assessed the various risks of litigation including risks from any future appeals in the Action;

WHEREAS, Class Counsel has concluded, after extensive factual examination and investigation and after careful consideration of the circumstances, including the claims asserted in the Complaint, and the possible legal and factual defenses thereto, and the Court's commentary regarding the likelihood of success of those claims, that it would be in the Class Members' best interests to enter into this Agreement to avoid the uncertainties, burdens, risks, and delays inherent in litigation and subsequent appeals and to assure that the substantial benefits reflected in this Agreement are obtained for Class Members in an expeditious manner; and, further, that this Agreement is fair, reasonable, adequate, and in the best interests of the Class Representatives and the Class Members;

WHEREAS, Conagra, despite its belief that it has strong defenses to the claims described in this Agreement, has agreed to enter into this Agreement to reduce and avoid the further expenses, burdens, risks, and inconveniences of protracted litigation and subsequent

appeals and to resolve finally and completely Class Representatives' and other Class Members' claims;

WHEREAS, the Parties have considered the Court's decision not to approve a previously proposed settlement and the reasons therefor and believe they have identified solutions to satisfy Fed. R. Civ. P. 23 and the Court's expectations;

NOW, THEREFORE, the Parties agree that the Action shall be settled, compromised, and/or dismissed with prejudice on the terms and conditions set forth in this new Agreement, subject to the Court's approval of this Agreement as a fair, reasonable, and adequate settlement under Fed. R. Civ. P. 23(e).

## 1. <u>CLASS DEFINITION</u>

**1.1** By Court's Order Granting in Part and Denying in Part Plaintiffs' Amended Motion for Class Certification [ECF No. 545], eleven statewide classes were certified under Fed. R. Civ. P. 23(b)(3) to pursue the following claims:

- <u>California:</u> (1) violations of the California Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.* ("UCL"), California Consumer Legal Remedies Act, California Civil Code §§ 1750, *et seq.* ("CLRA"), and California Business & Professions Code §§ 17500, *et seq.* ("FAL"); and (2) breach of express warranty (California Commercial Code § 2313)

- <u>Colorado:</u> (1) violation of the Colorado Consumer Protection Act, Colorado Revised Statutes §§ 6-1-101, *et seq.* ("CCPA"); (2) breach of express warranty (Colorado Revised Statutes § 4-2-313); and (3) breach of implied warranty (Colorado Revised Statutes § 4-2-314)

- <u>Florida:</u> (1) violation of the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes Annotated §§ 501.201, *et seq.* ("FDUTPA")

3

- <u>Illinois:</u> (1) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Illinois Compiled Statutes §§ 505/1, *et seq.* ("ICFA") and (2) unjust enrichment

- <u>Indiana:</u> (1) unjust enrichment and (2) breach of implied warranty (Indiana Code § 26-1-2-314)

- <u>Nebraska:</u> (1) unjust enrichment and (2) breach of implied warranty (Nebraska Revised Statutes § 2-314)

- <u>New York:</u> (1) violation of the New York Consumer Protection Act, New York General Business Law §§ 349, *et seq.* ("GBL"); and (2) breach of express warranty (N.Y. U.C.C. Law § 2-313)

- <u>Ohio:</u> (1) violation of the Ohio Consumer Sales Practices Act, Ohio Revised Code §§ 1345.01, *et seq.* ("OCSPA")

- <u>Oregon:</u> (1) violation of the Oregon Unfair Trade Practices Act, Oregon Revised Statutes §§ 646.605, *et seq.* ("OUTPA"); and (2) unjust enrichment

- <u>South Dakota:</u> (1) violation of the South Dakota Deceptive Trade Practices and Consumer Protection Law, South Dakota Codified Laws §§ 37 24 1, *et seq.* ("SDDTPL"); and (2) unjust enrichment

- <u>Texas:</u> (1) violation of the Texas Deceptive Trade Practices - Consumer Protection Act, Texas Business & Commerce Code §§ 17.41, *et seq.* ("TDTPA").

**1.2**   The following Classes, which were limited by the applicable statute of limitations periods established by the laws of the eleven states, include the following persons, who will be notified of this proposed settlement and their rights under it:

**1.2.1** <u>California Class:</u> all natural persons who resided in the State of California and purchased Wesson Oil Products in California, for personal, noncommercial use, between June 28, 2007 and July 1, 2017 ("California Class Period").

**1.2.2** <u>Colorado Class:</u> all natural persons who resided in the State of Colorado and purchased Wesson Oil Products in Colorado, for personal, non-commercial use, between January 12, 2009 and July 1, 2017 ("Colorado Class Period").

**1.2.3** <u>Florida Class:</u> all natural persons who resided in the State of Florida and purchased Wesson Oil Products in Florida, for personal, non-commercial use, between January 12, 2008 and July 1, 2017 ("Florida Class Period").

**1.2.4** <u>Illinois Class:</u> all natural persons who resided in the State of Illinois and purchased Wesson Oil Products in Illinois, for personal, non-commercial use, between January 12, 2007 and July 1, 2017 ("Illinois Class Period").

**1.2.5** <u>Indiana Class:</u> all natural persons who resided in the State of Indiana and purchased Wesson Oil Products in Indiana, for personal, non-commercial use, between January 12, 2006 and July 1, 2017 ("Indiana Class Period").

**1.2.6** <u>Nebraska Class:</u> all natural persons who resided in the State of Nebraska and purchased Wesson Oil Products in Nebraska, for personal, non-commercial use, between January 12, 2008 and July 1, 2017 ("Nebraska Class Period").

**1.2.7**   New York Class: all natural persons who resided in the State of New York and purchased Wesson Oil Products in New York, for personal, noncommercial use, between January 12, 2008 and July 1, 2017 ("New York Class Period").

**1.2.8**   Ohio Class: all natural persons who resided in the State of Ohio and purchased Wesson Oil Products in Ohio, for personal, non-commercial use, between January 12, 2010 and July 1, 2017 ("Ohio Class Period").

**1.2.9**   Oregon Class: all natural persons who resided in the State of Oregon and purchased Wesson Oil Products in Oregon, for personal, non-commercial use, between January 12, 2006 and July 1, 2017 ("Oregon Class Period").

**1.2.10**   South Dakota Class: all natural persons who resided in the State of South Dakota and purchased Wesson Oil Products in South Dakota, for personal, non-commercial use, between January 12, 2006 and July 1, 2017 ("South Dakota Class Period").

**1.2.11**   Texas Class: all natural persons who resided in the State of Texas and purchased Wesson Oil Products in Texas, for personal, non-commercial use, between January 12, 2010 and July 1, 2017 ("Texas Class Period").

**1.3**   Excluded from the Classes are (a) governmental entities; (b) Conagra, and its affiliates, subsidiaries, employees, current and former officers, directors, agents, and representatives; (c) the members of the Court and its staff; and (d) Opt-Outs.

## 2.   **OTHER DEFINITIONS**

As used in this Agreement and its exhibits, the following terms shall have the meanings set forth below. Terms used in the singular shall include the plural and vice versa.

**2.1** "Action" means the multidistrict litigation pending in the United States District Court for the Central District of California, styled *In Re ConAgra Foods, Inc.* (MDL No. 2291).

**2.2** "Administrative Costs" means all costs and expenses actually incurred by the Settlement Administrator in administering the Settlement, including the publication of Class Notice, establishment of the Settlement Website, providing CAFA notice, the processing, handling, reviewing, and paying of claims made by Claimants, and paying taxes and tax expenses related to the Settlement Fund (including all federal, state, or local taxes of any kind and interest or penalties thereon, as well as expenses incurred in connection with determining the amount of and paying any taxes owed and expenses related to any tax attorneys and accountants), with all such costs and expenses to be paid from the Settlement Fund. All taxes on the income of the Settlement Fund, and any costs or expenses incurred in connection with the taxation of the Settlement Fund shall be paid out of the Settlement Fund, shall be considered to be an Administrative Cost, and shall be timely paid by the Settlement Administrator without prior order of the court. The Parties shall have no liability or responsibility for the payment of any such taxes.

**2.3** "Agreement" means this Class Action Settlement Agreement, together with the exhibits attached to this Agreement, which are incorporated in this Agreement by reference.

**2.4** "CAFA Notice" means the notice of this Settlement to be served by the Settlement Administrator upon state and federal regulatory authorities as required by Section 3 of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

**2.5** "Claim Form" means an electronic or paper document containing the information and fields substantially in the form set forth in Exhibit A-3. The Claim Form shall be submitted under penalty of perjury, based on the Class Members' knowledge, information, and belief, to the Settlement Administrator.

**2.6** "Claims Deadline" means the final date to submit a Claim Form, which is one hundred and seventy-five (175) days after first publication of the Class Notice pursuant to the Notice Plan.

**2.7** "Class Counsel" means DiCello Levitt Gutzler LLC, Tadler Law LLP, and Milberg Coleman Bryson Phillips Grossman LLP.

**2.8** "Class Notice" means notice to the Classes of this Agreement substantially in the form and following the procedures described in the Notice Plan and established by order of the Court and to be administered by the Settlement Administrator under the direction of the Parties and jurisdiction of the Court. "Class Notice" includes both a summary notice substantially in the form of Exhibit A-1 ("Publication Notice") and a posted notice substantially in the form of Exhibit A-2 ("Posted Notice").

**2.9** "Class Member" means a Person who falls within the definition of one of the Classes and who has not properly executed and timely filed a request for exclusion from the Settlement.

**2.10** "Class Representatives" means collectively (a) Robert Briseño and Michele Andrade for the California Class; (b) Jill Crouch for the Colorado Class; (c) Julie Palmer for the Florida Class; (d) Pauline Michael for the Illinois Class; (e) Cheri Shafstall for the Indiana Class; (f) Dee Hooper-Kercheval for the Nebraska Class; (g) Kelly McFadden and Necla Musat for the New York Class; (h) Maureen Towey for the Ohio Class; (i) Erika Heins for the Oregon Class; (j)

Rona Johnston for the South Dakota Class; and (k) Anita Willman for the Texas Class.

**2.11** "Complaint" means the Second Consolidated Amended Class Action Complaint, filed as ECF No. 143 in this Action.

**2.12** "Court" means the Honorable Cormac J. Carney, or if he is unavailable, another judge in the Central District of California, the transferee district, as designated by the Judicial Panel on Multidistrict Litigation to preside over the Action.

**2.13** "Defendant" means Conagra Brands, Inc.

**2.14** "Defendant's Counsel" means Alston & Bird LLP.

**2.15** "Fairness Hearing" means the hearing conducted by the Court in connection with determining the fairness, adequacy, and reasonableness of this Agreement under Fed. R. Civ. P. 23(e).

**2.16** "Fee and Expense Application" means the application for the award of attorneys' fees, costs, and/or expenses to Class Counsel and other counsel who claim to have performed work for the common benefit of Class Members.

**2.17** "Fee and Expense Award" means the amount of attorneys' fees and/or reimbursement of expenses and costs awarded by the Court to Class Counsel (for distribution to Class Counsel and other counsel), which will be paid out of the Settlement Fund within thirty (30) days after the Final Effective Date.

**2.18** "Final Effective Date" means one of the following conditions has occurred: (1) if no timely appeal of the Final Approval Order by the Court is taken, then upon expiration of the time for any appeal, rehearing, or certiorari of the Final Approval Order; or, (2) if there are any appeals of the Final Approval Order, then (i) all appellate courts with jurisdiction affirm the Final Approval Order and the time for any appeal, rehearing, or certiorari of the affirmance has

expired; or (ii) the appeal is dismissed or denied such that the Final Approval Order is no longer subject to further appeal, rehearing, or certiorari.

2.19    "Final Approval" means the Court's issuance of an order and judgment granting final approval of this Agreement pursuant to Fed. R. Civ. P. 23€. Final Approval and the Final Approval Order need not include the Fee and Expense Award. A proposed Final Approval Order substantially in the form to be entered approving the Settlement is attached as Exhibit B.

2.20    "Household" means all persons residing at the same physical address.

2.21    "Motion for Order Directing Notice" means the motion or motions filed by the Parties pursuant to Fed. R. Civ. P. 23(e) for an Order Directing notice to Class Members.

2.22    "Notice Plan" means the plan to be approved by the Court for providing Class Notice in accordance with Fed. R. Civ. P. 23(e). The Notice Plan shall be in substantially the form of the proposed Notice Plan as set forth in Exhibit A.

2.23    "Objection Deadline" means the date by which Class Members must file with the Court a written statement objecting to any terms of the Settlement or to Class Counsel's request for fees or expenses, and shall be one hundred and fourteen (114) days after the Settlement Notice Date.

2.24    "Opt-Out" means any Person who timely and properly submits a request for exclusion from the Settlement in accordance with the procedures set forth in this Agreement and approved by the Court and did not timely and properly revoke the request.

2.25    "Opt-Out Deadline" means the deadline by which a Class Member must exercise his or her option to opt out of the settlement so as not to release his or

her claims as part of the Released Claims, and shall be one hundred and fourteen (114) days after the Settlement Notice Date.

2.26    "Order Directing Notice" means the order entered by the Court directing notice to Class Members, approving the Notice Plan, appointing the Settlement Administrator, and setting a schedule for the Final Approval process. A proposed Order Directing Notice substantially in the form to be entered directing notice to the Classes is attached as Exhibit A.

2.27    "Posted Notice" means the part of the Notice Plan that includes a notice of the proposed Settlement directed at Class Members to be posted on the Settlement Website, subject to approval of the Court, and substantially in the form attached to this Agreement as Exhibit A-2.

2.28    "Publication Notice" means the part of the Notice Plan that includes a summary form of electronic and/or print notice of the proposed Settlement to be published in certain hard copy or electronic formats directed at Class Members, subject to approval of the Court, and substantially in the form attached to this Agreement as Exhibit A-1.

2.29    "Released Claims" means any and all claims released by this Agreement consistent with Section 8, herein.

2.30    "Released Parties" means Conagra Brands, Inc., along with its parent(s), and each of its predecessors, affiliates, assigns, successors, related companies, subsidiary companies, holding companies, insurers, reinsurers, current and former attorneys, and their current and former members, partners, officers, directors, agents, and employees, in their capacity as such.

2.31    "Settlement Administrator" means JND Legal Administration or any other qualified third-party administrator selected and/or approved by the Court.

**2.32** "Settlement Fund" means the qualified settlement fund to be established by the Settlement Administrator and funded by Conagra in the amount of $3,000,000, in the form of a non-reversionary common fund and is to be established in accordance with 26 C.F.R. §§1.468B-1(c) and (e)(1).

**2.33** "Settlement Payment" means those Settlement Funds to be paid to Class Members.

**2.34** "Settlement Website" means the website established and maintained by the Settlement Administrator, pursuant to the Order Directing Notice.

**2.35** "Valid Claims Form(s)" means timely submitted and complete claims form(s), signed by the Class Member, and verified by the Settlement Administrator to meet all the requirements set forth herein and to be free of fraud.

**2.36** "Wesson Oil Products" means Wesson brand cooking oils, including Wesson Vegetable Oil, Wesson Canola Oil, Wesson Corn Oil, and Wesson Best Blend, all of which bore a "Natural" claim on label during the applicable Class Periods.

## 3.    **SETTLEMENT FUND AND CONSIDERATION**

**3.1**    Settlement Consideration.  Conagra agrees to fund a non-reversionary common fund, to be established by the Settlement Administrator, in an amount of $3,000,000 (the "Settlement Fund"). Conagra is not obligated to pay any further costs or amounts associated with this Agreement. The Settlement Fund shall be used to meet the monetary obligations to Class Members under this Agreement, pay all Settlement Payments, Fee and Expense Award, Administrative Costs, service awards, and any other costs or expenses related to this Agreement.

**3.2**    Creation and Administration of Qualified Settlement Fund.  The Settlement Administrator is authorized to establish the Settlement Fund under 26 C.F.R. §§1.468B-1(c) and (e)(1), to act as the "administrator" of the Settlement Fund

pursuant to 26 C.F.R. §1.468B-2(k)(3), and to undertake all duties as Settlement Administrator in accordance with the Treasury Regulations promulgated under §1.468B of the Internal Revenue Code of 1986. All costs incurred by the Settlement Administrator operating as administrator of the Settlement Fund shall be construed as Administrative Costs and shall be borne solely by the Settlement Fund. Interest on the Settlement Fund shall inure to the benefit of the Class.

**3.3**     Funding of Settlement Fund.  Within twenty-five (25) days after Class Notice commences, Conagra shall pay $3,000,000 into the qualified Settlement Fund established by the Settlement Administrator. Conagra shall not be responsible or otherwise obligated to make any payment or cover any costs associated with this Agreement beyond funding the Settlement Fund as described herein.

**3.4**     Conagra's funding of the Settlement Fund shall relieve Conagra of any liability with respect to the authentication of Claim Forms, the allocation of the settlement proceeds among Class Members, the timing and method of Settlement Fund distributions, and the distribution of any un-cashed distribution.

**3.5**     No portion of the Settlement Fund shall be distributed prior to the Final Effective Date except for those attributable to Administrative Costs.

**4.**     **RECOVERY FOR CLASS MEMBERS**

**4.1**     Class Recovery.  Payment of settlement compensation to Class Members shall be made by the Settlement Administrator on a claims-made basis and from the Settlement Fund on the basis of a Valid Claims Form or direct payment to the extent the Settlement Administrator is provided with information equivalent to

that in the Claim Form to identify any individual as a Class Member and the number of qualifying units they purchased.

4.1.1   Class Members must submit a Claim Form that the information provided is true and correct to the best of each Class Member's knowledge, information, and belief, stating:

(a)   Name and address of Class Member's Household;

(b)   Number of units of Wesson Oil Products purchased during the applicable Class Period;

(c)   Purchases were made in one of the applicable states (California; Colorado; Florida; Illinois; Indiana; Nebraska; New York; Ohio; Oregon; South Dakota; and Texas);

(d)   State of residency at time of purchases;

(e)   Purchases were for household use and not catering or commercial purposes;

4.1.2   Class Members who timely submit a Valid Claims Form may receive settlement compensation of Fifteen Cents ($0.15) per unit of Wesson Oil Products purchased during the applicable Class Period.

4.1.3   Recovery is limited to one claim per Household, which is defined as all persons residing at the same physical address.

4.1.4   Pro Rata Adjustment of Settlement Compensation.  If the total value of all Valid Claims Forms and amounts identified for direct distribution exceeds or falls short of the funds available for distribution to Class Members (after deducting the portion of Settlement Funds designated for New York and Oregon Class Members), then the amounts of the cash payments will be reduced or increased pro rata, as necessary, to use all

14

of the remaining funds available for distribution to Class Members. Any such pro rata adjustment will be calculated prior to distribution of funds (i.e., will be made in a single distribution).

**4.2** <u>Additional Recovery for New York and Oregon Class Members.</u>

**4.2.1** A portion of the Settlement Fund, specifically $575,000, shall be allocated only to members of the New York and Oregon Classes who submit Valid Claim Forms or are identified for direct distribution, in proportion to the number of units purchased.

**4.2.2** The amount of additional recovery for New York and Oregon Class Members will be adjusted pro rata according to the number of Valid Claim Forms and direct distributions.

**4.2.3** In addition to being subject to the claim requirements set forth above, participation in this fund requires verification by a statement in the Claim Form or otherwise of the city or town in which the purchases were made in either New York or Oregon. The Settlement Administrator has authority to require additional documentation to validate residency.

**4.3** <u>Timing of Distributions to Class Members.</u>   The Settlement Administrator shall pay out Valid Claims Form from the Settlement Fund, in accordance with the terms of this Agreement, commencing thirty (30) days after the Final Effective Date. No distributions to Class Members shall occur until after the Final Effective Date.

**4.4** **Treatment** <u>Of Valid Claims Forms Filed Under The Previously Proposed Settlement</u>:   Unless Class Members who previously submitted Valid Claims Forms opt out of this Settlement, or submit a new Claim Form, the Settlement Administrator will treat all previously submitted Valid Claims

15

Forms as valid claims for the purpose of this Settlement.  For avoidance of doubt, the rationale is that any Class Member who does not opt out is bound by this Settlement if the Court approves it, and their previous Valid Claims Form establishes them as a Class Member and provides all of the information required for a Settlement Payment.

**4.5**  <u>Uncleared Payments</u>. The Settlement Administrator shall follow the California unclaimed property law as to any uncashed distributions remaining in the Settlement Fund after six months after the last distribution to Class Members.

**5.**  <u>**ADDITIONAL SETTLEMENT TERMS AND ADMINISTRATION**</u>

**5.1**  <u>Commitment to Support Agreement</u>.  Class Counsel asserts that it is in the Classes' best interests to consummate this Agreement, and the Parties agree to cooperate with each other and to take all actions reasonably necessary to obtain Court approval of this Agreement.

**5.2**  <u>Motion for Order Directing Notice</u>.  The Parties shall file an Unopposed Motion for Order Directing Notice to the Classes.

**5.3**  <u>Notice to Putative Class Members.</u>  After the Court has entered the Order Directing Notice, notice to Class Members shall be disseminated in such form and manner consistent with the Notice Plan as approved by the Court. Instructions to access the Settlement Website and electronically submit the Claims Form shall be included with the copy of the Class Notice disseminated to putative Class Members and posted on the Settlement Website. Upon request by a Class Member, a hard copy of the Claims Form shall be sent by the Settlement Administrator.

**5.3.1**   The Parties agree that the methods of identifying and providing notice to the Classes set forth in the Notice Plan satisfies the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and any other applicable laws, and constitutes the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto. The Parties will jointly request the Court to approve in the Order Directing Notice the dissemination of notice as set forth in the Notice Plan. The Parties, by written agreement of counsel, may revise the Class Notice and other exhibits to the Settlement Agreement in ways that are not material, or in ways that are appropriate to update those documents for purposes of accuracy.

**5.4**   <u>Cost of Notice and Settlement Administration.</u>   All Administrative Costs will be paid from the Settlement Fund upon Settlement Administrator's submission of an invoice(s) to Class Counsel and Conagra's Counsel, should neither object or otherwise oppose the reasonableness of the invoice(s).

**5.5**   <u>Agreement Not Admissible.</u>   Neither this Agreement nor any statement, transaction, or proceeding in connection with the negotiation, execution, or implementation of this Agreement is intended to be or may be construed as or deemed to be evidence of an admission or concession by Conagra of any (i) liability or wrongdoing or of the truth of any allegations in the Complaint against Conagra, or (ii) infirmity of, or strength of any alleged defense against, the allegations in the Complaint; and neither this Agreement nor any statement, transaction, or proceeding in connection with the negotiation, execution, or

implementation of this Agreement shall be admissible in evidence for any such purpose in any proceeding.

**5.6**    <u>Settlement Statistics</u>.  The Settlement Administrator shall compile and send to Class Counsel and Conagra reports containing summary statistics detailing the implementation of the Settlement including, without limitation, the Settlement Administrator's fees and expenses, the number of proper and timely Opt-Outs, the number of Claim Forms received, the number of Claim Forms accepted, the number of Claim Forms rejected and the reason for rejection, and the number of Claim Forms determined by the Settlement Administrator to be deficient and the status of processing the deficiencies.

**5.7**    <u>Stay and Resumption of Proceedings</u>.  Contemporaneous with the filing of the Motion for Order Directing Notice, Counsel for the Parties shall (1) request a stay of all proceedings in In Re ConAgra Foods, Inc. (MDL No. 2291), and (2) seek an order from the Court pursuant to the All Writs Act, 28 U.S.C. § 1651, and the Anti-Injunction Act, 28 U.S.C. § 2283, prohibiting the prosecution of any pending or subsequently filed litigation by Class Members arising out of or relating to the Released Claims. Proceedings in the Court arising out of and relating to this Agreement, and any other proceeding necessary to effectuate this Agreement in any other action shall be excepted from the stay. In the event the Court does not give Final Approval to this Agreement, the Final Effective Date does not occur, or this Agreement is otherwise terminated, this Agreement shall be of no further force or effect.

**5.8**    <u>CAFA Notices</u>.  Within ten (10) days after submission of this Agreement to the Court, the Parties agree that the Settlement Administrator shall serve notices of the Settlement on state and federal regulatory authorities as required by Section

3 of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA Notices"). If a state or federal official raises concerns about the Settlement, the Parties and their counsel agree to work together in good faith to resolve those concerns.

5.9    <u>Motion for Final Approval of the Settlement</u>.   The Parties shall jointly seek an order granting final approval of this Agreement pursuant to Fed. R. Civ. P. 23. Class Counsel shall file a Motion for Final Approval of the Settlement, the Fee and Expense Application, and the application for service awards to Class Representatives at least two (2) weeks before the Objection Deadline or as otherwise ordered by the Court. The Parties shall make a Supplemental Filing in Support of Final Approval with a declaration from the Settlement Administrator (with respect to the processing of Claim Forms) within thirty (30) days after the Claims Deadline.

6.    **SETTLEMENT ADMINISTRATION**

6.1    <u>Settlement Administrator</u>.  The administration of the Settlement Fund and the Claims Form shall be subject to the Court's supervision and remain at all times under the exclusive and continuing jurisdiction of the Court. The Settlement Administrator shall issue reports as requested by Class Counsel and Conagra regarding its activities, fees and expenses, and other procedures. Class Counsel or Conagra may raise by written objection filed with the Court any challenge to the procedures instituted by, or the fees and expenses of, the Settlement Administrator with respect to the administration of the Settlement Fund. The Settlement Administrator shall be responsible for disseminating information to Class Members concerning settlement procedures.

6.2    <u>Notice</u>.  The Notice Plan shall satisfy Rule 23 of the Federal Rules of Civil Procedure and be subject to the Court's approval.

**6.2.1**  The Settlement Administrator, in accordance with the Notice Plan and the Order Directing Notice, shall provide all Class Members with the best notice practicable under the circumstances. Conagra represents that it did not sell Wesson Oil Products directly to consumers and therefore does not possess consumer contact information.

**6.2.2**  As directed by the Order Directing Notice, the Settlement Administrator shall establish and maintain the Settlement Website, on which at least the relevant pleadings, settlement documents, any applicable deadlines, and the Posted Notice shall be posted in order to provide information to the Classes of the proposed Settlement.

**6.2.3**  The Settlement Administrator also shall cause the Publication Notice to be published as provided in the Notice Plan and as directed by the Order Directing Notice.

**6.2.4**  All notice contemplated under the Notice Plan shall be issued and completed by the times set forth in the Order Directing Notice, unless otherwise ordered by the Court.

**6.3**  Opting Out of the Settlement.

**6.3.1**  Each Class Member may elect to opt out of the Settlement. Any Class Member who wishes to opt out of the Settlement must do so, in writing, by mailing a request for exclusion to the Settlement Administrator signed by the Class Member (the "Opt-Out Request"). Any such request must be sent to the Settlement Administrator and postmarked by the Opt-Out Deadline.  The Settlement Administrator shall work with Class Counsel to devise a mechanism to allow Class Members to opt out of the Settlement via online means available on the Settlement Website,

ensuring that Opt-Out Requests received via electronic means are valid and submitted by the individual Class Member seeking to be excluded from the Settlement.

6.3.2   The Opt-Out Request must: a) bear the handwritten signature of the Class Member seeking to opt out; b) set out the Class Member's full legal name, valid mailing address, and functioning telephone number; c) state that the Class Member has reviewed and understood the Class Notice and chooses to be excluded from the Settlement; and d) provide the name of and contact information for the Class Member's attorney, if represented.

6.3.3   No person or entity may opt out on behalf of another Class Member.

6.3.4   All requests to opt out that fail to satisfy the requirements of this Section, as well as any additional requirements that the Court may impose, shall be void. No class-wide, mass opt-outs, or opt-outs signed by attorneys are permitted under this Agreement.

6.3.5   Any Class Member who does not properly and timely submit a request to opt out as required in this Agreement shall be deemed to have waived all rights to opt out and shall be deemed a Class Member for all purposes under this Agreement.

6.4   <u>Objecting to the Settlement.</u>

6.4.1   Any Class Member who does not timely and properly opt out of the Settlement may object to the fairness, reasonableness, or adequacy of the proposed Settlement under Federal Rule of Civil Procedure 23. Each Class Member who wishes to object to any term of this Agreement must do so, in writing, by either filing a written objection with the Clerk of

the Court or submitting a written objection to the Settlement Administrator as provided on the Settlement Website. Any such objection must be filed with the Court or submitted to the Settlement Administrator by the Objection Deadline and under the procedures established by the Court. Any such objection must (a) attach copies in advance of any materials that the objector intends to submit to the Court or present at the Fairness Hearing; (b) be personally signed by the Class Member and, if represented by counsel, by his or her counsel; (c) include information or documents sufficient to show that the objector is a Class Member; and (d) clearly state in detail (i) the legal and factual ground(s) for the objection, (ii) the Class Member's name, mailing address, email address, and telephone number, (iii) whether it applies only to the objector, to a specific subset of the class, or to the entire class, (iv) if represented by counsel, such counsel's name, email address, mailing address, and telephone number, and (v) any request to present argument to the Court at the Fairness Hearing (also addressed in Section 6.5).

6.4.2   Any objection that fails to satisfy the requirements of this Section, or that is not properly and timely submitted, may at the Court's discretion be deemed void and waived. The Court shall make the final determination if any objection complies with the requirements of this Section. Any Party may respond to any objection by the date as ordered by the Court.

6.5   <u>Requests to Appear at Final Approval Hearing</u>.

6.5.1   Any Class Member who wishes to appear and be heard in person or by counsel at the Fairness Hearing must make such request by notifying the

Court and the Parties' respective counsel through the Settlement Administrator (as provided on the Settlement Website), subject to the discretion of the Court. Any such request must be filed with the Clerk of the Court and postmarked by the deadline for filing requests to appear and under the procedures established by the Court, and must state the name, address, and telephone number of the Class Member, as well as the name, address, and telephone number of the person that shall appear on his or her behalf. Any request for appearance that fails to satisfy the requirements of this Section, or that has otherwise not been properly or timely submitted, may be deemed by the Court to be ineffective and a waiver of such Class Member's rights to appear and to comment on the Settlement at the Fairness Hearing. Only the Parties, Class Members, or their counsel may request to appear and be heard at the Fairness Hearing. Persons or entities that opt out may not request to appear and be heard at the Fairness Hearing.

7.  **EXCLUSIVE REMEDY/DISMISSAL OF CLAIMS**

     **7.1**   <u>Limitation on Released Party Liability.</u>   No Released Party shall be subject to liability or expense of any kind to any Class Member or their respective counsel, Objector or their respective counsel, or Class Counsel related to the Released Claims or Settlement Payment except as provided in this Agreement.

     **7.2**   <u>Dismissal of Released Claims</u>.   The Parties agree that upon the Final Effective Date of this Agreement, all Released Claims shall be dismissed with prejudice in accordance with the Final Approval Order entered by the Court, including seeking dismissal with prejudice of the Complaint.

8.  **RELEASES AND RESERVATIONS AND COVENANTS NOT TO SUE**

**8.1** In consideration of the benefits described and the provisions contained in this Agreement, all Class Members (regardless of whether a Class Member submits a Claim Form) promise, covenant, and agree that, upon the Final Effective Date and by operation of the Final Approval Order, the Class Members shall release and forever discharge the Released Parties from any liability for all claims of any nature whatsoever in law or in equity, past and present, and whether known or unknown, suspected or claimed, relating to or arising under any federal, state, local, or international statute, regulation, or law (including state consumer fraud, warranty, unjust enrichment laws, codal law, adjudication, quasi-adjudication, tort claims, contract claims, actions, causes of action, declaratory judgment actions, cross-claims, counterclaims, third-party claims, demands, and claims for damages, compensatory damages, liquidated damages, punitive damages, exemplary damages, multiple damages, and other noncompensatory damages or penalties of any kind, fines, equitable relief, injunctive relief, conditional or other payments or interest of any type, debts, liens, costs, expenses and/or attorneys' fees, interest, or liabilities) that have been or could have been brought in connection with Conagra's distribution, labeling, packaging, marketing, advertising, and/or sale of the Wesson Oil Products as "Natural" during the applicable Class Period, subject only to the express exceptions listed in the Reservation of Claims and Rights Section below. Specifically excluded from this release is any claim for bodily injury allegedly suffered in connection with the Wesson Oil Products. Conagra agrees to provide reciprocal and mutual releases to the Class Representatives and Class Members from any liability that was or could have been asserted arising out of or relating in any way to the

institution, prosecution, or settlement of the Action ("Released Defendant's Claims").

8.2     All Class Members covenant and agree that they shall not hereafter seek to sue or otherwise establish liability against any Released Parties based, in whole or in part, on any of the Released Claims. Each Class Member expressly waives and fully, finally, and forever settles and releases any known or unknown, suspected or unsuspected, contingent or non-contingent Released Claims without regard to the subsequent discovery or existence of different or additional facts. The Parties shall cooperate and assist one another in defending against and obtaining the dismissal of any claims brought by Persons seeking to assert claims released under this Agreement. Similarly, Conagra covenants and agrees that it shall not hereafter seek to sue or otherwise establish liability against any Class Representative or Class Member regarding this litigation, or any Released Defendant's Claims that Conagra could have brought as part of this litigation or in litigation concerning distribution, sale, purchase, labeling, packaging, marketing, and/or advertising of the Wesson Oil Products.

8.3     IN ADDITION, EACH CLASS MEMBER HEREBY EXPRESSLY WAIVES AND RELEASES AS TO THE RELEASED CLAIMS, UPON THE FINAL EFFECTIVE DATE, ANY AND ALL PROVISIONS, RIGHTS, AND BENEFITS CONFERRED BY § 1542 OF THE CALIFORNIA CIVIL CODE OR ANY OTHER STATUTE, LAW OR PRINCIPLE OF COMMON LAW, WHICH IS SIMILAR, COMPARABLE, OR EQUIVALENT TO § 1542 OF THE CALIFORNIA CIVIL CODE, WHICH READS:

SECTION 1542. <u>GENERAL RELEASE; EXTENT.</u> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

**8.4**   Each Class Member may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the Released Claims, but each Class Member hereby expressly waives and fully, finally, and forever settles and releases, upon the Final Effective Date, any known or unknown, suspected or unsuspected, contingent or non-contingent Released Claims with respect to the subject matter of the Released Claims whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. Each Class Member also hereby expressly waives and fully, finally, and forever settles and releases any and all Released Claims it may have against the Released Parties under § 17200, *et seq.,* of the California Business and Professions Code. Similarly, to the extent that Conagra hereafter discovers facts other than or different from those which it knows or believes to be true with respect to the Released Defendant's Claims that it could have brought in this litigation, it mutually waives and fully, finally, and forever settles and releases any Released Defendant's Claims that it could have brought in connection with this litigation.

**8.5** <u>Reservation of Claims and Rights</u>.  Released Claims shall not include any claim against the Released Parties for bodily injury allegedly suffered in connection with the purchase or use of the Wesson Oil Products.

**8.5.1** The Parties agree that this Agreement, whether or not the Final Effective Date occurs, and any and all negotiations, documents, and discussions associated with it, shall be without prejudice to the rights of any Party (other than those compromised in this Agreement); shall not be deemed or construed to be an admission or evidence of any violation of any statute or law, any liability or wrongdoing by any of the Released Parties, or of the truth of any of the claims or allegations contained in any complaint or pleading, whether in the Action, any other actions, or otherwise. The Parties expressly reserve all of their rights if this Agreement fails to become Final and effective substantially in accordance with its terms.

**8.5.2** If this Agreement is not approved by the Court substantially in accordance with its terms and does not become subject to a Final Approval Order following such approval, or the Final Approval Order does not become Final, then the Action, for all purposes, shall revert to its status as of the date before the execution of this Agreement. In such instance, Conagra shall be entitled to a refund of any money paid to the Settlement Fund that remains after all Administrative Costs are paid from the Settlement Fund (which shall not be subject to refund); for avoidance of doubt, Conagra would be entitled to a refund of , any Fee and Expense Award paid to Class Counsel, and/or any Service Awards paid to the Class Representatives.

27

## 9.    ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

**9.1**    As part of the Settlement, Class Counsel shall make an  application to the Court for an award of fees and/or expenses not to exceed the amount of Class Recovery, to be paid from the Settlement Fund. Conagra retains the right to object or otherwise oppose Class Counsel's Application for a Fee and Expense Award. The Parties recognize that the Court shall have the final authority to award the amount of attorneys' fees and expenses but in no event shall Conagra be responsible for any award or amount above its funding to the Settlement Fund in the amount of $3,000,000.

**9.2**    Upon a Court order providing a Fee and Expense Award, any attorneys' fees and expenses awarded to Class Counsel by the Court shall be paid by the Settlement Administrator from the Settlement Fund within thirty (30) calendar days after the Final Effective Date. In the event the Fee and Expense Award is reversed, modified, canceled, terminated, or reduced for any reason, the relevant amount of the overpayment of attorneys' fees and costs paid by the Settlement Administrator from the Settlement Fund shall be returned to the Settlement Fund within thirty (30) days.

**9.3**    Class Counsel shall allocate any Fee and Expense Award amongst Class Counsel and other counsel representing plaintiffs in the Action in a manner in which they in good faith believe reflects the contributions of such counsel to the prosecution and settlement of the Action. Conagra shall have no liability or obligation with respect to any attorneys' fees, costs or expenses other than funding the Settlement Fund as described herein. Conagra shall have no liability or other responsibility for allocation of any such attorneys' fees or costs and expenses awarded.

**9.4**   Conagra and the Released Parties shall have no liability with respect to any disputes among plaintiffs' counsel relating to the award, allocation, or entitlement to any fees, costs, or expenses. The Court shall retain jurisdiction over any disputes among plaintiffs' counsel relating to the award, allocation, or entitlement to any fees, costs, or expenses, but any such disputes shall not affect this Settlement becoming Final.

**9.5**   Conagra agrees not to take any position on an application for service awards of (a) up to $3,000 for each of the Class Representatives who were deposed (Robert Briseño, Michele Andrade, Jill Crouch, Pauline Michael, Necla Musat, and Maureen Towey) and (b) up to $1,000 for each of those who were not deposed (Julie Palmer, Cheri Shafstall, Dee Hooper-Kercheval, Kelly McFadden, Erika Heins, Rona Johnston, and Anita Willman). The Parties acknowledge the Court shall have the final authority to determine the amount of the awards up to these amounts in recognition of their service as Class Representatives in this Action.

**9.6**   Any payment awarded by the Court to the Class Representatives will be paid by the Settlement Administrator from the Settlement Fund directly to the Class Representatives within thirty (30) days from the Final Effective Date.

**9.7**   The Fee and Expense Award, if any, and payment of service awards to Class Representatives are subject to and dependent upon the Court's approval. However, this Settlement Agreement is not dependent or conditioned upon the Court approving any Fee and Expense Award, and/or Class Representatives' request for service awards, and/or awarding the particular amounts sought by Class Counsel and/or Class Representatives.  In the event the Court declines Class Counsel's or Class Representatives' requests, or awards less than the

amounts sought, this Settlement will continue to be effective and enforceable by the Parties if not terminated pursuant to the terms of this Agreement.

10. **TERMINATION OF THIS AGREEMENT**

**10.1** This Agreement shall be terminated, without notice, if the Court declines to enter the Order Directing Notice, declines to grant Final Approval, or if such approval or other necessary orders do not become Final (as a result of reversal on appeal or otherwise).

**10.2** If the Court declines to enter the Order Directing Notice, declines to grant Final Approval, or if such approval or other necessary orders do not become Final (as a result of reversal on appeal or otherwise), this Agreement shall be of no further force or effect.

11. **MISCELLANEOUS PROVISIONS**

**11.1** Recitals.  The recitals set forth prior to Section 1 of this Agreement are hereby expressly incorporated into this Agreement and made a part hereof.

**11.2** No Inducement.  The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, or understanding concerning any part or all of the subject matter of this Agreement has been made or relied on except as expressly set forth in this Agreement.

**11.3** Receipt of Advice of Counsel.  Class Representatives acknowledge, agree, and specifically warrant and represent that they have discussed with Class Counsel (or their designees) the portions of this Agreement relevant to them, including the release of Released Claims, and received legal advice with respect to the advisability of entering into this Agreement, and the legal effect of this Agreement.

**11.4**   <u>No Tax Advice</u>.   No opinion regarding the tax consequences of this Agreement to any individual Class Member is being given or shall be given by Conagra or its counsel, nor is any representation or warranty in this regard made by virtue of this Agreement. Class Members must consult their own tax advisors regarding the tax consequences of the Settlement, including any payments provided hereunder and any tax reporting obligations they may have with respect to this Agreement. Each Class Member's tax obligations, and the determination thereof, are his, her, or its sole responsibility, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Class Member. Released Parties shall have no liability or responsibility whatsoever for any such tax consequences resulting from payments under this Agreement. To the extent required by law, the Released Parties shall report payments made under this Agreement to the appropriate authorities.

**11.5**   <u>Notice of Breach</u>.   The waiver by any of the Parties of any provision of or breach of this Agreement, in whole or in part, by another Party shall not be deemed or construed as a waiver of any other provision of or breach of this Agreement, whether prior, subsequent, or contemporaneous, to this Agreement. In the event that one Party to this Agreement is notified in writing by the other Party of any alleged breach of this Agreement, the allegedly-breaching Party shall have fourteen (14) days from the date of receipt of such notice to cure any such alleged breach and to notify the other Party, in writing, of the cure implemented to address the alleged breach. If the Party asserting the breach is not satisfied with the cure, that Party shall have the right to petition the Court for relief within thirty (30) days after receipt of notice of the cure.

**11.6**    Enforcement.    Only if this Settlement is finally approved by the Court and becomes Final, this Agreement may be pleaded as a full and complete defense to any action, suit, or other proceeding that has been or may be instituted, prosecuted or attempted against the Released Parties in such capacity with respect to any of the Released Claims, and may be filed, offered, received into evidence, and otherwise used for such defense. This Agreement may also be used in connection with the Parties' application for approval or enforcement of this Agreement and all proceedings incident to this Agreement, including requests for attorneys' fees, costs, disbursements and compensation to the Classes, and any disputes arising from this Agreement.

**11.7**    Authorization to Enter Agreement.    The undersigned representatives of Conagra represent that they are fully authorized to enter into and execute this Agreement on behalf of Conagra. Class Counsel represent that they are fully authorized to enter into and execute this Agreement on behalf of the Class Representatives and Class Members, subject to approval by the Court pursuant to Fed. R. Civ. P. 23.

**11.8**    No Party Is the Drafter.    None of the Parties to this Agreement shall be considered the drafter of this Agreement or any provision thereof for the purpose of any statute, case law or rule of construction that would or might cause any provision to be construed against the drafter.

**11.9**    Choice of Law.    This Agreement shall be governed by and interpreted in accordance with the substantive laws of the State of California without regard to its choice of law or conflict of laws principles. The Court shall maintain continuing jurisdiction over this matter in any proceeding to interpret, enforce, modify, or set aside the terms of this Agreement.

**11.10** <u>Jurisdiction and Dispute Resolution</u>.  Pursuant to the Final Approval Order, the Court shall retain continuing and exclusive jurisdiction over the Parties and their counsel, the Settlement Administrator, the Settlement Fund (including any trustee or other administrator or agent of the Settlement Fund, as applicable), and all Class Members with respect to the terms of this Agreement, the proper provision of all benefits thereunder, and the implementation and enforcement of its terms, conditions, and obligations. The terms of this Agreement shall be incorporated into the Final Approval Order of the Court, which shall allow that Final Approval Order to serve as an enforceable injunction by the Court for purposes of the Court's continuing jurisdiction related to this Agreement.

**11.11** The Court also shall retain exclusive and continuing jurisdiction over the Fee and Expense Award.

**11.12** <u>Administrative Procedures</u>.  The Settlement Administrator may create administrative procedures, supplementary to (and not inconsistent with) those specified herein that provide further specific details about how the Settlement is to be administered, and/or other aspects of the Settlement, including, but not limited to, procedures regarding submission of documents or procedures regarding execution and signature of documents; provided, however, that such procedures comply, or otherwise are not in conflict, with the terms of this Agreement, and are agreed to by the Parties and approved by the Court.

**11.13** <u>Amendment or Waiver</u>.  This Agreement shall not be modified in any respect except by a writing executed by all Parties to this Agreement or their successors-in-interest. The waiver of any rights conferred by this Agreement shall be effective only if made in writing by the waiving Party. The waiver by any Party

of any breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior to, subsequent to, or contemporaneous with this Agreement.

**11.14** <u>Execution in Counterparts</u>.  This Agreement may be executed in counterparts. Facsimile or PDF signatures shall be valid signatures as of the date thereof.

**11.15** <u>Integrated Agreement</u>.   This Agreement, including its exhibits, contains an entire, complete, and integrated statement of the terms agreed to by and between the Parties, and supersedes all prior proposals, negotiations, agreements, and understandings relating to the subject matter of this Agreement.

IN WITNESS WHEREOF, the Parties to this Agreement, by and through their fully authorized representatives, have executed this Agreement as of July ___, 2022.

|  |  |
|---|---|
| **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC** | Angela M. Spivey (pro hac vice) |
| DAVID E. AZAR (SBN 218319) | angela.spivey@alston.com |
| 280 S. Beverly Drive, Suite PH | ALSTON & BIRD |
| Beverly Hills, California  90212 | One Atlantic Center |
| Telephone: (213) 617-1200 | 1201 W. Peachtree Street, NE |
| dazar@milberg.com | Atlanta, GA 30309-1404 |

**TADLER LAW LLP**
ARIANA J. TADLER (*pro hac vice*)
22 Bayview Avenue
Suite 200
Manhasset, New York 11030
Telephone: (212) 946-9300
atadler@tadlerlaw.com

<u>Counsel for Conagra Brands, Inc.</u>

**DICELLO LEVITT LLC**
ADAM J. LEVITT (*pro hac vice*)
Ten North Dearborn Street,
     Sixth Floor
Chicago, Illinois  60602
Telephone: (312) 214-7900
alevitt@dicellolevitt.com

*Appointed Class Counsel*

<u>Class *Counsel*</u>

IN WITNESS WHEREOF, the Parties to this Agreement, by and through their fully

authorized representatives, have executed this Agreement as of ~~July 30~~ *September* 2022.


**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
DAVID E. AZAR (SBN 218319)
280 S. Beverly Drive, Suite PH
Beverly Hills, California  90212
Telephone: (213) 617-1200
dazar@milberg.com

Angela M. Spivey (pro hac vice)
angela.spivey@alston.com
ALSTON & BIRD
One Atlantic Center
1201 W. Peachtree Street, NE
Atlanta, GA 30309-1404

**TADLER LAW LLP**
ARIANA J. TADLER (*pro hac vice*)
22 Bayview Avenue
Suite 200
Manhasset, New York 11030
Telephone: (212) 946-9300
atadler@tadlerlaw.com

Counsel for Conagra Brands, Inc.

**DICELLO LEVITT LLC**
ADAM J. LEVITT (*pro hac vice*)
Ten North Dearborn Street,
   Sixth Floor
Chicago, Illinois  60602
Telephone: (312) 214-7900
alevitt@dicellolevitt.com

*Appointed Class Counsel*

Class *Counsel*

# EXHIBIT A

SETTLEMENT AGREEMENT AND RELEASE

*In re Conagra Foods, Inc.*, No. CV 11-05379-CJC (AGRx),
MDL No. 2291 (C.D. Cal.)

1
2
3
4
5
6
7
8
9          UNITED STATES DISTRICT COURT
10         CENTRAL DISTRICT OF CALIFORNIA
11              WESTERN DIVISION
12

| | |
|---|---|
| IN RE CONAGRA FOODS, INC. | Case No. CV 11-05379-CJC (AGRx)<br><br>MDL No. 2291<br><br><u>CLASS ACTION</u> |

## **[PROPOSED] ORDER DIRECTING NOTICE TO CLASS MEMBERS**

In this Action,[1] Class Representatives, in their individual capacities and on behalf of all others similarly situated (the "Classes"), assert claims against Defendant Conagra Brands, Inc. Defendant has denied each of the claims asserted against it in this Action and denies any and all liability. Class Representatives maintain that the claims have merit. The Court previously certified damages classes under Rule 23(b)(3) of the Federal Rules of Civil Procedure for California, Colorado, Florida, Illinois, Indiana, Nebraska, New York, Ohio, Oregon, South Dakota, and Texas.

This Court has now been presented with a Motion for Preliminary Approval of

---

[1] Capitalized terms shall have the meaning ascribed to them in the Definitions section of the Settlement Agreement.

the Settlement, Approval of the Form and Manner of Notice, Approval to Notice the Classes, and Setting Final Settlement Schedule and Date for Final Approval on September 30, 2022, pursuant to Fed. R. Civ. P. 23(e)(1). The Settlement Agreement was negotiated and consented to on behalf of the Parties, and it would resolve the claims against Defendant arising out of the Action. Notice of the proposed settlement will be served on the appropriate federal and state officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

Having considered the terms of the Settlement Agreement in light of the issues presented by the pleadings, the record in this case, the complexity of the proceedings, and the absence of any evidence of collusion between Class Representatives and Defendant, and being preliminarily satisfied that the Settlement Agreement is fair, reasonable, and consistent with applicable laws; and being satisfied that the proposed Notice Plan is adequate and sufficiently informative as to the terms and effect of the proposed settlement, IT IS ORDERED THAT:

1. This Court has jurisdiction over the subject matter of the Action pursuant to 28 U.S.C. § 1332(d). This Court also has jurisdiction over all Parties to the Action, including all members of the Classes, as defined below.

2. This Order is justified by the Parties' showing that the Court will likely be able to approve the proposed settlement as fair, reasonable, and adequate under Rule 23(e)(2), subject to further consideration at the Fairness Hearing. Class Representatives and Defendant are authorized and directed to take all actions that may be required prior to final approval by this Court of the proposed settlement and compromises set forth in the Settlement Agreement.

3. By the Court's Order Granting in Part and Denying in Part Plaintiffs' Amended Motion for Class Certification [ECF No. 545], eleven statewide classes were certified under Fed. R. Civ. P. 23(b)(3) to pursue the following claims:

a. <u>California</u>: (1) violations of the California Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq*. ("UCL"), California

Consumer Legal Remedies Act, California Civil Code §§ 1750, *et seq.* ("CLRA"), and California Business & Professions Code §§ 17500, *et seq.* ("FAL"); and (2) breach of express warranty (California Commercial Code § 2313);

b.    Colorado: (1) violation of the Colorado Consumer Protection Act, Colorado Revised Statutes §§ 6-1-101, *et seq.* ("CCPA"); (2) breach of express warranty (Colorado Revised Statutes § 4-2-313); and (3) breach of implied warranty (Colorado Revised Statutes § 4-2-314);

c.    Florida: violation of the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes Annotated §§ 501.201, *et seq.* ("FDUTPA");

d.    Illinois: (1) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Illinois Compiled States §§ 505/1, *et seq.* ("ICFA") and (2) unjust enrichment;

e.    Indiana: (1) unjust enrichment and (2) breach of implied warranty (Indiana Code § 26-1-2-314);

f.    Nebraska: (1) unjust enrichment and (2) breach of implied warranty (Nebraska Revised Statutes § 2-314);

g.    New York: (1) violation of the New York Consumer Protection Act, New York General Business Law §§ 349, *et seq.* ("GBL"); and (2) breach of express warranty (N.Y. U.C.C. Law § 2-313);

h.    Ohio: violation of the Ohio Consumer Sales Practices Act, Ohio Revised Code §§ 1345.01, *et seq.* ("OCSPA");

i.    Oregon: (1) violation of the Oregon Unfair Trade Practices Act, Oregon Revised Statutes §§ 646.605, *et seq.* ("OUTPA"); and (2) unjust enrichment;

j.    South Dakota: (1) violation of the South Dakota Deceptive Trade Practices and Consumer Protection Law, South Dakota Codified Laws §§ 37-24-1, *et seq.* ("SDDTPL"); and (2) unjust enrichment;

k.    Texas: violation of the Texas Deceptive Trade Practices – Consumer Protection Act, Texas Business & Commerce Code §§ 17.41, *et seq.*

("TDTPA").

4.      The following Classes certified under Fed. R. Civ. P. 23(b)(3), which were limited by the applicable statute of limitations periods established by the laws of the eleven states, will be notified of this proposed settlement and their rights under it:

a.      <u>California Class</u>: all natural persons who resided in the State of California and purchased Wesson Oil Products in California, for personal, non-commercial use, between June 28, 2007 and July 1, 2017 ("California Class Period");

b.      <u>Colorado Class</u>: all natural persons who resided in the State of Colorado and purchased Wesson Oil Products in Colorado, for personal, non-commercial use, between January 12, 2009 and July 1, 2017 ("Colorado Class Period");

c.      <u>Florida Class</u>: all natural persons who resided in the State of Florida and purchased Wesson Oil Products in Florida, for personal, non-commercial use, between January 12, 2008 and July 1, 2017 ("Florida Class Period");

d.      <u>Illinois Class</u>: all natural persons who resided in the State of Illinois and Purchased Wesson Oil Products in Illinois, for personal, non-commercial use, between January 12, 2007 and July 1, 2017 ("Illinois Class Period");

e.      <u>Indiana Class</u>: all natural persons who resided in the State of Indiana and purchased Wesson Oil Products in Indiana, for personal, non-commercial use, between January 12, 2006 and July 1, 2017 ("Indiana Class Period");

f.      <u>Nebraska Class</u>: all natural persons who resided in the State of Nebraska and purchased Wesson Oil Products in Nebraska, for personal, non-commercial use, between January 12, 2008 and July 1, 2017 ("Nebraska Class Period");

g.      <u>New York Class</u>: all natural persons who resided in the State of New York and purchased Wesson Oil Products in New York, for personal, non-commercial use, between January 12, 2008 and July 1, 2017 ("New York Class

Period");

h.    <u>Ohio Class</u>: all natural persons who resided in the State of Ohio and purchased Wesson Oil Products in Ohio, for personal, non-commercial use, between January 12, 2010 and July 1, 2017 ("Ohio Class Period");

i.    <u>Oregon Class</u>: all natural persons who resided in the State of Oregon and purchased Wesson Oil Products in Oregon, for personal, non-commercial use, between January 12, 2006 and July 1, 2017 ("Oregon Class Period");

j.    <u>South Dakota Class</u>: all natural persons who resided in the State of South Dakota and purchased Wesson Oil Products in South Dakota, for personal, non-commercial use, between January 12, 2006 and July 1, 2017 ("South Dakota Class Period"); and

k.    <u>Texas Class</u>: all natural persons who resided in the State of Texas and purchased Wesson Oil Products in Texas, for personal, non-commercial use, between January 12, 2010 and July 1, 2017 ("Texas Class Period").

5.    Excluded from the Classes are (a) governmental entities; (b) Conagra, and its affiliates, subsidiaries, employees, current and former officers, directors, agents, and representatives; (c) the members of the Court and its staff; and (d) Opt-Outs.

6.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court appoints the following persons as Class Representatives:

a.    Robert Briseño and Michele Andrade for the California Class;

b.    Jill Crouch for the Colorado Class;

c.    Julie Palmer for the Florida Class;

d.    Pauline Michael for the Illinois Class;

e.    Cheri Shafstall for the Indiana Class;

f.    Dee Hooper-Kercheval for the Nebraska Class;

g.    Kelly McFadden and Necla Musat for the New York Class;

h.    Maureen Towey for the Ohio Class;

i.     Erika Heins for the Oregon Class;

j.     Rona Johnston for the South Dakota Class; and

k.     Anita Willman for the Texas Class.

7.     Having considered the factors set forth in Rule 23(g)(1) of the Federal Rules of Civil Procedure, the Court appoints Milberg Coleman Bryson Phillips Grossman PLLC, Tadler Law LLP, and DiCello Levitt LLC as Class Counsel.

8.     **Schedule and Deadlines.** The Court hereby approves the following schedule:

| ACTION | TIMING |
|---|---|
| First Publication of Class Notice | 10 days after issuance of the Order Directing Notice |
| Settlement Website Established | One day before First Publication of Class Notice |
| Opt-Out Deadline | 114 days after First Publication of Class Notice good |
| Claims Deadline | 175 days after First Publication of Class Notice |
| Motion for Final Approval and Expense Application Deadline | 2 weeks before Objection Filing Deadline good |
| Supplemental Filing in Support of Final Approval Deadline | 30 days after Claims Deadline |
| Objection Filing Deadline | 114 days after First Publication of Class Notice good |
| Request to Appear at Hearing Filing Deadline | 114 days after First Publication of Class Notice |
| Objection Response Deadline | 2 weeks after Objection Filing Deadline |
| Final Approval Hearing | To be set by the Court, on or after 165 days after First Publication of Class Notice |
| Gross Settlement Proceeds Paid into Escrow Account | 20 days after Final Effective Date |

9.     A Fairness Hearing shall be held at ___:____ ___.m. on _____ _____, 202__, for the purpose of determining whether the proposed settlement and compromise set forth in the Settlement Agreement shall be approved finally by the

Court and whether final judgment dismissing the Action with respect to Defendant is appropriate. This hearing will be held at the United States District Court for the Central District of California, 411 West Fourth Street, Courtroom 9B, Santa Ana, California 92701. At the Fairness Hearing, the Court will consider and determine:

a. whether the proposed settlement is fair, reasonable, and adequate to Class Members and should be approved by the Court;

b. whether the Classes satisfy the applicable prerequisites for class action treatment under Federal Rules of Civil Procedure 23(a) and 23(b)(3) for purposes of the proposed settlement;

c. whether final judgment should be entered, dismissing the Action as to Defendant, on the merits and with prejudice, and to determine whether the release by Class Members of the Released Claims, as set forth in the Settlement Agreement, should be provided;

d. whether the Court should approve Class Counsel's application for an award expenses and costs;

e. whether the Court should approve any motion for service awards for the Class Representatives; and

f. such other matters as the Court may deem appropriate.

10. JND Legal Administration is appointed as the Settlement Administrator and the Notice Plan set forth in the Declaration of Gina M. Intrepido-Bowden, attached as Exhibit A-4 to the Settlement Agreement, is approved.

11. The Publication Notice attached as Exhibit A-2 to the Settlement Agreement and the Posted Notice attached as Exhibit A-3 to the Settlement Agreement are approved. Dissemination of the Class Notice as set forth in the Notice Plan satisfies the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and any other applicable laws, and constitutes the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto. The

Publication Notice and Posted Notice will be published in accordance with the terms of the Notice Plan set forth in the Settlement Agreement. Non-substantive changes may be made to the Publication Notice and Posted Notice by agreement of Class Representatives and Defendant without further order of this Court.

12.     No later than one day before First Publication of Class Notice, the Settlement Administrator shall establish and maintain a toll-free number and the Settlement Website, on which relevant pleadings, settlement documents, any applicable deadlines, and the Posted Notice shall be posted in order to provide information to the Classes of the proposed Settlement.

13.     The Settlement Administrator shall cause the Publication Notice to be published as provided in the Notice Plan.

14.     Fourteen (14) days in advance of the Objection Date, Class Counsel shall file their Motion for Final Approval of the Settlement, and their application for attorneys' expenses and service awards to Class Representatives. Defendant shall file any response to any motions filed under this paragraph within 14 days.

15.     If the Settlement Agreement is not approved by the Court substantially in accordance with its terms, or does not become subject to a Final Approval Order following such approval, or the Final Effective Dates does not occur, then the Action, for all purposes, shall revert to its status as of the date before the execution of the Settlement Agreement.

16.     In order to be entitled to participate in the Gross Settlement Proceeds, each Class Member who did not submit a claim under the prior Settlement[2] shall take the following actions and be subject to the following conditions:

a.     A properly executed Claim Form, substantially in the form

---

[2] Unless a Class Member who filed a claim under the prior Settlement excludes themselves from the new Settlement, they need not submit a new claim form to participate in the Gross Settlement Proceeds. In other words, their former claim submission will count toward this new Settlement without need for any further action, unless they would like to file a new Claim Form.

attached as Exhibit A-1 to the Settlement Agreement, must be submitted to the Settlement Administrator, postmarked on or before the Claims Deadline. Such deadline may be further extended by Court Order. Each Claim Form shall be deemed to have been submitted when postmarked (if properly addressed and mailed by first class mail, postage prepaid) provided it is actually received by the Settlement Administrator before payment of the Gross Settlement Proceeds. Any Claim Form submitted in any other manner shall be deemed to have been submitted when it was actually received by the Settlement Administrator.

b.      The Claim Form submitted by each Class Member must satisfy the following conditions: (i) it must be properly completed, signed and submitted in a timely manner in accordance with the provisions of the preceding subparagraph; (ii) where required, it must be accompanied by adequate supporting documentation for residency and the transactions reported; and (iii) it must be complete and contain no material deletions or modifications and must be submitted under penalty of perjury.

c.      As part of the Claim Form, each Class Member shall submit to the jurisdiction of the Court with respect to the claim submitted and shall (subject to effectuation of the Settlement) release all Released Claims as provided in the Settlement Agreement.

17.    Any Class Member who does not submit a Claim Form in the manner stated in this Order shall be deemed to have waived his, her, or its right to share in the Settlement Proceeds and shall forever be barred from sharing in the Gross Settlement Proceeds. Any such Class Member, however, in all other respects shall be subject to and bound by all of the terms of the Settlement, including the terms of the Settlement Agreement, the Final Approval Order, and the releases provided for by the Settlement Agreement and the Final Approval Order unless such Class Member has submitted a request to be excluded in the manner required by this Order.

18.    **Opting Out of the Settlement**

a.      Each Class Member may elect to opt out of the Settlement. Any

Class Member who wishes to opt out of the Settlement must do so, in writing, by mailing a request for exclusion to the Settlement Administrator signed by the Class Member (the "Opt-Out Request"). Any such request must be sent to the Settlement Administrator and postmarked by the Opt-Out Deadline.

      b.    The Opt-Out Request must:

          i.    bear the handwritten signature of the Class Member seeking to opt out;

          ii.    set out the Class Member's full legal name, valid mailing address, and functioning telephone number;

          iii.    state that the Class Member has reviewed and understood the Class Notice and chooses to be excluded from the Settlement; and

          iv.    provide the name of and contact information for the Class Member's attorney, if represented.

      c.    No person or entity may opt out on behalf of another Class Member.

      d.    All requests to opt out that fail to satisfy the requirements of this paragraph, as well as any additional requirements that the Court may impose, shall be void. No class-wide, mass opt-outs, or opt-outs signed by attorneys are permitted under this Agreement.

      e.    Any Class Member who does not properly and timely submit a request to opt out as required in this Agreement shall be deemed to have waived all rights to opt out and shall be deemed a Class Member for all purposes under this Agreement.

      19.    **Objecting to the Settlement**

      a.    Any Class Member who does not timely and properly opt out of the Settlement may object to the fairness, reasonableness, or adequacy of the proposed Settlement under Federal Rule of Civil Procedure 23. Each Class Member who wishes

[PROPOSED ORDER]          10

to object must do so, in writing, by filing a written objection with the Clerk of the Court and mailing it to Class Counsel and to counsel for Conagra at the addresses set forth below:

| Clerk of the Court: | Class Counsel: |
|---|---|
| Office of the Clerk<br>United States District Court for the<br>Central District of California<br>350 W. 1st Street, Suite 4311<br>Los Angeles, California 90012 | David E. Azar<br>Milberg Coleman Bryson Phillips<br>Grossman PLLC<br>280 South Beverly Drive, Suite PH<br>Beverly Hills, California 90212 |
| **Counsel for Conagra:**<br><br>Angela M. Spivey<br>Alston & Bird<br>One Atlantic Center<br>1201 W. Peachtree Street, NE<br>Atlanta, Georgia 30309-1404 | Ariana J. Tadler<br>Tadler Law LLP<br>22 Bayview Avenue, Suite 200<br>Manhasset, New York 11030<br><br>Adam J. Levitt<br>DiCello Levitt LLC<br>Ten North Dearborn Street, Sixth Floor<br>Chicago, Illinois 60602 |

b.    Any such objection must be postmarked by the Objection Deadline for filing objections and under these procedures. Any such objection must (a) attach copies in advance of any materials that the objector intends to submit to the Court or present at the Fairness Hearing; (b) be personally signed by the Class Member and, if represented by counsel, by his or her counsel; (c) include information or documents sufficient to show that the objector is a Class Member; and (d) clearly state in detail (i) the legal and factual ground(s) for the objection, (ii) the objecting Class Member's name, mailing address, email address, and telephone number, (iii) whether it applies only to the objector, to a specific subset of the class, or to the entire class, (iv) if represented by counsel, such counsel's name, email address, mailing

address, and telephone number, and (v) any request to present argument to the Court at the Fairness Hearing.

c.     Any objection that fails to satisfy the requirements of this paragraph, or that is not properly and timely submitted, shall be deemed void and waived unless otherwise ordered by the Court. The Court shall make the final determination if any objection complies with the requirements of this paragraph. Any Party may respond to any objection by the date as ordered by the Court.

20.     The procedures and requirements for filing objections in connection with the Fairness Hearing are intended to ensure the efficient administration of justice and the orderly presentation of any Class Member's objection to the Settlement, in accordance with the due process rights of all Class Members.

21.     **Requests to Appear at Fairness Hearing.** Any Class Member who wishes to appear and be heard in person or by counsel at the Fairness Hearing must make such request by notifying the Court and the Parties' respective counsel at the addresses set forth above, subject to the discretion of the Court. Any such request must be filed with the Clerk of the Court and postmarked by the deadline for filing requests to appear. The request must state the name, address, and telephone number of the Class Member, as well as the name, address, and telephone number of the person that shall appear on his or her behalf. Any request for appearance that fails to satisfy these requirements, or that has otherwise not been properly or timely submitted, shall be deemed ineffective and a waiver of such Class Member's rights to appear and to comment on the Settlement at the Fairness Hearing. Only the Parties, Class Members, or their counsel may request to appear and be heard at the Fairness Hearing. Persons or entities that opt out may not request to appear and be heard at the Fairness Hearing.

22.     Attendance at the Fairness Hearing is not necessary. Class Members do not need to appear at the Fairness Hearing or take any other action to indicate their approval.

23.     Pending the Fairness Hearing, all proceedings in the Action are stayed and, pursuant to the All Writs Act, 28 U.S.C. § 1651, and the Anti-Injunction Act, 28 U.S.C. § 2283, the prosecution of any pending or subsequently filed litigation by Class Members arising out of or relating to the Released Claims is prohibited. Proceedings in the Court arising out of and relating to the Settlement Agreement, and any other proceeding necessary to effectuate the Settlement Agreement in any other action are excepted from this stay.

24.     The Court may adjourn the Fairness Hearing without any further notice other than an announcement of the adjournment at the scheduled time of the Fairness Hearing or at the scheduled time of any adjournment of the Fairness Hearing. The Court may consider modifications of the Settlement Agreement (with the consent of the Parties to the Settlement Agreement) without further notice to the Classes.

25.     The Court reserves the right to approve the Settlement with or without modification and with or without further notice of any kind. The Court further reserves the right to enter its Final Approval Order approving the Settlement and dismissing the Complaint against Defendant on the merits and with prejudice regardless of whether it has approved or awarded attorneys' fees and expenses or service awards to Class Representatives.

26.     The Court retains exclusive jurisdiction over the Action to consider all further matters arising out of or connected with the proposed settlement.

SO ORDERED this _____ day of _____, 202__

_____
Hon. Cormac J. Carney
United States District Court Judge

[PROPOSED ORDER]                                                                              13

# Exhibit A-1

SETTLEMENT AGREEMENT AND RELEASE

*In re Conagra Foods, Inc.*, No. CV 11-05379-CJC (AGRx),
MDL No. 2291 (C.D. Cal.)

| I. | CLAIM FORM INSTRUCTIONS | |
|---|---|---|
| *Your claim must be either submitted online or postmarked and mailed by:* ***Month x, 202x*** | Wesson Oil Settlement<br>c/o JND Legal Administration<br>P.O. Box 91249<br>Seattle, WA 98111-9349<br>Website: www.wessonoilsettlement.com | **WESSON OIL (AGR)** |

You are eligible to submit a Claim Form if you resided in any of these eleven States[*] and purchased Wesson brand cooking oils, including Wesson Vegetable Oil, Wesson Canola Oil, Wesson Corn Oil, and Wesson Best Blend ("Wesson Oil Products"), for your own personal, non-commercial use in that state during the applicable Class Period:

| State | Class Period |
|---|---|
| California | June 28, 2007 through July 1, 2017 |
| Colorado | January 12, 2009 through July 1, 2017 |
| Florida | January 12, 2008 through July 1, 2017 |
| Illinois | January 12, 2007 through July 1, 2017 |
| Indiana | January 12, 2006 through July 1, 2017 |
| Nebraska | January 12, 2008 through July 1, 2017 |
| New York | January 12, 2008 through July 1, 2017 |
| Ohio | January 12, 2010 through July 1, 2017 |
| Oregon | January 12, 2006 through July 1, 2017 |
| South Dakota | January 12, 2006 through July 1, 2017 |
| Texas | January 12, 2010 through July 1, 2017 |

**If you filed a claim in the previous settlement, you do not need to complete this Claim Form.**
***You may also use this Claim Form if you would like to update your Claim.***
**If you have not previously filed a claim, you must submit this Claim Form to receive a payment.**

<u>All Class Members</u>:  Class Members who timely submit a valid Claim Form may receive $0.15 per unit of Wesson Oil Products purchased during the applicable Class Period. Recovery is limited to one claim per Household, which is defined as all persons residing at the same physical address. If the total value of all valid Claims Forms and amounts identified for direct distribution exceeds or falls short of the funds available for distribution to Class Members (after deducting the portion of Settlement Funds designated for New York and Oregon Class Members), then the amounts of the cash payments will be reduced or increased per claim (or "*pro rata*"), as necessary, to use all of the remaining funds available for distribution to Class Members. Any such *pro rata* adjustment will be calculated prior to distribution of funds (*i.e.*, will be made in a single distribution).

<u>New York and Oregon Class Members</u>: A portion of the Settlement Fund, specifically $575,000, will be allocated only to members of the New York and Oregon Classes who submit valid Claim Forms or are identified for direct distribution, in proportion to the number of units purchased. The amount of additional recovery for New York

---

[*] If you did not reside in any of these eleven States or did not purchase Wesson Oil Products in these states during the applicable Class Period, do not submit this Claim Form. You are not a Class Member and are not affected by this Action or this Settlement.

and Oregon Class Members will be adjusted *pro rata* according to the number of valid Claim Forms and direct distributions.

You must sign and complete the entire Claim Form.

Your completed Claim Form must be either submitted online at www.wessonoilsettlement.com or postmarked and mailed to the address below no later than **Month x, 202x**:

Wesson Oil Settlement
c/o JND Legal Administration
P.O. Box 91249
Seattle, WA 98111-9349

**ALL CLAIMS ARE SUBJECT TO VERIFICATION.**

**PLEASE KEEP A COPY OF YOUR COMPLETED CLAIM FORM FOR YOUR RECORDS.**

| **CLAIM FORM** | | |
|---|---|---|
| *Your claim must be either submitted online or postmarked and mailed by:*<br>***Month x, 202x*** | Wesson Oil Settlement<br>c/o JND Legal Administration<br>P.O. Box 91249<br>Seattle, WA 98111-9349<br>Website: www.wessonoilsettlement.com | **WESSON OIL (AGR)** |

## SECTION A:  NAME AND CONTACT INFORMATION

Provide your name and contact information below. It is your responsibility to notify the Settlement Administrator of any changes to your contact information after the submission of your Claim Form.

**First Name**

**Last Name**

**Physical Address (Street Address, Including Apartment or Unit Number)**

**City**

**State**

**Zip Code**

**Email Address**

**Phone Number**

## SECTION B:  PURCHASE INFORMATION

Check the box below to verify the State† where your Household resided and where you purchased Wesson Oil Products for your own personal, non-commercial use during the applicable Class Period:

| | State | Class Period |
|---|---|---|
| ☐ | California | June 28, 2007 through July 1, 2017 |
| ☐ | Colorado | January 12, 2009 through July 1, 2017 |
| ☐ | Florida | January 12, 2008 through July 1, 2017 |
| ☐ | Illinois | January 12, 2007 through July 1, 2017 |
| ☐ | Indiana | January 12, 2006 through July 1, 2017 |
| ☐ | Nebraska | January 12, 2008 through July 1, 2017 |

---

† If you did not reside in any of these eleven States during the applicable Class Period, do not submit this Claim Form. You are not a Class Member and are not affected by this Action or this Settlement.

| | State | Class Period |
|---|---|---|
| ☐ | New York** | January 12, 2008 through July 1, 2017 |
| ☐ | Ohio | January 12, 2010 through July 1, 2017 |
| ☐ | Oregon** | January 12, 2006 through July 1, 2017 |
| ☐ | South Dakota | January 12, 2006 through July 1, 2017 |
| ☐ | Texas | January 12, 2010 through July 1, 2017 |

** <u>Note</u>: Participation in the separate fund for New York or Oregon state consumers requires verification of the city or town in which the purchases were made in either New York or Oregon. If you are a New York or Oregon purchaser, you must complete Section C of this Claim Form.

If your Household address at the time of purchase of Wesson Oil Products during the above applicable Class Period **differs from the address provided above**, provide your Household address at the time of purchase below:

**Household Address (Physical Address, Including Apartment or Unit Number)**

**City**                    **State**                    **Zip Code**

☐ Check this box to verify that only one Claim Form has been submitted per Household, which is defined as all persons residing at the same physical address.

List in the box below the total number of units of Wesson Oil Products you purchased in the state selected above during the applicable Class Period:

Units

☐ Check this box to verify that each of the above purchase units were for private, household use, and not purchases for commercial use or catering operations.

## SECTION C:  PURCHASE INFORMATION FOR NEW YORK AND OREGON PURCHASERS ONLY

If you did not reside in either New York or Oregon and make purchases in those states, skip this section and go to Section D.

☐  Check this box if you are a New York or Oregon Class Member and provide in the box below the city or town where your purchases were made:

| City/Town where purchases were made during the applicable Class Period: | State (NY or OR) |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

## SECTION D:  CERTIFICATION

I certify that the information provided in this Claim Form is true and correct to the best of my knowledge, information, and belief. I understand the Settlement Administrator may contact me to request further verification of the information provided in this Claim Form.

Signature: _____    Date: _____

Full Printed Name: _____

# Exhibit A-2

SETTLEMENT AGREEMENT AND RELEASE

*In re Conagra Foods, Inc.*, No. CV 11-05379-CJC (AGRx),
MDL No. 2291 (C.D. Cal.)

The Publication Notice in the Exhibit that follows is comprised of (1) summary notice and (2) email notice.

# NEW SETTLEMENT

**If you resided in California, Colorado, Florida, Illinois, Indiana, Nebraska, New York, Ohio, Oregon, South Dakota, or Texas and purchased WESSON OIL PRODUCTS in that state, you may be eligible to receive a payment from a $3 million class action settlement**

*Para una notificación en español, visite www.wessonoilsettlement.com.*

A newly proposed Settlement has been reached in a class action lawsuit (*In re ConAgra Foods, Inc*, C.D. Cal., Case No. CV 11-05379-CJC (AGRx), MDL No. 2291). This new Settlement replaces the previous settlement that was appealed and reversed by the Ninth Circuit. The Court authorized this notice and will decide whether to approve the newly proposed Settlement.

## WHO IS AFFECTED?

You are a Class Member only if you resided in any of these eleven States and purchased Wesson brand cooking oils, including Wesson Vegetable Oil, Wesson Canola Oil, Wesson Corn Oil, and Wesson Best Blend ("Wesson Oil Products"), for your own personal, non-commercial use in that state during the applicable Class Period:

| State | Class Period |
|---|---|
| California | June 28, 2007 through July 1, 2017 |
| Colorado | January 12, 2009 through July 1, 2017 |
| Florida | January 12, 2008 through July 1, 2017 |
| Illinois | January 12, 2007 through July 1, 2017 |
| Indiana | January 12, 2006 through July 1, 2017 |
| Nebraska | January 12, 2008 through July 1, 2017 |
| New York | January 12, 2008 through July 1, 2017 |
| Ohio | January 12, 2010 through July 1, 2017 |
| Oregon | January 12, 2006 through July 1, 2017 |
| South Dakota | January 12, 2006 through July 1, 2017 |
| Texas | January 12, 2010 through July 1, 2017 |

## WHAT'S THIS LAWSUIT ABOUT?

The lawsuit alleges that Defendant Conagra violated certain laws in the marketing, advertising, and sale of Wesson Oil Products made from Genetically Modified Ingredients (GMOs) as "Natural." Conagra denies any and all wrongdoing of any kind whatsoever and has asserted various defenses that it believes are meritorious.

## WHAT CAN YOU GET FROM THE SETTLEMENT?

A $3 million Settlement Fund will be used to pay Class Member payments, expenses for litigating the case since 2011, administrative costs, service awards, and any other costs or expenses. Class Members who timely submit a valid Claim Form may receive $0.15 per unit of Wesson Oil

Products purchased during the applicable Class Period, subject to an up or down adjustment based upon the number of Claims filed. $575,000 of the Settlement Fund will be allocated only to New York and Oregon Class Members who submit valid claims. Go to www.wessonoilsettlement.com to learn more.

## HOW DO YOU GET A PAYMENT?

If you filed a claim in the previous settlement, you do not need to do anything. If you have not previously filed a claim, go to www.wessonoilsettlement.com and file or download a Claim Form. All Claim Forms must be either submitted online or postmarked and mailed by **Month x, 202x**. Only one Claim Form can be submitted per Household.

## WHAT ARE YOUR OPTIONS?

If you are a Class Member and you do nothing or file a Claim Form, you will be bound by the Court's judgments. If you want to opt out of the Settlement, you must submit an Opt-Out Request either online or postmarked and mailed by **Month x, 202x**. Any Class Member who does not opt out of the Settlement may object to the Settlement by filing a written objection by **Month x, 202x**. For details on how to opt out or object, go to www.wessonoilsettlement.com.

The Court will hold a hearing at the Ronald Reagan Federal Building and United States Courthouse, 411 West Fourth Street, Courtroom 9B, Santa Ana, California 92701, on Month x, 202x at x:xx x.m. PT, to consider whether to approve the Settlement, an award for expenses, and service awards up to (a) $3,000 each for the six Class Representatives who were deposed and (b) $1,000 each for the seven Class Representatives who were not deposed. The Court appointed DiCello Levitt LLC, Tadler Law LLP, and Milberg Coleman Bryson Phillips Grossman LLP to represent the Class as Class Counsel. You or your attorney may ask to appear and speak at the hearing at your own expense, but you do not have to.

## HOW DO I GET MORE INFORMATION?

Visit www.wessonoilsettlement.com; call toll-free 1-833-291-1651; or write: Wesson Oil Settlement, c/o JND Legal Administration, P.O. Box 91249, Seattle, WA 98111-9349.

From: Wesson Oil Settlement Administrator
To: [Class Member email address]
Subject: New Wesson Oil Settlement

<u>**Court Authorized Legal Notice**</u>

# You previously filed a claim in the WESSON OIL PRODUCTS Settlement and may receive benefits from a newly-proposed Settlement

A newly proposed Settlement has been reached in the class action lawsuit alleging that Defendant Conagra violated certain laws in the marketing, advertising, and sale of Wesson Oil Products made from Genetically Modified Ingredients (GMOs) as "Natural" (*In re ConAgra Foods, Inc.*, C.D. Cal., Case No. CV 11-05379-CJC (AGRx), MDL No. 2291). This new Settlement replaces the previous settlement that was appealed and reversed by the Ninth Circuit.

Unless you choose to opt out of the new Settlement, the claim you filed in the previous settlement will be applied to the new Settlement. If you would like to update your claim, you may choose to file a new Claim Form.

**What can I get from the new Settlement?**

A $3 million Settlement Fund will be used to pay Class Member benefits, an attorney fee and expense award, administrative costs, service awards, and any other costs or expenses. Class Members who submit a valid Claim Form may receive $0.15 per unit of Wesson Oil Products purchased during the applicable Class Period, which will be adjusted up or down depending on number of claims filed. $575,000 of the Settlement Fund will be allocated only to New York and Oregon Class Members who submit valid claims. Go to www.wessonoilsettlement.com to learn more.

**What are my options?**

- <u>Get a payment</u>: Unless you choose to opt out of the Settlement, the Claim Form you filed in the previous settlement will be used to determine your payment in the new Settlement. You will be bound by the Court's judgments and give up your right to ever sue the Defendant about the legal claims in this case.

- <u>Opt Out</u>: If you want to remove your claim and keep your right to sue the Defendant about the legal claims in this case, you must submit an Opt-Out Request either online or postmarked and mailed by **Month x, 202x**.

- <u>Object</u>: If you do not opt out of the Settlement, you may tell the Court what you do not like about the Settlement by **Month x, 202x**.

For details on how to opt out or object, go to www.wessonoilsettlement.com.

The Court will hold a hearing at the Ronald Reagan Federal Building and United States Courthouse, 411 West Fourth Street, Courtroom 9B, Santa Ana, California 92701 on **Month x, 202x at x:xx x.m.** Pacific Time, to consider whether to approve the Settlement, an award for expenses, and service awards up to (a) $3,000 each for the six Class Representatives who were deposed and (b) $1,000 each for the seven who were not deposed. The Court appointed DiCello Levitt LLC, Tadler Law LLP, and Milberg Coleman Bryson Phillips Grossman LLP to represent the Class as Class Counsel, who will not be seeking attorneys' fees under the newly-proposed Settlement. You or your attorney may ask to appear and speak at the hearing at your own expense, but you do not have to.

**How do I get more information?**

Visit www.wessonoilsettlement.com; Call toll-free 1-833-291-1651; or Write to Wesson Oil Settlement,
c/o JND Legal Administration, P.O. Box 91249, Seattle, WA 98111-9349.

To unsubscribe from this list, please click on the following link: Unsubscribe

# EXHIBIT A-3

SETTLEMENT AGREEMENT AND RELEASE

*In re Conagra Foods, Inc.*, No. CV 11-05379-CJC (AGRx),
MDL No. 2291 (C.D. Cal.)

## NEW SETTLEMENT

# If you resided in California, Colorado, Florida, Illinois, Indiana, Nebraska, New York, Ohio, Oregon, South Dakota, or Texas and purchased WESSON OIL PRODUCTS in that state, you may be eligible to receive a payment from a $3 million class action settlement

*A federal court authorized this Notice. This is not a solicitation from a lawyer. Your legal rights are affected whether you act or do not act. Please read this Notice carefully.*

- A newly proposed Settlement has been reached in a class action lawsuit (*In re ConAgra Foods, Inc*, C.D. Cal., Case No. CV 11-05379-CJC (AGRx), MDL No. 2291). This new Settlement replaces the previous settlement that was appealed and reversed by the Ninth Circuit.

- The lawsuit alleges that Defendant Conagra violated certain laws in the marketing, advertising, and sale of Wesson brand cooking oils, including Wesson Vegetable Oil, Wesson Canola Oil, Wesson Corn Oil, and Wesson Best Blend ("Wesson Oil Products"), made from Genetically Modified Ingredients ("GMOs") as "Natural." Conagra denies any and all wrongdoing of any kind whatsoever and has asserted various defenses that it believes are meritorious.

- If you resided in any of these eleven States and purchased Wesson Oil Products for your own personal, non-commercial use in that state during the applicable Class Period, you may be eligible to participate in the proposed Settlement, if it is finally approved:

| STATE | CLASS PERIOD |
|---|---|
| California | June 28, 2007 through July 1, 2017 |
| Colorado | January 12, 2009 through July 1, 2017 |
| Florida | January 12, 2008 through July 1, 2017 |
| Illinois | January 12, 2007 through July 1, 2017 |
| Indiana | January 12, 2006 through July 1, 2017 |
| Nebraska | January 12, 2008 through July 1, 2017 |
| New York | January 12, 2008 through July 1, 2017 |
| Ohio | January 12, 2010 through July 1, 2017 |
| Oregon | January 12, 2006 through July 1, 2017 |
| South Dakota | January 12, 2006 through July 1, 2017 |
| Texas | January 12, 2010 through July 1, 2017 |

- If you did not reside in any of these eleven States or did not purchase Wesson Oil Products in these states during the applicable Class Period, you are not a Class Member and are not affected by this Action or this Settlement.

- The Settlement will provide payments to those who qualify. Class Members must submit a timely and valid Claim Form to be eligible for a payment from the Settlement.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | |
|---|---|---|
| **ACTION** | **EXPLANATION** | **DUE DATE** |
| **SUBMIT A CLAIM FORM** (If you filed a claim in the previous settlement, you do not need to file another) | • Get a payment from the Settlement<br>• Give up rights to ever sue the Defendant about the legal claims in this case | Month x, 202x |
| **EXCLUDE YOURSELF ("OPT OUT")** | • Remove yourself from the Class<br>• Get no payment from the Settlement<br>• Keep your right to be a part of another lawsuit against the Defendant about the legal claims in this case | Month x, 202x |
| **OBJECT** | • Tell the Court why you do not like the Settlement | Month x, 202x |
| **ATTEND A HEARING** | • You or your attorney may ask the Court for permission to speak at the Fairness Hearing about why you do or do not support the proposed Settlement or any of its provisions. The Fairness Hearing is on Month x, 202x at x:xx x.m., Pacific | File Notice of Appearance by: Month x, 202x |
| **DO NOTHING** | • Get no payment<br>• Give up rights to ever sue the Defendant about the legal claims in this case | |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice. The deadlines may be moved, canceled, or otherwise modified, so please check the Settlement Website, www.wessonoilsettlement.com, regularly for updates and further details.

- The Court in charge of this case still has to decide whether to approve the Settlement. Payments will be made if the Court approves the Settlement and after any appeals are resolved. Please be patient.

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** ......................................................................................................................... **4**
    1.    Why is there a notice? ............................................................................................... 4
    2.    What is this lawsuit about? ......................................................................................... 4
    3.    Why is this a class action? ......................................................................................... 4
    4.    Why is there a Settlement? ........................................................................................ 4

**WHO IS AFFECTED BY THE SETTLEMENT?** ........................................................................................... **4**
    5.    How do I know if I am part of the Settlement? ......................................................... 4
    6.    Which Wesson Oil Products are included in the Settlement? ..................................... 5
    7.    What if I am still not sure if I am included in the Settlement? ................................... 5

**SETTLEMENT BENEFITS – WHAT CLASS MEMBERS GET** ....................................................................... **5**
    8.    What does the Settlement provide? ............................................................................ 5
    9.    What can I get from the Settlement? .......................................................................... 6

**HOW TO GET A PAYMENT** ................................................................................................................... **6**
    10.    How can I get a payment? .......................................................................................... 6
    11.    When will I get my payment? ..................................................................................... 6
    12.    What am I giving up to receive a payment or to stay in the Settlement? .................... 6

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ................................................................................. **7**
    13.    How do I get out of the Settlement? .......................................................................... 7
    14.    If I don't exclude myself, can I sue the Defendant for the same thing later? ............. 7
    15.    If I exclude myself, can I still get a Settlement payment? .......................................... 7

**THE LAWYERS REPRESENTING YOU** ................................................................................................... **8**
    16.    Do I have a lawyer in this case? ................................................................................ 8
    17.    How will the lawyers be paid? ................................................................................... 8

**OBJECTING TO THE SETTLEMENT** ....................................................................................................... **8**
    18.    How do I tell the Court that I do not like the Settlement? .......................................... 8
    19.    What is the difference between objecting and excluding? .......................................... 9

**THE COURT'S FAIRNESS HEARING** ..................................................................................................... **9**
    20.    When and where will the Court decide whether to approve the Settlement? .............. 9
    21.    Do I have to come to the hearing? ............................................................................. 9
    22.    May I speak at the hearing? ....................................................................................... 9

**IF YOU DO NOTHING** ....................................................................................................................... **10**
    23.    What happens if I do nothing at all? ........................................................................ 10

**GETTING MORE INFORMATION** ........................................................................................................ **10**
    24.    How do I get more information? .............................................................................. 10

## BASIC INFORMATION

**1.  Why is there a notice?**

You have a right to know about a newly proposed Settlement in this class action lawsuit, and about your options, before the Court decides whether to approve the new Settlement. This new Settlement replace the previous settlement that was appealed and reversed by the Ninth Circuit.

The Court in charge of this case is the United States District Court for Central District of California (the "Court"), and the case is called *In re ConAgra Foods, Inc*, Case No. CV 11-05379-CJC (AGRx), MDL No. 2291. This case is assigned to United States District Judge Cormac J. Carney. The individuals who sued are called the Class Representatives, and the company they sued, Conagra Brands, Inc. (formerly ConAgra Foods, Inc.) ("Conagra"), is called the Defendant.

**2.  What is this lawsuit about?**

The lawsuit alleges that Conagra violated certain laws in the marketing, advertising, and sale of Wesson Oil Products made from Genetically Modified Ingredients ("GMOs") as "Natural."

The Defendant denies any and all wrongdoing of any kind whatsoever and has asserted various defenses that it believes are meritorious.

**3.  Why is this a class action?**

In a class action, one or more people called class representatives (in this case Robert Briseño and Michele Andrade for the California Class; Jill Crouch for the Colorado Class; Julie Palmer for the Florida Class; Pauline Michael for the Illinois Class; Cheri Shafstall for the Indiana Class; Dee Hooper-Kercheval for the Nebraska Class; Kelly McFadden and Necla Musat for the New York Class; Maureen Towey for the Ohio Class; Erika Heins for the Oregon Class; Rona Johnston for the South Dakota Class; and Anita Willman for the Texas Class), sue on behalf of people who have similar claims. All these people are a class or class members. Bringing a case, such as this one, as a class action allows adjudication of many similar claims of persons and entities that might be economically too small to bring in individual actions. One court resolves the issues for all class members, except for those who exclude themselves (opt out) from the class.

**4.  Why is there a Settlement?**

The Defendant denies that it did anything wrong. Instead, both sides, with the assistance of United States Magistrate Judge Douglas F. McCormick of the United States District Court for Central District of California acting as a mediator, have agreed to the Settlement. Both sides want to avoid the cost of further litigation. The Court has not decided in favor of the Class Representatives or the Defendant. The Class Representatives and their attorneys think the Settlement is best for the Classes.

## WHO IS AFFECTED BY THE SETTLEMENT?

**5.  How do I know if I am part of the Settlement?**

The Classes consist of all natural persons who resided in one of the following eleven States and purchased Wesson Oil Products in that State, for their own personal, non-commercial use during the following time periods:

Questions?  Visit www.wessonoilsettlement.com or call toll free 1-833-291-1651

Page 4 of 10

| STATE | CLASS PERIOD |
|-------|--------------|
| California | June 28, 2007 through July 1, 2017 |
| Colorado | January 12, 2009 through July 1, 2017 |
| Florida | January 12, 2008 through July 1, 2017 |
| Illinois | January 12, 2007 through July 1, 2017 |
| Indiana | January 12, 2006 through July 1, 2017 |
| Nebraska | January 12, 2008 through July 1, 2017 |
| New York | January 12, 2008 through July 1, 2017 |
| Ohio | January 12, 2010 through July 1, 2017 |
| Oregon | January 12, 2006 through July 1, 2017 |
| South Dakota | January 12, 2006 through July 1, 2017 |
| Texas | January 12, 2010 through July 1, 2017 |

Excluded from the Classes are: (a) governmental entities; (b) Conagra, and its affiliates, subsidiaries, employees, current and former officers, directors, agents, and representatives; (c) the members of the Court and its staff; and (d) opt outs.

If you did not reside in any of these eleven States during these time periods or did not purchase Wesson Oil Products in these states during the applicable Class Period, then you are not a Class Member and are not affected by this Action or this Settlement.

**6.  Which Wesson Oil Products are included in the Settlement?**

"Wesson Oil Products" means Wesson brand cooking oils, including Wesson Vegetable Oil, Wesson Canola Oil, Wesson Corn Oil, and Wesson Best Blend, all of which were marketed, advertised, and sold as "Natural" during the applicable Class Periods.

**7.  What if I am still not sure if I am included in the Settlement?**

If you are not sure whether you are a Class Member, or have any other questions about the Settlement, visit the Settlement Website, www.wessonoilsettlement.com, or call the Settlement Administrator toll-free at 1-833-291-1651.

## SETTLEMENT BENEFITS – WHAT CLASS MEMBERS GET

**8.  What does the Settlement provide?**

The Settlement provides monetary damages to all Class Members. Specifically, Conagra has agreed to pay $3,000,000 into a Settlement Fund to be used to pay Class Member payments, expenses, administrative costs, service awards to the Class Representatives, and any other costs and expenses related to the Settlement.  Class Counsel are not seeking to be paid their attorneys' fees.

| 9.  What can I get from the Settlement? |
|---|

ALL CLASS MEMBERS

Class Members who timely submit a valid Claim Form may receive $0.15 per unit of Wesson Oil Products purchased during the applicable Class Period. Recovery is limited to one claim per Household, which is defined as all persons residing at the same physical address. If the total value of all valid Claims Forms and amounts identified for direct distribution exceeds or falls short of the funds available for distribution to Class Members (after deducting the portion of Settlement Funds designated for New York and Oregon Class Members), then the amounts of the cash payments will be reduced or increased per Claim filed (or "*pro rata*"), as necessary, to use all of the remaining funds available for distribution to Class Members. Any such *pro rata* adjustment will be calculated prior to distribution of funds (*i.e.*, will be made in a single distribution).

NEW YORK AND OREGON CLASS MEMBERS

A portion of the Settlement Fund, specifically $575,000, will be allocated only to members of the New York and Oregon Classes who submit valid Claim Forms or are identified for direct distribution, in proportion to the number of units purchased. The amount of additional recovery for New York and Oregon Class Members will be adjusted *pro rata* according to the number of valid Claim Forms and direct distributions.

# HOW TO GET A PAYMENT

| 10.  How can I get a payment? |
|---|

If you filed a claim in the previous settlement, you do not need to do anything to receive a payment. If you have not previously filed a claim, or would like to update your claim, go to www.wessonoilsettlement.com and file or download a Claim Form. You can also contact the Settlement Administrator by mail or email and request that a Claim Form be sent to you:

- **By Mail**:  Wesson Oil Settlement, c/o JND Legal Administration, P.O. Box 91249, Seattle, WA 98111-9349.

- **By Email**:  info@wessonoilsettlement.com

Please read the instructions carefully, complete the Claim Form, and either submit the Claim Form online at www.wessonoilsettlement.com or mail it to the Settlement Administrator at Wesson Oil Settlement, c/o JND Legal Administration, P.O. Box 91249, Seattle, WA 98111-9349, postmarked no later than **Month x, 202x**.

If you do not submit a Valid Claim Form by **Month x, 202x**, you will not receive a payment, but you will be bound by the Court's judgment in this Action.

| 11.  When will I get my payment? |
|---|

Payments will be made to Class Members who submit valid and timely Claim Forms after the Court grants "final approval" to the Settlement and after all appeals are resolved. If the Court approves the Settlement, there may be appeals. It is always uncertain whether these appeals can be resolved and resolving them can take time. Please be patient.

| 12.  What am I giving up to receive a payment or stay in the Settlement? |
|---|

If you are a Class Member, unless you opt out from the Settlement, you cannot sue the Defendant, continue to sue, or be part of any other lawsuit against the Defendant about the claims released in this Settlement. It also means that all the decisions by the Court will bind you. The Released Claims and Released Parties are defined in the Settlement

Agreement and describe the legal claims that you give up if you stay in the Settlement. The Released Claims will not include any claim against the Released Parties for bodily injury allegedly suffered in connection with the purchase or use of the Wesson Oil Products. The Settlement Agreement is available at www.wessonoilsettlement.com.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from the Settlement or you want to keep the right to sue or continue to sue the Defendant on your own about the claims released in this Settlement, then you must take steps to get out. This is called excluding yourself—or it is sometimes referred to as "opting out" of the Settlement.

| **13.  How do I get out of the Settlement?** |
|---|

To exclude yourself (or "opt out") from the Settlement, you must complete and submit the online Opt-Out form **here** by **Month x, 202x**, or mail a written request, postmarked no later than Month x, 202x, to the Settlement Administrator at the following address:

Wesson Oil Settlement
Exclusions
c/o JND Legal Administration
P.O. Box 91250
Seattle, WA 98111-9350

A written Opt-Out Request must include:

- Your handwritten signature;

- Your full legal name, valid mailing address, and functioning telephone number;

- A statement that you have reviewed and understood the Class Notice and choose to be excluded from the Settlement; and

- The name of and contact information for your attorney, if represented by an attorney.

If you ask to be excluded from the Settlement, you will not get any Settlement payment, and you cannot object to the Settlement. You will not be legally bound by anything that happens in this lawsuit, and you may be able to sue (or continue to sue) the Defendant and the other Released Parties about the claims in this lawsuit.

No person or entity may opt out on behalf of another Class Member. No class-wide, mass opt outs, or opt outs signed by attorneys are permitted.

If you don't include the required information or timely submit your request for exclusion, you will remain a Class Member and will not be able to sue the Defendant about the claims in this lawsuit.

| **14.  If I don't exclude myself, can I sue the Defendant for the same thing later?** |
|---|

No. Unless you exclude yourself, you give up any right to sue the Defendant for the claims that this Settlement resolves. If you have a pending lawsuit, speak to your lawyer in that lawsuit immediately. You must exclude yourself from this Settlement to continue your own lawsuit. If you properly exclude yourself from the Settlement, you will not be bound by any orders or judgments entered in the Action relating to the Settlement.

| **15.  If I exclude myself, can I still get a Settlement payment?** |
|---|

No. You will not get any money from the Settlement if you exclude yourself. If you exclude yourself from the Settlement, do not send in a Claim Form asking for benefits.

## THE LAWYERS REPRESENTING YOU

| **16. Do I have a lawyer in this case?** |
| --- |

Yes. The Court has appointed attorneys from the law firms DiCello Levitt LLC, Tadler Law LLP, and Milberg Coleman Bryson Phillips Grossman LLP to represent you and the other Class Members. The lawyers are called Class Counsel. They are experienced in handling similar class action cases. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

| **17. How will the lawyers be paid?** |
| --- |

Class Counsel are not seeking their attorneys' fees; however, will be filing a motion to be paid their expenses from litigating the case since 2011, and service awards of (a) up to $3,000 for each of the six Class Representatives whose depositions were taken by Conagra (Robert Briseño, Michele Andrade, Jill Crouch, Pauline Michael, Necla Musat, and Maureen Towey) and (b) up to $1,000 for each of the seven Class Representatives whose depositions were not taken (Julie Palmer, Cheri Shafstall, Dee Hooper-Kercheval, Kelly McFadden, Erika Heins, Rona Johnston, and Anita Willman). The Court will determine the amount of expenses and service awards, which will be paid from the Settlement Fund.

After Class Counsel's motion for expenses is filed on or before **Month x, 202x**, it will be posted at www.wessonoilsettlement.com. You will have an opportunity to comment on this request.

## OBJECTING TO THE SETTLEMENT

| **18. How do I tell the Court that I do not like the Settlement?** |
| --- |

Any Class Member who does not timely and properly opt out of the Settlement may object to the fairness, reasonableness, or adequacy of the proposed Settlement under Federal Rule of Civil Procedure 23. Each Class Member who wishes to object to any term of the Settlement must do so, in writing, by either filing a written objection with the Clerk of the Court by **Month x, 202x**, or by submitting a written objection, postmarked no later than **Month x, 202x**, to the Settlement Administrator.

**The written objection must**

- Attach copies of any materials that the objector intends to submit to the Court or present at the Fairness Hearing;

- Be personally signed by the objector and, if represented by counsel, by his or her counsel;

- Include information or documents sufficient to show that the objector is a Class Member; and

- Clearly state in detail (i) the legal and factual ground(s) for the objection, (ii) the objecting Class Member's name, mailing address, email address, and telephone number, (iii) whether it applies only to the objector, to a specific subset of the Class, or to the entire Class, (iv) if represented by counsel, such counsel's name, email address, mailing address, and telephone number, and (v) any request to present argument to the Court at the Fairness Hearing.

Your objection, along with any supporting material you wish to submit, must be filed with the Court, or submitted by mail with the Settlement Administrator by **Month x, 202x** at the following addresses:

| Clerk of the Court | Settlement Administrator |
|---|---|
| Office of the Clerk<br>United States District Court for the Central District of California<br>411 West Fourth Street<br>Courtroom 9B<br>Santa Ana, CA 92701 | Wesson Oil Settlement Objections<br>c/o JND Legal Administration<br>P.O. Box 91250<br>Seattle, WA 98111-9350<br><br>www.wessonoilsettlement.com |

## 19. What is the difference between objecting and excluding?

Objecting is simply telling the Court that you don't like something about the Settlement. You can object to the Settlement only if you do not exclude yourself from the Settlement. Excluding yourself from the Settlement is telling the Court that you don't want to be part of the Settlement. If you exclude yourself from the Settlement, you have no basis to object to the Settlement because it no longer affects you.

## THE COURT'S FAIRNESS HEARING

## 20. When and where will the Court decide whether to approve the Settlement?

The Court will hold a Fairness Hearing on **Month x, 202x at x:xx x.m.**, Pacific, at the Ronald Reagan Federal Building and United States Courthouse, 411 West Fourth Street, Courtroom B, Santa Ana, California 92701.

At the Fairness Hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. The Court will also consider how much to pay Class Counsel and the Class Representatives. If there are objections, the Court will consider them at this time. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

## 21. Do I have to come to the hearing?

No. Class Counsel will answer any questions that the Court may have, but you may come to the hearing at your own expense. If you submit an objection, you don't have to come to Court to talk about it. As long as you filed and mailed your written objection on time to the proper addresses, the Court will consider it. You may also pay your own lawyer to attend the hearing, but it's not necessary.

## 22. May I speak at the hearing?

Yes. You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intent to Appear." Your request must be filed with the Clerk of the Court and the Parties' through Settlement Administrator (*see* Question 18 for addresses) postmarked no later than **Month x, 202x**.

Any such request must state the name, address, and telephone number of the Class Member, as well as the name, address, and telephone number of the person that will appear on his or her behalf. Any request for appearance that fails to satisfy these requirements, or that has otherwise not been properly or timely submitted, will be deemed ineffective and a waiver of such Class Member's rights to appear and to comment on the Settlement at the Fairness Hearing. Only the Parties, Class Members, or their counsel may request to appear and be heard at the Fairness Hearing. Persons or entities that opt out may not request to appear and be heard at the Fairness Hearing.

## IF YOU DO NOTHING

| 23.  What happens if I do nothing at all? |
|---|

If you do nothing, but filed a claim under the prior settlement, you will get a payment under the new Settlement. If you do nothing, but you did *not* file a claim under the prior settlement, you will *not* get a payment from the new Settlement. Unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against the Defendant about the legal issues in this case, ever again.

## GETTING MORE INFORMATION

| 24.  How do I get more information? |
|---|

This Notice summarizes the proposed Settlement. More details are in the Settlement Agreement, available at the Settlement Website, www.wessonoilsettlement.com. If you have additional questions or want to request a Claim Form, you can visit www.wessonoilsettlement.com or contact the Settlement Administrator:

- **By Mail**:  Wesson Oil Settlement, c/o JND Legal Administration, P.O. Box 91249, Seattle, WA 98111-9349.

- **By Email**:  info@wessonoilsettlement.com

- **By Phone Toll-Free**:  1-833-291-1651.

Updates will be posted at www.wessonoilsettlement.com, as information about the Settlement process becomes available.

You may review the various case documents at www.wessonoilsettlement.com; by visiting (during business hours) the clerk's office at the United States District Court for the Central District of California, 411 West Fourth Street, Courtroom 9B, Santa Ana, California 92701, File: *In re ConAgra Foods, Inc, Case No. CV 11-05379-CJC (AGRx)*, or by accessing the case docket through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov.

**PLEASE DO NOT CONTACT THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THE SETTLEMENT OR THE CLAIM PROCESS.**

Dated:  Month x, 202x                                    By Order of the Court
                                                                       United States District Court
                                                                       Central District of California

# Exhibit A-4

SETTLEMENT AGREEMENT AND RELEASE

*In re Conagra Foods, Inc.*, No. CV 11-05379-CJC (AGRx),
MDL No. 2291 (C.D. Cal.)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| IN RE CONAGRA FOODS, INC. | Case No. CV 11-05379-CJC (AGRx) |
| | MDL No. 2291 |
| | **DECLARATION OF GINA M. INTREPIDO-BOWDEN REGARDING PROPOSED SETTLEMENT NOTICE PROGRAM** |

I, GINA M. INTREPIDO-BOWDEN, declare as follows:

## **INTRODUCTION**

1.      I am a Vice President at JND Legal Administration LLC ("JND"). I am a judicially recognized legal notice expert with more than 20 years of legal experience designing and implementing class action legal notice programs. I have been involved in many of the largest and most complex class action notice programs, including all aspects of notice dissemination. A comprehensive description of my experience is attached as Exhibit A.

2.      I submit this Declaration, based on my personal knowledge and information provided to me by the Parties and experienced JND employees working under my supervision, to describe the proposed Notice Program and address why it is consistent with other class notice plans that courts have determined satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, and any other applicable statute, law or rule, as well as the Federal Judicial Center ("FJC") guidelines for best practicable due process notice.

## BACKGROUND AND EXPERIENCE

3.      JND is a leading legal administration services provider with headquarters located in Seattle, Washington, and multiple offices throughout the United States. JND has extensive experience with all aspects of legal administration and has administered hundreds of class action matters. JND's class action division provides all services necessary for the effective administration of class actions including: (1) all facets of providing legal notice to potential class members, such as developing the final class member list and addresses for them, outbound mailing, email notification, and the design and implementation of media programs; (2) website design and deployment, including on-line claim filing capabilities; (3) call center and other contact support; (4) secure class member data management; (5) paper and electronic claims processing; (6) lien verification, negotiation, and resolution; (7) calculation design and programming; (8) payment disbursements through check, wire, PayPal, merchandise credits, and other means; (9) qualified settlement fund management and tax reporting; (10) banking services and reporting; and (11) all other functions related to the secure and accurate administration of class actions.

4.      JND is an approved vendor for the United States Securities and Exchange Commission ("SEC"), as well as for the Federal Trade Commission ("FTC"), and we have been working with the following other government agencies: the U.S. Equal Employment Opportunity Commission ("EEOC"), the Office of the Comptroller of the Currency ("OCC"), the Consumer Financial Protection Bureau ("CFPB"), the Federal Deposit Insurance Corporation ("FDIC"), the Federal Communications Commission ("FCC"), the Department of Justice ("DOJ") and the Department of Labor ("DOL"). We have Master Services Agreements with various law firms, corporations, and banks, which were only awarded after JND underwent rigorous reviews of our

systems, privacy policies, and procedures. JND has also been certified as SOC 2 compliant by noted accounting firm Moss Adams. Finally, JND has been recognized by various publications, including, among others, the *National Law Journal*, the *Legal Times* and the *New York Law Journal*, for excellence in class action administration.

5.      The principals of JND collectively have over 80 years of experience in class action legal and administrative fields and have overseen claims processes for some of the largest legal claims administration matters in the country's history and regularly prepare and implement court-approved notice and administration campaigns throughout the United States.

6.      JND was appointed the notice and claims administrator in the $2.67 billion Blue Cross Blue Shield antitrust settlement, in which we mailed over 100 million postcard notices; sent hundreds of millions of email notices and reminders; placed notice via print, television, radio, internet, and more; received and processed more than eight million claims; and staffed the call center with more than 250 agents during the peak notice program. JND was also appointed the settlement administrator in the $1.3 billion Equifax Data Breach Settlement, the largest class action in terms of the 18 million claims received. Email notice was sent twice to over 140 million class members, the interactive website received more than 130 million hits, and the call center was staffed with 1,500 agents at the peak of call volume.

7.      Other large JND matters include a voluntary remediation program in Canada on behalf of over 30 million people; the $1.5 billion Mercedes-Benz Emissions class action settlements, the $120 million GM Ignition class action economic settlement, where we sent notice to nearly 30 million class members; and the $215 million USC Student Health Center Settlement on behalf of women who were sexually abused by a doctor at USC, as well as hundreds of others.

8.     More importantly, this Court previously appointed JND as the settlement administrator in *this* case, and we then designed and implemented the Notice Plan that was ultimately disseminated to the Classes in connection with the Original Settlement. *See* ECF No. 654. With the benefit of that experience, JND is armed with enhanced knowledge to tailor the Proposed Notice Program to best reach the *same* Classes of individuals under the terms of the New Settlement. The Proposed Notice Program, which is explained in further detail below, has been modified accordingly to reach as many members of the Classes as practicable.

9.     As a member of JND's Legal Notice Team, I research, design, develop, and implement a wide array of legal notice programs to meet the requirements of Rule 23 of the Federal Rules of Civil Procedure and relevant state court rules. In addition to providing notice directly to potential class members through direct mail and email, our media campaigns, which are regularly approved by courts throughout the United States, have used a variety of media, including newspapers, press releases, magazines, trade journals, radio, television, social media and the internet depending on the circumstances and allegations of the case, the demographics of the class, and the habits of its members, as reported by various research and analytics tools. During my career, I have submitted declarations to courts throughout the country attesting to the creation and launch of various notice programs.

## NOTICE PROGRAM OVERVIEW

10.     The objective of the Notice Program is to provide notice of the newly proposed Settlement to members of the following Settlement Classes, which are limited by the applicable statute of limitations periods established by the laws of the eleven states ("Class States"):

a.     <u>California Class</u>: all natural persons who resided in the State of California and purchased Wesson Oil Products in California, for personal, non-commercial use, between June 28, 2007 and July 1, 2017 ("California Class Period").

b.    <u>Colorado Class</u>: all natural persons who resided in the State of Colorado and purchased Wesson Oil Products in Colorado, for personal, non-commercial use, between January 12, 2009 and July 1, 2017 ("Colorado Class Period").

c.    <u>Florida Class</u>: all natural persons who resided in the State of Florida and purchased Wesson Oil Products in Florida, for personal, non-commercial use, between January 12, 2008 and July 1, 2017 ("Florida Class Period").

d.    <u>Illinois Class</u>: all natural persons who resided in the State of Illinois and purchased Wesson Oil Products in Illinois, for personal, non-commercial use, between January 12, 2007 and July 1, 2017 ("Illinois Class Period").

e.    <u>Indiana Class</u>: all natural persons who resided in the State of Indiana and purchased Wesson Oil Products in Indiana, for personal, non-commercial use, between January 12, 2006 and July 1, 2017 ("Indiana Class Period").

f.    <u>Nebraska Class</u>: all natural persons who resided in the State of Nebraska and purchased Wesson Oil Products in Nebraska, for personal, non-commercial use, between January 12, 2008 and July 1, 2017 ("Nebraska Class Period").

g.    <u>New York Class</u>: all natural persons who resided in the State of New York and purchased Wesson Oil Products in New York, for personal, non-commercial use, between January 12, 2008 and July 1, 2017 ("New York Class Period").

h.    <u>Ohio Class</u>: all natural persons who resided in the State of Ohio and purchased Wesson Oil Products in Ohio, for personal, non-commercial use, between January 12, 2010 and July 1, 2017 ("Ohio Class Period").

i.    <u>Oregon Class</u>: all natural persons who resided in the State of Oregon and purchased Wesson Oil Products in Oregon, for personal, non-commercial use, between January 12, 2006 and July 1, 2017 ("Oregon Class Period").

j.    <u>South Dakota Class</u>: all natural persons who resided in the State of South Dakota and purchased Wesson Oil Products in South Dakota, for personal, non-commercial use, between January 12, 2006 and July 1, 2017 ("South Dakota Class Period").

k.    <u>Texas Class</u>: all natural persons who resided in the State of Texas and purchased Wesson Oil Products in Texas, for personal, non-commercial use, between January 12, 2010 and July 1, 2017 ("Texas Class Period").

11.    Excluded from the Classes are:  (a) governmental entities; (b) Conagra, and its affiliates, subsidiaries, employees, current and former officers, directors, agents, and representatives; (c) the members of the Court and its staff; and (d) Opt-Outs.

12.    JND's proposed Notice Program includes the following components:

a.  CAFA Notice to the appropriate state and federal officials;

b.  Email notice to Class Members who filed a claim in the previously proposed settlement;

c.  Print notice in the national edition of a leading consumer magazine (*People*);

d.  Digital notice targeted to the Class States through the leading digital network (Google Display Network – "GDN") and two of the top social platforms (Facebook and Instagram);

e.  Newspaper placements in the *Los Angeles Daily News* to fulfill California's Consumers Legal Remedies Act (CLRA) notice requirement;

f.  An internet search effort with a top search engine site (Google);

g.  A press release distributed to news outlets nationwide;

h.  Sponsorship opportunities with TopClassActions.com and ClassAction.org;

i.  The Settlement Website on which the notice and other important documents will be posted and the Claim Form and Opt Out request may be submitted electronically;

j.  The Settlement toll-free phone number, P.O. Box, and email from which Class Members may obtain additional information and/or communicate with JND about the Settlement.

13.     The print and digital notice alone is designed to reach 70% of potential Class Members.[1] The email notice, CLRA newspaper placements, internet search effort, press release, and sponsorship opportunities will extend the reach even further.

## TARGET ANALYSIS

14.     JND utilizes reputable advertising media research tools when analyzing our target, selecting media and determining the effectiveness of our media plans. MRI | Simmons (MRI)[2] data was used to analyze demographic and media usage among adults 18 years of age or older ("Adults 18+") in the Class States who purchased Wesson Best Blend or Wesson Vegetable Oil in the past six months ("Wesson Oil Consumers in the Class States").[3] According to MRI data, the majority of Wesson Oil Consumers in the Class States are: 25 years of age or older (88.0%), homeowners (71%), less educated (69% *do not* have a bachelor's degree or higher), White (67%), and from middle to lower income households (61% have a household income less than $100K). Compared to the general adult population, Wesson Oil Consumers in the Class States are more likely to be:  65 years of age or older, Spanish-speakers, and Black/African American or Spanish/Hispanic/Latino descent/origin.

15.     Given the Class Periods, JND considered that some Class Members may no longer reside within the Class States. As a result, some nationwide notice tactics, as discussed in more detail below, will be considered to reach Class Members who may now reside outside of the Class States.

---

[1] Reach is the net, unduplicated percent of potential Class Members who have an opportunity to be exposed to notice at least one time over the course of the notice campaign.

[2] MRI is a nationally accredited research firm that provides consumer demographics, product and brand usage, and audience/exposure in all forms of advertising media. MRI is the leading producer of media and consumer research in the United States.

[3] MRI data included the following six states that are not part of the Class States: ID, KS, MT, ND, WA, and WY.

16.     In terms of media usage, MRI data indicates that 96% of Wesson Oil Consumers in the Class States use the internet in a 30-day period, with 84% looking at or using the internet on their cellphone or smartphone. In addition, 64% visited Facebook and 37% visited Instagram. As a result, JND's proposed plan relies heavily on digital notice geographically targeted to the Class States, as well as a national print effort to extend reach beyond the Class States.

## NOTICE PLAN DETAILS

17.     **Email Notice**: JND will send an Email Notice to approximately 76,326 Class Members who filed a claim in the previous settlement.

18.     **Print Notice**: JND will place a minimum third-page notice in the national edition of *People*, a leading weekly entertainment magazine. *People* provides readership to over 34 million adults nationwide, reaching 11% of Wesson Oil Consumers in the Class States. Its readers are also 16% more likely to be Wesson Oil Consumers in the Class States, as compared to the general population. *People* extends reach among a broad demographic segment, including older Class Members who may not frequent the internet, as well as those who may no longer reside in the Class States.

19.     **Digital Notice**: JND will implement a twelve-week digital notice campaign through GDN, Facebook, and Instagram. The digital effort will deliver approximately 179 million impressions to Adults 18+ in the Class States. An emphasis will be placed on adults 35 years of age or older (Adults 35+) and those from lower income households. A portion of the activity will target a look-a-like audience: that is, individuals with demographic traits similar to those who visit the Settlement Website or file a claim. Focused targeting is also included. A portion of the GDN impressions will target those with an affinity for cooking and fried cooking. The GDN effort will also include a mix of various cooking sites, such as AllRecipes.com,

FoodNetwork.com, SimplyRecipes.com, BonAppetit.com, and MyRecipes.com, as well as some Spanish language sites. Likewise, a portion of the Facebook/Instagram activity will be allocated towards those interested in cooking, cooking channels, cooking shows, cooking recipes, vegetable oil. The digital ads will directly link Class Members to the Settlement Website where they can receive more information about the settlement, as well as file an online claim or opt out.

20.    **CLRA Notice**: To fulfill the CLRA notice requirement, JND will place a notice once per week, over four consecutive weeks, in the *Los Angeles Daily News.*

21.    **Internet Search**: Web browsers frequently default to a search engine pages like Google, Bing, or Yahoo!, making search engines a common source to get to a specific website (*i.e.*, as opposed to typing in the desired URL in the navigation bar). As a result, JND will implement an internet search effort with Google. When purchased keywords related to the case are searched, a paid ad with a hyperlink to the Settlement Website may appear on the search engine results page. Efforts will be monitored and optimized so that ads appear above or below organic search results, generating the most click-throughs to the Settlement Website. The internet search effort enhances notice exposure nationwide and allows Class Members who may be searching about the case to readily find a direct link to the Settlement Website.

22.    **Press Release**: JND will distribute a press release in English and Spanish that will be issued to approximately 15,000 English and Spanish media outlets nationwide, which will extend reach to Class Members wherever they may now reside. The press release will provide information about the Settlement and allow for additional notice exposure.

23.    **Sponsorship Opportunities**: Certain class action websites are frequented for updates on class action lawsuits. These sites direct individuals to case specific websites. As a

result, we propose sponsorship opportunities with TopClassActions.com and ClassAction.org to help drive potential Class Members to the Settlement Website.

24.     **Settlement Website**: JND will develop an informational, interactive, Settlement Website that will allow Class Members to obtain more information about the Settlement, including relevant pleadings, settlement documents, any applicable deadlines, the Posted Notice, and a notice in Spanish for Spanish-speaking Class Members. The Settlement Website will have an easy-to-navigate design and will be formatted to emphasize important information and deadlines.

25.     The Settlement Website will be optimized for mobile visitors so that information loads quickly on mobile devices and will also be designed to maximize search engine optimization through Google and other search engines. Keywords and natural language search terms will be included in the site's metadata to maximize search engine rankings. Visitors to the Settlement Website will have the ability to submit a Claim Form or Opt-Out Request electronically.

26.     **Settlement Toll-Free Number, P.O. Box, and Email**: JND will establish and maintain a 24-hour, toll-free telephone line where callers may obtain information about the Settlement. JND will also maintain a dedicated Post Office Box and email address where Class Members may send claims, opt outs, objections, and/or inquiries.

## NOTICE REACH

27.     To calculate the reach of the Notice Program, JND used an MRI and Comscore reach platform.[4] According to these two reputable resources, the proposed print and digital effort

---

[4] Comscore's multi-reach platform allows us to analyze unduplicated audiences across desktop, smartphone, and tablet devices. We can assess the efficiency and effectiveness of our proposed media plans by reducing waste and improving campaign performance across all devices.

will reach 70% of likely Class Members. This reach calculation does not include the direct notice that will be sent to prior claimants under the previously-proposed settlement, CLRA notice placements, internet search effort, press release, and sponsorships with popular class action websites, all of which will extend reach further.

## NOTICE DESIGN AND CONTENT

28.     I have reviewed the proposed notice documents and believe they are in plain language and comply with the Rule 23's guidelines for class action notices, as well as the FJC's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*. The notices contain easy-to-read summaries of the settlement and instructions on how to obtain more information about the case. Courts routinely approve notices that have been written and designed in a similar manner.

## CONCLUSION

29.     In my opinion, the Notice Program as described herein provides the best notice practicable under the circumstances; is consistent with the requirements of Rule 23 and all applicable court rules; and is consistent with other similar court-approved notice programs.  The Notice Program is designed to reach at least 70% of likely Class Members via the print and digital notice effort alone and provide them with the opportunity to review a notice and the ability to easily take next steps to learn more about the Settlement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 30, 2022, in Stone Harbor, New Jersey.

_____
GINA M. INTREPIDO-BOWDEN

# - EXHIBIT A -

# GINA INTREPIDO-BOWDEN

VICE PRESIDENT





# I. INTRODUCTION

Gina Intrepido-Bowden is a Vice President at JND Legal Administration ("JND"). She is a court recognized legal notice expert who has been involved in the design and implementation of hundreds of legal notice programs reaching class members/claimants throughout the U.S., Canada, and the world, with notice in over 35 languages. Some notable cases in which Gina has been involved include:

- *Flaum v Doctor's Assoc., Inc.*, a $30 million FACTA settlement

- *FTC v. Reckitt Benckiser Grp. PLC*, the $50 million Suboxone branded drug antitrust settlement

- *In re Blue Cross Blue Shield Antitrust Litig.*, a $2.67 billion antitrust settlement

- *In re General Motors LLC Ignition Switch Litig.*, the $120 million GM Ignition Switch economic settlement

- *In re Home Depot, Inc., Customer Data Sec. Breach Litig.*, a security breach impacting over 40 million consumers who made credit/debit card purchases in a Home Depot store

- *In re Monitronics Int'l, Inc.*, a $28 million TCPA settlement

- *In re Residential Schools Litig.*, a complex Canadian class action incorporating a groundbreaking notice program to remote aboriginal persons qualified to receive benefits in the multi-billion-dollar settlement

- *In re Royal Ahold Sec. and "ERISA"*, a $1.1 billion securities settlement involving a comprehensive international notice effort

- *In re Skelaxin (Metaxalone) Antitrust Litig.*, a prescription antitrust involving notice to both third party payor and consumer purchasers

- *In re TJX Cos., Inc. Retail Sec. Breach Litig.*, this $200 million settlement impacted 45 million credit/debit cards in the U.S. and Canada making it the then-largest theft of consumer data

- *In re Trans Union Corp. Privacy Litig.*, a $75 million data breach settlement involving persons with a credit history

- *Thompson v Metropolitan Life Ins. Co.*, a large race-based pricing settlement involving 25 million policyholders

- *USC Student Health Ctr. Settlement*, a $215 million settlement providing compensation to women who were sexually assaulted, harassed and otherwise abused by Dr. George M. Tyndall

- *Williams v. Weyerhaeuser Co.*, a consumer fraud litigation involving exterior hardboard siding on homes and other structures

With more than 25 years of advertising research, planning and buying experience, Gina began her career working for one of New York's largest advertising agency media departments (BBDO), where she designed multi-million-dollar media campaigns for clients such as Gillette, GE, Dupont, and HBO. Since 2000, she has applied her media skills to the legal notification industry, working for several large legal notification firms. Gina is an accomplished author and speaker on class notice issues including effective reach, notice dissemination as well as noticing trends and innovations. She earned a Bachelor of Arts in Advertising from Penn State University, graduating *summa cum laude*.



# II. JUDICIAL RECOGNITION

Courts have favorably recognized Ms. Intrepido-Bowden's work as outlined by the sampling of Judicial comments below:

## 1. Judge Victoria A. Roberts

***Graham v. Univ. of Michigan,*** (March 29, 2022)
No. (S.D. Ill.):

*The Court finds that the foregoing program of Class Notice and the manner of its dissemination is sufficient under the circumstances and is reasonably calculated to apprise the Settlement Class of the pendency of this Action and their right to object to the Settlement.  The Court further finds that the Class Notice program is reasonable; that it constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and that it meets the requirements of due process and Federal Rule of Civil Procedure 23.*

## 2. Honorable Michael Markman

***DC 16 v. Sutter Health,*** (March 11, 2022)
No. RG15753647 (Cal. Super. Ct.):

*The Court approves and appoints JND Legal Administration ("JND") to serve as the notice provider and directs JND to carry out all duties and responsibilities of providing notice and processing requests for exclusion.*

## 3. Honorable P. Kevin Castel

***Hanks v. Lincoln Life & Annuity Co. of New York,*** (February 23, 2022)
No. 16-cv-6399 PKC (S.D.N.Y.):

*The Court appoints JND Legal Administration LLC ("JND"), a competent firm, as the Settlement Administrator...The form and content of the notices, as well as the manner of dissemination described below, meet the requirements of Rule 23 and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled thereto.*

### 4.   Judge William M. Conley

**Bruzek v. Husky Oil Operations Ltd.,** (January 31, 2022)
No. 18-cv-00697 (W.D. Wis.):

*The claims administrator estimates that at least 70% of the class received notice... the court concludes that the parties' settlement is fair, reasonable and adequate under Rule 23(e).*

### 5.   Honorable Dana M. Sabraw

**In re Packaged Seafood Prods. Antitrust Litig. (DPP Class),** (January 26, 2022)
No. 15-md-02670 (S.D. Cal.):

*The rigorous notice plan proposed by JND satisfies requirements imposed by Rule 23 and the Due Process clause of the United States Constitution. Moreover, the contents of the notice satisfactorily informs Settlement Class members of their rights under the Settlement.*

### 6.   Honorable Dana M. Sabraw

**In re Packaged Seafood Prods. Antitrust Litig. (EPP Class),** (January 26, 2022))
No. 15-md-02670 (S.D. Cal.):

*Class Counsel retained JND, an experienced notice and claims administrator, to serve as the notice provider and settlement claims administrator.  The Court approves and appoints JND as the Claims Administrator.  EPPs and JND have developed an extensive and robust notice program which satisfies prevailing reach standards.  JND also developed a distribution plan which includes an efficient and user-friendly claims process with an effective distribution program.  The Notice is estimated to reach over 85% of potential class members via notice placements with the leading digital network (Google Display Network), the top social media site (Facebook), and a highly read consumer magazine (People)... The Court approves the notice content and plan for providing notice of the COSI Settlement to members of the Settlement Class.*

### 7.   Judge Alvin K. Hellerstein

***Leonard v. John Hancock Life Ins. Co. of NY,*** (January 10, 2022)
No. 18-CV-04994 (S.D.N.Y.):

*The Court appoints Gina Intrepido-Bowden of JND Legal Administration LLC, a competent firm, as the Settlement Administrator...the Court directs that notice be provided to class members through the Notices, attached as Exhibits B-C to the Declaration of Gina M. Intrepido-Bowden (the "Intrepido-Bowden Declaration"), and through the notice program described in described in Section 5 of the Agreement and Paragraphs 24-33 of the Intrepido-Bowden Declaration.  The Court finds that the manner of distribution of the Notices constitutes the best practicable notice under the circumstances as well as valid, due and sufficient notice to the Class and complies fully with the requirements of Federal Rule of Civil Procedure 23 and the due process requirements of the United States Constitution.*

### 8.   Judge Timothy J. Corrigan

***Levy v. Dolgencorp, LLC,*** (December 2, 2021)
No. 20-cv-01037-TJC-MCR (M.D. Fla.):

*No Settlement Class Member has objected to the Settlement and only one Settlement Class Member requested exclusion from the Settlement through the opt-out process approved by this Court...The Notice Program was the best notice practicable under the circumstances. The Notice Program provided due and adequate notice of the proceedings and of the matters set forth therein, including the proposed Settlement set forth in the Agreement, to all persons entitled to such notice. The Notice Program fully satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution, which include the requirement of due process.*

### 9.   Honorable Nelson S. Roman

***Swetz v. GSK Consumer Health, Inc.,*** (November 22, 2021)
No. 20-cv-04731 (S.D.N.Y.):

*The Notice Plan provided for notice through a nationwide press release; direct notice through electronic mail, or in the alternative, mailed, first-class postage*

*prepaid for identified Settlement Class Members; notice through electronic media—such as Google Display Network and Facebook—using a digital advertising campaign with links to the dedicated Settlement Website; and a toll-free telephone number that provides Settlement Class Members detailed information and directs them to the Settlement Website. The record shows, and the Court finds, that the Notice Plan has been implemented in the manner approved by the Court in its Preliminary Approval Order.*

### 10. Honorable James V. Selna

***Herrera v. Wells Fargo Bank, N.A.,*** (November 16, 2021)
No. 18-cv-00332-JVS-MRW (C.D. Cal.):

*On June 8, 2021, the Court appointed JND Legal Administration ("JND") as the Claims Administrator… JND mailed notice to approximately 2,678,266 potential Non-Statutory Subclass Members and 119,680 Statutory Subclass Members. Id. ¶ 5. 90% of mailings to Non-Statutory Subclass Members were deemed delivered, and 81% of mailings to Statutory Subclass Members were deemed delivered. Id. ¶ 9. Follow-up email notices were sent to 1,977,514 potential Non-Statutory Subclass Members and 170,333 Statutory Subclass Members, of which 91% and 89% were deemed delivered, respectively. Id. ¶ 12. A digital advertising campaign generated an additional 5,195,027 views. Id. ¶ 13…Accordingly, the Court finds that the notice to the Settlement Class was fair, adequate, and reasonable.*

### 11. Judge Morrison C. England, Jr.

***Martinelli v. Johnson & Johnson,*** (September 27, 2021)
No. 15-cv-01733-MCE-DB (E.D. Cal.):

*The Court appoints JND, a well-qualified and experienced claims and notice administrator, as the Settlement Administrator.*

## 12. Honorable Nathanael M. Cousins

***Malone v. Western Digital Corp.***, (July 21, 2021)
No. 20-cv-03584-NC (N.D. Cal.):

*The Court hereby appoints JND Legal Administration as Settlement Administrator... The Court finds that the proposed notice program meets the requirements of Due Process under the U.S. Constitution and Rule 23; and that such notice program- which includes individual direct notice to known Settlement Class Members via email, mail, and a second reminder email, a media and Internet notice program, and the establishment of a Settlement Website and Toll-Free Number-is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.  The Court further finds that the proposed form and content of the forms of the notice are adequate and will give the Settlement Class Members sufficient information to enable them to make informed decisions as to the Settlement Class, the right to object or opt-out, and the proposed Settlement and its terms.*

## 13. Judge Vernon S. Broderick, Jr.

***In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.***, (June 7, 2021)
No. 14-md-02542 (S.D.N.Y.):

*The Notice Plan provided for notice through a nationwide press release, print notice in the national edition of People magazine, and electronic media—Google Display Network, Facebook, and LinkedIn—using a digital advertising campaign with links to a settlement website. Proof that Plaintiffs have complied with the Notice Plan has been filed with the Court. The Notice Plan met the requirements of due process and Federal Rule of Civil Procedure 23; constituted the most effective and best notice of the Agreement and fairness hearing practicable under the circumstances; and constituted due and sufficient notice for all other purposes to all other persons and entities entitled to receive notice.*

### 14. Honorable Louis L. Stanton

***Rick Nelson Co. v. Sony Music Ent.,*** (May 25, 2021)
No. 18-cv-08791 (S.D.N.Y.):

*Notice of the pendency of this Action as a class action and of the proposed Settlement was given to all Class Members who could be identified with reasonable effort. The form and method of notifying the Class of the pendency of the action as a class action and of the terms and conditions of the proposed Settlement met the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, due process, and any other applicable law, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.*

### 15. Honorable Daniel D. Domenico

***Advance Trust & Life Escrow Serv., LTA v. Sec. Life of Denver Ins. Co.,*** (January 29, 2021)
No. 18-cv-01897-DDD-NYW (D. Colo.):

*The proposed form and content of the Notices meet the requirements of Federal Rule of Civil Procedure 23(c)(2)(B)...The court approves the retention of JND Legal Administration LLC as the Notice Administrator.*

### 16. Honorable Virginia A. Phillips

***Sonner v. Schwabe North America, Inc.,*** (January 25, 2021)
No. 15-cv-01358 VAP (SPx) (C.D. Cal.):

*Following preliminary approval of the settlement by the Court, the settlement administrator provided notice to the Settlement Class through a digital media campaign. (Dkt. 203-5). The Notice explains in plain language what the case is about, what the recipient is entitled to, and the options available to the recipient in connection with this case, as well as the consequences of each option. (Id., Ex. E). During the allotted response period, the settlement administrator received no requests for exclusion and just one objection, which was later withdrawn. (Dkt. 203-1, at 11).*

*Given the low number of objections and the absence of any requests for exclusion, the Class response is favorable overall.  Accordingly, this factor also weighs in favor of approval.*

## 17.  Honorable R. Gary Klausner

***A.B. v. Regents of the Univ. of California,*** (January 8, 2021)
No. 20-cv-09555-RGK-E (C.D. Cal.):

*The parties intend to notify class members through mail using UCLA's patient records. And they intend to supplement the mail notices using Google banners and Facebook ads, publications in the LA times and People magazine, and a national press release. Accordingly, the Court finds that the proposed notice and method of delivery sufficient and approves the notice.*

## 18.  Judge Jesse M. Furman

***In re General Motors LLC Ignition Switch Litig.,*** **economic settlement,** (December 18, 2020) No. 2543 (MDL) (S.D.N.Y.):

*The Court finds that the Class Notice and Class Notice Plan satisfied and continue to satisfy the applicable requirements of Federal Rules of Civil Procedure 23(c)(2)(b) and 23(e), and fully comply with all laws, including the Class Action Fairness Act (28 U.S.C. § 1711 et seq.), and the Due Process Clause of the United States Constitution (U.S. Const., amend. V), constituting the best notice that is practicable under the circumstances of this litigation.*

## 19.  Judge Vernon S. Broderick, Jr.

***In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.,*** (December 16, 2020) No. 14-md-02542 (S.D.N.Y.):

*I further appoint JND as Claims Administrator.  JND's principals have more than 75 years-worth of combined class action legal administration experience, and JND has handled some of the largest recent settlement administration issues, including the Equifax Data Breach Settlement.  (Doc. 1115 ¶ 5.)  JND also has extensive experience in handling claims administration in the antitrust context.  (Id.  ¶ 6.)  Accordingly, I appoint JND as Claims Administrator.*

### 20.  Judge R. David Proctor

***In re Blue Cross Blue Shield Antitrust Litig.,*** (November 30, 2020)
Master File No. 13-CV-20000-RDP (N.D. Ala.):

*After a competitive bidding process, Settlement Class Counsel retained JND Legal Administration LLC ("JND") to serve as Notice and Claims Administrator for the settlement. JND has a proven track record and extensive experience in large, complex matters... JND has prepared a customized Notice Plan in this case. The Notice Plan was designed to provide the best notice practicable, consistent with the latest methods and tools employed in the industry and approved by other courts...The court finds that the proposed Notice Plan is appropriate in both form and content and is due to be approved.*

### 21.  Honorable Laurel Beeler

***Sidibe v. Sutter Health,*** (November 5, 2020)
No. 12-cv-4854-LB (N.D. Cal.):

*Class Counsel has retained JND Legal Administration ("JND"), an experienced class notice administration firm, to administer notice to the Class. The Court appoints JND as the Class Notice Administrator.*

### 22.  Judge Carolyn B. Kuhl

***Sandoval v. Merlex Stucco Inc.,*** (October 30, 2020)
No. BC619322 (Cal. Super. Ct.):

*Additional Class Member class members, and because their names and addresses have not yet been confirmed, will be notified of the pendency of this settlement via the digital media campaign... the Court approves the Parties selection of JND Legal as the third-party Claims Administrator.*

## 23. Honorable Louis L. Stanton

*Rick Nelson Co. v. Sony Music Ent.,* (September 16, 2020) No. 18-cv-08791 (S.D.N.Y.):

*The parties have designated JND Legal Administration ("JND") as the Settlement Administrator. Having found it qualified, the Court appoints JND as the Settlement Administrator and it shall perform all the duties of the Settlement Administrator as set forth in the Stipulation…The form and content of the Notice, Publication Notice and Email Notice, and the method set forth herein of notifying the Class of the Settlement and its terms and conditions, meet the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process. and any other applicable law, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled thereto.*

## 24. Honorable Jesse M. Furman

*In re General Motors LLC Ignition Switch Litig.,* **economic settlement,** (April 27, 2020) No. 2543 (MDL) (S.D.N.Y.):

*The Court further finds that the Class Notice informs Class Members of the Settlement in a reasonable manner under Federal Rule of Civil Procedure 23(e)(1)(B) because it fairly apprises the prospective Class Members of the terms of the proposed Settlement and of the options that are open to them in connection with the proceedings.*

*The Court therefore approves the proposed Class Notice plan, and hereby directs that such notice be disseminated to Class Members in the manner set forth in the Settlement Agreement and described in the Declaration of the Class Action Settlement Administrator…*

## 25. Honorable Virginia A. Phillips

*Sonner v. Schwabe North America, Inc.,* (April 7, 2020) No. 15-cv-01358 VAP (SPx) (C.D. Cal.):

*The Court orders the appointment of JND Legal Administration to implement and administrate the dissemination of class notice and administer opt-out requests pursuant to the proposed notice dissemination plan attached as Exhibit D to the Stipulation.*

## 26.  Judge Fernando M. Olguin

**Ahmed v. HSBC Bank USA, NA,** (December 30, 2019)
No. 15-cv-2057-FMO-SPx (N.D. Ill.):

*On June 21, 2019, the court granted preliminary approval of the settlement, appointed JND Legal Administration ("JND") as settlement administrator... the court finds that the class notice and the notice process fairly and adequately informed the class members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, the class members' right to exclude themselves from the action, and their right to object to the proposed settlement...the reaction of the class has been very positive.*

## 27.  Honorable Stephen V. Wilson

**USC Student Health Ctr. Settlement,** (June 12, 2019)
No. 18-cv-04258-SVW (C.D. Cal.):

*The Court hereby designates JND Legal Administration ("JND") as Claims Administrator. The Court finds that giving Class Members notice of the Settlement is justified under Rule 23(e)(1) because, as described above, the Court will likely be able to: approve the Settlement under Rule 23(e)(2); and certify the Settlement Class for purposes of judgment. The Court finds that the proposed Notice satisfies the requirements of due process and Federal Rule of Civil Procedure 23 and provides the best notice practicable under the circumstances.*

## 28.  Judge J. Walton McLeod

**Boskie v. Backgroundchecks.com,** (May 17, 2019)
No. 2019CP3200824 (S.C. C.P.):

*The Court appoints JND Legal Administration as Settlement Administrator...The Court approves the notice plans for the HomeAdvisor Class and the Injunctive Relief Class as set forth in the declaration of JND Legal Administration. The Court finds the class notice fully satisfies the requirements of due process, the South Carolina Rules of Civil Procedure. The notice plan for the HomeAdvisor Class and Injunctive Relief Class constitutes the best notice practicable under the circumstances of each Class.*

### 29.  Judge Kathleen M. Daily

***Podawiltz v. Swisher Int'l, Inc.,*** (February 7, 2019)
No. 16CV27621 (Or. Cir. Ct.):

*The Court appoints JND Legal Administration as settlement administrator...The Court finds that the notice plan is reasonable, that it constitutes due, adequate and sufficient notice to all persons entitled to receive notice, and that it meets the requirements of due process, ORCP 32, and any other applicable laws.*

### 30.  Honorable Kenneth J. Medel

***Huntzinger v. Suunto Oy,*** (December 14, 2018)
No. 37-2018-27159 (CU) (BT) (CTL) (Cal. Super. Ct.):

*The Court finds that the Class Notice and the Notice Program implemented pursuant to the Settlement Agreement and Preliminary Approval Order constituted the best notice practicable under the circumstances to all persons within the definition of the Class and fully complied with the due process requirement under all applicable statutes and laws and with the California Rules of Court.*

### 31.  Honorable Thomas M. Durkin

***In re Broiler Chicken Antitrust Litig.,*** (November 16, 2018)
No. 16-cv-8637 (N.D. Ill.):

*The notice given to the Class, including individual notice to all members of the Class who could be identified through reasonable efforts, was the best notice practicable under the circumstances. Said notice provided due and adequate notice of the proceedings and of the matters set forth therein, including the proposed settlement set forth in the Settlement Agreement, to all persons entitled to such notice, and said notice fully satisfied the requirements of Rules 23(c)(2) and 23(e)(1) of the Federal Rules of Civil Procedure and the requirements of due process.*

## 32.  Honorable Kenneth J. Medel

***Huntzinger v. Suunto Oy,*** (August 10, 2018)
No. 37-2018-27159 (CU) (BT) (CTL) (Cal. Super. Ct.):

*The Court finds that the notice to the Class Members regarding settlement of this Action, including the content of the notices and method of dissemination to the Class Members in accordance with the terms of Settlement Agreement, constitute the best notice practicable under the circumstances and constitute valid, due and sufficient notice to all Class Members, complying fully with the requirements of California Code of Civil Procedure § 382, California Civil Code § 1781, California Rules of Court Rules 3.766 and 3.769(f), the California and United States Constitutions, and any other applicable law.*

## 33.  Honorable Thomas M. Durkin

***In re Broiler Chicken Antitrust Litig.,*** (June 22, 2018)
No. 16-cv-8637 (N.D. Ill.):

*The proposed notice plan set forth in the Motion and the supporting declarations comply with Rule 23(c)(2)(B) and due process as it constitutes the best notice that is practicable under the circumstances, including individual notice vial mail and email to all members who can be identified through reasonable effort.  The direct mail and email notice will be supported by reasonable publication notice to reach class members who could not be individually identified.*

## 34.  Judge John Bailey

***In re Monitronics Int'l, Inc. TCPA Litig.,*** (September 28, 2017)
No. 11-cv-00090 (N.D. W.Va.):

*The Court carefully considered the Notice Plan set forth in the Settlement Agreement and plaintiffs' motion for preliminary approval. The Court finds that the Notice Plan constitutes the best notice practicable under the circumstances, and satisfies fully the requirements of Rule 23, the requirements of due process and any other applicable law, such that the terms of the Settlement Agreement, the releases provided therein, and this Court's final judgment will be binding on all Settlement Class Members.*

## 35. Honorable Ann I. Jones

***Eck v. City of Los Angeles,*** (September 15, 2017)
No. BC577028 (Cal. Super. Cal.):

*The form, manner, and content of the Class Notice, attached to the Settlement Agreement as Exhibits B, E, F and G, will provide the best notice practicable to the Class under the circumstances, constitutes valid, due, and sufficient notice to all Class Members, and fully complies with California Code of Civil Procedure section 382, California Code of Civil Procedure section 1781, the Constitution of the State of California, the Constitution of the United States, and other applicable law.*

## 36. Honorable James Ashford

***Nishimura v. Gentry Homes, LTD.,*** (September 14, 2017)
No. 11-11-1-1522-07-RAN (Haw. Cir. Ct.):

*The Court finds that the Notice Plan and Class Notices will fully and accurately inform the potential Class Members of all material elements of the proposed Settlement and of each Class Member's right and opportunity to object to the proposed Settlement. The Court further finds that the mailing and distribution of the Class Notice and the publication of the Class Notices substantially in the manner and form set forth in the Notice Plan and Settlement Agreement meets the requirements of the laws of the State of Hawai'i (including Hawai'i Rule of Civil Procedure 23), the United States Constitution (including the Due Process Clause), the Rules of the Court, and any other applicable law, constitutes the best notice practicable under the circumstances, and constitutes due and sufficient notice to all potential Class Members.*

## 37. Judge Cecilia M. Altonaga

***Flaum v. Doctor's Assoc., Inc.,*** (March 22, 2017)
No. 16-cv-61198 (S.D. Fla.):

*...the forms, content, and manner of notice proposed by the Parties and approved herein meet the requirements of due process and FED. R. CIV. P. 23(c) and (e), are the best notice practicable under the circumstances, constitute sufficient notice to all persons entitled to notice, and satisfy the Constitutional requirements of notice. The Court approves the notice program in all respects (including the proposed forms*

*of notice, Summary Notice, Full Notice for the Settlement Website, Publication Notice, Press Release and Settlement Claim Forms, and orders that notice be given in substantial conformity therewith.*

## 38. Judge Manish S. Shah

**Johnson v. Yahoo! Inc.,** (December 12, 2016)
No. 14-cv-02028 (N.D. Ill.):

*The Court approves the notice plan set forth in Plaintiff's Amended Motion to Approve Class Notice (Doc. 252) (the "Notice Plan"). The Notice Plan, in form, method, and content, complies with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process, and constitutes the best notice practicable under the circumstances.*

## 39. Judge Joan A. Leonard

**Barba v. Shire U.S., Inc.,** (December 2, 2016)
No. 13-cv-21158 (S.D. Fla.):

*The notice of settlement (in the form presented to this Court as Exhibits E, F, and G, attached to the Settlement Agreement [D.E. 423-1] (collectively, "the Notice") directed to the Settlement Class members, constituted the best notice practicable under the circumstances. In making this determination, the Court finds that the Notice was given to potential Settlement Class members who were identified through reasonable efforts, published using several publication dates in Better Homes and Gardens, National Geographic, and People magazines; placed on targeted website and portal banner advertisements on general Run of Network sites; included in e-newsletter placements with ADDitude, a magazine dedicated to helping children and adults with attention deficit disorder and learning disabilities lead successful lives, and posted on the Settlement Website which included additional access to Settlement information and a toll-free number. Pursuant to, and in accordance with, Federal Rule of Civil Procedure 23, the Court hereby finds that the Notice provided Settlement Class members with due and adequate notice of the Settlement, the Settlement Agreement, these proceedings, and the rights of Settlement Class members to make a claim, object to the Settlement or exclude themselves from the Settlement.*

## 40.  Judge Marco A. Hernandez

**Kearney v. Equilon Enter. LLC,** (October 25, 2016)
No. 14-cv-00254 (D. Ore.):

*The papers supporting the Final Approval Motion, including, but not limited to, the Declaration of Robert A. Curtis and the two Declarations filed by Gina Intrepido-Bowden, describe the Parties' provision of Notice of the Settlement. Notice was directed to all members of the Settlement Classes defined in paragraph 2, above. No objections to the method or contents of the Notice have been received. Based on the above-mentioned declarations, inter alia, the Court finds that the Parties have fully and adequately effectuated the Notice Plan, as required by the Preliminary Approval Order, and, in fact, have achieved better results than anticipated or required by the Preliminary Approval Order.*

## 41.  Honorable Amy J. St. Eve

**In re Rust-Oleum Restore Mktg, Sales Practices & Prod. Liab. Litig.,**(October 20, 2016)
No. 15-cv-01364 (N.D. Ill.):

*The Notices of Class Action and Proposed Settlement (Exhibits A and B to the Settlement Agreement) and the method of providing such Notices to the proposed Settlement Class...comply with Fed. R. Civ. P. 23(e) and due process, constitute the best notice practicable under the circumstances, and provide due and sufficient notice to all persons entitled to notice of the settlement of this Action.*

## 42.  Honorable R. Gary Klausner

**Russell v. Kohl's Dep't Stores, Inc.,** (October 20, 2016)
No. 15-cv-01143 (C.D. Cal.):

*Notice of the settlement was provided to the Settlement Class in a reasonable manner, and was the best notice practicable under the circumstances, including through individual notice to all members who could be reasonably identified through reasonable effort.*

### 43. Judge Fernando M. Olguin

***Chambers v. Whirlpool Corp.,*** (October 11, 2016)
No. 11-cv-01733 (C.D. Cal.):

*Accordingly, based on its prior findings and the record before it, the court finds that the Class Notice and the notice process fairly and adequately informed the class members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, their right to exclude themselves from the action, and their right to object to the proposed settlement.*

### 44. Honourable Justice Stack

***Anderson v. Canada,*** (September 28, 2016)
No. 2007 01T4955CP (NL Sup. Ct.):

*The Phase 2 Notice Plan satisfies the requirements of the Class Actions Act and shall constitute good and sufficient service upon class members of the notice of this Order, approval of the Settlement and discontinuance of these actions.*

### 45. Judge Mary M. Rowland

***In re Home Depot, Inc., Customer Data Sec. Breach Litig.,*** (August 23, 2016)
No. 14-md-02583 (N.D. Ga.):

*The Court finds that the Notice Program has been implemented by the Settlement Administrator and the parties in accordance with the requirements of the Settlement Agreement, and that such Notice Program, including the utilized forms of Notice, constitutes the best notice practicable under the circumstances and satisfies due process and the requirements of Rule 23 of the Federal Rules of Civil Procedure.*

### 46. Honorable Manish S. Shah

***Campos v. Calumet Transload R.R., LLC,*** (August 3, 2016)
No. 13-cv-08376 (N.D. Ill.):

*The form, content, and method of dissemination of the notice given to the Settlement Class were adequate, reasonable, and constitute the best notice practicable under the circumstances. The notice, as given, provided valid, due, and sufficient notice of the*

*Settlements, the terms and conditions set forth therein, and these proceedings to all
Persons entitled to such notice. The notice satisfied the requirements of Rule 23 of
the Federal Rules of Civil Procedure ("Rule 23") and due process.*

## 47. Honorable Lynn Adelman

***Fond Du Lac Bumper Exch., Inc. v. Jui Li Enter. Co., Ltd., (Indirect Purchaser),*** (July 7, 2016)
No. 09-cv-00852 (E.D. Wis.):

*The Court further finds that the mailing and publication of Notice in the manner set
forth in the Notice Program is the best notice practicable under the circumstances;
is valid, due and sufficient notice to all Settlement Class members; and complies fully
with the requirements of Federal Rule of Civil Procedure 23 and the due process
requirements of the Constitution of the United States. The Court further finds that
the forms of Notice are written in plain language, use simple terminology, and are
designed to be readily understandable by Settlement Class members.*

## 48. Judge Marco A. Hernandez

***Kearney v. Equilon Enter. LLC,*** (June 6, 2016)
No. 14-cv-00254 (Ore. Dist. Ct.):

*The Court finds that the Parties' plan for providing Notice to the Settlement Classes
as described in paragraphs 35-42 of the Settlement Agreement and as detailed in
the Settlement Notice Plan attached to the Declaration of Gina Intrepido-Bowden:
(a) constitutes the best notice practicable under the circumstances of this Action;
(b) constitutes due and sufficient notice to the Settlement Classes of the pendency
of the Action, certification of the Settlement Classes, the terms of the Settlement
Agreement, and the Final Approval Hearing; and (c) complies fully with the requirements
of the Federal Rules of Civil Procedure, the United States Constitution, and any other
applicable law. The Court further finds that the Parties' plan for providing Notice
to the Settlement Classes, as described in paragraphs 35-42 of the Settlement
Agreement and as detailed in the Settlement Notice Plan attached to the Declaration
of Gina Intrepido-Bowden, will adequately inform members of the Settlement Classes
of their right to exclude themselves from the Settlement Classes so as not to be bound
by the Settlement Agreement.*

### 49. Judge Joan A. Leonard

**Barba v. Shire U.S., Inc.,** (April 11, 2016)
No. 13-cv-21158 (S.D. Fla.):

*The Court finds that the proposed methods for giving notice of the Settlement to members of the Settlement Class, as set forth in this Order and in the Settlement Agreement, meet the requirements of Federal Rule of Civil Procedure Rule 23 and requirements of state and federal due process, is the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons entitled thereto.*

### 50. Honorable Manish S. Shah

**Campos v. Calumet Transload R.R., LLC,** (March 10, 2016 and April 18, 2016)
No. 13-cv-08376 (N.D. Ill.):

*The Court further finds that the mailing and publication of Notice in the manner set forth in the Notice Program is the best notice practicable under the circumstances, constitutes due and sufficient notice of the Settlement and this Order to all persons entitled thereto, and is in full compliance with the requirements of Fed. R. Civ. P. 23, applicable law, and due process.*

### 51. Judge Thomas W. Thrash Jr.

**In re Home Depot, Inc., Customer Data Sec. Breach Litig.,** (March 8, 2016)
No. 14-md-02583 (N.D. Ga.):

*The Court finds that the form, content and method of giving notice to the Class as described in Paragraph 7 of this Order and the Settlement Agreement (including the exhibits thereto): (a) will constitute the best practicable notice to the Settlement Class; (b) are reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the action, the terms of the proposed settlement, and their rights under the proposed settlement, including but not limited to their rights to object to or exclude themselves from the proposed settlement and other rights under the terms of the Settlement Agreement; (c) are reasonable and constitute due, adequate, and sufficient notice to all Class Members and other persons entitled to receive notice; and (d) meet all applicable requirements of law, including Fed. R.*

*Civ. P. 23(c) and (e), and the Due Process Clause(s) of the United States Constitution. The Court further finds that the Notice is written in plain language, uses simple terminology, and is designed to be readily understandable by Class Members.*

## 52. Judge Mary M. Rowland

**In re Sears, Roebuck and Co. Front-Loader Washer Prod. Liab. Litig.,** (February 29, 2016) No. 06-cv-07023 (N.D. Ill.):

*The Court concludes that, under the circumstances of this case, the Settlement Administrator's notice program was the "best notice that is practicable," Fed. R. Civ. P. 23(c)(2)(B), and was "reasonably calculated to reach interested parties," Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 318 (1950).*

## 53. Honorable Lynn Adelman

**Fond Du Lac Bumper Exch., Inc. v. Jui Li Enter. Ins. Co.,
(Indirect Purchaser–Tong Yang & Gordon Settlements),** (January 14, 2016) No. 09-CV-00852 (E.D. Wis.):

*The form, content, and methods of dissemination of Notice of the Settlements to the Settlement Class were reasonable, adequate, and constitute the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the Settlements, the terms and conditions set forth in the Settlements, and these proceedings to all persons and entities entitled to such notice, and said notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process requirements.*

## 54. Judge Curtis L. Collier

**In re Skelaxin (Metaxalone) Antitrust Litig.,** (December 22, 2015) No. 12-md-2343 (E.D. Tenn.):

*The Class Notice met statutory requirements of notice under the circumstances, and fully satisfied the requirements of Federal Rule of Civil Procedure 23 and the requirement process.*

## 55.  Honorable Mitchell D. Dembin

***Lerma v. Schiff Nutrition Int'l, Inc.,*** (November 3, 2015)
No. 11-CV-01056 (S.D. Cal.):

*According to Ms. Intrepido-Bowden, between June 29, 2015, and August 2, 2015, consumer publications are estimated to have reached 53.9% of likely Class Members and internet publications are estimated to have reached 58.9% of likely Class Members...The Court finds this notice (i) constituted the best notice practicable under the circumstances, (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise the putative Class Members of the pendency of the action, and of their right to object and to appear at the Final Approval Hearing or to exclude themselves from the Settlement, (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to be provided with notice, and (iv) fully complied with due process principles and Federal Rule of Civil Procedure 23.*

## 56.  Honorable Lynn Adelman

***Fond Du Lac Bumper Exch., Inc. v. Jui Li Enter. Ins. Co.,***
***(Indirect Purchaser–Gordon Settlement),*** (August 4, 2015)
No. 09-CV-00852 (E.D. Wis.):

*The Court further finds that the mailing and publication of Notice in the manner set forth in the Notice Program is the best notice practicable under the circumstances; is valid, due and sufficient notice to all Settlement Class members; and complies fully with the requirements of Federal Rule of Civil Procedure 23 and the due process requirements of the Constitution of the United States. The Court further finds that the forms of Notice are written in plain language, use simple terminology, and are designed to be readily understandable by Settlement Class members.*

## 57.  Honorable Sara I. Ellis

***Thomas v. Lennox Indus. Inc.,*** (July 9, 2015)
No. 13-CV-07747 (N.D. Ill.):

*The Court approves the form and content of the Long-Form Notice, Summary Notice, Postcard Notice, Dealer Notice, and Internet Banners (the "Notices") attached as Exhibits A-1, A-2, A-3, A-4 and A-5 respectively to the Settlement Agreement. The*

*Court finds that the Notice Plan, included in the Settlement Agreement and the Declaration of Gina M. Intrepido-Bowden on Settlement Notice Plan and Notice Documents, constitutes the best practicable notice under the circumstances as well as valid, due and sufficient notice to all persons entitled thereto, and that the Notice Plan complies fully with the requirements of Federal Rule of Civil Procedure 23 and provides Settlement Class Members due process under the United States Constitution.*

## 58. Honorable Lynn Adelman

**Fond du Lac Bumper Exch., Inc. v. Jui Li Enter.Co., Ltd. (Indirect Purchaser–Tong Yang Settlement),** (May 29, 2015) No. 09-CV-00852 (E.D. Wis.):

*The Court further finds that the mailing and publication of Notice in the manner set forth in the Notice Program is the best notice practicable under the circumstances; is valid, due and sufficient notice to all Settlement Class members; and complies fully with the requirements of Federal Rule of Civil Procedure 23 and the due process requirements of the Constitution of the United States. The Court further finds that the forms of Notice are written in plain language, use simple terminology, and are designed to be readily understandable by Settlement Class members.*

## 59. Honorable Mitchell D. Dembin

**Lerma v. Schiff Nutrition Int'l, Inc.,** (May 25, 2015) No. 11-CV-01056 (S.D. Cal.):

*The parties are to notify the Settlement Class in accordance with the Notice Program outlined in the Second Supplemental Declaration of Gina M. Intrepido-Bowden on Settlement Notice Program.*

## 60. Honorable Lynn Adelman

**Fond du Lac Bumper Exch., Inc. v. Jui Li Enter. Co., Ltd. (Direct Purchaser–Gordon Settlement),** (May 5, 2015) No. 09-CV-00852 (E.D. Wis.):

*The Notice Program set forth herein is substantially similar to the one set forth in the Court's April 24, 2015 Order regarding notice of the Tong Yang Settlement (ECF.*

*No. 619) and combines the Notice for the Tong Yang Settlement with that of the Gordon Settlement into a comprehensive Notice Program. To the extent differences exist between the two, the Notice Program set forth and approved herein shall prevail over that found in the April 24, 2015 Order.*

## 61. Honorable José L. Linares

**Demmick v. Cellco P'ship,** (May 1, 2015)
No. 06-CV-2163 (D.N.J.):

*The Notice Plan, which this Court has already approved, was timely and properly executed and that it provided the best notice practicable, as required by Federal Rule of Civil Procedure 23, and met the "desire to actually inform" due process communications standard of Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950) The Court thus affirms its finding and conclusion in the November 19, 2014 Preliminary Approval Order that the notice in this case meets the requirements of the Federal Rules of Civil Procedure and the Due Process Clause of the United States and/or any other applicable law. All objections submitted which make mention of notice have been considered and, in light of the above, overruled.*

## 62. Honorable David O. Carter

**Cobb v. BSH Home Appliances Corp.,** (December 29, 2014)
No. 10-CV-0711 (C.D. Cal.):

*The Notice Program complies with Rule 23(c)(2)(B) because it constitutes the best notice practicable under the circumstances, provides individual notice to all Class Members who can be identified through reasonable effort, and is reasonably calculated under the circumstances to apprise the Class Members of the nature of the action, the claims it asserts, the Class definition, the Settlement terms, the right to appear through an attorney, the right to opt out of the Class or to comment on or object to the Settlement (and how to do so), and the binding effect of a final judgment upon Class Members who do not opt out.*

### 63. Honorable José L. Linares

**Demmick v. Cellco P'ship,** (November 19, 2014)
No. 06-CV-2163 (D.N.J.):

*The Court finds that the Parties' plan for providing Notice to the Settlement Classes as described in Article V of the Settlement Agreement and as detailed in the Settlement Notice Plan attached to the Declaration of Gina M. Intrepido-Bowden: (a) constitutes the best notice practicable under the circumstances of this Action; (b) constitutes due and sufficient notice to the Settlement Classes of the pendency of the Action, certification of the Settlement Classes, the terms of the Settlement Agreement, and the Final Approval Hearing; and (c) complies fully with the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law.*

*The Court further finds that the Parties' plan for providing Notice to the Settlement Classes as described in Article V of the Settlement Agreement and as detailed in the Settlement Notice Plan attached to the Declaration of Gina M. Intrepido-Bowden, will adequately inform members of the Settlement Classes of their right to exclude themselves from the Settlement Classes so as to not be bound by the Settlement Agreement.*

### 64. Honorable Christina A. Snyder

**Roberts v. Electrolux Home Prod., Inc.,** (September 11, 2014)
No. 12-CV-01644 (C.D. Cal.):

*Accordingly, the Court hereby finds and concludes that members of the Settlement Class have been provided the best notice practicable of the Settlement and that such notice satisfies all requirements of federal and California laws and due process. The Court finally approves the Notice Plan in all respects...Any objections to the notice provided to the Class are hereby overruled.*

### 65. Judge Gregory A. Presnell

**Poertner v. Gillette Co.,** (August 21, 2014)
No. 12-CV-00803 (M.D. Fla.):

*This Court has again reviewed the Notice and the accompanying documents and finds that the "best practicable" notice was given to the Class and that the Notice*

was "reasonably calculated" to (a) describe the Action and the Plaintiff's and Class Members' rights in it; and (b) apprise interested parties of the pendency of the Action and of their right to have their objections to the Settlement heard. See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 810 (1985). This Court further finds that Class Members were given a reasonable opportunity to opt out of the Action and that they were adequately represented by Plaintiff Joshua D. Poertner. See Id. The Court thus reaffirms its findings that the Notice given to the Class satisfies the requirements of due process and holds that it has personal jurisdiction over all Class Members.

## 66. Honorable Christina A. Snyder

***Roberts v. Electrolux Home Prod., Inc.,*** (May 5, 2014)
No. 12-CV-01644 (C.D. Cal.):

The Court finds that the Notice Plan set forth in the Settlement Agreement (§ V. of that Agreement) is the best notice practicable under the circumstances and constitutes sufficient notice to all persons entitled to notice. The Court further preliminarily finds that the Notice itself IS appropriate, and complies with Rules 23(b)(3), 23(c)(2)(B), and 23(e) because it describes in plain language (1) the nature of the action, (2) the definition of the Settlement Class and Subclasses, (3) the class claims, issues or defenses, (4) that a class member may enter an appearance through an attorney if the member so desires, (5) that the Court will exclude from the class any member who requests exclusion, (6) the time and manner for requesting exclusion, and (7) the binding effect of a judgment on Settlement Class Members under Rule 23(c)(3) and the terms of the releases. Accordingly, the Court approves the Notice Plan in all respects...

## 67. Honorable William E. Smith

***Cappalli v. BJ's Wholesale Club, Inc.,*** (December 12, 2013)
No. 10-CV-00407 (D.R.I.):

The Court finds that the form, content, and method of dissemination of the notice given to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The notice, as given, provided valid, due, and sufficient notice of these proceedings of the proposed Settlement, and

of the terms set forth in the Stipulation and first Joint Addendum, and the notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, Constitutional due process, and all other applicable laws.

## 68. Judge Gregory A. Presnell

***Poertner v. Gillette Co.,*** (November 5, 2013)
No. 12-CV-00803 (M.D. Fla.):

*The Court finds that compliance with the Notice Plan is the best practicable notice under the circumstances and constitutes due and sufficient notice of this Order to all persons entitled thereto and is in full compliance with the requirements of Rule 23, applicable law, and due process.*

## 69. Judge Marilyn L. Huff

***Beck-Ellman v. Kaz USA, Inc.,*** (June 11, 2013)
No. 10-cv-02134 (S.D. Cal.):

*The Notice Plan has now been implemented in accordance with the Court's Preliminary Approval Order...The Notice Plan was specially developed to cause class members to see the Publication Notice or see an advertisement that directed them to the Settlement Website...The Court concludes that the Class Notice fully satisfied the requirements of Rule 23(c)(2) of the Federal Rules of Civil Procedure and all due process requirements.*

## 70. Judge Tom A. Lucas

***Stroud v. eMachines, Inc.,*** (March 27, 2013)
No. CJ-2003-968 L (W.D. Okla.):

*The Notices met the requirements of Okla. Stat. tit. 12 section 2023(C), due process, and any other applicable law; constituted the best notice practicable under the circumstances; and constituted due and sufficient notice to all persons and entities entitled thereto. All objections are stricken. Alternatively, considered on their merits, all objections are overruled.*

## 71.  Judge Marilyn L. Huff

**Beck-Ellman v. Kaz USA, Inc.,** (January 7, 2013)
No. 10-cv-02134 (S.D. Cal.):

*The proposed Class Notice, Publication Notice, and Settlement Website are reasonably calculated to inform potential Class members of the Settlement, and are the best practicable methods under the circumstances... Notice is written in easy and clear language, and provides all needed information, including: (l) basic information about the lawsuit; (2) a description of the benefits provided by the settlement; (3) an explanation of how Class members can obtain Settlement benefits; (4) an explanation of how Class members can exercise their rights to opt-out or object; (5) an explanation that any claims against Kaz that could have been litigated in this action will be released if the Class member does not opt out; (6) the names of Class Counsel and information regarding attorneys' fees; (7) the fairness hearing date and procedure for appearing; and (8) the Settlement Website and a toll free number where additional information, including Spanish translations of all forms, can be obtained. After review of the proposed notice and Settlement Agreement, the Court concludes that the Publication Notice and Settlement Website are adequate and sufficient to inform the class members of their rights. Accordingly, the Court approves the form and manner of giving notice of the proposed settlement.*

## 72.  Judge Tom A. Lucas

**Stroud v. eMachines, Inc.,** (December 21, 2012)
No. CJ-2003-968 L (W.D. Okla.):

*The Plan of Notice in the Settlement Agreement as well as the content of the Claim Form, Class Notice, Post-Card Notice, and Summary Notice of Settlement is hereby approved in all respects. The Court finds that the Plan of Notice and the contents of the Class Notice, Post-Card Notice and Summary Notice of Settlement and the manner of their dissemination described in the Settlement Agreement is the best practicable notice under the circumstances and is reasonably calculated, under the circumstances, to apprise Putative Class Members of the pendency of this action, the terms of the Settlement Agreement, and their right to object to the Settlement Agreement or exclude themselves from the Certified Settlement Class and, therefore,*

the Plan of Notice, the Class Notice, Post-Card Notice and Summary Notice of Settlement are approved in all respects. The Court further finds that the Class Notice, Post-Card Notice and Summary Notice of Settlement are reasonable, that they constitute due, adequate, and sufficient notice to all persons entitled to receive notice, and that they meet the requirements of due process.

### 73. Honorable Michael M. Anello

**Shames v. Hertz Corp.,** (November 5, 2012)
No. 07-cv-02174 (S.D. Cal.):

...the Court is satisfied that the parties and the class administrator made reasonable efforts to reach class members. Class members who did not receive individualized notice still had opportunity for notice by publication, email, or both...The Court is satisfied that the redundancies in the parties' class notice procedure—mailing, e-mailing, and publication—reasonably ensured the widest possible dissemination of the notice...The Court OVERRULES all objections to the class settlement...

### 74. Judge Ann D. Montgomery

**In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.,** (July 9, 2012)
No. 11-MD-2247 (D. Minn.):

The objections filed by class members are overruled; The notice provided to the class was reasonably calculated under the circumstances to apprise class members of the pendency of this action, the terms of the Settlement Agreement, and their right to object, opt out, and appear at the final fairness hearing;...

### 75. Judge Ann D. Montgomery

**In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.,** (June 29, 2012)
No. 11-MD-2247 (D. Minn.):

After the preliminary approval of the Settlement, the parties carried out the notice program, hiring an experienced consulting firm to design and implement the plan. The plan consisted of direct mail notices to known owners and warranty claimants of the RTI F1807 system, direct mail notices to potential holders of subrogation

interests through insurance company mailings, notice publications in leading consumer magazines which target home and property owners, and earned media efforts through national press releases and the Settlement website. The plan was intended to, and did in fact, reach a minimum of 70% of potential class members, on average more than two notices each...The California Objectors also take umbrage with the notice provided the class. Specifically, they argue that the class notice fails to advise class members of the true nature of the aforementioned release. This argument does not float, given that the release is clearly set forth in the Settlement and the published notices satisfy the requirements of Rule 23(c)(2)(B) by providing information regarding: (1) the nature of the action class membership; (2) class claims, issues, and defenses; (3) the ability to enter an appearance through an attorney; (4) the procedure and ability to opt-out or object; (5) the process and instructions to make a claim; (6) the binding effect of the class judgment; and (7) the specifics of the final fairness hearing.

### 76.   Honorable Michael M. Anello

***Shames v. Hertz Corp.,*** (May 22, 2012)
No. 07-cv-02174 (S.D. Cal.):

The Court approves, as to form and content, the Notice of Proposed Settlement of Class Action, substantially in the forms of Exhibits A-1 through A-6, as appropriate, (individually or collectively, the "Notice"), and finds that the e-mailing or mailing and distribution of the Notice and publishing of the Notice substantially in the manner and form set forth in ¶ 7 of this Order meet the requirements of Federal Rule of Civil Procedure 23 and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all Persons entitled thereto.

### 77.   Judge Ann D. Montgomery

***In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.,*** (January 18, 2012)
No. 11-MD-2247 (D. Minn.):

The Notice Plan detailed.in the Affidavit of Gina M. Intrepido-Bowden provides the best notice practicable under the circumstances and constitutes due and sufficient notice of the Settlement Agreement and the Final Fairness Hearing to the Classes

and all persons entitled to receive such notice as potential members of the Class... The Notice Plan's multi-faceted approach to providing notice to Class Members whose identity is not known to the Settling Parties constitutes 'the best notice that is practicable under the circumstances' consistent with Rule 23(c)(2)(B)...Notice to Class members must clearly and concisely state the nature of the lawsuit and its claims and defenses, the Class certified, the Class member's right to appear through an attorney or opt out of the Class, the time and manner for opting out, and the binding effect of a class judgment on members of the Class. Fed. R. Civ. P. 23(c)(2)(B). Compliance with Rule 23's notice requirements also complies with Due Process requirements. 'The combination of reasonable notice, the opportunity to be heard, and the opportunity to withdraw from the class satisfy due process requirements of the Fifth Amendment.' Prudential, 148 F.3d at 306. The proposed notices in the present case meet those requirements.

## 78. Judge Jeffrey Goering

**Molina v. Intrust Bank, N.A.,** (January 17, 2012)
No. 10-CV-3686 (Ks. 18th J.D. Ct.):

The Court approved the form and content of the Class Notice, and finds that transmission of the Notice as proposed by the Parties meets the requirements of due process and Kansas law, is the best notice practicable under the circumstances, and constitutes due and sufficient notice to all persons entitled thereto.

## 79. Judge Charles E. Atwell

**Allen v. UMB Bank, N.A.,** (October 31, 2011)
No. 1016-CV34791 (Mo. Cir. Ct.):

The form, content, and method of dissemination of Class Notice given to the Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all persons entitled to such notice, and said notice fully satisfied the requirements of Rule 52.08 of the Missouri Rules of Civil Procedure and due process.

## 80.  Judge Charles E. Atwell

***Allen v. UMB Bank, N.A.,*** (June 27, 2011)
No. 1016-CV34791 (Mo. Cir. Ct.):

*The Court approves the form and content of the Class Notice, and finds that transmission of the Notice as proposed by the Parties meets the requirements of due process and Missouri law, is the best notice practicable under the circumstances, and constitutes due and sufficient notice to all persons entitled thereto.*

## 81.  Judge Jeremy Fogel

***Ko v. Natura Pet Prod., Inc.,*** (June 24, 2011)
No. 09cv2619 (N.D. Cal.):

*The Court approves, as to form and content, the Long Form Notice of Pendency and Settlement of Class Action ("Long Form Notice"), and the Summary Notice attached as Exhibits to the Settlement Agreement, and finds that the e-mailing of the Summary Notice, and posting on the dedicated internet website of the Long Form Notice, mailing of the Summary Notice post-card, and newspaper and magazine publication of the Summary Notice substantially in the manner as set forth in this Order meets the requirements of Rule 23 of the Federal Rules of Civil Procedure, and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled to notice.*

## 82.  Judge M. Joseph Tiemann

***Billieson v. City of New Orleans,*** (May 27, 2011)
No. 94-19231 (La. Civ. Dist. Ct.):

*The plan to disseminate notice for the Insurance Settlements (the "Insurance Settlements Notice Plan") which was designed at the request of Class Counsel by experienced Notice Professionals Gina Intrepido-Bowden... IT IS ORDERED as follows: 1. The Insurance Settlements Notice Plan is hereby approved and shall be executed by the Notice Administrator; 2. The Insurance Settlements Notice Documents, substantially in the form included in the Insurance Settlements Notice Plan, are hereby approved.*

### 83.  Judge James Robertson

***In re Dep't of Veterans Affairs (VA) Data Theft Litig.,*** (February 11, 2009)
MDL No. 1796 (D.D.C.):

*The Court approves the proposed method of dissemination of notice set forth in the Notice Plan, Exhibit 1 to the Settlement Agreement. The Notice Plan meets the requirements of due process and is the best notice practicable under the circumstances. This method of Class Action Settlement notice dissemination is hereby approved by the Court.*

### 84.  Judge Louis J. Farina

***Soders v. Gen. Motors Corp.,*** (December 19, 2008)
No. CI-00-04255 (C.P. Pa.):

*The Court has considered the proposed forms of Notice to Class members of the settlement and the plan for disseminating Notice, and finds that the form and manner of notice proposed by the parties and approved herein meet the requirements of due process, are the best notice practicable under the circumstances, and constitute sufficient notice to all persons entitled to notice.*

### 85.  Judge Robert W. Gettleman

***In re Trans Union Corp.,*** (September 17, 2008)
MDL No. 1350 (N.D. Ill.):

*The Court finds that the dissemination of the Class Notice under the terms and in the format provided for in its Preliminary Approval Order constitutes the best notice practicable under the circumstances, is due and sufficient notice for all purposes to all persons entitled to such notice, and fully satisfies the requirements of the Federal Rules of Civil Procedure, the requirements of due process under the Constitution of the United States, and any other applicable law...Accordingly, all objections are hereby OVERRULED.*

## 86. Judge William G. Young

***In re TJX Cos. Retail Security Breach Litig.,*** (September 2, 2008)
MDL No. 1838 (D. Mass.):

*...as attested in the Affidavit of Gina M. Intrepido...The form, content, and method of dissemination of notice provided to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all Persons entitled to such notice, and said Notice fully satisfied the requirements of Fed. R. Civ. P. 23 and due process.*

## 87. Judge David De Alba

***Ford Explorer Cases,*** (May 29, 2008)
JCCP Nos. 4226 & 4270 (Cal. Super. Ct.):

*[T]he Court is satisfied that the notice plan, design, implementation, costs, reach, were all reasonable, and has no reservations about the notice to those in this state and those in other states as well, including Texas, Connecticut, and Illinois; that the plan that was approved -- submitted and approved, comports with the fundamentals of due process as described in the case law that was offered by counsel.*



# III. SPEAKING ENGAGEMENTS

1. *'Marching to Their Own Drumbeat.' What Lawyers Don't Understand About Notice and Claims Administration*, AMERICAN BAR ASSOCIATION, American Bar Association's (ABA) 23rd Annual National Institute on Class Actions, panelist (October 2019).

2. ***Rule 23 Amendments and Digital Notice Ethics, accredited CLE Program***, presenter at Terrell Marshall Law Group PLLC, Seattle, WA (June 2019); Severson & Werson, San Francisco, CA and broadcast to office in Irvine (June 2019); Greenberg Traurig, LLP, Los Angeles, CA (May 2019); Chicago Bar Association, Chicago, IL (January 2019); Sidley Austin LLP, Century City, CA and broadcast to offices in Los Angeles, San Francisco, New York, Chicago, Washington D.C. (January 2019); Burns Charest LLP, Dallas, TX (November 2018); Lockridge Grindal Nauen P.L.L.P., Minneapolis, MN (October 2018); Zimmerman Reed LLP, Minneapolis, MN (October 2018); Gustafson Gluek PLLC, Minneapolis, MN (October 2018).

3. ***Ethics in Legal Notification, accredited CLE Program***, presenter at Kessler Topaz Meltzer & Check LLP, Radnor, PA (September 2015); The St. Regis Resort, Deer Valley, UT (March 2014); and Morgan Lewis & Bockius, New York, NY (December 2012).

4. ***Pitfalls of Class Action Notice and Settlement Administration, accredited CLE Program***, PRACTISING LAW INSTITUTE (PLI), Class Action Litigation 2013, presenter/panelist (July 2013).

5. ***The Fundamentals of Settlement Administration, accredited CLE Program***, presenter at Skadden, Arps, Slate, Meagher & Flom LLP, Chicago, IL (January 2013); Wexler Wallace LLP, Chicago, IL (January 2013); Hinshaw & Culbertson LLP, Chicago, IL (October 2012); and Spector Roseman Kodroff & Willis, P.C., Philadelphia, PA (December 2011).

6. ***Class Action Settlement Administration Tips & Pitfalls on the Path to Approval, accredited CLE Program***, presenter at Jenner & Block, Chicago, IL and broadcast to offices in Washington DC, New York and California (October 2012).

7. ***Reaching Class Members & Driving Take Rates***, CONSUMER ATTORNEYS OF SAN DIEGO, 4th Annual Class Action Symposium, presenter/panelist (October 2011).

8. ***Legal Notice Ethics, accredited CLE Program***, presenter at Heins Mills & Olson, P.L.C., Minneapolis, MN (January 2011); Lockridge Grindal Nauen P.L.L.P., Minneapolis, MN (January 2011); Chestnut Cambronne, Minneapolis, MN (January 2011); Berger & Montague, P.C., Anapol Schwartz, Philadelphia, PA (October 2010); Lundy Law, Philadelphia, PA (October 2010); Dechert LLP, Philadelphia, PA and broadcast to offices in California, New Jersey, New York, North Carolina, Texas, Washington D.C., and London and sent via video to their office in China (October 2010); Miller Law LLC, Chicago, IL (May 2010); Cohen Milstein Sellers & Toll PLLC, New York, NY (May 2010); and Milberg LLP, New York, NY (May 2010).

9. ***Class Actions 101: Best Practices and Potential Pitfalls in Providing Class Notice, accredited CLE Program***, presenter, Kansas Bar Association (March 2009).



# IV. ARTICLES

1. Gina M. Intrepido-Bowden, *Time to Allow More Streamlined Class Action Notice Formats – Adapting Short Form Notice Requirements to Accommodate Today's Fast Paced Society*, LAW360 (2021).

2. Todd B. Hilsee, Gina M. Intrepido & Shannon R. Wheatman, *Hurricanes, Mobility and* Due P*rocess: The "Desire-to-Inform" Requirement for Effective Class Action Notice Is Highlighted by Katrina*, 80 TULANE LAW REV. 1771 (2006); reprinted in course materials for: CENTER FOR LEGAL EDUCATION INTERNATIONAL, Class Actions: Prosecuting and Defending Complex Litigation (2007); AMERICAN BAR ASSOCIATION, 10th Annual National Institute on Class Actions (2006); NATIONAL BUSINESS INSTITUTE, Class Action Update: Today's Trends & Strategies for Success (2006).

3. Gina M. Intrepido, *Notice Experts May Help Resolve CAFA Removal Issues, Notification to Officials*, 6 CLASS ACTION LITIG. REP. 759 (2005).

4. Todd B. Hilsee, Shannon R. Wheatman, & Gina M. Intrepido, *Do You Really Want Me to Know My Rights? The Ethics Behind Due Process in Class Action Notice Is More Than Just Plain Language: A Desire to Actually Inform*, 18 GEORGETOWN JOURNAL LEGAL ETHICS 1359 (2005).



# V. CASE EXPERIENCE

Ms. Intrepido-Bowden has been involved in the design and implementation of hundreds of notice programs throughout her career.  A partial listing of her case work is provided below.

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| A.B. v. Regents of the Univ. of California | 20-cv-09555-RGK-E | C.D. Cal. |
| Abante Rooter & Plumbing, Inc. v. New York Life Ins. Co. | 16-cv-03588 | S.D.N.Y. |
| Advance Trust & Life Escrow Serv., LTA v. Sec. Life of Denver Ins. Co. | 18-cv-01897-DDD-NYW | D. Colo. |
| Ahmed v. HSBC Bank USA, NA | 15-cv-2057-FMO-SPx | N.D. Ill. |
| Allen v. UMB Bank, N.A. | 1016-CV34791 | Mo. Cir. Ct. |
| Anderson v. Canada (Phase I) | 2008NLTD166 | NL Sup. Ct. |
| Anderson v. Canada (Phase II) | 2007 01T4955CP | NL Sup. Ct. |
| Angel v. U.S. Tire Recovery | 06-C-855 | W. Va. Cir. Ct. |
| Baiz v. Mountain View Cemetery | 809869-2 | Cal. Super. Ct. |
| Baker v. Jewel Food Stores, Inc. & Dominick's Finer Foods, Inc. | 00-L-9664 | Ill. Cir. Ct. |
| Barba v. Shire U.S., Inc. | 13-cv-21158 | S.D. Fla. |
| Beck-Ellman v. Kaz USA Inc. | 10-cv-2134 | S.D. Cal. |
| Beringer v. Certegy Check Serv., Inc. | 07-cv-1657-T-23TGW | M.D. Fla. |
| Bibb v. Monsanto Co. (Nitro) | 041465 | W. Va. Cir. Ct. |
| Billieson v. City of New Orleans | 94-19231 | La. Civ. Dist. Ct. |
| Bland v. Premier Nutrition Corp. | RG19-002714 | Cal. Super. Ct. |
| Boskie v. Backgroundchecks.com | 2019CP3200824 | S.C. C.P. |
| Brookshire Bros. v. Chiquita | 05-CIV-21962 | S.D. Fla. |
| Brown v. Am. Tobacco | J.C.C.P. 4042 No. 711400 | Cal. Super. Ct. |
| Bruzek v. Husky Oil Operations Ltd. | 18-cv-00697 | W.D. Wis. |
| Campos v. Calumet Transload R.R., LLC | 13-cv-08376 | N.D. Ill. |
| Cappalli v. BJ's Wholesale Club, Inc. | 10-cv-00407 | D.R.I. |
| Carter v. Monsanto Co. (Nitro) | 00-C-300 | W. Va. Cir. Ct. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Chambers v. Whirlpool Corp.* | 11-cv-01733 | C.D. Cal. |
| *Cobb v. BSH Home Appliances Corp.* | 10-cv-00711 | C.D. Cal. |
| *Davis v. Am. Home Prods. Corp.* | 94-11684 | La. Civ. Dist. Ct., Div. K |
| *DC 16 v. Sutter Health* | RG15753647 | Cal. Super. Ct. |
| *Defrates v. Hollywood Ent. Corp.* | 02L707 | Ill. Cir. Ct. |
| *de Lacour v. Colgate-Palmolive Co.* | 16-cv-8364-KW | S.D.N.Y. |
| *Demereckis v. BSH Home Appliances Corp.* | 8:10-cv-00711 | C.D. Cal. |
| *Demmick v. Cellco P'ship* | 06-cv-2163 | D.N.J. |
| *Desportes v. Am. Gen. Assurance Co.* | SU-04-CV-3637 | Ga. Super. Ct. |
| *Dolen v. ABN AMRO Bank N.V.* | 01-L-454 & 01-L-493 | Ill. Cir. Ct. |
| *Donnelly v. United Tech. Corp.* | 06-CV-320045CP | Ont. S.C.J. |
| *Eck v. City of Los Angeles* | BC577028 | Cal. Super. Ct. |
| *Engquist v. City of Los Angeles* | BC591331 | Cal. Super. Ct. |
| *Ervin v. Movie Gallery Inc.* | CV-13007 | Tenn. Ch. Fayette Co. |
| *First State Orthopaedics v. Concentra, Inc.* | 05-CV-04951-AB | E.D. Pa. |
| *Fisher v. Virginia Electric & Power Co.* | 02-CV-431 | E.D. Va. |
| *Fishon v. Premier Nutrition Corp.* | 16-CV-06980-RS | N.D. Cal. |
| *Flaum v. Doctor's Assoc., Inc. (d/b/a Subway)* | 16-cv-61198 | S.D. Fla. |
| *Fond du Lac Bumper Exch. Inc. v. Jui Li Enter. Co. Ltd. (Direct & Indirect Purchasers Classes)* | 09-cv-00852 | E.D. Wis. |
| *Ford Explorer Cases* | JCCP Nos. 4226 & 4270 | Cal. Super. Ct. |
| *Friedman v. Microsoft Corp.* | 2000-000722 | Ariz. Super. Ct. |
| *FTC v. Reckitt Benckiser Grp. PLC* | 19CV00028 | W.D. Va. |
| *Gardner v. Stimson Lumber Co.* | 00-2-17633-3SEA | Wash. Super. Ct. |
| *Gordon v. Microsoft Corp.* | 00-5994 | D. Minn. |
| *Grays Harbor v. Carrier Corp.* | 05-05437-RBL | W.D. Wash. |
| *Griffin v. Dell Canada Inc.* | 07-CV-325223D2 | Ont. Super. Ct. |
| *Gunderson v. F.A. Richard & Assoc., Inc.* | 2004-2417-D | La. 14th Jud. Dist. Ct. |
| *Hanks v. Lincoln Life & Annuity Co. of New York* | 16-cv-6399 PKC | S.D.N.Y. |
| *Herrera v. Wells Fargo Bank, N.A.* | 18-cv-00332-JVS-MRW | C.D. Cal. |
| *Huntzinger v. Suunto Oy* | 37-2018-00027159-CU-BT-CTL | Cal. Super. Ct. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *In re Anthem, Inc. Data Breach Litig.* | 15-md-02617 | N.D. Cal. |
| *In re Babcock & Wilcox Co.* | 00-10992 | E.D. La. |
| *In re Blue Cross Blue Shield Antitrust Litig.* | 13-CV-20000-RDP | N.D. Ala. |
| *In re Broiler Chicken Antitrust Litig.* | 16-cv-08637 | N.D. Ill. |
| *In re Countrywide Fin. Corp. Customer Data Sec. Breach* | MDL 08-md-1998 | W.D. Ky. |
| *In re General Motors LLC Ignition Switch Litig. (economic settlement)* | 2543 (MDL) | S.D.N.Y. |
| *In re High Sulfur Content Gasoline Prod. Liab.* | MDL No. 1632 | E.D. La. |
| *In re Home Depot, Inc., Customer Data Sec. Breach Litig.* | 14-md-02583 | N.D. Ga. |
| *In re Hypodermic Prod. Antitrust Litig.* | 05-cv-01602 | D.N.J. |
| *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig. (Indirect-Purchasers)* | 14-md-02542 | S.D.N.Y. |
| *In re Lidoderm Antitrust Litig.* | 14-md-02521 | N.D. Cal. |
| *In re Lupron Mktg. & Sales Practices* | MDL No.1430 | D. Mass. |
| *In re Mercedes-Benz Emissions Litig.* | 16-cv-881 (KM) (ESK) | D.N.J. |
| *In re Monitronics Int'l, Inc., TCPA Litig.* | 11-cv-00090 | N.D. W.Va. |
| *In re Packaged Seafood Prods. Antitrust Litig. (DPP and EPP Class)* | 15-md-02670 | S.D. Cal. |
| *In re Parmalat Sec.* | 04-md-01653 (LAK) | S.D.N.Y. |
| *In re Residential Schools Litig.* | 00-CV-192059 CPA | Ont. Super. Ct. |
| *In re Resistors Antitrust Litig.* | 15-cv-03820-JD | N.D. Cal. |
| *In re Royal Ahold Sec. & "ERISA"* | 03-md-01539 | D. Md. |
| *In re Rust-Oleum Restore Mktg. Sales Practices & Prod. Liab. Litig.* | 15-cv01364 | N.D. Ill. |
| *In re Sears, Roebuck & Co. Front-Loading Washer Prod. Liab. Litig.* | 06-cv-07023 | N.D. Ill. |
| *In re Serzone Prod. Liab.* | 02-md-1477 | S.D. W. Va. |
| *In re Skelaxin (Metaxalone) Antitrust Litig.* | 12-cv-194 | E.D. Ten. |
| *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig. (Direct Purchaser Class)* | 14-md-2503 | D. Mass. |
| *In re TJX Cos. Retail Sec. Breach Litig.* | MDL No. 1838 | D. Mass. |
| *In re Trans Union Corp. Privacy Litig.* | MDL No. 1350 | N.D. Ill. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *In re Uponor, Inc., F1807 Prod. Liab. Litig.* | 2247 | D. Minn. |
| *In re U.S. Dep't of Veterans Affairs Data Theft Litig.* | MDL 1796 | D.D.C. |
| *In re Zurn Pex Plumbing Prod. Liab. Litig.* | MDL 08-1958 | D. Minn. |
| *In the Matter of GTV Media Grp. Inc.* | 3-20537 | SEC |
| *Johnson v. Yahoo! Inc.* | 14-cv02028 | N.D. Ill. |
| *Kearney v. Equilon Enter. LLC* | 14-cv-00254 | D. Ore. |
| *Ko v. Natura Pet Prod., Inc.* | 09cv02619 | N.D. Cal. |
| *Langan v. Johnson & Johnson Consumer Co.* | 13-cv-01471 | D. Conn. |
| *Lavinsky v. City of Los Angeles* | BC542245 | Cal. Super. Ct. |
| *Lee v. Stonebridge Life Ins. Co.* | 11-cv-00043 | N.D. Cal. |
| *Leonard v. John Hancock Life Ins. Co. of NY* | 18-CV-04994 | S.D.N.Y. |
| *Lerma v. Schiff Nutrition Int'l, Inc.* | 11-cv-01056 | S.D. Cal. |
| *Levy v. Dolgencorp, LLC* | 20-cv-01037-TJC-MCR | M.D. Fla. |
| *Lockwood v. Certegy Check Serv., Inc.* | 07-CV-587-FtM-29-DNF | M.D. Fla. |
| *Luster v. Wells Fargo Dealer Serv., Inc.* | 15-cv-01058 | N.D. Ga. |
| *Malone v. Western Digital Corp.* | 20-cv-03584-NC | N.D. Cal. |
| *Markson v. CRST Int'l, Inc.* | 17-cv-01261-SB (SPx) | C.D. Cal. |
| *Martinelli v. Johnson & Johnson* | 15-cv-01733-MCE-DB | E.D. Cal. |
| *McCall v. Hercules Corp.* | 66810/2021 | N.Y. Super. Ct. |
| *McCrary v. Elations Co., LLC* | 13-cv-00242 | C.D. Cal. |
| *Microsoft I-V Cases* | J.C.C.P. No. 4106 | Cal. Super. Ct. |
| *Molina v. Intrust Bank, N.A.* | 10-cv-3686 | Ks. 18th Jud. Dist. Ct. |
| *Morrow v. Conoco Inc.* | 2002-3860 | La. Dist. Ct. |
| *Mullins v. Direct Digital LLC.* | 13-cv-01829 | N.D. Ill. |
| *Myers v. Rite Aid of PA, Inc.* | 01-2771 | Pa. C.P. |
| *Naef v. Masonite Corp.* | CV-94-4033 | Ala. Cir. Ct. |
| *Nature Guard Cement Roofing Shingles Cases* | J.C.C.P. No. 4215 | Cal. Super. Ct. |
| *Nichols v. SmithKline Beecham Corp.* | 00-6222 | E.D. Pa. |
| *Nishimura v Gentry Homes, LTD.* | 11-11-1-1522-07-RAN | Haw. Cir. Ct. |
| *Novoa v. The GEO Grp., Inc.* | 17-cv-02514-JGB-SHK | C.D. Cal. |
| *Nwauzor v. GEO Grp., Inc.* | 17-cv-05769 | W.D. Wash. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *In re Uponor, Inc., F1807 Prod. Liab. Litig.* | 2247 | D. Minn. |
| *In re U.S. Dep't of Veterans Affairs Data Theft Litig.* | MDL 1796 | D.D.C. |
| *In re Zurn Pex Plumbing Prod. Liab. Litig.* | MDL 08-1958 | D. Minn. |
| *In the Matter of GTV Media Grp. Inc.* | 3-20537 | SEC |
| *Johnson v. Yahoo! Inc.* | 14-cv02028 | N.D. Ill. |
| *Kearney v. Equilon Enter. LLC* | 14-cv-00254 | D. Ore. |
| *Ko v. Natura Pet Prod., Inc.* | 09cv02619 | N.D. Cal. |
| *Langan v. Johnson & Johnson Consumer Co.* | 13-cv-01471 | D. Conn. |
| *Lavinsky v. City of Los Angeles* | BC542245 | Cal. Super. Ct. |
| *Lee v. Stonebridge Life Ins. Co.* | 11-cv-00043 | N.D. Cal. |
| *Leonard v. John Hancock Life Ins. Co. of NY* | 18-CV-04994 | S.D.N.Y. |
| *Lerma v. Schiff Nutrition Int'l, Inc.* | 11-cv-01056 | S.D. Cal. |
| *Levy v. Dolgencorp, LLC* | 20-cv-01037-TJC-MCR | M.D. Fla. |
| *Lockwood v. Certegy Check Serv., Inc.* | 07-CV-587-FtM-29-DNF | M.D. Fla. |
| *Luster v. Wells Fargo Dealer Serv., Inc.* | 15-cv-01058 | N.D. Ga. |
| *Malone v. Western Digital Corp.* | 20-cv-03584-NC | N.D. Cal. |
| *Markson v. CRST Int'l, Inc.* | 17-cv-01261-SB (SPx) | C.D. Cal. |
| *Martinelli v. Johnson & Johnson* | 15-cv-01733-MCE-DB | E.D. Cal. |
| *McCall v. Hercules Corp.* | 66810/2021 | N.Y. Super. Ct. |
| *McCrary v. Elations Co., LLC* | 13-cv-00242 | C.D. Cal. |
| *Microsoft I-V Cases* | J.C.C.P. No. 4106 | Cal. Super. Ct. |
| *Molina v. Intrust Bank, N.A.* | 10-cv-3686 | Ks. 18th Jud. Dist. Ct. |
| *Morrow v. Conoco Inc.* | 2002-3860 | La. Dist. Ct. |
| *Mullins v. Direct Digital LLC.* | 13-cv-01829 | N.D. Ill. |
| *Myers v. Rite Aid of PA, Inc.* | 01-2771 | Pa. C.P. |
| *Naef v. Masonite Corp.* | CV-94-4033 | Ala. Cir. Ct. |
| *Nature Guard Cement Roofing Shingles Cases* | J.C.C.P. No. 4215 | Cal. Super. Ct. |
| *Nichols v. SmithKline Beecham Corp.* | 00-6222 | E.D. Pa. |
| *Nishimura v Gentry Homes, LTD.* | 11-11-1-1522-07-RAN | Haw. Cir. Ct. |
| *Novoa v. The GEO Grp., Inc.* | 17-cv-02514-JGB-SHK | C.D. Cal. |
| *Nwauzor v. GEO Grp., Inc.* | 17-cv-05769 | W.D. Wash. |

| CASE NAME | CASE NUMBER | LOCATION |
|-----------|-------------|----------|
| *Palace v. DaimlerChrysler* | 01-CH-13168 | Ill. Cir. Ct. |
| *Peek v. Microsoft Corp.* | CV-2006-2612 | Ark. Cir. Ct. |
| *Plubell v. Merck & Co., Inc.* | 04CV235817-01 | Mo. Cir. Ct. |
| *Podawiltz v. Swisher Int'l, Inc.* | 16CV27621 | Or. Cir. Ct. |
| *Poertner v. Gillette Co.* | 12-cv-00803 | M.D. Fla. |
| *Prather v. Wells Fargo Bank, N.A.* | 15-cv-04231 | N.D. Ga. |
| *Q+ Food, LLC v. Mitsubishi Fuso Truck of Am., Inc.* | 14-cv-06046 | D.N.J. |
| *Richison v. Am. Cemwood Corp.* | 005532 | Cal. Super. Ct. |
| *Rick Nelson Co. v. Sony Music Ent.* | 18-cv-08791 | S.D.N.Y. |
| *Roberts v. Electrolux Home Prod., Inc.* | 12-cv-01644 | C.D. Cal. |
| *Russell v. Kohl's Dep't Stores, Inc.* | 15-cv-01143 | C.D. Cal. |
| *Sandoval v. Merlex Stucco Inc.* | BC619322 | Cal. Super. Ct. |
| *Scott v. Blockbuster, Inc.* | D 162-535 | 136th Tex. Jud. Dist. |
| *Senne v Office of the Comm'r of Baseball* | 14-cv-00608-JCS | N.D. Cal. |
| *Shames v. Hertz Corp.* | 07cv2174-MMA | S.D. Cal. |
| *Sidibe v. Sutter Health* | 12-cv-4854-LB | N.D. Cal. |
| *Staats v. City of Palo Alto* | 2015-1-CV-284956 | Cal. Super. Ct. |
| *Soders v. Gen. Motors Corp.* | CI-00-04255 | Pa. C.P. |
| *Sonner v. Schwabe North America, Inc.* | 15-cv-01358 VAP (SPx) | C.D. Cal. |
| *Stroud v. eMachines, Inc.* | CJ-2003-968-L | W.D. Okla. |
| *Swetz v. GSK Consumer Health, Inc.* | 20-cv-04731 | S.D.N.Y. |
| *Talalai v. Cooper Tire & Rubber Co.* | MID-L-8839-00 MT | N.J. Super. Ct. |
| *Tech. Training Assoc. v. Buccaneers Ltd. P'ship* | 16-cv-01622 | M.D. Fla. |
| *Thibodeaux v. Conoco Philips Co.* | 2003-481 | La. 4th Jud. Dist. Ct. |
| *Thomas v. Lennox Indus. Inc.* | 13-cv-07747 | N.D. Ill. |
| *Thompson v. Metropolitan Life Ins. Co.* | 00-CIV-5071 HB | S.D. N.Y. |
| *Turner v. Murphy Oil USA, Inc.* | 05-CV-04206-EEF-JCW | E.D. La. |
| *USC Student Health Ctr. Settlement* | 18-cv-04258-SVW | C.D. Cal. |
| *Walker v. Rite Aid of PA, Inc.* | 99-6210 | Pa. C.P. |
| *Wells v. Abbott Lab., Inc. (AdvantEdge/ Myoplex nutrition bars)* | BC389753 | Cal. Super. Ct. |

| CASE NAME | CASE NUMBER | LOCATION |
|-----------|-------------|----------|
| *Wener v. United Tech. Corp.* | 500-06-000425-088 | QC. Super. Ct. |
| *West v. G&H Seed Co.* | 99-C-4984-A | La. 27th Jud. Dist. Ct. |
| *Williams v. Weyerhaeuser Co.* | CV-995787 | Cal. Super. Ct. |
| *Yamagata v. Reckitt Benckiser, LLC* | 17-cv-03529-CV | N.D.Cal. |
| *Zarebski v. Hartford Ins. Co. of the Midwest* | CV-2006-409-3 | Ark. Cir. Ct. |

# EXHIBIT B

SETTLEMENT AGREEMENT AND RELEASE

*In re Conagra Foods, Inc.*, No. CV 11-05379-CJC (AGRx), MDL No. 2291 (C.D. Cal.)

A Final Approval Order will be submitted to the Court once the language is agreed upon by the parties.

# EXHIBIT 2

JOINT DECLARTION OF CLASS COUNSEL IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF THE
SETTLEMENT, APPROVAL OF FORM AND MANNER OF
NOTICE, APPROVAL TO NOTICE THE CLASSES, AND SETTING
FINAL SETTLEMENT SCHEDULE AND DATE FOR FINAL
APPROVAL HEARING PURSUANT TO FED. R. CIV. P. 23(e)(1)

*In re Conagra Foods, Inc.*, No. CV 11-05379-CJC (AGRx),
MDL No. 2291 (C.D. Cal.)



New York, NY · San Francisco, CA

**Tadler Law LLP** is a WBENC-certified woman-owned litigation boutique law firm that represents consumers, investors, and businesses in complex and class action litigation nationwide. The firm's lawyers are regularly recognized as leaders in the plaintiffs' bar by the National Law Journal, Legal 500, Chambers and Partners, Lawdragon, Best Lawyers, Martindale Hubbell®, and Super Lawyers, among other ranking organizations. Most recently, Tadler Law's Partners Ariana J. Tadler and A.J. de Bartolomeo were recognized by Best Lawyers in America in the 2023 Edition, by Lawdragon 500 Leading Plaintiff Financial Lawyers in the 2022 Edition, Chambers and Partners in 2022, and as Top Lawyers in America in the 2020 U.S. News & World Report Best Lawyers list and were recently recognized in *The Best Lawyers in America*© for class actions and mass torts, among others.

### LEADERS IN COMPLEX AND CLASS ACTION LITIGATION

**Data Breach and Privacy Litigation:** Our lawyers have extended the breadth of their respective practices on behalf of consumers and made their mark litigating class actions alleging massive data breaches and other violations of consumers' personal and data privacy. Our attorneys have spearheaded numerous highly technical cases and have successfully advanced novel legal theories to protect consumers from ever-evolving cybersecurity and data privacy threats. Representative matters include *In Re: Marriott International, Inc. Custom Data Security Breach Litigation*, MDL Case No. 19-md-2879 (D. Md.) (Plaintiffs' Steering Committee ("PSC")); *Adkins, et al. v. Facebook, Inc.*, No. C 18-05982 (N.D. Cal.) (appointed Class Counsel); *In re Equifax, Inc. Customer Data Breach Litigation*, 17-md-02800 (N.D. Ga.) (PSC) (settlement approved in January 2020 in excess of $380 million for affected consumers, plus potential for $125 million more for out-of-pocket expenses and credit monitoring); *In re Yahoo! Inc. Customer Data Security Breach Litigation*, No. 5:16-MD-02752 (N.D. Cal.) (PEC; $117.5 million settlement; Second Amended Order Granting Final Approval of Settlement issued July 22, 2020); *In re Target Corporation Customer Data Security Breach Litig.*, No. 14-md-2522 (D. Minn.) (PSC; $10 million settlement); *Torres, et al. v. Wendy's International, LLC*, 16-cv-00210 (M.D. Fla.) (class counsel; $3.4 million settlement); *Fero v. Excellus Health Plan*, No. 6:16-cv-06569 (W.D.N.Y.) (special discovery counsel to lead counsel); *In re Anthem, Inc. Data Breach*, No. 15-MD-02617 (N.D. Cal.) (plaintiffs' counsel; settlement created a $115 million non-reversionary cash fund, delivered more than $500 million in value to the class, and required extensive injunctive relief to prevent a future breach); *In re Premera Blue Cross Customer Data Breach Litig.*, No. 3:15-md-2633-SI (D. Or.) (plaintiffs' counsel).

**Consumer Litigation:** Our lawyers have long been leaders in protecting consumers from fraudulent and deceptive practices. Among other types of cases, our lawyers have led class actions challenging the use of "natural" labeling on food products made from bioengineered crops (GMOs). *E.g.*, *In re Conagra Foods, Inc* No. 11-05379 (C.D. Cal.) (Class counsel; multi-state class certified; class certification affirmed by Ninth Circuit; petition for *writ of certiorari* denied



by U.S. Supreme Court; settlement received final approval; reversed on appeal; new settlement submitted for preliminary approval); *Frito-Lay North America, Inc. "All Natural" Litigation*, No. 12-MD-02413 (E.D.N.Y) (settled); *In re General Mills, Inc. Kix Cereal Litigation*, Case No. 2:12-cv-00249 (KM)(JBC)(D.N.J.) (Court-appointed Interim Co-Lead Class Counsel; case currently stayed).

Our lawyers are also currently representing consumers in a class action lawsuit alleging the failure to warn and disclose the risks associated with flea and tick collars that have led to numerous deaths and injuries to pets. *In Re: Seresto Flea And Tick Collar Marketing, Sales Practices And Products Liability Litigation,* No. 1:21-cv-04447 (N.D. Ill.). In *Juul Labs, Inc., Marketing, Sales Practices, and Products Liability Litigation*, Case No. 19-md-02913-WHO (N.D. Cal.), we have served on the Discovery Committee multidistrict litigation against JUUL and big tobacco company Altria for deceptively marketing dangerous e-cigarettes and manipulating nicotine delivery to maximize addiction, causing a public health crisis and harming tens of thousands of minors and adults across the country.

Other representative consumer matters include: *In re Apple, Inc. Device Performance Litigation*, 5:18-MD-02827-EJD (N.D. Cal.) (class action; Ms. Tadler is a member of the court-appointed Plaintiffs' Executive Committee ("PEC") ($310 million settlement in class action alleging Apple throttled the performance of certain devices, including iPhones, with degraded batteries; settlement received final approval; appeal pending); *Correa v. Sensa Products, LLC.*, No. BC476808 (Cal. Super. Court, Los Angeles Cty.) ($9 million settlement; alleging that the defendant, manufacturer of a weight-loss product, lacked a sufficient scientific basis for certain of its marketing claims). Additionally, Partner A.J. de Bartolomeo is an acting member of the Plaintiffs' Steering Committee in *In Re Avandia Marketing, Sales Practices and Products Liability Litigation*, MDL 1871, alleging RICO and state law violations in a case concerning the fraudulent misrepresentation and concealment of safety risks associated with the blockbuster diabetes drug Avandia.

**Equal Pay Litigation:** Tadler Law is currently representing the United States Women's National Soccer Team's ("WNT") former goalkeeper Hope Solo in her gender-based employment discrimination lawsuit against the United States Soccer Federation ("USSF"). *Solo v. United States Soccer Federation*, No. 3:18-cv-05215-DMR (N.D. Cal.). Tadler Law Partner A.J. de Bartolomeo joined Solo's legal team to allege that significant pay disparities exist between the U.S. Men's National Soccer Team ("MNT") and the WNT. According to the suit, contrary to the assertions of USSF, there are no legitimate, non-discriminatory reasons for this gross disparity of wages, nor can it be explained away by any bona fide seniority, merit or incentive system, or any other factor other than sex. Together with Co-counsel, Tadler Law has worked diligently to expose these unsustainable defenses, highlighting the fact that in Fiscal Year 2017 USSF projected a net profit from the WNT of approximately $5 million, while projecting a net loss of nearly $1 million for the MNT. Despite this and other clear indicators of success, USSF refuses to compensate the WNT players at the same rate or better than that which it pays the MNT players. This is an inexcusable violation of the Equal Pay Act and Title VII.

Across many industries, evidence has shown that men tend to have higher wages than female workers for the same work. As a result, women's economic security is endangered, most severely for women of color, disabled women, elderly women, and women who face barriers to education. A women-owned complex and class action litigation boutique, Tadler Law lawyers understand the





22 Bayview Avenue, Suite 200, Manhasset, NY 11030
(212) 946-9300 · www.tadlerlaw.com

importance of wage equity, and they hold employers accountable for pay discrimination, whether it is on behalf of a public figure, or private individuals, through counseling, negotiating terms of compensation, and, if necessary, through litigation.

Tadler Law also represents individuals seeking employment advice at the beginning, middle or end of the professional employment relationship. We counsel individuals in employment separation and severance negotiations, as well as compensation contract negotiations.

**E-Discovery**: Ariana J. Tadler pioneered the development of an E-Discovery Practice Group at a plaintiffs' firm while at a prior firm with which she was affiliated for 23 years. She assembled and trained a dedicated team to meet the E-Discovery demands of complex litigation and developed some of the most exceptional E-Discovery capabilities among U.S. law firms. Established more than 15 years ago, that E-Discovery practice grew extensively and today, Tadler Law offers clients the ability to go toe-to-toe with adversaries in the fast-evolving E-Discovery climate. This multidisciplinary group offers clients a full array of counsel services relating to discovery strategy, data preservation, data collection and storage, sophisticated data search and analysis, production, and computer forensic investigation, as well as training on E-Discovery issues, including application of the latest amendments to the Federal Rules of Civil Procedure, local rules, and state law. All Tadler Law lawyers are trained and experienced in the field of E-Discovery and are regularly called on by attorneys and courts to oversee complex discovery in high-stakes litigation. *E.g., In Re: Marriott International, Inc. Custom Data Security Breach Litigation*, MDL Case No. 19-md-2879 (D. Md.) (appointed to PSC and lead offensive discovery); *Adkins, et al. v. Facebook, Inc.*, No. C 18-05982 (N.D. Cal.) (appointed Class Counsel and lead discovery counsel); *In re Apple, Inc. Device Performance Litigation*, 5:18-MD-02827-EJD (N.D. Cal.) (appointed to PEC and responsible for ESI and offensive discovery); *In re Equifax, Inc. Customer Data Breach Litigation*, 17-md-02800 (N.D. Ga.) (appointed to PSC and responsible for offensive discovery); *In re Yahoo! Inc. Customer Data Security Breach Litigation*, No. 5:16-MD-02752 (N.D. Cal.) (appointed to PEC and responsible for leading discovery); *In re Target Corporation Customer Data Security Breach Litig.*, No. 14-md-2522 (D. Minn.) (appointed to the PEC and charged with leading discovery); *Fero v. Excellus Health Plan*, No. 6:16-cv-06569 (W.D.N.Y.) (special discovery counsel to lead counsel); *In re: Juul Labs, Inc. Marketing, Sales Practices & Prods. Liab. Litigation*, No. 3:19-md-2913 (N.D. Cal.) (managing E-Discovery and other coordinated discovery); *In re Glumetza Antitrust Litigation*, No. 3:19-cv-5822 (N.D. Cal.) (appointed to PEC and co-captain ESI); *In Re Avandia Marketing, Sales Practices and Products Liability Litigation*, MDL 1871 (appointed to PSC and co-captain for ESI; lead defensive discovery).

**Antitrust Litigation**: Tadler Law's team is well versed in litigating national antitrust matters in various industries, including the pharmaceutical industry. To that end, Partner A.J. de Bartolomeo actively litigated a pharmaceutical antitrust class action in *In re Glumetza Antitrust Litigation*, No. 3:19-cv-5822 (N.D. Cal.) (de Bartolomeo appointed to PEC) (in February 2022, the court granted final approval to an over $453 Million settlement granted for the case alleging that defendants violated federal antitrust laws by engaging in a scheme to charge supra-competitive prices for the diabetes prescription drug Glumetza). Ms. de Bartolomeo has also litigated other large antitrust matters in other industries at her prior firms, including consumer electronics and financial services.

**Business Litigation:**   Tadler Law also provides consulting services to a national financial institution focusing on litigation risk analysis. Tadler Law is also part of the legal team representing K2 Distribution Company, LP, a large manufacturing and distribution company in litigation alleging breach of contract claims against Walmart, arising from multiple contracts negotiated and performed very early in the Covid-19 pandemic, pending in state court in Washington County, Arkansas. Tadler Law also represents individuals and businesses in various commercial and business disputes. Strategically tackling contract disputes to achieve prompt, cost-effective resolutions is our primary goal so that our clients can focus on their personal and business priorities rather than litigation or arbitration.

**Whistleblower Litigation:**   Tadler Law continues to advocate for transparency and good corporate behavior. The United States has enacted a range of whistleblower laws to curb against, among other things, corporate fraud, securities fraud, market manipulation and actions that are not in the best interest of customers or clients. The Sarbanes Oxley Act and the Dodd Frank Act set forth regulatory regimes that provide mechanisms for whistleblowers to come forward and report misconduct. Whistleblowers who come forward, and are represented by a whistleblower lawyer, may be entitled to an award of some percentage of sanctions collected in actions pursued by the Securities Exchange Commission (SEC). Our lawyers represent individuals who have witnessed bad behavior within a company or organization and are intent on reporting to the appropriate regulatory agency, such as the SEC.

## THE TADLER LAW TEAM

ARIANA J. TADLER has extensive experience litigating and managing complex securities and consumer class actions, including high profile, fast-paced cases and data breach litigations. After more than 20 years working at Milberg LLP and then Milberg Tadler Phillips Grossman LLP, Ms. Tadler and her core team established Tadler Law LLP, a complex and class action litigation boutique firm.

Ms. Tadler is consistently recognized as one of the nation's preeminent leading authorities on electronic discovery and pioneered the establishment of an E-Discovery Practice group within a plaintiffs' firm structure. Ms. Tadler is regularly invited to speak on a variety of litigation and discovery-related topics and has authored numerous articles and developed and promoted best practice tips and tools, including *The Jumpstart Outline*, now in its

third edition, published by The Sedona Conference®.

Ms. Tadler and her team have actively litigated numerous highly publicized data breach litigations. Ms. Tadler serves on the PSC in the multidistrict litigation in *In Re: Marriott International, Inc. Custom Data Security Breach Litigation,* MDL Case No. 19-md-2879 (D. Md.). Other representative matters include *Adkins, et al. v. Facebook, Inc.*, No. C 18-05982 (N.D. Cal.) (appointed Class Counsel) (injunctive relief settlement granted final approval in May 2021); *In re Equifax, Inc. Customer Data Breach Litigation*, 17-md-02800 (N.D. Ga.) (relating to the credit bureau's data breach, which exposed the financial information of more than 145 million consumers; appointed to PSC; final approval granted on January 13, 2010, with $380+ million settlement for affected consumers plus

 

22 Bayview Avenue, Suite 200, Manhasset, NY 11030
(212) 946-9300 · www.tadlerlaw.com

a potential additional $125 million for out-of-pocket losses and free credit monitoring for class members); *In re Yahoo! Inc. Customer Data Security Breach Litigation*, No. 5:16-MD-02752 (N.D. Cal.) (class action arising from a breach affecting approximately 194 million user accounts; appointed to PEC; $117.5 million common fund settlement approved; Second Amended Order Granting Final Approval of Settlement issued July 22, 2020); *In re Target Corporation Customer Data Security Breach* Litigation, No. 14-md-2522 (D. Minn.) (representing consumers in a class action alleging that Target Corp. failed to protect customers from a massive data breach during the holiday shopping season; appointed to PSC; achieved a $10 million settlement).

Ms. Tadler is also currently serving on the PEC in the multidistrict litigation *In re Apple Inc. Device Performance Litigation,* No. 5:18-md-02827-EJD (N.D. Cal.). The *Apple* litigation arises from Apple's released iOS updates designed to slow down the performance of certain iPhones and iPads. The class complaints alleged Apple throttled the performance of certain devices, including iPhones, with degraded batteries. Ms. Tadler served as Co-Chair of the Offensive Discovery and ESI Coordination Committee. In March 2021, the court granted final approval of a $310 million class action settlement, which is pending appeal.

Ms. Tadler is currently serving as lead counsel and settlement class counsel in a number of consumer cases involving the mislabeling of products that contained GMOs as "natural," including *In re ConAgra Foods, Inc.*, No. 11-05379 (C.D. Cal.) in which a multi-state class was certified by the district court, affirmed by the Court of Appeals for the Ninth Circuit and successfully survived Defendants' petition for a writ of *certiorari* to the United States Supreme Court. A settlement of that matter was approved in 2019 and reversed on appeal; a new settlement has been negotiated and is now pending preliminary approval.

Ms. Tadler has been recognized for her ability to manage particularly large, complex, fast-paced litigations. Ms. Tadler's accomplishments include litigation of three cases in the Eastern District of Virginia (a/k/a the "Rocket Docket") in less than four years, including *In re MicroStrategy Securities Litigation*, a federal securities litigation, in which plaintiffs' counsel negotiated settlements valued at more than $150 million. Ms. Tadler served on the PEC and as plaintiffs' liaison counsel in the *Initial Public Offering Securities Litigation* in which the court approved a $586 million cash settlement. Among the thousands of defendants in this coordinated action were 55 prominent investment banks and more than 300+ corporate issuers.

Ms. Tadler also has been retained as Special Discovery Counsel in complex litigation and class actions. She represented the government of Colombia as Special Discovery Counsel in its pursuit of claims alleging smuggling and illegal sales of alcohol by several international companies for violation of United States RICO statutes and other common law claims. The engagement encompassed identifying relevant information responsive to defendants' requests, confirming and guiding preservation practices, and interviewing and collecting data from more than 100 custodians in 23 Colombian Departments (Colombia's equivalent to our States in the U.S.). The team also reviewed and produced data in the litigation and was tasked with ensuring compliance with the various privacy laws of Colombia and the United States with regard to personal data, controlled data and the transfer of sensitive information. Lawyers from other firms faced with E-Discovery challenges seek out Ms. Tadler for her guidance and counsel.

Appointed by United States Supreme Court Chief Justice Roberts, Ms. Tadler serves on the Federal Civil Rules Advisory Committee. Now serving her second term, Ms. Tadler has been appointed by Committee Chair Judge Robert Dow to subcommittees tasked with reviewing and considering potential civil rules for multidistrict litigation (MDL) cases, discovery, and certain pleading devices.

Ms. Tadler has completed her service on The Sedona Conference®'s Board of Directors and, after five years as Chair, serves as Chair Emeritus of the Steering Committee for Working Group 1 on Electronic Document Retention and Production, the preeminent "think tank" on E-Discovery. In addition, she serves on the Advisory Board of Georgetown University Law Center's Advanced E-discovery Institute. Ms. Tadler also served as Executive Director for the Board of Advisors of the Benjamin N. Cardozo School of Law's Data Law Initiative.

Ms. Tadler continues to be recognized for her litigation prowess by prominent legal industry rating organizations. Ms. Tadler's recent accolades include: repeated Band 1 (highest) recognition by Chambers and Partners' for E-Discovery (2019-2022); Best Lawyers, Mass Tort Litigation/Class Actions (2020-2023 Editions); Lawdragon for 500 Leading Plaintiff Financial Lawyers (2021-2022 Editions); Top Lawyers in America in the U.S. News & World Report Best Lawyers list, recognition in *The Best Lawyers in America©* for E-Discovery and Information Governance (2021) and for Class Actions and Mass Torts (2020); Legal 500 as a 2021 Leading Lawyer E-Discovery and 2020 TIER 2 in E-Discovery; Super Lawyers (2010-2022); New York Metro Super Lawyers (2010-2022); Super Lawyers "Top 100 Lawyers in New York Metro Area" (2015-2019); Super Lawyers "Top 50 Women Lawyers in New York Metro Area" (2014-2020); Who's Who Legal Litigation: Leading

Practitioner – E-Discovery (2015-2022); Who's Who Legal Litigation: Global Elite Thought Leader Commercial Litigation – E-Discovery (2020-2022); and AV® Preeminent rating from Martindale Hubbell (2008-2022). The Legal 500 2016 rankings stated: "'Consummate professional' Ariana Tadler, who leads the E-Discovery unit [then at her former firm], is 'exceptional, clear and forceful, a giant in her field' … 'able to navigate technical discovery issues at a very high level.'"

Ms. Tadler is a member of several legal industry associations, including: American Bar Association; American Bar Foundation (Fellow); American Association for Justice (Legal Affairs Committee); New York State Bar Association; National Association of Women Lawyers; New York Women's Bar Association. Ms. Tadler is a fellow of the Litigation Counsel of America, an invitation-only trial lawyer honorary society that recognizes the country's top attorneys. She is also involved in various community and not-for-profit organizations and has served for 20 years on the board of Mobilization for Justice (MFJ). She recently served as Co-Chair of MFJ's benefit, which in the face of COVID-19 pivoted to a virtual event and proved to be a success.

Ms. Tadler commits countless hours to mentoring others in their educational and professional pursuits. She is particularly focused on fostering education and career opportunities for women and underprivileged youth.

Ms. Tadler was also a Founding Principal in, and serves as a consultant for, Meta-e Discovery LLC, an independent data hosting, management, and consulting company, which was the result of the 2015 spin-off of Milberg LLP's prior Litigation Support and Data Hosting services division that Ms. Tadler spearheaded.

 

Ms. Tadler graduated from Hamilton College in 1989 and received her J.D. from Fordham University School of Law in 1992.

**A.J. DE BARTOLOMEO** has nearly 30 years of experience prosecuting class actions and complex matters in courts throughout the United States. She has served in court-appointed leadership roles in numerous MDL mass tort and class action lawsuits.

Ms. de Bartolomeo served on the PSCs for *In re Yaz and Yasmin Birth Control Litigation*, *In re Actos Products Liability Litigation*, and *In re Pradaxa Products Liability Litigation*. Ms. de Bartolomeo has also served on Law and Briefing committees and has been involved with Daubert briefings in a number of cases, including *Yaz*, *Actos* and *Pradaxa*. She previously served on the PSC for *In re Transvaginal Mesh Litigation*. She also served as Co-Lead Counsel representing over 300 individuals (including minors) who used the Fitbit Force™ Wireless Activity + Sleep Wristband and suffered personal injuries and permanent scarring, achieving a 2017 settlement in aggregate matrix formula for a confidential amount.

In class action matters, she received Co-Lead position appointments in *In re Literary Works in Electronic Database Copyright Litigation*, MDL No. 1379 (S.D.N.Y.), *In re Motors Liquidation Company, et al., f/k/a General Motors Corp., et al.* (Bankruptcy Litigation) (S.D.N.Y.), *In re American Express Financial Advisors Securities Litigation* (S.D.N.Y.), and *CalSTRS v. Qwest Communications, et al.* (N.D. Cal.). She was appointed lead counsel in *Powers v. Cable & Wireless, Inc.* (D. Mass and then settled in Delaware Bankruptcy Court.) and *Telstar v. MCI, Inc.*, achieving a settlement of more than $2.8 million in cash on behalf of class of commercial subscribers alleging FCA violations for unfair billing practices. Ms. de Bartolomeo served on the Plaintiff's Executive Committee in *In re Glumetza Antitrust Litigation*, No. 3:19-cv-5822 (N.D. Cal.) and currently serves on the Plaintiffs' Steering Committee in *In Re Avandia Marketing, Sales Practices and Products Liability Litigation*, MDL 1871.

Ms. de Bartolomeo has also served as Special Counsel to an international publicly traded personal care and beauty manufacturing corporation, providing litigation and regulatory risk consulting specifically to the General Counsel and the Board of Directors. Ms. de Bartolomeo also represented the company in litigation, both in prosecuting and defending business claims.

Ms. de Bartolomeo is in the forefront of advancing opportunities for women in the law. A former Chair of the Women's Trial Lawyer Caucus of the American Association of Justice, she oversaw the caucus's work in leadership training, student scholarship, membership, and political outreach.

Ms. de Bartolomeo has repeatedly received recognition for her litigation and leadership skills by legal industry rating organizations. Recent acknowledgements include: named to The Best Lawyers in America (2023 Edition); named by Lawdragon to 500 Leading Plaintiff Financial Lawyers (2022 Edition); recognized as Top U.S. E-Discovery and Information Governance Practice and Band-4 Notable Practitioner by Chambers, USA in 2021; named among Top Lawyers in America in the 2020 U.S. News & World Report Best Lawyers list; recognized in *The Best Lawyers in America*© for class actions and mass torts, named to Legal 500 rankings as a Recommended Lawyer; received AV Preeminent® rating by Martindale Hubbell (2004-2022); and recognized by her peers as a Northern California Super Lawyer every year since 2013.

Other awards and recognition include the

 

22 Bayview Avenue, Suite 200, Manhasset, NY 11030
(212) 946-9300 · www.tadlerlaw.com

Above and Beyond Award, American Association for Justice, 2018; Top 50 Women Lawyers in Northern California, 2017; Distinguished Service Award, American Association for Justice, 2016; and Top Women Attorneys in Northern California for 2014.

A frequent guest speaker and conference presenter, Ms. de Bartolomeo has addressed subjects of ethical procedures for client and case management, best settlement practices and procedures in complex litigation, pharmaceutical fraud, E-Discovery, Daubert challenges, Fed. R. Civ. Pro. 37(e), corporate litigation risk management and compliance procedures, diversity, and class action notice and settlement administration.

Past and present memberships and directorships include Member, American Bar Association; Member of ABA Sections on Litigation, and on Antitrust Law and Tort and Insurance Practice; Member, American Association for Justice; Member of the AAJ Executive Committee (2016-2018; Board of Governors (2016-Present); Executive Committee Member for Women's Trial Lawyer Caucus (2016-2020); Chair of Women's Trial Lawyer Caucus (2015-2016); Consumer Attorneys of California Board of Directors (2018-Present); Former Member, National Association of Public Pension Attorneys, Task Force on Securities Litigation and Damage Calculation; Former Member, American Bankruptcy Institute.

**TONY K. KIM** is an Associate with Tadler Law LLP. Prior to joining Tadler Law, Mr. Kim served as an Assistant District Attorney for the Kings County District Attorney's Office since 2019. Mr. Kim quickly rose up the ranks in a Trial Bureau, starting his career as a misdemeanor prosecutor and ultimately serving as a felony prosecutor. As a Brooklyn prosecutor, he investigated and prosecuted hundreds of misdemeanor and felony criminal cases, including cases involving attempted murder, possession of firearms, robberies, and burglaries. In preparation for grand jury presentations, Mr. Kim enhanced investigations by reviewing and obtaining additional evidence and interviewing civilians and members of law enforcement. He presented numerous cases before the grand jury where he direct examined witnesses and cross-examined defendants. Mr. Kim served as a co-chair on an attempted murder case which involved the prosecution and preparation for trial. He also conducted several evidentiary suppression hearings on cases involving possession of firearms.

Before attending law school, Mr. Kim worked with Ms. Tadler at her prior firm as her legal assistant and also worked as a paralegal focusing on securities class action cases at another class action firm.

Mr. Kim earned a J.D. from Brooklyn Law School and a B.A. in Political Science from Boston College. While in law school, he served as an Articles Editor for the Journal of Corporate, Financial & Commercial Law, Co-President of Legal Outreach – Motivating Youth Through Legal Education, Alumni Co-Chair of the Asian Pacific American Law Student Association, and First Year Student Advisor.

TADLER LAW LLP    certified WBENC WOMEN'S BUSINESS ENTERPRISE    22 Bayview Avenue, Suite 200, Manhasset, NY 11030
(212) 946-9300 • www.tadlerlaw.com

## ATTORNEYS FORMERLY WITH TADLER LAW LLP WHO WORKED

### ON THE CONAGRA LITIGATION

**MELISSA RYAN CLARK** was a Partner with Tadler Law LLP until June 2020. She had spent more than a decade litigating complex and class action privacy, financial, and consumer cases, and is now associated with another firm.

She has a broad range of class action experience, having represented consumers in data privacy, data breach, and consumer fraud cases against data and tech giants like Facebook, Inc., Google, Apple, Inc., Equifax Inc., and RCN Corp., as well as corporations in other industries, such as Wendy's International, LLC. Ms. Clark also has a strong background in securities fraud litigation and has represented investors in class actions against publicly traded companies like ARIAD Pharmaceuticals, Inc. and Virgin Mobile USA.

Before working with Ms. Tadler at her prior firm, Ms. Clark worked at a boutique firm in New York, where she was part of a securities litigation team that recovered several multimillion-dollar settlements on behalf of investors. Her legal work experience also includes judicial externships with the Honorable Jerry Brown, Chief Judge of the United States Bankruptcy Court, Eastern District of Louisiana and the Honorable Jay C. Zainey of the United States District Court, Eastern District of Louisiana, as well as a clerkship for the San Francisco District Attorney's Office.

In addition to her legal work, Ms. Clark has experience teaching legal research, writing, and management communication skills as a Senior Fellow at Tulane Law School and an Adjunct Writing Instructor at Tulane University's Freeman School of Business.

She was an active member of the New York State Bar Association, where she serves on the Law, Youth & Citizenship Committee and

Mock Trial subcommittee, and the American Bar Association, where she served on the Professional Liability Committee as co-editor of the newsletter.

Ms. Clark received her B.S. from Florida State University in 2004 and her J.D. from Tulane University in 2007. She also attended UC Berkeley-Boalt Hall for a semester, where she received high honors in Securities & Class Action Litigation and was a member of the *California Law Review*. Ms. Clark has been recognized as a New York Super Lawyers "Rising Star" each year since 2011 and was named to the Benchmark Litigation 40 & Under Hot List in 2018.

**HENRY KELSTON** was a Partner with Tadler Law until September 2019. He received a B.S. degree, *cum laude*, from Tufts University in 1975, and a J.D. degree from New York University School of Law in 1978, where he was a member of the Annual Survey of American Law.

Mr. Kelston's practice concentrated in the areas of complex litigation, class actions and electronic discovery. Mr. Kelston has represented consumers in class actions against major food manufacturers challenging the use of "natural" claims on products containing GMOs. He has also litigated major data breach cases, including *In re Yahoo! Inc. Customer Data Security Breach Litigation*, concerning the largest consumer data breach in history at the time it was filed.

Mr. Kelston has extensive experience in state and federal court litigation, administrative proceedings, and arbitrations, and has been a regular speaker and CLE presenter on electronic discovery. He was a member of The Sedona Conference® Working Group 1 on Electronic Document Retention and

 

22 Bayview Avenue, Suite 200, Manhasset, NY 11030
(212) 946-9300 · www.tadlerlaw.com

Production. He assisted in drafting The Sedona Conference® COMMENTARY ON LEGAL HOLDS: THE TRIGGER & THE PROCESS (expected publication in 2019) and served on the faculty for The Sedona Conference® EDISCOVERY NEGOTIATION TRAINING. Mr. Kelston also taught Basics of E-Discovery at Legal Services of New Jersey's 2018 In Depth Litigation Skills Training program.

Mr. Kelston is admitted in the United States District Courts for the Southern and Eastern Districts of New York and the District of Connecticut.

**BROOKE A. ACHUA** was an Associate with Tadler Law LLP until December 2019. Her work principally involved sophisticated and complex discovery and forensic data analysis. At her prior firm, she focused her practice in complex civil litigation, representing both plaintiffs and defendants in class action claims, food and beverage labeling litigation, antitrust suits, contract disputes, and trade secret litigation. In this capacity, Ms. Achua managed forensic analysis of electronic discovery in cybersecurity actions, defended small-business owners from a variety of breach of contract claims, and propelled class certification forward through her representation of a class of merchants in a price-fixing suit. Ms. Achua used her technical experience to arrive at legal solutions to serve the needs of her clients.

Ms. Achua was also active in the legal community, including previously serving as an At-Large Director of the Minnesota Association of Black Lawyers and a member of the Federal Bar Association Minnesota Chapter. Before joining Tadler Law, Ms. Achua solidified her commitment to serving underrepresented communities as a Congressional Intern to Congressman Keith Ellison. Ms. Achua volunteered her time providing pro bono assistance to low-income victims of domestic violence through the Tubman Pro Bono Safety Project.

Ms. Achua attended Mitchell Hamline School of Law in St. Paul, Minnesota on a full academic scholarship. She graduated with honors and received recognition for her dedication to pro bono work. In law school, Ms. Achua gained valuable court experience at the federal judiciary externing for the Honorable Michael J. Davis at the Minnesota U.S. District Court. Ms. Achua also served as the President of the Mitchell Hamline Black Law Student Association from September 2015 to May 2016, earning her the Judge Pamela G. Alexander Scholarship on behalf of the Minnesota Association of Black Lawyers.

**BRIAN R. MORRISON** was a Partner with Tadler Law LLP until May 2022. Mr. Morrison focused on prosecuting class actions and other complex litigation on behalf of consumers and small businesses. He has a strong working knowledge of consumer and product liability laws across various jurisdictions and industries, and experience in handling class certification issues and the creation and administration of multidistrict litigation.

Before joining Tadler Law, Mr. Morrison worked at several nationally recognized law firms, including one of the nation's leading class action and litigation firms. He has worked on some of the largest antitrust and consumer protection class actions in recent history, including the *Takata* airbag multidistrict litigation, the generic pharmaceutical pricing antitrust litigation, and several billion-dollar financial fraud matters. Additionally, he has consulted closely with state attorneys general and local governments to investigate potential recoveries as part of the opioid epidemic.

Mr. Morrison previously served as a judicial law clerk for the Honorable Jaynee LaVecchia of the Supreme Court of New Jersey, where he worked on a variety of novel and complex legal



22 Bayview Avenue, Suite 200, Manhasset, NY 11030
(212) 946-9300 · www.tadlerlaw.com

issues. He also founded and co-chaired the Young Lawyers Division of the Association of the Federal Bar of New Jersey and served as a founding member of the New Jersey Law Journal Young Lawyers Advisory Board. Brian worked vigorously to expand pro bono opportunities at his previous firms, serving as a member of his firm's pro bono committees.

Mr. Morrison earned a J.D., *magna cum laude*, from Rutgers Law School and a B.A. in Business Administration with a concentration in Finance from Georgetown University. While in law school, he was a Notes and Comments Editor for the Rutgers Law Journal and co-founded the Rutgers Business Law Association. He also served as a legal intern for the Honorable Theodore McKee, U.S. Court of Appeals for the Third Circuit, the Honorable Reggie Walton, U.S. District Court for the District of Columbia, the Honorable Jack Sabatino, Superior Court of New Jersey—Appellate Division, and the Honorable Carol Higbee, Superior Court of New Jersey.

JOANN MILITANO was a Senior Associate with Tadler Law LLP until February 2022, where she primarily focused on pursuing and mining electronically stored information (ESI) in nationwide class actions and other complex litigation. She has worked on all facets of E-Discovery matters for over ten years and has honed a unique set of skills necessary in today's litigation landscape, managing document reviews relating to antitrust matters, data breaches, class action litigation, patent infringement, and other commercial disputes. She is well versed in the use of the Relativity review platform and the application of Technology Assisted Review ("TAR") and other advanced data analytic tools. Ms. Militano has overseen large-scale reviews from inception to completion, tracking productivity, workflow, and budgetary issues. She also has managed and conducted privilege reviews, created detailed privilege logs, drafted and tested search terms and created protocols and other key materials used by review teams. Ms. Militano has solidified her reputation as the go-to ESI and discovery resource in complex litigations. She earned a J.D. from Brooklyn Law School, and a B.A. in Anthropology and History, *magna cum laude*, from SUNY College at Oneonta.

TADLER LAW LLP   certified WBENC WOMEN'S BUSINESS ENTERPRISE   22 Bayview Avenue, Suite 200, Manhasset, NY 11030
(212) 946-9300 · www.tadlerlaw.com

# EXHIBIT 3

JOINT DECLARTION OF CLASS COUNSEL IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF THE
SETTLEMENT, APPROVAL OF FORM AND MANNER OF
NOTICE, APPROVAL TO NOTICE THE CLASSES, AND SETTING
FINAL SETTLEMENT SCHEDULE AND DATE FOR FINAL
APPROVAL HEARING PURSUANT TO FED. R. CIV. P. 23(e)(1)

*In re Conagra Foods, Inc.*, No. CV 11-05379-CJC (AGRx),
MDL No. 2291 (C.D. Cal.)



Justice in all its

# DIMENSIONS

## Overview

At DiCello Levitt, we're dedicated to achieving justice for our clients through class action, business-to-business, public client, whistleblower, and personal injury litigation. Every day, we put our reputations—and our capital—on the line for our clients. Throughour $16B in recoveries, we've helped raise the bar for corporate conduct and responsibility, paving the way for a more just and equitable world.

## Practice Areas

- Agriculture and Biotechnology
- Antitrust and Competition Litigation
- Appellate and Policy Advocacy
- Civil and Human Rights Litigation
- Class Action Litigation
- Commercial Litigation
- Environmental Justice
- Insurance Litigation
- Labor and Employment Litigation
- Personal Injury
- Pharmaceutical Fraud, Waste, and Abuse
- Privacy, Technology, and Cybersecurity
- Product Liability
- Public Client
- Securities and Financial Services Litigation
- Whistleblower, Qui Tam, and False Claims Act

## Members of the Firm

Our attorneys have the ability to successfully try cases across the spectrum of complex commercial litigation, financial fraud and securities litigation, public litigation, class actions, defective drug and device cases, catastrophic injuries, and other areas of law.  The firm boasts an impressive roster of attorneys.



**Mark A. DiCello**
Partner

**EMAIL:**
madicello@dicellolevitt.com

**EDUCATION**
Cleveland-Marshall College of Law, J.D.

University of Dayton, B.A.

Mark DiCello is a founding partner of DiCello Levitt. He explains that after 20 years of jury trials and serving in lead roles in some of the largest personal injury cases in Ohio and around the country, he wanted to create a plaintiffs' firm that did not exist, a firm that brought together top talent in the most important areas of plaintiffs' law.

Mark understands that while our technology-driven society continues to evolve at an unprecedented pace, the law is slow to adapt. That means the most powerful economic interests typically operate "ahead" of the law. Representing people hurt by them, from serious catastrophic physical injury to life changing economic injury, is more challenging than ever. Through that lens, he has a simple message: "While Justice is your right, society won't just give it to you, you have to fight for it." This insight forms the heart of his approach to litigation and firm building.

Mark's clients are all victims – from individuals suffering catastrophic personal injuries to groups of plaintiffs harmed by medical devices, pharmaceutical products, chemicals, automobiles, and more. He has led headline-grabbing mass tort and product liability cases and co-led massive multidistrict litigations.

For Mark, all of his experiences have led inevitably to the 2017 creation of powerhouse trial firm DiCello Levitt. He views the firm as unique in the plaintiffs' bar – a diverse and fearless team of lawyers focused on important litigations in the U.S. and abroad. His vision is to continue building a firm comprising leaders in the law with strong underlying frameworks that ensure the firm can thrive for generations to come.





**Adam Levitt**
Partner

**EMAIL**
alevitt@dicellolevitt.com

**EDUCATION**
Northwestern University School of Law, J.D.

Columbia College, Columbia University, A.B., *magna cum laude*

Adam Levitt has scored important wins leading dozens of significant litigations on behalf of individuals, businesses, and public clients and has built a firm that reflects his resolve for justice in all its dimensions.

One of the nation's leading advocates for plaintiffs in complex multidistrict, commercial, public client, and class action litigations, Adam has delivered nearly $20 billion in recoveries to clients in biotechnology, financial services, insurance coverage, consumer protection, automotive defects, agricultural products, antitrust, and securities disputes.

Adam's reputation for innovatively taking on tough cases has led to his appointment by State Attorneys General in the largest ongoing environmental PFAS water contamination cases of our time, and the historic litigation arising from Volkswagen's emissions scandal, where, as a court-appointed member of a leadership group characterized as a "class action dream team," he helped to secure a $16 billion settlement that benefitted car buyers across the United States.

Adam has also served as co-lead counsel in three of the largest biotechnology class actions in history. He secured $1.1 billion in settlements resulting from contamination of the U.S. rice supply with genetically modified seeds; helped to obtain a $550 million settlement on behalf of landowners and landscapers in a class action involving tree and other foliage death and harm caused by an herbicide; and recovered $110 million for farmers who sustained market losses on corn crops from contamination of the U.S. corn supply with genetically modified corn.

In addition to securing significant financial relief for his clients, Adam's work has changed how biotechnology class action cases are litigated in the U.S. He co-created a game-changing economic model to measure crop contamination damages that set the modern industry standard.

Adam's groundbreaking work on behalf of plaintiffs has been recognized locally and nationally in prestigious ranking directories, including *Chambers USA*, where he received a Band 1 ranking for Mainly Plaintiffs Litigation in Illinois. *Chambers USA* also ranked Adam in Illinois for General Commercial Litigation and nationwide for Product Liability Litigation, where the editors describe him as the "go-to plaintiffs' attorney in the class actions space." In 2021 and 2022, *Benchmark Litigation* awarded Adam National Litigation Star: Securities and Litigation Star in Illinois. According to *The National Law Journal*, Adam is a "pioneer" in technology litigation, and *Crain's Chicago Business* named him a 2021 Notable Gen X Leader in Accounting, Consulting, and Law.

An elected member of the American Law Institute and the Economic Club of Chicago, Adam considers the formation of DiCello Levitt in 2017 to be a pivotal moment in his decades-long legal career. With a shared vision, foundation of trust, and commitment to holding large companies accountable for injuries caused by their products and practices, he and his partners intend to maintain their industry-wide influence and successful track record for years to come.





**Kenneth Abbarno**
Partner

**EMAIL**
kabbarno@dicellolevitt.com

**EDUCATION**
Cleveland-Marshall College of Law, J.D.

Canisius College, B.A.

Toxic exposure to chemicals goes hand in hand with truck crash cases. Ken saw that early in his career. More than twenty years ago, Ken found himself called to the scene of a major truck crash. As a young lawyer, he witnessed what really happens in the aftermath of that kind of tragedy. He saw how truck companies protect their drivers. He saw a small police department struggle with securing a crime scene and preserving evidence. He saw how people in cars don't stand a chance when a truck driver loses control. He saw the impact that a spilled tanker can have on the environment and how toxic exposure can change lives in minutes. That experience shaped the rest of his professional career.

As a former defense lawyer, Ken was recruited by the most accomplished plaintiff-side law firms in the United States. Ken chose to join DiCello Levitt, understanding that he would have unique and unrivaled access to resources not available at any of the traditional personal injury firms. Since joining the firm, Ken has set himself apart as a leader who coordinates complex medical malpractice, birth injury, truck crash, and toxic exposure cases, all while mentoring young lawyers advancing in the trial bar and serving as the firm's General Counsel.

Over the past three decades, Ken has been recognized as a top-tier litigator in medical malpractice cases and in the transportation industry. He's litigating major medical malpractice, truck crash, and toxic exposure cases in multiple jurisdictions across the United States. Throughout his career, Ken has been recognized by the medical and trucking industries and his peers as an elite trial lawyer.

Ken is a sought-after voice and has published articles in national transportation magazines and spoken at conferences across the country. He has been selected as an Ohio Super Lawyer every year since 2010, and was named an Inside Business Leading Lawyer, Cleveland's Transportation Lawyer of the Year, and recognized in The Best Lawyers in America.



**Mark M. Abramowitz**
Partner

**EMAIL**
mabramowitz@dicellolevitt.com

**EDUCATION**
University of Toledo College of Law, J.D.

University of Guelph, B.A.

Mark has demonstrated expertise in leveraging cutting-edge technology in DiCello Levitt's modern and evolving trial practice to achieve what were previously believed to be impossible results for his clients.  An Internet technology expert, he is a student of integrating technology into the practice of law. He has been selected to national discovery review teams and is regularly consulted on cloud-based systems, discovery technology, the Internet of Things, and litigation concerning data storage and security. He has testified before the Ohio State Legislature multiple times on data security and related issues.

Mark is a respected litigator and trial lawyer who has recouped life changing compensation for clients around the country. He has expertise and experience ranging from defective products to Internet technology disputes. Mark is recognized for breaking barriers in medical malpractice litigation through groundbreaking work in exposing electronic medical record alterations and successfully expanding states' damages caps in joint replacement surgery cases.

Mark brings a unique voice to the Sedona Conference's Data Security and Privacy Liability working group and is one of the authors of Sedona's Biometric Privacy Primer. He has also served as a Trustee of the Ohio Association for Justice since 2014. Mark is currently Editor-in-Chief of *Ohio Trial* and is a member of *Law360's* Personal Injury Editorial Advisory Board.





## F. Franklin Amanat
Partner

**EMAIL**
famanat@dicellolevitt.com

**EDUCATION**
Harvard Law School, J.D., *cum laude*

The University of Pennsylvania, B.A., *summa cum laude*

Frank Amanat is a highly-decorated litigator with nearly 30 years of experience in a broad range of complex legal matters. He has particular expertise in constitutional and administrative law, as well as class actions, financial and securities fraud, health care and pharmaceutical litigation, False Claims Act and FIRREA litigation, complex torts, civil rights, and environmental litigation. A veteran of 19 trials and arbitrations and dozens of appeals, Frank has led some of the largest and most consequential civil litigation in the country, appearing on both the plaintiff and defense side, and he has amassed a remarkable track record delivering successful outcomes to his clients.

Frank specializes in representing victims of fraudulent and illegal conduct, as well as whistleblowers, governmental entities, and other plaintiffs, in a wide range of high-impact litigation, including class actions and multidistrict litigation. His practice focuses on financial and securities fraud, health care fraud, civil rights, mass torts, and other complex commercial litigation.

Prior to joining DiCello Levitt, Frank spent 24 years at the U.S. Department of Justice ("DOJ"), including more than two decades as an Assistant United States Attorney and then Senior Counsel at the U.S. Attorney's Office for the Eastern District of New York (Brooklyn), plus stints at the Office of Legal Policy ("OLP") and the Office of Immigration Litigation. At DOJ, Frank handled over 400 cases, both affirmative and defensive, on behalf of more than 70 federal agencies. From 2013 to 2018, he served as lead counsel for the Government in the successful investigation and prosecution of Barclays Bank and two of its former executives for fraud in connection with the sale of residential mortgage-backed securities. The $2 billion settlement is the largest single recovery the Department of Justice has ever obtained in a civil penalty action filed under FIRREA.

For his work at OLP developing regulations implementing the Prison Rape Elimination Act (the largest and most complex rulemaking initiative ever undertaken in the Department of Justice), Frank was awarded in 2012 the Attorney General's Award for Distinguished Service, the second highest award conferred by the Department of Justice. In September 2020, Frank received the EOUSA Director's Award for Superior Performance as an Assistant United States Attorney (Civil) for his work on financial fraud and public policy cases, as well as several immigration policy class actions. In 2018, Frank received the Henry L. Stimson Medal, an award given annually by the New York City Bar Association to honor outstanding Assistant U.S. Attorneys in the EDNY and SDNY for their integrity, fairness, courage, and superior commitment to the public good.





**Greg Asciolla**
Partner

**EMAIL**
gasciola@dicellolevitt.com

**EDUCATION**
Catholic University of America, J.D.

Boston College, A.B., *cum laude*

Gregory Asciolla is a Partner in DiCello Levitt's New York office, where he serves as Chair of the Firm's Antitrust and Competition Litigation Practice. Greg focuses on representing businesses, public pension funds, and health and welfare funds in complex antitrust and commodities class actions. Greg currently represents clients in antitrust matters involving price-fixing, monopolization, benchmark and commodities manipulation, pay-for-delay agreements, and other anticompetitive practices. He also has represented, pro bono, three Ugandan LGBTQ clients seeking asylum in the U.S.

Greg has recovered billions on behalf of his clients and leads extensive investigations into potential anticompetitive conduct, often resulting in first-to-file cases. Prior to joining DiCello Levitt, Greg chaired a nationally-recognized antitrust practice group as a partner and oversaw significant growth in group size, leadership appointments, cases filed, investigations, and reputation. He also litigated and managed civil and criminal antitrust matters involving price-fixing, merger, and monopolization and conducted internal investigations and managed responses to government investigations on behalf of corporate targets as a partner at Morgan Lewis & Bockius LLP. Greg began his career as an attorney at the U.S. Department of Justice's Antitrust Division, where he focused on anticompetitive conduct in the healthcare industry.

Greg is regularly appointed to leadership positions in major antitrust cases in federal courts throughout the U.S., including *Generic Drugs*, *Eurozone Government Bonds*, *Platinum and Palladium*, *Surescripts*, *Crop Inputs*, *Opana*, and *Exforge*.

Named a "Titan of the Plaintiffs Bar" by *Law360* as well as a leading plaintiffs' competition lawyer by *Global Competition Review* and Chambers & Partners USA, Greg is often recognized for his experience and involvement in high-profile cases.  He has been named one of the "Leading Plaintiff Financial Lawyers in America" by Lawdragon, a "Litigation Star" by Benchmark Litigation, and a "Leading Lawyer" and a "Next Generation Lawyer" by The Legal 500, with sources describing him as "very effective plaintiffs' counsel" and "always act[ing] with a good degree of professionalism."

Greg makes substantial contributions to the antitrust bar. In 2016, he was elected to the Executive Committee of the New York State Bar Association Antitrust Law Section, where he formerly served as the Chairman of the Horizontal Restraints Committee. He also currently serves as Co-Chairman of the Antitrust and Trade Regulation Committee of the New York County Lawyers' Association and Membership Chair of the Committee to Support the Antitrust Laws. Greg is an annual invitee of the exclusive Antitrust Forum, serves as the U.S. Representative to the Banking Litigation Network, and is on the Advisory Board of the American Antitrust Institute.





## Bruce D. Bernstein
Partner

**EMAIL**
bbernstein@dicellolevitt.com

**EDUCATION**
The George Washington University Law School, J.D.

University of Vermont, B.S., *cum laude*

Bruce Bernstein has successfully handled a wide range of commercial litigation including suits against large banks, mortgage lenders, automobile manufacturers, pharmaceutical manufacturers, insurers, and healthcare systems. He has successfully litigated these matters at all levels, including before the U.S. Supreme Court.

As a Trial Attorney in the Civil Fraud Section of the U.S. Department of Justice, Bruce investigated, litigated, and resolved complex *qui tam* actions asserting claims under the False Claims Act. In addition, on behalf of the United States, he oversaw the litigation of a large action, pending in Germany, asserting securities fraud-type claims against a multinational automobile manufacturer, which was brought to recover losses incurred by the Federal Thrift Savings Plan, one of the largest defined contribution plans in the world. In private practice, he successfully litigated some of the largest securities fraud actions ever filed. Bruce was a pivotal member of the team that secured significant decisions from the Third Circuit and U.S. Supreme Court in the securities class action against *Merck & Co., Inc.*, which arose out of Merck's alleged misrepresentations about the cardiovascular safety of its painkiller drug Vioxx. That action was ultimately resolved for more than $1 billion, which at the time of its resolution, was the largest securities recovery ever achieved on behalf of investors against a pharmaceutical company.

Bruce has also served as an adjunct professor at The George Washington University Law School and taught written and oral advocacy. Separately, he has authored and co-authored a number of articles on developments in the federal securities laws, including co-authoring, along with several former colleagues, the first chapter of Lexis/Nexis's seminal industry guide *Litigating Securities Class Actions* (2010 and 2012).





## Diandra "Fu" Debrosse Zimmerman
Partner

**EMAIL**
fu@dicellolevitt.com

**EDUCATION**
Case Western Reserve University School of Law, J.D.

City College of the City University of New York, B.A., *summa cum laude*

Diandra "Fu" Debrosse Zimmermann is managing partner of DiCello Levitt's Birmingham office, co-managing partner of the Washington, D.C. office, and co-chair of the firm's Mass Tort division. Fu is also a member of the firm's Public Client, Environmental, Personal Injury, Civil Rights, and Trial practice groups. Widely known for her relentless client advocacy, Fu represents individuals and public entities injured by wrongful conduct, whether from defective medical devices or drugs, environmental contamination, corporate misconduct, or civil rights abuse. Nationally recognized as a powerhouse in mass torts, class actions, products liability, discrimination, and sexual assault claims, Fu has secured hundreds of millions of dollars in client damages.

Fu holds prominent leadership positions for several multidistrict litigations, including Co-Lead Counsel of *In re: Abbott Laboratories, et al., Preterm Infant Nutrition Products Liability Litigation* (MDL No. 3026); Plaintiffs' Executive Committee for *In re: Paraquat Products Liability Litigation* (MDL No. 3004); Plaintiffs' Steering Committee for *In re: Smith & Nephew Birmingham Hip Resurfacing Hip Implant Liability Litigation* (MDL No. 2775); municipalities in both *In re: National Prescription Opiate Litigation* (MDL No. 2804) and *In re: McKinsey &Company Inc., National Prescription Opiate Consultant Litigation* (MDL No. 2996); and counsel in *In re: Proton Pump Inhibitor Litigation* (MDL No. 2789). Fu also held a seat on the Plaintiffs' Steering Committee for *In re: Higher One Account Marketing and Sales Practices Litigation* (MDL No. 2407) and has represented plaintiffs in multiple additional multidistrict litigations. Fu also leads many systematic civil rights and sexual assault cases and represents states and municipalities in litigation.

Fu was recognized in 2022 as one of the 500 Leading Consumer Lawyers by *Lawdragon*. *Chambers USA* 2022 ranked the firm's Litigation: Mainly Plaintiffs team among the top five in Alabama. The *Birmingham Business Journal* honored Fu with a Best of the Bar Award and Who's Who in the Law recognitions in 2021 and 2022. She is repeatedly named as an *Alabama Super Lawyer*, among other recognitions and awards.

Fu is a founding member of Shades of Mass, an organization dedicated to encouraging the appointment of black and brown attorneys in national mass tort actions. She is a board member of Public Justice, the Southern Trial Lawyers Association, and a member of the Birmingham Bar Foundation. Fu previously served as a hearing officer for the Alabama State Bar, and held leadership roles in the American Association for Justice, the Alabama Access to Justice Commission, and was an Alabama State Bar vice president and commissioner. Fu also served as the president of the Magic City Bar Association, the legislative liaison to the Alabama Lawyers Association, and is a former member of the Birmingham Bar Association Executive Committee.

Fu is fluent in French and Haitian Creole and functional in Spanish. Her steadfast pursuit of justice is motivated in large part by her experience as a mother of two young girls.





**Bobby DiCello**
Partner

**EMAIL**
rfdicello@dicellolevitt.com

**EDUCATION**
Cleveland-Marshall College of Law, J.D.

Northwestern University, M.A.

University of Dayton, B.A.

Bobby DiCello's practice encompasses locally and nationally significant cases across a broad range of topics with a focus on restoring the human dignity stolen by civil rights abuses, catastrophic injuries, defective products, and corporate misconduct.

The trial of Officer Derek Chauvin for George Floyd's murder was the most anticipated civil rights trial in recent history. When ABC News Live decided to cover the trial and produce the series *The Death of George Floyd—Derek Chauvin on Trial*, they realized that they needed an authority on high-profile trials to analyze and comment on the Floyd trial. Anticipating a national and international audience, ABC called on Bobby to give his opinions on the case. Between focus group preparation for a major pharmaceutical trial and research into the psychology of modern jurors, Bobby made himself available for weeks of real-time commentary and insight into the trial process.

Bobby is a force in the trial bar. He has obtained record verdicts in cases thought unwinnable, while, at the same time, leading cutting-edge research into juror decision-making in the politically polarized jury system. Bobby has successfully tried, as a first-chair trial lawyer, catastrophic injury and death cases, civil rights cases, medical malpractice cases, mass tort bellwether cases, qui tam cases, and financial services cases, as well as major felony prosecutions, major criminal defense actions, and a variety of other cases that have branded him as one of the nation's best modern-day trial lawyers.

In 2021, Public Justice awarded Bobby its prestigious Trial Lawyer of the Year award for his work in the landmark *Black v. Hicks* police brutality and corruption case in the City of East Cleveland, Ohio. Public Justice presents this annual award to attorneys who promote the public interest by trying a precedent setting, socially significant case. Bobby tried the *Black* case to a jury that awarded Mr. Black a record $50 million—a verdict that has since been sustained up to the United States Supreme Court. Bobby has also been recognized twice as an "agent of change" by *The National Law Journal* in its annual list of Plaintiffs' Lawyers Trailblazers, a rare honor.

Having taught trial lawyers across the country, Bobby is also known for his dedication to improving the art of trial practice. Bobby is routinely asked to assist lawyers from across the U.S. on cases. He consults on all aspects of trial preparation and motion practice, including theme building, case framing, case messaging, and the creation of visuals for courtroom presentation and exhibits. He develops his approach through DiCello Levitt's Trial Center, where he leads focus groups, mock trials, and jury decision-making research. Bobby's work sets DiCello Levitt apart as a truly rare law firm: a plaintiffs' firm with an in-house focus group and mock trial practice that creates powerful presentations and—most importantly for our clients—meaningful verdicts.



**Daniel R. Ferri**
Partner

**EMAIL**
dferri@dicellolevitt.com

**EDUCATION**
University of Illinois College of Law, J.D., *magna cum laude*

New York University, B.A., *cum laude*

Dan Ferri's litigation practice focuses on fraud, breach of contract, intellectual property theft, and antitrust claims. He has achieved tens of millions of dollars in recoveries on behalf of his individual, small business, and public clients. He works to balance the scales and prevent unscrupulous business practices from going unchecked.

Dan's recent work includes successfully representing the State of New Mexico in cases arising from Volkswagen's use of "defeat devices" to cheat emissions standards and other automakers' sales of vehicles containing dangerous Takata airbag inflators. He currently represents New Mexico in asserting consumer fraud claims for deceptive "Low T" advertising and antitrust claims involving broiler chicken price fixing.

Dan was also recently instrumental in achieving a substantial settlement for a class of consumers who purchased Toyota minivans with defective sliding doors and in obtaining certification of multiple statewide classes in a case involving an oil consumption defect in popular GM trucks and SUVs. In addition to his products liability work, Dan represents individual and small business insureds in numerous class-wide coverage disputes against their insurers.





**Daniel R. Flynn**
Partner

**EMAIL**
dflynn@dicellolevitt.com

**EDUCATION**
Indiana University Maurer School of Law, J.D., *cum laude*

Illinois Wesleyan University, B.A.

Dan Flynn represents governmental entities, individual consumers, and corporate clients—all with one primary goal in mind: ensuring the protection of human health and the environment. His stewardship ensures not only that polluters be held responsible for contamination and clean-up, but that corporate entities understand their responsibilities under state and federal environmental laws. As a result of his advocacy in advising corporations on compliance, Dan's clients lead their respective industries in environmental stewardship efforts under a number of rules and regulations, including the Clean Water Act, the Clean Air Act, the Comprehensive Environmental Response, Compensation and Liability Act, the Emergency Planning and Community Right-to-Know Act, and the Resource Conservation and Recovery Act.

Dan assists corporate entities, governmental agencies, and the public by ensuring that companies that have contaminated the environment and violated regulations take responsibility for their actions. Through contribution and cost recovery actions, common law claims, citizen suits, enforcement actions, and proper due diligence and contract negotiation, he ensures polluters and bad actors remediate the harm they have caused.

Dan is part of the DiCello Levitt team working with several states in investigating and addressing poly- and perfluoroalkyl substance ("PFAS") contamination.  DiCello Levitt's PFAS team, along with other Special Assistant Attorneys General and the Illinois Attorney General, most recently filed a lawsuit against 3M for PFAS contamination from its facility in Cordova, Illinois. Cases involving these "forever chemicals" will have wide-reaching implications for state governments and their residents.

Dan also works with communities that have been impacted by years of exposure to polluted air, water, and soil. Recently, Dan and DiCello Levitt's environmental team joined with co-counsel in representing several residents and former residents of Union, Illinois in filing suit against companies responsible for polluting the groundwater with carcinogenic chlorinated solvents. Dan also serves as interim co-lead counsel in a class action on behalf of the residents of Rockton, Illinois and surrounding communities for property damages they sustained following a catastrophic fire at a local chemical factory.

In addition to his environmental work, Dan frequently counsels clients on developing and maintaining state-of-the-art safety and health programs that ensure all employees enjoy safe and healthful workplaces. He works closely with both his clients and the Occupational Safety and Health Administration ("OSHA") to enhance employee safety and health well beyond OSHA's minimum requirements.



**Karin Garvey**
Partner

**EMAIL**
kgarvey@dicellolevitt.com

**EDUCATION**
Northwestern University Pritzker School of Law, J.D.

Harvard University, A.B.

Karin E. Garvey is a partner in the New York office of DiCello Levitt and a member of the Antitrust and Competition practice group. With more than two decades of litigation experience, Karin focuses on representing businesses and public pension funds in complex antitrust class actions.

Prior to joining DiCello Levitt, Karin was a partner of a firm focusing on securities and antitrust litigation. She brings significant experience to managing complex, multi-jurisdictional cases from initial case development through resolution and appeal.  In addition to deposing top executives, Karin has also prepared and defended company executives for deposition, hearing, and trial. Karin has significant experience working with experts—including economists, regulatory experts, patent experts, medical experts, toxicologists, materials scientists, valuation experts, foreign law experts, and appraisers—developing reports and testimony, preparing for and defending depositions, and taking depositions of opponents' experts.  In addition, Karin has engaged in all phases of trial preparation and trial and has briefed and argued appeals.  Karin also has significant experience with arbitration and mediation.

For the first two decades of her career, Karin gained significant experience in antitrust, commercial litigation, and products liability litigation at a prominent defense firm representing and counseling clients from a wide array of industries including pharmaceuticals, cosmetics, building materials, film, finance, and private equity.

Karin is recommended by *Chambers & Partners USA* and *The Legal 500* for excellence in antitrust practice.  She has also been recognized by *Lawdragon* as one of the "Leading Plaintiff Financial Lawyers in America."



**Greg Gutzler**
Partner

**EMAIL**
ggutzler@dicellolevitt.com

**EDUCATION**
University of Michigan, J.D.

University of California – Berkeley, B.A.

Greg Gutzler is an experienced trial lawyer with a track record of billions in recoveries in high-stakes cases. Before joining DiCello Levitt, Greg litigated extensively on both the plaintiff and defense side, including working at his own boutique firm, one of the nation's most prestigious plaintiffs' firms, and as a partner of an Am Law 100 defense firm. He is a trusted advocate chosen by clients when they need candid, creative, and aggressive approaches to business solutions and decisive litigation strategy. Greg believes that the law is more than a means to pursue justice—it is the foundation of a society in which people are free to create, thrive, and feel protected. Beliefs become action through creativity, technical excellence, knowledge, and discipline.

Greg is a go-to advocate for any type of complex commercial litigation, business disputes, whistleblower cases, and sexual abuse cases. Clients seek out Greg for his expertise in contract, ownership, and valuation disputes. Whistleblowers also rely on Greg's experience and creativity in prosecuting SEC, False Claims Act, FIRREA, IRS, and FCPA matters. Greg's practice areas focus on ensuring that innovation thrives and creates competitive marketplaces. One of his clients, a major biotechnology company, spent billions of dollars to create a groundbreaking technology. When a competitor improperly exploited his client's intellectual property, Greg led his client's suit against the competitor, tried the case in federal court, and won a jury verdict of $1 billion in damages. This was the fourth-largest patent infringement jury verdict in U.S. history—and hammered home the point that competition, no matter how intense, must always remain fair and honorable.

Greg has litigated more than a dozen high-profile securities actions against international investment banks for misrepresentations they made to investors in connection with residential mortgage-backed securities, recovering more than $4.5 billion. When important investments and resources are at stake, hedge funds, private equity funds, venture capitalists, individuals, companies, and governmental entities turn to Greg because he is a fearless advocate in complex lawsuits in federal and state court and arbitration.

Greg is also on the front lines in protecting women and men from sexual abuse, discrimination, and exploitation. He is lead counsel in a civil suit involving the world's largest-ever sex trafficking case, which spans six countries and fifty years of abuse. On December 10, 2021, Dateline NBC featured Greg in its revered news magazine program in an episode titled, *The Secrets of Nygard Cay*.

Greg's grasp of the nuances of common law—the influence of jurisdictions, who's on the bench, and more—converge in a simple insight: The system never dispenses justice based on predicable formulas, so legal professionals must fight to achieve justice. He views DiCello Levitt as the right firm to advance that fight for its clients, drawing on a shared vision of commitment, creativity, and loyalty.





**Amy Keller**
Partner

**EMAIL**
akeller@dicellolevitt.com

**EDUCATION**
John Marshall Law School, J.D.
(*n/k/a The University of Illinois at Chicago School of Law*)

University of Michigan, B.A.

Amy Keller has held leadership positions in a variety of complex litigations across the nation., where she has successfully litigated high-profile and costly data security and consumer privacy cases. As the firm's Privacy, Technology, and Cybersecurity practice chair, she is the youngest woman ever appointed to serve as co-lead class counsel in a nationwide class action. In the multidistrict litigation against Equifax related to its 2017 data breach, Amy represented nearly 150 million class members and helped to secure a $1.5 billion settlement, working alongside federal and state regulators to impose important security practice changes to protect consumer data.

Amy has represented consumers against industry titans like Apple, Marriott, Electrolux, and BMW, securing victories against each. Her numerous other leadership positions have required sophistication in not only understanding complex legal theories, but also in presenting multifaceted strategies and damages modeling to ensure favorable results. For example, in leading a nationwide class action related to a data breach that exposed the confidential information of over 300 million individuals, Amy worked with her team to develop an argument recognized by the trial court that the loss of someone's personal information, alone, could trigger financial liability, and later secured a rare victory, certifying that case to proceed as a class action to trial. In another matter, Amy defended her team's victory all the way to the U.S. Supreme Court, ensuring that consumers would be able to band together as a class when a company defrauds them for small amounts individually that are worth millions of dollars in the aggregate.

Amy is an elected member of the American Law Institute and a two-time chair of the Chicago Bar Association Class Action Committee, where she gave a number of presentations on topics impacting large-scale consumer class actions, including presentations on emerging legal issues in privacy cases. Amy serves on the Steering Group of the Sedona Conference's Working Group 11, which focuses on advancing the law on issues surrounding technology, privacy, artificial intelligence, and data security, and she is also on drafting teams for both Model Data Breach Notification Principles and Statutory Remedies and the California Consumer Privacy Act. Her work in cybersecurity and privacy has been recognized many times over—in both 2021 and 2022, she was honored as one of Benchmark Litigation's Top 250 Women in Litigation, in 2020 and 2021, she was named by *The National Law Journal* as one of the Elite Women in the Plaintiffs' Bar, and the practice group which she chairs has won Practice Group of the Year in both 2020 and 2021 by *Law360* and in 2020 by *The National Law Journal*.  Amy is also recognized by Illinois Super Lawyers as a "Rising Star," and was named a "trailblazer" by *The National Law Journal*.  She is also rated by Chambers & Partners.

Amy proudly holds leadership positions in both the American Association for Justice and the Public Justice Foundation, organizations which both focus on access to the courts for civil litigants.





**Matthew Perez**
Partner

**EMAIL**
mperez@dicellolevitt.com

**EDUCATION**
Cardozo School of Law, J.D.

Swarthmore College, B.A.

Matt represents, individuals, businesses, public pension funds, and insurers in complex antitrust class actions. His practice spans a wide range of industries but with particular focus on pharmaceuticals and financial services. He currently litigates several pay-for-delay antitrust actions on behalf of consumers and insurers alleging delayed generic entry for Opana ER, Bystolic, Sensipar, Xyrem, and Zetia. Matt previously worked for a nationally-recognized class action law firm and the New York State Office of the Attorney General Antitrust Bureau. He received the Louis J. Lefkowitz Memorial Award for his work investigating bid rigging and other illegal conduct in the municipal bond derivatives market, resulting in more than $260 million in restitution to municipalities and nonprofit entities. He also investigated pay-for-delay matters involving multinational pharmaceutical companies.

Matt has been named a "Rising Star" by *The Legal 500*. In law school, he received the Jacob Burns Medal for Outstanding Contribution to the Law School. He was an intern for Judge Richard B. Lowe, III, in the New York Supreme Court Commercial Division.



## Corban Rhodes
Partner

**EMAIL**
crhodes@dicellolevitt.com

**EDUCATION**
Fordham University School of Law, J.D., *cum laude*

Boston College, B.A., History, *magna cum laude*

Corban Rhodes litigates cybersecurity and data privacy matters on behalf of consumers. Working at the intersection of law and technology, Corban focuses on cases that involve the intentional misuse or misappropriation of consumer data and data breaches caused by negligence or malfeasance. He has served on the litigation teams of some of the country's most historic and groundbreaking data privacy cases. These include the historic $650 million settlement in the *Facebook Biometric Information Privacy Litigation* matter; the largest consumer data privacy settlement ever in the U.S.; and the first case to claim biometric privacy rights of consumers under the Illinois Biometric Information Privacy Act. Corban also represented consumers in the *Yahoo! Inc. Customer Data Breach Security Litigation*, which stemmed from the largest known data breach in history. He currently represents consumers in pivotal web browser privacy cases, including *Calhoun v. Google* and the *Google RTB Consumer Privacy Litigation*.

Corban also prosecutes complex securities fraud cases on behalf of institutional investors. He successfully resolved dozens of cases against some the largest Wall Street banks in the wake of the mortgage-backed securities financial crisis, as well as some of the largest securities class actions of the last decade.



**Christopher Stombaugh**
Partner

**EMAIL**
cstombaugh@dicellolevitt.com

**EDUCATION**
Drake University School of Law, J.D., with honors

The University of Wisconsin – Platteville, B.A.

For more than 30 years, Chris Stombaugh has been devoted to his true passion: advancing the art and science of trial advocacy. Chris focuses on trial.  He has successfully tried to verdict cases for people around the country injured by hospitals, aircraft manufacturers, insurance companies, agribusiness, construction companies, truck companies, and many other industries. His approach empowers people to tell their stories in a way that resonates with juries and has led to several record-setting, seven- and eight-figure jury verdicts.

Chris speaks regularly to state bar and trial lawyer associations nationwide on modern and effective trial advocacy and is a key member of DiCello Levitt's Trial Practice Team. In addition to his own successful practice, Chris teaches trial lawyers cognitive neuroscience to benefit their clients.

Chris is the past president of the Wisconsin Association for Justice ("WAJ"), having served as president of the WAJ 2014 term. He has been chosen as a Wisconsin Super Lawyer every year since 2010. He is an active member in a number of other trial lawyer associations. Chris is also fluent in Spanish.





**David A. Straite, CIPP/US**
Partner

**EMAIL**
dstraite@dicellolevitt.com

**EDUCATION**
Villanova University School of Law, J.D., *magna cum laude*, Managing Editor, Law Review and Order of the Coif

Tulane University, Murphy Institute of Political Economy, B.A.

David is the nation's leading voice for the recognition of property rights in personal data, a 10-year effort culminating in the Ninth Circuit's landmark April 2020 decision in *In re: Facebook Internet Tracking Litigation* and the Northern District of California's March 2021 decision in *Calhoun v. Google*, both of which he argued. David also successfully argued for the extraterritorial application of the Computer Fraud and Abuse Act in 2019 in *In re: Apple Device Performance Litigation*, and filed the first-ever data privacy class action under seal to address a dangerous website vulnerability under Court supervision in *Rodriguez v. Universal Prop. & Cas. Ins. Co*. As M.I.T. Technology Review magazine put it, David is "something of a pioneer" in the field. In September 2022, Law360 named him a Cybersecurity/Privacy "MVP." He also protects investors in securities, corporate governance, and hedge fund litigation in federal court and in the Delaware Court of Chancery, admitted to practice in both New York and Delaware.

David is a former adjunct professor at Yeshiva University's Sy Syms School of Business, teaching Business Law and Ethics every fall semester from 2015-2021. He has co-authored *Dobbs Ruling Means It's Time to Rethink Data Collection* in Law360 (2022), *Google and the Digital Privacy Perfect Storm* in E-Commerce Law Reports (UK) (2013), authored *Netherlands: Amsterdam Court of Appeal Approves Groundbreaking Global Settlements Under the Dutch Act on the Collective Settlement of Mass Claims*, in The International Lawyer's annual "International Legal Developments in Review" (2009), and was a contributing author for Maher M. Dabbah & K.P.E. Lasok, QC, Merger Control Worldwide (2005). He speaks frequently on topics related to both privacy and investor protection.

David co-chairs the firm's Diversity, Equity, and Inclusion Committee, which seeks to promote diversity within the firm and the legal profession generally. In 2022, David was also appointed to the LGBTQ Rights Committee of the New York City Bar Association, whose mission is to address "legal and policy issues in legal institutions and in the court system that affect lesbian, gay, bisexual, transgender and queer individuals."

Prior to joining the firm, David was a partner with Kaplan Fox & Kilsheimer LLP, and helped launch the US offices of London-based Stewarts Law LLP before that, where he was the global head of investor protection litigation. Prior to joining the plaintiffs' bar, David was an associate with the New York office of Skadden Arps Slate Meagher & Flom LLP.





**John E. Tangren**
Partner

**EMAIL**
jtangren@dicellolevitt.com

**EDUCATION**
University of Chicago Law School, J.D. with honors

University of Chicago, B.A. with honors

John Tangren has exclusively represented plaintiffs for the past decade in multistate automotive defect class actions. In addition to the hundreds of millions of dollars he's recovered for his clients, he also obtained nearly half a million dollars in sanctions for discovery misconduct in a class action involving unintended acceleration in Ford vehicles.

John's professional accomplishments are among the most impressive in the country. He has recovered hundreds of millions of dollars in product defect cases, including $600 million for property damage caused by an herbicide, $135 million for defective heavy truck engines, and $45 million and $40 million in cases involving defective SUV parts, all while setting himself apart as an expert legal writer and tactician.

John has been recognized as an Illinois Super Lawyer, in the National Trial Lawyers Top 40 Under 40, and as an Emerging Lawyer by the Law Bulletin Publishing Company.

He frequently lectures on class action litigation and has presented "CAFA: 12 Years Later" to the Chicago Bar Association Class Action Committee and Strafford CLE "Class Action Litigation: Avoiding Legal Ethics Violations and Malpractice Liability."





## Robin A. van der Meulen
Partner

**EMAIL**
rvandermeulen@dicellolevitt.com

**EDUCATION**
Brooklyn Law School, J.D.

Columbia College, Columbia University, A.B.
.

Robin A. van der Meulen is a partner in DiCello Levitt's New York office, where she represents clients in complex antitrust litigation. Prior to joining DiCello Levitt, Robin was a partner in a nationally-recognized antitrust practice group, where she gained more than a decade of experience litigating a wide variety of antitrust matters, including price-fixing, monopolization, benchmark and commodities manipulation, pay-for-delay agreements, and other anticompetitive practices.

Robin was appointed co-lead class counsel for end-payor plaintiffs in the *Bystolic Antitrust Litigation*, a pay-for-delay case pending in the Southern District of New York. She is also leading *Novartis and Par Antitrust Litigation*, another pay-for-delay case seeking to recover millions of dollars in overcharges relating to the hypertension drug Exforge on behalf of end-payor plaintiffs. Robin also represents end-payor plaintiffs in the *Generic Pharmaceuticals Pricing Antitrust Litigation*, a massive case against some of the biggest drug companies in the world alleging price-fixing and anticompetitive conspiracies.

Robin was previously an associate at Willkie Farr & Gallagher LLP, where she practiced antitrust and commercial litigation. She also served as a judicial intern in the United States Bankruptcy Court for the Eastern District of New York for Judge Elizabeth S. Stong.

*Euromoney's* Women in Business Law Awards selected Robin as a finalist for Antitrust and Competition Lawyer of the Year. *The Legal 500* recommends Robin for excellence in the field of Antitrust Civil Litigation and Class Actions, describing her as "persistent, persuasive, and well-respected by peers and opponents alike" and naming her a "Next Generation Partner." She has been recognized as "Up and Coming" by *Chambers & Partners USA* and as a "Future Star" by *Benchmark Litigation*. She has also been selected to *Benchmark's* "40 & Under Hot List" as one of "the best and brightest law firm partners" and someone who is "ready to take the reins." Additionally, Robin was recognized by *The Best Lawyers in America*® in the Antitrust Law category.

Robin is an active member of the antitrust bar. She is the secretary and a member of the Executive Committee of the Antitrust Law Section of the New York State Bar Association ("NYSBA"), and a member of NYSBA House of Delegates. Robin is also a Vice Chair of the Insurance and Financial Services Committee of the Antitrust Section of the American Bar Association ("ABA"). Robin was previously a Vice Chair of the Antitrust Section's Health Care & Pharmaceutical Committee of the ABA and the Executive Editor of that Committee's Antitrust Health Care Chronicle. From 2012 to 2021, Robin was an editor of the Health Care Antitrust Week-In-Review, a weekly publication that summarizes antitrust news in the health care industry.





## Chuck Dender
Senior Counsel

**EMAIL**
cdender@dicellolevitt.com

**EDUCATION**
Cornell Law School, J.D.

NYU Stern School of Business, MBA

Temple University, B.A.

Chuck Dender is an experienced litigator who has practiced at two of the country's largest law firms. With a demonstrable record of excellence and a track record of success for his clients, the foundation of Chuck's broad litigation experience was formed while defending some of the most significant commercial litigation matters in the U.S. over the last two-plus decades. While Chuck began his litigation career on the defense side of the table, he is a plaintiffs' attorney at heart. He now represents plaintiffs exclusively. With a background that includes membership in the International Brotherhood of Teamsters, Chuck has personally experienced what it's like to be a plaintiff in need of outstanding legal representation.

Chuck's legal expertise is enhanced by his MBA, with a specialization in finance and quantitative finance from the New York University Stern School of Business. This additional accreditation and education gives Chuck a unique advantage when it comes to identifying issues related to financial crimes and damages issues, including working with economists and other expert witnesses. As proof of this point, Chuck played a key role in presenting the damages model of one of the largest financial institutions in the world after the collapse of Lehman Brothers Holding, Inc.

Chuck represents aggrieved investors (both individuals and entities) in all aspects of complex litigation against players in the financial services industry, as well as other public and private companies. He also represents whistleblowers who cooperate with government agencies in their efforts to shine the light on corporate malfeasance.

In whistleblower matters, Chuck has a keen understanding of both the types of information that government agencies are looking for and the best methods for presenting that information to the agencies so they can act and wield justice from corporate wrongdoers. Chuck has authored compelling whistleblower submissions on behalf of both corporate insiders and interested outsiders. He has the good fortune of learning this complicated dance under the tutelage of the principal architect of the Security and Exchange Commission's Whistleblower Program. Chuck has also presented whistleblowers and supporting witnesses in front of the highest-ranking members of the SEC's Whistleblower Program during multiple-day interviews.

Chuck is experienced in a wide range of legal disciplines, with a specific focus representing clients in litigation involving the financial services industry or any matter where the calculation and presentation of damages is anything but a run-of-the-mill issue.



**Nada Djordjevic**
Senior Counsel

**EMAIL**
ndjordjevic@dicellolevitt.com

**EDUCATION**
University of Illinois College of Law, J.D., *summa cum laude,* Order of the Coif

Grinnell College, B.A.

Nada Djordjevic brings justice for those who are harmed by consumer fraud, unfair business practices, data privacy breaches, deceptive insurance sales practices, and other egregious acts. With more than two decades of experience representing plaintiffs in class actions and complex commercial litigations, Nada zealously protects the interests of aggrieved clients throughout the United States.

From individuals or groups of consumers to businesses of all sizes, including national and multinational corporations, Nada's clients benefit from her skilled and varied litigation practice. In addition to consumer protection and class actions, she represents clients in issues related to securities fraud, ERISA violations, deceptive insurance sales practices, and *qui tam* cases under the False Claims Act.

Nada's litigation successes include a $25 million settlement on behalf of 800,000 people in a class action lawsuit. The action involved claims of violations of state consumer protection and deceptive practices laws against a major athletics event organizer. She also represented a multi-state plaintiff class in a data breach case that resulted in one of the largest breach-related settlements in healthcare. Nada was also part of the litigation team that negotiated settlements worth more than $275 million for universal life insurance policy holders in two nationwide class actions alleging improper monthly policy charges.





**Robert J. DiCello**
Of Counsel

**EMAIL**
rjdicello@dicellolevitt.com

**EDUCATION**
Cleveland-Marshall College of Law, J.D.

John Carroll University, B.A., *magna cum laude*

A co-founder of one of DiCello Levitt's predecessor firms, Robert J. DiCello has amassed more than 45 years of professional experience and an extensive list of seven- and eight-figure recoveries for victims of injustice. He has deep experience in a wide range of class actions, personal injury cases, complex mass torts, and probate matters. Over his long and successful career, he has won multiple appeals before the Ohio Supreme Court.

Robert put himself through Cleveland-Marshall College of Law while working as a safety director at U.S. Steel Corp. While in law school, he was selected to join the *Cleveland-Marshall Law Review*. He began his legal career as an assistant prosecutor in the Lake County Prosecutor's Office and later become President of the Lake County Bar Association. He formed his own firm in 1978, managing it with great success over nearly 40 years until its members founded DiCello Levitt.



**Mark S. Hamill**
Senior Counsel

**EMAIL**
mhamill@dicellolevitt.com

**EDUCATION**
Northwestern University Pritzker School of Law, J.D., *cum laude*

Washington & Jefferson College, B.A.

Mark Hamill concentrates his practice on commercial, antitrust, securities, and consumer cases, often taking a lead role with expert witnesses on finance, accounting, and economic topics. He also serves as eDiscovery counsel in many of his cases, leveraging his depth of experience in this area as an attorney and as an eDiscovery project manager having served Fortune 500 and major accounting firm clients in large-scale, high-intensity projects.

Mark represents companies, investors, and consumers in a variety of industries as they grapple with the financial and business impacts of unfair trade practices, business torts, oppression, securities fraud, and consumer fraud. He has worked with highly-regarded business valuation experts and economists to develop and present compelling business and damages models in emerging industries.

Mark brings an interdisciplinary perspective to his cases, based on his experience as a CPA and consultant, which allows him to develop a "no surprises" record for trial. Mark is also a U.S. Army veteran, where he served on a multinational peacekeeping force in Sinai, Egypt.



**Laura Reasons**
Senior Counsel

**EMAIL**
lreasons@dicellolevitt.com

**EDUCATION**
Chicago-Kent College of Law, J.D., Highest Honors

Washington University, St. Louis, MO, B.A.

Laura Reasons leads the firm's labor and employment law practice group where she focuses on wage and hour class and collective actions across the country. She also serves as DiCello Levitt's Associate General Counsel for Employment Matters. Over the past decade, Laura has litigated the spectrum of employment law claims, including in class, collective, and systemic litigation. She previously counseled clients—from small businesses through Fortune 100 companies—on wage and hour compliance, discrimination claim avoidance, and day-to-day employment issues.

Laura's passion for representing individuals has also translated into a strong *pro bono* resume. Her *pro bono* clients include an incarcerated individual, asylum seekers, transgender individuals seeking to change their legal names and gender markers, and Deferred Action for Childhood Arrivals ("DACA") applicants. Laura was a Public Interest Law Initiative Fellow at the Domestic Violence Legal Clinic in Cook County, Illinois, working for more than ten years to represent clients seeking protective orders.

Prior to joining DiCello Levitt, Laura was part of the labor and employment practice group of an international, management-side law firm, where she defended some of the largest companies in the United States in employment law cases, including in high-stakes class and collective litigation. She brings that experience, combined with her passion for service and representing individuals, to the firm. While in law school, Laura served as a judicial extern to the Honorable George W. Lindberg of the United States District Court for the Northern District of Illinois.



**Justin S. Abbarno**
Associate

**EMAIL**
jabbarno@dicellolevitt.com

**EDUCATION**
The Ohio State University Moritz College of Law, J.D.

The University of Dayton, B.A., *summa cum laude*

Justin Abbarno is an aggressive, creative, results-oriented trial lawyer whose practice focuses primarily on medical negligence, personal injury, and sexual assault cases. He is steadfast in his devotion to seeking justice and works to hold individuals and businesses accountable for the harms that his clients have suffered.

During law school, Justin was a key member of The Ohio State University's award-winning Moritz College of Law's Mock Trial Team. He also received the Michael F. Colley Award, as a top mock trial performer in the 2020 graduating class and was named "Best Attorney" during the 2019 Ohio Attorney General's Mock Trial Competition. Prior to law school, Justin graduated from the University of Dayton ("UD"), *summa cum laude*, where he was elected to serve the undergraduate student body as a Representative for the UD Student Government Association. Justin was also a member of UD's NCAA Division 1 FCS Football program and was named to the Pioneer Football League's All-Academic Team.



**Veronica Bosco**
Associate

**EMAIL**
vbosco@dicellolevitt.com

**EDUCATION**
Fordham University School of Law, J.D.

Fordham University, B.A.

Veronica Bosco is an associate in DiCello Levitt's New York office. She is a member of the firm's Antitrust and Competition practice group and focuses on litigating complex antitrust class actions on behalf of institutional investors, businesses, and consumers.

Prior to joining DiCello Levitt, Veronica was an associate in a nationally-recognized competition and antitrust litigation group, where she represented a wide variety of plaintiffs in various federal jurisdictions, including both indirect and direct purchasers, public benefit funds, and individuals. She represented institutional investors in an international antitrust litigation filed against financial institutions for collusion and price-fixing, direct purchasers in national antitrust class actions filed against large corporations, and employees in national no-poach actions.

Veronica has also previously represented businesses in opt-out litigation proceedings alleging restraint of trade in violation of antitrust laws, institutional investors in federal securities law matters, and consumers in product liability matters. She also served as a Judicial Law Clerk for Judge Claire C. Cecchi in the U.S. District Court for the District of New Jersey, where she drafted judicial opinions in several types of cases, including antitrust and ERISA cases.



**Jonathan Crevier**
Associate

**EMAIL**
jcrevier@dicellolevitt.com

**EDUCATION**
Benjamin N. Cardozo School of Law, J.D., *cum laude*

New York University, B.A., *magna cum laude*

Jonathan Crevier is an associate in DiCello Levitt's New York office. Jonathan prosecutes complex antitrust class actions on behalf of institutional investors, businesses, and consumers. He actively litigates cases against a number of the world's largest companies in antitrust matters involving alleged price-fixing, benchmark and commodities manipulation, pay-for-delay, and other anticompetitive practices.

Prior to joining the firm, Jonathan was an associate in a nationally-recognized competition and antitrust litigation group, where he represented plaintiffs in complex antitrust matters. He also previously served as a Judicial Intern for the Honorable Henry Pitman, U.S.M.J., in the District Court for the Southern District of New York.



**Sharon Cruz, CIPP/US**
Associate

**EMAIL**
scruz@dicellolevitt.com

**EDUCATION**
Indiana University Robert H. McKinney School of Law, J.D.

Indiana University-Purdue University at Indianapolis, B.A.

Sharon Cruz is a seasoned criminal prosecutor and investigator specializing in privacy compliance, data management, and cybercrimes. She has issued and enforced hundreds of subpoenas to Facebook, Google, and other major corporations in her cybercriminal investigations. Her expertise in prosecuting Internet crimes is buttressed by years of experience in the tech field, helping her educate stakeholders, law enforcement officers, and healthcare providers on cyber safety, blockchain technology, and the dark web.

In her previous position as Assistant Attorney General for the State of Illinois's High Tech Crimes Bureau, Sharon played a pivotal role in task forces aimed at combatting human trafficking. She has prosecuted numerous child sexual exploitation cases and argued precedent-setting points of tech privacy law as it intersects with criminal activity. As a Cook County Assistant State's Attorney, she tried hundreds of assault, sexual assault, theft, and DUI trials to verdict as first chair.

Sharon's portfolio of expertise also includes prosecuting environmental crimes. As Lead Counsel for Illinois in two state environmental investigations, she secured substantial fines for the State and Illinois citizens.

Sharon has delivered multiple presentations on cybersecurity and technology, including CCPA and Why You Care About It (2017 & 2018) and Legal Issues in Internet Crimes Against Children: ICAC Investigative Techniques (2017-2019).



**Joseph Frate**
Associate

**EMAIL**
jfrate@dicellolevitt.com

**EDUCATION**
Case Western Reserve University
School of Law, J.D.

Ohio University, B.A., *cum laude*

Joe Frate's compassion, diligence, and effective communication result in successful case outcomes for his clients.

Joe received his J.D. from Case Western Reserve University School of Law. During his time at Case Western, he was a member of the Milton Kramer Health and Human Trafficking Law Clinic, where he represented and assisted disenfranchised citizens in receiving Social Security benefits and criminal record expungements. Joe was also named to the Dean's list during his time at Case Western.

Prior to law school, Joe graduated from Ohio University, *cum laude*, where he was elected to serve as Commissioner for off-campus students for the University's Student Senate.



**Allison Griffith**

Associate

**EMAIL**
agriffith@dicellolevitt.com

**EDUCATION**
The University of Alabama School of Law, J.D.

The University of Alabama, B.A.

Allison represents individuals and public entities who have suffered significant financial or personal harm due to wrongful conduct. Before joining DiCello Levitt, Allison worked for a regional defense firm, representing individuals and businesses in diverse civil litigation matters, including premises liability, construction, transportation, products liability, and insurance coverage. In her previous role, she gained experience and proficiency at eliciting favorable testimony from friendly and adverse parties.

Allison obtained her law degree from the University of Alabama School of Law and holds a Bachelor of Arts in Political Science from The University of Alabama. While attending the University of Alabama School of Law, she served as a Senior Editor of *The Journal of the Legal Profession* and was a valued member of the John A. Campbell Moot Court Board. She also took part in the Public Interest Student Board, preparing tax returns for low-income families through the AmeriCorps SaveFirst program and mentoring children through Raise the Bar. For her efforts throughout law school, she received the Order of the Samaritan Award, the Dean's Community Service Award, and the Student Pro Bono Award.

Allison was also a member of the University of Alabama School of Law's Mediation Clinic. In that role, she served as the lead mediator on an array of family court matters, including divorce, child support, visitation, alimony, and property distribution. She is now a registered mediator with the Alabama Center for Dispute Resolution. Allison also serves on the Birmingham Bar Association Young Lawyers Executive Committee.



## Cassandra Hadwen
Associate

**EMAIL**
chadwen@dicellolevitt.com

**EDUCATION**
Chicago-Kent College of Law, Illinois Institute of Technology, J.D.

University of Illinois at Chicago, B.A.

Cassandra represents governmental entities, individual consumers, and corporate clients with a focus on protecting human health and the environment. She is a lifelong environmentalist with a passion for ensuring the protection of natural resources and access to a safe environment for all. Cassandra has experience with numerous environmental statutes and regulations, including the Clean Water Act; the Clean Air Act; the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"); the Endangered Species Act; and the Resource Conservation and Recovery Act.

As a law student, Cassandra was an Executive Board member of Chicago-Kent's Student Humanitarian Network and The Women in Law Society, received the Alvin H. Baum Family Fund Environmental and Energy Law Fellow Scholarship, and was Managing Editor of the *Chicago-Kent Journal of Environmental and Energy Law*. Cassandra also participated in the environmental and energy law clinic, where she assisted on cases concerning urban environmental issues, including coal-fired power plant retirement and remediation and coal ash contamination in Chicago. Cassandra additionally received CALI Awards for achieving the highest grade in Environmental Law and Policy I, Environmental Law and Policy II, and Legal Writing for Environmental Law.

Prior to joining DiCello Levitt, Cassandra completed a fellowship representing Chicago-area environmental justice nonprofit organizations in complex equity, sustainability, and environmental and energy regulatory matters, including coal ash, PFAS, and the Climate and Equitable Jobs Act. Her focus at DiCello Levitt remains the same: ensuring that people of all backgrounds are afforded appropriate environmental protections and access to a safe and healthful environment.



**Eli Hare**
Associate

**EMAIL**
ehare@dicellolevitt.com

**EDUCATION**
Tulane University School of Law

University of Alabama, University Honors College, *cum laude*

Eli Hare is a trial lawyer with experience litigating complex commercial, environmental, and white-collar criminal cases, Jones Act admiralty claims, and financial services matters in state and federal courts across the southeast. Eli represents individuals, businesses, and municipalities and has represented public entities in complex litigation involving multi-billion dollar contractual disputes.

Prior to joining DiCello Levitt, Eli worked with a prominent national plaintiff's firm where he represented individuals injured by wrongful conduct, environmental contamination, and civil right abuses. He also previously worked at a large regional defense firm where he represented businesses, municipalities, and nonprofit organizations through all stages of litigation. Prior to commencing his legal practice, Eli served as a judicial extern to a federal judge in the Northern District of Alabama.





**Justin J. Hawal**
Associate

**EMAIL**
jhawal@dicellolevitt.com

**EDUCATION**
Cleveland Marshall College of Law, J.D., *cum laude*

Saint Louis University, B.A., *cum laude*

Justin Hawal's work spans a broad range of practice areas, with special expertise in complex catastrophic injury, civil rights abuse, mass tort, and class action litigations.

Justin's practice also encompasses police misconduct, human trafficking, and sex abuse. He currently represents dozens of women in the largest international sex trafficking lawsuit in U.S. history against Peter Nygard and his companies. Justin was integral to the consumer plaintiffs' success in the Equifax data breach multidistrict litigation, the largest consumer data breach settlement in U.S. history.

Justin was recently one of only 40 attorneys nationwide to be named a 2021 *National Law Journal* "Elite Trial Lawyers: Rising Star." Justin was also awarded *Public Justice's* 2021 "Trial Lawyer of the Year" for his work on the trial team in *Black v. Hicks*, a groundbreaking civil rights case involving shocking police misconduct and resulting in a $50 million jury award. During law school, Justin was selected as a member of the Cleveland State Law Review and published a scholarly article regarding independent tort actions for spoliation of evidence under Ohio law. He was also an active member of the civil litigation clinic, through which he represented an asylum-seeking immigrant from Honduras fleeing gang violence.





**Joshua J. Lax**

Associate

**EMAIL**
jlax@dicellolevitt.com

**EDUCATION**
Benjamin N. Cardozo School of Law, J.D.

Syracuse University, B.A., *phi beta kappa*

Growing up, Joshua Lax had a strong sense of fairness and justice that he carried into his legal career. From a young age, he heard stories about his family's experience with persecution. Learning that terrible history fueled his commitment to fighting abuse by those who take advantage of fellow human beings.

Prior to joining DiCello Levitt, Joshua served as a senior counsel and trial specialist to the Special Federal Litigation Division of the New York City Law Department. The *New York Times* described the Division as an elite group of attorneys defending the City of New York and its employees. Joshua handled some of the most high-profile federal civil rights cases involving the City, including highly publicized trials where his words of advocacy before juries were quoted in the media. His cases stemmed from fatal shootings, wrongful death claims, reversed convictions, mental illness treatment, First Amendment claims, unlawful wiretapping, and proposed class actions. Department leaders called on Joshua to serve as an instructor for trial advocacy, deposition and mediation trainings, and continuing legal education programs because of his extensive experience.

Joshua began his career as a criminal defense attorney at a prominent firm in northern New Jersey.

In total, Joshua has completed 31 civil trials, in addition to five criminal trials in private practice. These experiences taught Joshua what it takes to develop cases that achieve the results clients seek. He has prepared hundreds of clients for testimony and holds rare and unique insights that help clients through the litigation process.

Joshua is an adjunct professor at Fordham Law School, where he teaches Fundamental Lawyering Skills, a course educating the next generation of America's lawyers in interviewing and counseling clients and negotiation. He is a member of the Federal Bar Council Inn of Court, where he helps present continuing legal education programs. He is also a member of the Federal Bar Counsel Civil Rights Committee.

While earning his law degree at the Benjamin N. Cardozo School of Law, Joshua was a member of the *Cardozo Journal of International and Comparative Law*, the recipient of the Squadron Fellowship in Law, Media, and Society and a member of the Prosecutor Practicum.



## Michelle Locascio

Associate

**EMAIL**
mlocascio@dicellolevitt.com

**EDUCATION**
Chicago-Kent College of Law, J.D.

University of Wisconsin-Madison, B.A.

Michelle diligently works to protect consumers and individuals wronged by the malfeasance of big businesses and corporations. With her background in psychology, she is uniquely equipped to understand the needs of her clients because of her ability to actively listen, effectively communicate, and design creative legal strategies in the pursuit of justice.

Prior to joining DiCello Levitt, Michelle served as a Judicial Extern in the Circuit Court of Cook County, where she worked on a wide array of commercial matters. During law school, Michelle served as Executive Articles Editor for the *Chicago-Kent Law Review* and as a Legal Writing Teaching Assistant for first-year students. Michelle was also a member of Chicago-Kent's top-ranked Moot Court Honor Society, where she finished as a finalist in the 2020 National Health Law Moot Court Competition. Michelle additionally received a CALI Award for achieving the highest grade in Constitutional Torts and was named to the Dean's List during her time at Chicago-Kent.

Prior to law school, Michelle graduated from the University of Wisconsin-Madison with a degree in Psychology and a minor in Criminal Justice.



## Adam Prom
Associate

**EMAIL**
aprom@dicellolevitt.com

**EDUCATION**
The University of Texas School of Law, J.D.

Marquette University, B.A., *magna cum laude*

Adam Prom is an experienced litigator who represents clients in federal and state litigations and arbitrations across the United States. He has litigated a wide variety of class action and other complex litigation cases, including product liability, consumer protection, privacy, False Claims Act *qui tam*, Employee Retirement Income Security Act, securities, and other statutory claims.

He has represented individuals, small and large businesses, and public entities that have been harmed by others' unscrupulous business practices, routinely taking cases from inception through trial and settlement. Beyond his class action work and trial experience, Adam has successfully recovered settlements for individual consumers in arbitration, and he led and won a multi-day arbitration on behalf of a Chicago business against a multi-billion dollar group of trusts.

Adam has demonstrated a commitment to serving underrepresented communities, having volunteered with the Chicago Bar Association's Judicial Evaluation Committee and also as a mentor for high school students at the Legal Prep Charter Academy, an open-enrollment public high school in Chicago. Adam has also worked with Justice Defenders, a registered UK charity and U.S. nonprofit, working to provide legal education, training, and practice to African prisoners denied due process.



**William J. Sinor**

Associate

**EMAIL**
wsinor@dicellolevitt.com

**EDUCATION**
Florida State University College of Law, J.D.

Auburn University, B.A.

William J. Sinor represents individuals who have been hurt or wronged by the misconduct of others and has a strong dedication to achieving justice for his clients. Prior to joining DiCello Levitt, Wil worked for a plaintiff's firm in the Birmingham area where he gained substantial litigation and trial experience representing clients in personal injury matters. He also has experience in matters involving insurance bad faith, breach of contract, wrongful death, and wrongful termination.

As a plaintiff's attorney for the majority of his career, Wil is committed to working closely with clients through every step of the litigation process, from intake to trial. Wil provides legal representation that is tailored to each client's unique situation.

While attending Florida State University College of Law, Wil served as a student attorney in the Public Interest Law Center, representing indigent clients in an array of matters. He was also a recipient of the school's Distinguished Pro Bono Award and served as a Student Ambassador for the College of Law.

Wil was born in Alabama, but raised in Costa Rica and the suburbs of Atlanta and Chicago. In his free time, Wil enjoys spending time with his wife and two daughters, exercising, and traveling.





## Anna Claire Skinner
Associate

**EMAIL**
askinner@dicellolevitt.com

**EDUCATION**
Vanderbilt University Law School, J.D., Order of the Coif

Washington and Lee University, B.A., *cum laude*

Anna Claire represents governmental entities, individual consumers, and corporate clients with the primary purpose of the protection of human health and the environment. She has litigated cases in both administrative tribunals and state and federal court from inception through settlement and trial. She has experience with numerous environmental statutes and regulations, including the Clean Water Act, the Clean Air Act, the Comprehensive Environmental Response, Compensation and Liability Act, the Emergency Planning and Community Right-to-Know Act, and the Resource Conservation and Recovery Act.

Anna Claire is part of the DiCello Levitt team working with several states in investigating and addressing poly- and perfluoroalkyl substance ("PFAS") contamination. DiCello Levitt's PFAS team, along with other Special Assistant Attorneys General and the Illinois Attorney General, most recently filed a lawsuit against 3M for PFAS contamination from its facility in Cordova, Illinois. Cases involving these "forever chemicals" will have wide-reaching implications for state governments and their residents.

Anna Claire also works with communities that have been impacted by years of exposure to polluted air, water, and soil. Recently, Anna Claire and DiCello Levitt's environmental team joined with co-counsel in representing several residents and former residents of Union, Illinois in filing suit against companies responsible for polluting the groundwater with carcinogenic chlorinated solvents. Anna Claire is also part of the team leading a class action on behalf of the residents of Rockton, Illinois and surrounding communities for property damages they sustained following a catastrophic fire at a local chemical factory.

In addition to her environmental work, Anna Claire also helps clients develop and maintain safety and health programs that meet all of the Occupational Safety and Health Administration's regulatory requirements and ensure all employees enjoy safe and healthful workplaces. She regularly counsels clients when compliance and litigation questions arise under the Occupational Safety and Health Act.

Outside of the office, Anna Claire continues her work on environmental-related issues by serving as co-chair of the Kentucky Bar Association's Environment, Energy, and Natural Resources section. She also focuses on giving back to her community through her participation on the executive committee of the Living Arts and Science Center Board of Directors.



**Peter Soldato**

Associate

**EMAIL**
psoldato@dicellolevitt.com

**EDUCATION**
University of Chicago Law School, J.D.

Butler University, B.A.

A steadfast trial lawyer, Peter has extensive experience advocating for clients in high-stakes courtroom settings. He began his career in the public sector, prosecuting cases on behalf of the government, and then representing individuals against the government. He leverages this experience—having tried more than 35 cases to a jury—in order to protect the interests of individuals, businesses, and public entities in a wide range of disputes.

Peter prides himself on applying the most advanced methods of trial advocacy in arguing a client's case to judge or jury. As a graduate of the Trial Lawyer's College, Peter employs focus group analysis and an in-depth understanding of cognitive neuroscience in advocating effectively on behalf of clients.

Outside of the office, Peter dedicates his time teaching the art of trial advocacy and communication to future generations of trial lawyers, working previously with the Indiana Bar Foundation, and now the Ohio Center for Law-Related Education.



**James Ulwick**

Associate

**EMAIL**
julwick@dicellolevitt.com

**EDUCATION**
Loyola University Chicago, J.D., *cum laude*

Kenyon College, B.A.

James Ulwick is an associate in DiCello Levitt's Chicago office with experience litigating complex commercial cases and actions involving serious injuries. He represents individuals, businesses, and public entities in a wide range of disputes, protecting their interests in state and federal courts across the country.

Prior to joining the firm, James was an insurance defense attorney, representing individuals, corporations, and local municipalities through all stages of litigation.

He has successfully argued for the dismissal of several suits, including their subsequent appeals in multiple state courts of appeal, and has successfully obtained favorable resolutions for his clients through dispositive motions, mediation, and settlement. While this experience was valuable, James joined the firm because he wanted to pivot his focus from defending insurance companies to protecting consumers and those injured by corporate malfeasance.

Outside of the office, James has focused on assisting in the development of the next generation of trial and appellate litigators by coaching the Loyola University Chicago National Health Law Moot Court Team.



**Elizabeth Paige White**
Associate

**EMAIL**
pwhite@dicellolevitt.com

**EDUCATION**
University of Florida, Levin College of Law, J.D.

Temple University, B.A.

Paige White's practice currently focuses on civil rights, police brutality, and wrongful death cases. Paige began her career in public service, working as a public defender at the Neighborhood Defender Services of Harlem in New York City where she handled hundreds of charges from felony narcotics to violent crimes. She later joined the Public Defender Service for the District of Columbia, defending adults and juveniles on serious felony cases, including violent sexual assault and homicide. While working for the Public Defender, she successfully argued a series of writs of habeas corpus over the conditions at the D.C. Central Detention Facility, which subsequently lead to a number of individuals being immediately released.

Paige is the current President of the Young Lawyer's Division of the Bar Association for D.C. and is a proud member of Alpha Kappa Alpha Sorority Incorporated, Trial Lawyers for the District of Columbia, and the National Bar Association. She earned her J.D. from the University of Florida's Frederic C. Levin College of Law, where she was the only woman that year to be included in the UF Trial team's "Final Four." During law school, she interned for Congresswoman Frederica Wilson, for whom she created a national campaign to support the kidnapped Nigerian schoolgirls. Paige holds a Bachelor's degree from Temple University in political science and sociology with a Spanish minor.

Paige is also honored to serve as Of Counsel to attorney Ben Crump and his law firm Ben Crump Law PLLC.



BIRMINGHAM
205.855.5700

CHICAGO
312.214.7900

CLEVELAND
440.953.8888

NEW YORK
646.933.1000

WASHINGTON, DC
202.975.2288

www.dicellolevitt.com

# EXHIBIT 4

JOINT DECLARTION OF CLASS COUNSEL IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF THE
SETTLEMENT, APPROVAL OF FORM AND MANNER OF
NOTICE, APPROVAL TO NOTICE THE CLASSES, AND SETTING
FINAL SETTLEMENT SCHEDULE AND DATE FOR FINAL
APPROVAL HEARING PURSUANT TO FED. R. CIV. P. 23(e)(1)

*In re Conagra Foods, Inc.*, No. CV 11-05379-CJC (AGRx),
MDL No. 2291 (C.D. Cal.)



# Who We Are

Established by members of Milberg Phillips Grossman LLP, Sanders Phillips Grossman LLC, Greg Coleman Law PC, and Whitfield Bryson LLP, the firm represents plaintiffs in the areas of antitrust, securities, financial fraud, consumer protection, automobile emissions claims, defective drugs and devices, environmental litigation, financial and insurance litigation, and cyber law and security.

For over 50 years, Milberg and its affiliates have been protecting victims' rights and have recovered over $50 billion for our clients. Our attorneys possess a renowned depth of legal expertise, employ the highest ethical and legal standards, and pride ourselves on providing stellar client service. We have repeatedly been recognized as leaders in the plaintiffs' bar and appointed to leadership roles in prominent national mass torts and class actions.

*Milberg challenges corporate wrongdoing through class action, mass tort, consumer, and shareholder rights services, both domestically and globally.*

Milberg's previous litigation efforts helped to create a new era of corporate accountability that put big companies on notice. The strategic combination of four leading plaintiffs' firms offers clients expanded capabilities, greater geographical coverage, enhanced financial breadth, and increased operational capacity. It also enables the firm to serve diverse and global clients who are seeking to enforce their rights against well-financed corporations—wherever they operate.

**www.milberg.com**

# Practice Areas

### Antitrust & Competition Law

Today, on a global scale, consolidated corporate entities exercise dominating market power, but proper enforcement of antitrust law ensures a fair, competitive marketplace. Milberg prosecutes complex antitrust class actions against large, well-funded corporate defendants in healthcare, technology, agriculture, and manufacturing. Our leading practitioners successfully represent plaintiffs affected by price-fixing, monopolization, monopoly leveraging tying arrangements, exclusive dealing, and refusals to deal. The firm continues aggressively vindicating rights of plaintiffs victimized by antitrust violations, holding companies accountable for anticompetitive behavior.

### Complex Litigation

With 50 years of vetted success, Milberg handles complex, high-stakes cases at any stage of the litigation process. Our attorneys have experience litigating complex cases for business and plaintiffs outside of class action context, business torts, contract disputes, anti-SLAPP motions, corporations, LLCs, partnerships, real estate, and intellectual property. The repeated success of our attorneys against well-funded adversaries with top-tier counsel has established Milberg as the go-to firm for complex litigation.

### Consumer Products

Milberg's consumer litigation group focuses on protecting victims of deceptive marketing and advertising of goods and services, or those who have bought defective products. Our attorneys are experienced in handling a wide array of consumer protection lawsuits, including breach of contract, failure to warn, false or deceptive advertising of goods and services, faulty, dangerous, or defective products, warranty claims, unfair trade practices, and notable product cases. Milberg has achieved real-world recoveries for clients, often requiring corporations to change the way they do business. Our team of attorneys has extensive experience representing plaintiffs against well-resourced and sophisticated defendants.

### Consumer Services

Consumers have rights, and companies providing consumer services have a legal obligation to abide by contractual agreements made with customers. Companies must also follow state and federal laws that prohibit predatory, deceptive, and unscrupulous business practices. Milberg's Consumer Services litigation group protects consumers whose rights have been violated by improperly charged fees, predatory and discriminatory lending, illegal credit reporting practices, and invasion of privacy. We also enforce consumer rights by upholding The Fair Credit Reporting Act and Telephone Consumer Protection Act.

**Class Action Lawsuits**

Milberg pioneered federal class action litigation is recognized as a leader in defending the rights of victims of corporate and large-scale wrongdoings. We have the manpower, resources, technology, and experience necessary to provide effective representation in nationwide class action lawsuits. Our attorneys have led class actions resulting in settlements up to billions of dollars across a variety of practice areas, including defective consumer products, pharmaceutical drugs, insurance, securities, antitrust, environmental and toxic torts, consumer protection, and breach of contract.

**Dangerous Drugs & Devices**

For some patients, medication and medical devices improve their lives. For others, the drugs and equipment have questionable benefits, at best, and serious, unintended side effects at worst. Taking on drug and device makers requires a law firm that can stand up to the world's largest, most powerful companies. Our defective drug lawyers have held leadership roles in many national drug and device litigations, recovering billions of dollars in compensation.

**Data Breach, Cyber Security & Biometric Data Lawsuits**

Technology changes faster than laws regulate it. Staying ahead of legal technical issues requires a law firm that can see the full picture of innovation and apply past lessons to navigate fast-moving developments, putting consumers ahead of corporate interests. Our data breach and privacy lawyers work at the cutting edge of technology and law, creating meaningful checks and balances against technology and the companies that wield it. Cyber security threats continue evolving and posing new consumer risks. Milberg will be there every step of the way to protect consumer privacy and hold big companies accountable.

**Environmental and Toxic Torts Litigation**

Litigation is key in fighting to preserve healthy ecosystems and hold environmental lawbreakers accountable. But in today's globalized world, pollutants—and polluters—are not always local. Corporations have expanded their reach and ability to cause harm. Our environmental litigation practice focuses on representing clients in mass torts, class actions, multi-district litigation, regulatory enforcement, citizen suits, and other complex environmental and toxic tort matters. The companies involved in harmful environmental practices are large, wealthy, and globally influential, but as an internationally recognized plaintiffs' firm, Milberg has the strength and resources to present clients seeking to enforce their environmental rights against well-financed corporations—wherever they operation.

**Finance & Insurance Litigation**

Big banks and public insurance firms are obligated by their corporate charters to put shareholders' interests ahead of client interests. However, that doesn't mean they can deceive clients to profit at their expense. Milberg's attorneys handle hundreds of insurance-related disputes, including first party bad faith insurance cases, business interruption cases, and hurricane insurance cases. As one of the nation's stop class action law firms, we are well-positioned to pursue insurance bad faith cases on a statewide or nationwide basis.

**Public Client Representation**

The ability of governments to serve and protect their residents is often threatened by the combination of lower revenues and rising costs. Budget shortfalls are increasing in part because private companies externalize costs, but while corporate profits grow, public interest pays the price. Effectuating meaningful change through litigation, Milberg partners with state and local governments to address the harms facing its residents. Internationally, Milberg's Public Client Practice has achieved success against global powerhouse corporations, including drug, tobacco, mining, and oil and gas companies.

**Securities Litigation**

Over 50 years ago, Milberg pioneered litigation claims involving investment products, securities, and the banking industry by using class action lawsuits. Our litigation set the standard for case theories, organization, discovery, methods of settlement, and amounts recovered for clients. Milberg continues to aggressively pursue these cases on behalf of institutional and individual investors harmed by financial wrongdoing. Inventors of securities class actions, Milberg has decades of experience holding companies accountable both in the United States and globally.

**Whistleblower & Qui Tam**

Blowing the whistle on illegal or unethical conducted is a form of legally protected speech. Milberg's whistleblower attorneys have led actions that returned hundreds of millions of dollars in ill-gotten gains, resulting in significant awards of our clients.Our legacy of standing up to corporate power extends to advocating for greater transparency. In addition to representing whistleblowers, we fight back against corporate-backed laws seeking to deter them from making disclosures.

*"Scoring **impressive victories** against companies guilty of outrageous behavior."*

- Forbes

*" A **powerhouse** that compelled miscreant and recalcitrant businesses to pay billions of dollars to aggrieved shareholders and customers"*

- New York Times

# Recent Leadership Roles

In re **Google Play** Consumer Antitrust Litigation, 20-CV-05761 (N.D. Cal.)

In re: **Elmiron** (Pentosan Polysulfate Sodium) Products Liability Litigation MDL No. 2973

In re: **Johnson & Johnson** Talcum Powder Products Marketing, Sales Practices & Products Liability Litigation

In re: **Blackbaud** Data Privacy MDL No. 2972

In re: **Paragard** IUD Products Liability Litigation MDL No. 2974

*"Feared by corporate America."*
- Forbes

# Notable Recoveries

**$3.2 Billion** Settlement – In re Tyco International Ltd., Securities Litigation, MDL 1335 (D.N.H.)

**$4 Billion** Settlement – In re Prudential Insurance Co. Sales Practice Litigation, No. 95-4704 (D.N.J.)

**$1.14 Billion** Settlement – In re Nortel Networks Corp. Securities Litigation, No. 01-1855 (S.D.N.Y.)

**$1 Billion-plus** Trial Verdict – Vivendi Universal, S.A. Securities Litigation

**$1 Billion** Settlement – NASDAQ Market-Makers Antitrust Litigation

**$1 Billion** Settlement – W.R. Grace & Co

**$1 Billion-plus** Settlement – Merck & Co., Inc. Securities Litigation

**$775 Million** Settlement – Washington Public Power Supply System Securities Litigation

# Locations

**CHICAGO**
221 W. Monroe Street Suite, Suite 2100
Chicago, Illinois 60606

**NEW JERSEY**
1 Bridge Plaza North, Suite 275
Fort Lee, New Jersey 07024

**NEW YORK**
100 Garden City Plaza
Garden City, NY 11530

**NORTH CAROLINA**
900 W. Morgan Street
Raleigh, North Carolina 27603

**PUERTO RICO**
1311 Avenida Juan Ponce de León
San Juan, Puerto Rico 00907

**SEATTLE**
1420 Fifth Ave, Suite 2200
Seattle, Washington 98101

**SOUTH CAROLINA**
825 Lowcountry Blvd, Suite 101
Mount Pleasant, South Carolina 29464

**TENNESSEE**
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929

518 Monroe Street
Nashville, Tennessee 37208

**WASHINGTON D.C.**
5335 Wisconsin Avenue NW , Suite 440
Washington, D.C., 20015





**www.milberg.com**

# EXHIBIT 5

JOINT DECLARTION OF CLASS COUNSEL IN SUPPORT OF
MOTION FOR PRELIMINARY APPROVAL OF THE
SETTLEMENT, APPROVAL OF FORM AND MANNER OF
NOTICE, APPROVAL TO NOTICE THE CLASSES, AND SETTING
FINAL SETTLEMENT SCHEDULE AND DATE FOR FINAL
APPROVAL HEARING PURSUANT TO FED. R. CIV. P. 23(e)(1)

*In re Conagra Foods, Inc.*, No. CV 11-05379-CJC (AGRx),
MDL No. 2291 (C.D. Cal.)

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE FAIRLIFE MILK PRODUCTS MARKETING AND SALES PRACTICES LITIGATION** | MDL No. 2909 |
| | Master Case No. 19-cv-3924 |
| This Document Relates To: | Judge Robert M. Dow, Jr. |
| ALL CASES | |

**ORDER GRANTING PLAINTIFFS' MOTION FOR**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND JUDGMENT AND**
**AWARDING ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

On September 28, 2022, this Court held a hearing on Plaintiffs' Motion for Final Approval of Class Action Settlement (ECF No. 170) (the "Motion") and Petition for an Award of Attorneys' Fees and Costs, and Service Awards (ECF No. 172) (the "Petition").

Plaintiffs Terri Birt, Carol Cantwell, Debra French, Karai Hamilton, Henry Henderson, Paula Honeycutt, Michelle Ingrodi, Jae Jones, Nabil Khan, Kaye Mallory, Christina Parlow, Cindy Peters, Jenny Rossano, David Rothberg, Eliana Salzhauer, Connie Sandler, Diana Tait, Demetrios Tsiptsis, and Arnetta Velez, on behalf of themselves and all other similarly situated, (collectively, "Plaintiffs"), have entered into a Settlement Agreement with Defendants The Coca-Cola Company ("TCCC"), fairlife, LLC ("fairlife"), Fair Oaks Farms, LLC ("FOF"), Mike McCloskey and Sue McCloskey ("the McCloskeys"), and Select Milk Producers, Inc. ("Select") (collectively, "Defendants") to resolve the litigation *In re fairlife Milk Products Marketing and Sales Practices Litigation*, MDL No. 2909, Lead Case No. 1:19-cv-03924-RMD-MDW (N.D. Ill.) (the "Litigation"). The Court, after conducting a fairness hearing on September 28, 2022 and having reviewed (i) the Motion, its accompanying memorandum and the exhibits thereto, the Settlement Agreement, and all arguments and papers filed in support of and/or in opposition to the Settlement and (ii) the Petition, its accompanying memorandum, exhibits, and declarations thereto, and having had the benefit of reviewing Class Counsel's monthly *in camera* submissions of detailed time and expense reports, hereby finds that the Motion should be **GRANTED** as to the Settlement and that the Petition should be **GRANTED** as to the request for attorneys' fees, costs, and service awards.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. The Court has personal jurisdiction over the Parties and all members of the Settlement Class (also referred to herein as the "Class") and possesses subject matter jurisdiction to approve the Settlement and Agreement and all Exhibits thereto.

2.      For purposes of this Order, except as otherwise set forth herein, the Court adopts and incorporates the definitions contained in the Settlement Agreement.

3.      Pursuant to Fed. R. Civ. P. 23(g), Class Counsel previously appointed by the Court is appointed as Class Counsel for the Settlement Class as they have and will fairly and competently represent the interests of the Settlement Class.

4.      Pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), the Court determines that the following Settlement Class be certified solely for the purposes of the Settlement:

> All Persons in the United States, its territories, and the District of Columbia who purchased, for personal use and not for resale, any Covered Product on or before the Preliminary Approval Date.

Excluded from the Settlement Class are the following persons: (i) Defendants and their respective subsidiaries and affiliates, members, employees, officers, directors, agents, and representatives and their family members; (ii) Class Counsel; (iii) the judges who have presided over the Litigation; (iv) local, municipal, state, and federal government agencies; and (v) all persons who have timely elected to become Opt-Outs from the Settlement Class in accordance with the Court's Orders.[1]

5.      The Court further finds that the prerequisites to a class action under Rule 23(a) are satisfied solely for settlement purposes:

a.      First, the Court finds that Rule 23(a)(1), which requires that the proposed class be "so numerous that joinder of all members is impracticable" (Fed. R. Civ. P. 23(a)(1)), is met. While there is no numerical requirement for

---

[1]      The Court notes that Defendants have reserved all rights, claims, and defenses they may have in the event the Final Order and Judgment does not become final, including, but not limited to, Defendants' objection that a class cannot be certified in this Litigation under Federal Rule of Civil Procedure 23 except for settlement purposes only. The Court reserves judgment on these matters.

satisfying numerosity, hundreds of thousands of persons have purchased the Covered Products and have already submitted Claims. *Cox v. Joe Rizza Ford, Inc.*, No. 94-5688, 1996 WL 65994, at *8 (N.D. Ill. Feb. 9, 1996) ("Courts have granted class certification to groups of less than thirty"); *see also McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002) ("Courts have [] found the numerosity requirement satisfied where the putative class would number less than forty individuals").

b. Second, the Court also finds the commonality requirement of Rule 23(a)(2), which requires that "there are questions of law or fact common to the class" (Fed. R. Civ. P. 23(a)(2)), is met. "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and that the claims arising from that injury depend on a "common contention . . . of such a nature that it is capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes, U.S.*, 564 U.S. 338, 359 (2011). Here, all Settlement Class Members purchased Covered Products that were allegedly falsely advertised, mislabeled, and/or sold based upon Defendants' allegedly false and deceptive representations and warranties and omitted material information about the Covered Products or the manner in which the Covered Products were produced and, thus, suffered the same alleged injury. Central questions of fact and law common to all Settlement Class Members include: (1) whether Defendants misrepresented or failed to disclose the subject practices with respect to the purported animal welfare representations associated

with the Covered Products; (2) whether Defendants had a duty to disclose the material facts to Plaintiffs and the Members of the Settlement Class; and (3) whether Defendants' purported conduct constituted a breach of warranty.

c.    Third, the Court also finds Rule 23(a)(3)'s typicality requirement, which requires that "the claims . . . of the representative parties are typical of the claims . . . of the class . . . ." (Fed. R. Civ. P. 23 (a)(3)) is met. The Court finds this requirement has been met here because the Named Plaintiffs' claims arise from the same course of events: their purchase of the Covered Products allegedly not produced in the manner in which Defendants allegedly represented. The Named Plaintiffs' interests are co-extensive with those of the Settlement Class because every Settlement Class Member claims injury resulting from the same alleged uniform misconduct.

d.    Finally, the Court finds that the adequacy requirement of Rule 23(a)(4), which requires that the named plaintiffs and their attorneys "will fairly and adequately protect the interests of the class" (Fed. R. Civ. P. 23(a)(4)), is met. There is no indication that Plaintiffs' interests are antagonistic to those of the Settlement Class or that the claims were not vigorously pursued. Furthermore, Class Counsel have significant experience in prosecuting class actions and complex cases such as this Litigation.

Based on the foregoing, the Court finds that each Rule 23(a) prerequisite has been met here for settlement purposes.

6. The Court also finds that the proposed Class meets the requirements of Rule 23(b)(3) solely for settlement purposes:

    a. According to Rule 23(b)(3), a class action may be maintained if the court finds that "questions of law or fact common to the class members predominate over any questions affecting individual members." *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 376 (7th Cir. 2015). This requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Barnes v. Air Line Pilots Ass'n, Int'l*, 310 F.R.D. 551, 560 (N.D. Ill. 2015). Here, all Settlement Class Members share a common legal grievance arising from Defendants' marketing of the Covered Products, which were allegedly not produced in the manner in which Defendants represented. Common legal and factual questions — including whether the marketing of the Covered Products was false or misleading — are central to all Settlement Class Members' claims and predominate over any individual questions that may exist.

    b. Resolution of these common legal claims through a class-wide settlement and claims process is also a superior way to proceed. Rule 23(b)(3) lists four factors for courts to consider in determining whether a class action is superior, and each of these factors supports a class-wide resolution. *See* Fed. R. Civ. P. 23(b)(3)(A)-(D) ("(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or

undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.").

i.  First, Class Members have little interest in individually controlling separate lawsuits and settlement given the relatively small individual economic injuries involved, and those who do may choose to opt out of the Settlement.

ii.  Second, it appears that no individual Class Members have chosen to commence litigation concerning this controversy except through class litigation, further suggesting that a collective action is indeed the superior method of recovery.

iii.  Third, it is desirable to concentrate the litigation in this Court in part because related cases have already been transferred to this Court by the Judicial Panel on Multidistrict Litigation. *See Serv. Spring, Inc. v. Cambria Spring Co.*, 1984 WL 2925, at *6 (N.D. Ill. 1984) (considering transfer of other cases in determining that it was desirable to concentrate litigation in particular forum).

iv.  Fourth, there will be no difficulties in managing a class-wide trial, "for the proposal is that there be no trial." *Amchem Prods. v. Windsor,* 521 U.S. 591, 620 (1997).

Based on the foregoing, the Court finds that each Rule 23(b) prerequisite has been met here for settlement purposes.

7.     The Court hereby grants final approval of the Settlement Agreement and its terms and finds that said Settlement is, in all respects, fair, reasonable, and adequate to the Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure and consistent and in compliance with all requirements of due process and applicable law, and directs consummation of the Settlement Agreement according to its terms and conditions.

8.     Under Rule 23(e), "[t]he claims, issues, or defenses of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). And "[i]f the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "Court approval is favored to promote the policy of encouraging settlement of litigation, where the settlement reflects a reasonable compromise over issues that are actually in dispute." *Woods v. Club Cabaret, Inc*., No. 1:15-01213, 2017 WL 4054523, at *6 (C.D. Ill. May 17, 2017) (quotations omitted); *see also Hisps. United of DuPage Cty. v. Vill. of Addison*, Ill., 988 F. Supp. 1130, 1149 (N.D. Ill. 1997) ("[C]ourts look upon the settlement of lawsuits with favor because it promotes the interests of litigants by saving them the expense and uncertainties of trial, as well as the interests of the judicial system by making it unnecessary to devote public resources to disputes that the parties themselves can resolve with a mutually agreeable outcome").

9.     In accordance with the Court's referral, the parties mediated this case before the Honorable Wayne R. Andersen (Ret.), a retired United States District Judge for the Northern District of Illinois, who currently serves as a mediator for JAMS in complex litigation matters ("the Mediator"). The Mediator has significant experience mediating and resolving complex class actions like this one and ensured that the parties invested an appropriate amount of time and resources into reaching a fair, reasonable, and adequate settlement.  Indeed, the Mediator oversaw

every step of the settlement discussions, which occurred over an extended period of time and included numerous live mediation sessions of all parties as well as phone calls and extensive correspondence conducted with and through the Mediator.

10.     The law for evaluating the fairness of a class action settlement is well-established in this Circuit. As the Seventh Circuit explained in *Wong v. Accretive Health, Inc.*:

> [W]hen conducting a fairness determination relevant factors include: (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.

773 F.3d 859, 863 (7th Cir. 2014) (*quoting Gautreaux v. Pierce*, 690 F.2d 616, 631 (7th Cir. 1982)); *see also Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 578 (N.D. Ill. 2011) (quoting *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). "Although the district court must clearly set forth in the record the reasons for approving the settlement in order to make meaningful appellate review possible, the court's reasoning need not be so specific as to amount to a judgment on the merits." *Gautreaux*, 690 F.2d at 631. Moreover, "[i]t is not the burden of the proponents or the duty of the district court to support individual elements of the decree under some evidentiary standard akin to that for findings of fact." *Id*.

11.     As shown below, the application of these factors supports approval of the Settlement as fair, reasonable, and adequate.

a.     The first factor weighs the strength of Plaintiffs' case against the extent of the settlement offer. *Wong*, 773 F.3d at 863; *see also In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010). Through their investigation, information exchanged during the mediation process, and confirmatory discovery, Plaintiffs developed a

comprehensive assessment of the various issues in this case. And, even if litigation classes were certified, the risk of losing on the merits would remain, whether at summary judgment or trial. Under these circumstances, the Settlement negotiated by Class Counsel is reasonable, providing monetary and injunctive relief to the Settlement Class Members without them having to bear the risks associated with further litigation, trial, and appeal. The relief obtained here, when weighed against the complexities and uncertainties of the litigation and the certainty of lengthy litigation in the absence of a settlement, support the conclusion that the Settlement is fair, reasonable, and adequate.

b.    The second factor, the complexity, length, and expense of further litigation, weighs heavily in favor of the Settlement. *See Wong*, 773 F.3d at 863. By reaching a favorable Settlement, Plaintiffs have avoided further significant delay and ensured a recovery to the Settlement Class. Defendants have asserted numerous legal and factual defenses to Plaintiffs' claims that would require full discovery and further briefing. In the absence of this Settlement, the Parties will need to engage in significant additional discovery, including numerous depositions and pre-trial work. Class certification, expert discovery, and summary judgment motions are just a few of the matters that will have to be litigated, in addition to a trial and likely appeals, without this Settlement. Significant additional work would be necessary if the case were to proceed to trial. A trial on the merits would entail considerable expense, including

numerous experts, pre-trial motions, thousands more hours of attorney time, and given the right to appeal, trial would not necessarily end the litigation.

c.    The third and fourth factors involve weighing the amount of opposition as well as the reaction of class members to the settlement. *See Wong*, 773 F.3d at 863. Here, there has been wide dissemination of pertinent information about this Settlement, and to date, the Settlement Class' reaction has been highly encouraging, with no Objections filed, only two Opt-Outs, and more than 570,000 Claim Forms submitted to the Claims Administrator as of September 19, 2022. *See* Suppl. Decl. of Cameron R. Azari, Esq. On Implementation of Class Notice Program and Class Notice (ECF No. 177-1) ¶¶ 17, 19.

d.    The fifth factor, the opinion of competent counsel, also weighs heavily in favor of the Settlement.  Courts are "entitled to rely heavily on the opinion of competent counsel." *Gautreaux,* 690 F.2d at 634.  All of the attorneys involved in this case have spent extensive time reviewing the Settlement in conjunction with evaluating the best interests of their clients.  The attorneys are highly competent and have a vast amount of experience with class actions.

e.    The final factor considers the stage of the proceedings and the amount of discovery completed. Class Counsel has conducted substantial informal discovery during the extensive mediation process held before the highly

experienced Mediator. It was only at the conclusion of the lengthy

mediation process that the parties were able to resolve the matter.

Based on the foregoing, the Court finds that the Settlement is fair, reasonable, and adequate,

and warrants final approval.

12.     The Court declares the Settlement Agreement and the Final Order and Judgment to

be binding on, and have *res judicata* and preclusive effect, in all pending and future lawsuits or

other proceedings encompassed by the Release (as set forth in Section I, Paragraph 65 of the

Settlement Agreement) maintained by or on behalf of the Named Plaintiffs and all other Settlement

Class Members, as well as their respective agents, heirs, executors or administrators, successors

and assigns.

13.     Defendants have served upon the appropriate state officials and the appropriate

federal official notice under the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA").

14.     The Court finds that the Class Notice Program implemented pursuant to the

Settlement Agreement and the Order preliminarily approving the Settlement (ECF No. 163): (i)

constituted the best practicable notice, (ii) constituted notice that was reasonably calculated under

the circumstances to apprise Settlement Class Members of the pendency of the Litigation, of their

right to object to or exclude themselves from the proposed Settlement, of their right to appear at

the Fairness Hearing, and of their right to seek monetary and other relief, (iii) constituted

reasonable, due, adequate, and sufficient notice to all persons entitled to receive notice, and (iv)

met all applicable requirements of due process and any other applicable law.

15.     The Court approves the Claim Form that was distributed to Settlement Class

Members, the content of which was without material alteration from Exhibit A of the Settlement

Agreement.

16.     The Court appoints Validus Verification Services to serve as Auditor in accordance with the terms of the Settlement Agreement and the Stipulated Injunction. The costs of the audits, including all auditor fees and expenses, shall be borne by Defendants and shall not be paid from the Settlement Amount.

17.     The Court appoints the Honorable Wayne R. Andersen (Ret.), who also served as the Mediator, as the independent third party to serve as the Court-appointed Monitor to monitor compliance with the Stipulated Injunction. The costs of the Monitor, including all Monitor fees and expenses, shall be borne by Defendants and shall not be paid from the Settlement Amount.

18.     No amounts remaining in the Escrow Account following the distribution of the Net Settlement Fund shall revert back to Defendants. The Cy Pres Contribution Amount, if any, shall be distributed equally between the Center for Food Safety and the U.S. Dairy Education & Training Consortium. The Court further determines that the selection of each organization to receive any unclaimed funds, with their missions nationwide in scope, will ensure that the distribution of amounts remaining in the Escrow Account following the distribution of the Net Settlement Fund will be for a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of Settlement Class Members, and the interests of those similarly situated.

19.     The Court hereby dismisses the Litigation now pending before the Court (including all of the underlying suits transferred to the Court by the JPML and all individual and class claims presented thereby) on the merits and with prejudice and without fees or costs except as provided by the Settlement Agreement. Without limiting the foregoing, all Settlement Class Members who have not excluded themselves from the Settlement Class shall be bound by the Agreement and the Release, and all of their respective claims are hereby dismissed with prejudice and released, irrespective of whether or not they received actual notice of the Litigation or the Settlement.

20.     The Court hereby orders that, within one (1) week after the Effective Date, any other lawsuits (if any) not pending before the Court will be dismissed with prejudice without fees or costs except as provided herein.

21.     The Court hereby adjudges that the Named Plaintiffs and the Settlement Class have conclusively compromised, settled, dismissed, and released any and all Released Claims against Defendants and the Released Persons.

22.     Upon the Effective Date, the Named Plaintiffs and all Settlement Class Members who have not been excluded from the Settlement Class, whether or not they return a Claim Form within the time and in the manner provided therefor, shall be barred from asserting any Released Claims against Defendants and/or any Released Persons, and any such Settlement Class Members shall have released any and all Released Claims as against Defendants and all Released Persons.

23.     If for any reason this judgment is reversed, vacated, or materially modified on appeal, this Order shall be null and void, the Settlement Agreement shall be deemed terminated (except for any paragraphs that, pursuant to the terms of the Settlement, survive termination of the Settlement), and the Settling Parties shall return to their positions without prejudice in any way, as provided for in the Settlement.

24.     Without affecting the finality of the Final Order and Judgment for purposes of appeal, the Court reserves jurisdiction over the Claims Administrator, Validus, the Monitor, Defendants, the Named Plaintiffs, and the Settlement Class as to all matters relating to the administration, consummation, enforcement, and interpretation of the terms of the Settlement and Final Order and Judgment and for any other necessary purposes.

25.     The Settlement Agreement and the Settlement provided for herein and any proceedings taken pursuant thereto are not and should not in any event be offered or received as

evidence of, a presumption, concession, or an admission of liability or of any misrepresentation or omission in any statement or written document approved or made by Defendants or any Released Persons or of the suitability of these or similar claims to class treatment in active litigation and trial; provided, however, that reference may be made to the Settlement Agreement and the Settlement provided for herein in such proceedings as may be necessary to effectuate the Settlement.

26. The Court bars and permanently enjoins all Settlement Class Members who have not been properly excluded from the Settlement Class from: (i) filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in any other lawsuit or administrative, regulatory, arbitration or other proceeding in any jurisdiction based on, relating to, or arising out of the claims and causes of action or the facts and circumstances giving rise to the Litigation or the Released Claims arising on or before the Preliminary Approval Date; and (ii) organizing Settlement Class Members who have not been excluded from the class into a separate class for purposes of pursuing as a purported class action any lawsuit or arbitration or other proceeding (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action) based on, relating to, or arising out of the claims and causes of action or the facts and circumstances giving rise to the Litigation and/or the Released Claims, except that Settlement Class Members are not precluded from participating in any investigation or suit initiated by a state or federal agency.

27. The Court hereby approves the Opt-Out List, which consists of Settlement Class Members Steven Robertson and Victoria Lee, and determines that the Opt-Out List is a complete list of all Settlement Class Members who have timely requested exclusion from the Settlement

Class and, accordingly, shall neither share in nor be bound by the Final Order and Judgment except for Opt-Outs who subsequently submit Claim Forms during the Claim Period.

28.     The Court authorizes the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications, and expansions of the Settlement Agreement and all Exhibits thereto as (i) shall be consistent in all material respects with the Final Order and Judgment and (ii) do not limit the rights of the Parties or Settlement Class Members.

29.     The Court finds, pursuant to Rules 54(a) and (b) of the Federal Rules of Civil Procedure, that judgment should be entered and further finds that there is no just reason for delay in the entry of final judgment as to the parties to the Settlement Agreement. Accordingly, the Clerk is hereby directed to enter this Final Judgment forthwith.

30.     The Court has also carefully examined Plaintiffs' Petition and finds that the requested attorneys' fees of one-third of the Settlement Fund is fair, reasonable, and in keeping with this Circuit's precedent.  Specifically, the factors supporting Class Counsel's requested fee award are: (i) attorneys' fees in other class action settlements; (ii) the risk of nonpayment Class Counsel agreed to bear; (iii) the quality of Class Counsel's performance; (iv) the amount of work necessary to resolve the litigation; and (v) the stakes of the case.

31.     Specifically, the Court finds that Class Counsel has created significant value for the Settlement Class in negotiating an excellent settlement, especially in light of the significant risks Plaintiffs faced in litigating their case, as well as the cost and time it would take to litigate the case.

32.     The Court has also specifically considered the requirements of Rule 23, including whether the relief provided to the class is adequate, taking into account, among other things, the terms of any proposed award of attorneys' fees, including timing of payment, and finds that Class

Counsel's excellent work in securing significant monetary damages, as well as injunctive relief, supports the requested fee award.

33.     The Court notes that the injunctive relief negotiated by Class Counsel is meaningful and directly addresses the allegations at issue in this multidistrict litigation; however, the Court is not basing its ruling concerning attorneys' fees on the value of that injunctive relief.

34.     The Court awards $7,000,000, or one-third of the Settlement Fund, to Class Counsel as attorneys' fees in this litigation, and vests Class Counsel with the authority to distribute those fees to other Plaintiffs' counsel based upon their best judgment and in keeping with the Time and Expense Protocol that has governed the submission of time and expenses in this Litigation.

35.     In addition to having an opportunity to review Plaintiffs' counsel's detailed lodestar, the Court has also had an opportunity to review the expenses incurred in this litigation. Based upon the applicable precedent, as well as Rule 23, the Court finds that the expenses are reasonable, and were necessary and appropriate in bringing this litigation.  Accordingly, the Court awards Class Counsel $95,198.99 in expenses, and directs Class Counsel to distribute reimbursements for expenses to other Plaintiffs' counsel in keeping with the Time and Expense Protocol.

36.     The Court has also carefully examined Plaintiffs' request for service awards given their work on the litigation and their role—as fiduciaries of the absent Class members—in reviewing the Settlement and approving same.  The Court finds that the requested $3,500 per Class Representative is in keeping with precedent in this Circuit and is appropriate given the work performed by the Class Representatives in this matter.

37.     The Court notes that the Settlement was not contingent upon the Court's approval of the requested attorneys' fees, costs, or service awards, and that the Parties did not come to an

16

agreement on any of these issues as a condition to approving the Settlement. There is no indication of any collusion regarding the requested attorneys' fees, costs, or service awards, and the requested attorneys' fees, costs, and service awards are fair, reasonable, and consistent with this Circuit's precedent.

**IT IS SO ORDERED.**

Dated: September 28, 2022

_____

Robert M. Dow, Jr.

United States District Judge