UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CONAGRA FOODS, INC. | Case No.: CV 11-05379-CJC (AGRx) |
| | MDL No. 2291 |
| ROBERT BRISEÑO, *et al.*, individually and on behalf of all others similarly situated, | ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT [Dkt. 807] |
| Plaintiffs, | |
| v. | |
| CONAGRA FOODS, INC., | |
| Defendant. | |

## I.    INTRODUCTION

In this more than decade-old class-action lawsuit, Plaintiffs challenge Defendant ConAgra Foods, Inc.'s ("ConAgra") allegedly deceptive marketing of Wesson Oil products as "100% Natural." After years of investigation and litigation—including

extensive discovery and motion practice, a Ninth Circuit appeal regarding the district
court's order certifying eleven statewide consumer damages classes, and diligent
mediation efforts with two separate judges—the parties reached a settlement (the
"Original Proposed Settlement") by accepting a court proposal from Magistrate Judge
Douglas F. McCormick.  Under the Original Proposed Settlement, Defendant agreed to
pay (1) $0.15 for each unit of Wesson Oils purchased to households submitting valid
claim forms (to a maximum of 30 units without proof of purchase, and unlimited units
with proof of purchase), with no cap, (2) an additional fund of $575,000 to be allocated to
New York and Oregon class members submitting valid claim forms, as compensation for
statutory damages under those states' consumer protection laws, and (3) an additional
fund of $10,000 to compensate those in all classes submitting valid proof of purchase
receipts for more than thirty purchases, at $0.15 for each such purchase above 30, with
class counsel paying any non-funded claims (i.e. claims above the $10,000 ConAgra
provided) from any attorney fees awarded in this case.  (Dkt. 779 ["Original Settlement
Order"] at 7.)  Defendant further agreed to "take no position" on an application by Class
Counsel for fees and expenses of $6,850,000.  (*Id.*)

The Ninth Circuit reversed this Court's approval of the Original Proposed
Settlement, explaining that courts must now scrutinize even post-class certification
settlements for potentially unfair collusion in the distribution of funds between the class
and their counsel.  *Briseño v. Henderson*, 998 F.3d 1014, 1019 (9th Cir. 2021).  The
Circuit remanded to this Court to take a closer look at terms in the settlement that could
indicate that the interests of class counsel and ConAgra were placed above the class's
interests.  *Id.*  On remand, the Court declined to approve the Original Proposed
Settlement, determining that it "include[d] too many indicators that class counsel's and
ConAgra's self-interest unduly influenced the outcome of the negotiations."  (Original
Settlement Order at 12.)

The parties have now reached a new proposed settlement (the "New Proposed Settlement").  Under the New Proposed Settlement, Defendant agrees to create a non-reversionary common fund of $3 million, with payments to class members substantially similar to those under the Original Proposed Settlement.  (Dkt. 807 [Motion for Preliminary Approval of Class Action Settlement, hereinafter "Mot."] at 8.)  Significantly, however, the New Proposed Settlement contains no reverter provision, no clear sailing agreement, and Class Counsel seeks no attorney fees.  (*Id.* at 10.)  Before the Court is Plaintiffs' motion for preliminary approval of the New Proposed Settlement.  For the following reasons, Plaintiffs' motion is **GRANTED**.[1]

## II.    BACKGROUND

### A.    Plaintiffs' Complaint and Early Procedural History, Including Class Certification

For over ten years, bottles of Wesson Oil had a label touting the products as "100% Natural."  In 2011, Plaintiffs sued ConAgra, alleging that the "natural" claim was false and misleading because the oil contains genetically modified organisms, and that they paid more for the oil because of that false and misleading claim.  They filed putative class actions asserting state-law claims against ConAgra in eleven states, and those cases were consolidated in this action.  *Briseño v. ConAgra Foods, Inc.*, 844 F.3d 1123 (9th Cir. 2017).  The case was originally assigned to Judge Margaret M. Morrow.

ConAgra moved to dismiss Plaintiffs' Complaint in August 2011.  (Dkt. 24.)  After Judge Morrow granted that motion (Dkt. 54), Plaintiffs amended their complaint (Dkt.

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for November 21, 2022, at 1:30 p.m. is hereby vacated and off calendar.

