**JS-6**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CONAGRA FOODS, INC. | Case No.: CV 11-05379-CJC (AGRx) |
| | MDL No. 2291 |
| ROBERT BRISEÑO, *et al.*, individually and on behalf of all others similarly situated, | ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT [Dkt. 813] AND GRANTING OBJECTOR M. TODD HENDERSON'S MOTION FOR ATTORNEY FEES, EXPENSES, AND SERVICE AWARD [Dkt. 814] |
| Plaintiffs, | |
| v. | |
| CONAGRA FOODS, INC., | |
| Defendant. | |

## I.    INTRODUCTION

In this over twelve-year-old class-action lawsuit, Plaintiffs challenge Defendant ConAgra Foods, Inc.'s ("ConAgra") allegedly deceptive marketing of Wesson Oil products as "100% Natural."  After years of investigation and litigation—including

extensive discovery and motion practice, a Ninth Circuit appeal regarding the district court's order certifying eleven statewide consumer damages classes, and diligent mediation efforts with two separate judges—the parties reached a settlement (the "Original Proposed Settlement") by accepting a court proposal from Magistrate Judge Douglas F. McCormick.  Under the Original Proposed Settlement, Defendant agreed to pay (1) $0.15 for each unit of Wesson Oil purchased to households submitting valid claim forms (to a maximum of 30 units without proof of purchase, and unlimited units with proof of purchase), with no cap, (2) an additional $575,000 fund for New York and Oregon class members submitting valid claims as compensation for statutory damages under those states' consumer protection laws, and (3) an additional $10,000 fund for those in all classes submitting valid proof of purchase more than thirty units at $0.15 for each such purchase above 30, with class counsel paying any non-funded claims (i.e. claims above the $10,000 ConAgra provided) from any attorney fee awarded.  (Dkt. 779 ["Original Settlement Order"] at 7.)  Defendant further agreed to "take no position" on an application by class counsel for fees and expenses of $6,850,000.  (*Id.*)  Objector M. Todd Henderson objected to the Original Proposed Settlement on the grounds that it contained a clear sailing agreement, a reverter provision, and an award of fees disproportionate to the class' recovery.  (Dkt. 666 at 5–20.)

The Ninth Circuit reversed this Court's approval of the Original Proposed Settlement, explaining that courts must now scrutinize even post-class certification settlements for potentially unfair collusion in the distribution of funds between the class and class counsel. *Briseño v. Henderson*, 998 F.3d 1014, 1019 (9th Cir. 2021).  The Circuit remanded to this Court to take a closer look at terms in the settlement that could indicate that the interests of class counsel and ConAgra were placed above the class' interests.  *Id.*  On remand, the Court declined to approve the Original Proposed Settlement, determining that it "include[d] too many indicators that class counsel's and

ConAgra's self-interest unduly influenced the outcome of the negotiations."  (Original Settlement Order at 12.)

The parties have now reached a new proposed settlement agreement (the "New Proposed Settlement").  Under the New Proposed Settlement, Defendant agrees to create a non-reversionary common fund of $3 million with payments to class members substantially similar to those under the Original Proposed Settlement.  (Dkt. 807 [Motion for Preliminary Approval of Class Action Settlement, hereinafter "Mot."] at 8.)  Significantly, however, the New Proposed Settlement contains no reverter provision, no clear sailing agreement, and class counsel seeks no attorney fees.  (*Id.* at 10.)

In November 2022, the Court preliminarily approved the New Proposed Settlement.  The settlement administrator, JND Legal Administration LLC ("JND") then gave notice under the Class Action Fairness Act, direct email notice to class members who filed a claim under the Original Proposed Settlement, print notice in *People* Magazine, digital notice by Google Display Network, Facebook, and Instagram, and notice under the Consumers Legal Remedies Act.  (*See* Dkt. 813-1, Ex. 1 [Declaration of Gretchen Eoff, hereinafter "Eoff Decl."] ¶¶ 3–9.)  The deadline to opt-out or object passed on March 22, 2023, and JND received only 9 valid requests for exclusion, and no one objected to the Settlement.  (Eoff Decl. ¶¶ 18–19.)  The deadline to file claims was May 22, 2023.  (Dkt. 821 [Supplemental Declaration of Gretchen Eoff, hereinafter "Supp. Eoff Decl."] ¶ 5.)   After conducting a detailed claim validity review, JND determined there are 274,360 valid claims for 6,536,436 units, resulting in a per unit payment of approximately $0.14866.  (Dkt. 831-1 [Third Supplemental Declaration of Gretchen Eoff, hereinafter "3d Eoff Decl."] ¶ 8.)

Now before the Court is Plaintiffs' unopposed motion for final approval of the New Proposed Settlement, including an award of class counsel's costs and Plaintiffs'

service award.  (Mot.; Dkt. 831 [Supplement to Mot.].)  Also before the Court is Henderson's motion for attorney fees, expense reimbursement, and incentive award totaling $250,000.  (Dkt. 814 [hereinafter "Henderson Mot."].)  For the following reasons, both motions are **GRANTED**.