80), and ConAgra once again moved to dismiss in February 2012 (Dkt. 84).  Judge Morrow granted in part and denied in part the second motion to dismiss.  (Dkt. 138.)  Then, there was extensive discovery, including multiple discovery motions filed over the years.  (*See, e.g.*, Dkts. 196, 202, 426, 511, 550.)

Plaintiffs filed a motion for class certification (Dkt. 241), which Judge Morrow denied (Dkt. 350).  Plaintiffs then filed a second motion for class certification, seeking to certify eleven separate classes defined as follows:

> All persons who reside in the States of California, Colorado, Florida, Illinois, Indiana, Nebraska, New York, Ohio, Oregon, South Dakota, or Texas who have purchased Wesson Oils within the applicable statute of limitations periods established by the laws of their state of residence (the "Class Period") through the final disposition of this and any and all related actions.

*Briseño*, 844 F.3d at 1123–24.  In a 140-page opinion, Judge Morrow granted Plaintiffs' second motion for class certification, certifying eleven statewide consumer damages classes under Federal Rule of Civil Procedure 23(b)(3).  *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919 (C.D. Cal. 2015); (Dkt. 545).  In a 24-page opinion and a separate 6-page memorandum disposition, the Ninth Circuit affirmed.  *Briseño v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017); *Briseño v. ConAgra Foods, Inc.*, 674 F. App'x 654 (9th Cir. 2017).  The United States Supreme Court denied ConAgra's petition for writ of certiorari.  *Conagra Brands, Inc. v. Briseño*, 138 S. Ct. 313 (2017).

//
//
//
//

**B.     ConAgra's Initial Agreement to Sell Wesson Oil and Removal of the Disputed Label**

In May 2017, ConAgra agreed to sell Wesson Oil to the J.M. Smucker Company. *Briseño*, 998 F.3d at 1019.  About two months later, ConAgra voluntarily removed the disputed label and stopped marketing Wesson products as "natural."  *Id.* ConAgra maintains that this litigation played no role in either decision.  *Id.*

In early 2018, the J.M. Smucker deal fell through after a regulatory agency announced that it would oppose the transaction.  *Id.*; (Dkt. 739 [Declaration of United States Magistrate Judge Douglas F. McCormick, hereinafter "McCormick Decl."] ¶ 8.b.) ConAgra began looking for a new buyer for Wesson Oil.  *Briseño*, 998 F.3d at 1019.

**C.     Original Settlement Efforts**

The parties then requested an opportunity to settle the case before litigation proceeded.  Beginning in early 2018, the parties conducted settlement negotiations before retired Judge Edward A. Infante until the Court referred the parties to Magistrate Judge McCormick for further settlement discussions.  (Dkt. 743 ¶¶ 181–85; Dkt. 807-2 ¶¶ 201–04); *see Briseño*, 998 F.3d at 1019.  From June 2018 to November 2018, Magistrate Judge McCormick spent approximately 100 hours helping the parties reach a settlement agreement.  (McCormick Decl. ¶ 2.)

Magistrate Judge McCormick learned early on "that the dollar value of the injunctive relief contained within any settlement agreement would be an issue that needed to be resolved," and that because the issue "would be expensive for each side to litigate," "avoiding the costs of the injunctive-relief valuation litigation should be a primary factor in motivating both sides to resolve this action."  (*Id.* ¶ 8.)  He also "foresaw additional

litigation about how to deal with the eleven different statewide classes that had been certified," and "believed that avoiding the costs of additional class-related litigation should be another primary factor in motivating both sides to resolve this action." (*Id.* ¶ 9.)

Magistrate Judge McCormick's approach to helping the parties settle the case proceeded in two phases. First, he helped the parties determine how much ConAgra would agree to pay as relief to the class members. Second, and only after the first phase was substantially decided, he helped the parties determine how much Plaintiffs' attorneys would recover in fees. (*Id.* ¶ 12.)

By late October 2018, Magistrate Judge McCormick had helped the parties arrive at an agreement on a "claims-made" fund that would pay class members 15 cents for each unit of Wesson-brand product purchased, with no proof of purchase required for up to 30 units. (McCormick Decl. ¶ 10.a.) He "understood that the 15 cents per unit was an amount considerably more than the price premium attributed to the '100% Natural' label by Plaintiffs' own expert." (*Id.*) The agreement also included a fund of $575,000 to be allocated to members of the New York and Oregon state classes as compensation for statutory damages. (*Id.* ¶ 10.b.) At this point, given the parties' difficulty resolving "issues related to class administration and notice and the value of injunctive relief," Magistrate Judge McCormick "concluded that [he] would have to make a court proposal to resolve those issues as well as the issue of attorney's fees." (*Id.* ¶ 11.)