## II.    BACKGROUND

### A.    Early Procedural History, Including Class Certification

For over ten years, bottles of Wesson Oil had a label touting the product as "100% Natural."  In 2011, Plaintiffs sued ConAgra, alleging that the "natural" claim was false and misleading because the oil contains genetically modified organisms, and that they paid more for the oil because of that false and misleading claim.  They filed putative class actions asserting state-law claims against ConAgra in eleven states, and those cases were consolidated in this action.  *Briseño v. ConAgra Foods, Inc.*, 844 F.3d 1123 (9th Cir. 2017).  The case was originally assigned to Judge Margaret M. Morrow.

ConAgra moved to dismiss Plaintiffs' Complaint in August 2011.  (Dkt. 24.)  After Judge Morrow granted that motion (Dkt. 54), Plaintiffs amended their Complaint (Dkt. 80), and ConAgra once again moved to dismiss in February 2012 (Dkt. 84).  Judge Morrow granted in part and denied in part the second motion to dismiss.  (Dkt. 138.)  Then, there was extensive discovery, including multiple discovery motions filed over the years.  (*See, e.g.*, Dkts. 196, 202, 426, 511, 550.)

Plaintiffs filed a motion for class certification (Dkt. 241), which Judge Morrow denied (Dkt. 350).  Plaintiffs then filed a second motion for class certification, seeking to certify eleven separate classes defined as follows:

> All persons who reside in the States of California, Colorado, Florida, Illinois, Indiana, Nebraska, New York, Ohio, Oregon, South Dakota, or Texas who have purchased Wesson Oils within the applicable statute of limitations periods established by the laws of their state of residence (the "Class Period") through the final disposition of this and any and all related actions.

*Briseño*, 844 F.3d at 1123–24.  In a 140-page opinion, Judge Morrow granted Plaintiffs' second motion for class certification, certifying eleven statewide consumer damages classes under Federal Rule of Civil Procedure 23(b)(3).  *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919 (C.D. Cal. 2015); (Dkt. 545).  In a 24-page opinion and a separate 6-page memorandum disposition, the Ninth Circuit affirmed.  *Briseño v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017); *Briseño v. ConAgra Foods, Inc.*, 674 F. App'x 654 (9th Cir. 2017).  The United States Supreme Court denied ConAgra's petition for writ of certiorari.  *Conagra Brands, Inc. v. Briseño*, 138 S. Ct. 313 (2017).

## B.     ConAgra's Initial Agreement to Sell Wesson Oil and Removal of the Disputed Label

In May 2017, ConAgra agreed to sell Wesson Oil to the J.M. Smucker Company. *Briseño*, 998 F.3d at 1019.  About two months later, ConAgra voluntarily removed the disputed label and stopped marketing Wesson Oil products as "natural."  *Id.* ConAgra maintains that this litigation played no role in either decision.  *Id.*

In early 2018, the J.M. Smucker deal fell through after a regulatory agency announced that it would oppose the transaction.  *Id.*; (Dkt. 739 [Declaration of United States Magistrate Judge Douglas F. McCormick, hereinafter "McCormick Decl."] ¶ 8.b.) ConAgra began looking for a new buyer for Wesson Oil.  *Briseño*, 998 F.3d at 1019.

### C.    Original Settlement Efforts

The parties then requested an opportunity to try to settle before litigation proceeded.  Beginning in early 2018, the parties negotiated before retired Judge Edward A. Infante until the Court referred the parties to Magistrate Judge McCormick for further settlement discussions.  (Dkt. 743 ¶¶ 181–85; Dkt. 807-2 ¶¶ 201–04); *see Briseño*, 998 F.3d at 1019.  From June 2018 to November 2018, Magistrate Judge McCormick spent approximately 100 hours helping the parties reach a settlement.  (McCormick Decl. ¶ 2.)

Magistrate Judge McCormick learned early on "that the dollar value of the injunctive relief contained within any settlement agreement would be an issue," and that because the issue "would be expensive for each side to litigate," "avoiding the costs of the injunctive-relief valuation litigation should be a primary factor in motivating both sides to resolve this action."  (*Id.* ¶ 8.)  He also "foresaw additional litigation about how to deal with the eleven different statewide classes that had been certified," and "believed that avoiding the costs of additional class-related litigation should be another primary factor in motivating both sides to resolve this action."  (*Id.* ¶ 9.)

Magistrate Judge McCormick's approach to helping the parties settle proceeded in two phases.  First, he helped the parties determine how much ConAgra would agree to pay as relief to the class members.  (*Id.* ¶ 12.)  Second, and only after the first phase was substantially decided, he helped the parties determine how much Plaintiffs' attorneys would recover in fees.  (*Id.*)

By late October 2018, Magistrate Judge McCormick had helped the parties arrive at an agreement on a "claims-made" fund that would pay class members $0.15 for each unit of Wesson product purchased, with no proof of purchase required for up to 30 units. (McCormick Decl. ¶ 10.a.)  He "understood that the 15 cents per unit was an amount

considerably more than the price premium attributed to the '100% Natural' label by Plaintiffs' own expert." (*Id.*)  The agreement also included a $575,000 fund to be allocated to members of the New York and Oregon state classes as compensation for statutory damages.  (*Id.* ¶ 10.b.)  At this point, given the parties' difficulty resolving "issues related to class administration and notice and the value of injunctive relief," Magistrate Judge McCormick "concluded that [he] would have to make a court proposal to resolve those issues as well as the issue of attorney's fees." (*Id.* ¶ 11.)  Settling the issue of fees was tricky because while "[c]lass counsel believed that the lodestar amount they would seek in any fee litigation would be substantially more than $10 million given the thousands of hours spent on this matter," ConAgra "maintained that the amount of attorney's fees they were willing to pay was limited." (*Id.* ¶ 13.)