Settling the issue of fees was tricky. While "[c]lass counsel believed that the lodestar amount they would seek in any fee litigation would be substantially more than $10 million given the thousands of hours spent on this matter," ConAgra "maintained that the amount of attorney's fees they were willing to pay was limited." (*Id.* ¶ 13.)

On November 8, 2018, Magistrate Judge McCormick made the following court proposal to the parties:  (1) Plaintiffs' counsel would agree to seek and ConAgra would agree not to oppose attorney fees and expenses of $6,850,000, (2) the parties would agree that injunctive relief would be valued at $27,000,000, and (3) Magistrate Judge McCormick would review final proposals from the parties' proposed claims administrators and select a claims administrator by November 30, 2018.  (*Id.* ¶ 14.)  Both sides accepted the proposal, and Magistrate Judge McCormick selected Plaintiff's choice, JND Legal Administration ("JND"), to serve as the settlement administrator.  (*Id.* ¶ 16.)

In December 2018, ConAgra agreed to sell the Wesson brand to Richardson International.  *Briseño*, 998 F.3d at 1019; (McCormick Decl. ¶ 18).  The deal closed in February 2019.  *Briseño*, 998 F.3d at 1019.  After the sale, the parties revised the terms of the settlement agreement to clarify that the negotiated injunctive relief would apply to ConAgra only if it reacquired the Wesson brand.  (Mot. at 6 n.3.)  In March 2019, Plaintiffs filed a motion for preliminary settlement approval.  (Dkt. 650.)

## D.    The Original Proposed Settlement

The Original Proposed Settlement provided that ConAgra would not label, advertise, or market Wesson Oils as "natural," absent future legislation or regulation. (Dkt. 652, Ex. 1 ¶ 3.3.)  It also provided class members the following monetary benefits:

(a) $0.15 for each unit of Wesson Oils purchased to households submitting valid claim forms (to a maximum of 30 units without proof of purchase, and unlimited units with proof of purchase), with no cap,

(b) an additional fund of $575,000 to be allocated to New York and Oregon class members submitting valid claim forms, as compensation for statutory damages under those states' consumer protection laws, and

(c) an additional fund of $10,000 to compensate those in all classes submitting valid proof of purchase receipts for more than thirty purchases, at $0.15 for each such purchase above 30, with class counsel

paying any non-funded claims (i.e. claims above the $10,000 ConAgra provided) from any attorney fees awarded in this case.

(*Id.* ¶ 3.1.)

The Original Proposed Settlement also provided that "Class Counsel shall make a Fee and Expense Application to the Court for an award of $6,850,000, to be paid by Conagra." (*Id.* ¶ 8.1.1.1.)  ConAgra agreed to "take no position" with respect to the application, "consistent with its agreement negotiated with the assistance of Magistrate Judge McCormick as mediator." (*Id.* ¶ 8.1.1.2.)  If the amount of attorney fees awarded was less than $6,850,000, the parties agreed that "the relevant amount of the overpayment of attorneys' fees and costs paid by Conagra shall be returned to Conagra." (*Id.* ¶ 8.1.1.3.)

### E.    The Court's Approval of the Original Proposed Settlement

On April 4, 2019, the Court granted preliminary approval of the Original Proposed Settlement and appointed JND as settlement administrator.  (Dkt. 654.)  After giving notice, JND received 97,880 timely claims for 2,792,794 units, and one untimely claim for 10 units, for a total maximum payout of $993,919.  (Dkt. 688-1 ¶ 10.)  One plaintiff opted out, and one plaintiff objected.  (*Id.* ¶¶ 7, 9; Dkt. 666.)

On October 8, 2019, the Court granted final approval of the Original Proposed Settlement, including attorney fees, costs, and incentive awards.  *In re Conagra Foods, Inc.*, 2019 WL 12338387 (C.D. Cal. Oct. 8, 2019); (Dkt. 695).  The Court reasoned that the amount offered in settlement was fair and reasonable given its serious doubts about the strength of Plaintiffs' case and the obstacles inherent in continued litigation, including problems of proof and management and risks of decertification or dispositive motions.  *In re Conagra Foods*, 2019 WL 12338387, at *3.  The Court placed great weight on the fact

that the parties' agreement had resulted from a court proposal from Magistrate Judge McCormick. *See id.* at **1, 4, 5. Indeed, the Court assumed that in helping the parties negotiate the Original Proposed Settlement, Magistrate Judge McCormick took into account the interests of the class and what was fair.