On November 8, 2018, Magistrate Judge McCormick made the following court proposal to the parties:  (1) Plaintiffs' counsel would agree to seek and ConAgra would agree not to oppose attorney fees and expenses of $6,850,000, (2) the parties would agree that injunctive relief would be valued at $27,000,000, and (3) Magistrate Judge McCormick would review final proposals from the parties' proposed claims administrators and select a claims administrator by November 30, 2018. (*Id.* ¶ 14.)  Both sides accepted the proposal, and Magistrate Judge McCormick selected Plaintiffs' choice, JND, to serve as the settlement administrator.  (*Id.* ¶ 16.)

In December 2018, ConAgra agreed to sell the Wesson brand to Richardson International.  *Briseño*, 998 F.3d at 1019; (McCormick Decl. ¶ 18).  After the deal closed in February 2019, the parties revised the settlement terms to clarify that the negotiated injunctive relief would apply to ConAgra only if it reacquired the Wesson brand.  (Mot. at 6 n.3); *Briseño*, 998 F.3d at 1019.  In March 2019, Plaintiffs filed a motion for preliminary settlement approval of the Original Proposed Settlement.  (Dkt. 650.)

### D.    The Original Proposed Settlement

The Original Proposed Settlement provided that ConAgra would not label, advertise, or market Wesson Oils as "natural," absent future legislation or regulation. (Dkt. 652, Ex. 1 ¶ 3.3.)  It also provided class members the following monetary benefits:

(a) $0.15 for each unit of Wesson Oils purchased to households submitting valid claim forms (to a maximum of 30 units without proof of purchase, and unlimited units with proof of purchase), with no cap,

(b) an additional fund of $575,000 to be allocated to New York and Oregon class members submitting valid claim forms, as compensation for statutory damages under those states' consumer protection laws, and

(c) an additional fund of $10,000 to compensate those in all classes submitting valid proof of purchase receipts for more than thirty purchases, at $0.15 for each such purchase above 30, with class counsel paying any non-funded claims (i.e. claims above the $10,000 ConAgra provided) from any attorney fees awarded in this case.

(*Id.* ¶ 3.1.)

The Original Proposed Settlement also provided that "Class Counsel shall make a Fee and Expense Application to the Court for an award of $6,850,000, to be paid by Conagra."  (*Id.* ¶ 8.1.1.1.)  ConAgra agreed to "take no position" on the application, "consistent with its agreement negotiated with the assistance of Magistrate Judge McCormick as mediator."  (*Id.* ¶ 8.1.1.2.)  If the Court awarded less than $6,850,000 in attorney fees, the parties agreed that "the relevant amount of the overpayment of attorneys' fees and costs paid by Conagra shall be returned to Conagra."  (*Id.* ¶ 8.1.1.3.)  Henderson objected to the Original Proposed Settlement on the grounds that (1) it contained "all the signs of impermissible self-dealing identified by the Ninth Circuit in *Bluetooth*" and (2) there was "no justification for class counsel's disproportionate fee." (Dkt. 666 at 5–20.)

### E.     The Court's Approval of the Original Proposed Settlement

In April 2019, the Court granted preliminary approval of the Original Proposed
Settlement and appointed JND as settlement administrator.  (Dkt. 654.)  After giving
notice, JND received 97,880 timely claims for 2,792,794 units, and one untimely claim
for 10 units, for a total maximum payout of $993,919.  (Dkt. 688-1 ¶ 10.)  One person
opted out, and Henderson objected.  (*Id.* ¶¶ 7, 9; Dkt. 666.)

In October 2019, the Court granted final approval of the Original Proposed
Settlement, including attorney fees, costs, and incentive awards.  *In re Conagra Foods,
Inc.*, 2019 WL 12338387 (C.D. Cal. Oct. 8, 2019); (Dkt. 695).  The Court reasoned that
the amount offered in settlement was fair and reasonable given its serious doubts about
the strength of Plaintiffs' case and the obstacles inherent in continued litigation, including
problems of proof and management and risks of decertification or dispositive motions.  *In
re Conagra Foods*, 2019 WL 12338387, at *3.  The Court placed great weight on the fact
that the parties' settlement agreement resulted from a court proposal from Magistrate
Judge McCormick.  *See id.* at **1, 4, 5.  Indeed, the Court assumed that in helping the
parties negotiate the Original Proposed Settlement, Magistrate Judge McCormick took
into account the interests of the class and what was fair.