The Court also concluded that the requested attorney fees were fair and reasonable, especially considering the extensive litigation that had taken place in the case and the fact that Plaintiffs' counsel sought only about half of their lodestar. *Id.* at *6. Although it recognized and "appreciate[d] [the] Objector's high-level concerns regarding an apparent trend toward class action settlements disproportionately benefitting attorneys," the Court explained that "the amount of attorney fees in the [Original Proposed Settlement], while high, reflects the long history of this case and the impressive result achieved given the weakness of Plaintiffs' case." *Id.* at **7–8.

## F.     The Ninth Circuit's Opinion Regarding the Original Proposed Settlement

The Ninth Circuit reversed. *Briseño v. Henderson*, 998 F.3d 1014 (9th Cir. 2021). It "h[e]ld that under the newly revised Rule 23(e)(2) standard, courts must scrutinize settlement agreements—including post-class certification settlements—for potentially unfair collusion in the distribution of funds between the class and their counsel." *Id.* at 1019. The Circuit expressed concern that the Original Proposed Settlement provided a "disproportionate distribution" to counsel and contained a "clear sailing" agreement and a "reverter" provision. *Id.* at 1026–27. Accordingly, the Circuit stated that this Court "should give a hard look at the settlement agreement to ensure that the parties have not colluded at class members' expense." *Id.* at 1027–28.

//

### G.    Discovery

After the Ninth Circuit's reversal, Magistrate Judge McCormick filed a declaration describing the settlement negotiations in this case, including how the parties reached their settlement by accepting his court proposal.  (McCormick Decl.)  From Magistrate Judge McCormick's declaration, it became clear that the Court was mistaken in its belief that he had considered the interests of the class and what outcome was fair or right in making his court proposal.  As Magistrate Judge McCormick put it, the court proposals he makes to resolve cases "do not represent [his] evaluation of what is the 'right' outcome," and instead "represent [his] evaluation of the terms that have the best chance of being accepted by both sides."  (McCormick Decl. ¶ 14.)

After Magistrate Judge McCormick's declaration was filed, Plaintiffs renewed their request that the Court grant final approval of the same Original Proposed Settlement.  (Mot.)  ConAgra filed a response supporting approval of the settlement.  (ConAgra Resp.)  Before his objection was due, Objector M. Todd Henderson asked the Court to permit him to seek discovery.  (Dkt. 746.)  To address the Ninth Circuit's concerns and to develop the record for appeal, the Court allowed Objector to conduct limited discovery into discussions between Plaintiffs and ConAgra, and information or material shared with Magistrate Judge McCormick.  (Dkt. 750 at 4.)

### H.    The Court's Order Denying Plaintiffs' Motion for Approval of the Original Proposed Settlement on Remand

After analyzing the additional information the Court received regarding the Original Proposed Settlement after remand, the Court concluded that the Original Proposed Settlement included too many indicators that class counsel's and ConAgra's self-interest unduly influenced the outcome of the negotiations.  (Original Settlement

Order at 12.)  Specifically, the Court pointed out that "[t]he disproportion between the amount the class recovered and the amount of fees class counsel recovered is staggering—with class claims totaling less than $1 million while class counsel received almost seven times that amount—and is especially concerning given the parties' knowledge that the claims rate under the settlement would be low." (*Id.*)  Further contributing to the Court's discomfort with the Original Proposed Settlement was "[t]he fact that class counsel previously rejected a settlement offer with equal payments to the class and class counsel," the fact that the Original Proposed Settlement contained a clear sailing provision and a reverter clause, and the fact that Magistrate Judge McCormick expressly stated that he did not consider what was fair or right in proposing the terms but rather only considered what terms "ha[d] the best chance of being accepted by both sides." (*Id.* at 12–13.)  The Court denied Plaintiffs' motion for reconsideration of the Original Settlement Order.  (Dkt. 795.)