The Court also concluded that the requested attorney fees were fair and reasonable,
especially considering the case's extensive litigation history and the fact that Plaintiffs'
counsel sought only about half of their lodestar.  *Id.* at *6.  Although it recognized and
"appreciate[d] [the] Objector's high-level concerns regarding an apparent trend toward
class action settlements disproportionately benefitting attorneys," the Court explained
that "the amount of attorney fees in the [Original Proposed Settlement], while high,
reflect[ed] the long history of this case and the impressive result achieved given the
weakness of Plaintiffs' case."  *Id.* at **7–8.

## F.      The Ninth Circuit's Opinion

The Ninth Circuit reversed.  *Briseño v. Henderson*, 998 F.3d 1014 (9th Cir. 2021).  It "h[e]ld that under the newly revised Rule 23(e)(2) standard, courts must scrutinize settlement agreements—including post-class certification settlements—for potentially unfair collusion in the distribution of funds between the class and their counsel."  *Id.* at 1019.  The Circuit expressed concern that the Original Proposed Settlement provided a "disproportionate distribution" to counsel and contained a "clear sailing" agreement and a "reverter" provision.  *Id.* at 1026–27.  Accordingly, the Circuit stated that this Court "should give a hard look at the settlement agreement to ensure that the parties have not colluded at class members' expense."  *Id.* at 1027–28.

## G.      Discovery

On remand, Magistrate Judge McCormick filed a declaration describing the settlement negotiations, including how the parties reached their settlement by accepting his court proposal.  From that declaration, it became clear that the Court was mistaken in its belief that in making his court proposal Magistrate Judge McCormick considered the class' interests and what outcome was fair or right.  As Magistrate Judge McCormick put it, the court proposals he makes to resolve cases "do not represent [his] evaluation of what is the 'right' outcome," and instead "represent [his] evaluation of the terms that have the best chance of being accepted by both sides."  (McCormick Decl. ¶ 14.)

After Magistrate Judge McCormick's declaration was filed, Plaintiffs renewed their request that the Court grant final approval of the Original Proposed Settlement.  (Mot.)  ConAgra filed a response supporting approval of the settlement.  (ConAgra Resp.)  Before his opposition was due, Henderson asked the Court to permit him to seek discovery.  (Dkt. 746.)  To address the Ninth Circuit's concerns and to develop the record

for appeal, the Court allowed Henderson to conduct limited discovery into discussions between Plaintiffs and ConAgra, and information or material shared with Magistrate Judge McCormick.  (Dkt. 750 at 4.)

### H.     The Court's Order on Remand Denying Plaintiffs' Motion for Approval of the Original Proposed Settlement

After analyzing the additional information received on remand, the Court concluded that the Original Proposed Settlement included too many indicators that class counsel's and ConAgra's self-interest unduly influenced the outcome of the parties' settlement negotiations.  (Original Settlement Order at 12.)  The Court noted that "[t]he disproportion between the amount the class recovered and the amount of fees class counsel recovered is staggering—with class claims totaling less than $1 million while class counsel received almost seven times that amount—and is especially concerning given the parties' knowledge that the claims rate under the settlement would be low."  (*Id.*)  Further contributing to the Court's discomfort with the Original Proposed Settlement was "[t]he fact that class counsel previously rejected a settlement offer with equal payments to the class and class counsel," the fact that the Original Proposed Settlement contained a clear sailing provision and a reverter clause, and the fact that Magistrate Judge McCormick expressly stated that he did not consider what was fair or right in proposing the terms but rather only considered what terms "ha[d] the best chance of being accepted by both sides."  (*Id.* at 12–13.)  The Court denied Plaintiffs' motion for reconsideration of the Original Settlement Order.  (Dkt. 795.)

### I.     The New Proposed Settlement

The parties returned to the drawing board, spending six months negotiating a settlement that the parties believed "would cure the deficiencies in the former agreement,

as previously noted by this Court and the Ninth Circuit, satisfy the parties, and provide relief to the Classes who have awaited payout for over a decade." (Dkt. 807 at 8.)  The New Proposed Settlement, unlike the Original Proposed Settlement, provides that ConAgra will fund a $3 million non-reversionary common fund.  (New Proposed Settlement § 2.32.5.)   Class Members who timely submit a valid claim form (or who previously submitted a valid claim form), with a maximum of one claim form per household, may receive compensation of $0.15 per unit of Wesson Oil purchased during the class period.  (*Id.* §§ 4.1.2, 4.1.3.)  $575,000 of the fund will be allocated to members of the New York and Oregon classes who submit valid claim forms, in proportion to the number of units purchased, as compensation for statutory damages under those states' consumer protection laws, with pro rata adjustment according to the number of claimants. (*Id.* § 4.2.1.)

The $3 million common fund will also be used to pay service awards to Plaintiffs in the amounts of $3,000 for those who sat for depositions and $1,000 for those that were targets of discovery but did not sit for depositions, for a total aggregate service award amount of $25,000.  (*Id.* §§ 9.5, 9.6; Mot. at 7.)  It will also be used to pay class counsel's expenses of $978,671.10.  (Dkt. 813-1 [Joint Declaration of Counsel, hereinafter "Counsel Decl."].)  Class counsel does not seek any attorney fees.