## I.     The New Proposed Settlement

The parties returned to the drawing board, spending six months negotiating a settlement that the parties believed "would cure the deficiencies in the former agreement, as previously noted by this Court and the Ninth Circuit, satisfy the parties, and provide relief to the Classes who have awaited payout for over a decade." (Mot. at 8.)  The New Proposed Settlement, unlike the Original Proposed Settlement, provides that ConAgra will fund a $3 million non-reversionary common fund.  (New Proposed Settlement § 2.32.5.)  Class Members who timely submit a valid claim form (or who previously submitted a valid claim form, with a maximum of one claim form per household) may receive compensation of $0.15 per unit of Wesson Oil purchased during the class period. (*Id.* §§ 4.1.2, 4.1.3.)  The recovery amount will be adjusted pro rata if the value of valid claims exceeds or falls short of the funds available for distribution to class members.  (*Id.* § 4.1.4.)  Additionally, $575,000 of the fund will be allocated to members of the New

York and Oregon Classes who submit valid claim forms, in proportion to the number of units purchased, as compensation for statutory damages under those states' consumer protection laws, with pro rata adjustment according to the number of claimants.  (*Id.* § 4.2.1.)

The $3 million common fund will also be used to pay service awards that Plaintiffs intend to seek in the amounts of $3,000 for those those who sat for depositions, and $1,000 for those that were targets of discovery but did not sit for depositions.  (*Id.* §§ 9.5, 9.6.)  It will also be used to pay expenses Class Counsel intend to seek, though Class Counsel will likely not seek any attorney fees.

The New Proposed Settlement includes specific releases to ConAgra, including (1) forever releasing and discharging it from any liability for all claims of any nature that have or could have been brought in connection with the subject of this litigation and all claims that could be brought based on information discovered after the settlement is final, with the exception of claims arising from bodily injury allegedly suffered in connection with the Wesson Oil Products, (2) expressly waiving and releasing any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code or of any comparable statute, law, or principle of common law, and (3) expressly waiving and releasing ConAgra from any liability for claims arising under California's Unfair Competition Law.  (*Id.* §§ 8.1, 8.3, 8.4.)

## III.   DISCUSSION

To determine whether preliminary approval of a settlement agreement is appropriate after class certification has already been granted, the Court reviews (1) the fairness of the proposed settlement, including attorney fees, (2) adequacy of the proposed notice, and (3) appointment of a settlement administrator.

## A.     Fairness of the New Proposed Settlement

Although there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998), a settlement of class claims requires court approval. Fed. R. Civ. P. 23(e).  This is because "[i]ncentives inhere in class-action settlement negotiations that can, unless checked through careful district court review of the resulting settlement, result in a decree in which the rights of class members, including the named plaintiffs, may not be given due regard by the negotiating parties."  *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (cleaned up).

Approval of class action settlements is governed by Federal Rule of Civil Procedure 23(e).  A district court may approve class action settlements only when they are "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Courts must consider whether (A) the class representatives and class counsel have adequately represented the class, (B) the proposal was negotiated at arm's length, (C) the relief provided for the class is adequate, and (D) the proposal treats class members equitably relative to each other. *Id.* 23(e)(2)(A–D).  In determining whether the class's relief is "adequate," courts must analyze "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Id.* 23(e)(2)(C).[2]

---

[2] Before Congress codified these factors in 2018, the Ninth Circuit instructed district courts to apply the following factors in determining whether a settlement agreement was fair, reasonable, and adequate: "[1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement."  *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir.

1
2

### 1.  Adequacy of Class Counsel and the Class Representatives

3

Class counsel and the class representatives have ably represented the class in this
case.  For over a decade, they have shown competent and respectable advocacy in
briefing and oral argument before this Court and before the Ninth Circuit, overcoming a
motion to dismiss, attaining class certification of eleven state-wide litigation classes and
affirmance of that order from the Ninth Circuit, and achieving other victories along the
way.  With the help of the class representatives, counsel have conducted and responded to
significant discovery.  And they have managed to reach a significant settlement even after
Judge Morrow dismissed their original complaint.  (*See* Dkt. 54 [Judge Morrow's order
granting ConAgra's motion to dismiss].)