The New Proposed Settlement includes specific releases to ConAgra, including (1) forever releasing and discharging it from any liability for all claims of any nature that have or could have been brought in connection with the subject of this litigation and all claims that could be brought based on information discovered after the settlement is final, with the exception of claims arising from bodily injury allegedly suffered in connection with Wesson Oil Products, (2) expressly waiving and releasing any and all provisions, rights, and benefits conferred by California Civil Code § 1542 or of any comparable statute, law, or principle of common law, and (3) expressly waiving and releasing

ConAgra from any liability for claims arising under California's Unfair Competition Law.  (*Id.* §§ 8.1, 8.3, 8.4.)

### J.     Claims Made Under the New Proposed Settlement

JND received 2,045,653 claims for 22,242,104,755 units.  (3d Eoff Decl. ¶ 3.) This included 97,880 claims for 2,792,794 units under the Original Proposed Settlement and 1,947,773 claims for 22,239,311,961 units under the New Proposed Settlement.  (*Id.*) JND's "detailed claims analysis" revealed "validity issues and . . . indicia of fraud," including "duplicate claims; claims filed in clusters from the same mailing address; claims filed from non-U.S. Internet Protocol (IP) addresses; or using slight name variations to avoid duplicate detection; and larger than expected claimed units purchased for private, household/non-commercial use."  (*Id.* ¶¶ 4–5.)  After a preliminary fraud review, JND emailed the 1,498,820 people "claiming more units than would be expected for private household use requesting sufficient confirmation of claimed units."  (*Id.* ¶ 6.) 5,742 of those people responded.  (*Id.*)

After reviewing those responses, JND removed 1,771,293 claims for 22,235,568,319 units as invalid because they were either duplicates or had indicia of fraud.  (*Id.* ¶ 8.)  Therefore, JND determined there are 274,360 valid claims for 6,536,436 units.  (*Id.*)  This means that class members submitting valid claims will receive a payment of approximately $0.14866 cents per unit.  (*Id.*)

## III.   DISCUSSION

In deciding whether to grant the motion for final approval, the Court analyzes (1) the fairness of the New Proposed Settlement and (2) the class response to the notice. The Court then turns to Henderson's motion for fees, expenses, and an incentive award.

**A.     Fairness of the New Proposed Settlement**

Although there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998), a settlement of class claims requires court approval. Fed. R. Civ. P. 23(e).  This is because "[i]ncentives inhere in class-action settlement negotiations that can, unless checked through careful district court review of the resulting settlement, result in a decree in which the rights of class members, including the named plaintiffs, may not be given due regard by the negotiating parties." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (cleaned up).

Rule 23(e) governs class action settlement approval.  Courts may approve class action settlements that are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). They must consider whether (A) the class representatives and class counsel have adequately represented the class, (B) the proposal was negotiated at arm's length, (C) the relief provided for the class is adequate, and (D) the proposal treats class members equitably relative to each other. *Id.* 23(e)(2)(A–D).

**1.     Adequacy of Class Counsel and the Class Representatives**

Class counsel and the class representatives have ably represented the class.  For over a decade, they have shown competent and respectable advocacy in briefing and oral argument before this Court and before the Ninth Circuit, achieving victories including overcoming a motion to dismiss and attaining class certification and Ninth Circuit affirmance of class certification.  With the class representatives' help, counsel have conducted and responded to significant discovery.  And they have reached a significant settlement even after Judge Morrow dismissed their original complaint. (*See* Dkt. 54.)

As Judge Morrow concluded in both of her orders regarding class certification, there is no evidence of a conflict of interest between Plaintiffs and the class. (Dkt. 350); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 976 (C.D. Cal. 2015), *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 674 F. App'x 654 (9th Cir. 2017), and *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017). Plaintiffs' claims are identical to the class claims, and they have every incentive to vigorously pursue those claims. Nor is there any evidence Plaintiffs' counsel will not adequately represent or protect the interests of the class. They have extensive experience litigating complex matters, including class action litigation. (*See* Dkt. 350 [Judge Morrow's Order Denying Class Certification] at 51 [noting class counsel's background in class action litigation]); *ConAgra Foods*, 90 F. Supp. 3d at 976 (explaining in Judge Morrow's Order Granting Class Certification that this analysis remained unchanged); (*see also* Counsel Decl.) And they have remained devoted to this case, putting in nearly 12 years of work.

### 2. Arm's Length Negotiation

The Court has found no evidence of collusion during the negotiations leading to the New Proposed Settlement. The New Proposed Settlement is the product of six months of renewed negotiations between counsel that vigorously litigated the viability of Plaintiffs' claims, the propriety of class action treatment, and numerous other issues, and engaged in contentious discovery. (Dkt. 807 at 8; Mot. at 4); *see Hashemi*, 2022 WL 2155117, at *6 ("The parties extensively negotiated the Settlement over several months prior to mediation and ultimately reached a final agreement only after arms-length negotiations before mediator Mr. Picker."). And as discussed more thoroughly below, the New Proposed Settlement does not have any of the traditional hallmarks of collusion, including a clear sailing agreement, a reverter provision, or disproportionate class recovery and fee awards. The Court is satisfied that the New Proposed Settlement was negotiated at arm's length.

### 3. Adequacy of Class Relief

In determining whether class relief is "adequate," courts consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Id.* 23(e)(2)(C).[1]  The Court finds the proposed relief to be adequate.