As Judge Morrow concluded in both of her orders regarding class certification,
there is no evidence of a conflict of interest between Plaintiffs and the class.  (Dkt. 350);
*In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 976 (C.D. Cal. 2015), *aff'd sub
nom. Briseno v. ConAgra Foods, Inc.*, 674 F. App'x 654 (9th Cir. 2017), and *aff'd sub
nom. Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017).  Plaintiffs' claims
are identical to the class's claims, and they have every incentive to vigorously pursue
those claims.  Nor is there any evidence Plaintiffs' counsel will not adequately represent
or protect the interests of the class.  They have extensive experience litigating complex
matters, including class action litigation.  (*See* Dkt. 350 [Judge Morrow's Order Denying
Class Certification] at 51 [noting class counsel's background in class action litigation];
*ConAgra Foods*, 90 F. Supp. 3d at 976 (explaining in Judge Morrow's Order Granting
Class Certification that this analysis remained unchanged); (*see also* Dkt. 807-2 [Joint
Declaration of Ariana J. Tadler, Adam Levitt, and David Azar, hereinafter "Counsel
Decl."].)  And they have remained devoted to this case, putting in over 11 years of work.

---

2019); *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).  The Court still considers these factors
to the extent that they shed light on the inquiry mandated by Rule 23(e).

### 2.       Arm's Length Negotiation

The Court has found no evidence of collusion during the settlement negotiations that led to the New Proposed Settlement.  The New Proposed Settlement is the product of six months of renewed negotiations between counsel that vigorously litigated the viability of Plaintiffs' claims, the propriety of class action treatment, and numerous other issues, and engaged in contentious discovery.  (*See* Counsel Decl. ¶¶ 282–84); *see Hashemi*, 2022 WL 2155117, at *6 ("The parties extensively negotiated the Settlement over several months prior to mediation and ultimately reached a final agreement only after arms-length negotiations before mediator Mr. Picker.").  And as discussed more thoroughly below, the New Proposed Settlement does not have any of the traditional hallmarks of collusion, including a clear sailing agreement, a reverter provision, or disproportionate class recovery and fee awards.  At this time, the Court is sufficiently satisfied that the New Proposed Settlement was negotiated at arm's length.

### 3.       Adequacy of Relief for the Class

In determining whether the class's relief is "adequate," courts consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  *Id.* 23(e)(2)(C).  The Court finds the proposed relief to be adequate at this stage.

### a.       Costs, Risks, and Delay of Trial and Appeal

The New Proposed Settlement provides substantial recovery to the class.  Although the 15 cents per unit available to consumers under the New Proposed Settlement may

appear modest, it is fair and reasonable.  In this case, Plaintiffs sought a "price premium" for the allegedly misleading labeling rather than a full refund.  This significantly limited the damages they sought.  Judge Morrow narrowed Plaintiffs' theory even further, ruling that the appropriate measure of damages was not the full price premium, but rather only the portion of that premium attributable to consumers' belief that "100% Natural" meant that the products were GMO-free.  (Dkt. 350 at 61–62.)  Based on Judge Morrow's ruling, Plaintiffs' own expert estimated that the maximum recovery they could obtain at trial was 10.2 cents per unit.  (Dkt. 652-4 [Expert Report of Colin B. Weir] ¶ 35 ["I have calculated that the maximum average compensation Plaintiffs could seek at trial, under the constraints of Judge Morrow's decisions, would be approximately $0.102 (10.2 cents) per unit purchased."].)

The class's substantial recovery is especially noteworthy given the costs, risks, and delay of additional litigation.  As the Court has stated, this case has always presented problems of proof, including proving that the oil is not "100% natural," that customers relied on that representation, and that they actually bought the oil so many years ago.  The case also presented problems of damages, including differences in how much people valued the "100% natural statement" and issues with Plaintiffs' damages model.  And it presented problems of management, as the eleven subclasses involve violations of different state laws, different theories of recovery, and different class periods.  (*See* Dkt. 545 at 139–40.)  Given these issues, if litigation proceeds, motion practice—including possible motions for summary judgment and/or motions to sever and remand to different states—will also present both costs and risks.  (*See* Dkt. 700 [Transcript of October 7, 2019 hearing] at 16–17 [ConAgra's counsel representing that it was considering filing such motions if litigation had continued]; Dkt. 745 ["Conagra strongly believes that—in the absence of an approved settlement—Conagra will be successful in securing decertification of the certified classes and/or prevailing at summary judgment."].)  Indeed, Judge McCormick expressed the view that Plaintiffs' claims were weak.