### a. Costs, Risks, and Delay of Trial and Appeal

The New Proposed Settlement provides substantial recovery to the class.  Although the ultimate $0.14866 per unit recovery may appear modest, it is fair and reasonable.  In this case, Plaintiffs sought a "price premium" for the allegedly misleading labeling rather than a full refund.  This significantly limited the damages they sought.  Judge Morrow narrowed Plaintiffs' theory even further, ruling that the appropriate measure of damages was not the full price premium, but rather only the portion of that premium attributable to consumers' belief that "100% Natural" meant that the products were GMO-free.  (Dkt. 350 at 61–62.)  Based on Judge Morrow's ruling, Plaintiffs' own expert estimated that the maximum recovery they could obtain at trial was 10.2 cents per unit.  (Dkt. 652-4 [Expert Report of Colin B. Weir] ¶ 35.)

---

[1] Before Congress codified these factors in 2018, the Ninth Circuit instructed district courts to apply the following factors in determining whether a settlement agreement was fair, reasonable, and adequate: "[1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement."  *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019); *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).  The Court still considers these factors to the extent that they shed light on the Rule 23(e) inquiry.

The class' substantial recovery is especially noteworthy given the costs, risks, and delay of additional litigation.  This case has always presented problems of proof, including proving that the oil is not "100% natural," that customers relied on that representation, and that they actually bought the oil so many years ago.  It also presented problems of damages, including differences in how much people valued the "100% natural" statement and issues with Plaintiffs' damages model.  And it presented problems of management, as the eleven subclasses involve violations of different state laws, different theories of recovery, and different class periods.  (*See* Dkt. 545 at 139–40.) Given these issues, if litigation proceeds, motion practice—including possible motions for summary judgment and motions to sever and remand to different states—will also present both costs and risks.  (*See* Dkt. 700 [Transcript of October 7, 2019 hearing] at 16–17 [ConAgra's counsel representing that it was considering filing such motions if litigation had continued]; Dkt. 745 ["Conagra strongly believes that—in the absence of an approved settlement—Conagra will be successful in securing decertification of the certified classes and/or prevailing at summary judgment."].)  Indeed, Judge McCormick expressed the view that Plaintiffs' claims were weak.  (McCormick Decl. ¶ 10 ["My own initial reaction to Plaintiffs' mislabeling claims was similar; I thought both Judge Carney and many Orange County jurors would view those claims skeptically."].)  And this Court was seriously considering decertifying one or more classes because of the difficulty managing them as currently certified.  Given the substantial cost and risks of further litigation, and the Court's serious doubts about the strength of Plaintiffs' case, this factor weighs in favor of approving the New Proposed Settlement.

### b.    Effectiveness of Proposed Method of Distributing Relief

Next, the Court must consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C).  "Often it will be important for the court to scrutinize the

method of claims processing to ensure that it facilitates filing legitimate claims." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id.*

Here, the relief distribution is straightforward. Class members that submitted claim forms under the Original Proposed Settlement and did not opt out of the New Proposed Settlement had their previous claim form treated as valid. (New Proposed Settlement § 4.4.) And class members were able to easily complete and submit claim forms under the New Proposed Settlement by mail or online. (*Id.* § 4.1.) 2,045,653 claims were filed. (3d Eoff Decl. ¶ 3.) This procedure for filing claims is not unduly demanding.

JND also recommends paying claimants with valid claims who provided an email address electronically by virtual prepaid card and any claimants who did not provide an email by check. (*Id.* ¶ 12.) This distribution method appears effective.

### c.     Attorney Fees and Markers of Collusion

Next, the Court must consider "the terms of any proposed award of attorneys' fees, including timing of payment," in determining whether class relief is adequate. Fed. R. Civ. P. 23(e)(2)(c). Courts must scrutinize settlements for three factors that tend to show collusion: (1) when counsel receives a disproportionate distribution of the settlement, (2) when the parties negotiate a "clear sailing arrangement," under which the defendant agrees not to challenge a request for agreed-upon attorney fees, and (3) when the agreement contains a "kicker" or "reverter" clause that returns unawarded fees to the defendant, rather than the class. *Briseno*, 998 F.3d at 1022.

Beginning with the markers of collusion, the New Proposed Settlement does not contain a reverter clause that returns unawarded amounts to ConAgra.  Rather, if there are more funds in the common fund than needed to satisfy claims, then cash payment amounts will be increased so that all funds in the common fund are used.  (Settlement § 4.1.4.)  The New Proposed Settlement also does not have a clear sailing arrangement. Finally, counsel is not seeking fees under the New Proposed Settlement, so there is not a concern about class recovery and attorney fees being disproportionate.  The New Proposed Settlement therefore contains no traditional markers of collusion.

### d.        Agreements Required to Be Identified Under Rule 23(e)(3)

The Court must also consider whether there is "any agreement required to be identified under Rule 23(e)(3)," Fed. R. Civ. P. 23(e)(2)(C)(iv)—that is, "any agreement made in connection with the proposal," *id.* 23(e)(3).  The parties have identified no agreement other than the New Proposed Settlement.