(McCormick Decl. ¶ 10 ["My own initial reaction to Plaintiffs' mislabeling claims was similar; I thought both Judge Carney and many Orange County jurors would view those claims skeptically."].)  And this Court was seriously considering decertifying one or more classes because of the difficulty managing them as currently certified.  Given the substantial cost and risks of further litigation, and the Court's serious doubts about the strength of Plaintiffs' case, this factor weighs in favor of approving the New Proposed Settlement.

### b.     Effectiveness of Proposed Method of Distributing Relief to The Class

Next, the Court must consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C).  "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims."  Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment.  "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."  *Id.*

Here, the relief distribution is straightforward.  Class members will be able to easily complete and submit a claim form by mail or online.  (Settlement § 4.1.)  If a class member submitted a claim form under the Original Proposed Settlement and does not opt out of the New Proposed Settlement, that claim form will be treated as valid.  (*Id.* § 4.4.) This procedure for filing claims is not unduly demanding.

//

//

//

### c.      Attorney Fees and Markers of Collusion

Next, the Court must consider "the terms of any proposed award of attorneys' fees, including timing of payment," in determining whether the class's relief is adequate.  Fed. R. Civ. P. 23(e)(2)(c).  Courts must scrutinize settlements for three factors that tend to show collusion: (1) when counsel receives a disproportionate distribution of the settlement, (2) when the parties negotiate a "clear sailing arrangement," under which the defendant agrees not to challenge a request for agreed-upon attorney fees, and (3) when the agreement contains a "kicker" or "reverter" clause that returns unawarded fees to the defendant, rather than the class.  *Briseno v. ConAgra Foods, Inc.*, 998 F.3d 1014, 1022 (9th Cir. 2021).

Beginning with the markers of collusion, the New Proposed Settlement does not contain a reverter clause that returns unawarded amounts to ConAgra.  Rather, if there are more funds in the common fund than are needed to satisfy all of the claims, then cash payment amounts will be increased so that all funds in the common fund are used. (Settlement § 4.1.4.)  The New Proposed Settlement also does not have a "clear sailing" arrangement.  Finally, counsel is not seeking fees under the New Proposed Settlement, so there is not a concern about class recovery and attorney fees being disproportionate.  The New Proposed Settlement therefore contains no traditional markers of collusion.

### d.      Any Agreement Required to Be Identified Under Rule 23(e)(3)

The Court must also consider whether there is "any agreement required to be identified under Rule 23(e)(3)," Fed. R. Civ. P. 23(e)(2)(C)(iv)—that is, "any agreement made in connection with the proposal," *id.* 23(e)(3).  The parties have identified no agreement other than the New Proposed Settlement.

### 4.     Equitable Class Member Treatment

The final Rule 23(e) factor turns on whether the proposed settlement "treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2).  "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."  Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment.

Under the New Proposed Settlement, class members receive differing payouts depending on how many bottles of Wesson Oil they bought.  This difference in treatment is appropriate and reasonable.  The New Proposed Settlement also treats New York and Oregon class members differently than class members from other states based on their particular states' consumer protection laws, which provide for statutory damages.  This distinction is also reasonable.  The release is also the same for all class members.  The New Proposed Settlement therefore treats class members equitably.

### 5.     Named Plaintiff Incentive Awards

Next, Plaintiffs state that they "will also request service awards of (a) up to $3,000 for each of the six Class Representatives who were deposed (Robert Briseño, Michele Andrade, Jill Crouch, Pauline Michael, Necla Musat, and Maureen Towey) and (b) up to $1,000 for each of the seven Class Representatives who were not deposed (Julie Palmer, Cheri Shafstall, Dee Hooper-Kercheval, Kelly McFadden, Erika Heins, Rona Johnston, and Anita Willman), for a total aggregate service award amount of $25,000, to compensate them for their commitment and time on behalf of the Classes in this litigation."  (Mot. at 16–17.)  Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit.  *Radcliffe v. Experian Info. Sols. Inc.*,

715 F.3d 1157, 1163 (9th Cir. 2013).  Courts routinely approve this type of award to compensate representative plaintiffs for the services they provide and the risks they incur during class action litigation.  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 499 (E.D. Cal. 2010).  Incentive awards in this district typically range from $3,000 to $5,000.  *See In re Toys R Us-Del., Inc.-Fair & Accurate Credit Transactions Act Litig.*, 295 F.R.D. 438, 470 (C.D. Cal. 2014) (collecting cases).  When evaluating the reasonableness of incentive awards, courts consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions," and the time the plaintiff spent pursing the litigation.  *Staton*, 327 F.3d at 977.