### 4.        Equitable Class Member Treatment

The final Rule 23(e) factor turns on whether the proposed settlement "treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2).  "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."  Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment.

Under the New Proposed Settlement, class members receive differing payouts depending on how many bottles of Wesson Oil they bought.  This difference in treatment is appropriate and reasonable.  The New Proposed Settlement also treats New York and

Oregon class members differently than class members from other states based on their particular states' consumer protection laws, which provide for statutory damages. This distinction is also reasonable. The release is also the same for all class members. The New Proposed Settlement therefore treats class members equitably.

### 5.      Class Counsel's Costs

Class counsel seek to be compensated out of the settlement fund for their out-of-pocket costs incurred from the beginning of this case in June 2011 through July 23, 2019—the date on which they filed the motion for final approval of the Original Proposed Settlement—in the amount of $978,671.10. (Mot. at 6; Counsel Decl. ¶¶ 25, 33.) These costs and expenses include money spent on expert witness fees, external and internal reproduction of documents produced in the case, document hosting platform costs, travel expenses, court filing fees, computer research, telephone, postage, delivery costs, making court appearances, and paying for transcripts. (Counsel Decl. ¶ 34; Dkt. 663.) The requested costs and expenses do not included costs associated with the appeal of the Court's order granting final approval of the Original Proposed Settlement, subsequent discovery, or negotiation and approval of the New Proposed Settlement. (Counsel Decl. ¶ 34.) The Court has reviewed the affidavits of counsel and the attached exhibits supporting the award of costs and finds that the requested costs are reasonable and should be awarded out of the settlement fund.

### 6.      Incentive Awards for the Named Plaintiffs

Finally, Plaintiffs request service awards of $3,000 for each of the six Plaintiffs who were deposed and $1,000 for each of the seven Plaintiffs who were not deposed, for a total aggregate service award amount of $25,000. (Mot. at 7; Counsel Decl. ¶ 38.) Incentive awards are payments to class representatives for their service to the class in

bringing the lawsuit.  *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013).  Courts routinely approve this type of award to compensate representative plaintiffs for the services they provide and the risks they incur during class action litigation.  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 499 (E.D. Cal. 2010).  Incentive awards in this district typically range from $3,000 to $5,000.  *See In re Toys R Us-Del., Inc.-Fair & Accurate Credit Transactions Act Litig.*, 295 F.R.D. 438, 470 (C.D. Cal. 2014) (collecting cases).  A $5,000 payment is "presumptively reasonable."  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015).  When evaluating the reasonableness of incentive awards, courts consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions," and the time the plaintiff spent pursing the litigation.  *Staton*, 327 F.3d at 977.

The requested incentive awards are reasonable and appropriate.  Plaintiffs have participated in this litigation for over a decade, and have reviewed pleadings, responded to discovery requests, communicated with counsel, and reviewed and approved the terms of the Original Proposed Settlement and the New Proposed Settlement, and many have prepared for and testified at depositions.  (Counsel Decl. ¶ 39.)  Moreover, the awards are within the range of incentive awards typically approved in this district and lower than what courts consider "presumptively reasonable."  *See Bellinghausen*, 306 F.R.D. at 266.

In sum, having considered the Rule 23(e)(2) factors, the Court concludes that the New Proposed Settlement is "fair, reasonable, and adequate."

## B.    Response to Notice

As explained, JND gave direct email notice to class members who filed a claim under the Original Proposed Settlement, print notice in *People* Magazine, digital notice

by Google Display Network, Facebook, and Instagram, and CAFA and CLRA notice. (Eoff Decl. ¶¶ 4–9.)  It also advertised through TopClassActions.com and ClassAction.org.  (*Id.* ¶¶ 12–13.)  JND also created a settlement website, a toll-free help line, and a dedicated email address.  (*Id.* ¶¶ 14–17.)  The hotline received 366 calls, and the email address received 707 emails.  (*Id.* ¶ 17.)  JND received 2,045,653 claims for 22,242,104,755 units (97,880 claims for 2,792,794 units under the Original Proposed Settlement and 1,947,773 timely claims for 22,239,311,961 units under the New Proposed Settlement).  (3d Eoff Decl. ¶ 3.)

JND received only nine valid requests for exclusion (in addition to nine it deemed invalid due to "[i]nadequate statement[s]"), and no one objected to the New Proposed Settlement.  (Eoff Decl. ¶¶ 18–19.)  This indicates very strong overall support for the New Proposed Settlement and supports final approval.  *See, e.g.*, *Hashemi*, 2022 WL 18278431, at *6 ("Very few objections and opt-outs create a strong presumption that the Settlement is beneficial to the Class and thus warrants final approval."); *In re Lifelock, Inc. Mktg. & Sales Practices Litig.*, 2010 WL 3715138, at *6 (D. Ariz. Aug. 31, 2010) (explaining that low number of timely written objections and requests for exclusion supported settlement approval); *National Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement.  It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").

### C.    Henderson's Motion for Fees, Expenses, and Incentive Award [Dkt. 814]

Objector Henderson seeks $241,231 in attorney fees, $6,179 in expenses, and $2,500 as an incentive award, for a total award of $250,000.  (Henderson Mot. at 1, 25.)

He argues that because of his "persistence" "over three years of litigating his objection," "[t]he class will receive about $2 million in this new settlement instead of under $1 million," and that he should receive a 25% benchmark award from the $1 million he added to the class' relief. (*Id.* at 1–2, 7–8.)  He asks that these awards be paid out of class counsel's expense reimbursement, or in the alternative, from the common fund. (*Id.*)

"Under certain circumstances, attorneys for objectors may be entitled to attorneys' fees from the fund created by class action litigation." *Rodriguez v. Disner*, 688 F.3d 645, 658 (9th Cir. 2012).  Specifically, if their objections "result in an increase to the common fund, the objectors may claim entitlement to fees on the same equitable principles as class counsel." *Id.*; *see In re Sw. Airlines Voucher Litig.*, 898 F.3d 740, 745 (7th Cir. 2018) ("[B]ecause of the skewed incentives in some class action settlements, objectors who bring those incentives back into balance by increasing a settlement's benefit to a class may be compensated for their efforts.").  To be entitled to an award, an objector must have "produce[d] an improvement in the settlement worth more than the fee they are seeking; otherwise they have rendered no benefit to the class." *In re Sw. Airlines Voucher Litig.*, 898 F.3d 740, 745 (7th Cir. 2018).

Here, it does appear that Henderson's efforts produced a significant increase in the settlement amount.  Under the Original Proposed Settlement, "ConAgra would pay class members a maximum of $993,919." *Briseno*, 998 F.3d at 1021.  Under the New Proposed Settlement, ConAgra is paying the class $2 million (plus $1 million for class counsel's expenses).  Under similar circumstances, courts have awarded objectors a benchmark 25% of the increase obtained. *See, e.g.*, *In re Easysaver Rewards Litig.*, 2021 WL 230013, at *3 (S.D. Cal. Jan. 22, 2021) (approving "Objector's request for $805,000 in fees" when the "Objector's challenges led to the preservation of approximately $3.23 million more of the common fund for the *cy pres* beneficiaries" because it was "right about at the 25% benchmark typically used in the percentage method"); *Arnett v. Bank of*

*Am., N.A.*, 2014 WL 5419125, at *3 (D. Or. Oct. 22, 2014) (finding that when the objector's challenges to class counsel's requested expenses led to a $38,267.11 increase in the settlement fund, a fee award to objector's counsel of 25% of this amount—$9,566.78—was appropriate, plus $3,169.53 in expenses).

Henderson's counsel's lodestar confirms that the 25% benchmark he requests is reasonable. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) ("Calculation of the lodestar, which measures the lawyer's investment of time in the litigation, provides a check on the reasonableness of the percentage award."); *Bluetooth*, 654 F.3d at 943 (encouraging a "comparison between the lodestar amount and a reasonable percentage award"). The lodestar of $587,937.50 includes 786.5 hours of work over a four-year period at hourly rates of between $450 and $900. (Henderson Mot. at 18; Dkt. 814-1 [Declaration of Theodore H. Frank] ¶ 29.) The Court has reviewed the documentation supporting the lodestar amount and finds that the hourly rates and hours spent are reasonable. And the fact that the benchmark amount Henderson seeks is less than half of the lodestar confirms the reasonableness of the benchmark award.

The Court has also reviewed the expenses for which Henderson seeks reimbursement and finds that they are reasonable. The $2,500 incentive award for Henderson is also reasonable. *See, e.g.*, *Easysaver Rewards Litig.*, 2021 WL 230013, at *4 (awarding an objector fees, expenses, and "a modest incentive award of $2,500"); *In re Apple Inc. Sec. Litig.*, 2011 WL 1877988, at *5 (N.D. Cal. May 17, 2011) (awarding objector fees, expenses, and $1,000 incentive award).

The final question is from where the money for Henderson's payment should come: class counsel's expense reimbursement or the common fund. It seems to the Court inequitable for the payment to come from class counsel's expense reimbursement. Although class counsel spent years and significant resources litigating this case, it is not

seeking any fees.  In addition, the common practice in this circuit is to "award objectors fees and expenses from the common fund."  *In re Transpacific Passenger Air Transportation Antitrust Litig.*, 2015 WL 4776946, at *2 (N.D. Cal. Aug. 13, 2015) (awarding objector fees, but rejecting objector's "request that her fees be paid from Class Counsel's award, rather than the Settlement Fund"); *see In re Riverstone Networks, Inc.*, 256 F. App'x 168, 169 (9th Cir. 2007) (affirming award of objector's fees and costs "to be paid from the settlement fund"); *Sobel v. Hertz Corp.*, 53 F. Supp. 3d 1319, 1334 (D. Nev. 2014) ("Given the size of the common fund and the reasonable figure requested by class counsel, the Court finds that [the objectors] are entitled to fees from the common fund rather than class counsel or Hertz.").  Henderson will therefore be awarded $250,000 from the common fund.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion for final approval of the New Proposed Settlement is **GRANTED**.  Henderson's motion for attorney fees, expense reimbursement, and an incentive award is also **GRANTED**, and Henderson is awarded $250,000 from the common fund.

DATED:     September 18, 2023

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE

CC: FISCAL