At this stage, the proposed incentive awards appear reasonable and appropriate. Plaintiffs have participated in this litigation for over a decade, and have reviewed pleadings, responded to discovery requests, communicated with counsel, and reviewed and approved the terms of the Original Proposed Settlement and the New Proposed Settlement, and many have prepared for and testified at depositions.  The awards are within the range of incentive awards typically approved in this district.  *See Toys R Us*, 295 F.R.D. at 470.

In sum, based on the Rule 23(e)(2) factors, the Court preliminarily concludes that the Settlement is "fair, reasonable, and adequate."

## B.     Notice of the Proposed Settlement

Plaintiffs also seek approval of the proposed manner and form of the notice that will be sent to the class members.  For Rule 23(b)(3) classes, courts "must direct to class members the best notice that is practicable under the circumstances, including individual

notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The Court finds that the proposed manner of notice is adequate. Plaintiffs propose a notice protocol centering on email, print, and digital notice. (Dkt. 807-2 at 138 [Declaration of Gina M. Intrepido-Bowden Regarding Proposed Settlement Notice Program, hereinafter "Intrepido-Bowden Decl."] ¶¶ 17–19.) Specifically, the Settlement Administrator will email notice to the over 75,000 class members who filed a claim under the Original Proposed Settlement. (*Id.* ¶ 17.) It will also place a notice in the national edition of *People* magazine, which "provides readership to over 34 million adults nationwide . . . including older Class Members who may not frequent the internet." (*Id.* ¶ 18.) It "will implement a twelve-week digital notice campaign through [Google Display Network], Facebook, and Instagram," including on cooking websites and related social media accounts, which "will deliver approximately 179 million impressions to Adults 18+ in the Class States," with an emphasis "on adults 35 years of age or older (Adults 35+) and those from lower income households." (*Id.* ¶ 19.) It will further "place a notice once per week, over four consecutive weeks, in the *Los Angeles Daily News*." (*Id.* ¶ 20.) It also "will implement an internet search effort with Google" such that "[w]hen purchased keywords related to the case are searched, a paid ad with a hyperlink to the Settlement Website may appear on the search engine results page." (*Id.* ¶ 21.) Additionally, it "will distribute a press release in English and Spanish that will be issued to approximately 15,000 English and Spanish media outlets nationwide." (*Id.* ¶ 22.) The Court finds this manner of notice is adequate.

The form of notice also meets the requirements of Rule 23(c)(2)(B), which requires that notice to class members "clearly and concisely state, in plain, easily understood language (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that the class member may enter an appearance through an

attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B).  The Publication Notice contains this information.  (*See* Dkt. 807-2 at 114–118.)

### C.     Settlement Administrator

Finally, Plaintiffs move the Court to appoint JND to serve as the Settlement Administrator for the New Proposed Settlement.  Magistrate Judge McCormick selected JND after receiving the parties' competing submissions.  (McCormick Decl. ¶¶ 14, 16.) The Court appointed, and JND served, as Settlement Administrator for the Original Proposed Settlement, and therefore is already familiar with this litigation.  (Intrepido-Bowden Decl. ¶ 8.)  The Court again appoints JND as Settlement Administrator.

## IV.     CONCLUSION

For the foregoing reasons, the Court **GRANTS** preliminary approval of the New Proposed Settlement.  The Court further **ORDERS** the following:

A.     The Court **APPOINTS** Plaintiffs Michele Andrade, Robert Briseño, Jill Crouch, Erika Heins, Dee Hopper-Kercheval, Rona Johnston, Kelly McFadden, Pauline Michael, Necla Musat, Julie Palmer, Cheri Shafstall, Maureen Towey, and Anita Willman as Class Representatives;

B.     The Court **APPOINTS** Milberg Coleman Bryson Phillips Grossman PLCC, Tadler Law LLP, and DiCello Levitt LLC as Class Counsel;

C.     The Court **APPOINTS** JND as Settlement Administrator;

D.     The Court preliminarily approves the New Proposed Settlement;

E.    The Court approves the form of the notice and directs the parties and the Settlement Administrator to carry out their obligations under this Order and the New Proposed Settlement; and

F.    The Court sets the Final Approval Hearing for **Monday, April 24, 2023, at 1:30 p.m.**

DATED:      November 14, 2022

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE